3/13/2018 6:10:47 PM
Chris Daniel District Clerk
Harris County
Envelope No: 23152109
By: MOSE, JANEL E
Filed: 3/13/2018 6:10:47 PM

CAUSE NO. 2016-87708

| | | |
|---|---|---|
| HASSELL CONSTRUCTION CO., INC., | § | IN THE DISTRICT COURT |
| *Plaintiff,* | § | |
| | § | |
| v. | § | HARRIS COUNTY, TEXAS |
| | § | |
| ROYCE HASSELL and | § | |
| SILVIA HASSELL, | § | |
| *Defendants.* | § | 113th JUDICIAL DISTRICT |

## NOTICE OF ORAL HEARING

PLEASE TAKE NOTICE that Plaintiff's Motion to Strike and Defendant's Response

has been set for oral hearing before the 113th Judicial District Court of Harris County, Texas on

Friday, April 6, 2018 at 9:00 AM.  Counsel for Plaintiff HCCI plans to appear telephonically.

Respectfully submitted,

**LOCKE LORD LLP**

By: _____
DERRICK CARSON
State Bar No. 24001847
DEANNA WILLSON
State Bar No. 24092759
CHRISTIAN PEREZ
State Bar No. 24098243
2800 JPMorgan Chase Tower
600 Travis St.
Houston, Texas  77002
dcarson@lockelord.com
Deanna.willson@lockelord.com
cperez@lockelord.com
(713) 226-1197 - Telephone
(713) 223-2622 - Facsimile

ATTORNEYS FOR DEFENDANTS
ROYCE AND SILVIA HASSELL AND
COUNTER-PLAINTIFF ROYCE HASSELL

## CERTIFICATE OF SERVICE

I certify that on March 13, 2018, a true and correct copy of the foregoing document was served on the following counsel of record:

Bogdan Rentea
Rentea & Associates
700 Lavaca, Suite 1400-2678
Austin, Texas 78701
(512) 472-6291
(512) 472-6278 (facsimile)
brentea@rentealaw.com

_____
**Derrick Carson**

3/13/2018 6:10:47 PM
Chris Daniel District Clerk
Harris County
Envelope No: 23152109
By: MOSE, JANEL E
Filed: 3/13/2018 6:10:47 PM

CAUSE NO. 2016-87708

| | | |
|---|---|---|
| HASSELL CONSTRUCTION CO., INC., | § | IN THE DISTRICT COURT |
| *Plaintiff,* | § | |
| | § | |
| v. | § | HARRIS COUNTY, TEXAS |
| | § | |
| ROYCE HASSELL and | § | |
| SILVIA HASSELL, | § | |
| *Defendants.* | § | 113th JUDICIAL DISTRICT |

## <u>ORDER DENYING HCCI'S MOTION TO STRIKE</u>

The Court has considered Hassell Construction Co., Inc.'s ("HCCI") Motion to Strike, Defendant's Response thereto, and the oral arguments made by counsel, if any.  The Court is of the view that HCCI's Motion to Strike has no merit and should be denied.  IT IS HEREBY

ORDERED that HCCI's Motion is DENIED and that Defendant shall have ninety days from the date of this Order to serve the Third-Party Defendants identified in the Third-Party Plaintiff's Third-Party Petition.

SIGNED this _____ day of _____, 2018.

_____
JUDGE PRESIDING

3/13/2018 6:10 PM
Chris Daniel - District Clerk Harris County
Envelope No. 23152109
By: janel gutierrez
Filed: 3/13/2018 6:10 PM

CAUSE NO. 2016-87708

| | | |
|---|---|---|
| HASSELL CONSTRUCTION CO., INC., | § | IN THE DISTRICT COURT |
| *Plaintiff,* | § | |
| | § | |
| v. | § | HARRIS COUNTY, TEXAS |
| | § | |
| ROYCE HASSELL and | § | |
| SILVIA HASSELL, | § | |
| *Defendants.* | § | 113ᵗʰ JUDICIAL DISTRICT |

## AMENDED NOTICE OF ORAL HEARING FOR DEFENDANTS' MOTION FOR CONTINUANCE

PLEASE TAKE NOTICE that Defendants Royce Hassell and Silvia Hassell's Verified Motion for Continuance and Entry of an Amended Docket Control Order has been set for oral hearing before the 113th Judicial District Court of Harris County, Texas on Friday, April 6, 2018 at 9:00 AM.  Counsel for Plaintiff HCCI plans to appear telephonically.

Respectfully submitted,

**LOCKE LORD LLP**

By: _____
DERRICK CARSON
State Bar No. 24001847
DEANNA WILLSON
State Bar No. 24092759
CHRISTIAN PEREZ
State Bar No. 24098243
2800 JPMorgan Chase Tower
600 Travis St.
Houston, Texas  77002
dcarson@lockelord.com
Deanna.willson@lockelord.com
cperez@lockelord.com
(713) 226-1197 - Telephone
(713) 223-2622 - Facsimile

ATTORNEYS FOR DEFENDANTS
ROYCE AND SILVIA HASSELL AND
COUNTER-PLAINTIFF ROYCE HASSELL

## <u>CERTIFICATE OF SERVICE</u>

I certify that on March 13, 2018, a true and correct copy of the foregoing document was served on the following counsel of record:

Bogdan Rentea
Rentea & Associates
700 Lavaca, Suite 1400-2678
Austin, Texas 78701
(512) 472-6291
(512) 472-6278 (facsimile)
brentea@rentealaw.com

_____
**Derrick Carson**

P15

2016- 87708

047J82004178
$07.620
02/21/2018
Mailed From 77002
US POSTAGE
Neopost

CERTIFIED MAIL

7016 0600 0001 0813 7305

113th

BC: 77210461151 2091N069212-01413

NIXIE          773   FE 1          0003/10/18
        NOT    RETURN TO SENDER
     DELIVERABLE AS ADDRESSED
        UNABLE TO FORWARD

MICHAEL HASSELL C/O HASSELL
MANAGEMENT SERVICES
12211 DUNCAN ROAD
HOUSTON, TX 77066

**RECORDER'S MEMORANDUM**
This instrument is of poor quality
at the time of imaging

FILED
CHRIS DANIEL
DISTRICT CLERK
HARRIS COUNTY TEXAS

18 MAR 14   AM 8: 41

BY_____
MAIL PROCESSING ADMIN



2016 27306 of 1132

**SENDER: COMPLETE THIS SECTION**

■ Complete items 1, 2, and 3.
■ Print your name and address on the reverse so that we can return the card to you.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

MICHAEL HASSELL C/O HASSELL
MANAGEMENT SERVICES
12211 DUNCAN ROAD
HOUSTON, TX 77066

9590 9402 2957 7094 7806 35

2. Article Number (Transfer from service label)

7016 0600 0001 0813 7305

PS Form 3811, July 2015 PSN 7530-02-000-9053

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X
☐ Agent
☐ Addressee

B. Received by (Printed Name) | C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:  ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

Domestic Return Receipt

CAUSE NO.  201687708

RECEIPT NO.                                          75.00        CTM
            **********                        TR # 73465517

| | |
|---|---|
| PLAINTIFF: HASSELL CONSTRUCTION COMPANY INC<br><br>        vs.<br>DEFENDANT: HASSELL, ROYCE  . | In The   113th<br>Judicial District Court<br>of Harris County, Texas<br>113TH DISTRICT COURT<br>Houston, TX |

CITATION (CERTIFIED)
THE STATE OF TEXAS
County of Harris

TO: TRUSTEE OF JAMES C HASSELL INTERVIVOS TRUST (CURRENTLY MICHAEL
    HASSELL) MAY BE SERVED BY SERVING MICHAEL HASSELL C/O
    HASSELL MANAGEMENT SERVICES
    OR WHEREVER HE MAY BE FOUND

    12211  DUNCAN ROAD   HOUSTON TX  77066

    Attached is a copy of <u>ORIGINAL COUNTERCLAIM AND THIRD PARTY PETITION</u>

This instrument was filed on the <u>19th day of May, 2017</u>, in the above cited cause number
and court. The instrument attached describes the claim against you.

    YOU HAVE BEEN SUED, You may employ an attorney. If you or your attorney do not file a
written answer with the District Clerk who issued this citation by 10:00 a.m on the Monday
next following the expiration of 20 days after you were served this citation and petition,
a default judgment may be taken against you.

TO OFFICER SERVING:
    This citation was issued on 21st day of February, 2018, under my hand and
seal of said Court.



                                            CHRIS DANIEL, District Clerk
<u>Issued at request of:</u>                     Harris County, Texas
WILLSON, DEANNA MARKOWITZ                    201 Caroline, Houston, Texas 77002
600  TRAVIS SUITE 2800                       (P.O. Box 4651, Houston, Texas 77210)
HOUSTON, TX  77002
Tel: (713) 226-1467
<u>Bar No.:</u>  24092759                         Generated By: ALEXANDER, RAYSHANA D  FEJ//10886971

---

CLERK'S RETURN BY MAILING

Came to hand the _____ day of _____, _____, and executed by
mailing to Defendant certified mail, return receipt requested, restricted delivery, a true
copy  of  this  citation  together  with  an  attached  copy  of
 ORIGINAL COUNTERCLAIM AND THIRD PARTY PETITION
to the following addressee at address:

_____         _____

                                           ADDRESS

_____         Service was executed in accordance with Rule 106
(a)ADDRESSEE                          .       (2) TRCP, upon the Defendant as evidenced by the
                                              return receipt incorporated herein and attached
_____            hereto at

                                           _____
                                           on _____ day of _____, _____
                                           by U.S. Postal delivery to _____
                                           _____

                                           This citation was not executed for the following
                                           reason: _____
                                           _____

                                           CHRIS DANIEL, District Clerk
                                           Harris County, TEXAS

                                           By _____, Deputy

N.INT.CITM.P                         *73465517*

5/19/2017 6:13:45 PM
Chris Daniel - District Clerk Harris County
Envelope No. 17153209
By: Justina Lemon
Filed: 5/19/2017 6:13:45 PM

CAUSE NO. 2016-87708

| | | |
|---|---|---|
| HASSELL CONSTRUCTION CO., INC., | § | IN THE DISTRICT COURT |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | HARRIS COUNTY, TEXAS |
| | § | |
| ROYCE HASSELL and | § | |
| SILVIA HASSELL, | § | |
| *Defendants.* | § | 113th JUDICIAL DISTRICT |

## ORIGINAL COUNTERCLAIM AND THIRD PARTY PETITION OF ROYCE HASSELL

COMES NOW Defendant/Counter-Plaintiff/Third-Party Plaintiff Royce Hassell ("Royce") and files this Original Counterclaim and Original Third-Party Petition against Plaintiff/Counter-Defendant Hassell Construction Co., Inc. ("HCCI"), Third-party defendant Michael Hassell ("Michael"), Third-party defendant Phillip Hassell ("Phillip"), Third-party defendant Shawn Hassell Potts ("Shawn"), and the Trustee of the James C. Hassell Intervivos Trust ("Trustee") and, in support thereof, respectfully shows the Court as follows:

## PARTIES

1.      Counter-plaintiff Royce Hassell is an individual residing in Harris County, Texas. Counter-plaintiff Royce Hassell is an interested person as defined in the Property Code under § 111.004.

2.      Counter-defendant, Hassell Construction Company, Inc., is a Counter-Defendant. HCCI has appeared in this case and may be served through its counsel of record.

3.      Third-party defendant Michael Hassell ("Michael") is employed by Hassell Management Services, LLC ("HMS") and resides in Harris County, Texas.  He may be served

with this suit at his usual place of employment, Hassell Management Services, 12211 Duncan Road, Houston, TX 77066 or wherever he may be found.

4.      Third-party defendant Trustee of James C. Hassell Intervivos Trust ("Trustee") is currently Michael Hassell. The Trustee may be served by serving Michael Hassell, at his usual place of employment, Hassell Management Services, 12211 Duncan Road, Houston, TX 77066 or wherever he may be found.

5.      Third-party defendant Phillip Hassell ("Phillip") is employed by HMS and resides in Harris County, Texas. He may be served with this suit at his usual place of employment, Hassell Management Services, 12211 Duncan Road, Houston, TX 77066, or wherever he may be found.

6.      Third-party defendant Shawn Hassell Potts ("Shawn") is employed by HMS and resides in Harris County, Texas. She may be served with this suit at his usual place of employment, Hassell Management Services, 12211 Duncan Road, Houston, TX 77066, or wherever she may be found.

## JURISDICTION & VENUE

7.      The Court has jurisdiction over the parties because all parties are residents of Harris County, Texas, and HCCI's principal place of business is in Harris County, Texas. Venue is proper in this county because the actions made the subject of this suit have occurred primarily in Harris County, Texas.

8.      The Court has subject matter jurisdiction over this proceeding because the amount in controversy exceeds this Court's minimum jurisdiction requirement. Pursuant to Rule 47 of the Texas Rules of Civil Procedure, Counter-plaintiff seeks monetary relief in excess of

$1,000,000 as well as declaratory relief pursuant to Chapter 37 of the Texas Civil Practice and Remedies Code.

## DISCOVERY CONTROL PLAN

9.      Discovery in this case should be conducted under Level 3 of the Texas Rules of Civil Procedure §190.4.

## FACTUAL BACKGROUND

10.     Royce Hassell ("Royce") has been a shareholder in HCCI since 1979. In 1986, Royce and his four siblings (the children of Royce's father, James C. Hassell) became equal beneficiaries in the James C. Hassell Intervivos Trust ("JCH Trust").[1]   The purpose of forming the JCH Trust was to convey equal beneficial ownership interest in HCCI to each of James Hassell's children.  Upon information and belief, the JCH Trust is the majority shareholder of HCCI.  Consequently, in addition to his individually owned shares, Royce also holds beneficial ownership of HCCI shares.[2]

11.     Royce was appointed and served as the original Trustee of the JCH Trust from 1986 until October of 1999 when Royce stepped down in order to take care of his ailing wife. Third-party Defendant Michael Hassell, Royce's brother and also a beneficiary of the JCH Trust, has served as Trustee since 1999.  Unfortunately, Michael has failed to fulfill his obligations and responsibilities as Trustee and has not complied with his fiduciary duties in good faith.

12.     Upon information and belief, Michael is believed to have allowed a life insurance policy of James C. Hassell, which provides funds to the JCH Trust, to lapse.  Michael required

---

[1] The beneficiaries of the JCH Trust are the five children of James C. Hassell ("JCH"). Royce Hassell is JCH's only child from his first marriage; Michael Hassell, Phillip Hassell, and Shawn Hassell Potts are JCH's children from his second marriage; and Jason Hassell is JCH's only child from his third marriage.  The children of JCH, all adults, are each equal, per stirpes, undivided beneficiaries of the JCH Trust.  Among the assets of the JCH Trust is the majority of HCCI's shares.
[2] Defendants Royce and Silvia Hassell have been married since 1978.  Silvia Hassell is a shareholder of HCCI by virtue of her community property interest in the shares owned by Royce Hassell.

Royce's assistance to reinstate the life insurance policy. In addition to Michael's negligent oversight of the life insurance policy, Michael has greatly reduced the value of the JCH Trust by losing and/or transferring valuable trust assets out of the JCH Trust. In fact, the JCH Trust is a spendthrift trust which by its terms does not permit the alienation of ownership by its beneficiaries.

13.    Royce has been a continuous shareholder of HCCI since acquiring shares of HCCI in 1979, as well as his ownership in HCCI by virtue of his status as a beneficiary of the JCH Trust beginning in 1986. Royce has not transferred or sold his shares in HCCI to any party.

14.    In 2012, Royce was appointed to act as HCCI's Chief Operating Officer. But he was not employed by HCCI. Rather he was employed as COO by HMS and leased as employee by HCCI.

15.    HMS is owned and managed by Royce's family members, including but not limited to Michael and Phillip. Royce has no ownership or management role in HMS.

16.    Nevertheless, in 2013, Royce was purportedly terminated from his role in HCCI by HMS, Phillip, and Michael, which allegedly included a loss of his ownership in HCCI. Royce maintains that this termination was wrongful and that he still is an owner of HCCI, through his direct ownership in HCCI as well as his status of beneficiary in the JCH Trust.

17.    Despite his continuous status as a shareholder of HCCI, Royce has been denied access to the corporate records of HCCI and the Trust records of the JCH Trust by Michael and the other beneficiaries of the JCH Trust. As a shareholder and a beneficiary, Royce has a right to inspect these records, and denial by Michael, Phillip, and HCCI constitute breaches of fiduciary duty, violations of the Texas Trust Code, and violations of the Texas Business Organizations Code.

18.     Further, Michael has pledged the JCH's Trust assets to secure bonding, insurance and banking accommodations to personally benefit only selected beneficiaries of the JCH Trust and to perpetuate frauds.  According to the Texas Secretary of State Office public records, in approximately 2005-2006 and without Royce Hassell's knowledge, Michael Hassell voted the JCH Trust shares in favor of HCCI merging with another corporation in which Royce Hassell owns no interest, Hassell Contractors, Inc.  However, because Royce Hassell has been denied access to the corporate records of HCCI and the records of the JCH Trust, and these transactions have not been disclosed to Royce Hassell, Royce Hassell has been unable to discover all the events which have transpired within HCCI to affect his direct stock ownership in HCCI and his beneficial ownership interest through the JCH Trust.

19.     Additionally, Michael Hassell has pledged the trust assets of the JCH Trust to co-indemnify Liberty Mutual and now perhaps other sureties, as surety and a beneficiary of a General Agreement of Indemnity for projects performed by HCCI to the exclusion of Royce Hassell.  Thus, it now appears that on all projects being performed by HCCI, the JCH Trust assets including Royce Hassell's undivided interest, are at risk.

## CAUSES OF ACTION

### *Count I:  Breaches of Fiduciary Duties by Michael Hassell and Trustee*

20.     Counter-Plaintiff Royce restates paragraphs 1 – 19 as if fully restated herein.

21.     Michael owes fiduciary duties to Royce and his heirs as Trustee of the JCH Trust of which Royce is a beneficiary.  Michael also owes fiduciary duties to Royce as an officer, director, and beneficial shareholder of HCCI.

22.     Michael has breached his fiduciary duties to Royce.

23.     Michael's breaches of fiduciary duties resulted in injury to Royce and benefit to Michael and HCCI.

### Count II:  Violation of the Texas Trust Code by Trustee

24.     Counter-Plaintiff Royce restates paragraphs 1 – 19 as if fully restated herein.

25.     Michael owes fiduciary duties to Royce and his heirs as Trustee of the JCH Trust, of which Royce is a beneficiary.

26.     Under the Texas Trust Code, Trustee was responsible to Royce for the trust property pursuant to the requirements of Section 114.001 of the Trust Code, including the trust property's management, supervision, and safeguarding.

27.     Trustee has breached his fiduciary duties to Royce by actions, including but not limited to its duty of trust, in failing to appropriately manage, supervise, and safeguard the trust property.

28.     In addition, not only has Trustee failed to comply with his duty of disclosure to beneficiaries under the Texas Trust Code, Trustee has repeatedly denied Royce access to records regarding the JCH Trust, for almost four years despite continuous requests for access to such information.

29.     Royce suffered damages as a result of Michael's violation of his duties under the Texas Trust Code.

### Count III:  Knowing Participation in Breaches of Fiduciary Duties

30.     Counter-Plaintiff Royce restates paragraphs 1 – 19 as if fully restated herein.

31.     Michael owes a fiduciary duty to Royce as Trustee of the JCH Trust of which Royce is a beneficiary.

32.     Phillip and Shawn are aware of the fiduciary relationship.

33.     By participating in the termination of Royce's ownership in HCCI and preventing Royce from viewing the books of HCCI and the JCH Trust, Phillip and Shawn participated in the breach of the fiduciary relationship.

34.     Phillip and Shawn participated in the breach of fiduciary duties that caused damage to Royce.

### Count IV:  Breaches of Fiduciary Duties by Phillip Hassell

35.     Counter-Plaintiff Royce restates paragraphs 1 – 19 as if fully restated herein.

36.     Phillip owes fiduciary duties to HCCI as an officer of HCCI.

37.     Phillip Hassell is President of Hassell Management Services, LLC and Hassell Construction Company, Inc.   As President, Phillip owes a fiduciary duty to HCCI.   Further, based on the relationship between Phillip and Royce and Royce's longtime confidence placed in Phillip in his role in the family businesses, Phillip owes Royce a fiduciary duty.

38.     Phillip Hassell owes HCCI and Royce a duty of loyalty, duty to disclose material information, the duty not to engage in self-dealing, and the duty not to harm the company for personal gain.  Phillip breached his duties by, among other things, refusing to make distributions to Royce and engaging in transactions as an interested director.

39.     Phillip Hassell has violated his fiduciary obligations to HCCI and HCCI's shareholders by using HCCI's corporate name to perpetuate frauds for his personal benefit. Phillip Hassell's use of the JCH Trust's assets to obtain benefits for himself and Hassell Management Services, LLC to the detriment of HCCI is a continuing breach of his fiduciary duties as an officer and director of HCCI to HCCI and its shareholders.

### Count V:  Violations of the Texas Business Organizations Code

40.     Counter-Plaintiff Royce restates paragraphs 1 – 19 as if fully restated herein.

41.     Royce is a shareholder in and owner of HCCI.

42.     Under Section 3.153 of the Texas Business Organizations Code, among others, Royce is entitled to examine the books and records of HCCI.

43.     HCCI, Phillip, and Michael have refused to allow Royce to inspect the corporate records of HCCI, causing Royce damages.

### Count VI: Aider and Abetter / Conspiracy Liability

44.     Counter-Plaintiff Royce restates paragraphs 1 – 19 as if fully restated herein.

45.     Michael and Phillip have each conspired in and aided and abetted the respective violations of fiduciary duties alleged above.   Further, Shawn also aided and abetted in the violations.   They have all conspired in a deliberate attempt to deprive Royce of the benefits of his interests in HCCI and the JCH Trust.

### Count VII:  Fraud, Use of the Corporate Form as a Sham to Perpetuate a Fraud, and Fraudulent Concealment

46.     Counter-Plaintiff Royce restates paragraphs 1 – 19 as if fully restated herein.

47.     As a beneficiary of the JCH Trust and as a shareholder of HCCI, Royce is entitled to disclosure of pertinent information regarding the business.   However, facts have been concealed from Royce Hassell.  The doctrine of fraudulent concealment applies in this case and defers the accrual of claims for breach of fiduciary duty.   Such breaches may include acts in violation of the Trust Code and other statutes.

48.     Michael and Phillip Hassell, as Trustee of the JCH Trust and as President of HCCI respectively, are continuing to use HCCI's corporate form as a sham and to perpetuate a fraud on Royce Hassell and his heirs, among others.  Currently, Michael and Royce are inconsistently using the JCH Trust's assets which include the majority ownership of HCCI stock to obtain surety, insurance and banking accommodations to benefit themselves personally and

others to the detriment of the non-participating JCH Trust beneficiaries, namely Royce Hassell and his heirs.

49.     Additionally, they have also used HCCI's name to bring a serious of meritless lawsuits to benefit Hassell Management and selected beneficiaries of the JCH Trust, while failing to pursue and, in fact, non-suiting valuable and meritorious causes of actions against third parties who have injured HCCI's interests.

50.     Additionally, even the public records evidence that after ousting Royce Hassell as the Chief Operating Officer of HCCI, HCCI has been mismanaged by the owners of Hassell Management Services, LLC.  For instance, due to apparent mismanagement HCCI was recently cited by the U.S. Department of Labor's Occupational Safety and Health Administration for 16 safety violations, including six egregious *willful* violations and nine serious violations for failing to protect workers inside an excavation and was subject to penalties of $423,900.

51.     Despite having his ownership interests in HCCI at risk, Royce Hassell has been denied access to both the corporate records of HCCI and the records of the JCH Trust. The records being sought will undoubtedly disclose additional frauds which have been and are being committed.

52.     Unless immediate access to such records is permitted, Royce Hassell reserves the right to seek an injunction pursuant to Tex. Bus. & Com. Code Ann.  §24.008(a)(3) and  to seek the imposition of a receivership on certain assets of HCCI, as well as the removal of Michael Hassell as Trustee of the JCH Trust.  Specifically, the continuous refusal to grant Royce Hassell access to the corporate records of HCCI and the trust records of the JCH Trust has obstructed HCCI and the JCH Trust claims against third parties who have harmed and are harming HCCI as

a family owned corporation and the JCH Trust for the benefit of all five of JCH's children and their descendants.

### *Count VIII: Declaratory Judgment on Royce Hassell's Ownership of HCCI*

53.     Counter-Plaintiff Royce restates paragraphs 1 – 19 as if fully restated herein.

54.     This Court has the power to  "declare rights, status, and other legal relations whether or not further relief is or could be claimed."  TEX. CIV. PRAC. & REM. CODE § 37.003.  A person "whose rights, status, or other legal relations are affected by a statute, municipal ordinance, contract, or franchise may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise and obtain a declaration of rights, status, or other legal relations thereunder.  Id. § 37.004.

55.     Specifically, based on the controversies described above, Counter-plaintiff seeks the following declarations from the Court:

    a.     the identity of and current ownership interest of HCCI's shareholders;

    b.     Royce Hassell's right to access HCCI's books and records;

    c.     Royce Hassell's right to an accounting of HCCI;

    d.     Royce Hassell's right to access the JCH Trust's books and records; and

    e.     Royce Hassell's right to an accounting of the JCH Trust.

### *Count IX:  Attorneys' Fees*

56.     Counter-plaintiff hereby incorporates all of the preceding paragraphs by reference.

57.     Counter-plaintiff has retained the law firm of Locke Lord LLP to prosecute its claims in this matter.  Accordingly, Counter-plaintiff is entitled to recover its attorneys' fees and

costs pursuant to Chapter 37 and Chapter 38 of the Texas Civil Practice and Remedies Code. *See* TEX. CIV. PRAC. & REM. CODE §§ 37.009 and 38.001, *et seq.*

58.     Counter-plaintiff also reserves the right to seek mandatory indemnification under Texas Business Organizations Code 8.051, and/or Court-Ordered Indemnification under Texas Business Organizations Code 8.052.

## PRAYER

Counter-plaintiff Royce Hassell prays that Counter-defendant HCCI and Third-party Defendants Michael Hassell, Shawn Hassell Potts, Phillip Hassell, and Trustee of the JCH Trust be cited to appear and answer in this Court and that, upon final determination of the merits, Counter-plaintiff be awarded his damages, attorneys' fees, pre- and post-judgment interest at the highest rates allowed by law, costs of court, an accounting of HCCI, and all further relief, whether by law or in equity, to which he may be justly entitled.

Respectfully submitted,

**LOCKE LORD LLP**

By: 

DERRICK CARSON
State Bar No. 24001847
DEANNA WILLSON
State Bar No. 24092759
CHRISTIAN PEREZ
State Bar No. 24098243
2800 JPMorgan Chase Tower
600 Travis St.
Houston, Texas  77002
dcarson@lockelord.com
Deanna.willson@lockelord.com
cperez@lockelord.com
(713) 226-1197 - Telephone
(713) 223-2622 - Facsimile

**ATTORNEYS FOR DEFENDANTS
ROYCE AND SILVIA HASSELL AND
COUNTER-PLAINTIFF ROYCE HASSELL**

## CERTIFICATE OF SERVICE

I certify that on May 19, 2017, a true and correct copy of this Original Claims of Counter-Plaintiff Royce Hassell was served on the following counsel of record:

Bogdan Rentea
Rentea & Associates
700 Lavaca, Suite 1400-2678
Austin, Texas 78701
(512) 472-6291
(512) 472-6278 (facsimile)
brentea@rentealaw.com


_____
**Deanna M. Willson**

201687708 set 113    234665519

**SENDER:** *COMPLETE THIS SECTION*

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

PHILLIP HASSELL C/O HASSELL
MANAGEMENT SERVICES
12211 DUNCAN ROAD
HOUSTON, TX 77066

‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖

9590 9402 2957 7094 7806 42

2. Article Number *(Transfer from service label)*

7016 0600 0001 0813 7312

*COMPLETE THIS SECTION ON DELIVERY*

A. Signature

X  *M. Kruger*   ☐ Agent
                 ☐ Addressee

B. Received by *(Printed Name)*      C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:      ☐ No

2016-87708

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ ...ail
☐ ...ail Restricted Delivery

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form **3811**, July 2015 PSN 7530-02-000-9053

Domestic Return Receipt



First-Class Mail·
Postage & Fees Paid
USPS
Permit No. G-10

9590 9402 2957 7094 7806 42

**United States
Postal Service**



• Sender: Please print your name, address, and ZIP+4® in this box•

CHRIS DANIEL, DISTRICT CLERK
HARRIS COUNTY, TEXAS
CIVIL INTAKE
P.O. BOX 4651
HOUSTON, TEXAS 77210

BY
MAIL PROCESSING ADMIN

03-05-18

18 MAR -5 AM 7:08

FILED
CHRIS DANIEL
DISTRICT CLERK
HARRIS COUNTY, TEXAS

**SENDER:** *COMPLETE THIS SECTION*

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

SHAWN HASSELL POTTS C/O HASSELL
MANAGEMENT SERVICES
12211 DUNCAN ROAD
HOUSTON, TX 77066

9590 9402 2957 7094 7806 59

2. Article Number *(Transfer from service label)*

7016 0600 0001 0813 7329

*COMPLETE THIS SECTION ON DELIVERY*

A. Signature

X  M. Kruger

☐ Agent
☐ Addressee

B. Received by *(Printed Name)*

C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:  ☐ No

2016-87708

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☒ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ ...Mail Restricted Delivery
   ...0)

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2015 PSN 7530-02-000-9053

Domestic Return Receipt



First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

9590 9402 2957 7094 7806 59

**United States**
**Postal Service**



• Sender: Please print your name, address, and ZIP+4® in this box•

**CHRIS DANIEL, DISTRICT CLERK**
**HARRIS COUNTY, TEXAS**
**CIVIL INTAKE**
**P.O. BOX 4651**
**HOUSTON, TEXAS 77210**

03-05-18

18 MAR -5 AM 7:08

BY
MAIL PROCESSING ADMIN

FILED
CHRIS DANIEL
DISTRICT CLERK
HARRIS COUNTY, TEXAS

3/21/2018 8:25 AM
Chris Daniel - District Clerk Harris County
Envelope No. 23308336
By: janel gutierrez
Filed: 3/21/2018 8:25 AM

Cause No. 2016-87708

| | | |
|---|---|---|
| HASSELL CONSTRUCTION COMPANY, INC., | § | IN THE DISTRICT COURT OF |
| | § | |
| *Plaintiff* | § | |
| | § | |
| v. | § | HARRIS COUNTY, TEXAS |
| | § | |
| ROYCE HASSELL and | § | |
| SILVIA HASSELL, | § | |
| *Defendants* | § | 113TH  JUDICIAL DISTRICT |

**PLAINTIFF'S RESPONSE AND PARTIAL OPPOSITION TO
DEFENDANTS' MOTION FOR CONTINUANCE AND
ENTRY OF NEW DCO, AND
REPLY TO DEFENDANTS' RESPONSE TO MOTION TO STRIKE**

NOW COMES Plaintiff and, in partial opposition to Defendants' motion for continuance and request for entry of new DCO, and, in reply to Defendants' response to the motion to strike, shows as follows:

1.      Plaintiff is not opposed to continue the trial in this matter from its current setting of July 2, 2018, to the date requested by Defendants.

2.      Plaintiff is also not opposed to the entry of a new DCO, except to the extent that the Defendants want to establish new deadlines for matters which they have failed to comply with in the current DCO.

3.      Specifically, the current DCO established February 2, 2018, as the deadline to add and serve additional parties, whether by amendment or third party practice. Defendants failed to comply with said deadline, and their attempts to add parties after the deadline is the subject of a currently pending motion to strike, filed by Plaintiff. Said motion is incorporated herein for all purposes.

4.      Therefore, Plaintiff agrees to the requested continuance, but respectfully requests that a new DCO contain the deadlines as set forth in Exhibit A, attached hereto. The only difference in the DCO presented by Defendants and the one presented for consideration by Plaintiff

is the deadline to add parties, and the deadline to designate experts, which deadlines should remain unchanged from the current DCO.

5.      Defendants claim that they missed the deadline in the current DCO, due to an intervening bankruptcy, an informal agreement to abate this matter until the end of an arbitration proceeding, and because settlement discussions were unsuccessful.

6.      First, the referenced bankruptcy did not affect this matter.  Although it slowed down the issuance of a final award in an arbitration proceeding, that event, the issuance of the award, took place in early December of 2017, two months before the February 2nd deadline in this case.

7.      Second, although the parties did agree to hold off on discovery in this case until a final award was issued in the arbitration proceeding, that informal agreement ended in early December 2017, when the arbitration award was, in fact, issued.  There was no agreement on any other aspect of the case.

8.      The claim that the parties were attempting settlement is not an excuse for not being diligent in abiding by deadlines imposed by the current DCO.  Defendants admit that if not for some unexplained administrative glitch, they would have served the third party defendants long ago.

9.      Finally, the Defendants never approached the Plaintiff to discuss the upcoming deadline, seek an agreement to extend it, seek a new DCO, or seek leave before the deadline expired, until after the Plaintiff filed its motion to strike.

10.     Therefore, it appears that Defendants simply missed a deadline, and, instead of taking responsibility for that, are blaming counsel for Plaintiff and trying to cast him as the villain to this court.

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that it be granted the relief sought herein, and in the motion to strike, and for such other and further relief to which it may show itself justly entitled.

Respectfully Submitted,

**RENTEA & ASSOCIATES**

700 Lavaca, Suite 1400-2678
Austin, Texas  78701
(512) 472-6291
(512) 472-6278 Facsimile
brentea@rentealaw.com


By: */s/ Bogdan Rentea*                                    
   Bogdan Rentea
   State Bar No. 16781000
ATTORNEYS FOR PLAINTIFF

<u>CERTIFICATE OF SERVICE</u>

     I hereby certify that on the 21st day of March, 2018, a true and correct copy of the foregoing Plaintiff's Response and Partial Opposition to Defendants' Motion for Continuance and Entry of New DCO, and Reply to Defendants' Response to Motion to Strike was served on the parties through their counsel of record as follows:

| | |
|---|---|
| Derrick Carson | Via Email: dcarson@lockelord.com |
| Deanna Willson | Via Email: Deanna.willson@lockelord.com |
| Christian Perez | Via Email: cperez@lockelord.com |
| Locke Lord LLP | |
| 2800 JPMorgan Chase Tower | |
| 600 Travis Street | |
| Houston, Texas 77002 | |


*/s/ Bogdan Rentea*                                    
Bogdan Rentea

3/21/2018 8:31 AM
Chris Daniel - District Clerk Harris County
Envelope No. 23308509
By: janel gutierrez
Filed: 3/21/2018 8:31 AM

Cause No. __2016-87708__

| | | |
|---|---|---|
| HASSELL CONSTRUCTION COMPANY, INC., | § | IN THE DISTRICT COURT OF |
| *Plaintiff* | § | |
| | § | |
| v. | § | HARRIS COUNTY, TEXAS |
| | § | |
| ROYCE HASSELL and | § | |
| SILVIA HASSELL, | § | |
| *Defendants* | § | __113TH__ JUDICIAL DISTRICT |

## ORDER

After considering Defendants' Motion for Continuance, Plaintiff's response, and the arguments of counsel, the Court finds that said Motion should be **GRANTED**, as follows:

It is **ORDERED** that the trial of this case is hereby removed from the two-week trial docket beginning on July 2, 2018.

It is further **ORDERED** that the trial of this case is assigned to the two-week trial docket beginning on **April 15, 2019**.

It is further **ORDERED** that the pre-trial deadlines will be governed by the deadlines in **Exhibit A**, as proposed by Plaintiff, and attached to this Order.

Signed this ____ day of _____ 2018.

_____
MICHAEL LANDRUM, JUDGE PRESIDING

# **EXHIBIT A**

Cause No. ___2016-87708___

| | |
|---|---|
| HASSELL CONSTRUCTION COMPANY, INC.,<br>　　　*Plaintiff*<br><br>v.<br><br>ROYCE HASSELL and<br>SILVIA HASSELL,<br>　　　*Defendants* | § IN THE DISTRICT COURT OF<br>§<br>§<br>§<br>§ HARRIS COUNTY, TEXAS<br>§<br>§<br>§<br>§ ___113TH___ JUDICIAL DISTRICT |

## **FIRST AMENDED DOCKET CONTROL ORDER**

1.　**2/2/18**　　**JOINDER**. All parties must be added and served, whether by amendment or third party practice, by this date.

2.　　　　**EXPERT WITNESS DESIGNATION**. Expert witness designations are required and must be served by the following dates. The designation must include the information listed in Rule 194.2(f). Failure to timely respond will be governed by Rule 193.6.

(a)　**3/5/18**　　Experts for parties seeking affirmative relief.
(b)　**4/4/18**　　All other experts.

3.　　　　**STATUS CONFERENCE**. Parties shall be prepared to discuss all aspects of the case including ADR with the court on this date.
　　　　　　**TIME**:　Failure to appear will be grounds for dismissal for want of prosecution.

4.　　　　**DISCOVERY LIMITATIONS**. The discovery limitations of Rule 190.2, if applicable, or otherwise of Rule 190.3 apply unless changed below:

(a)　　　　Total hours per side for oral depositions.
(b)　　　　Number of interrogatories that may be served by each party on any other party.

5.　　　　**ALTERNATIVE DISPUTE RESOLUTION**.

(a)　　　　By this date the parties must either (1) file an agreement for ADR stating the form of ADR requested and the name of an agreed mediator, if applicable; or (2) set an objection to ADR. If no agreement or object is filed the court may sign an ADR order.
(b)　　　　ADR conducted pursuant to the agreement of the parties must be completed by this date.

6.   **03/11/19**   **DISCOVERY PERIOD ENDS**. All discovery must be conducted before the end of the discovery period. Parties seeking discovery must serve request sufficiently far in advance of the end of the discovery period that the deadline for responding will be within the discovery period.  Counsel may conduct discovery beyond this deadline by agreement Incomplete discovery will not delay the trial.

7.      **DISPOSITIVE MOTIONS AND PLEAS**. Must be heard by oral hearing or submission.

(a)      If subject to an interlocutory appeal, dispositive motions or pleas must be heard by this date.

(b)   **03/11/19**   Summary judgment motions not subject to an interlocutory appeal must be heard by this date.

(c)   **02/11/19**   Rule 166a(i) motions may not be heard before this date.

8.   **02/25/19**   **CHALLENGES TO EXPERT TESTIMONY**. All motions to exclude expert testimony and evidentiary challenges to expert testimony must be filed by this date, unless extended by leave of court.

9.   **03/04/19**   **PLEADINGS**. All amendments and supplements must be filed by this date. This order does not preclude prompt filing of pleadings directly responsive to any timely filed pleadings.

10.      **DOCKET CALL** Parties shall be prepared to discuss all aspects of trial with the court on this date.
**TIME**: Failure to appear will be grounds for dismissal for want of prosecution.

11.   **04/15/19**   **TRIAL**. If not assigned by the second Friday following this date, the case will be reset.

4/3/2018 7:19 PM
Chris Daniel - District Clerk Harris County
Envelope No. 23624027
By: janel gutierrez
Filed: 4/3/2018 7:19 PM

CAUSE NO. 2016-87708

| | | |
|---|---|---|
| HASSELL CONSTRUCTION CO., INC., | § | IN THE DISTRICT COURT |
| *Plaintiff,* | § | |
| | § | |
| v. | § | HARRIS COUNTY, TEXAS |
| | § | |
| ROYCE HASSELL and SILVIA HASSELL, | § | |
| *Defendants.* | § | 113th JUDICIAL DISTRICT |

## AMENDED AGREED MOTION FOR CONTINUANCE

Plaintiff Hassell Construction Co., Inc. ("Plaintiff") and Defendants Royce Hassell and Silvia Hassell ("Defendants" and together with Plaintiff, the "Parties") hereby file this Amended Agreed Motion for Continuance and Entry of an Amended Docket Control Order (the "Motion").

Plaintiff filed this lawsuit on December 22, 2016. Defendants answered on April 19, 2017 and Defendant Royce Hassell filed a Counterclaim and Third-Party Petition on May 19, 2017. Pursuant to the Court's May 23, 2016 Docket Control Order, this case is currently set for trial on July 2, 2018. The Parties respectfully request that this Court continue the current trial setting to a new two-week trial docket beginning on April 15, 2019 and enter the proposed Amended Docket Control Order that is attached as Exhibit A to this Agreed Motion for Continuance. Plaintiff originally opposed the docket control order to the extent that some deadlines may have lapsed, but has since withdrawn its opposition. Accordingly, this Motion has been amended to indicate that it is an Agreed Motion for Continuance.

The Parties voluntarily decided to temporarily abate the prosecution of this lawsuit due to potential implications of ongoing related disputes. The temporary abatement lasted approximately nine months due to a bankruptcy stay, an arbitration proceeding, and an agreement

between the Parties.  Accordingly, very minimal fact discovery has occurred and no depositions have been noticed or taken.

The Parties request a continuance in order to have the opportunity to conduct discovery and properly prepare for trial.  This is the Parties' first request for continuance.  This continuance is not sought merely for delay, but so that justice and judicial economy may be properly served.

The Parties respectfully request that this matter be removed from this Court's July 2, 2018 trial docket, be reset for the April 15, 2019 trial docket and that pretrial deadlines be continued as set forth in the Amended Docket Control Order attached as Exhibit A.


Respectfully submitted,

**RENTEA & ASSOCIATES**                              **LOCKE LORD LLP**

By:*/s/Bogdan Rentea by perm DMW*          By: _____
      BOGDAN RENTEA                                       DERRICK CARSON
      State Bar No. 1678100                                 State Bar No. 24001847
      700 Lavaca Street                                        DEANNA WILLSON
      Suite 1400-2678                                          State Bar No. 24092759
      Austin, Texas 78701                                    CHRISTIAN PEREZ
      (512) 472 -6291 – Telephone                      State Bar No. 24098243
      (512) 472-6278 – Facsimile                         2800 JPMorgan Chase Tower
                                                                    600 Travis St.
      ATTORNEY FOR PLAINTIFF                     Houston, Texas  77002
                                                                    dcarson@lockelord.com
                                                                    Deanna.willson@lockelord.com
                                                                    cperez@lockelord.com
                                                                    (713) 226-1197 - Telephone
                                                                    (713) 223-2622 - Facsimile

                                                                    ATTORNEYS FOR DEFENDANTS
                                                                    ROYCE AND SILVIA HASSELL
                                                                    AND COUNTER-PLAINTIFF
                                                                    ROYCE HASSELL

## CERTIFICATE OF CONFERENCE

I certify that on April 3, 2018, counsel for Defendants conferred with counsel for Plaintiff.  As of April 3, 2018, Plaintiff is agreed to this Motion and the corresponding Agreed Amended Docket Control Order.

_____
**Derrick Carson**

## CERTIFICATE OF SERVICE

I certify that on April 3, 2018, a true and correct copy of the foregoing document was served on the following counsel of record:

Bogdan Rentea
Rentea & Associates
700 Lavaca, Suite 1400-2678
Austin, Texas 78701
(512) 472-6291
(512) 472-6278 (facsimile)
brentea@rentealaw.com

_____
**Derrick Carson**

4/3/2018 7:19:51 PM
Chris Daniel - District Clerk
Harris County
Envelope No: 23624027
By: MOSE, JANEL E
Filed: 4/3/2018 7:19:51 PM

CAUSE NO. 2016-87708

| | | |
|---|---|---|
| HASSELL CONSTRUCTION CO., INC., | § | IN THE DISTRICT COURT |
| *Plaintiff,* | § | |
| | § | |
| v. | § | HARRIS COUNTY, TEXAS |
| | § | |
| ROYCE HASSELL and SILVIA HASSELL, | § | |
| *Defendants.* | § | 113th JUDICIAL DISTRICT |

## ORDER GRANTING AGREED MOTION FOR CONTINUANCE

After considering the Agreed Motion for Continuance, the Court finds that said Motion should be **GRANTED**.

It is therefore **ORDERED** that the trial of this case is hereby removed from the two-week trial docket beginning on July 2, 2018.

It is further **ORDERED** that the trial of this case is assigned to the two-week trial docket beginning on April 15, 2019.

It is further **ORDERED** that the pre-trial deadlines will be governed by the deadlines in **Exhibit A** to this Order.

Signed this _____ day of _____ 2018.

_____
HONORABLE JUDGE LANDRUM

# **EXHIBIT A**

CAUSE NO. 2016-87708

| | | |
|---|---|---|
| HASSELL CONSTRUCTION CO., INC., | § | IN THE DISTRICT COURT |
| *Plaintiff,* | § | |
| | § | |
| v. | § | HARRIS COUNTY, TEXAS |
| | § | |
| ROYCE HASSELL and | § | |
| SILVIA HASSELL, | § | |
| *Defendants.* | § | 113th JUDICIAL DISTRICT |

**AGREED FIRST AMENDED DOCKET CONTROL ORDER**

1. **11/12/18**    **JOINDER.** All parties must be added and served, whether by amendment or third party practice, by this date.

2.    **EXPERT WITNESS DESIGNATION.** Expert witness designations are required and must be served by the following dates. The designation must include the information listed in Rule 194.2(f). Failure to timely respond will be governed by Rule 193.6.
(a) **12/10/18**    Experts for parties seeking affirmative relief.
(b) **01/14/19**    All other experts.

3.    **STATUS CONFERENCE.** Parties shall be prepared to discuss all aspects of the case including ADR with the court on this date.
TIME:    Failure to appear will be grounds for dismissal for want of prosecution.

4.    **DISCOVERY LIMITATIONS.** The discovery limitations of Rule 190.2, if applicable, or otherwise of Rule 190.3 apply unless changed below:
(a)    Total hours per side for oral depositions.
(b)    Number of interrogatories that may be served by each party on any other party.

5.    **ALTERNATIVE DISPUTE RESOLUTION.**
(a)    By this date the parties must either (1) file an agreement for ADR stating the form of ADR requested and the name of an agreed mediator, if applicable; or (2) set an objection to ADR. If no agreement or object is filed the court may sign an ADR order.
(b)    ADR conducted pursuant to the agreement of the parties must be completed by this date.

6.  **03/11/19**     **DISCOVERY PERIOD ENDS.**  All discovery must be conducted before the end of the discovery period.  Parties seeking discovery must serve request sufficiently far in advance of the end of the discovery period that the deadline for responding will be within the discovery period.  Counsel may conduct discovery beyond this deadline by agreement  Incomplete discovery will not delay the trial.

7.              **DISPOSITIVE MOTIONS AND PLEAS.**  Must be heard by oral hearing or submission.

(a)             If subject to an interlocutory appeal, dispositive motions or pleas must be heard by this date.

(b) **03/11/19**   Summary judgment motions not subject to an interlocutory appeal must be heard by this date.

(c) **02/11/19**   Rule 166a(i) motions may not be heard before this date.

8. **02/25/19**    **CHALLENGES TO EXPERT TESTIMONY.**  All motions to exclude expert testimony and evidentiary challenges to expert testimony must be filed by this date, unless extended by leave of court.

9.  **03/04/19**   **PLEADINGS.**  All amendments and supplements must be filed by this date.  This order does not preclude prompt filing of pleadings directly responsive to any timely filed pleadings.

10.             **DOCKET CALL**
Parties shall be prepared to discuss all aspects of trial with the court on this date.
TIME:  Failure to appear will be grounds for dismissal for want of prosecution.

11. **04/15/19**   **TRIAL.**  If not assigned by the second Friday following this date, the case will be reset.

4/4/2018 9:24 AM
Chris Daniel - District Clerk Harris County
Envelope No. 23630179
By: janel gutierrez
Filed: 4/4/2018 9:24 AM

Cause No.  2016-87708

| | | |
|---|---|---|
| HASSELL CONSTRUCTION COMPANY, INC., | § | IN THE DISTRICT COURT OF |
| *Plaintiff* | § | |
| | § | |
| v. | § | HARRIS COUNTY, TEXAS |
| | § | |
| ROYCE HASSELL and | § | |
| SILVIA HASSELL, | § | |
| *Defendants* | § |  113TH  JUDICIAL DISTRICT |

## NOTICE OF WITHDRAWAL OF MOTION AND CANCELLATION OF HEARING

Plaintiff hereby gives notice to the Court and all parties that it is withdrawing its ***Motion to Strike Untimely Attempt to Join Parties,*** currently set for hearing on April 6, 2018, at 9:00 A.M., in the 113th District Court, and that said hearing is therefore CANCELLED/PASSED.

Respectfully Submitted,

**RENTEA & ASSOCIATES**
700 Lavaca, Suite 1400-2678
Austin, Texas  78701
(512) 472-6291
(512) 472-6278 Facsimile
brentea@rentealaw.com

By: */s/ Bogdan Rentea*
Bogdan Rentea
State Bar No. 16781000
ATTORNEY FOR PLAINTIFF

## CERTIFICATE OF SERVICE

By my signature above, I hereby certify that on this 4th day of April, 2018, a true and correct copy of the foregoing Notice was served on the parties through their counsel of record via the Court's e-file system and as follows:

Derrick Carson          Via Email: dcarson@lockelord.com
Deanna Willson         Via Email: Deanna.willson@lockelord.com
Christian Perez          Via Email: cperez@lockelord.com
Locke Lord LLP
2800 JPMorgan Chase Tower
600 Travis Street
Houston, Texas 77002

# **EXHIBIT A**

CAUSE NO. 2016-87708

| | | |
|---|---|---|
| HASSELL CONSTRUCTION CO., INC., | § | IN THE DISTRICT COURT |
| *Plaintiff,* | § | |
| | § | |
| v. | § | HARRIS COUNTY, TEXAS |
| | § | |
| ROYCE HASSELL and | § | |
| SILVIA HASSELL, | § | |
| *Defendants.* | § | 113th JUDICIAL DISTRICT |

**AGREED FIRST AMENDED DOCKET CONTROL ORDER**

1. **11/12/18**    **JOINDER.** All parties must be added and served, whether by amendment or third party practice, by this date.

2.    **EXPERT WITNESS DESIGNATION.** Expert witness designations are required and must be served by the following dates.   The designation must include the information listed in Rule 194.2(f). Failure to timely respond will be governed by Rule 193.6.
   (a) **12/10/18**    Experts for parties seeking affirmative relief.
   (b) **01/14/19**    All other experts.

3.    **STATUS CONFERENCE.** Parties shall be prepared to discuss all aspects of the case including ADR with the court on this date.
   TIME:    Failure to appear will be grounds for dismissal for want of prosecution.

4.    **DISCOVERY LIMITATIONS.** The discovery limitations of Rule 190.2, if applicable, or otherwise of Rule 190.3 apply unless changed below:
   (a)    Total hours per side for oral depositions.
   (b)    Number of interrogatories that may be served by each party on any other party.

5.    **ALTERNATIVE DISPUTE RESOLUTION.**
   (a)    By this date the parties must either (1) file an agreement for ADR stating the form of ADR requested and the name of an agreed mediator, if applicable; or (2) set an objection to ADR. If no agreement or object is filed the court may sign an ADR order.
   (b)    ADR conducted pursuant to the agreement of the parties must be completed by this date.

6. **03/11/19**     **DISCOVERY PERIOD ENDS.**  All discovery must be conducted before the end of the discovery period.  Parties seeking discovery must serve request sufficiently far in advance of the end of the discovery period that the deadline for responding will be within the discovery period.  Counsel may conduct discovery beyond this deadline by agreement  Incomplete discovery will not delay the trial.

7.              **DISPOSITIVE MOTIONS AND PLEAS.**  Must be heard by oral hearing or submission.

(a)              If subject to an interlocutory appeal, dispositive motions or pleas must be heard by this date.

(b) **03/11/19**     Summary judgment motions not subject to an interlocutory appeal must be heard by this date.

(c) **02/11/19**     Rule 166a(i) motions may not be heard before this date.

8. **02/25/19**     **CHALLENGES TO EXPERT TESTIMONY.**  All motions to exclude expert testimony and evidentiary challenges to expert testimony must be filed by this date, unless extended by leave of court.

9. **03/04/19**     **PLEADINGS.**  All amendments and supplements must be filed by this date.  This order does not preclude prompt filing of pleadings directly responsive to any timely filed pleadings.

10.              **DOCKET CALL** Parties shall be prepared to discuss all aspects of trial with the court on this date. TIME:  Failure to appear will be grounds for dismissal for want of prosecution.

11. **04/15/19**     **TRIAL.**  If not assigned by the second Friday following this date, the case will be reset.

4/16/2018 4:21 PM
Chris Daniel - District Clerk Harris County
Envelope No. 23931195
By: Jacob Blessing
Filed: 4/16/2018 4:21 PM

## CIVIL PROCESS REQUEST

**FOR EACH PARTY SERVED YOU MUST FURNISH ONE (1) COPY OF THE PLEADING**
**FOR WRITS FURNISH TWO (2) COPIES OF THE PLEADING PER PARTY TO BE SERVED**

**CASE NUMBER:** 2016-87708

**CURRENT COURT:** 113th Judicial District

**TYPE OF INSTRUMENT TO BE SERVED** (See Reverse For Types): Citation, Original Answer, Counterclaim and Third Party Petition of Phillip Hassell, Michael Hassell and Shawn

**FILE DATE OF MOTION:** 04/16/2018     Potts Hassell and Joinder of Jason Hassell

Month/     Day/     Year

**SERVICE TO BE ISSUED ON** (Please List Exactly As The Name Appears In The Pleading To Be Served):

1. NAME: R. Hassell Properties, Inc.

   ADDRESS: 12512 Cutten Road, Houston, Texas 77066

   AGENT, (if applicable): Royce Hassell

**TYPE OF SERVICE/PROCESS TO BE ISSUED** (see reverse for specific type): Citation

**SERVICE BY** (check one):

- [ ] **ATTORNEY PICK-UP**                    [ ] **CONSTABLE**
- [X] **CIVIL PROCESS SERVER** - Authorized Person to Pick-up: Ron Harris, Civil Process Co Phone: 713-545-2336
- [ ] **MAIL**                                [ ] **CERTIFIED MAIL**
- [ ] **PUBLICATION:**
  Type of Publication:  [ ] **COURTHOUSE DOOR,** or
                        [ ] **NEWSPAPER OF YOUR CHOICE:**
- [ ] **OTHER,** explain

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

\*\*\*\*

2. NAME: Terry Tauriello

   ADDRESS: 12512 Cutten Road, Houston, Texas 77066

   AGENT, (if applicable):

**TYPE OF SERVICE/PROCESS TO BE ISSUED** (see reverse for specific type): Citation

**SERVICE BY** (check one):

- [ ] **ATTORNEY PICK-UP**                    [ ] **CONSTABLE**
- [X] **CIVIL PROCESS SERVER** -  Authorized Person to Pick-up Ron Harris, Civil Process Co Phone: 713-545-2336
- [ ] **MAIL**                                [ ] **CERTIFIED MAIL**
- [ ] **PUBLICATION:**
  Type of Publication:  [ ] **COURTHOUSE DOOR,** or
                        [ ] **NEWSPAPER OF YOUR CHOICE:**
- [ ] **OTHER,** explain

**ATTORNEY (OR ATTORNEY'S AGENT) REQUESTING SERVICE:**

NAME: Bogdan Rentea - Rentea & Associates     TEXAS BAR NO./ID NO. 16781000

MAILING ADDRESS: 700 Lavaca, Suite 1400-2678, Austin, Texas 78701

PHONE NUMBER: 512     472-6291     FAX NUMBER: 512     472-6278
area code    phone number              area code    fax number

EMAIL ADDRESS: brentea@rentealaw.com

CIVC108 Revised 9/2/99

SERVICE REQUESTS WHICH CANNOT BE PROCESSED BY THIS OFFICE WILL BE HELD FOR 30 DAYS PRIOR TO CANCELLATION.  FEES WILL BE REFUNDED ONLY UPON REQUEST, OR AT THE DISPOSITION OF THE CASE. SERVICE REQUESTS MAY BE REINSTATED UPON APPROPRIATE ACTION BY THE PARTIES.

INSTRUMENTS TO BE SERVED:
(Fill In Instrument Sequence Number, i.e. 1st, 2nd, etc.)

ORIGINAL PETITION
_____     AMENDED PETITION
_____     SUPPLEMENTAL PETITION


COUNTERCLAIM
_____     AMENDED COUNTERCLAIM
_____     SUPPLEMENTAL COUNTERCLAIM

CROSS-ACTION:
_____     AMENDED CROSS-ACTION
_____     SUPPLEMENTAL CROSS-ACTION

THIRD-PARTY PETITION:
_____     AMENDED THIRD-PARTY PETITION
_____     SUPPLEMENTAL THIRD-PARTY PETITION

INTERVENTION:
_____     AMENDED INTERVENTION
_____     SUPPLEMENTAL INTERVENTION

INTERPLEADER
_____     AMENDED INTERPLEADER
_____     SUPPLEMENTAL INTERPLEADER


INJUNCTION

MOTION TO MODIFY

SHOW CAUSE ORDER

TEMPORARY RESTRAINING ORDER


BILL OF DISCOVERY:
    ORDER TO: _____
                                    (specify)

    MOTION TO: _____
                                    (specify)

PROCESS TYPES:

NON WRIT:
CITATION
ALIAS CITATION
PLURIES CITATION
SECRETARY OF STATE CITATION
COMMISSIONER OF INSURANCE
HIGHWAY COMMISSIONER
CITATION BY PUBLICATION
NOTICE
SHORT FORM NOTICE

PRECEPT (SHOW CAUSE)
RULE 106 SERVICE

SUBPOENA

WRITS:
ATTACHMENT (PROPERTY)
ATACHMENT (WITNESS)
ATTACHMENT (PERSON)

CERTIORARI

EXECUTION
EXECUTION AND ORDER OF SALE

GARNISHMENT BEFORE JUDGMENT
GARNISHMENT AFTER JUDGMENT

HABEAS CORPUS
INJUNCTION
TEMPORARY RESTRAINING ORDER

PROTECTIVE ORDER (FAMILY CODE)
PROTECTIVE ORDER (CIVIL CODE)

POSSESSION (PERSON)
POSSESSION (PROPERTY)


SCIRE FACIAS
SEQUESTRATION
SUPERSEDEAS

CIVC108 Revised 9/2/99

4/17/2018 10:57 AM
Chris Daniel - District Clerk Harris County
Envelope No. 23945716
By: Jacob Blessing
Filed: 4/17/2018 10:57 AM

Cause No. __2016-87708__

| | | |
|---|---|---|
| HASSELL CONSTRUCTION COMPANY, INC., | § | IN THE DISTRICT COURT OF |
| *Plaintiff,* | § | |
| | § | |
| v. | § | HARRIS COUNTY, TEXAS |
| | § | |
| ROYCE HASSELL and | § | |
| SILVIA HASSELL, | § | |
| *Defendants.* | § | 113TH JUDICIAL DISTRICT |

**ORIGINAL ANSWER, COUNTERCLAIM AND THIRD-PARTY PETITION
OF PHILLIP HASSELL, MICHAEL HASSELL AND
<u>SHAWN POTTS HASSELL AND JOINDER OF JASON HASSELL</u>**

NOW COME PHILLIP HASSELL ("Phillip"), MICHAEL HASSELL ("Michael"), and SHAWN POTTS HASSELL ("Shawn") and file the following in response to ROYCE HASSELL'S ("Royce") counterclaim and third-party petition.  In addition, Phillip, Michael and Shawn file their counterclaim and third-party petition, and JASON HASSELL ("Jason") joins in the counterclaim and third-party action of Phillip, Michael, and Shawn, as permitted under rule 40 of the T.R.C.P.[1] The parties would show the Court as follows:

### I.  GENERAL DENIAL, COUNTER CLAIM and THIRD-PARTY PETITION OF PHILLIP, MICHAEL, SHAWN and JASON

1.      Phillip, Michael and Shawn generally deny, all and singular, the allegations in Royce's petition and demand strict proof of all allegations in accordance with the law.

2.      For their **COUNTER CLAIM** against Royce, Phillip, Michael, Shawn and Jason, would show as follows:

a.      Pursuant to Rule 47 of the T.R.C.P., they seek damages over $1,000,000 against Royce;

---

[1] Phillip, Michael, Shawn and Jason, hereby bring their claims in their individual capacities, as well as in their capacities as beneficiaries of the JAMES C. HASSELL INTERVIVOS TRUST, ("Trust").

b.      Due to Royce's claimed status in and former status with HCCI, Royce, at all times relevant herein, owed a fiduciary duty to them; additionally, because of the confidential relationship among the parties, Royce owed an informal fiduciary duty to them.

c.      FIRST, Royce breached that fiduciary duty by activating a business in competition with HCCI, under the corporate name of R. Hassell Properties, Inc., ("RHP") and by using funds designated to reduce a debt owed to HCCI, to capitalize RHP;

d.      Royce's actions in operating RHP caused damages to HCCI and, in turn, Phillip, Michael, Shawn and Jason's interest in HCCI was diminished, for which they now sue.

e.      SECOND, Royce repeatedly represented to Phillip, Michael, Shawn and Jason, that he would pay a promissory note and repay a line of credit, and in reliance thereto, they agreed to allow the family owned and controlled business, to extend credit to Royce. See for example handwritten note from Royce Hassell, attached hereto as **Exhibit A.**

f.      Royce further represented to Phillip, Michael, Shawn and Jason, that the moneys borrowed would be used for business and not personal purposes and, in reliance on those representations, they agreed to allow the family owned and controlled business to continue to extend credit to Royce. See for example emails between Phillip and Royce, attached hereto **as Exhibit B.**

Additionally, Royce induced the family members to agree to extend and provide bonding capacity to Royce's business, by providing false financial information about his financial position.

Royce lied about and intentionally failed to disclose: (i) the use of borrowed funds, (ii) liens filed on construction projects for which he was borrowing money, (iii) the solvency

of his companies, (iv) the fact that he was under "funds control", (v) the fact that bonding companies had rejected him, (vi) his affiliation with HCCI, (vii) his forgery of Phil's signature on documents, (viii) the validity of liens which he voluntarily gave on his properties[2].

Last, but certainly not least, and maybe the most damaging to the family members, was the fact that Royce fraudulently induced his family, by lying to Phil and causing him to sign, under false representation as to its real purpose, a joint venture agreement.

The joint venture agreement was represented to be needed ONLY[3] for insurance purposes and was never meant to be a real agreement to split profits on construction jobs, especially ones that Royce NEVER worked on or had anything to do with. The improper use of the joint venture agreement caused significant damages to the family members.

g.      The representations of Royce were false, made with the intention that the family members rely on them, and the family members relied on them to their damage and detriment.

h.      These family members put their trust and confidence in Royce, the company business, HCCI was damaged by those false representations, and breaches of the informal fiduciary duty, and, in turn, Phillip, Michael, Shawn and Jason's interest in HCCI[4] and in a Trust has been diminished, for which they now sue.

i.      THIRD, Royce continues to take actions specifically designed to harm these family members. Specifically, as recently as April 10, 2018, Royce supported an application for a writ of garnishment against HCCI's bank account, by intentionally giving misleading information therein. Knowing that HCCI's bank accounts were subject to a lien by

---

[2] This is not an exclusive, but a representative list only
[3] See **Exhibit C.**

3

Community Bank, based on records available to him on the Texas Secretary of State's website,[5] he intentionally failed to mention that lien in his sworn affidavit to the Court. Knowing that all of the funds in those bank accounts were subject to a lien by the bank, and that he would never obtain a dime from the garnishment, he nevertheless obtained one for the sole purpose of harming the family business.

3.     For their **THIRD-PARTY CLAIMS**, Phillip, Michael, Shawn and Jason show as follows:

     a.     Pursuant to Rule 40 of the TRCP, they bring this third party action against RHP and Terry Tauriello.

     b.     RHP may be served by serving its registered agent, Royce Hassell, at 12512 Cutten Road, Houston, Texas, 77066.

     c.     Terry Tauriello, may be served at 12512 Cutten Road, Houston, Texas, 77066.

     d.     The court has personal jurisdiction over these third parties, because they do business in Texas, and in Harris County.

     e.     The court has subject matter jurisdiction because the amount in controversy is within this court's jurisdictional limits.  Pursuant to Rule 47 of the TRCP, they seek damages over $1,000,000.

     f.     Venue is proper because all actions and omission occurred primarily in Harris County, Texas.

---

[4] "HCCI" means Hassell Construction Company, Inc.

[5] Royce's affidavit references the UCC filings obtained by him from the Texas Secretary of State's office. Therefore, he had not only constructive, but actual knowledge of the bank lien on the HCCI bank accounts.

g.      RHP and Tauriello, took actions designed to damage HCCI and its owners, by, inter alia, diverting assets and business opportunities rightfully belonging to HCCI;[6]

h.      Phillip, Michael, Shawn and Jason, were damaged by the actions of these third parties, and bring this action to recover their damages.

## II. ATTORNEY FEES

4.      Phillip, Michael, Shawn and Jason hereby request that they be granted their attorney fees as allowed by law.

## III. PRAYER

WHEREFORE, Phillip, Michael, Shawn, and Jason Hassell, pray that Third-Party Defendants be cited to appear and answer herein, and that, after trial, they be granted their damages, interest, attorney fees, and all other and further relief to which they may show themselves entitled.

Respectfully Submitted,

**RENTEA & ASSOCIATES**
700 Lavaca, Suite 1400-2678
Austin, Texas 78701
(512) 472-6291
(512) 472-6278 Facsimile
brentea@rentealaw.com

By: */s/ Bogdan Rentea*
    Bogdan Rentea
    State Bar No. 16781000

ATTORNEY FOR PLAINTIFF, and
PHILLIP, MICHAEL, SHAWN
and JASON HASSELL

---

[6]  Phillip, Michael, Shawn and Jason reserve the right to amend their third-party action to add, after discovery, any additional parties, including, but not limited to, the officers and directors of RHP, including Cindy Grooms and Ricardo Todeschini, or any other person that aided and abetted in the formation of RHP and contributed to the damages alleged herein.

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 16th day of April, 2018, a true and correct copy of the foregoing *Original Answer, Counterclaim and Third-Party Petition of Phillip Hassell, Michael Hassell, Shawn Potts Hassell and Jason Hassell* was served on all opposing parties through their counsel of record as follows:

        Derrick Carson       Via Email: dcarson@lockelord.com
        Locke Lord LLP
        2800 JPMorgan Chase Tower
        600 Travis Street
        Houston, Texas 77002

                                      */s/ Bogdan Rentea*
                                        Bogdan Rentea

Action Plan
2/17/12

I, Royce James Hassell, propose this Action plan to Reduce our debit And to preserve our Ability to pay Off our Obligations - going forward.

## PREAmble
Pre conditions

1. Silvia & I fully Recenize that our Obligations Are of our own making & that what we do has & will impact others.

2. It is our Desire to contaive working/bidding on projects ta order to make a profit that would Enable us to pay off our Obligators.

3. WE will Need to market our Reales tate in the utmost favourable position to Maximize our Return for that purpose.

4. To preserve our strengths As A Samily And to Ask for forgiveness for Any ill Feellings, thurt, pain, Economic Loss stress that we have placed Anyone in own CAUSED Anyone.

CCI Ex. 24

**Exhibit A**

HCCI Ex. 24

HCCI-AAA-PRODUCTION-002963

5. To work with every ounce God can give us both to work toward a resolution & restoration.

6. To fully Trust in God, His Faithfulness, Provision, Grace, Wisdom & Love.

(this should Be #1)

7. To learn meekness, humbleness & exhibit them To have a better attitude towards others.

## Action

1. To move into Building on Cotton Road or Trailer (not sure Enough time to do immediately) - store excess @ Duncan until sold or other places

2. Continue to work to make Springwood & Kingwood profitable & future projects

3. Help Phillip / Shawn / Mike in Anyway Possible from Running the Office to mopping the floors & to oversee Projects for us to be profitable to pay our obligations.

4. To give 100% of my time & energy During working hours to make us (family) successful, whole and complete.

HCCI-AAA-PRODUCTION-002964

5. To resolve all past dues so that I can focus on the bright future.

6. Reduce the stress on everyone involved - immediately

7. To accept God's will in all this whichever way he leads us.

## Conclusion

I accept responsibility for all past events, ask for forgiveness and pledge to use my God given talents to go forward, to work hard to fulfill my obligations, to trust in others and to be resolved to accept whichever way God takes us. I feel that God has blessed me throughout my life and he will not foresake me but will provide me an opportunity to be successful in my future.

Roger J Howell

P.S. I love you so very much & I am so

HCCI-AAA-PRODUCTION-002965

To:      Royce Hassell[conrcrete@gmail.com]
Cc:      Shawn Potts[spotts@hassellconstruction.com]; Michael
Hassell[mhassell@hassellconstruction.com]
From:    Phil
Sent:    Thur 3/31/2011 12:05:32 PM
Subject: Re: payables
MAIL_RECEIVED:   Thur 3/31/2011 12:06:12 PM

You did not pay the bills that you said you were going to, furthermore you paid bills that were
not on your aging report which makes what we talked about not correct. Living expense are not
bills to vendors or subcontractors. Yes I am disappointed because I don't understand what you
are doing, the hole keeps getting deeper. How do you plan on paying the bills that did not get
paid for. We had a plan why did you change what we discussed we were going to do?

Phillip Hassell
Hassell Construction Company, Inc.
12211 Duncan Road
Houston, Texas  77066
281-893-2570 Office
281-580-9170 Fax

On Mar 31, 2011, at 11:43 AM, Royce Hassell <conrcrete@gmail.com> wrote:

Phil,

As we discussed last weekend, it is going to be April before we are
out of this hole.  Furthermore, how can you expect for me to go for
three months and not have any income to keep the business going?  I
am not complaining but I think it is unrealistic to assume that we can
just pay bills and not make payroll etc. (if we are truly working off
your LOC then we should have either included some $ for our
expenses or resolve it afterwards.  As we discussed when we did the
LOC wire, you asked me about "living money" and I said give me
some time for the dust to settle and Id get back to you.  When I did
there was no reply) Its not a very likeable situation on my part but I
don't think either of us can afford for me to not keep the projects
moving forward.  I've done that and now you are livid.

Having said that, I have tried to show you how by the end of April

Exhibit
B

HCCI Ex. 124

HCCI Ex. 124

HCCI-AAA-PRODUCTION-002957

we should be back on level ground.  Here is another recapp of
EXACTLY where we are cost vs. revenue.  I don't know what else to
show or say but that we are in much better shape than we were even
6 months ago.

| | | |
|---|---|---|
| LOC | -$1,116,342.00 | |
| Jan. Pay Request | $498,637.00 | |
| Feb. Pay | $690,899.00 | |
| March Pay | $892,000.00 | |
| Subtotal | $965,194.00 | |
| Costs thru 3/30 | | Includes the unpaids |
| Hillhouse | -$70,000.00 | |
| NC Foote | -$330,000.00 | |
| Research | -$326,000.00 | |
| FS | -$364,000.00 | |
| | -$124,806.00 | |

Obviously, I wish the $124 was a positive number but there is
money in the retainage account to cover this if we aren't able to
make it up in profit and if I don't then Ill cut you a check when the
Willowbend property closes. I don't think that will be necessary
though.  Additionally, it doesn't include any April receivables which
some of those costs are associated with.

Surely the $124 isn't a large enough amount for your Surety to
question our sustainability, is it?

Brother, I want to make this work and I trying as hard as I know how

HCCI-AAA-PRODUCTION-002958

under the circumstances.


Royce


On Thu, Mar 31, 2011 at 10:05 AM, Phil <jphassell@hassellconstruction.com> wrote:

Shawn,

Here is what should have been paid with the funds that we wired Royce, according to
the aging report that we discussed in our meeting on Friday when you were leaving for
Spring Break.
Royce sent a check preview on March 14 for NC Foote & Research and on March 15
for Hillhouse and Wayne Grey, I used these for the funds that were wired to Royce.
The only thing that changed was that I added $21,672.00 to Southern Star to pay them
in full for NC Foote because the balance was way past due. What Royce has paid is not
what we had planned on, I am not sure what the situation is. I have a meeting with Dad
tomorrow about my meeting with the bonding company next week, he is going to blow
a gasket with the bills not being paid like I presented to him. I will not be able to go to
the bonding with the current status of payment. This situation needs to be remedied
immediately. I have copied Royce on this e-mail and will call as soon as I can to
discuss it with him.


NC FOOTE: $278,441.58

| | |
|---|---|
| Acme | 13,698.90 |
| Brazos | 5,691.60 |
| Chemical | 2,782.12 |
| HCB | 34,650.00 |
| Progressive | 180,500.00 |
| Southern Star | 30,198.00 |
| Volt master | 10,920.96 |


Wayne Grey   $252,993.70

| | |
|---|---|
| DTA | 44,346.00 |
| White Water | 208,647.70 |


Hillhouse    $ 45,368.58

HCCI-AAA-PRODUCTION-002959

| | |
|---|---|
| CMC | 1,556.20 |
| CL Davis | 7,225.00 |
| Hasssell | 36,587.38 |

| | |
|---|---|
| Firestation | $270,590.73 |

| | |
|---|---|
| Advantage | 9,630.00 |
| Allstate | 7,506.81 |
| American | 42.78 |
| ARCI | 40,500.00 |
| ARCI | 27,000.00 |
| Arc. Louvers | 1,824.00 |
| CMC | 548.60 |
| Curry | 30,150.00 |
| Geargrid | 6,407.00 |
| HAD | 21,807.00 |
| HAD | 2,484.00 |
| HCB | 17,460.00 |
| Impact | 2,697.00 |
| Multi-graphics | 644.00 |
| Myrex | 1,028.79 |
| Old Spring | 24,300.00 |
| Overhead | 19,800.00 |
| Voltmaster | 47,547.00 |
| Voltmaster | 9,213.75 |

| | |
|---|---|
| Research | $268,947.53 |

| | |
|---|---|
| AAA Asphalt | 2,174.04 |
| AAA Asphalt | 14,759.82 |
| Cherry | 971.60 |
| CMC | 3,951.44 |
| Curb Planet | 4,982.50 |
| GE Capital | 3,426.01 |
| Highway Paving | 36,476.80 |
| Lazer | 4,143.82 |
| Max Heavy Haul | 1,800.00 |
| Precision | 1,485.00 |
| Southern Star | 173,370.50 |
| Steel Effects | 21,406.00 |

HCCI-AAA-PRODUCTION-002960

Phillip Hassell
Hassell Construction Company, Inc.
12211 Duncan Road
Houston, Texas  77066
<u>281-893-2570</u> Office
<u>281-580-9170</u> Fax

HCCI-AAA-PRODUCTION-002961

Phil,

my intent is to use this for the
Insurane issue which
I think we have Accomplished.

As far as the Accounting &
Lison we will continue on As-is
(with modifications As needed)

This should Be the only place /
Document Regarding the J.V.

Roger

Exhibit
C

HCCI Ex. 121

4/3/2018 7:19:51 PM
Chris Daniel - District Clerk
Harris County
Envelope No: 23624027
By: MOSE, JANEL E
Filed: 4/3/2018 7:19:51 PM

CAUSE NO. 2016-87708

| | | |
|---|---|---|
| HASSELL CONSTRUCTION CO., INC., | § | IN THE DISTRICT COURT |
| *Plaintiff,* | § | |
| | § | |
| v. | § | HARRIS COUNTY, TEXAS |
| | § | |
| ROYCE HASSELL and | § | |
| SILVIA HASSELL, | § | |
| *Defendants.* | § | 113th JUDICIAL DISTRICT |

## ORDER GRANTING AGREED MOTION FOR CONTINUANCE

After considering the Agreed Motion for Continuance, the Court finds that said Motion should be **GRANTED**.

It is therefore **ORDERED** that the trial of this case is hereby removed from the two-week trial docket beginning on July 2, 2018.

It is further **ORDERED** that the trial of this case is assigned to the two-week trial docket beginning on April 15, 2019.

It is further **ORDERED** that the pre-trial deadlines will be governed by the deadlines in **Exhibit A** to this Order.

Signed this _____ day of _____ 2018.

Signed:
4/20/2018

_____
HONORABLE JUDGE LANDRUM

# **EXHIBIT A**

CAUSE NO. 2016-87708

| | | |
|---|---|---|
| HASSELL CONSTRUCTION CO., INC., | § § | IN THE DISTRICT COURT |
| *Plaintiff,* | § § | |
| v. | § § | HARRIS COUNTY, TEXAS |
| ROYCE HASSELL and SILVIA HASSELL, | § § § | |
| *Defendants.* | § | 113th JUDICIAL DISTRICT |

### AGREED FIRST AMENDED DOCKET CONTROL ORDER

1. **11/12/18**      **JOINDER.** All parties must be added and served, whether by amendment or third party practice, by this date.

2.      **EXPERT WITNESS DESIGNATION.** Expert witness designations are required and must be served by the following dates. The designation must include the information listed in Rule 194.2(f). Failure to timely respond will be governed by Rule 193.6.

   (a) **12/10/18**      Experts for parties seeking affirmative relief.

   (b) **01/14/19**      All other experts.

3.      **STATUS CONFERENCE.** Parties shall be prepared to discuss all aspects of the case including ADR with the court on this date.
   TIME:      Failure to appear will be grounds for dismissal for want of prosecution.

4.      **DISCOVERY LIMITATIONS.** The discovery limitations of Rule 190.2, if applicable, or otherwise of Rule 190.3 apply unless changed below:

   (a)      Total hours per side for oral depositions.

   (b)      Number of interrogatories that may be served by each party on any other party.

5.      **ALTERNATIVE DISPUTE RESOLUTION.**

   (a)      By this date the parties must either (1) file an agreement for ADR stating the form of ADR requested and the name of an agreed mediator, if applicable; or (2) set an objection to ADR. If no agreement or object is filed the court may sign an ADR order.

   (b)      ADR conducted pursuant to the agreement of the parties must be completed by this date.

6.  **03/11/19**          **DISCOVERY PERIOD ENDS.**  All discovery must be conducted before the end of the discovery period.  Parties seeking discovery must serve request sufficiently far in advance of the end of the discovery period that the deadline for responding will be within the discovery period.  Counsel may conduct discovery beyond this deadline by agreement  Incomplete discovery will not delay the trial.

7.                        **DISPOSITIVE MOTIONS AND PLEAS.**  Must be heard by oral hearing or submission.

(a)                       If subject to an interlocutory appeal, dispositive motions or pleas must be heard by this date.

(b) **03/11/19**          Summary judgment motions not subject to an interlocutory appeal must be heard by this date.

(c) **02/11/19**          Rule 166a(i) motions may not be heard before this date.

8. **02/25/19**           **CHALLENGES TO EXPERT TESTIMONY.**  All motions to exclude expert testimony and evidentiary challenges to expert testimony must be filed by this date, unless extended by leave of court.

9. **03/04/19**           **PLEADINGS.**  All amendments and supplements must be filed by this date.  This order does not preclude prompt filing of pleadings directly responsive to any timely filed pleadings.

10.                       **DOCKET CALL**
                          Parties shall be prepared to discuss all aspects of trial with the court on this date.
                          TIME:  Failure to appear will be grounds for dismissal for want of prosecution.

11. **04/15/19**          **TRIAL.**  If not assigned by the second Friday following this date, the case will be reset.

CAUSE NO. 2016-87708

| | | |
|---|---|---|
| HASSELL CONSTRUCTION CO., INC., | § § | IN THE DISTRICT COURT |
| *Plaintiff,* | § § | |
| v. | § § | HARRIS COUNTY, TEXAS |
| ROYCE HASSELL and SILVIA HASSELL, | § § § | |
| *Defendants.* | § | 113th JUDICIAL DISTRICT |

**AGREED FIRST AMENDED DOCKET CONTROL ORDER**

1. **11/12/18**   **JOINDER.** All parties must be added and served, whether by amendment or third party practice, by this date.

2.   **EXPERT WITNESS DESIGNATION.** Expert witness designations are required and must be served by the following dates. The designation must include the information listed in Rule 194.2(f). Failure to timely respond will be governed by Rule 193.6.

(a) **12/10/18**   Experts for parties seeking affirmative relief.
(b) **01/14/19**   All other experts.

3.   **STATUS CONFERENCE.** Parties shall be prepared to discuss all aspects of the case including ADR with the court on this date.
TIME:    Failure to appear will be grounds for dismissal for want of prosecution.

4.   **DISCOVERY LIMITATIONS.** The discovery limitations of Rule 190.2, if applicable, or otherwise of Rule 190.3 apply unless changed below:

(a)   Total hours per side for oral depositions.
(b)   Number of interrogatories that may be served by each party on any other party.

5.   **ALTERNATIVE DISPUTE RESOLUTION.**
(a)   By this date the parties must either (1) file an agreement for ADR stating the form of ADR requested and the name of an agreed mediator, if applicable; or (2) set an objection to ADR. If no agreement or object is filed the court may sign an ADR order.
(b)   ADR conducted pursuant to the agreement of the parties must be completed by this date.

6.  **03/11/19**          **DISCOVERY PERIOD ENDS.**  All discovery must be conducted before the end of the discovery period.  Parties seeking discovery must serve request sufficiently far in advance of the end of the discovery period that the deadline for responding will be within the discovery period.  Counsel may conduct discovery beyond this deadline by agreement  Incomplete discovery will not delay the trial.

7.                         **DISPOSITIVE MOTIONS AND PLEAS.**  Must be heard by oral hearing or submission.

(a)                        If subject to an interlocutory appeal, dispositive motions or pleas must be heard by this date.

(b) **03/11/19**           Summary judgment motions not subject to an interlocutory appeal must be heard by this date.

(c) **02/11/19**           Rule 166a(i) motions may not be heard before this date.

8. **02/25/19**            **CHALLENGES TO EXPERT TESTIMONY.**  All motions to exclude expert testimony and evidentiary challenges to expert testimony must be filed by this date, unless extended by leave of court.

9. **03/04/19**            **PLEADINGS.**  All amendments and supplements must be filed by this date.  This order does not preclude prompt filing of pleadings directly responsive to any timely filed pleadings.

10.                        **DOCKET CALL**
                           Parties shall be prepared to discuss all aspects of trial with the court on this date.
                           TIME:  Failure to appear will be grounds for dismissal for want of prosecution.

11. **04/15/19**           **TRIAL.**  If not assigned by the second Friday following this date, the case will be reset.


                           Signed:   _[signature]_
                           4/20/2018

*P2*

Case No. 201687708

**ORTX**

HASSELL CONSTRUCTION COMPANY I

vs.

HASSELL, ROYCE

\*
\*
\*
\*
\*

IN THE DISTRICT COURT OF

HARRIS COUNTY, TEXAS

113th    JUDICIAL DISTRICT

### ORDER RESETTING TRIAL

This case is reset for TRIAL for the two week period beginning  04-15-2019.
If the case has not been reached by the second Friday after this date, the trial will be
reset. All previous pre-trial deadlines remain in effect, unless changed by the court.

If you have any questions regarding this notice, please contact the court
coordinator, JEFFREY BOYD at (832) 927-2585.


Signed


MICHAEL LANDRUM

Judge, 113TH DISTRICT COURT

Generated on: 04/23/2018


16781000

BOGDAN RENTEA
700 LAVACA STREET SUITE 1400-2678
AUSTIN, TX  78701

JCVF17
rev.12311999

Case No.  201687708

**ORTX**

HASSELL CONSTRUCTION COMPANY I          \*          IN THE DISTRICT COURT OF

vs.                                                                      \*

HASSELL, ROYCE                                        \*          HARRIS COUNTY, TEXAS

                                                                        \*

                                                                        \*          113th    JUDICIAL DISTRICT

### ORDER RESETTING TRIAL

This case is reset for TRIAL for the two week period beginning  04-15-2019.

If the case has not been reached by the second Friday after this date, the trial will be

reset. All previous pre-trial deadlines remain in effect, unless changed by the court.

If you have any questions regarding this notice, please contact the court

coordinator, JEFFREY BOYD at (832) 927-2585.


Signed


MICHAEL LANDRUM

Judge, 113TH DISTRICT COURT

Generated on: 04/23/2018


24001847

DERRICK BRYAN CARSON
600 TRAVIS STREET SUITE 2800
HOUSTON, TX  77002

JCVF17
rev.12311999



# CHRIS DANIEL
### HARRIS COUNTY DISTRICT CLERK

## Civil Process Pick-Up Form

### CAUSE NUMBER: 20 16 - 877 08

ATY _____     CIV __×__     **COURT** 113

| REQUESTING ATTORNEY/FIRM NOTIFICATION |
|---|
| *ATTORNEY: Rentea, Bogdan     * PH: 512 - 472 - 6291 |
| *CIVIL PROCESS SERVER: Ron Harris     BOX 75 |
| *PH: 713 - 545 - 2336 |
| *PERSON NOTIFIED SVC READY: Ron |
| * NOTIFIED BY: ___R. ALEXANDER |
| *DATE: ___04- 24 - 2018 |

| Type of Service Document: _CITATION__ | Tracking Number 73486374 |
|---|---|
| Type of Service Document: Citation | Tracking Number 73486375 |
| Type of Service Document: _____ | Tracking Number _____ |
| Type of Service Document: _____ | Tracking Number _____ |
| Type of Service Document: _____ | Tracking Number _____ |
| Type of Service Document: _____ | Tracking Number _____ |
| Type of Service Document: _____ | Tracking Number _____ |

**Process papers prepared by:** R. Alexander

Date: ___04__ - 24 - 2018     30 days waiting __05 - 24 - 2018

| |
|---|
| *Process papers released to: Ron Harris's |
| (PRINT NAME) |
| 713 - 545 - 2336 |
| *(CONTACT NUMBER)     (SIGNATURE) |
| *Process papers released by: J. Collin |
| (PRINT NAME) |
| I. COLINS |
| (SIGNATURE) |
| * Date: 4-22 , 2017   Time: 4:05   AM / PM |

RECORDER'S MEMORANDUM
This instrument is of poor quality
at the time of imaging

**Entire document  must be completed**     (do not change this document)   Revised 1/9/2015

5/16/2018 4:27 PM
Chris Daniel - District Clerk Harris County
Envelope No. 24650965
By: DELTON ARNIC
Filed: 5/16/2018 4:27 PM

## CAUSE NO. 2016-87708

| | | |
|---|---|---|
| **HASSELL CONSTRUCTION CO., INC.,** | § | **IN THE DISTRICT COURT OF** |
| **Plaintiff** | § | |
| | § | |
| **v.** | § | **HARRIS COUNTY, TEXAS** |
| | § | |
| **ROYCE HASSELL, et al** | § | |
| **Defendants** | § | **113th JUDICIAL DISTRICT** |

## <u>NOTICE OF APPEARANCE AND DESIGNATION OF LEAD COUNSEL</u>

Notice is hereby given that Silvia Hassell enters her appearance as lead counsel for Defendants Royce and Silvia Hassell in this matter.  Her contact information is below.  Derrick B. Carson and Locke Lord remain as counsel of this matter.

Date:  May 15, 2018.


Respectfully submitted,


/s/ *Silvia T. Hassell*_____
Silvia T. Hassell
Texas Bar No. 09205200
sehassell@aol.com
12807 Haynes Street, Bldg. C
Houston, Texas 77066
Tel. 713-665-1812
Fax. 713-665-0369


### <u>Certificate of Service</u>

By my signature above I certify that counsel of record are being served with a copy of the foregoing Notice of Appearance and Designation as Lead Counsel via e-service as well as e-mail on this 16th day of May, 2018.

5/20/2018 1:58 PM
Chris Daniel - District Clerk Harris County
Envelope No. 24719750
By: Raven Hubbard
Filed: 5/21/2018 12:00 AM

Cause No. _2016-87708_

| | | |
|---|---|---|
| HASSELL CONSTRUCTION COMPANY, INC., | § | IN THE DISTRICT COURT OF |
| *Plaintiff* | § | |
| | § | |
| v. | § | HARRIS COUNTY, TEXAS |
| | § | |
| ROYCE HASSELL and | § | |
| SILVIA HASSELL, | § | |
| *Defendants* | § | _113TH_ JUDICIAL DISTRICT |

## **MOTION TO DISQUALIFY SILVIA HASSELL**

NOW COME the Plaintiff, the Third Party Defendants, and Third Party Plaintiffs (collectively "Plaintiffs")[1] and, in support of their motion, show as follows:

1.      This case was originally filed by HCCI on December 22, 2016, against Royce Hassell ("Royce") and Silvia Hassell ("Silvia"), (collectively "the Defendants"), seeking a declaration that neither were shareholders of HCCI, since September of 2013.

2.      The Defendants answered with a general denial, special exceptions and affirmative defenses, on April 19, 2017, by and through their lead attorney, Derrick Carson, of the law firm of Locke Lord, LLP, hereinafter ("Locke Lord").

3.      Thereafter, Royce, still represented by Locke Lord, filed an original counterclaim and third party petition on May 19, 2017.

4.      Royce's pleading was answered on April 17, 2018.

5.      On May 16, 2018, Silvia filed a *Notice of Appearance and Designation of Lead Counsel*. She announced that she would represent herself and Royce, as lead counsel in the matter; however, Derrick Carson and the law firm of Locke Lord, would remain as attorneys of record. In essence, the law firm of Locke Lord allowed their client, Silvia, to join the team representing her and her husband, and designated her as lead counsel.

---

[1]  For purposes of this motion, the collective Plaintiffs are Hassell Construction Company, Inc. ("HCCI"), Phillip Hassell ("PH"), Michael Hassell ("MH"), Shawn Potts Hassell ("SP"), and Jason Hassell ("JH").

6.      Pursuant to the guiding principles set forth in rules 1.06 and 3.08 and of the Texas Disciplinary Rules of Professional Conduct,[2] the Plaintiffs move for the disqualification of Silvia as lead attorney for Royce.

7.      The grounds for disqualification are as follows:[3]

a.      Silvia is a party, and a witness, who will be called to testify on matters relevant to the claims and defenses asserted by all parties;

b.      Silvia has represented HCCI in the past, and should not be allowed to represent a party adverse to HCCI in this proceeding;[4]

c.      Silvia has drafted agreements relevant to this proceeding, specifically the Intervivos Trust;

d.      The finder of fact may become confused if Silvia is allowed to act as both the attorney and the witness.

8.      Silvia may, of course, represent herself in this proceeding, and the Plaintiffs are not attempting to prevent that.  They simply ask that Silvia not be allowed to represent any other party.

9.      It is clear, from the list provided above, that the Plaintiffs will be prejudiced if Silvia is allowed to be designated as lead counsel.  On the other hand, neither Royce nor Silvia will be prejudiced by her disqualification.  After all, Derrick Carson and the law firm of Locke Lord, are still counsel of record.

10.      Therefore, for all the reasons stated above, and as may be further shown at the hearing on this motion, Silvia Hassell should be disqualified from representing any party, other than herself, in this matter.

---

[2]  While the disciplinary rules do not necessarily set forth controlling standards for motions to disqualify, they provide relevant guidelines for such motions.  See *Anderson Producing Inc. v. Koch Oil Co.*, 929 S.W.2d 416, 421 (Tex. 1996).

[3]  The Plaintiffs reserve the right to supplement the list of grounds for disqualification.

[4]  As a matter of fact, HCCI is currently suing Silvia for malpractice and breach of fiduciary duty, in Cause No. 2017-00535, pending in the 152nd Judicial District Court of Harris County, Texas.

WHEREFORE, PREMISES CONSIDERED, the Plaintiffs request that, after an oral and evidentiary hearing, they be granted the relief sought herein, and that they be granted such other and further relief to which they may show themselves justly entitled.

Respectfully Submitted,

**RENTEA & ASSOCIATES**
700 Lavaca, Suite 1400-2678
Austin, Texas  78701
(512) 472-6291
(512) 472-6278 Facsimile
brentea@rentealaw.com


By: */s/ Bogdan Rentea*
   Bogdan Rentea
   State Bar No. 16781000
ATTORNEY FOR PLAINTIFFS[5]

## CERTIFICATE OF CONFERENCE

By my signature above, I certify that I have communicated on this issue with opposing counsel, including Silvia Hassell.  The efforts to resolve this matter have been unsuccessful, necessitating court involvement.

## CERTIFICATE OF SERVICE

By my signature above, I hereby certify that on the 20th day of May, 2018, a true and correct copy of the foregoing *Motion to Disqualify Silvia Hassell* was served on the parties through their counsel of record via the Court's e-file system.

---

[5]  See footnote 1, supra.

3

5/19/2018 5:21 PM
Chris Daniel - District Clerk Harris County
Envelope No. 24719046
By: Raven Hubbard
Filed: 5/21/2018 12:00 AM

**CAUSE NO. 2016-87708**

| | | |
|---|---|---|
| **HASSELL CONSTRUCTION CO., INC., et al,** | § | **IN THE DISTRICT COURT OF** |
| *Plaintiffs* | § | |
| | § | |
| **v.** | § | **HARRIS COUNTY, TEXAS** |
| | § | |
| **ROYCE HASSELL, et al,** | § | |
| *Defendants.* | § | **113th JUDICIAL DISTRICT** |

## ROYCE HASSELL'S ANTI-SLAPP MOTION TO DISMISS

<u>(i)</u>

**<u>TABLE OF CONTENTS</u>**

**Page**

<u>INDEX OF EXHIBITS</u>.........................................................................................................(iv)(v)(vii)

<u>INDEX OF AUTHORITIES</u>.......................................................................................................(vii)-(x)

<u>SUMMARY/REQUESTED RELIEF</u>...................................................................................................1

**<u>I.</u>**          **<u>FACTUAL BACKGROUND</u>**

A.  By a 1986 gift, the JCH Trust, of which Royce Hassell is an equal beneficiary
with his siblings, is the majority shareholder of Hassell
Construction Co., Inc.......................................................................................................3

B.  HCCI is just one of many Hassell Family related companies: *However*, It Is the
only company in which together, all five Hassell siblings own an Interest.....................4

C.  HCCI and Royce Hassell's companies entered into multiple Joint Ventures
Beginning in 2008.........................................................................................................5

D.  In 2011, the Springwoods Project (in which HCCI owned a profit only interest
and Royce Hassell's companies bore 99% of the risk of loss) went horribly awry
due to the District's defective plans................................................................................5

E.  Phillip Hassell Proposed the Hassell 2012 Joint Venture Before the Springwoods
Project was finished in consultation with attorneys who were loyal to
Exxon and the District.....................................................................................................6

F.  Mr. Rose's law firm, simultaneously counsel for HCCI and Exxon, participated
In non-suiting HCCI's claims against the District even though Mr. Rose Is a
government official Director of the District.........................................................................7

G.  Unaware his siblings had entered an alternate universe run by Exxon
(which was liable to the taxpayers of the District HCCI had just sued),
Royce Hassell agreed to his brother's Proposal to combine his own companies
with HCCI in a partnership; only to have HCCI, the partnership
and his companies destroyed through false narratives perpetuated by lawyers
loyal to Exxon and the District.  ..................................................................................8

**(ii)**

**TABLE OF CONTENTS (Continued)**

Page

H. This latest suit by his siblings evidences they believed they personally stood to
benefit (the quid pro quo) by striking a secret deal with lawyers loyal to Exxon and
the District to blame Royce Hassell for the Springwoods Project losses........................8

I. In September of 2013, when Royce Hassell first learned Coats Rose agreed to be
HCCI's corporate counsel, Royce Hassell objected and has been objecting ever since..............9

J. As co-counsel with HCCI's corporate lawyers (who were also Exxon's lawyers)
Bogdan Rentea took over, non-suited, and refiled the same claims against the
District four and a half years after the original suit, only to lose 99% of the claims
by summary judgment on limitations..............................................................10

K. Complicit with HCCI's corporate counsel, the District's lawyers, Engvall and Lopez and
Allen Boone & Humphries, worked with lawyers they knew to be simultaneously
Exxon's lawyers and HCCI's lawyers, to defend against HCCI's suit...............................11

L. Like the Springwoods Project, the Hassell 2012 Joint Venture ended disastrously
For Royce Hassell while conflicted lawyers benefitted from the partnership
Profits HCCI now owes Royce Hassell's companies.................................................12

M. Royce Hassell did not discover his siblings' duplicity until it was too late to
stop them from non-suiting the District or squandering hard earned money
on conflicted lawyers leaving HCCI apparently destitute.........................................13

**Introduction to Legal Argument**...................................................................14

**II.    ARGUMENT AND AUTHORITIES**...................................................................15

**A.** THE TCPA...........................................................................................15

**B.** First Prong:  The New Legal Action Against Royce Hassell Must be Dismissed
Because It is Based On, Relates To, and Is in Response to Royce Hassell's Exercise
of the Right to Petition and Free Speech and His Freedom of Association...........................17

(i)      The Right to Petition and Free Speech..................................................17

(ii)     The Right of Association................................................................19

**C.** Second Prong:  This Suit Must Be Dismissed Because HCCI's Controlling Owners
Have No Evidence-Much Less "Clear and Specific" Proof-To Support Each Element
of Their Claims Against Royce Hassell..............................................................20

(iii)

**TABLE OF CONTENTS (Continued)**

Page

(i)     The Law: "Clear and Specific" Evidence..................................................20
(ii)    Alleged Breach of Fiduciary Duty......................................................20
(iii)   Alleged Fraudulent Inducement........................................................23
(iv)    Claim for Alleged False Affidavit in Support of Garnishment Petition...................27

**D.**   The Legal Action Against Royce Hassell Must Be Dismissed Under the TCPA
Because Royce Hassell Has Established Each Essential Element of An Affirmative
Defenses to This Suit........................................................................27

(i)     Section 27.005(d) of the TCPA........................................................27
(ii)    Lack of Standing and/or Capacity....................................................27
(iii)   Limitations........................................................................28
(iv)    Res Judicata.......................................................................29
(v)     Estoppel...........................................................................34
        (a) Estoppel by Record or Judicial Estoppel.......................................35
        (b) Estoppel by Contract..........................................................35
        (c) Equitable Estoppel............................................................36
        (d) Promissory Estoppel...........................................................37
        (e) Quasi Estoppel................................................................37
(vi)    Accord and Satisfaction; Settlement.................................................38
(vii)   Waiver.............................................................................38
(viii)  Ratification.......................................................................39

**E.**   Because Dismissal is Proper, the TCPA Requires the Court to Award Royce Hassell
His Court Costs, Attorney's Fees and Expenses, and to Sanction Michael Hassell,
Phillip Hassell, Shawn Hassell Potts and Jason Hassell..............................39

**III.**   **Proof**........................................................................41

Prayer...................................................................................41

Certificate of Service...................................................................42

(iv)

**INDEX OF EXHIBITS**

Exhibit 1:       Final Arbitration Award.

Exhibit 2:       Final Judgment Confirming the Arbitration Award.

Exhibit 3:       Motion to Strike Intervention of HCCI's Controlling Owners Following Arbitration.

Exhibit 4:       Order Striking Intervention.

Exhibit 5:       Bankruptcy Court Memorandum Opinion of May 11, 2015, Declaring Partnership.

Exhibit 6:       Transcript of Emergency Bankruptcy Hearing of March 9, 2018, Finding HCCI's Controlling Owner's In Bad Faith.

Exhibit7:        Phillip Hassell "To all" letter, August 2012.

Exhibit 8:       Shawn Hassell Potts, Coats Rose e-mail, June 28, 2012.

Exhibit 9:       Coats Rose's Privilege Log.

Exhibit 10:      Pascal Piazza's Original Petition of HCCI.

Exhibit 11:      Richard Rose's E-Mail Commenting on HCCI's Suit Against the District.

Exhibit 12:      Richard Rose's E-Mail Inquiring About Mediation Results Between the District and HCCI.

Exhibit 13:      Phillip Hassell's Letter Designating Exxon's Lawyers as HCCI's "Corporate Counsel."

Exhibit 14:      Audit Confirmations Requested by Shawn Hassell Potts For HCCI.

Exhibit 15:      May 2013, Letter Requested By Phillip Hassell.

Exhibit 16:      Patrick Gaas's E-Mail of October 2013, "The answer of Tyler & Das Notwithstanding."

Exhibit 17:      Micky Das's Opposition to Royce Hassell's Motion to Disqualify Exxon's Lawyers.

Exhibit 18:      Coats Rose's Letter of July 2014 That Royce Hassell Has No Authority.

Exhibit 19:      Order Designating Bogdan Rentea as a Responsible Third Party to HCCI in Malpractice Suit He Filed for HCCI.

Exhibit 20:      Phillip and Royce Hassell's Joint Letter of March of 2013, Objecting to Coats Rose's conflicts.

Exhibit 21:      Coats Rose's May 2014 Letter, Responding to HCCI's Conflict of Interest Objection.

(v)

**INDEX OF EXHIBITS (con't.)**

Exhibit 22:    Phillip Hassell's Letter Recanting His Earlier Letter Objections to Coats Rose's Conflicts of Interest.

Exhibit 23:    Coats Rose Engagement Letter of January 2012.

Exhibit 24:    Micky Das' Consolidation Motion Asking That All Hassell Family Disputes Be Compelled to Arbitration.

Exhibit 25:    CommunityBank Letter Admitting the Bank Gave Royce Hassell's Private Banking Information to His Siblings Without Authority.

Exhibit 26:    Affidavits Drafted by Exxon's Lawyers Declaring that HCCI and Royce Hassell's Family was adverse to Him "At All Times" Beginning in January of 2012.

Exhibit 27:    Bogdan Rentea's September of 2014, Answer for HCCI (Verified by Phillip Hassell) That HCCI and Royce Hassell's Companies Have Never Been Partners "At Any Time."

Exhibit 28:    Bogdan Rentea's October 3, 2016, Nonsuit of HCCI's Claims Against the District.

Exhibit 29:    Micky Das' March 2014 Response to Various Motions of Royce Hassell's Companies.

Exhibit 30:    Transcript of Bankruptcy Hearing of March 25, 2015.

Exhibit 31:    Post Arbitration Brief Filed By Exxon's Attorneys with Bogdan Rentea (Page 1).

Exhibit 32:    Judge Carter's Orders of 2014 Compelling Arbitration and Consolidating Other Claims Into Arbitration.

Exhibit 33:    Judge Carter's Self-Recusal Order After Citing "A History" With Bogdan Rentea.

Exhibit 34:    Arbitration Demands of Exxon's Lawyers On Behalf of HCCI Pertaining to the Springwoods Project.

Exhibit 35:    Arbitration Demands of Exxon's Lawyers Against RHP.

Exhibit 36:    Proposal of Exxon's Lawyers to Dismiss Claims Against RHP as a trade.

Exhibit 37:    Micky Das' Motion to Compel Arbitration.

Exhibit 38:    Texas Secretary of State Comptroller's Office Public Information Regarding "MDPG Holdings" Jointly Owners by Micky Das and Patrick Gaas.

Exhibit 39:    "No funds to distribute," and false lien on Stellar Project.

(vi)

**INDEX OF EXHIBITS (con't.)**

Exhibit 40:      Bogdan Rentea's Privilege Log

Exhibit 41:      Richard Rose's Government Officer Conflict Disclosure.

Exhibit 42:      Coats Rose's "Forget Conflicts" Settlement Offer.

Exhibit 43:      The District's Open Records Act response denying documents exist (and the documents they were denying existed).

Exhibit 44:      Coats Rose representing siblings in AAA.

Exhibit 45:      Phillip Hassell's Verification of CJVA validity for HCCI.

Exhibit 46:      Phillip Hassell's Verification of CJVA validity for HMS.

Exhibit 47:      HCCI's Audited Financial Statement Notes.

Exhibit 48:      Joel Massey Referral of Royce Hassell's siblings to Coats Rose as "potential" adversaries (January of 2012).

Exhibit 49:      Arbitrator Removal for Evident Partiality.

Exhibit 50:      Summary Judgment of 99% of HCCI's claims against the District on limitations.

(vii)

**TABLE OF AUTHORITIES**

Page

**CASES**

*Adams v. Starside Custom Builders, LLC.,* 042018 TXSC, 16-0786 (Tex. 2018)..........................................14, 17

*Alphonso v. Deshotel,* 417 S.W. 3d 194 (Tex. App.-El Paso 2013, no pet.).....................................................40

*Amstadt v. United State Brass Corp.,* 919 S.W. 2d 644 (Tex, 1966)................................................................30

*Aquaplex, Inc. v. Rancho La Valencia, Inc.,* 297 S.W. 3d 768 (Tex. 20009)....................................................24

*Barr v. Resolution Trust Corp.,* 837 S.W. 2d 627 (Tex. 1992)........................................................................30

*Better Business Bureau of Metropolitan Houston, Inc. v. John Moore Services, Inc.,*
500 S.W. 3d 26 (Tex. App.-Houston [1ˢᵗ Dist.] 2016, no pet.)..................................................................16, 20

*Cotton v. Weatherford Bancshares, Inc.,* 187 S.W. 3d 687 (Tex. App.-Fort Worth 2006,
pet. denied.)........................................................................................................................................23

*Hersh v. Tatum,* 526 S.W. 3d 462 (Tex. 2017)..............................................................................................14

*Ernst & Young, LLP v. Pacific Mut. Life Ins. Co.,* 51 S.W. 3d 573 (Tex. 2001)...............................................29

*Exxon Corp. v. Emerald Oil & Gas Co.,* 348 S.W. 3d 194 (Tex. 2011)............................................................24

*Ferguson v. Building Materials Corp.,* 295 S.W. 3d 642 (Tex. 2009).............................................................35

*Fitness Evolution, L.P. v. Headhunter Fitness, LLC,* 05-13-00506-CV, *(Tex. App.-Dallas
(5ᵗʰ Dist.) 2015)*...................................................................................................................................28

*Frazier v. GNRC Realty, LLC,* 476 S.W. 3d 70 (Tex. App.-Corpus Christi 2014, pet denied.) .......................38

*In re Lipsky,* 460 S.W. 3d 579, 591 (Tex. 2015)...........................................................16, 17, 20, 40

*Italian Cowboy Partners, Ltd. V. Prudential Ins. Co. of Am.,* 341 S.W. 3d 323 (Tex. 2011)...........................24

*Jain v. Cambridge Petroleum Grp., Inc.,* 395 S.W. 3d 394 (Tex. App. -Dallas 2013, no pet.).......................16

*Jamail v. Thomas,* 481 S.W. 2d 485  (Tex. App.-Houston [1ˢᵗ Dist.] 1972, writ ref'd n.r.e.).........................39

*Johnson & Higgins v. Kenneco Energy, Inc.,* 962 S.W. 2d 507 (Tex. 1998)....................................................36

(viii)

**TABLE OF AUTHORITIES (Continued)**

Page

*Kanon v. Methodist Hosp.,* 9 S.W. 3d 365 (Tex. App.-Houston [14th Dist.] 1999, no pet.)........................29

*Kerlin v. Sauceda,* 263 S.W. 3d 920 (Tex. 2008)...............................................................28

*Lopez v. Munoz, Hockema & Reed, LLP,* 22 S.W. 3d 857 (Tex. 2000)......................................37, 38

*Marsh USA, Inc. V. Cook, 354 S.W. 3d 764 (Tex. 2011)*......................................................15

*Mathews v. Sun Oil Co.,* 411 S.W. 2d 561 (Tex. Civ. App.-Amarillo 1996), aff'd,
425 S.W. 2d 330 (Tex. 1968).......................................................................................36

*Nagle v. Nagle,* 633 S.W. 2d 796 (Tex. 1982)...............................................................37

*Ohrt v. Union Gas Corp.,* 398 S.W. 3d 315 (Tex. App.-Corpus Christi 2012, pet. denied)..........................38

*Rehak Creative Servs., Inc. v. Witt,* 404 S.W. 3d 716 (Tex. App.- Houston [14th Dist.] 2013,
pet denied).................................................................................................16, 17

*Rio Grande H20 Guardian,* No. 04-13-00441-CV, 2014 WL 309776, at *3,
(Tex, App.-San Antonio, Jan. 29, 2014, no pet.)...............................................................19

*Sawnk v. Cunningham, 258 S.W. 3d 647 (Tex. 2008)*.........................................................28
.
*Sefzik, v. City of McKinney,* 198 S.W. 3d 884 (Tex. App.-Dallas 2006, no pet.)...........................................36

*Texas Water Rights Comm'n v. Crow Iron Works,* 582 S.W. 2d 768 (Tex. 1979)..........................................30

*Walker v. Schion,* 420 S.W. 3d 454 (Tex. App.-Houston [14th Dist.] 2014, no pet.)......................................15
.
*Wingate v. Hajdik,* 795 S.W. 2d 717 (Tex. 1990)...............................................................28

(ix)

**TABLE OF AUTHORITIES (Continued)**

Page

**Statutes**

Tex. Bus. & Com. Code – Chapter 15

    Section 15.04...............................................................................................................15

    Section 15.05(a)...................................................................................................15, 20

    Section 15.05(b)..........................................................................................................20

Tex. Civ. Prac. & Rem. Code

    Section 16.004(a)(4)...................................................................................................28

    Section 27.001(1)........................................................................................................18

    Section 27.001(3)........................................................................................................18

    Section 27.001(4)........................................................................................................18

    Section 27.001(6)..........................................................................................................1

    Section 27.001(7)(B)..................................................................................................15

    Section 27.001(8)........................................................................................................18

    Section 27.001(9)(c)...................................................................................................18

    Section 27.002......................................................................................................14, 15

    Section 27.003......................................................................................................14, 15

    Section 27.005............................................................................................................15

    Section 27.005(b)................................................................................................. 16, 17

    Section 27.005(b)(2)..................................................................................................19

    Section 27.005(c).................................................................................................16, 20, 23, 26

    Section 27.005(d)................................................................................................17, 27

(x)

**TABLE OF AUTHORITIES (Continued)**

Page

Section 27.006.................................................................................................................................15

Section 27.009.................................................................................................................................40

Section 27.009(a)(1).........................................................................................................................40

Section 27.009(a)(2).........................................................................................................................40

Section 27.011.................................................................................................................................16

CAUSE NO. 2016-87708

| | | |
|---|---|---|
| HASSELL CONSTRUCTION CO., INC., et al, | § | IN THE DISTRICT COURT OF |
| *Plaintiffs* | § | |
| | § | |
| v. | § | HARRIS COUNTY, TEXAS |
| | § | |
| ROYCE HASSELL, et al, | § | |
| *Defendants* | § | 113th JUDICIAL DISTRICT |

**ROYCE HASSELL'S ANTI-SLAPP MOTION TO DISMISS[1]**

1.   Four individuals[2] bring a new legal action as a Strategic Lawsuit Against Public Participation, which is exactly what the Texas Citizens Participation Act[3] (the "TCPA") is designed to prevent.

2.   Specifically, on April 17, 2018, four of five Hassell family siblings who, together, own a controlling majority interest in Hassell Construction Co., Inc. ("HCCI"), the plaintiff corporation which initiated this lawsuit over a year ago, bring claims in their own names against their brother, minority HCCI owner Royce Hassell.  The four siblings, Michael Hassell, Phillip Hassell, Shawn Hassell Potts, and Jason Hassell (together hereinafter jointly referred to as HCCI's "Controlling Owners"), filed their "Original Answer, Counterclaim and Third-party Petition of Phillip Hassell, Michael Hassell and Shawn Potts Hassell and Joinder of Jason Hassell" (hereinafter referred to as "Joinder Petition")[4] less than sixty days ago.

3.   By this suit his siblings seek to punish Royce Hassell for exercising his constitutional rights.   More specifically, their own pleadings evidence they seek to punish Royce Hassell for petitioning to confirm and

---

[1] Royce Hassell files this motion subject and without waiver of his right to move to compel arbitration in the event this legal action is not dismissed.

[2] Three of the Controlling Owners, *i.e.,* Michael Hassell, Phillip Hassell, and Shawn Hassell Potts, join as counter-plaintiffs, and one Controlling Owner, *i.e.,* Jason Hassell, joins as an original third-party plaintiff.

[3] Tex. Civ. Prac. & Rem. Code, Chapter 27, Actions Involving the Exercise of Certain Constitutional Rights.

[4] The Joinder Petition bringing new "counterclaims,""cross-claims" and "third party claims" fall within the TCPA definition of a "legal action" which "means a lawsuit, cause of action, petition, complaint, cross-claim or counterclaim or any other judicial pleading or filing that requests legal or equitable relief."  Tex. Civ. Prac. & Rem. Code §27.001(6).

seek to collect an arbitration award against HCCI in a separate case;[5] wherein he has attempted to speak freely by signing an affidavit in support of a garnishment action against HCCI's bank.  *See* Joinder Petition para. 2.i, *et seq*.  They also seek to have Royce punished for freely associating with Terry Tauriello, a witness in the arbitration who is an owner and employee of R. Hassell Properties, Inc., a corporation, which was non-suited out of the family dispute in 2016.  *See,* Joinder Petition, paragraphs 2.c and 3.g.

4.     HCCI's Controlling Owners attempt to refile, rehash and repackage the same baseless claims that were dreamed up and asserted by lawyers loyal to Exxon who had multiple egregious conflicts with the Hassell family and their companies in an arbitration which ended in July of 2017.  The final arbitration award was confirmed in a Final Judgment by Harris County District Judge Fredericka Phillips on March 26, 2018,[6] just before the four siblings attempted to refile the same claims in the concluded arbitration, and then in a new bankruptcy involuntary case they brought against the partnership they claim in this case is not real.  Their belated arbitration attempt was stricken,[7] and United States Bankruptcy Judge Marvin Isgur found they acted in bad faith.

5.     The pretext for this suit, that the value of their stock in HCCI has been diminished on grounds the partnership was not "real" and not "for profit," contradicts even HCCI's own audited financial statements prepared by auditors from information provided by HCCI's Controlling Owners which in turn they provided to banks, insurance companies and sureties for years before filing this suit.[8]

---

[5] Cause No. 2013-61995; *R. Hassell & Company, Inc., et al v. Hassell Construction Co., Inc., et al*, in the 61st Judicial District Court of Harris County, Texas.

[6]  *See,* Exhibit "1", Final Arbitration Award;

[7]  *See,* Exhibit "2", Final Judgment and Exhibit "3" Motion to Strike Intervention and Exhibit "4" Order Striking Intervention.

[8]  *See, for example* Exhibit "47" notes to financial statement of HCCI FYE June 30, 2014, (one year after Royce Hassell's lockout), page 14:  "On July 1, 2012, the Company entered into a joint venture agreement with the related companies of R. Hassell & Co., Inc., R. Hassell Builders, Inc., and G.R. Group Resources, Inc. (R. Hassell) . . .  The joint venture agreement called for sharing of profits with R. Hassell receiving 25% of the net profits on completed contracts . . .

6. The allegations they make herein are also an attempt to collaterally attack Judge Isgur's now three year old May of 2015, Memorandum Opinion,[9] finding the partnership Royce Hassell's siblings complain of herein was "for profit"--a decision the siblings never chose to appeal--and the arbitration.

7. Undeterred by bad faith finds, an arbitration award, or the revelations of their own misconduct, HCCI's Controlling Owners now file this TCPA barred suit.  <u>Importantly, in this suit they openly threaten they will file more like it in the future.</u>[10]

8. By this legal action HCCI's Controlling Owners improperly attempt to chill and stifle Royce Hassell's right to petition on his own behalf and individually on behalf of the family corporation of which he is part owner and an equal beneficiary, as well as his rights to speak freely and associate freely with business associates.  This legal action is, therefore, based on, relates, to and/or in response to Royce Hassell's exercise of his constitutional right to petition, free speech and free association.

9. Under the TCPA, immediate dismissal of the legal action is mandatory unless HCCI's Controlling Owners provide "clear and specific" evidence to support each element of their claims.  And, even if HCCI's Controlling Owners could provide "clear and specific" evidence of each element of each of their claims— and they cannot— immediate dismissal of this case is still mandatory under the TCPA because Royce Hassell has established each essential element of his affirmative defenses to the claims of HCCI's Controlling Owners.  The Controlling Owners' legal action must be dismissed under the TCPA.

**I.**    **FACTUAL BACKGROUND**

   **A.  By a 1986 gift, the JCH Trust, of which Royce Hassell is an equal beneficiary with his five siblings, is the majority shareholder of <u>Hassell Construction Company, Inc.</u>**

10. James Hassell founded Hassell Construction Co., Inc. ("HCCI") in 1976.  In 1986, James Hassell gifted all the appreciating stock of HCCI equally to his five children via the James C. Hassell Intervivos

---

[9] *See,* Exhibit "5", Memorandum Opinion dated May 11, 2015; and Exhibit "6," Transcript of Emergency Bankruptcy Hearing, March 9, 2018.
[10] *See,* Joinder Petition footnote 5.

[Irrevocable] Trust ("JCH Trust").  At the same time, James Hassell froze the value of his own interest in HCCI at $800,000 for estate planning purposes.  His five children, the five equal beneficiaries of the JCH Trust, are:

- Royce Hassell who is James Hassell's only son from his first marriage;
- Michael Hassell, Phillip Hassell and Shawn Hassell Potts (Counter-plaintiffs in this Anti-Slapp case) who are James Hassell's children from his second marriage; and,
- Jason Hassell (Third Party Plaintiff in this Anti-Slapp case) who is James Hassell's son from his third marriage.

11. The JCH Trust is the majority shareholder of HCCI.  Michael Hassell, has been the trustee of the JCH Trust for over 25 years.

**B.  HCCI is Just One of Many Hassell Family Related Companies:  *However, It is the Only Company In Which Together, All Five Hassell Siblings Own An Interest.***

12. HCCI is a business in which all five Hassell siblings own an interest.  On and off since its inception each Hassell sibling has worked for HCCI or run it in a management position going back to before the JCH Trust was formed more than thirty years ago.  In turn, from time to time each of the siblings has also had business interests outside HCCI and sometimes their separate companies joint-ventured work with HCCI.

13. In 1991, Royce Hassell, separately founded his own company, R. Hassell & Co., Inc. ("RHC"), a general contracting firm.  He also later expanded his business by forming R. Hassell Builders, Inc.  ("RHB"), a company dedicated solely to building projects.  R. Hassell Holding Company, Inc. ("RHHC") is a holding company which holds the stock of RHC and RHB. Royce Hassell also started G.R. Group, a container hauling company.  Years afterward, Royce also started and solely owned a custom home building company, R. Hassell Properties, Inc.  ("RHP") which was dedicated to building custom homes in West University Place and Bellaire, Texas, before the company became dormant in 2010.

14. In approximately 1997, Michael Hassell and two siblings, Phillip Hassell and Shawn Hassell Potts, started a new company with their father, Hassell Management Services, LLC ("HMS").  At first, HMS was said to be an employee leasing company to lease management employees to HCCI; But sometime latter, HMS acquired real estate and hired HCCI to develop the properties.  During that time, Michael Hassell,

Phillip Hassell, Shawn Hassell Potts, were employed and paid by HMS, but were leased to HCCI as its management personnel. By June 30, 2012, HMS owed HCCI over $1.6 million.

15. In approximately, 2003, Michael Hassell, Phillip Hassell and Jason Hassell formed a separate general contracting company, "Hassell Contractors, Inc."  Sometime later, it appears that some of the siblings including Jason Hassell, Michael Hassell and Phillip Hassell may have tried to merge Hassell Contractors, Inc. with HCCI.

16. Since 1991, and particularly from 2008-present, Royce Hassell's siblings have jointly exerted majority control of HCCI acting as its controlling officers and directors.  To Royce Hassell's knowledge, during most of that time Jason Hassell, worked for HCCI's competitor, Webber, Inc.

### *C.*  HCCI and Royce Hassell's companies entered into multiple Joint Ventures after 2008.

17. In relationships which started up following the 2008 economic crash, Royce Hassell's companies and HCCI joint ventured about $40 million in construction yielding HCCI profits of about $1,000,000 before the Hassell 2012 Joint Venture partnership was formed.  The corporate relationship allowed RHC and RHB to capitalize on HCCI's unused bonding capacity, and allowed Royce Hassell's companies to compete for bigger projects in the scarce construction market of that time.

### D.  In 2011, the Springwoods Project (in which HCCI owned a profit only interest and Royce Hassell's companies bore 99% of the risk of loss) went horribly awry due to the District's defective plans.

18. In July of 2011, under the oral agreement they had been operating under since 2008, HCCI contracted a project to be performed in joint venture with Royce Hassell's companies, wherein Royce Hassell's companies bore 99% of the risk of loss.  While the contracting parties were HCCI and a pubic entity, Harris County Improvement District No. 18 (the "District"), the District was contracting for the benefit of Exxon whose funds were escrowed to pay the upfront construction costs of HCCI pursuant to an agreement negotiated by Richard Rose as attorney for Exxon.  Later, Richard Rose helped administer

that agreement as a Director of the District, the public entity which contracted with HCCI.  However, because the District's plans were defective, a question arose as to whether the construction costs of Exxon would be reimbursable, and later resulted in HCCI's multi-milliondollar claim against the District filed on July 27, 2012, Mr. Rose, as Exxon's attorney and a District director, was personally involved in defending against HCCI's claims, including deliberating with the District's litigation counsel in private sessions against HCCI.  While HCCI was asserting claims against the District for defective plans, Mr. Rose allowed his law firm to become involved in a secret eighteen-month operation with HCCI and Royce Hassell's siblings to obtain "documents" the law firm later used to argue that HCCI's claims against the District were grossly inflated, that Royce Hassell was dishonest, and that only his siblings controlled the claims against the District.  During the time the relationship was concealed from Royce Hassell, he continued responding to the District's allegations regarding HCCI's performance on the project (Exhibit "15").  Ultimately, the secret relationship was followed by a public relationship wherein Mr. Rose's law firm agreed to act as  HCCI's "corporate counsel" over Royce Hassell's objections, propounding the position that Royce Hassell is not an owner of HCCI and is not authorized to speak for HCCI derivatively thereby forcing Royce Hassell to pursue the District as an outsider.

> **E.   Phillip Hassell Proposed the Hassell 2012 Joint Venture Before the Springwoods Project was finished in consultation with attorneys who were loyal to Exxon and the District.**

19.  In August of 2012, in the middle of his clandestine relationship with Mr. Rose's law firm, Phillip Hassell proposed a new comprehensive, combining of resources, partnership between HCCI and Royce Hassell's companies.  He started off by handing Royce Hassell a letter addressed "To all" and followed up the proposal in meetings held at Royce Hassell's office.  Phillip Hassell's letter occurred during a period of family turmoil which followed Royce Hassell directing HCCI to file suit against the District through the family's long time attorney, Pascal Piazza.  Exhibit "10."  The filing of the lawsuit following a failed July 2, 2012, mediation between HCCI and the District over which it was agreed Royce Hassell had the final say although he invited his brother, Phillip Hassell, to attend not knowing Phillip Hassell was sharing HCCI's

confidential information with lawyers loyal to the District and Exxon.  See, Exhibit "8", June 28, 2012, e-mail.

20.  Immediately after the failed mediation, Royce Hassell's family, in consultation with Mr. Rose's law firm, sent Royce Hassell a letter telling him he had *no authority* to speak for HCCI.  Later, Royce Hassell discovered this communication was made in consultation with Mr. Rose's law firm (Exhibit 9, entries of July and August 2012).

21.  In late August of 2012, seemingly out of the blue, Phillip Hassell proposed a "combining of assets" and "joining of forces" partnership with his brother.  Using financial coercion related to this partnership, Mr. Rose's law firm shut down Royce Hassell's authority, shut him out of HCCI's suit against the District, shut Royce Hassell out of his $100,000,000 partnership with HCCI, and shut Hassell out of HCCI itself. (*See,* Exhibit 39 "no funds to distribute," and false lien on Stellar Project.)

22.  Mr. Rose's law firm is interested in HCCI's suit against the District although they have repeatedly denied having anything to do with it. For example, Mr. Rose expressed fears in an e-mail about how much the suit would cost [the District and/or Exxon];  (Exhibit "11");  he assisted John Engvall with legal strategies (Exhibit "11" redacted e-mails); he hid his own involvement (Exhibit "41" conflict disclosure); behind the scenes he communicated with the District attorneys about events in mediation against HCCI through Lynn Humphries of Allen Boone & Humphries who did attend the mediation; Exhibit "12"; and he allowed his firm to secretly solicit documents from Royce Hassell's siblings without his knowledge and consent which his firm later used to discredit, ridicule and embarrass Royce Hassell, his family, and most of all HCCI by a huge loss in the arbitration, all the while being paid with Royce Hassell's share of the Hassell 2012 Joint Venture profits, all the while the firm charged HCCI exorbitant fees.  This Court can also take judicial notice of the official minutes of the District reflecting Mr. Rose's activities.

> **F.  Mr. Rose's law firm, simultaneously counsel for HCCI and Exxon, participated in non-suiting HCCI's claims against the District even though Mr. Rose is a government official Director of the District.**

23.     Ultimately, the District defeated HCCI by the self-inflicted wounds brought on by an improper relationship of Royce Hassell's siblings with Exxon's lawyers who also directed the District. *See, for example,* Exhibit "40" Bogdan Rentea's Privilege Log.  This non-suit was made without authorization of Royce Hassell even though the lawyers were aware they were charging his companies with 99% of the risk of loss on the Springwoods Project.

> **G.     Unaware His Siblings had entered an alternate universe run by Exxon (which was liable to the taxpayers of the District HCCI had just sued), Royce Hassell agreed to his brother's proposal to combine his own companies with HCCI in a partnership; only to have HCCI, the partnership and his companies destroyed through false narratives perpetuated by lawyers loyal to Exxon and the District.**

24. Eight months into the Hassell 2012 Joint Venture, a partnership Phillip Hassell proposed while conspiring with Mr. Rose's law firm to find ways to take away Royce Hassell's authority, his siblings locked the doors against Royce and threw away the keys.  Not long afterward, Royce Hassell's siblings also locked him out of the Springwoods lawsuit, the Hassell 2012 Joint Venture and HCCI, and now by this suit they are seeking to lock him out of the JCH Trust.  As HCCI's corporate counsel Mr. Rose's law firm successfully ran a campaign to discredit Royce Hassell  by deliberately publishing false narratives such as:

- That Royce Hassell is not an owner of HCCI and thus has no authority to speak for HCCI.
- That the debt on HCCI's Line of Credit was not caused by Springwoods Project losses, but was instead caused by Royce Hassell's incompetence, dishonesty and breaches of duty to HCCI.
- That HCCI's claims against the District are grossly inflated and not supportable.
- That Royce Hassell should not have any say in HCCI's lawsuit against the District because Royce Hassell's companies are "mere" Subcontractors to HCCI on the Springwoods Project.
- That HCCI should non-suit its claims against the District or risk being accused of being a "sham contractor."
- That Royce Hassell, HCCI's primary fact witness and a damage expert against the District, is untrustworthy and incompetent as at length particularly alleged arbitration demands, affidavits, and discovery responses prepared by lawyers loyal to the District and Exxon.

> **H.  This latest suit by his siblings evidences they believed they personally stood to benefit (the quid pro quo) by the striking a secret plan with lawyers loyal to Exxon and the District to blame Royce Hassell for the Springwoods Project losses.**

25. The June 28, 2012, e-mail between Shawn Hassell Potts and Phillip Hassell, coming just days before HCCI's pre-suit mediation against the District tells it all:  Royce Hassell's siblings believed they would gain by having  Coats Rose started "seize[ing]" Royce Hassell's assets. (Exhibit "8').  Similarly, Coats Rose pre-conditioned acting for Royce Hassell's siblings on getting documents which would satisfy them it was time to act against Royce Hassell.  *See,* Exhibit "26" Patrick Gaas affidavit.

26.  Among other documents Mr. Rose's law firm collected Joinder Petition Exhibits "A" and "C" which Bogdan Rentea, their co-counsel, now uses to argue Royce Hassell was attempting to defraud them.

27.  Other "documents" Royce Hassell provided his siblings, not knowing they were sharing them with Mr. Rose's law firm, include *HCCI's confidential mediation statement against the District, <u>a draft of HCCI's suit against the District to which his siblings proposed changes,</u>* projected cash flows of the Springwoods Project and a multitude of other confidential communications about HCCI's positions in the litigation.

> **I.    In September of 2013, when Royce Hassell first learned Coats Rose agreed to be HCCI's corporate counsel, Royce Hassell objected and has been objecting ever since.**

28. After Royce Hassell's wife, an attorney, called Richard Rose directly objecting to his firm's relationship with HCCI (the extent of which was yet unknown) lawyers from his firm instructed his wife and Royce Hassell that they were not permitted to contact family members except through Coats Rose. That conversation was at the same time Coats Rose instructed HCCI's attorney against the District, Pascal Piazza, to "tread lightly;"  Coats Rose informing Royce Hassell all negotiations had to go through them;  Coats Rose announcing anything said about the Springwoods Project was public information as if publishing it in a newspaper; Coats Rose having Royce Hassell removed as an officer and director of HCCI at Coats Rose offices; Coats Rose making a settlement demand for HCCI which required Royce Hassell to "forget conflict."  *See* Exhibit "42", Coats Rose settlement proposal for HCCI "forget conflict."

29. Mr. Rose's lawyers used surrogates such as Micky Das, a business partner of Coats Rose Vice President Patrick Gaas in a separate venture (Exhibit "38"), to file pleadings in court arguing conflict of interest issues were "moot," all the while those surrogates allowed Coats Rose attorneys to control

negotiations and pull the strings behind the scenes.  *For example see,* Exhibit "16" I'll be representing;" and simultaneous Exhibit "17" paragraphs 12 and 13, Micky Das telling Judge Carter conflict of interest issues raised by Royce Hassell were "moot."

        **J.**    **As Co-Counsel with HCCI's corporate lawyers (who were also Exxon's lawyers) Bogdan Rentea Took Over, Non-Suited, and refiled the same claims against the District four and half years after the original suit, only to lose 99% of the claims by summary judgment on limitations.**

30.  After sending yet another letter alleging Royce Hassell had no authority for HCCI regarding the Springwoods lawsuit (Exhibit "18" July 2014 Coats Rose letter), Mr. Rose's law firm successfully ousted Pascal Piazza as HCCI's attorney and replaced him with Bogdan Rentea.

31.  At the time of his hiring, Bogdan Rentea was separately suing the R-7 arbitrator's law firm for conflict of interest malpractice, at the same time the arbitrator was considering Royce Hassell's conflict of interest objections to Richard Rose's law firm.   The R-7 arbitrator allowed the conflicted lawyers to continue acting for HCCI based on affidavits prepared by Mr. Rose's law firm alleging that <u>HCCI and Royce Hassell's companies had been adverse to each other "at all times" after January of 2012, which was the date they began their  clandestine relationship with Royce Hassell's siblings.</u>   Of course, Royce Hassell's siblings did not disclose the fact they intended to remain adverse to Royce Hassell when they invited him into the $100,000,000 partnership while they secretly interfered with HCCI's claims against the District which they knew were 99% to Royce Hassell's account.

32.  In light of their duplicity, Bogdan Rentea's exoneration of the District and its engineers on October 3, 2016, by a simple one page non-suit is not now surprising.  A privilege log of Bogdan Rentea shows he filed the non-suit in coordination lawyers from Mr. Rose's law firm.  Exhibit "40" entry of October 3, 2016.

33.  At arbitration preliminary hearings of December 15 and 16 of 2016, with Coats Rose lawyers and Bogdan Rentea simultaneously claiming to represent HCCI's interests as well as the interests of Royce Hassell's siblings, just two months after HCCI's non-suit of the District, the lawyers agreed to dismiss and sever claims against Royce Hassell related to RHP and, to non-suit RHP.  This non-suit agreement was

immediately preceded by the arbitrators, once again, denying Royce Hassell's requests for HCCI that Mr. Rose's law firm and Bogdan Rentea be disqualified, and severing Royce Hassell's derivative claims against the lawyers from the arbitration.  During those hearing Royce Hassell specifically told Bogdan Rentea that he intended to sue him for HCCI for wrongfully non-suiting the District without Royce Hassell's knowledge or consent.  Bogdan Rentea had, days prior to the hearing refiled HCCI's suit against the District.  (Bogdan Rentea lost 99% of that suit months later on summary judgment-*by limitations.*  Exhibit "50.")

34. Days after this confrontation with Royce Hassell at arbitration hearings Bogdan Rentea initiated this suit for HCCI which is unverified, seeking an "injunction" against Royce Hassell from asserting derivative claims for HCCI.  The suit alleges Royce Hassell is not an owner because his stock was bought out in a transaction dreamed up by Coats Rose in September of 2013 after Royce Hassell objected to Coats Rose's conflicts.  Thus, the original suit is a preemptive defensive measure against Royce Hassell to prevent him from petitioning on behalf of HCCI against conflicted lawyers which include Bogdan Rentea.

35. Also following the December 2016 arbitration hearings, Bogdan Rentea filed suit (for HCCI) against Royce Hassell's wife who is an attorney, and Pascal Piazza the attorney Royce Hassell selected to represent HCCI which Coats Rose instructed to "tread lightly."  In that suit, "HCCI" purports to allege that Pascal Piazza and Royce Hassell's wife beached their fiduciary duty to HCCI.  Needless to say Pascal Piazza has successfully moved to have Bogdan Rentea joined as a responsible third party for any damages HCCI may claim it has suffered in that suit which is currently still pending but abated by agreement with Bogdan Rentea.  Exhibit "19'.

> **K.  Complicit with HCCI's corporate counsel, the District's lawyers, Engvall & Lopez and Allen Boone & Humphries, worked with lawyers they knew to be simultaneously Exxon's lawyers and HCCI's lawyers, to Defend Against HCCI's Suit.**

36. Throughout these events, evidence shows Coats Rose's president, Richard Rose, has worked with the District's other lawyers against HCCI.  *(See,* communications between Richard Rose, John Engvall's firm and Allen Boone & Humphries.).

11

37. In turn, Allen Boone & Humphries the District's counsel has actively concealed documents evidencing its own participation in the drafting of Richard Rose's conflict disclosure statement about his firm's relationship with HCCI *which incredibly asserts that he is not aware of his firm's representation of HCCI.* Coats Rose's own privilege log proves differently.  *See,* Exhibit "43" the District's response to Royce Hassell's Open Records Act request and later surfacing documents; and Exhibit "9" entry 109.

38. In separate proceedings Coats Rose has been permitted by Exxon, HCCI, Liberty Mutual and the District to assert the attorney/client and work-product privileges for each of those parties regarding the events described in this motion.  As a result, Richard Rose has yet to produce his firm's "memorandum (includes all _drafts)_" about his firm's conflicts which he was sent in March of 2013.  This memorandum was prompted by having to respond to a joint letter written by Royce Hassell and his brother, Phillip Hassell  during the clandestine relationship of which only Royce Hassell had no idea, together objecting to Coats Rose's conflicts.  Phillip Hassell's signing of the March 2013 joint conflict objection letter was an obvious ruse to conceal what was going on between Coats Rose and Royce Hassell's siblings.  See, Exhibit "20," Joint Letter of Phillip and Royce; Exhibit "9" Coats Rose Privilege Log noting a call between Phillip Hassell and Patrick Gaas on , page 9 entry 86 "Notes of Conversation with Phil Hassell today [April 1, 2013] and entry "109;" Exhibit "21", Coats Rose response to conflict letter of May 2013; and Exhibit "22," Phillip Hassell's September 2013, retraction of his March 2013 conflict objection letter.

39. This TCPA barred claim by Royce Hassell's siblings is a continuation of the attempts to prevent him from petitioning for HCCI, and merely continues the cover-ups and attacks on Royce Hassell's credibility devised by conflicted attorneys as defensive strategies to protect Exxon and the District from ever having to pay HCCI's claims against the District.  *See,* Exhibit "23, Coats Rose engagement letter of January 2012.

**L.  Like the Springwoods Project, the Hassell 2012 Joint Venture ended disastrously for Royce Hassell while the District and conflicted lawyers benefitted from the partnership profits HCCI now owes Royce Hassell's companies.**

40. in July of 2013, following more clandestine meetings with lawyers of Mr. Rose's firm,  HCCI's Controlling Owners locked Royce Hassell and his companies out of all joint businesses with HCCI.  Months later, those same lawyers told Royce Hassell the partnership had no funds to distribute to its members (Exhibit 39); filed false claims against RHB (Exhibit 39) and demanded through a surrogate that Royce Hassell undergo a prohibitively expensive process to arbitrate his claims against Exxon's lawyers who were claiming that Royce Hassell caused the Springwoods Project losses through dishonesty, incompetence and fraud.  In that arbitration which was initiated by Mr. Rose's law frim in 2014 and HCCI vows to appeal, lawyers loyal to Exxon and the District *sought over $10,000,000 in damages from Royce Hassell and his companies for alleged breaches of fiduciary duty to HCCI which they lost*.

41. In 2014 Patrick Gaas presented the false narratives against Royce Hassell and his companies that they had "concocted" the partnership to get insurance using Joinder Exhibit "C."   This preposterous story was rejected by a federal bankruptcy judge (where Coats Rose refused to become "of record" while supervising discovery (Exhibit 39), and the arbitrators- even though it was Patrick Gaas himself who personally told them story while cross-examining Royce Hassell.

> **M. Royce Hassell Did Not Discover his siblings' duplicity in time to stop them from non-suiting the District or squandering hard earned money on conflicted lawyers loyal to Exxon and the District leaving HCCI apparently destitute.**

42. On March 8, 2018, Bogdan Rentea newly filed an involuntary bankruptcy petition against the Hassell 2012 Joint Venture, the partnership he argues in this case is "not real;" then confessing to Judge Isgur that HCCI does not have $1.2 million dollars to pay Royce Hassell's judgment.  *See,* Exhibit "6," Transcript of Emergency Bankruptcy Hearing, March 9, 2018, p. 17, ll. 17-18, Mr. Rentea:  "There's no $1.2 million to deposit, Your Honor."  Much of the money went to pay conflicted lawyers.

43. While being paid with Hassell 2012 Joint Venture profits and HCCI's profits from that venture, conflicted lawyers continue to help Royce Hassell's siblings perpetuate a false narrative rejected by multiple tribunals, to destroy and tarnish Royce Hassell's ability to petition for HCCI.

44. The arbitration was compelled by Micky Das (Patrick Gaas' business partner) arguing that consolidation of all Hassell family disputes into the arbitration was proper because "all involve the same family members and entities, as well as a common set of facts and disputes." *See,* Exhibit "24", para. 4.) In those arguments Micky Das cited from from the AAA's R-7 arbitrator's assessment that:

> "All of the disputes involve family members or entities that are owned or controlled by family members.  They involve a course of dealing over time. Fragmented proceedings would be expensive, inefficient, may lead to inconsistent results, and ultimately be more costly."

Exhibit "24," para. 10.

45.  These new legal actions of his siblings through Bogdan Rentea, co-counsel to Mr. Rose's law firm, are patently frivolous and are based on, related to, and in response to Royce Hassell's exercise of his constitutional rights to petition, speak freely and associate freely.

**Introduction to Legal Argument.**

46.  Royce Hassell is constitutionally permitted to exercise his constitutional rights to petition, speak freely and associate freely.  The stated purpose of the TCPA is to "encourage and safeguard the constitutional rights of persons to petition, speak freely, [and] associate freely" therefore, "if a legal action is based on, relates to, or is in response to a party's exercise of the right of free speech, right to petition, or right of association, that party may file a motion to dismiss the legal action."  Tex. Civ. Prac. & Rem. Code §§ 27.002 and 27.003.  "The unique language of the TCPA directs courts to decide its applicability based on a holistic review of the pleadings . . . Our focus . . . has been on the pleadings and on whether, as a matter of law, they are based on or relate to a matter of public concern. 'When it is clear from the plaintiff's pleadings, that the action is covered by the Act, the defendant need show no more."  *Adams v. Starside Custom Builders, LLC., supra, citing Hersh v. Tatum,* 526 S.W. 3d 462, 467 (Tex. 2017).

47. The constitution and the TCPA protect Royce Hassell's right to sign an affidavit in support of a petition for a Writ of Garnishment in state district court.  A groundless lawsuit punishing him for doing so violates the TCPA.

48.  The constitution also protects Royce Hassell's freedom of speech and association.  Thus, a groundless lawsuit filed to punish a party for "activating a business in competition with HCCI" is a matter of public concern and properly the subject of a TCPA motion to dismiss. (*See,* the TCPA's definition of "matter of public concern" which "includes an issue *related to . . . economic* well-being."  Tex. Civ. Prac. & Rem.  Code 27.001(7)(B). *Also see, for example,* laws which prohibit restraint of trade or commerce such as Chapter 15 of the Tex. Bus. & Com. Code the purpose of which is "to maintain and promote economic competition in trade and commerce" Tex. Bus. & Com. Code § 15.04; and Section 15.05(a) of the Business and Commerce Code, wherein "the Legislature included a policy limitation on the freedom between employers and employees to contract: 'Every contract, combination, or conspiracy in restraint of trade or commerce is unlawful.'"  *Marsh USA, Inc. V. Cook, 354 S.W. 3d 764 (Tex. 2011)).*

## II.      ARGUMENT AND AUTHORITIES

### A.   THE TCPA

49. The TCPA exists "to encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law and, at the same time, protect the rights of a person to file meritorious lawsuits for demonstrable injury."  Tex. Civ. Prac. & Rem. Code §27.002.  To prevent "Strategic Lawsuits Against Public Participation" from achieving their intended purpose of chilling and stifling these constitutional rights, the TCPA permits early dismissal after little or no discovery if a suit is "based on, relates to, or is in response to" a party's exercise of these specifically-enumerated rights."  *See,* Tex. Civ. Prac. & Rem. Code §27.003, §27.005, and §27.006; *see also Walker v. Schion,* 420 S.W. 3d 454, 458-59 (Tex. App.-Houston [14th Dist.] 2014, no pet.);

*Rehak Creative Servs., Inc. v. Witt,* 404 S.W. 3d 716, 719 (Tex. App.- Houston [14ᵗʰ Dist.] 2013, pet denied), *disapproved of on other grounds by In re Lipsky,* 460 S.W. 3d 579, 591 (Tex. 2015).

50. The TCPA "indicates a legislative intent for an expedited resolution of a defendant's assertion that a frivolous lawsuit has been filed against him in retaliation for the exercise of his constitutional right of free speech, right to petition, or right of association." *Jain v. Cambridge Petroleum Grp., Inc.,* 395 S.W. 3d 394, 396-97 (Tex. App. -Dallas 2013, no pet.)(footnote omitted).   If plaintiff's theory, even if true, implicates constitutional rights specified in the TCPA, then the TCPA permits dismissal. *See* Tex. Civ. Prac. & Rem. Code §27.005(b); *In re Lipsky,* 411 S.W. 3d 530, 543 (Tex. App.-Fort Worth 2013, orig. proceeding). "The quick route to appeal the statute prescribes ensures that a reviewing court considers whether the plaintiff's suit would chill a defendant's protected constitutional right and the merit of claims implicating them near the inception of the case rather than later in the suit." *Better Business Bureau of Metropolitan Houston, Inc. v. John Moore Services, Inc.,* 500 S.W. 3d 26 at 37 [1ˢᵗ Dist.} 2016.

51. In deciding whether to grant a TCPA motion and thus dismiss a lawsuit against a moving defendant, the statute directs the trial court to engage in a two-step inquiry. *Rehak,* 404 S.W. 3d at 723. First, the defendant seeking dismissal must show "by a preponderance of the evidence that the legal action is based on, relates to, or is in response to the party's exercise of (1) the right of free speech; (2) the right to petition; or (3) the right of association." Tex. Civ. Prac. & Rem. Code §27.005(b).  For this first prong, doubts must be resolved in favor of the TCPA's application, as under its own terms the TCPA "shall be construed liberally to effectuate its purpose and intent fully." Tex. Civ. Prac. & Rem. Code §27.011.

52. Once the moving defendant shows that the plaintiffs' claims relate to the right to petition, the right of freedom of speech, or the right to associate freely, the burden shifts to the nonmovant to establish "by clear and Specific evidence a prima facie case for each essential element of the claim in question." Tex. Civ. Prac. & Rem Code §27.005(c).  If the nonmovant does not meet this burden, then the case against the moving defendant "shall" be dismissed. *Id* at §27.005(b).

16

53. However, even if a nonmovant is able to meet its "clear and specific" burden, the Court nevertheless "shall dismiss a legal action against the moving party if the moving party establishes by a preponderance of the evidence each essential element of a valid defense to the nonmovant's claim." *Id.* at §27.005(d).  An appellate court reviews *de novo* both prongs of a trial court's determination of a TCPA motion to dismiss.  *See, Better Bus. Bureau of Metro Hous., Inc. v. John Moore Servs., Inc.,* 441 S.W. 3d 345, 353 (Tex. App. -Houston [1ˢᵗ Dist.] 2013, pet. Denied) disapproved of on other grounds by *In re Lipsky, 460* S.W. 3d at 591; *see also Rehak,* 404 S.W. 3d at 726-27.

54. This suit is another attempt to chill Royce Hassell's constitution right to petition, the right of free speech, and the right of association.  Thus, the new plaintiff's claims against Royce Hassell must be dismissed under the TCPA and HCCI's Controlling Owners must be sanctioned to prevent future violation of the TCPA.

**B.** **First Prong:  The New Legal Action Against Royce Hassell Must be Dismissed Because It is Based On, Relates To, and Is in Response to Royce Hassell's Exercise of the Right to Petition and Free Speech and His Freedom of Association.**

55. "The TCPA casts a wide net." *Adams v. Starside Custom Builders, LLC,* 16-0786 (Tex. 2018).  A party who moves to dismiss under the TCPA must first show by a preponderance of the evidence the claim is based on, relates to, or in response to the movant's exercise of the right to petition, the right of free speech, or the right of association.  Tex. Civ. Prac. & Rem. Code §27.005(b).

**(i)** **The Right to Petition and Free Speech**

56. The TCPA defines the "[e]xercise of the right to petition" to mean any of the following:

(A)  A communication in or pertaining to;
     (i)      A judicial proceeding;
     (ii)     An official proceeding, other than a judicial proceeding, to administer the law;
(B)  A communication in connection with an issue under consideration or review by a legislative, executive, judicial, or other governmental body or in another governmental or official proceeding;
     ………………..

17

(E)  any other communication that falls within the protection of the right to petition government under the Constitution of the United States or the constitution of this state.

Tex. Civ. Prac. & Rem. Code §27.001(4).

57.  An "official proceeding" is defined as "any type of administrative, executive, legislative, or judicial proceeding that may be conducted before a public servant."  *Id.,* §27.001(8).  "Public servant" is defined as [among others] "an arbitrator, referee, or other person who is authorized by law or private written agreement to hear or determine a cause or controversy."  *Id.* §27.001(9)(c).  And, "[c]ommunication includes the making or submitting of a statement or document in any form or medium, including oral, visual, written, audiovisual, or electronic."  *Id. at* §27.001(1).

58.  The "exercise of the right of free speech" is defined as "a communication made in connection with a matter of public concern."  Tex. Civ. Prac. & Rem. Code Ann §27.001(3).

59.  A "'[m]atter of public concern' includes an issue related to: (A) health or safety; (B) environmental, <u>economic,</u> or community well-being; (c) the government; (D) a public official or public figure; or (E) a good, product or service in the marketplace."  *Id. §27.005(d). (Emphasis added).*

60.  Because this legal action seeks to chill Royce Hassell's right to petition to enforce the arbitration award and Final Judgment, including petitioning for a Writ of Garnishment against HCCI's bank and signing an affidavit in support thereof, it impinges on Royce Hassell's freedom to petition and to speak freely.

61.  The allegations in this new legal action evidence that they are based on, relate to and are in response to Royce Hassell's exercise of constitutional right his to petition and free speech.  Specifically, the legal action alleges that Royce Hassell "continues to take actions," which include "as recently as April 10, 2018, Royce Hassell supported an application for a writ of garnishment against HCCI's bank account. . . Knowing that all the funds in those bank accounts were subject to a lien by the bank, and that he would never obtain a dime from the garnishment, he nevertheless obtained one for the sole purpose of harming the family business."  Joinder Petition, pg. 3, (para. 2(i).

62. Thus, the legal action itself is evidence of the basis of this legal action includes a communication by Royce Hassell via in an affidavit used to support a petition for writ of garnishment in a judicial proceeding.  *See, Rio Grande H20 Guardian,* No. 04-13-00441-CV, 2014 WL 309776, at *3, (Tex, App.-San Antonio, Jan. 29, 2014, no pet.) (mem. Op.)(holding that pleadings may be considered as evidence for purposes of TCPA motions to dismiss).  Because petitioning for a writ of garnishment and the making of an affidavit is a constitutionally protected activity, HCCI's Controlling Owners legal action should be dismissed under the TCPA for this reason alone.  Tex. Civ. Prac. & Rem. Code §27.005(b)(2).

   **(ii)       The Right of Association.**

63. The TCPA defines the "exercise of the right of association" to mean "a communication between individuals who join together to collectively express, promote, pursue, or defend common interests."

64. The legal action brought by Royce Hassell's siblings, who control HCCI, asserts claims that Royce Hassell for "activat[ed] a business in competition with HCCI, under the corporate name of R. Hassell Properties, Inc.". . . and that thereafter "RHP and Tauriello [his business associate], took actions designed to damage HCCI and its owners, by, inter alia, diverting assets and business opportunities rightfully belonging to HCCI."  Joinder Petition, Para. 2(c) and Para. 3(g).  These allegations state no cause of action. Instead, they evidence that the legal action is in retaliation for Royce Hassell's exercise of his right of association with others, including Terry Tauriello and RHP, "to collectively express, promote, pursue or defend common [economic] interests" which are TCPA protected communications.  (It is also noteworthy that while HCCI's Controlling Owners wish to punish Royce Hassell for competing with HCCI, at the same time they caused HCCI to bring the original suit in December of 2016, which asked this Court to enjoin Royce Hassell from speaking for or petitioning on behalf of HCCI; the reason, HCCI's purported and significantly unverified claim that Royce Hassell is not an owner of HCCI.  It would, therefore,, appear that the combined practical effect of the original suit by the corporation they control and this new legal action

19

brought by the corporation's controlling owners is that they wish Royce Hassell not to be an owner of HCCI and also never be allowed to compete with HCCI.

65.  Attempted economic restraint of trade is obviously a matter of public concern.  (*For example,* "Every contract, combination, or conspiracy in restraint of trade or commerce is unlawful."  Tex. C. Prac. & Rem Code § 15.05(a).; "It is unlawful for any person to monopolize, attempt to monopolize, or conspire to monopolize any part of trade or commerce." Id. § 15.05(b).  *See, also, Better Business Bureau of Metropolitan Houston, Inc. v. John Moore Services, Inc*., 500 S.W.3d 26, ([1st Dist.] 2016).)

66.  Royce Hassell, RHP and Terry Tauriello are constitutionally permitted to communicate with each other in association with RHP for the purpose of "expressing, promoting, pursuing, or defending" their common interests and, obviously, the claims asserted in the Joinder Petition are based on, related to and are in response to Royce Hassell's Exercise of constitutionally protected rights.

67.  The legal action should be dismissed because it seeks to chill Royce Hassell's constitutional right of free association.

## C.  Second Prong:  This Suit Must Be Dismissed Because HCCI's Controlling Owners Have No Evidence-Much Less "Clear and Specific" Proof-To Support Each Element of Their Claims Against Royce Hassell.

### (i)      The Law: "Clear and Specific" Evidence.

68.  As described above, this case must be dismissed unless HCCI's Controlling Owners present the Court with "clear and specific" evidence to support each element of each cause of action that they bring against Royce Hassell.  Tex. Civ. Prac. & Rem. Code §27.005(c).  This is a heightened standard that requires the non-movant to show with evidence specifically "when, where and  .. . how" the movant's conduct was actionable and how it resulted in injury.  *In re Lipsky,* 460 S.W. 3d at 590-91 (Tex. 2015).

### (ii)     Alleged Breach of Fiduciary Duty.

69.  To establish a claim for breach of fiduciary duty HCCI's Controlling Owners must establish by clear and specific evidence the following elements:

    (1)  Royce Hassell owed his siblings a Fiduciary Duty;
    (2)  Royce Hassell breached that duty;
    (3)  Causation; and
    (4)  Damages.

70.  The legal action allegations and exhibits of HCCI's Controlling Owners do not evidence any facts to support a claim that Royce Hassell owed his siblings who as a group with their father, controlled HCCI to the exclusion of Royce Hassell. Royce Hassell's duties ran to HCCI, HCCI sued him for breach of fiduciary duty, and the arbitrators, who were presented with all the evidence HCCI's Controlling Owners could amass which amounted to literally hundreds of thousands of documents, denied HCCI's claims that Royce Hassell violated any fiduciary duties to HCCI.

71.  None of the documents amassed by Royce Hassell's siblings during their eighteen-month clandestine relationship with conflicted lawyers evidence a confidential relationship, and equally fail to show they "trusted" Royce Hassell.  Just the opposite the evidence actually shows that:

-  six years ago, his siblings embarked on a mission with conflicted lawyers to "seize" his assets through lies and subterfuge (*see, for example,* Exhibit "48" Joel Massey referral to Coats Rose;
- Even before then during the time Royce Hassell was gravely ill his siblings and Liberty Mutual through its attorney in fact Rosalyn Hassell insisted that all revenue from joint projects flow through HCCI's banks accounts over which only Royce Hassell's siblings had signature authority even while the siblings were telling Royce Hassell they truly wanted to be his partner;
- Shawn Hassell Potts persistently in trying to physically, move her office, her accounting staff, and even her own separate home care business into Royce Hassell's own offices;
- Shawn Hassell Potts personally went to Royce Hassell's ailing mother's house after his mother suffered a fall under the guise of providing paid home health care through Blue Iris/Avionn, a company owned by Shawn Hassell Potts, and pumped his mother for information;
- His siblings required him to sign deed of trust liens on all his personal real estate as a pre-condition to "helping" him, which they refuse to released even today even after having lost in the arbitration;
- His siblings unlawfully asked a CommunityBank President and officer to give them Royce Hassell's private banking information, *which he provided without Royce Hassell's consent.* (*See,* Exhibit "25" letter of explanation from CommunityBank to Royce Hassell.
- Merged Hassell Contractors with HCCI after an unsuccessful attempt to buy Royce Hassell out of the JCH Trust.

72. Royce Hassell's siblings cannot provide any proof, much less clear and convincing proof that they had a relationship of trust or confidence with Royce Hassell after he left HCCI in 1991. *See,* Exhibit "26" affidavits alleging HCCI and Royce Hassell's siblings were adverse at all times to him; Exhibit "27" HCCI Answer Verified by Phillip Hassell when Royce Hassell attempted to protect HCCI's case against the District from being destroyed by conflicted lawyers. *See also,* Exhibit "28" HCCI's non-suit of the District.

73. Exhibits "A" and "B" were created in February of 2012 and April of 2013, respectively. The exhibits fail to raise even a scintilla of evidence, much less clear and convincing evidence, that his siblings had a "confidential" relationship with him or trusted him in any way. Far from it, Exhibit "A" is a rehashed 2/17/2012, handwritten note which was admitted in the Bankruptcy cases as Document 106-26 in Case No. 15-32751 on 2/05/2016; and also used in the arbitration by HCCI, which Royce Hassell testified was mostly dictated by his sister Shawn Hassell Potts while he was on medications following lifesaving transplant surgery. And, more importantly, it was a document she had earlier agreed to try to get for Mr. Rose's law firm so it would begin "seiz[ing]" *his assets to pay for the Springwoods Project losses.* The idea that this note, which in part states, "I, Royce James Hassell, propose this Action plan to reduce our debt and to preserve our ability to pay off our obligations going forward" and includes statements that he must "Help Phillip/Shawn/Mike in anyway possible from running the office to mopping the floors and to oversee projects for us to be profitable to pay our obligations" supports the notion they trusted him is untenable in light of the fact they locked him after he wrote it.

74. Joinder Petition Exhibit "B," similarly does not evidence trust in Royce Hassell but mistrust in him. As evidenced by the multiple exhibit stamp markings his siblings also brought up Exhibit "B" on behalf of their controlled corporation, HCCI, as Document 106-25 in Bankruptcy case 15-32751 filed of record on 2/05/2016; and also relied on as Exhibit "HCCI 124" in the arbitration. There is no evidence of trust in statements and accusations of Phillip Hassell as follows:

- [Y]ou did not pay the bills that you said you were going to, furthermore you paid bills that were not on your aging report which makes what we talked

about not correct.  Living expenses are not bills to vendors or subcontractors. (Joinder Petition, Exhibit "B," Page 1.)

- Yes I am disappointed because I don't understand what you are doing, the hole keeps getting deeper.  (Joinder Petition, Exhibit B, page 1.)
- I have a meeting with Dad tomorrow about my meeting with the bonding company next week, he is going to blow a gasket with the bills not being paid like I presented to him."   (Joinder Petition Exhibit C, page 3.)

75.  "B" does show his siblings were controlling *Royce Hassell's own monies in the joint ventures which already had been received from the owners, although his siblings were telling him they were making him "advances."  At that time in Royce Hassell's illness his siblings were lying to him about the monies coming in on his behalf and what they were doing with it.  In the meantime, Exhibit "B" evidences that during that time Royce Hassell was having to beg his siblings for his own money to pay his living expenses*.

76. Jason Hassell has presented no evidence, and has none, that he trusted Royce Hassell or had confidence in him.  If he did, he waived those claims on September 2, 2013, when Jason told Royce Hassell in an e-mail "I no longer wish to be contacted about these "TRUST" issues any further."

77.  Corporate officers do not owe a fiduciary duty to individual shareholders absent a contract or special relationship between them in addition to the corporate relationship.  *Cotton v. Weatherford Bancshares, Inc.,* 187 S.W. 3d 687, 698 (Tex. App.-Fort Worth 2006, pet. denied.)    HCCI's Controlling Owners present no clear and convincing evidence of such a relationship or contract.

78. Additionally, even if a cause of action existed for diminution of stock value, HCCI's Controlling Owners cannot produce evidence, clear and convincing or otherwise, that Royce Hassell's conduct caused HCCI damages and thus diminished the value in HCCI stock.

79.  Because HCCI's Controlling Owners cannot provide the required proof of each of the elements of their breach of fiduciary duty claim, the claim must be dismissed under the TCPA.  Tex. Civ. Prac. & Rem. Code § 27.005(c).

       **(iii)**      **Alleged Fraudulent Inducement.**

80.  To establish a fraud claim, HCCI's Controlling Owners must establish by clear and specific evidence that:

(1)  Royce Hassell made a material representation of fact;
(2)  The representation of fact was false;
(3)  When the representation of fact was made, the speaker knew that it was false or made the representation recklessly without any knowledge of its truth and as a positive assertion;
(4)  The speaker made the representation with the intent that the person to whom the representation was made act upon it;
(5)  The person to whom the representation was made acted in justifiable reliance on the representation; and
(6)  The representation caused damages.

*Exxon Corp. v. Emerald Oil & Gas Co.,* 348 S.W. 3d 194, 217 (Tex. 2011); *Italian Cowboy Partners, Ltd. V. Prudential Ins. Co. of Am.,* 341 S.W. 3d 323, 337 (Tex. 2011); *see also, Aquaplex, Inc. v. Rancho La Valencia, Inc.,* 207 S.W. 3d 768, 774 (Tex. 2009).

81. Royce Hassell's siblings have no evidence that Royce Hassell made any false representations to induce them to agree that HCCI enter into the Hassell 2012 Joint Venture, much less evidence of false representations by him that the partnership was for insurance purposes only.

82. Far from showing Royce Hassell was induced any partnership, Joinder Exhibit "C," is a note Phillip Hassell asked Royce Hassell while Phillip Hassell was fifteen months into an eighteen-month sting operation to spy on Royce Hassell for Mr. Rose's law firm, and while he was in constant secret communications with them.  Further the note does not say the partnership, which was already months into operation, is not for profit but states accounting was to continue "as is." Since the partnership was induced by Phillip Hassell and not Royce Hassell (*see, Exhibit "7" Phillip Hassell's "To All" letter)*, and Phillip Hassell now says the agreement was not intended to "be real," if anything Exhibit "C" evidences that Royce Hassell's siblings wrongfully induced him and not the other way around.  Royce Hassell was induced to perform his obligations under a partnership of corporations he, a United States Bankruptcy Judge, two state court judges and a panel of three arbitrators believe "is real."  To that end Royce Hassell trustingly combined his life earned resources, including his companies' contracts, employees, equipment and

24

goodwill, into the partnership which his siblings then allowed conflicted lawyers to destroy as HCCI's corporate counsel.  *See,* Exhibit "13".

83.  Those same conflicted lawyers fabricated false narratives around Exhibit "C."   As early as 2013, conflicted lawyers began keeping the Hassell's fighting between themselves by funneling all Hassell matters into an arbitration stacked with an arbitrator willing to hide his relationship with the lawyers who later, after it was too late, was removed for evident partiality.  (Exhibit "49").  Before the arbitration, in a mediation Judge Carter ordered after Micky Das told Judge Carter Coats Rose lawyers were not involved, Coats Rose lawyers and a large supporting staff showed up and presented Exhibit "C" as the focal point of a forty-page power point presentation they prepared to show Royce Hassell lacked credibility.  At the February 2014 mediation laughter emanated from the room occupied by conflicted lawyers and Royce Hassell's siblings following a joint session wherein Royce Hassell confronted the lawyers face to face with evidence that they were conflicted and should withdraw because they were harming HCCI's suit against the District.

84.  In court after the mediation Micky Das once again led Judge Carter to believe Coats Rose lawyers were not involved by writing:  "Nothing has changed since the Defendants [HCCI, HMS, James Hassell] sought arbitration, or since this Court ordered mediation and subsequently granted the motion to compel arbitration. . . This lawsuit involves a dispute arising from and related to the business relationship among the parties.  That business relationship was memorialized in one, written joint-venture agreement, which contains an arbitration provision.  The dispute comes within the scope of that provision, and there is no argument or evidence before this Court that contests the validity of the written provision or its enforceability. Exhibit "29," Defendant's Response to Plaintiffs' Various Motions . . ."

85.  Further, the idea that Royce Hassell would combine his life earned companies into HCCI just so they could get insurance is fantastical.  Even assuming that story could be believed, which it cannot, had Phillip Hassell even suggested the possibility of such a scheme to his wife, Rosalyn Hassell who is the

licensed insurance agent responsible for obtaining insurance for the venture, she would have been committing insurance fraud by seeking to obtain insurance on that basis.

86. HCCI's Controlling Owners cannot produce any evidence, much less clear and convincing evidence, of what they claim that Royce Hassell represented that he wanted or needed a partnership for insurance purposes "ONLY" or that the Hassell 2012 Joint Venture was anything but a "for profit" partnership. Judge Isgur specifically overruled such ridiculous notions at a transcribed hearing (*see, Exhibit "30" below*) before issuing a written Memorandum Opinion, now more than three years old and un-appealed, upholding the validity of the agreement which HCCI's owners newly attack herein. (Exhibit "5," Memorandum Opinion dated May 11, 2015).

> **THE COURT:** Well, up until this morning I thought that your clients [HCCI, HMS and James Hassell] disputed that the joint venture agreement had assets that it pertained to.
> **MR. KITCHENS:** We don't believe that it does have assets.
> **THE COURT:** Well - -
> **MR. KITCHENS:** I mean we believe that it was formed - - -
> **THE COURT**: -- it had contracted - -
> **MR. KITCHENS:** - -for the purpose of allowing Mr. Royce Hassell to get insurance.
> **THE COURT:** No, it had a profit and loss sharing agreement - - if I were to stop the testimony now, then there's an agreement that certain contracts are going to have profit and loss sharing arrangement between the joint venturers.
> **MR. KITCHENS:** For tax purposes, Your Honor.
> **THE COURT:** Not for tax purposes, for money purposes. And as to whether that makes for a partnership is the argument we're going to have. But I hadn't understood that until today.
> **MR. KITCHENS**: Okay.

87. Exhibit "30", Transcript of Hearing March 25, 2015, Page 127, ll. 8 through 128, ll. 3.

88. HCCI's Controlling Owners cannot provide the required proof of each of the elements of their claim that Royce Hassell fraudulently induced the Hassell 2012 Joint Venture by representing that the partnership "was never meant to be a real agreement to split profits on construction jobs." In fact, the opposite is res judicata. The claim must be dismissed under the TCPA. Tex. Civ. Prac. & Rem. Code § 27.005(c).

**(iv)     Claim for Alleged False Affidavit in Support of Garnishment Petition.**

89. HCCI's Controlling Owners present no evidence to support their TCPA barred third set of claims beginning at Joinder Petition paragraph 2.i. which complains that Royce Hassell signed an affidavit which "supported an application for a writ of garnishment against HCCI's bank account, by intentionally giving misleading information therein." Royce Hassell is constitutionally permitted to garnish a judgment debtor's bank when the judgment debtor has not superseded the judgment.

90.   The allegations of Royce Hassells brothers and sister do not state a claim upon which relief can be granted but, even more compelling is the fact that HCCI's Controlling Owners do not identify any particular statement in Royce Hassell's affidavit which is false or show how it is untrue.   In any event, Royce Hassell stands by his affidavit which he has sworn is true in all respects. The allegations are evidence that his siblings desire to stop Royce Hassell from petitioning to enforce the Final Judgment.  Therefore, the allegations are proof that this action is based on, relates to and is in response to Royce Hassell's exercise of his constitutional rights to petition and free speech.

**D.   The Legal Action Against Royce Hassell Must Be Dismissed Under the TCPA Because Royce Hassell Has Established Each Essential Element of An Affirmative Defenses to This Suit.**

**(i)     Section 27.005(d) of the TCPA.**

91.  Under section 27.005(d) of the Act, "the court shall dismiss a legal action against the moving party if the moving party establishes by a preponderance of the evidence each essential element of a valid defense to the nonmovant's claim."  Tex. Civ. Prac. & Rem. Code § 27.005(d).   This is true even if the nonmovant satisfies its "clear and specific" burden of proof discussed above. *Id.*

**(ii)     Lack of Standing and/or Capacity.**

92. HCCI's owners lack capacity to bring the corporation's claims on their own behalf. By filing this motion Royce Hassell does not waive his objection to the lack of capacity of HCCI's Controlling

Shareholders to bring claims for damages of HCCI simply because the arbitration award diminishes the value of their stock in the corporation. Even if getting a judgment against a corporation could be considered a wrong, "[a] cause of action against one who has injured a corporation belongs to the corporation and not to the shareholders. A corporate stockholder cannot recover damages personally for a wrong done solely to the corporation even though he may be injured by that wrong." *Sawnk v. Cunningham, I258 S.W. 3d 647 (Tex. 2008) citing Wingate v. Hajdik,* 795 S.W. 2d 717, 719 (Tex. App.-Fort Worth 2007, pet denied). Here, HCCI's Controlling Owners sue Royce Hassell because he is attempting to collect a judgment against HCCI for profits he is owed from a partnership between HCCI and his corporations. Even if he had committed some wrong, which he denies, "[t]he individual shareholders have no separate and independent right of action for wrongs done to the corporation that merely result in depreciation in the value of their stock." *Swank, supra, at 661.*

93. "The question of standing is a legal question regarding subject-matter jurisdiction which cannot be waived." *Fitness Evolution, L.P. v. Headhunter Fitness, LLC, 05-13-00506-CV, (Tex. App.-Dallas (5ᵗʰ Dist.) 2015).* However, since a challenge to a party's capacity to participate in a suit may be waived (*Id.),* Royce Hassell chooses not to waive them. *See, Fitness Evolution, L.P. v. Headhunter Fitness, LLC, 05-13-00506-CV, (Tex. App.-Dalls [5ᵗʰ Dist.] 2015).*

        **(iii)**        **Limitations.**

94. The purpose of limitations is to prevent stale or fraudulent claims. *Kerlin v. Sauceda,* 263 S.W. 3d 920, 925 (Tex. 2008). The statute of limitations bars the new suit by HCCI's Controlling Owners brought more than seven years after the evidence they proffer shows they suspected Royce Hassell of wrongdoing. Section 16.004(a)(4) of the Civil Practice and Remedies Code provides a "[p]erson must bring suit on [fraud or breach of fiduciary duty] not later than four years after the date the action accrues." *Id. (4) and (5).* Exhibit "B" to the legal action is an e-mail chain of March 2011, which evidences that far from trusting Royce Hassell his siblings believed he had misapplied funds. Additionally, there is evidence that as far

back as 2011, HCCI's Controlling Owners were even spying on him by unlawfully requesting his private banking information from a bank president of CommunityBank, the subject to the writ of garnishment Royce Hassell's siblings want to stop him from pursuing.  Exhibit "25".

95.  Evidence that no confidential relationship existed includes between Royce Hassell and his siblings during this time includes affidavits of Phillip Hassell prepared by conflicted lawyers representing their own interests which aver that from January of 2012, HCCI and his siblings were "adverse" to Royce Hassell and his companies "at all times."  *See, Exhibit "26."*  It is now more than six years later and any claims for breach of fiduciary duty, fraudulent inducement, and unfair competition against Royce Hassell are clearly barred by limitations.  Just the opposite, Royce Hassell's siblings promises him they would watch his back while he was sick.

96. A misrepresentation constitutes fraudulent concealment when it prevents the plaintiff from discovering a wrong.  *Kanon v. Methodist Hosp.,* 9 S.W. 3d 365, 369 (Tex. App.-Houston [14th Dist.} 1999, no pet.) *disapproved on other grounds, Ernst & Young, LLP v. Pacific Mut. Life Ins. Co.,* 51 S.W. 3d 573 (Tex. 2001).  Royce Hassell's siblings were hiding a relationship with and following the directions of Mr. Rose' law firm from January of 2012 forward with the intent of taking what belonged to Royce Hassell and his companies for themselves.

97.  The "counterclaims" made by Michael Hassell, Phillip Hassell and Shawn Hassell Potts do not arise out of the same action or occurrence that is the basis of Royce Hassell's defending counterclaims he asserted when his siblings caused the family corporation, HCCI, to sue him in December of 2016, in the middle of the arbitration.  HCCI's suit falsely alleges Royce Hassell is not an owner.

98. Jason Hassell brings an original suit, not by way of counterclaims, arguing the same thing his controlled corporation argued in bringing this original suit.

    **(iv)**    **Res Judicata**

99.  "Res judicata precludes relitigation of claims that have been finally adjudicated, or that arise out of the same subject matter and that could have been litigated in the prior action."  *Amstadt v. United State Brass Corp.,* 919 S.W. 2d 644 (1966), citing *Barr v. Resolution Trust Corp.,* 837 S.W. 2d 627, 628 (Tex. 1992).  Res judicata entails proof of a final judgment on the merits by a court of competent jurisdiction; identity of parties or those in privity with them; and a second action based *on the same claims as were raised or could have been raised in the first action*.  *See, Texas Water Rights Comm'n v. Crow Iron Works,* 582 S.W. 2d 768, 771-72 (Tex. 1979).  Although ["[g]enerally people are not bound by a judgment in a suit to which they were not parties, the doctrine of res judicata creates an exception to this rule by forbidding a second suit arising out of the same subject matter of an earlier suit by those in privity with the parties in the original suit."  *Amstadt, pg. 653.*

100.      In the arbitration Post Hearing Brief of HCCI prepared by conflicted lawyers including Mr. Rose's law firm listed the "parties" on the claimants' side as follows:

Claimants are James C. Hassell ("JCH") and Hassell Construction Company, Inc. ("HCCI"). Counter-Respondents are Hassell Management Services, LLC ("HMS"), Shawn Potts, James C. Hassell, and HCCI.  (Because Respondent Royce Hassell has brought a derivative claim on behalf of HCCI against HCCI's and HMS' officers and directors, putative Counter-Respondents are also those officers and directors, *i.e.,* Phillip Hassell and Michael Hassell.)  Claimants and Counter-Respondents will be collectively referred to as Claimants when their individual names are not used."

Exhibit "31", Claimants' Post Hearing Brief, pg. 1.

101.      Prior to filing that brief Mr. Rose's law firm admitted it represented selected HCCI owners, including three of the four siblings now bringing a new suit as HCCI.  (Exhibit "44").

102.      As hereinbefore set out, HCCI's Controlling Shareholders were in privity with HCCI in the arbitration and were actually, if not virtually represented.  As a result, the claims they now brought again for breach of fiduciary duty and fraudulent inducement on the part of Royce Hassell are barred by res judicata.

103.      In fact, the only new claims asserted in the Joinder Petition are that Royce Hassell wrongly petitioned for a writ of garnishment and wrongfully competes against HCCI, which claims evidence this is a TCPA barred suit to punish Royce Hassell for exercising his constitutional rights.  As a result, those claims must be dismissed pursuant to the TCPA.

104.      Claims of breach of fiduciary duty by Royce Hassell to HCCI which were pursued in the arbitration were denied.  *See, Exhibit "1", December 7, 2017, Arbitration Award, pg. 4 "The award is in full settlement of all claims related to the Joint Venture Agreement and the business relationship between the parties.  All claims not expressly granted herein . . . are hereby DENIED."*

105.      The decision of the arbitrators, that the agreement between HCCI and Royce Hassell's companies is a valid agreement, was initially argued for HCCI and its controlling owners by Micky Das and was relied on by Judge Kyle Carter to compel arbitration.  Since then then another state district court judge, Frederika Phillips, a United States Bankruptcy Court Judge (Judge Marvin Isgur), and the arbitrators have upheld the validity of the agreement.

- *See, Exhibit 1, Final Arbitration Award;*

- *See,* Exhibit "32" State District Judge Kyle Carter's Orders Compelling Consolidation and Arbitration at HCCI's request based on the validity of the CJVA and its arbitration clause;

- *See,* Exhibit "*5,*" Memorandum Opinion dated May 11, 2015, of United States Bankruptcy Court Judge Marvin Isgur; *Also see,* Exhibit "30", Transcript of hearing preceding the Memorandum Opinion wherein Judge Isgur overruled HCCI's attempts to limit the terms of the CJVA for "insurance purposes" or for "tax purposes" as follows:

     *See, Exhibit "2" Final Judgment entered by Harris County District Judge Frederika Phillips confirming the Final Arbitration Award.*

106.      Recently, in two bankruptcy court cases filed by these same siblings attempting to re-open issues decided years ago, U.S. Bankruptcy Judge Isgur found them to be in bad faith.  *See,* Exhibit "6", Transcript of Emergency Bankruptcy Hearing, March 9, 2018, page 17, ll.  20-21 The Court: "I find this case was removed in bad faith, never should have been removed."  This ruling came after attorney Bogdan

Rentea could not explain to Judge Isgur why he had filed the involuntary petition or the removal action and finally confessed it is because HCCI does not have the funds to pay the arbitration award.  (*See Exhibit "6", Transcript Emergency Bankruptcy Hearing, March 9, 2018, pg. 17, ll. 17-18.*).

107.      Hours after Bogdan Rentea told Judge Isgur he would like to have the case remanded to Judge Carter's Court, Judge Carter recused himself from the case which he had originally compelled to arbitration in March of 2014, citing "a history" with Bogdan Rentea.  (*See,* Exhibit "33," Judge Carter's self recusal order).

108.      On the same day Judge Carter recused himself, the arbitration case was transferred to a new Harris County Judge, the Honorable Frederika Phillips (Exhibit "33").  In due course, Judge Phillips struck the siblings belated attempts to officially intervene in the arbitration.  (Exhibit "4").  She then confirmed the arbitration award in a Final Judgment (Exhibit "2") which HCCI's Controlling Owners now do not wish HCCI to pay.

109.      Wishing to do over the failed outcome of the arbitration, which they themselves caused to be compelled in the first place, to do over the results of their bad faith Bankruptcy Court removal attempt which they initiated, and to do over their failed belated attempt to intervene in the arbitration by collaterally attacking the judgment through a separate action, Michael Hassell, Shawn Hassell Potts, Phillip Hassell and Jason Hassell filed their Joinder Petition.  The Joinder Petition claims of fraud and breach of fiduciary duty related to the relationship of HCCI with Royce Hassell's companies have been previously filed and decided.  *See, for example,* Exhibit "34", HCCI's "Demand for Arbitration" filed on May 2, 2014, alleging Royce Hassell's "Breach of Fiduciary Duty" (para. 39) and "Fraud" (para. 38); and, "HCCI's First Amended Demand for Arbitration" making claims against him for "Breach of Contract," "Fraud," "Negligent Misrepresentation," "Breach of Fiduciary Duty," and "Business Disparagement," at pages 39-43;  and HCCI's "Supplemental Arbitration Demand.

110.     This legal action asserts no new claims but seeks to rehash arguments and "documents" used repeatedly by Mr. Rose's law firm and its co-counsel Bogdan Rentea in other proceedings.  The three exhibits to the Joinder Petition evidence by their markings repeated prior use in other courts and in the arbitration.  (*See,* Joinder Petition Exhibits A, B, and C).

111.     HCCI's Controlling Owners have no evidence that any funds of HCCI were diverted to RHP.  In fact, the claims are such a frivolous and obvious attempt to financially coerce Royce Hassell that even Coats Rose and Bogdan Rentea agreed to drop those claims in the arbitration after Royce Hassell sought an emergency hearing.

112.     It is not surprising HCCI chose to drop those claims, since Royce Hassell did nothing wrong by recapitalizing a dormant company with a business associate he could trust after Royce Hassell's own siblings locked out of HCCI and his own partnership's contracts.  The newly asserted, time barred claims are frivolous and are not supported by any evidence much less clear and convincing evidence.  The claims are based on facts known to Royce Hassell's siblings since July of 2013, more than four years before the claims were asserted.  *See, for instance,* HCCI's May 2, 2014, Demand for Arbitration describing events in July of 2013, alleged that "on July 15, 2013, Phil Hassell would meet with Royce Hassell the RHC offices to again discuss reduction of forces, the line of credit, and equipment, and to create a plan on what needed to happen.  It was at this meeting Royce Hassell would bring up to Phil that he had several people that wanted to invest in a new company with him completely separate from HCCI and Royce's other entities . . . A few days later at a meeting with HCCI, Mr. Hassell would confront Royce Hassell about starting another company . . . Royce Hassell would storm out of the meeting, gather his things from his office and tell Phil he was done – he refused to work for HCCI any longer and he quit." Exhibit "34", Demand for Arbitration (para. 30)(emphasis added); Exhibit "35" Petition against RHP; and Exhibit "36" proposal of Coats Rose and Bogdan Rentea to non-suit RHP in arbitration, which they did.

113.     Moreover, the value of the stock of HCCI's controlling owners actually increased as a result of the portion of the Final Arbitration Award wherein the arbitrators awarded HCCI an offset against Royce Hassell's share of the partnership profits equal to the debt HCCI claimed was owed on the line of credit which Royce Hassell argued was owed because of the Springwoods Project losses.  *See, also,* same day audit confirmations Royce Hassell was asked to sign with the Springwoods Project claims as collateral. Exhibit "14."  That benefit was obtained for them by Mr. Rose's law firm in the arbitration!

114.     Royce Hassell's siblings are estopped from arguing the Hassell 2012 Joint Venture was not real after they argued in other cases "[i]n 2012, Claimant HCCI, and Respondents R. Hassell Holding Company, Inc. R. Hassell & Company, Inc., R. Hassell Builders, Inc. and G.R. Group Resources LLP *formed a joint venture and executed a Construction Joint Venture Agreement (the "JVA") dated July 1, 2012"* with no mention of RHP, new claims against RHP are frivolous.  *See, for example*, documents such as, Exhibit "37", Motion to Compel Arbitration at para. 1; Exhibit "34", HCCI's Arbitration Demand at para. 3; HCCI's First Amended Demand for Arbitration of January 12, 2015[11]; and, HCCI's Supplement Arbitration Demand.

115.     Importantly, Royce Hassell's siblings are bound by the successful arguments of their own lawyers (especially since they were simultaneously Exxon's Lawyers and loyal to the District) that the CJVA binds non-signatories' "factually related to and factually intertwined" claims which are "significantly related to and factually intertwined with the JVA" (*See,* Exhibit "34", HCCI's Arbitration Demand at para. 4, and HCCI's First Amended Arbitration Demand at para. 6.)  No question exists that the Joinder Petition claims are factually related and factually intertwined with the CJVA.

   (v)     **Estoppel**

---

[11] The certificate of service on HCCI's "First Amended Demand for Arbitration" is erroneously dated January 12, 2014, but was served on  January  12, 2015.

116.     HCCI's Controlling Owners are estopped at law and in equity from asserting claims that

Royce Hassell breached his fiduciary duties in relation to the CJVA or that the CJVA is "not real:"

    **(a) Estoppel by Record or Judicial Estoppel:**   A party is estopped from asserting a position
        contrary to that taken under oath in an earlier judicial proceeding to gain an unfair advantage.
        *Ferguson v. Building Materials Corp.,* 295 S.W. 3d 642, 643 (Tex. 2009).

117.     The verified pleadings, signed affidavits, deposition testimony, court testimony, sworn

arbitration testimony as well as the explanations of counsel made by HCCI's Controlling Owners in earlier

proceedings contradict the positions the siblings now assert regarding the validity of the CJVA.

118.     Specifically, Phillip Hassell has repeated verified the CJVA is a valid, enforceable

agreement with a valid, enforceable arbitration clause and caused his controlled corporation HCCI to take

the same position.  For example, Phillip Hassell verified both for HCCI and Phillip Hassell's HCCI's Motion

to Compel Arbitration which states "[i]n 2012, Plaintiffs and Defendants formed a joint venture and

executed a Construction Joint Venture Agreement ("the JVA") dated July 1, 2012.  The JVA contains a

broad arbitration provision that mandates the arbitration of all disputes that arise between the parties. .

. Accordingly, Plaintiffs' claims are subject to binding arbitration. . . Plaintiffs' attempt to avoid their

contractual obligation to arbitrate their claims should not be countenanced. Whether a valid arbitration

agreement exists is a question of law. . . Because a valid, enforceable arbitration agreement exists

between Plaintiffs and Defendants, this Court has no discretion but to compel arbitration . . . "  Exhibit

"37", Motion to Compel, pages 1 and 3; and Phillip Hassell's verifications for HCCI and HMS (a company

in which Royce Hassell has no ownership).  Phillip Hassell's verification swears under oath that "he has

personal knowledge of the facts contained [in the motion to compel] and that all factual statements are

true and correct."  Exhibit "45", Phillip Hassell's verification for HCCI and Exhibit "46", page 10, Phillip

Hassell's Verification for HMS.

    **(b) Estoppel by Contract:**  A party may not deny the terms of a valid contract which has not been
        set aside by fraud, accident or mistake.

35

119.        The only two signatories to the CJVA, Phillip Hassell and Royce Hassell, have both given

sworn testimony that the CJVA is a valid enforceable contract.

120.        The CJVA has not been set aside by fraud, accident or mistake.  HCCI's attorneys have

argued in various courts and the arbitration the agreement is valid before and after deciding to not appeal

Judge Isgur's 2015 Memorandum Opinion, so holding.   Royce Hassell's siblings cannot now deny the terms

of the contract they have repeatedly caused their controlled corporation to embrace for purposes of

obtaining relief.  *Mathews v. Sun Oil Co.,* 411 S.W. 2d 561, 564 (Tex. App.-Amarillo 1996), aff'd., 425 S.W.

2d 330 (Tex. 1968).  Now that Royce Hassell and his companies have acted in reliance on the agreement

his siblings may not be permitted to disavow his just compensation for the acts he did in performance of

the contract. *31 C.J.S. Estoppel and Waiver §70-73.*

> **(c) Equitable Estoppel:**  Equitable estoppel prevents a party from changing its position after
> misrepresenting or concealing facts which the other party relied on to its detriment.  *Sefzik,*
> *v. City of McKinney,* 198 S.W. 3d 884, 895 (Tex. App.-Dallas 2006, no pet.).  **The elements of**
> **the equitable estoppel defense are:**  1) the plaintiff made a false representation to, or
> concealed a material fact from, the defendant; 2) the plaintiff intended that its representation
> or concealment be acted on; 3) the plaintiff knew or had the means of knowing the real facts;
> 4) the defendant neither knew nor had *the means* of knowing the real facts; 5) the defendant
> relied on the representation or concealment to its detriment.  *Johnson & Higgins v. Kenneco*
> *Energy, Inc.,* 962 S.W. 2d 507, 515-16 (Tex. 1998).

121.        HCCI's Controlling Owners engaged in knowing concealment and false representations

with intent that Royce Hassell act without knowledge of the true facts and in reliance on the false

representations.  Phillip Hassell proposed the Hassell 2012 Joint Venture in the presence of Mike Hassell

in August of 2012.  After the partnership began operations Shawn Hassell Potts told the accountant for

the partnership, Steve Ligon, that the partnership was real; HCCI's Controlling Owners told the insurance

company the agreement was real; and HCCI's Controlling Owners made repeated representation to Royce

Hassell that it was real.

122.        Although HCCI's Controlling Owners now claim they intended the agreement to be fake

they were misrepresenting and concealing the fact they thought it was fake from Royce Hassell, who had

36

no means of knowing they believed the agreement was fake, and who relied on the agreement to his grave detriment.

123.     Because HCCI's Controlling Owners caused Royce Hassell (and other third parties) to believe the agreement was real and Royce Hassell relied on those representations to his detriment, HCCI's Controlling Owners are estopped from denying the validity of the agreement.

> **(d) Promissory Estoppel:**  Promissory estoppel ("justifiable reliance") is an affirmative defense which prevents a party from claiming that a contract is invalid or unenforceable.  *Nagle v. Nagle,* 633 S.W. 2d 796, 800 (Tex. 1982).  **The elements of promissory estoppel are** 1) a promise by the plaintiff to the defendant; 2) the defendant reasonably and substantially relied on the plaintiff's promise to its detriment; 3) the plaintiff know or should have known its promise would lead the defendant to some definite and substantial injury; and 4) injustice can be avoided only by enforcing the plaintiff's promise.

124.     In December of 2010, when Royce Hassell was gravely ill, Phillip Hassell, Michael Hassell, and Shawn Hassell Potts gave Royce Hassell a letter written by Phillip Hassell's wife, Rosalyn Hassell, that they "truly" wanted to be his partner if Royce Hassell would turn over the running of the finances on jobs with HCCI over to them, which he did, *i.e., see Joinder Petition exhibits "A" and B."*  In July of 2012, while conspiring with conflicted attorneys Phillip Hassell proposed a sharing of profits combining of resources partnership if HCCI could have 75% of the profits from the venture and Royce Hassell would take 25% which Royce Hassell accepted.  HCCI's owners claim herein the agreement was not real.  However, Royce Hassell relied on the agreement to his great detriment and injustice can only be avoided by enforcing the promises they made.  HCCI's Controlling Owners are estopped from asserting the CJVA is a fake.

> **(e) Quasi Estoppel:** Quasi estoppel is an equitable doctrine that prevents a party from asserting to another's disadvantage, a right that is inconsistent with a position previously taken by that party.  *Lopez v. Munoz, Hockema & Reed, LLP,* 22 S.W. 3d 857, 864 (Tex. 2000).  **The elements of quasi-estoppel are**: 1) the plaintiff acquiesced to or accepted a benefit under a transaction; 2) the plaintiff's present position is inconsistent with its earlier position when it acquiesced to or accepted the benefit of the transaction; 3) it would be unconscionable to allow the plaintiff to maintain its present position, which is to another's disadvantage.  *Id.*

125.     Here, HCCI's Controlling Owners have taken 75% plus Royce Hassell's share of the Hassell 2012 Joint Venture profits and used them to pay conflicted attorneys Royce Hassell warned them about

in 2013.  HCCI also accepted the benefits of the Hassell 2012 Joint Venture combing of assets including

Royce Hassell's long time employees, the use of his equipment and the use of his real estate equity to

shore up their out of control spending.  It would be unconscionable to allow HCCI's Controlling Owners to

maintain their present position in this case to the grave disadvantage of Royce Hassell.

#### (vi)   Accord and Satisfaction; Settlement.

126.     Any claimed debt of Royce Hassell or his companies to HCCI has been paid with Hassell

2012 Joint Venture profits.   Thus, there is no debt for which Royce Hassell and his companies are

responsible.

127.     Further, any claims HCCI might have had against Royce Hassell as a result of his

association with RHP were compromised and settled by attorneys Patrick Gaas and Bogdan Rentea, on

behalf of the Hassell's they represent during the same hearings they agreed to drop all claims against RHP

as well as their threat to make claims against Royce Hassell's 86-year-old mother-in-law and his two sons,

in exchange for Royce Hassell dropping his objections to the arbitration on the grounds of inability to pay.

Their clients which include Royce Hassell's siblings are bound by that agreement which this suit violates

because Royce Hassell performed his end of the bargain to his detriment.  *Lopez v. Munoz, Hockema &*

*Reed, LLP,* 22 S.W. 3d 857, 863 (Tex. 2000).

#### (vii)   Waiver

128.     Waiver is the intentional relinquishment of a know right or conduct inconsistent with

claiming that right.  *Frazier v. GNRC Realty, LLC,* 476 S.W. 3d 70 (Tex. App.-Corpus Christi 2014, pet denied.)

The elements of waiver are:

> (1)  Existing right, benefit or advantage;
> (2)  actual or constructive knowledge of its existence; and
> (3)  an actual intent to relinquish the right inferable from the conduct.

*Ohrt v. Union Gas Corp.,* 398 S.W. 3d 315 (Tex. App.-Corpus Christi 2012, pet. denied).

129.        HCCI and Royce Hassell's siblings, through the own lawyers, intentionally waived any rights to sue Royce Hassell based on his ownership of RHC, and waived the right to sue RHP or any of its owners and a host of other parties they had threatened to sue such as Royce Hassell's 86 year-old mother-in-law and his two sons, Royce Hassell's secretary and Royce Hassell's brother in law, in exchange for Royce Hassell going into debt  to pay the arbitration costs for an arbitration which benefit the District and Exxon.

130.        Moreover, HCCI's Controlling Owners claimed the rights, benefits and advantages of the CJVA on numerous occasions.  As a result, even if they once believed it was a fraudulently induced agreement-which it was no on the part of Royce Hassell- they exhibited conduct of actual intent to relinquish the right inferable from claiming the agreement was invalid.  By relying on the terms CJVA to obtain benefits, not the least of which was the arbitration they compelled by it, HCCI's Controlling Owners have waived the right to now claim the agreement is "not real."

           **(viii)    Ratification; Detrimental Reliance; Ultra Vires Contract and Unclean Hands.**

131.        **The elements of ratification** include (1) approval by act, word, or conduct; (2) with full knowledge of the facts of the earlier act; and (3) with the intention of giving validity to the earlier act. *Jamail v. Thomas,* 481 S.W. 2d 485, 490 (Tex. App.-Houston [1st Dist.] 1972, writ ref'd n.r.e.).

132.        Beginning with repeatedly asserting the validity of the CJVA and also of its arbitration clause in 2013, HCCI's Controlling approved the terms of the contract (to include a sharing of profits) with full knowledge of the facts *they now claim* mean the agreement was not for "for profit" but for purposes of deceiving an insurance company of which Phillip Hassell's wife, Rosalyn Hassell is "attorney in fact." Having ratified the CJVA, HCCI's Controlling Owners have ratified its terms which the arbitrators found entitles Royce Hassell's companies to profits which HCCI now owes.

   **E.    Because Dismissal is Proper, the TCPA Requires the Court to Award Royce Hassell His Court Costs, Attorney's Fees and Expenses, and to Sanction Michael Hassell, Phillip Hassell, Shawn Hassell Potts and Jason Hassell.**

133.     If the Court dismisses this new suit under the TCPA, then it "shall" award Royce Hassell his "court costs, reasonable attorney's fees, and other expenses incurred in defending against the legal action as justice and equity may require." Tex. Civ. Prac. & Rem Code § 27.009(a)(1).  In other words, the TCPA "mandates" the award of fees and costs and expenses to a successful movant.  *See Alphonso v. Deshotel,* 417 S.W. 3d 194, 200 (Tex. App.-El Paso 2013, no pet.), *disapproved of on other grounds by In re Lipsky,* 460 S.W. 3d at 591.

134.     Furthermore, the TCPA requires "sanctions against the party who brought the legal action as the court determines <u>sufficient to deter the party who brought the legal action from bringing similar actions described in this chapter.</u>"  Tex. Civ. Prac. & Rem. Code § 27.009(a)(2).  HCCI's Controlling Owners are already the subject of sanctions proceedings in federal bankruptcy court for their bad faith filings. (See Exhibit "6", Transcript of Emergency Bankruptcy Hearing, March 9, 2018, pp. 17-19.)  Because this is not the first, or second or third time HCCI's Controlling Owners have made the same claims, an award of sanctions should be entered to reduce the likelihood of future misconduct by HCCI's Controlling Owners.

135.     The true gist and new claims of the legal action surfaces wherein HCCI's Controlling Owners complain against Royce Hassell allegedly for "support[ing] an application for a writ of garnishment against HCCI's bank account, by intentionally giving misleading information therein." (Joinder Petition, Para. 2(i)) and taking "actions designed to damage HCCI and its owners, by, inter alia, diverting assets and business opportunities rightfully belonging to HCCI."   The obvious import of these legal actions is that they are based on, relate to, and/or are in response to Royce Hassell's exercise of his constitutional right to petition for a writ of garnishment, right to free speech for making a supporting affidavit, and right to associate with RHP and Terry Tauriello for the purposes of making a living.

136.     In threatening that they will "add, after discovery, any additional parties, including, but not limited to, the officers and directors of RHP, including Cindy Grooms and Ricardo Todeschini, or any other person that aided and abetted in the formation of RHP and contributed to the damages alleged

herein" (Joinder Petition, Page 2, *5) HCCI's Controlling Owners call for this Court to use its TCPA's sanctioning authority to deter these parties, through significant sanctions, from engaging in future violations of the TCPA.

137.     Accordingly, in addition to dismissing claims of HCCI's Controlling Owners, the Court should award Royce Hassell sanctions as well as his court costs and attorney's fees and expenses.  Tex. Civ. Prac. & Rem. Code § 27.009.

**III.     Proof.**

138.     In support of this motion, Royce Hassell relies on the pleadings on file, including the live petition of HCCI's Controlling Owners, and the exhibits identified on the index of exhibits that precedes this motion.  The exhibits are attached hereto and incorporated herein for all purposes.  Additionally, Royce Hassell asks the Court to take judicial notice of the pleadings in and judgments of other courts in matters related to this case and of the arbitration.

**Prayer.**

139.     Royce Hassell prays the Court grant this motion, to dismiss with prejudice the legal action asserted against him by HCCI's Controlling Owners, to award Royce Hassell his costs, attorney's fees, and other expenses under the TCPA, and to sanction HCCI's Controlling Owners in accordance with the terms of the TCPA.  Royce Hassell requests any other, further, or alternative relief to which it may be legally or equitably entitled.

Respectfully submitted,

By: */s/ Silvia T. Hassell*
Texas Bar No. 09205200
12807 Haynes Rd., Bldg. C
Houston, Texas 77066
Tel.  713-665-2442
Fax. 713-665-0369
E-Mail:  sehassell@aol.com

Attorney for Royce Hassell

**CERTIFICATE OF SERVICE**

I hereby certify that on 19th By day of May, 2018, a true and correct copy of the foregoing instrument was served on all known counsel of record in accordance with the Texas Rules of Civil Procedure, *to-wit:*

Bogdan Rentea, Esq.
Texas Bar No. 16781000
700 Lavaca, Suite 1400
Austin, Texas 78701
Tel. 512-472-6291
Fax. 512-472-6278
brentea@rentealaw.com


/s/ Silvia T. Hassell