# EXHIBIT 3

2/27/2018 4:03 PM
Chris Daniel - District Clerk Harris County
Envelope No. 22813026
By: JIMMY RODRIGUEZ
Filed: 2/27/2018 4:03 PM

CAUSE NO. 2013-61995

| | | |
|---|---|---|
| R. HASSELL & CO., INC., | § | IN THE DISTRICT COURT |
| R. HASSELL BUILDERS, INC., | § | |
| R. HASSELL HOLDING CO., INC., and | § | |
| G.R. GROUP RESOURCES, LLP, | § | |
| | § | |
| *Plaintiffs,* | § | OF HARRIS COUNTY, TEXAS |
| | § | |
| v. | § | |
| | § | |
| HASSELL CONSTRUCTION CO., INC., | § | |
| and HASSELL MANAGEMENT | § | |
| SERVICES, LLC, | § | 125th    JUDICIAL DISTRICT |
| | § | |
| *Defendants*. | § | |

### PLAINTIFFS' MOTION TO STRIKE PLEA IN INTERVENTION

Plaintiffs initiated this lawsuit nearly four and a half years ago, on October 15, 2013. Soon thereafter, the Court compelled the lawsuit to arbitration. After an eight-day hearing involving the testimony of seven witness and hundreds of exhibits, a final Arbitration Award was issued. The Arbitration Award addressed a multitude of claims, and awarded roughly 1.2 million dollars to Plaintiffs, who, along with Royce and Silvia Hassell, were Respondents in the Arbitration.[1]  Respondents promptly sought to confirm the Arbitration Award in this Court by filing an Application to Confirm on January 31, 2018, and set the same for oral hearing. Only then—**four and a half years after** this lawsuit began, **six months after** the arbitration hearing concluded, **after** the issuance of the Arbitration Award, **after** the filing of the Application to Confirm, and **less than a week** before the confirmation hearing was set—did Intervenors file their Plea in Intervention.

---

[1] Other relief was awarded in addition to the monetary relief. This will be discussed *infra*.

1

The Plea in Intervention must be struck. It is a frivolous filing and a thinly-veiled collateral attack on the Arbitration Award. There are no legitimate grounds to vacate the Arbitration Award. There are no legitimate reasons why it should not be confirmed. But rather than accept this reality, the Plea in Intervention is the latest salvo in Defendants' concerted effort to delay, by any means possible, the confirmation of the award. The Court must strike the Plea in Intervention for the following reasons:

1. The Intervenors do not have standing to intervene because they do not possess a justiciable interest by virtue of being shareholders of HCCI and beneficiaries of the shareholder Trust;

2. The claims Intervenors wish to bring have been adjudicated in arbitration and are barred by res judicata;

3. The Plea in Intervention is untimely and improper because Shawn Potts is already a party and the remaining intervenors were virtually represented in the arbitration; and

4. The Plea in Intervention is an impermissible collateral attack on the Arbitration Award.

## I. BACKGROUND FACTS

On October 15, 2013, Plaintiffs R. Hassell & Co, Inc., R. Hassell Builders, Inc., R. Hassell Holding Co., Inc., and G.R. Group Resources, LLP (collectively, the "Plaintiffs") filed Plaintiffs' Original Petition for Declaratory Judgment (the "Lawsuit"). Hassell Construction Co., Inc. and Hassell Management Services, LLC ("HCCI" and "HMS", respectively, and, collectively, "Defendants") were named as defendants. Within months, Defendants sought to compel the case to arbitration. Plaintiffs vigorously opposed, but on March 3, 2014, the Court entered an Order granting Defendants' motion to compel (the "Arbitration Order").[2] In late

---

[2] A true and correct copy of the Arbitration Order is attached hereto as **Exhibit A**.

2014, three other lawsuits were consolidated into this Lawsuit, and ordered to arbitration[3] based on Defendants' arguments that "this court has dominant jurisdiction of the Hassell family dispute (including related and intertwined matters), and it has ordered that dispute to arbitration."[4]

Pursuant to the Court's Arbitration Order, the Parties submitted their disputes to binding arbitration. Over their objections, Royce and Silvia Hassell were made parties to the Arbitration, and along with the Plaintiffs, Royce and Silvia Hassell became Respondents. HCCI, HMS, Shawn Potts and James C. Hassell were Claimants and/or Counter-Respondents. The arbitration hearing began on June 19, 2017 in Houston, Texas, and concluded after an eight-day hearing. Seven witnesses testified and hundreds of exhibits were admitted. On December 7, 2017, the arbitral tribunal issued the Arbitration Award.[5] The Arbitration Award was then modified pursuant to the applicable American Arbitration Association rules and provisions of the Texas Civil Practice & Remedies Code to correct a handful of computational and typographical errors.[6]

---

[3] On November 17, 2014, the Court entered an Order Granting Defendants'/Third-Party Defendants' Motion to Consolidate. This consolidation order consolidated three civil cases with the Lawsuit: (1) Cause No. 2014-27280, *Royce Hassell and Silvia Hassell v. James C. Hassell and Shawn Hassell Potts*, in the 157th Judicial District Court of Harris County, Texas; (2) Cause No. 2014-36326, *Royce J. Hassell and Silvia T. Hassell v. James C. Hassell and Hassell Construction Company, Inc.*, in the 125th Judicial District Court of Harris County, Texas; and (3) Cause No. 2014-00928, with regard to the claims filed by the Third-Party Plaintiffs Royce James Hassell and Sylvia Todeschini Hassell against Third-Party Defendants Shawn Hassell Potts, individually and as trustee, and James C. Hassell, individually in *Ali Reza Motamedi v. Royce James Hassell, et al.*, in the 125th Judicial District Court of Harris County, Texas.

[4] *See* Defendants/Third-Party Defendants' Supplemental Motion and Brief in Support of Their Motion to Consolidate and Response to Plaintiffs Royce J. Hassell and Silvia T. Hassell's Motion for Protection and to Disregard Motion To Consolidate and Reply to Plaintiffs R. Hassell & Co., Inc., R. Hassell Builders, Inc., R. Hassell Holding Co., Inc., G.R. Group Resources, LLC, Royce J. Hassell and Sylvia Hassell's Opposition to Defendants' Motion to Consolidate", at ¶ 7 (filed Sept. 26, 2014).

[5] A true and correct copy of the Arbitration Award is attached hereto as **Exhibit B**.

[6] A true and correct copy of the Tribunal's Order Granting Respondents' Motion to Modify the Arbitration Award and Granting in Part and Denying in Part Claimants' Request to Modify Award (the "Modification Order") is attached hereto as **Exhibit C**.

3

As modified by the Modification Order, the Arbitration Award provides that (1) R. Hassell & Company, Inc. and R. Hassell Builders, Inc. are entitled to recover damages in the amount of $1,202,191.63 from HCCI; (2) HCCI and James C. Hassell are obligated to "defend, indemnify, and hold harmless R. Hassell Companies, Royce Hassell and Silvia Hassell for all claims made by Vista Bank" relating to a letter of credit on which the Tribunal found Respondents had extinguished their liability; (3) various Deeds of Trust executed by Royce and Silvia Hassell naming James C. Hassell as beneficiary are declared void and are to be released; and (4) Respondents shall reimburse Claimants the sum of $34,641.68, representing administration fees relating to the arbitration proceeding.[7] The Arbitration Award, as modified by the Modification Order, is the final decision in the Arbitration, and provides that it is a "full settlement of all claims related to the Joint Venture Agreement and the business relationship between the parties."[8]

With the Arbitration concluded, on January 31, 2018, Plaintiffs, along with Royce and Silvia Hassell (again, the Respondents) filed their Application to Confirm the Arbitration Award (as modified) against Claimants James C. Hassell, HCCI, and HMS. Following that filing, the James C. Hassell Inter-vivos Trust (the "Trust"), Phillip Hassell, Jason Hassell, Shawn Potts, and Michael Hassell (collectively, with the Trust, the "Intervenors"), filed their Plea in Intervention (the "Intervention"), which is the subject of this Motion to Strike.

---

[7] **Ex. B**, Arbitration Award; **Ex. C**, Modification Order.

[8] **Ex. B**, Arbitration Award.

## II. LEGAL ARGUMENTS AND AUTHORITIES

**A. The Intervenors do not have standing to intervene because they do not possess a justiciable interest by virtue of being shareholders of HCCI and beneficiaries of the shareholder Trust.**

As mere shareholders of HCCI and beneficiaries of a shareholder trust, Intervenors do not have a justiciable interest in the Lawsuit, and therefore cannot intervene. In order to intervene, a person or entity must demonstrate that it has a "justiciable interest" in the lawsuit. *Zeifman v. Sheryl Diane Michels*, 229 S.W.3d 460, 464 (Tex. App.—Austin 2007, no pet.). This interest can be legal or equitable in nature, "but must be present and not merely remote or contingent." *Id.* The combined effect of these principles is that a party seeking affirmative relief may only intervene if it could have brought all or part of the same suit in its own name. *Guar. Fed. Sav. Bank v. Horseshoe Operating Co.*, 793 S.W.2d 652, 657 (Tex. 1990). As discussed below, Intervenors fall short of this standard.

  1. <u>As shareholders and beneficiaries, Intervenors lack standing to bring suit relating to harm suffered by HCCI.</u>

Intervenors lack standing to bring the suit in their own name because their interests in the Lawsuit exist only by virtue of their status as shareholders of defendant HCCI. Intervenors must establish that they could have, on their own, brought the claims they now wish to assert as stated in their Plea in Intervention. However, as shareholders of HCCI, they could not have brought any of these claims against Plaintiffs.

It is a basic and universal legal principle that "**shareholders have no individual or direct claims for injuries to the corporation.**" *Sneed v. Webre*, 465 S.W.3d 169, 188 (Tex. 2015) (emphasis added). As the Houston 1st District Appellate Court has stated, "a corporate shareholder has no individual cause of action for personal damages caused solely by a wrong

5

done to the corporation." *Webre v. Sneed*, 358 S.W.3d 322, 329 (Tex. App.—Houston [1st Dist.] 2011), aff'd, 465 S.W.3d 169 (Tex. 2015). It follows that "individual stockholders generally 'have no separate and independent right of action for injuries suffered by the corporation **which merely result in the depreciation of the value of their stock.**'" *Id.* (citing *Perry v. Cohen*, 285 S.W.3d 137, 144 (Tex. App.—Austin 2009, pet. denied) (emphasis added); *see also Commonwealth of Massachusetts v. Davis*, 168 S.W.2d 216, 221 (Tex. 1942) ("It is apparent from the foregoing that Davis sought and recovered damages for injuries that were suffered primarily by the corporation, and only secondarily by him, by reason of his ownership of stock therein. . . . Generally, the individual stockholders have no separate and independent right of action for injuries suffered by the corporation which merely result in the depreciation of the value of their stock."). An action for such an injury "must be brought by the corporation, not individual shareholders." *Perry*, 285 S.W.3d at 144.

The Intervenors lack standing because they cannot assert claims for injuries allegedly suffered by the corporation. The Intervention is clear that the Intervenors are attempting to intervene on the exact bases that the aforementioned cases have explicitly stated they cannot. For example, the Intervention states: "Should the result reached by the AAA Panel stand, . . . HCCI's stock value will be significantly diminished, if not complete destroyed." (Plea in Intervention, ¶ 14). Furthermore, under the section entitled "Intervenors' Interests", the Intervenors state that "The intervenor Trust has an interest, right and, most importantly, obligation to file this plea, to insure that the Trust's assets are preserved and not diminished . . . ." (Plea in Intervention, ¶ 18). The Intervenors' alleged "interest" is in preserving the value of HCCI stock. This is not a valid basis for intervention.

6

HCCI had the right to pursue the claims Intervenors wish to pursue. **HCCI did in fact pursue those claims,** albeit unsuccessfully, in the Arbitration. The Trust—a shareholder—does not have the right to pursue these claims and could not have brought suit on these claims on its own accord. Since the Trust, which as a mere shareholder of HCCI, cannot intervene, it follows that the individual beneficiaries, who are another step removed and remote, cannot intervene.

2. <u>Intervenors have not suffered a "personal" injury.</u>

Though not a true exception to bar on shareholder suits discussed above, there is one caveat that under certain circumstances allows shareholders to recover damages for "wrongs done to the stockholder individually." *Linegar v. DLA Piper LLP (US)*, 495 S.W.3d 276, 279 (Tex. 2016). Under this caveat, the stockholder must "prove a personal cause of action and personal injury" that arises out of a violation of a duty "owing directly by [the wrongdoer] to the stockholder." *Linegar*, 495 S.W.3d at 279 (citations omitted) (alteration in original).

This alternative avenue provides no relief for the Intervenors, as they have not and cannot establish that they suffered a "personal injury" giving rise to a "personal cause of action." Intervenors' declaratory judgment cause of action alleges that "the plaintiffs are indebted to **HCCI**." (Plea in Intervention, ¶ 24) (emphasis added). The Intervention goes on to allege that "plaintiffs may not recover under the CJVA . . . ." (Plea in Intervention, ¶ 24). As Intervenors themselves admit, the CJVA (Construction Joint Venture Agreement) is an agreement between R. Hassell & Co., Inc., R. Hassell Builders, Inc., R. Hassell Holding Co., Inc., and G.R. Group Resources, LLP, on one hand, and HCCI, on the other. (Plea in Intervention, 2, n.3). Regarding the deeds of trust, the Intervention alleges that the deeds were "executed by Royce and Silvia and offered to **HCCI and JCH** for security for debts owed to **HCCI** . . ." (Plea in Intervention,

7

¶ 24) (emphasis added).  Intervenors' equally ridiculous cause of action for "Fraud and Fraudulent Misrepresentation and Breach of Informal Fiduciary Relationship arising from a Confidential Relationship" alleges that it was **HCCI and JCH** that acted "in reliance" and it was **HCCI and JCH** that extended credit to Plaintiffs.  (Plea in Intervention, ¶¶ 26–27) (emphasis added).  Both the "promissory note" mentioned and the "LOC" were agreements involving HCCI—not any of the Intervenors.  Even by Intervenors' own pleadings, they admit that the claims they wish to bring are not related to personal injuries suffered by the Intervenors.  They are not personal causes of action.

The Intervention must be struck because the Intervenors do not possess a "justiciable interest" in this Lawsuit.  The Trust is merely a shareholder of defendant HCCI and does not have standing to bring claims for injuries suffered by the corporation.  The individual intervenors—Phillip, Jason, and Michael Hassell, and Shawn Potts—are even further removed as their interest is wholly derived from their status as a beneficiary of the Trust.  Finally, none of the Intervenors suffered the requisite "personal" injury.

> **B.  The claims Intervenors wish to bring have been adjudicated in arbitration and are barred by res judicata.**

The Intervention must also be struck because the claims therein have already been adjudicated, and are barred by the principles of res judicata.  Res judicata, or claims preclusion, "prevents the relitigation of a claim or cause of action that has been finally adjudicated, as well as related matters that, with the use of diligence, should have been litigated in the prior suit." *Premium Plastics Supply, Inc. v. Howell*, 01-16-00481-CV, 2017 WL 4288074, at *2 (Tex. App.—Houston [1st Dist.] Sept. 28, 2017, no pet.) (citing *Barr v. Resolution Trust Corp.*, 837 S.W.2d 627, 628 (Tex. 1992).  For the res judicata defense to apply, the party relying on the

8

doctrine must establish (1) the existence of a prior final judgment on the merits by a court of competent jurisdiction; (2) identity of parties or those in privity with them; and (3) a subsequent action based on the same claims as were or could have been raised in the first action. *Travelers v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010).

First, a "prior final judgment" exists in this Lawsuit by virtue of the arbitration award. An arbitration award is treated as a final judgment and has preclusive effect for purposes of res judicata. *Tanox, Inc. v. Akin, Gump, Strauss, Hauer & Feld*, 105 S.W.3d 244, 270 (Tex. App.—Houston [14th Dist.] 2003, pet. denied); *Anzilotti v. Gene D. Liggin, Inc.*, 899 S.W.2d 264, 266 (Tex. App.—Houston [14th Dist.] 1995, no writ).

Second, Intervenors are in privity with HCCI and HMS (Claimants in the Arbitration) because Intervenors' interests were represented by those parties in the Arbitration. One means by which parties may be in privity is if "their interests can be represented by a party to the action." *Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 653 (Tex. 1996). Intervenors' alleged interest in the Lawsuit is merely derivative of their rights as a shareholder (in the case of the Trust), or as even more removed beneficiaries of that Trust (in the case of the intervenor individuals). The interests of the Intervenors as a whole were represented in the Arbitration by HCCI – the corporate entity allegedly suffering the harm.

Moreover, to determine whether subsequent plaintiffs are in privity with prior plaintiffs, court examine the "interests the parties shared." *Id*. "Privity exists if the parties share an identity of interests in the basic legal right that is the subject of litigation." *Id*. To determine whether a prior and later lawsuit involve the same basic subject matter, courts focus on the factual basis of the complaint. *Id*. If the second plaintiffs seek to relitigate matters which were the subject of the

9

earlier litigation, res judicata bars the suit even if the second plaintiffs do not allege causes of action identical to those asserted by the first. *Id.* Res judicata also precludes a second action on claims that arise out of the same subject matter and which might have been litigated in the first suit. *Id.* A brief review of the Intervention compared to the claims at issue in the Arbitration erases any doubt that the two arise out of the same subject matter.

Perhaps most damaging for the Intervenors is the fact that the Intervention is based on the same claims that in fact **were** raised in the first action (the Arbitration). Just before the Arbitration hearing, Claimants and Respondents were required to submit a one-page list of factual and legal issues for the Tribunal to consider and rule upon.[9] Among the issues presented were:

- "Amounts due under the $350,000 promissory note signed by Royce Hassell";
- "Amounts due to HCCI for moneys advanced Royce Hassell ("RH") and his various companies from HCCI and its line of credit ("LOC")";
- "Damages sustained by James C. Hassell, by reason of HR's failure and refusal to repay borrowed money";
- "The identity of the properties pledged by RH and Silvia Hassell ("SH") and their various companies to secure the repayment of money borrowed from the Claimants, and whether those properties may be ordered foreclosed now by reason of default in payments of debts which the properties secure";
- "Damages sustained by HCCI due to RH and SH's misrepresentations regarding: (a) the use borrowed funds, (b) status of construction projects, (c) validity of security for loans, (d) their true financial condition and (d) use of proceeds from the sale of property pledged as security"; and
- "Accounting for projects included in the 2012 Joint Venture Agreement"

These claims were already brought, evaluated, decided, and ruled on **unfavorably** against Defendants in the arbitration. HCCI lost on these claims. They cannot be re-ligated here.

---

[9] A true and correct copy of Claimants' List of Factual and Legal Issues is attached hereto as **Exhibit D**.

10

It bears noting that while Intervenors attempt to play coy with their knowledge of the Arbitration (*see* Plea in Intervention, 4, n. 5, suggesting that the Intervenors and Defendants are unrelated), the facts and outcome of the Arbitration are well known to the Intervenors. Intervenors' counsel, Mr. Rentea, represented the Claimants in the Arbitration, and both Phillip Hassell and Shawn Potts were called as witnesses by their own attorneys on behalf of HCCI at the final hearing.

The purpose of res judicata is to ensure that "a defendant is not twice vexed for the same acts," and to achieve judicial economy by precluding those who have had a fair trial from relitigating claims. *Texas Water Rights Comm'n v. Crow Iron Works*, 582 S.W.2d 768, 771-72 (Tex. 1979) (citing *Benson v. Wanda Petroleum Co.*, 468 S.W.2d 361, 363 (Tex. 1971)). Under these principles, there is no better candidate for the application of res judicata to promote efficiency than this Intervention. The "judicial economy" Intervenors laughingly tout can only be served by striking the Intervention. The claims that Intervenors wish to **re-**litigate have already been determined after a nearly half-decade legal battle in this Court and in the Arbitration. This last gasp Intervention is not an attempt to foster judicial economy. It is the opposite—an attempt to complicate, obfuscate, and delay.

**C. The Plea in Intervention is untimely and improper because Shawn Potts is already a party and the remaining intervenors were virtually represented in the arbitration.**

Even if a justiciable interest exists (which it does not), and Intervenors have legitimate claims (which they do not), it is still within the trial court's broad discretion to strike an intervention. *Trimble v. OneWest Bank*, 14-16-00641-CV, 2017 WL 3666519, at *4 (Tex. App.—Houston [14th Dist.] Aug. 24, 2017, pet. denied); *Guar. Fed. Sav. Bank*, 793 S.W.2d at

11

657. The Court's discretion on whether to strike is "broad," and it may consider "all issues related to whether intervention was proper in the case under the circumstances, *i.e.,* **any sufficient cause**." *Trimble*, 2017 WL 3666519, at *4 (emphasis added).

Thus, even if Intervenors were proper parties to intervene, and even if the claims they hope to pursue were not barred by a bevy of legal principles and doctrines, the Intervention should still be stricken because it is untimely. An intervention must be timely, in part because "the original parties to the litigation are entitled to be protected from the disadvantages of intervention." *Armstrong v. Tidelands Life Ins. Co.*, 466 S.W.2d 407, 412 (Tex. App.—Corpus Christi 1971, no writ). To this end, "significant delay" in intervening "standing alone may be sufficient grounds to strike an intervention as being untimely." *Amwest Sav. Ass'n. v. Marchman*, 05-93-00017-CV, 1994 WL 374241, at *1 (Tex. App.—Dallas July 18, 1994, no writ). Interventions filed roughly two years after the initial petition have been deemed untimely. *See Muller v. Stewart Title Guar. Co.*, 525 S.W.3d 859, 874 (Tex. App.—Houston [14th Dist.] 2017, no pet.) (striking an intervention filed twenty months after the original petition); *Marchman, 1994 WL 374241*, at *3 (striking an intervention in a case that had been pending two years). In *Armstrong*, the court affirmed an intervention dismissal on untimeliness grounds when the intervenors sought to intervene nearly four years after the lawsuit was filed and after a motion for summary judgment was filed and set for hearing. *Id.*

Based on the established guideposts on what constitutes untimeliness, such as the two-year period in *Muller* and the four-year period in *Armstrong*, the Intervention untimely. It was filed almost four and a half years after the Lawsuit commenced, after an arbitration proceeding began and ended, and less than a week before the Arbitration Award was set to be confirmed. Even if

12

Intervenors can overcome every other malady with their Intervention discussed in this motion, they cannot defeat this one.

The untimeliness of the Intervention is even more striking when combined with the fact that attorneys representing Intervenors objected to adding the Intervenors (other than Shawn Potts) as parties to the Arbitration.  Intervenors made the conscious decision to avoid the arbitration in the first place and are now collaterally estopped from asserting the right to become parties at this late stage.  When judicial economy would have been served by the Intervenors being parties to this Lawsuit before the Final Arbitration Award, the Intervenors fought to stay out of the proceedings.  Indeed, in the Arbitration, Shawn Potts participated as a party, and attorneys entered appearances for both Michael Hassell and Phillip Hassell individually.  These same attorneys were also the attorneys for the Defendants/Claimants, who, in an effort to obstruct Plaintiffs from pursuing the joinder of the Intervenors, threatened to seek the joinder of over a dozen individuals, including the 86-year-old mother of Silvia Hassell, Royce and Silvia Hassell's two children, and a number of wholly unrelated parties if the "Respondents [were] allowed to join any other parties herein . . . ."[10]  The Intervenors cannot now seek to intervene after fighting it when the time was ripe.

      D.   **The Plea in Intervention is an impermissible collateral attack on the Arbitration Award.**

Finally, the Intervention must be struck for the additional reason that it is nothing more than an impermissible collateral attack on the Arbitration Award.  Such attacks, which seek to undermine the finality and effects of an arbitration award other than through the permissible routes of motions to vacate, collateral attacks and are improper.  *See Ergobilt, Inc. v. Neutral*

---

[10] Claimants' Motion to Join Additional Parties ¶ 7.

13

*Posture Ergonomics, Inc.,* CIV.A.3:97-CV-2548-L, 2002 WL 1489521, at *8 (N.D. Tex. July 9, 2002); *see also Patten v. Johnson*, 429 S.W.3d 767 (Tex. App.—Dallas 2014, pet. denied) (covering courts' non-toleration of collateral attacks).

In *Ergobilt*, plaintiff Ergobilt was ordered to pay millions of dollars in damages to NPE after an unsuccessful arbitration. 2002 WL 1489521, at *2. Ergobilt moved to vacate the award but simultaneously sought leave to amend their original complaint to add new claims. *Id.* at *8. The court viewed this as a collateral attack on the unfavorable arbitration award. *Id.* at *9. The primary reason for this determination was that the relief requested in the proposed amended pleading was "exactly the relief" Ergobilt sought by vacating the award, which was essential a reduction or offset in the monetary payment it had been ordered to make to NPE. *Id.* In other words, the amended complaint was just a different way to attack the arbitration award when the appropriate way, a motion to vacate, seemed destined to fail.

Intervenors are attempting to fool this Court by levying a collateral attack on the Arbitration Award via the Intervention. Similar to *Ergobilt*, Intervenors' pleading seeks the exact same relief that was sought **and denied** in the Arbitration and Arbitration Award. To make matters worse, Intervenors' seek the same relief on ostensibly on the same facts, bases, and theories advanced in the Arbitration. Such behavior is not allowed and can only be avoided by striking the Intervention.

### REQUEST AND PRAYER

The merits of case have already been decided via a final award in the Arbitration. Intervenors' attempt to intervene at the eleventh hour is improper, untimely, and must be disallowed. For the reasons stated above, Plaintiffs request that the Court grant this Motion to

14

Strike and dismiss the Intervention so that this case, once and for all, may conclude. Plaintiffs further request any and all further relief, at law or in equity, to which they are justly entitled.

Respectfully submitted,

**LOCKE LORD LLP**

By: /s/*Derrick B. Carson*
  Derrick B. Carson
  Texas State Bar No. 24001847
  *dcarson@lockelord.com*
  Christian Perez
  Texas State Bar No. 24098243
  *cperez@lockelord.com*
  600 Travis Street, Suite 2800
  Houston, Texas  77002
  713-226-1200  -  Telephone
  713-223-3717  -  Facsimile

**ATTORNEYS FOR PLAINTIFFS**

### CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing instrument was served upon all counsel of record pursuant to the Texas Rules of Civil Procedure on this the 27th day of February 2018.

  */s/ Christian Perez*
  Christian Perez

15

HOU:0017922/00003:1936911v5