# EXHIBIT
# 4

3/16/2018 10:09 AM
Chris Daniel - District Clerk Harris County
Envelope No. 23215688
By: TERESA KIRBY
Filed: 3/16/2018 10:09 AM

Pgs-1

STPLX

Cause No. 2013-61995

| | | |
|---|---|---|
| R. HASSELL & CO., INC., | § | IN THE DISTRICT COURT |
| R. HASSELL BUILDERS, INC., | § | |
| R. HASSELL HOLDING CO., INC., and | § | |
| G.R. GROUP RESOURCES, LLP | § | |
| *Plaintiffs,* | § | |
| | § | OF HARRIS COUNTY, TEXAS |
| v. | § | |
| | § | |
| HASSELL CONSTRUCTION CO., INC., | § | |
| and HASSELL MANAGEMENT | § | |
| SERVICES, LLC | § | |
| *Defendants.* | § | 61st JUDICIAL DISTRICT |

## ORDER GRANTING PLAINTIFFS' MOTION TO STRIKE
## PLEA IN INTERVENTION

On this date the Court heard Plaintiffs' Motion to Strike the Plea in Intervention filed by

the James C. Hassell Inter-Vivos Trust, by and through its Trustee, Michael Hassell, and Phillip

Hassell, Jason Hassell, Shawn Potts, and Michael Hassell. After considering the motion,

response, any other papers on file with the Court, and the arguments of counsel, the Court finds

and declares that the motion has merit and it **GRANTED**. It is therefore;

ORDERED that Plaintiffs' Motion to Strike Plea in Intervention is GRANTED. It is

further,

ORDERED that the Plea in Intervention, filed by the James C. Hassell Inter-Vivos Trust,

by and through its Trustee, Michael Hassell, and Phillip Hassell, Jason Hassell, Shawn Potts, and

Michael Hassell, is hereby stricken.

Signed: _Frederick Phillips_
3/22/2018 _____
Honorable Judge Phillips

1

# EXHIBIT
# 5



ENTERED
05/11/2015

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| HASSELL 2012 JOINT VENTURE AND | § | CASE NO: 15-30781 |
| SPRINGWOODS JOINT VENTURE | § | |
| Debtor(s) | § | |
| | § | CHAPTER 7 |

## <u>MEMORANDUM OPINION</u>

On February 5, 2015, R. Hassell Holding Company Inc. ("R. Hassell"[1]) filed an involuntary petition against "Hassell 2012 Joint Venture and Springwoods Joint Venture." Unlike a typical involuntary petition that is filed by one or more creditors, the petition was filed by R. Hassell in its capacity as a general partner of the alleged debtor. *See* 11 U.S.C. § 303(b)(3)(A), allowing a petition against a partnership to be filed by "fewer than all of the general partners in such partnership."

James C. Hassell, Hassell Construction Co., Inc., and Hassell Management Services, L.L.C. filed a motion to dismiss the involuntary petition. The disputing parties cannot agree on whether (i) there is a single entity comprising the activities of Hassell 2012 Joint Venture and of Springwoods Joint Venture; (ii) there is[2] a general partnership comprising the activities of Hassell 2012 Joint Venture; or (iii) there is a general partnership comprising the activities concerning the installation of improvements at a Springwoods project.

The parties have requested the Court issue a narrow ruling on the second question set forth above: Is there a general partnership comprising the activities of Hassell 2012 Joint Venture? If the Hassell 2012 Joint Venture is not a partnership, then the involuntary petition

---

[1] This is a dispute between Hassell family members and entities owned by members of the Hassell family.

[2] The Court does not address whether the Hassell 2012 Joint Venture has been dissolved. Whether the entity has been dissolved may be an issue for another day.

must be dismissed. If the Hassell 2012 Joint Venture is a partnership, then the partnership must be given an opportunity to contest the involuntary petition.

Because the Hassell 2012 Joint Venture constitutes a general partnership under Texas law, the Court does not dismiss the petition at this time.

### Procedural Posture

On February 5, 2015, R. Hassell Holding Co., Inc. ("RHCI") filed an involuntary chapter 11 petition against Hassell 2012 Joint Venture and Springwoods Joint Venture. (ECF No. 1). RHCI is an entity owned by Royce Hassell, the oldest son of James C. Hassell. (ECF No. 9 at 2). The Hassell and Springwoods joint ventures were formed between RHCI, and two family owned companies, Hassell Construction Co., Inc. ("HCCI"), and Hassell Management Services, L.L.C. ("HMS").

On February 25, 2015, James C. Hassell, HCCI, and HMS (collectively, "Movants") filed a motion to dismiss the case pursuant to 11 U.S.C. §§ 303(b) and 707(a) and Fed. R. Civ. P. 12(b)(6). (ECF No. 22). Movants alleged that Debtors were merely joint ventures, not true partnerships, and did not satisfy the standing requirements of § 303(b). They further alleged that the bankruptcy filing was in bad faith.

On March 25, 2015, the Court held a hearing on whether a partnership existed as of the petition date. At the conclusion of the hearing, the parties requested the Court issue a ruling on the narrow issue of whether the Hassell 2012 Joint Venture was a partnership as of the petition date. After receiving additional briefing on the issue, the Court took the matter under advisement.

**The Formation of Hassell 2012 Joint Venture**

There is no true dispute that the Hassell 2012 Joint Venture was formed. There is an executed joint venture agreement, the parties operated under the joint venture agreement, accounted for the joint venture agreement, and obtained relief in State Court (a referral to arbitration) under the joint venture agreement. The issue is whether the joint venture constitutes a general partnership.

On July 1, 2012, RHCI, HCCI, and certain entities controlled by Royce Hassell entered into a "Construction Joint Venture Agreement." (ECF No. 22-1). The essential elements of the Construction Joint Venture Agreement are as follows:

- The venture was formed for the purpose of performing public and private sector construction projects. With the written consent of the venturers, new projects would be included from time-to-time.

- HCCI would receive 75% of all profits and the R. Hassell entities would receive 25% of all profits.

- HCCI would bear 75% of all losses and the R. Hassell entities would bear 25% of all losses, per paragraph 5(a) of the agreement. Paragraph 12 later states that losses would be borne equally by the parties. This inconsistency is not relevant to this Memorandum Opinion.

- HCCI would provide 75% of all required capital and the R. Hassell entities would provide 25% of all required capital.

- All parties would execute appropriate indemnities and agreements with surety bond companies.

- All decisions would be made by mutual agreement; in the absence of an agreement on a course of conduct, disputes would be resolved by arbitration.

- Books and records would be maintained by one of the venturers; the books and records would be open for inspection by all venturers.

- The venture would not file its own tax returns.

- The venturers had a duty to disclose opportunities to each other, and no venturer could take venture opportunities for its own benefit.

Like most family disputes, context matters. At the time that the Joint Venture Agreement was executed, the venturers had two major considerations. First, public sector construction work had slowed considerably in the greater Houston area. The parties to the joint venture saw various business benefits from combining their resources. This factor militates towards giving credence to the traditional view of partnership formations based on joint efforts to produce operating profits.[3] Second, Royce Hassell was recovering from a life threatening illness. Royce's father, and his siblings, wanted to make accommodations for Royce during his period of recovery. This laudable factor militates against a strict application of partnership formations.

In viewing the evidence before the Court, it is apparent that these were substantial businesses, with large capital investments, professional operations, and capable managers. Although familial love may have been a motivating factor, the result was a traditional business operation.

---

[3] At common law, an essential element of a partnership or a joint venture was a "community of interest in the venture." *Baskin v. Mortgage and Trust, Inc.*, 837 S.W.2d 743, 747 (Tex. App. 1992). A community of interest is defined as "a commonly shared incentive between the parties as to the progress and goals of the joint venture [or partnership.]" *Varosa Energy, Ltd. v. Trippelhorn*, 2014 WL 1004250 at *4 (Tex. App. Mar. 13, 2014).

## HCCI Accounting Reports

The nature of the entity as a professional business rather than a limited family venture can be seen through records produced by HCCI. HCCI produces an annual audit. (Pet. Ex. 42). Although the audits were prepared by an outside accountant, the audits are statements made by HCCI's management. The audits shed a great deal of light, adverse to HCCI, on the factors established by the Texas Business Organization Code.

The accounting firm that prepared the annual audits is Morris, Ligon & Rodriguez. Mr. Ligon testified about the audit and the auditing process. He is a highly credible witness[4]. The information in the audit was presented to Mr. Ligon by HCCI management, and was confirmed by Mr. Ligon through the firm's auditing procedures. Typically the audit was unqualified, although the audit was qualified in one year because the auditors could not obtain confirming information from R Hassell. Because the information in the audit is being used in a manner adverse to HCCI, the absence of confirmation by R Hassell does not affect this decision.

The Court focuses on the audited financial statements for the year ended June 30, 2014. In the related party transactions portion of the audit, HCCI states the following:

- On July 1, 2012, HCCI entered into a joint venture agreement with R. Hassel.

- The joint venture agreement provides for a 75%/25% sharing of profits.

- The joint venture agreement provides for an equal sharing of losses.

- The joint venture agreement provides for the allocation of overhead expenses by the venturers to the venture.

- The joint venture agreement provides for the allocation of equipment expenses "in accordance with sound accounting practices."

---

[4] Mr. Ligon concluded that—under applicable accounting standards—no partnership was formed. Although the Court credits Mr. Ligon's knowledge on this issue, the conclusion carries no weight on whether a partnership was formed under Texas law.

- The joint venture was terminated on July 17, 2013, but contracts that were in existence as of July 17, 2013 will continue to be treated as joint venture contracts.

(Pet. Ex. 42, p. 14.)

## Legal Standards for Formation of a Partnership

Under Texas statutes, "an association of two or more persons to carry on a business for profit as owners creates a partnership." *Ingram v. Deere,* 288 S.W. 3d 886 (Tex. 2009). The Texas Business Organizations Code establishes five basic "Rules for Determining if Partnership is Created" that measure whether an association has been formed to carry on a business for profit as owners:

(1) receipt or right to receive a share of profits of the business;

(2) expression of an intent to be partners in the business;

(3) participation or right to participate in control of the business;

(4) agreement to share or sharing:

(A) losses of the business; or

(B) liability for claims by third parties against the business; and

(5) agreement to contribute or contributing money or property to the business.

Tex. Bus. Org. Code § 152.052(a).

Section 152.052(b) sets forth that no one factor out of an enumerated list is dispositive of whether a partnership exists. Section 152.052(c) states that an agreement to share losses is not necessary to establish a partnership. Tex. Bus. Org. Code § 152.052.

Despite the family ties, the facts of this case unambiguously establish the existence of a general partnership under Texas law.

*The First Factor: Profit Sharing*

Although profit sharing was a common law requirement for the establishment of a general partnership, profit sharing is not a requirement for the establishment of a general partnership under Texas statutory law. *Ingram v. Deere,* 288 S.W. 3d 886, 896 (Tex. 2009). Nevertheless, profit sharing (along with control over the affairs of the business) is one of the two most important elements to be considered. *Id.*

In this case, profit sharing is firmly established. It was required by the terms of the joint venture agreement, and recognized in the audit report.

This factor weighs heavily in favor of a partnership finding.

*The Second Factor: Expression of Intent*

This factor is neutral to slightly negative with respect to whether a partnership was formed. When analyzing intent to form a partnership under the statute, courts should review the putative partners' speech, conduct, and writings. *Inrgram v. Deere*, 288 S.W.3d 886, 899 (Tex. 2009). Evidence of expressions of intent may include the parties' statements that they are partners, holding the other party out as a partner, or business letterhead or nameplates. *Id.* at 900. Although the parties used the term "Joint Venture" when drafting their written agreements amongst themselves, they informed third parties that when they engaged in a contract, they would receive the devoted services of both R. Hassel and HCCI. The joint venture did not file an information return for a partnership with the Internal Revenue Service. *The Third Factor: Participation or Right to Participate in Control of Business*

This factor favors the finding that a partnership was formed. The right to control a business means the right to make executive decisions. *Ingram*, 288 S.W.3d at 901. Mutual access to the business's books and records can be indicative of control. *Tierra Sol Joint Venture*

*v. City of El Paso*, 155 S.W.3d 503, 508 (Tex. App. 2004). Paragraph 8 of the executed Joint Venture Agreement provides that all "decisions, commitments, agreements, undertakings, understandings, or other matters pertaining to the performance of the Construction Contract shall be mutually agreed upon by" the representatives of HCCI and of R. Hassel. The Joint Venture Agreement plainly contemplates that the right to make executive decisions would be shared between the parties. In addition, the Joint Venture Agreement stated that "[a]ll records of the Joint Venture shall be open for inspection of either Joint Venturer at all reasonable times." (ECF No. 22-1 at 3).

*The Fourth Factor: Agreement to Share in Losses and Liabilities to Third Parties.*

At common law, an agreement to share losses was necessary for the formation of a partnership. *Ingram*, 288 S.W.3d at 902. Under the modern statute such an agreement is not necessary. Nevertheless, the Joint Venture agreement specifically provides for the sharing of any losses. This factor favors a finding that a partnership was formed. Paragraph 12 of the written joint venture agreement provides, "[i]f the performance of the Construction Contract results in a loss, the Joint Venturers shall be obligated equally for such loss." (ECF No. 22-1 at 3).. Paragraph 15 further requires reimbursement by one Joint Venturer to the other for expenses incurred.

*The Fifth Factor: Contribution of Money or Property*

This factor disfavors a finding that a partnership was formed. Although each of the venturers allowed their equipment to be used, the use was compensated at fair market rates. Although HCCI bonding capacity was used, it was compensated at normal rates. There is scant evidence that either side contributed anything of value without expecting direct compensation.

**Conclusion**

Although no one factor is dispositive in determining the existence of a partnership, the two most important factors are (i) whether profit sharing exists; and (ii) whether joint control exists. *Ingram v. Deere,* 288 S.W. 3d 886, 896 (Tex. 2009) (citing Tex. Rev. Civ. Stat. art. 6132b-2.03 Comments of the Bar Committee). These factors are unambiguous. Indeed, the evidence is abundantly clear that the venturers shared control for the intended purpose of sharing profits from their ventures.

Having considered the factors set forth in the Texas Business Organization Code, the Court concludes that the relationship created in the July 1, 2012 Construction Joint Venture Agreement is a general partnership under Texas law.

An involuntary bankruptcy petition may be filed against the partnership. The partnership may respond.

The Court does not express a view as to whether or when the partnership commenced a dissolution.

SIGNED **May 8, 2015.**

_____
Marvin Isgur
UNITED STATES BANKRUPTCY JUDGE

# EXHIBIT
# 6

```
 1              IN THE UNITED STATES BANKRUPTCY COURT

 2             FOR THE SOUTHERN DISTRICT OF TEXAS

 3                      HOUSTON DIVISION

 4  IN RE:                    §      CASE NO. 18-31189-H1-7
                              §      HOUSTON, TEXAS
 5  HASSELL 2012 JOINT VENTURE, §    FRIDAY,
                              §      MARCH 9, 2018
 6            DEBTOR.          §      11:00 A.M. TO 11:19 A.M.
    *************************************************************
 7  R. HASSELL AND COMPANY, INC. §   CASE NO. 18-3042-H1-ADV
                              §      HOUSTON, TEXAS
 8  VERSUS                    §      FRIDAY,
                              §      MARCH 9, 2018
 9  HASSELL CONSTRUCTION, INC.  §    11:00 A.M. TO 11:19 A.M.

10

11                   EMERGENCY MOTION HEARING
                      (TELEPHONIC CONFERENCE)

12           BEFORE THE HONORABLE MARVIN ISGUR
              UNITED STATES BANKRUPTCY JUDGE
13

14

15      APPEARANCES:                  SEE NEXT PAGE

16

17

18

19

20              TRANSCRIPTION SERVICE BY:

21         JUDICIAL TRANSCRIBERS OF TEXAS, LLC
                935 ELDRIDGE ROAD, #144
22               SUGAR LAND, TEXAS 77478
           Tel: 281-277-5325 ▼ Fax: 281-277-0946
23              www.judicialtranscribers.com

24
       Proceedings recorded by electronic sound recording;
25         transcript produced by transcription service.
```

2

APPEARANCES:
(APPEARING TELEPHONICALLY)

1

2

3  FOR R. HASSELL BUILDERS,
   ET AL:                              LEONARD H. SIMON, ESQ.
4                                      ROBERT PENDERGRAFT, ESQ.
                                       PENDERGRAFT & SIMON, LLP
5                                      THE RIVIANA BUILDING
                                       2777 ALLEN PARKWAY, SUITE 800
6                                      HOUSTON, TEXAS  77019
                                       713-737-8207
7
   FOR THE MOVANTS:
8  R. HASSELL AND COMPANY;
   R. HASSELL BUILDERS;
9  R. HASSELL HOLDING COMPANY;
   GR GROUP RESOURCES;
10 ROYCE HASSELL; AND
   SYLVIA HASSELL:                     DERRICK CARSON, ESQ.
11                                     JONATHAN PELAYO, ESQ.
                                       CHRISTIAN PEREZ, ESQ.
12                                     LOCKE LORD, LLP
                                       JPMORGAN CHASE TOWER
13                                     600 TRAVIS
                                       HOUSTON, TEXAS  77002
14                                     713-226-1200

15 FOR THE MOVANTS:
   HASSELL CONSTRUCTION CO.;
16 HASSELL MANAGEMENT SERVICES;
   JAMES C. HASSELL;
17 INTERVENORS: PHILIP HASSELL;
   MICHAEL HASSELL;
18 SEAN HASSELL; JASON HASSELL;
   AND MICHAEL HASSELL, TRUSTEE
19 OF JAMES C. HASSELL
   INTERVIVOS TRUST:                   BOGDAN RENTEA, ESQ.
20                                     RENTEA & ASSOCIATES
                                       700 LAVACA, SUITE 1400
21                                     AUSTIN, TEXAS  78701
                                       512-472-6291
22
                                       RON SATIJA, ESQ.
23                                     HAJJAR PETERS, LLP
                                       3144 BEE CAVES ROAD
24                                     AUSTIN, TEXAS  78746
                                       512-637-4956
25

1      HOUSTON, TEXAS; FRIDAY, MARCH 9, 2018; 11:00 A.M.

2                (TELEPHONIC CONFERENCE)

3           THE COURT:  All right.  Good afternoon.  We are

4   here for a telephonic hearing on an emergency basis in a

5   recently-filed involuntary petition in a removed adversary

6   proceeding.  The involuntary is Hassell 2012 Joint Venture,

7   18-31189.  The Adversary Proceeding is R. Hassell and

8   Company, Inc. versus Hassell Construction, Inc., 18-3042.

9           We'll take appearances on the telephone.  We have

10  no appearances in court, as expected.  If you wish to

11  appear, please press five star on your phone.  If you're

12  just observing, you don't need to press anything.

13          Mr. Simon?

14          MR. SIMON:  Leonard Simon, S-I-M-O-N, along with

15  my partner, Robert Pendergraft.

16          MR. PENDERGRAFT:  Good morning, Your Honor.

17          THE COURT:  Good morning.  From 713-238-3612.

18          MR. CARSON:  Also on the call, Your Honor,

19  is Derrick Carson from Locke Lord, with my partner,

20  Jonathan Pelayo and Christian Perez.

21          THE COURT:  And who do you represent, Mr. Carson?

22          MR. CARSON:  We represent, Your Honor, the

23  Movants but not in this proceeding.  We represent them in

24  the State Court action and all through the arbitration.

25          THE COURT:  And who would that be, who's the

1    Movant?

2              MR. CARSON:  Sure.  R. Hassell and Company;

3    R. Hassell Builders; R. Hassell Holding Company, GR Group

4    Resources, LLP.

5              THE COURT:  Thank you.

6              MR. CARSON:  And also Sylvia Hassell and

7    Royce Hassell.

8              THE COURT:  Thank you.  Mr. Rentea?

9              MR. RENTEA:  (No verbal response).

10             THE COURT:  Mr. Rentea?

11             MR. RENTEA:  Your Honor, good morning.  This

12   is Bogdan Rentea representing the moving parties:

13   Hassell Construction Company, Inc.; Hassell Management

14   Services; James C. Hassell; and Intervenors, Philip Hassell,

15   Michael Hassell, Sean Hassell (phonetic), Jason Hassell and

16   Michael Hassell, as the Trustee of the James C. Hassell

17   Intervivos Trust.

18             THE COURT:  Thank you.  And from an Austin area

19   code, it's 512-637-4956.

20             MR. SATIJA:  Your Honor, this is Ron Satija and I

21   represent -- S-A-T-I-J-A -- and I represent the same parties

22   as Mr. Rentea.

23             THE COURT:  All right.  So, Mr. Satija, what are

24   you trying to accomplish with the involuntary bankruptcy

25   filing?

1            MR. SATIJA:  Your Honor, so obviously you've been

2    through the whole, you know, previous --

3            THE COURT:  Yeah.  Mr. Satija.

4            MR. SATIJA:  -- involuntary case and --

5            THE COURT:  Mr. Satija, what are you trying to

6    accomplish with the involuntary bankruptcy filing?

7            MR. SATIJA:  Your Honor, there is -- right now we

8    have a partner who has --

9            THE COURT:  Mr. Satija?

10           MR. SATIJA:  Yes.

11           THE COURT:  Listen to my question.

12           MR. SATIJA:  Yes.

13           THE COURT:  What are you trying to accomplish

14   with the involuntary bankruptcy filing?

15           MR. SATIJA:  We are trying to bring before this

16   Court a situation where there is property of the Estate that

17   needs to be administered by a bankruptcy court.

18           THE COURT:  All right.  Then is -- in the

19   adversary proceeding, that property is going to be the

20   collection of the arbitration award, right?

21           MR. SATIJA:  Yes, Your Honor --

22           THE COURT:  Okay.

23           MR. SATIJA:  -- as well as --

24           THE COURT:  Okay.

25           MR. SATIJA:  I mean, with clarification and --

1          THE COURT:  So, Mr. Rentea --

2          MR. SATIJA:  -- once we --

3          THE COURT:  So, Mr. Rentea, are --

4          MR. SATIJA:  -- clarified and clarified --

5          THE COURT:  Mr. Rentea, is your client prepared

6  to deposit the money into the Court's Registry so that we

7  can administer it and prepared to release the liens in

8  accordance with the arbitration award?

9          MR. RENTEA:  Only that portion that we believe is

10  an uncontested amount of profits owed to one of the partners

11  by the Partnership.

12          THE COURT:  No.  It all comes in, right?  And

13  then --

14          MR. RENTEA:  Excuse me?

15          THE COURT:  If what's going to happen is: we're

16  going to have an involuntary proceeding to figure out how to

17  allocate it, then the Judgment and the arbitration award

18  needs to be paid or else let's go to the State Court so that

19  it can be paid and I'll order it all to come into here to

20  the Registry.

21          But why wouldn't we at least collect it all if

22  the goal is what I was told by Mr. Satija?  The money all

23  has to come in, right?

24          MR. RENTEA:  Correct, there's currently an

25  amount.

1          THE COURT:  Then -- and just -- then --

2          MR. RENTEA:  However, Judge, that it's

3  undisputed --

4          THE COURT:  I don't care what's disputed.

5          MR. RENTEA:  -- that income is.

6          THE COURT:  I don't care what's disputed or

7  undisputed.  I have an arbitration award.  If that gets

8  confirmed, it's all undisputed.  If you want to dispute it,

9  go dispute it.

10          But if the purpose of the involuntary is to see

11  that the money is allocated outright, then why wouldn't we

12  either get the money deposited into our Registry for the

13  full amount of the arbitration award or let the State Court

14  decide what to do with the arbitration award and then have

15  all the money put into the Court's Registry?  It looks to me

16  like that the fiduciaries to this Estate who are alleging

17  that they are partners are trying not to collect the money

18  into the Estate, not the other way around.  And Mr. Satija

19  told me the right thing: he's trying to get money into the

20  Estate.  Let's get it in.

21          MR. SATIJA:  Your Honor, Ron Satija again for the

22  Movants.  But the amount, as we speak, is incorrect.  There

23  is an undisputed amount but there's also a disputed amount

24  and --

25          THE COURT:  There is an arbitration award.

1        If you don't think it ought to be confirmed, why

2   isn't the State Court going to decide that question?  And

3   why in the world are you arguing, Mr. Satija, if you're

4   representing a partner of the Partnership, that the

5   Partnership shouldn't collect more, not less?  Let's be

6   careful about what position you're taking.

7        MR. SATIJA:  No, no, no.  And I do understand

8   that, Your Honor.  The problem at that point is that the

9   arbitrators have decided -- and the math is completely

10  incorrect in the arbitration award and obviously

11  Mr. Rentea can address that, you know, more clearly than I

12  can but --

13        THE COURT:  Why is he capable --

14        MR. SATIJA:  -- if there is --

15        THE COURT:  What is Mr. Rentea incapable of doing

16  that to the State Court?

17        MR. SATIJA:  I think there's --

18        THE COURT:  Mr. Rentea, why can't you do that at

19  the State Court?

20        MR. RENTEA:  Well, we can do it in State Court,

21  but I just thought that once a bankruptcy was filed, the

22  proper place to have all issues addressed was in Bankruptcy

23  Court, not bring you a decision from a state court.

24        THE COURT:  Well, I appreciate that courtesy and

25  I don't need it.  I'll remand the case, if that's why we did

1   it.  Let's let the State Judge decide what should happen.

2   And then I agree with you that if we have -- if the money

3   belongs to the Joint Venture, whatever gets collected gets

4   deposited into the Registry until we figure out if we're

5   going to have a Joint Venture case or not.  We'll figure out

6   later whether we have a Joint Venture case.

7           Why shouldn't I remand if the only reason you did

8   that was out of courtesy to me?

9           MR. SATIJA:  Your Honor, I mean --

10          THE COURT:  All right.

11          MR. SATIJA:  -- I wouldn't say it's out of

12  courtesy.  I would say there's 4.9 -- this is Mr. Satija

13  again, I apologize.  There's $4.9 million that is supposedly

14  owed in partnership profits to the Royce Hassell entities

15  and what the arbitrator doesn't address at all is that means

16  that there's essentially $15 million owed to the Hassell

17  Construction Company and the removing party entities.

18          THE COURT:  Yes, so why would you --

19          MR. SATIJA:  And that's an issue --

20          THE COURT:  Tell me again --

21          MR. SATIJA:  -- the bankruptcy --

22          THE COURT:  Tell me again why, as a partner of

23  this entity, would you want to argue that it should collect

24  less?

25          MR. SATIJA:  No.  If there's $20 million owed,

1  then I'm arguing that there's money out there to be

2  collected, there's more money --

3           THE COURT:  Well, all that's in there --

4           MR. SATIJA:  -- out there.

5           THE COURT:  All that's in there that needs to be

6  paid over right now is a million-two and release the liens.

7           If everybody's agreeing it's at least a million-

8  two, doesn't that just resolve it?  I'll keep it, you put

9  the money here in the Registry.

10           MR. SATIJA:  Mr. Rentea, what is the amount

11  that's undisputed?

12           MR. RENTEA:  Your Honor, Bogdan Rentea.

13  Your Honor, there's not a million-two owed.  The arbitrators

14  netted out amounts owed and came up with the $1.2 million.

15           THE COURT:  Right.

16           MR. RENTEA:  We believe that if the proper

17  profits are calculated, we are owed half a million dollars

18  on a net basis.

19           THE COURT:  I understand that.

20           MR. RENTEA:  That's the profit of --

21           THE COURT:  Go litigate that.

22           But way are you bringing it to me?

23           MR. RENTEA:  Because once the Petition was filed,

24  I thought that this core proceeding should be in front of

25  you versus staying in State Court.  That's --

1          THE COURT:  Okay.  Well, that's wrong.  I'm

2     remanding.

3          MR. RENTEA:  -- what our (indiscernible).

4          THE COURT:  If that's the reason, then I'm

5     remanding.

6          MR. SATIJA:  Your Honor, this is Mr. Satija

7     again.  You know, it's -- my feeling is that -- and the

8     reason that we filed the bankruptcy is that there's an issue

9     here where there is -- a partner is filing an involuntary to

10    determine and to -- essentially to dissolve a partnership,

11    to determine the Partnership assets.  We do have an

12    arbitration award, but the arbitration award shouldn't

13    necessarily be the guiding light.  It shouldn't necessarily

14    be the loadstone as far as where that's heard, whether

15    that's heard in the State Court or whether it's heard in the

16    Federal Court.

17          Our feeling is: we have an estate, the Estate has

18    certain assets, that we satisfy the Section 303(b)(3)(A)

19    criteria and, you know, those assets -- you know, they're

20    undisputed that we don't have a problem with or happily can

21    come into this Court, and then this Court can make a

22    determination, which it's in the best position to do, as to

23    what the remaining assets of the Bankruptcy Estate are.

24          THE COURT:  So let me ask you once again because

25    that's a different answer than where we started.

1          What was the purpose of the filing of the

2    Involuntary Petition, what are you trying to accomplish?  If

3    what you're trying to accomplish is to --

4          MR. SATIJA:  Filing the Involuntary --

5          THE COURT:  If what you're trying to accomplish

6    is to minimize money into the Estate, tell me that.  But if

7    you're trying to maximize money into the Estate, we should

8    remand.

9          What are you trying to do?

10         MR. SATIJA:  We're trying to determine the

11   correct amount of money into the Estate, Your Honor.

12         THE COURT:  No, you're not.

13         MR. SATIJA:  What -- I would --

14         THE COURT:  Why would you file -- why would you

15   bother to file an involuntary to figure out the correct

16   amount of money?  I asked not why you remanded it -- why you

17   removed the adversary.  I asked why you filed the

18   involuntary.

19         Why did you file the involuntary?

20         MR. SATIJA:  We filed the involuntary because

21   under 303, a partner has a right to file the involuntary to

22   basically determine the debts and assets of the Partnership

23   and make a proper distribution when there's no authority to

24   file a voluntary case.

25         THE COURT:  That's telling me a legal basis on

1    which it was legal to file it.  It doesn't tell me why you

2    filed it.

3              Did you file it to minimize of to maximize the

4    money coming into the Estate or neither one?

5              MR. SATIJA:  Well, I mean, once the bankruptcy is

6    filed and all the assets are determined, it's -- I don't

7    know that it's a question of minimization or maximization.

8    It's a question of paying the creditors, and the creditors

9    will get paid the amount that they deserve from the

10   Bankruptcy Estate.  That's --

11             THE COURT:  So why did you file the involuntary

12   bankruptcy, what is the -- what are you trying to

13   accomplish?

14             MR. SATIJA:  We're trying to accomplish having

15   the Court that has -- that's a proper court for jurisdiction

16   over the dissolution of the Partnership essentially, to

17   essentially dissolve the Partnership, determine the correct

18   assets and debts of the Partnership, get everybody paid and

19   on their merry way.

20             THE COURT:  And why shouldn't we allow the State

21   Court to determine how much is owed under the arbitration

22   award?

23             MR. SATIJA:  In connection with the filing of

24   this case, Your Honor, I think it's allowable to remove the

25   case, you know, and there's not an emergency.  I mean,

1   that's one thing that I do want to address here.

2           THE COURT:  Well, why did you wait until the --

3           MR. SATIJA:  In any --

4           THE COURT:  -- day before the hearing to file it?

5           MR. SATIJA:  -- situation I --

6           THE COURT:  Why did you wait till the day before

7   the hearing to file this?  You've known about it for a long

8   time.  You waited till the day before to file it.

9           Why did you do that?

10          MR. SATIJA:  This is the reason, Your Honor --

11          THE COURT:  Okay.

12          MR. SATIJA:  -- that waited until the day

13   before --

14          THE COURT:  Okay.

15          MR. SATIJA:  -- is that there's 90 days after an

16   arbitration award is entered to dispute the finding of the

17   Court and we're -- we -- yesterday was the 91st day and that

18   means that there was some -- there's some debts that we're

19   disputing obviously from the arbitration award but there are

20   some debts that are undisputed.  They filed a motion to

21   confirm the award.  We filed a motion to vacate or modify.

22   And so obviously their -- they think that some of those

23   debts are undisputed since they're filing a motion to

24   confirm it, and we are not disputing certain of those debts.

25   So yesterday is the day that --

1          THE COURT:  The arbitration award has nothing to

2    do on its face with the debts of Hassell 2012 Joint Venture.

3    It has to do --

4          MR. SATIJA:  Your Honor, it's also --

5          THE COURT:  -- with an award --

6          MR. SATIJA:  -- that if we're going to satisfy --

7    I think it's 303(h) that says the business is not paying its

8    debts, its undisputed debts -- the previous case was

9    dismissed.  The previous bankruptcy case was dismissed

10   because there -- you know, there were undisputed debts.

11         Here there are undisputed debts and it gives us

12   the mechanism under 303 to file it --

13         THE COURT:  Yeah, I'm not --

14         MR. SATIJA:  -- and that has happened.

15         THE COURT:  I am not today going to dismiss --

16         MR. SATIJA:  And the reason that I say that

17   there's no emergency or that the emergency is minimal is

18   because when I normally see these situations, Your Honor,

19   it's filed at the last minute, a jury is impaneled,

20   witnesses are coming in from other jurisdictions.  And in

21   this case, we have a bench trial and it's purely on the

22   Record with no witnesses.

23         So, I mean, for Mr. Simon, you know, to file

24   this, you know, on such a quick turnaround basis and not

25   give us the ability to respond with due process and make

1  these arguments, you know, in the Bankruptcy Court, there is

2  not an emergency.  The Court can easily -- the State Court,

3  if it hears it in a week or if it hears it in a month, it's

4  not going to make that much of a difference.

5       And Mr. Simon contended in his Motion that there's

6  some issue with refinancing of his client's homestead and,

7  Your Honor, we've not been approached to release the lien to

8  have a refinance for the homestead.  And obviously any

9  creditor goes through that analysis, you know.  In Texas, if

10  somebody wants the lien released on their homestead to

11  refinance it, of course we have to look into it and do that.

12              THE COURT:  Well, I'll give you --

13              MR. SATIJA:  I'll --

14              THE COURT:  I will give the responding parties in

15  the arbitration an option: I'm either going to remand the

16  case, or the liens will be released and the funds that are

17  ordered by the arbitration award, which is about a million-

18  two, will be deposited into the Registry.

19              What do you want?

20              MR. SATIJA:  May I ask a question before

21  answering?

22              THE COURT:  Sure.

23              MR. SATIJA:  If it turns out that the award goes

24  the other way and the liens are valid, then wouldn't that be

25  something that this Court should determine and be able to

1   then collect on the liens?  I mean, I feel like we're taking

2   away property of the Estate at that point.

3            THE COURT:  No problem.  I'm happy to --

4            MR. SATIJA:  To those liens.

5            THE COURT:  I am happy to remand.

6            MR. SATIJA:  We would be happy to release the

7   liens on Mr. Simon's client's homestead, of course.

8            THE COURT:  I'm happy to remand.

9            Would you like to comply with the arbitration

10  award by releasing the liens and depositing the funds into

11  the Court's Registry or have the case remanded?  I'm very

12  familiar with this case.  It should never have occurred.

13            Now which do you all want to do?

14            MR. SATIJA:  I'll defer to Mr. Rentea on that and

15  to the client, Your Honor.

16            THE COURT:  Mr. Rentea?

17            MR. RENTEA:  Remand.  Would remand.  There's no

18  $1.2 million to deposit, Your Honor.

19            THE COURT:  All right.  The case is remanded.

20            I find this case was removed in bad faith, never

21  should have been removed.  It was -- you all waited, you

22  removed it till the day before to avoid the State Court

23  hearing and there's absolutely no reason why it should be

24  heard in the Bankruptcy Court.

25            The issue for the Bankruptcy Court is: whether

JUDICIAL TRANSCRIBERS OF TEXAS, LLC

1  the proceeds of the arbitration award, which are not made in

2  the name of Hassell 2012 Joint Venture, should come into

3  Hassell 2012 Joint Venture?

4          As to whether or not the bankruptcy case ought to

5  be dismissed, Mr. Simon, I'll let you address that but I

6  don't see an emergency on that question and I'm inclined for

7  that just to come up in the ordinary course.

8          MR. SIMON:  Well, Your Honor, if that's your

9  decision on that, I'm going to defer to you on it.  We do

10 want the case remanded.  We want to go forward with our

11 hearing.  Hopefully we can still go forward with it today at

12 1:30.

13         THE COURT:  All right.  We'll enter the Order

14 right away.  I'm going to remand the case.  I will carry the

15 Joint Venture to allow an ordinary response to be filed and

16 we'll determine whether to dismiss it, not on an emergency

17 basis.

18         Adversary 18-3042 is remanded.  I don't want to

19 see more games like this.

20         MR. SIMON:  Your Honor, what about sanctions for

21 bad faith removal?

22         THE COURT:  Well, that's not going to happen

23 today.  There's no emergency on that.

24         MR. SIMON:  Okay.

25         THE COURT:  All right.

1          MR. SIMON:  All right.  That's fine.

2          THE COURT:  We're in adjournment.

3          MR. SIMON:  Thank you.

4      (These proceedings concluded at 11:19 a.m.)

5                    *  *  *  *  *

6          *I certify that the foregoing is a correct*

7  *transcript to the best of my ability produced from the*

8  *electronic sound recording of the proceedings in the above-*

9  *entitled matter.*

10  */S/ MARY D. HENRY*

11  *CERTIFIED BY THE AMERICAN ASSOCIATION OF*

12  *ELECTRONIC REPORTERS AND TRANSCRIBERS, CET**337*

13  *JUDICIAL TRANSCRIBERS OF TEXAS, LLC*

14  *JTT TRANSCRIPT #58332*

15  *DATE FILED:  MARCH 14, 2018*

16

17

18

19

20

21

22

23

24

25

# EXHIBIT
# 7

**To All,**

In trying to figure out which way would be best for all and with the many discussions had, here are some of the ideas that have been bounced around. This is not set in stone and all productive ideas are welcome. I do not have all the answers, but I do believe that we all want the same things. The trick will be if we can all be flexible enough to make it happen. We all know that cash flow will be our biggest enemy in the very near future, so that should be our primary focus. Here are some points that I believe should be agreed upon so that we can improve the situation and move forward.

1. With any situation that you have the opportunity to combine resources, comes the necessary downsizing. We will need to evaluate employees and equipment, to fit our needs. There will have to be some trimming done of overhead personnel and possibly field positions. This should be done immediately of any overlap and then a 90 day evaluation period to see who and what fits the program best. Equipment should receive the same kind of attention. We all have resources that we want to keep, but we need to focus on saving the pie not a slice. We will need to watch this carefully, as this can have the potential to be a huge financial burden that will be hard to overcome.

2. Both companies bring different types of issues to the table in this situation. They both are in very similar situations of debt responsibilities that do not benefit our work. The debt is not primarily associated with equipment. The debt is secured by properties to be sold, on both sides. It should be agreed by all, that we incur further debt only on properties that are actively being marketed to be sold. If a piece of property is not on the market for sale, then the individual that wishes to hold it should be responsible for it from a monetary stance. If for some reason that an offer is made on a piece of property that may below what is felt to be reasonable , then a business decision will be made based on current financial needs for whether or not to accept the offer or not. If the offer should be accepted, then all would share in the loss of what would have been a reasonable sales price and not just the property owner. A possible yard stick to what is reasonable may be the taxable value. Paying the interest and notes on the assets, is and will be quite difficult to accomplish. Interest decreases the value of an asset dollar for dollar.

3. As mentioned before, equipment not working won't bring betterment to the situation. With saying that, it should be understood that the fleet will need to be downsized drastically. The notes should get funded with understanding that equipment will be actively disposed of and the respective lien holders will be paid. Short falls will go back to the primary principals of the equipment.

4. Hassell is sitting in the best position as far as a relationship with the surety, bank and with vendors. Therefore the feeling should be that Hassell should be the mothership at this time and we work towards its healing. We will get better support from the surety and the bank if that is our plan on moving forward.

5. Hassell has a culture that has been developed over the years of it being in business. The foundation for this culture is honesty and integrity, it will be important to carry that on in all things that we do. We will do our operations, handle vendors and subcontractors, and pay our obligations with all this in mind. We should strive to take this existing culture and make it better for principals and the employee's. One

thing to keep in mind is basis of equality for employees for each of the respective positions and the value that is brought to the bottom line, but things must be kept reasonable because they can and will get out of hand. Principals will be treated differently than employees, but all principals will benefit equally. What is meant by this is that they shall receive compensation for the respective job that is done, but other things will be kept on an equal basis.  One shall not receive more than another, in any form. Things need to be agreed upon collectively for perks and benefits that are done so equality can be maintained.

6. If we take our resources and combine them, then a whole lot of things will have to take place. We will not be able to catch all of them now, so it will be an ongoing process. A basic understanding of what the expectations are will be enough to get us moving in the right direction. It is proposed to have Royce bring his employees that will be kept and combine them with ours, create a harmonious situation that will preserve all involved. A simple plan would be to have Royce run the office and allow me to run the field. Office personnel would report to him and field personnel would report to me. We would have to sort out the details on this, but it would come from a collective effort from all. As stated before we minimize people and equipment, only to keep what is absolutely necessary for survival. All work will go thru Hassell and will be prosecuted under the above stated conditions. Royce has stated the desire to keep RHB/RHC open for various reasons, which I can see some of them, the agreement will be that all monies will flow thru Hassell with the other entities not making any profits or incurring undo costs. They will be an entity to keep running, but not to support, other than what will be agreed to. It is the intent to use Hassell as the umbrella and all others to work underneath it. The profits/losses will be produced under the umbrella of Hassell from different operations and brought to the collecting pool and dispersed from there. There are debts that each group will be solely responsible for, like LOC for Royce and Holland Ridge/Sunset Park for Hassell, each party will receive an equal portion of the profits to pay towards the obligations until satisfied, if the obligations are satisfied completely, and then they can use their portions that are available as they wish.

The whole family has a part of Hassell in some form or fashion. With saying that, I do not feel that we can survive the situation that we are in without combining our resources. It is my intent in this situation to be able to set aside differences and not play the blame game, but allow the fruits of all of our labor to benefit all of us. I am not greedy and it certainly is not about money, but a benefit should be realized for all that has been given to Hassell over the years.  I am going to hold firm to that, I feel I have not gotten the benefit that has been presented and that it has cost me and others in more ways than just financially. Dad if we can negotiate a way that is acceptable to you, to move forward, I will respectfully ask you for your blessing and then allow us to benefit from the company that we have supported over time through our efforts and afforded you the means to have been able to do what you have wished. I am committed to preserving Hassell, but not at anymore of an unjust price. If we all pull together and are reasonable about what we do, we may be able to achieve what has been intended.

# EXHIBIT
# 8

| From: | Shawn Potts [spotts@hassellconstruction.com] |
|---|---|
| Sent: | Thursday, June 28, 2012 11:46 AM |
| To: | jphassell@hassellconstruction.com |
| Subject: | Re: Coats and Rose |

| Tracking: | Recipient | Read |
|---|---|---|
| | jphassell@hassellconstruction.com | Read: 6/28/2012 11:53 AM |

Phil,

The items that Steve wanted us to address with C&R were as follows:

- What is the time frame for seizure of property
- What is our position if they file for bankruptcy
- Both the 10191 Valley View Drive and 5302 Maple are listed with Homestead Exemptions
  Maple is in Harris County and is where they reside – Valley View is in Montgomery Cnty and is secondary property
- Will C&R write a letter stating our position in regards to the liens for MLR to include in our year end audit?
- What would be our position in regards to the claim on Springwoods.

I will be sending you the Properties as they are shown with the Harris County and Montgomery County Appraisal Districts in a subsequent email.

# Shawn Potts
Hassell Construction Co., Inc
12211 Duncan Rd.
Houston, TX 77066
281-893-2570

HCCI Parties 042378

# EXHIBIT
# 9

NO. 2015–29275

| | | |
|---|---|---|
| R. HASSELL HOLDING COMPANY, INC., R. HASSELL & COMPANY, INC., R. HASSELL BUILDERS, INC. AND ROYCE HASSELL | § § § § § | IN THE DISTRICT COURT OF |
| v. | § § | HARRIS COUNTY, TEXAS |
| COATS, ROSE, RYMAN & LEE, P.C., RICHARD L. ROSE, PATRICK GAAS, HEATHER ASSELIN AND DAVID LYNCH | § § § § | 234TH JUDICIAL DISTRICT |

## DEFENDANTS' PRIVILEGE LOG

### Introduction

In response to Plaintiffs' request, Defendants Coats, Rose, Ryman & Lee, P.C., Richard L. Rose, Patrick Gaas, Heather Asselin, and David Lynch (collectively "Coats⎪Rose") submit this privilege log.  To the extent necessary, Coats⎪Rose re-asserts, adopts, and incorporates by reference as if fully set forth herein its objections and responses to Plaintiffs' First Request for Production, including but not limited to Coats⎪Rose's objections: 1) that Plaintiffs' First Request for Production seek discovery of information beyond the scope permitted by the Court's November 9, 2015 order regarding limited discovery; and 2) that Plaintiffs' instruction nos. 4, 5, 6, and 8 are overly broad, are unduly burdensome, purport to impose obligations on Coats⎪Rose greater than those imposed by the Texas Rules of Civil Procedure, and/or seek discovery of information beyond the scope permitted by the Court's November 9, 2015 order regarding limited discovery.  Coats⎪Rose's identification of privileged documents is therefore limited to documents consistent with the Court's order.

Coats | Rose reserves the right to amend and/or supplement this log as necessary and appropriate.

### Statement Concerning Non-Waiver Of Privileges/Exemptions

By responding to Plaintiffs' request for a privilege log and identifying privileged documents consistent with the Court's November 9, 2015 order, Coats | Rose does not intend to waive any claim of privilege, exemption, or confidentiality—including without limitation the attorney-client privilege, the attorney work product exemption, and/or the confidentiality provisions of Texas Disciplinary Rule of Professional Conduct 1.05.

### Privilege Log

| | Doc Type | Author | Recipient | Subject/Title | Date | Privilege Asserted |
|---|---|---|---|---|---|---|
| 1. | Email | Doris Shastid | Accounting and Heather Asselin | FW: Need a conflict check run ASAP | 2012-01-19 | Attorney-Client Attorney Work Product |
| 2. | Email | Tiffany Broussard | Debra Garcia | FW: Need a conflict check run ASAP | 2012-01-19 | Attorney-Client Attorney Work Product |
| 3. | Email | Fae Reece | CR Reception | FW: New Client Meeting | 2012-01-19 | Attorney-Client |
| 4. | Email | CR Reception | Fae N. Reece | RE: New Client Meeting | 2012-01-19 | Attorney-Client |
| 5. | Email | Patrick Gaas | Heather Asselin | RE: New Client Meeting | 2012-01-19 | Attorney-Client |
| 6. | Email | Heather Asselin | Patrick Gaas | RE: New Client Meeting | 2012-01-19 | Attorney-Client |
| 7. | Email | Patrick Gaas | Heather Asselin | RE: New Client Meeting | 2012-01-19 | Attorney-Client |
| 8. | Email | Heather Asselin | Heather Asselin | RE: New Client Meeting | 2012-01-19 | Attorney-Client |
| 9. | Email | Patrick Gaas | Heather Asselin | RE: New Client Meeting | 2012-01-19 | Attorney-Client |
| 10. | Email | Heather Asselin | Patrick Gaas | RE: New Client Meeting | 2012-01-19 | Attorney-Client |
| 11. | Email | Patrick Gaas | Heather Asselin - | RE: New Client Meeting | 2012-01-19 | Attorney-Client |

|  | Doc Type | Author | Recipient | Subject/Title | Date | Privilege Asserted |
|---|---|---|---|---|---|---|
| 12. | Word document | n/a | n/a | Database Search Report | 2012-01-19 | Attorney Work Product |
| 13. | Email | Fae Reece | CR Reception | RE: New Client Meeting | 2012-01-20 | Attorney-Client |
| 14. | Email | CR Reception | Fae N. Reece | RE: New Client Meeting | 2012-01-20 | Attorney-Client |
| 15. | Email | Fae Reece | CR Reception | RE: New Client Meeting | 2012-01-20 | Attorney-Client |
| 16. | Email | CR Reception | Fae N. Reece | RE: New Client Meeting | 2012-01-20 | Attorney-Client |
| 17. | Email | Fae Reece | Heather Asselin | FW: New Client Meeting | 2012-01-20 | Attorney-Client |
| 18. | Email | Tiffany Broussard | Fae Reece | RE: have you done a conflicts check on these? | 2012-01-20 | Attorney-Client Attorney Work Product |
| 19. | Email | Patrick Gaas | Heather Asselin | RE: New client. | 2012-01-23 | Attorney-Client |
| 20. | Email | Heather Asselin | Dylan Lee | Phil Hassell - New Client | 2012-01-24 | Attorney-Client Attorney Work Product |
| 21. | Email | Dylan Lee | Heather Asselin | RE: Phil Hassell - New Client | 2012-01-24 | Attorney-Client Attorney Work Product |
| 22. | Email | ==Phil Hassell== | Heather Asselin, Mike Hassell, Shawn Potts | Meeting | 2012-01-27 | Attorney-Client |
| 23. | Email | Heather Asselin | Debra Garcia and Pat Gaas | FW: Meeting | 2012-01-31 | Attorney-Client Attorney Work Product |
| 24. | Email | Debra Garcia | Heather Asselin | Fee Engagement Agreement - Hassell Construction | 2012-01-31 | Attorney-Client Attorney Work Product |
| 25. | Email | Heather Asselin | Debra Garcia | RE: Fee Engagement Agreement - Hassell Construction | 2012-01-31 | Attorney-Client Attorney Work Product |
| 26. | Email | Heather Asselin | Phil Hassell and Pat Gaas | RE: Meeting | 2012-02-01 | Attorney-Client Attorney Work Product |
| 27. | Email | Debra Garcia | Patrick Gaas | RE: Meeting | 2012-02-02 | Attorney-Client Attorney Work Product |

| | Doc Type | Author | Recipient | Subject/Title | Date | Privilege Asserted |
|---|---|---|---|---|---|---|
| 28. | Email | Patrick Gaas | Patrick Gaas | Re: Meeting | 2012-02-02 | Attorney-Client Attorney Work Product |
| 29. | Email | Debra Garcia | Pat Gaas and Heather Asselin | Fee Engagement Agreement for Hassell Construction | 2012-02-03 | Attorney-Client Attorney Work Product |
| 30. | Email | Heather Asselin | Debra Garcia | Hassell | 2012-02-09 | Attorney-Client Attorney Work Product |
| 31. | Email | Debra Garcia | Heather Asselin | RE: Hassell | 2012-02-09 | Attorney-Client Attorney Work Product |
| 32. | Email | Heather Asselin | Debra Garcia | RE: Hassell | 2012-02-09 | Attorney-Client Attorney Work Product |
| 33. | Email | Debra Garcia | Heather Asselin | FW: Fee Engagement Agreement for Hassell Construction | 2012-02-09 | Attorney-Client Attorney Work Product |
| 34. | Email | Heather Asselin | Patrick Gaas | Fee Agreement with Hassell | 2012-02-09 | Attorney-Client Attorney Work Product |
| 35. | Email | Patrick Gaas | Heather Asselin | RE: Fee Agreement with Hassell | 2012-02-09 | Attorney-Client Attorney Work Product |
| 36. | Email | Heather Asselin | Fae N. Reece | FW: Fee Agreement with Hassell | 2012-02-09 | Attorney-Client Attorney Work Product |
| 37. | Email | Heather Asselin | Fae N. Reece | FW: Need standard rates please for | 2012-02-09 | Attorney-Client Attorney Work Product |
| 38. | Word document | Debra Garcia | Hassell Construction Company, Inc. | Agreement for Hourly Fee Representation by Coats, Rose, Yale, Ryman and Lee, P.C. with Mandatory Arbitration (includes all drafts) | 2012-02-09 | Attorney-Client Attorney Work Product |
| 39. | Email | Heather Asselin | Fae N. Reece | Hassell_ engagement cover letter.nrl | 2012-02-10 | Attorney-Client Attorney Work Product |
| 40. | Email | Phil Hassell | Heather Asselin | Re: Follow up | 2012-02-17 | |
| 41. | Email | Heather Asselin | Pat Gaas | Engagement Agreement | 2012-02-17 | Attorney-Client Attorney Work Product |

| | Doc Type | Author | Recipient | Subject/Title | Date | Privilege Asserted |
|---|---|---|---|---|---|---|
| 42. | Email | Phil Hassell | Heather Asselin | Re: Follow up | 2012-02-23 | Attorney-Client |
| 43. | Email | Heather Asselin | Debra Garcia | FW: Follow up | 2012-02-23 | Attorney-Client |
| 44. | Email | Patrick Gaas | Heather Asselin | Hassell | 2012-02-25 | Attorney-Client |
| 45. | Email | Heather Asselin | Heather Asselin | Re: Hassell | 2012-02-25 | Attorney-Client |
| 46. | Email | Heather Asselin | Heather Asselin | Fwd: Follow up | 2012-02-25 | Attorney-Client |
| 47. | Email | ShoreWare Voice Mail | Doris Shastid | ShoreTel voice message from HASSELL CONSTRU, +12818932572 | 2012-02-27 | Attorney-Client Attorney Work Product |
| 48. | Email | Debra Garcia | Accounting | Open file form - Hassell Construction | 2012-03-02 | Attorney-Client Attorney Work Product |
| 49. | Email | Tiffany Broussard | Debra Garcia | RE: Open file form - Hassell Construction | 2012-03-02 | Attorney-Client Attorney Work Product |
| 50. | Email | Debra Garcia | Tiffany Broussard | RE: Open file form - Hassell Construction | 2012-03-02 | Attorney-Client Attorney Work Product |
| 51. | Email | Tiffany Broussard | Debra Garcia | RE: Open file form - Hassell Construction | 2012-03-02 | Attorney-Client Attorney Work Product |
| 52. | Email | Debra Garcia | Tiffany Broussard | RE: Open file form - Hassell Construction | 2012-03-02 | Attorney-Client Attorney Work Product |
| 53. | Email | Tiffany Broussard | Debra Garcia | RE: Open file form - Hassell Construction | 2012-03-02 | Attorney-Client Attorney Work Product |
| 54. | Email | Tiffany Broussard | Debra Garcia | RE: Open file form - Hassell Construction - Conflicts | 2012-03-02 | Attorney-Client Attorney Work Product |
| 55. | Email | Debra Garcia | Debra Garcia | FW: Open file form - Hassell Construction - Conflicts | 2012-03-02 | Attorney-Client Attorney Work Product |
| 56. | Word document | n/a | n/a | Database Search Report | 2012-03-02 | Attorney Work Product |
| 57. | Word document | Debra Garcia | n/a | Open File Information Sheet | 2012-03-02 | Attorney Work Product |

| | Doc Type | Author | Recipient | Subject/Title | Date | Privilege Asserted |
|---|---|---|---|---|---|---|
| 58. | Email | Phil Hassell | Heather Asselin | Re: Follow Up | 2012-03-12 | Attorney-Client Attorney Work Product |
| 59. | Email | Heather Asselin | Pat Gaas | Fwd: Follow Up | 2012-03-12 | Attorney-Client Attorney Work Product |
| 60. | Email | Tiffany Broussard | Debra Garcia | FW: Open file form - Hassell Construction - Conflicts | 2012-03-13 | Attorney-Client Attorney Work Product |
| 61. | Email | Debra Garcia | Tiffany Broussard | RE: Open file form - Hassell Construction - Conflicts | 2012-03-13 | Attorney-Client Attorney Work Product |
| 62. | Email | Tiffany Broussard | Debra Garcia | FW: Open file form - Hassell Construction - Conflicts | 2012-03-30 | Attorney-Client Attorney Work Product |
| 63. | Email | Heather Asselin | Heather Asselin | Notes of conversation with Phil Hassell today | 2012-04-03 | Attorney-Client Attorney Work Product |
| 64. | Email | Phil Hassell | Heather Asselin | Re: Follow up | 2012-04-15 | Attorney-Client |
| 65. | Email | Heather Asselin | Patrick Gaas | FW: Follow up | 2012-04-15 | Attorney-Client |
| 66. | Email | Patrick Gaas | Heather Asselin | RE: Follow up | 2012-04-16 | Attorney-Client |
| 67. | Email | Tiffany Broussard | Debra Garcia | FW: Open file form - Hassell Construction - Conflicts | 2012-04-25 | Attorney-Client Attorney Work Product |
| 68. | Email | Debra Garcia | Tiffany Broussard | RE: Open file form - Hassell Construction - Conflicts | 2012-04-25 | Attorney-Client Attorney Work Product |
| 69. | Email | Tiffany Broussard | Debra Garcia | RE: Open file form - Hassell Construction - Conflicts | 2012-04-25 | Attorney-Client Attorney Work Product |
| 70. | Email | Heather Asselin | Phil Hassell | RE: Follow up | 2012-05-15 | Attorney-Client |
| 71. | Email | Debra Garcia | Tiffany Broussard | RE: Open file form - Hassell Construction - Conflicts | 2012-05-30 | Attorney-Client Attorney Work Product |
| 72. | Email | Tiffany Broussard | Debra Garcia | FW: Open file form - Hassell Construction - Conflicts | 2012-05-30 | Attorney-Client Attorney Work Product |
| 73. | Email | Phil Hassell | Heather Asselin, Mike Hassell, and Shawn Potts | Re:  Meeting | 2012-08-01 | Attorney-Client |

| | Doc Type | Author | Recipient | Subject/Title | Date | Privilege Asserted |
|---|---|---|---|---|---|---|
| 74. | Email | Heather Asselin | Debra Garcia and Pat Gaas | FW:  Meeting | 2012-08-01 | Attorney-Client |
| 75. | Email | Heather Asselin | Nancy Hamren | Fwd: Meeting | 2012-08-01 | Attorney-Client |
| 76. | Email | Nancy Hamren | Heather Asselin | RE: Meeting | 2012-08-01 | Attorney-Client |
| 77. | Email | Phil Hassell | Heather Asselin | Re: Meeting | 2012-08-07 | Attorney-Client |
| 78. | Email | Phil Hassell | Heather Asselin | Re: Meeting | 2012-08-16 | Attorney-Client |
| 79. | Email | Debra Garcia | Heather Asselin | RE: Meeting | 2012-08-16 | Attorney-Client |
| 80. | Email | Debra Garcia | Heather Asselin | Letter to Hassell returning retainer check.nrl | 2012-10-30 | Attorney-Client Attorney Work Product |
| 81. | Email | Heather Asselin | Patrick Gaas | FW: Meeting | 2013-04-01 | Attorney-Client |
| 82. | Email | Heather Asselin | Patrick Gaas | FW: Meeting | 2013-04-01 | Attorney-Client |
| 83. | Email | Heather Asselin | Patrick Gaas | FW:  Meeting | 2013-04-01 | Attorney-Client |
| 84. | Email | Heather Asselin | Patrick Gaas | FW:  Meeting | 2013-04-01 | Attorney-Client |
| 85. | Email | Heather Asselin | Patrick Gaas | FW: Follow up | 2013-04-01 | Attorney-Client |
| 86. | Email | Heather Asselin | Patrick Gaas | FW: Notes of conversation with Phil Hassell today | 2013-04-01 | Attorney-Client |
| 87. | Email | Heather Asselin | Patrick Gaas | FW: Follow up | 2013-04-01 | Attorney-Client |
| 88. | Email | Heather Asselin | Patrick Gaas | FW: Meeting | 2013-04-01 | Attorney-Client |
| 89. | Email | Heather Asselin | Patrick Gaas | FW:  Meeting | 2013-04-01 | Attorney-Client |
| 90. | Email | Heather Asselin | Patrick Gaas | FW: Follow up | 2013-04-01 | Attorney-Client |
| 91. | Email | Heather Asselin | Patrick Gaas | FW: Meeting | 2013-04-01 | Attorney-Client |
| 92. | Email | Heather Asselin | Patrick Gaas | FW: Follow up | 2013-04-01 | Attorney-Client |

| | Doc Type | Author | Recipient | Subject/Title | Date | Privilege Asserted |
|---|---|---|---|---|---|---|
| 93. | Email | Robert N. Hancock | Paul Catalano | RE: Gall Construction | 2013-04-17 | Attorney-Client Attorney Work Product |
| 94. | Email | Paul Catalano | Robert N. Hancock | RE: Gall Construction | 2013-04-17 | Attorney-Client Attorney Work Product |
| 95. | Email | Robert N. Hancock | Paul Catalano and Pat Gaas | FW: Gall Construction | 2013-04-17 | Attorney-Client Attorney Work Product |
| 96. | Email | Patrick Gaas | Robert N. Hancock | RE: Gall Construction | 2013-04-18 | Attorney-Client Attorney Work Product |
| 97. | Email | Robert N. Hancock | Patrick Gaas | FW: Gall Construction | 2013-05-07 | Attorney-Client Attorney Work Product |
| 98. | Email | Robert N. Hancock | Paul Catalano | RE: Gall v. Hassell | 2013-05-08 | Attorney-Client Attorney Work Product |
| 99. | Email | Paul Catalano | Robert N. Hancock | RE: Gall v. Hassell | 2013-05-08 | Attorney-Client Attorney Work Product |
| 100. | Email | Robert N. Hancock | Paul Catalano | Re: Gall v. Hassell | 2013-05-08 | Attorney-Client Attorney Work Product |
| 101. | Email | Paul Catalano | Robert N. Hancock | Gall v. Hassell | 2013-05-08 | Attorney-Client Attorney Work Product |
| 102. | Email | Paul Comcast | Paul Catalano | | 2013-05-08 | Attorney-Client Attorney Work Product |
| 103. | Email | Paul Catalano | Debra Garcia and Pat Gaas | FW: Gall Construction | 2013-05-08 | Attorney-Client Attorney Work Product |
| 104. | Email | David S. Lynch | Peggy Born | FW: Hassel | 2013-05-09 | Attorney-Client Attorney Work Product |
| 105. | Email | Heather Asselin | David S. Lynch | Hassel | 2013-05-09 | Attorney-Client Attorney Work Product |
| 106. | Email | Robert N. Hancock | David S. Lynch | Hassell Case - what is is about | 2013-05-10 | Attorney-Client Attorney Work Product |
| 107. | Email | Robert N. Hancock | David S. Lynch | FW: | 2013-05-10 | Attorney-Client Attorney Work Product |

|     | Doc Type | Author | Recipient | Subject/Title | Date | Privilege Asserted |
|-----|----------|--------|-----------|---------------|------|--------------------|
| 108. | Email | David S. Lynch | Peggy Born | [Hassell issue] | 2013-05-15 | Attorney Work Product |
| 109. | Word document | David S. Lynch | Richard L. Rose | Memorandum (includes all drafts) | 2013-05-17 | Attorney Work Product |
| 110. | Email | David S. Lynch | Peggy Born | RE: Hassell Conflict letter | 2013-05-20 | Attorney-Client Attorney Work Product |
| 111. | Email | Peggy Born | David S. Lynch | Hassell Conflict letter | 2013-05-20 | Attorney-Client Attorney Work Product |
| 112. | Email | Peggy Born | David S. Lynch, Patrick Gaas, Heather Asselin, and Robert N. Hancock | Hassell Builders | 2013-05-21 | Attorney-Client Attorney Work Product |
| 113. | Email | David S. Lynch | Peggy Born | Hassell Letter | 2013-05-21 | Attorney-Client Attorney Work Product |
| 114. | Email | Jason R. Folkman | Heather Asselin | RE: Hassell | 2013-05-21 | Attorney-Client Attorney Work Product |
| 115. | Email | Heather Asselin | David S. Lynch and Jason R. Folkman | Hassell | 2013-05-21 | Attorney-Client Attorney Work Product |
| 116. | Email | David S. Lynch | Paul Catalano | RE: Gall v. Hassell | 2013-05-21 | Attorney-Client Attorney Work Product |
| 117. | Email | Robert N. Hancock | Paul Catalano | RE: Gall v. Hassell | 2013-05-21 | Attorney-Client Attorney Work Product |
| 118. | Email | Paul Catalano | Robert N. Hancock | FW: Gall v. Hassell | 2013-05-21 | Attorney-Client Attorney Work Product |
| 119. | Email | Paul Catalano | David S. Lynch | FW: Gall v. Hassell | 2013-05-21 | Attorney-Client Attorney Work Product |
| 120. | Email | Patrick Gaas | Debra Garcia, Heather Asselin, and David Lynch | RE: Gall v. Hassell | 2013-05-21 | Attorney-Client Attorney Work Product |
| 121. | Email | Paul Catalano | Debra Garcia, Pat Gaas, and Heather Asselin | Gall v. Hassell | 2013-05-21 | Attorney-Client Attorney Work Product |

| | Doc Type | Author | Recipient | Subject/Title | Date | Privilege Asserted |
|---|---|---|---|---|---|---|
| 122. | Email | Robert N. Hancock | Paul Catalano | RE: Gall v. Hassell; Letter to Hassell counsel re not withdrawing from representation | 2013-05-21 | Attorney-Client Attorney Work Product |
| 123. | Email | Paul Catalano | Robert N. Hancock | Gall v. Hassell; Letter to Hassell counsel re not withdrawing from representation | 2013-05-21 | Attorney-Client Attorney Work Product |
| 124. | Email | Jason R. Folkman | David S. Lynch and Heather Asselin | RE: Hassell | 2013-05-22 | Attorney-Client Attorney Work Product |
| 125. | Email | Robert N. Hancock | Paul Catalano | RE: Gall v. Hassell | 2013-05-31 | Attorney-Client Attorney Work Product |
| 126. | Email | Paul Catalano | Robert N. Hancock | Gall v. Hassell | 2013-05-31 | Attorney-Client Attorney Work Product |
| 127. | Email | Heather Asselin | David S. Lynch and Pat Gaas | Fwd: Royce Hassell and R. Hassell Co.'s | 2013-08-21 | Attorney-Client |
| 128. | Email | Phillip Hassell | Heather Asselin | Royce Hassell and R. Hassell Co.'s | 2013-08-21 | Attorney-Client |
| 129. | Email | Heather Asselin | David S. Lynch and Phil Hassell | RE: Royce Hassell and R. Hassell Co.'s | 2013-08-22 | Attorney-Client |
| 130. | Email | Patrick Gaas | David S. Lynch and Heather Asselin | RE: Royce Hassell and R. Hassell Co.'s | 2013-08-22 | Attorney-Client |
| 131. | Email | David S. Lynch | Heather Asselin and Pat Gaas | RE: Royce Hassell and R. Hassell Co.'s | 2013-08-26 | Attorney-Client Attorney Work Product |
| 132. | Email | Heather Asselin | David S. Lynch and Pat Gaas | FW: Royce Hassell and R. Hassell Co.'s | 2013-08-26 | Attorney-Client Attorney Work Product |
| 133. | Email | Patrick Gaas | Peggy Born | RE: 5.21.13 letter to Mr. Piazza re Hassell Builders, LLC | 2013-08-27 | Attorney-Client Attorney Work Product |
| 134. | Email | Peggy Born | Patrick Gaas | 5.21.13 letter to Mr. Piazza re Hassell Builders, LLC | 2013-08-27 | Attorney-Client Attorney Work Product |
| 135. | Email | Patrick Gaas | Heather Asselin and Phil Hassell | Royce Hassel and R. Hassell Co.'s | 2013-08-28 | Attorney-Client |
| 136. | Email | Heather Asselin | Patrick Gaas | FW: Royce Hassell and R. Hassell Co.'s | 2013-08-28 | Attorney-Client |

| | Doc Type | Author | Recipient | Subject/Title | Date | Privilege Asserted |
|---|---|---|---|---|---|---|
| 137. | Email | Patrick Gaas | David S. Lynch and Heather Asselin | FW: Royce Hassel and R. Hassell Co.'s | 2013-08-29 | Attorney-Client |
| 138. | Email | Phil Hassell | Patrick Gaas | Re: Royce Hassel and R. Hassell Co.'s | 2013-08-29 | Attorney-Client |
| 139. | Email | Patrick Gaas | Heather Asselin | FW: Royce Hassel and R. Hassell Co.'s | 2013-08-29 | Attorney-Client |
| 140. | Email | Phil Hassell | Patrick Gaas | Re: Royce Hassel and R. Hassell Co.'s | 2013-08-29 | Attorney-Client |
| 141. | Email | Patrick Gaas | Heather Asselin and Phil Hassell | Re: Royce Hassel and R. Hassell Co.'s | 2013-08-29 | Attorney-Client |
| 142. | Email | Patrick Gaas | David S. Lynch | Fwd: Royce Hassel and R. Hassell Co.'s | 2013-08-29 | Attorney-Client Attorney Work Product |
| 143. | Email | Phil Hassell | Patrick Gaas | Re: Royce Hassel and R. Hassell Co.'s | 2013-08-29 | Attorney-Client |
| 144. | Email | Phillip  Hassell | Patrick Gaas | FW: Pascal Piazza | 2013-08-30 | Attorney-Client |
| 145. | Email | Phillip Hassell | Patrick Gaas | meeting | 2013-08-31 | Attorney-Client Attorney Work Product |
| 146. | Email | Patrick Gaas | Phil Hassell | RE: meeting | 2013-09-02 | Attorney-Client Attorney Work Product |
| 147. | Word document | | | Representations of Hassell Construction Co., Inc. Preliminary to Engagement of Coats, Rose, Yale, Ryman and Lee, P.C. (includes all drafts) | 2013-09-03 | Attorney-Client |
| 148. | Email | Debra Garcia | Patrick Gaas | Letters to S. Hassell and Piazza | 2013-09-19 | Attorney Work Product |
| 149. | Email | Patrick Gaas | Debra Garcia | Letters - both fax and regular mail | 2013-09-19 | Attorney Work Product |
| 150. | Email | Debra Garcia | Phil Hassell and Pat Gaas | Letter to Silvia Hassell, Letter to Pascal Piazza | 2013-09-20 | Attorney-Client |
| 151. | Email | Patrick Gaas | Debra Garcia | RE: Letters to S. Hassell and Piazza | 2013-09-20 | Attorney Work Product |
| 152. | Email | Patrick Gaas | Phil Hassell | RE: Royce | 2013-09-20 | Attorney-Client |

| | Doc Type | Author | Recipient | Subject/Title | Date | Privilege Asserted |
|---|---|---|---|---|---|---|
| 153. | Email | Debra Garcia | Patrick Gaas | RE: Letters to S. Hassell and Piazza | 2013-09-20 | Attorney Work Product |
| 154. | Email | Patrick Gaas | Debra Garcia | RE: Letters to S. Hassell and Piazza | 2013-09-20 | Attorney Work Product |
| 155. | Email | Phil Hassell | Patrick Gaas | Re: Royce | 2013-09-20 | Attorney-Client |
| 156. | Email | Patrick Gaas | Phillip Hassell | RE: Royce | 2013-09-20 | Attorney-Client |
| 157. | Email | Phillip Hassell | Patrick Gaas | Royce | 2013-09-20 | Attorney-Client |
| 158. | Email | Patrick Gaas | Heather Asselin | RE: Hassell – Call on Monday | 2014-07-10 | Attorney Work Product |
| 159. | Email | Heather Asselin | Patrick Gaas | RE: Hassell – Call on Monday | 2014-07-10 | Attorney Work Product |
| 160. | Email | Patrick Gaas | Heather Asselin | RE: Hassell – Call on Monday | 2014-07-10 | Attorney Work Product |
| 161. | Email | Heather Assellin | Patrick Gaas | Hassell | 2014-07-14 | Attorney Work Product |
| 162. | Email | Heather Asselin | Heather Asselin | Hassell – Letter to Silvia Hassell Re: July 16 Springwoods Letter.doc | 2014-07-16 | Attorney Work Product |
| 163. | Email | Heather Asselin | Heather Asselin | Hassell – Research to respond to Springwoods letter | 2014-07-16 | Attorney Work Product |
| 164. | Word document | David S. Lynch | Silvia Hassell | Draft letter re: Hassell litigation (includes all drafts) | 2014-07-16 | Attorney-Client Attorney Work Product |
| 165. | Email | Heather Asselin | Phil Hassell and Patrick Gaas | FW: July 16 Correspondence | 2014-07-17 | Attorney-Client |
| 166. | Email | Heather Asselin | David S. Lynch, Patrick Gaas, and Rick Rose | Hassell – Letter to Silvia Hassell Re July 16 Springwoods Letter | 2014-07-17 | Attorney-Client Attorney Work Product |
| 167. | Email | Patrick Gaas | Debra Garcia | FW: Pascal Piazza | 2014-07-17 | Attorney-Client Attorney Work Product |
| 168. | Email | Patrick Gaas | Heather Asselin | FW: Pascal Piazza | 2014-07-17 | Attorney-Client Attorney Work Product |
| 169. | Email | Debra Garcia | Heather Asselin | Representations Preliminary to Engagement of Hassell Construction | 2014-07-17 | Attorney-Client Attorney Work Product |

|  | Doc Type | Author | Recipient | Subject/Title | Date | Privilege Asserted |
|---|---|---|---|---|---|---|
| 170. | Email | Heather Asselin | David Lynch | FW: July 21, 2014, Springwoods Mediation | 2014-07-17 | Attorney-Client Attorney Work Product |
| 171. | Email | Heather Asselin | David S. Lynch, Patrick Gaas, and Rick Rose | Hassell – Letter to Silvia Hassell Re: July 16 Springwoods Letter.doc | 2014-07-17 | Attorney-Client Attorney Work Product |
| 172. | Email | Patrick Gaas | Heather Asselin | Hassell – Letter to Silvia Hassell Re: July 16 Springwoods Letter | 2014-07-17 | Attorney-Client Attorney Work Product |
| 173. | Email | Heather Asselin | Patrick Gaas | Hassell – Letter to Silvia Hassell Re: July 16 Springwoods Letter.doc | 2014-07-17 | Attorney-Client Attorney Work Product |

# EXHIBIT
# 10

Filed 12 July 26 P4:15
Chris Daniel - District Clerk
Harris County
ED101J016996107
By: Nelson Cuero

## 2012-42981 / Court: 333

NO. _____

| | | |
|---|---|---|
| HASSELL CONSTRUCTION CO., INC. | § | IN THE DISTRICT COURT OF |
| | § | |
| v. | § | HARRIS COUNTY, TEXAS |
| | § | |
| SPRINGWOODS REALTY COMPANY | § | |
| AND HARRIS COUNTY IMPROVEMENT | § | |
| DISTRICT # 18 | § | _____ JUDICIAL DISTRICT |

### PLAINTIFF'S ORIGINAL PETITION

Plaintiff **HASSELL CONSTRUCTION CO., INC.** ("HCCI") complains of Defendants **SPRINGWOODS REALTY COMPANY** ("Springwoods") and **HARRIS COUNTY IMPROVEMENT DISTRICT # 18** (the "District") as follows:

### DISCOVERY LEVEL

1.	HCCI intends to pursue discovery under Discovery Level Three (3).  Tex. R. Civ. P. 190.4.

2.	HCCI asks the Court to issues deadlines under Discovery Level Three (3).

### NOTICE TO SPRINGWOODS AND THE DISTRICT

3.	Springwoods is apparently a Texas corporation.  It maintains its principal place of business in Harris County, Texas.   Springwoods may be served by serving a true, correct and genuine copy of this petition and of the citation on its Registered Agent, CT Corporation System, 350 N. St. Paul St., Suite 2900, Dallas, Texas 75201-4234.

4.	The District is a special district created under Section 59, Article XVI of the Texas Constitution.  The District may be served by the Harris County District Clerk's Office serving a true, correct and genuine copy of this petition and of the citation on the Robert T. Deden, President of the Harris County Improvement District # 18 in person at the address of: 9320 Westview Drive, Houston, Texas 77055 or at such other address as he may be personally found.

## JURISDICTION AND VENUE

5.      HCCI seeks the recovery of damages within the jurisdictional limits of this Court as the primary purpose of this petition.    HCCI's damages, however, will not fully and efficiently redress the injury and harm suffered by HCCI.

6.      Venue is proper in Harris County, Texas.  TEX. CIV. PRAC. AND REM. CODE §§ 15.002(a)(1), 15.002(a)(3), and 15.005.

## BACKGROUND FACTS

### The Parties.

7.      HCCI is a general contractor which maintains its principal place of business in Harris County, Texas.  HCCI has expertise in performing underground excavation work, paving work and dirt work and the associated administration of such work.

8.      Springwoods is a developer which maintains its principal place of business in Harris County, Texas.  Springwoods is the developer of Springwoods Village which is located within the District and which includes, without limitation, the development of the new campus for ExxonMobil Corporation ("ExxonMobil").

9.      The District is a special district which is located in Harris County, Texas and which maintains its principal place of business in Harris County, Texas. The District's purpose is to promote, develop and maintain, among other matters, the public welfare and the construction of drainage, roads, and related paving, underground and dirt work within the District.

### The Bid and the Ensuing Original Construction Contract.

10.     In 2011, in Harris County, Texas, the District solicited bids for the construction and administration of that certain underground excavation work, paving work and dirt work defined by

2

the bid drawings for:

> Construction of Springwoods Village Parkway, Phase II and Holzwarth Road from IH-45 to proposed Holzwarth Road
>
> Water lines, sanitary sewer lines and force mains (C.L. Job No. 2010.006.052)
>
> And
>
> Paving, traffic and drainage improvements and franchise utilities – WPM Job No. 23-08073-11.

(the "Scope of Work").

11.    After public notice, HCCI was the lowest bidder. HCCI's bid was consistent with other comparable, but slightly higher bids for the Scope of Work.

12.    In 2011, in Harris County, Texas, HCCI's bid was accepted, and, as a result, HCCI, as the Contractor, and the District and Springwoods, as the Owners, entered into a construction contract for the Scope of Work (the "Contract").

13.    The Contract originally consisted of an integrated series of documents which, among other documents, included:

- a base agreement (dated August 11, 2011),

- Standard General Conditions of the Construction Contract (the "Standard Conditions"),

- special provisions of the agreement,

- standard general conditions of the construction contract,

- supplementary conditions, and

- the bid drawings and specifications brought forward as the construction drawings and specifications (the "drawings").

3

14.     The Contract contained material provisions integral to the timely completion of the

Scope of Work which included, without limitation:

a.     time was of the essence;

b.     the bid drawings defined the Scope of Work and the District and Springwoods was obligated to provide drawings sufficient to complete the Scope of Work. Costello, Inc. ("Costello") had designed the water and sanitary sewer improvements and Walter P. Moore and Associates, Inc. ("Moore") had designed all other improvements;

c.     HCCI would be paid for the performance of the Scope of Work required by the drawings. Springwoods was and is the Owner for purposes of approving requests for and making payments to HCCI and for paying all damages that might ever be due;

d.     there were mechanisms for a change in the Contract Price and/or Contract Time, or both, if there were material changes in the drawings and the accompanying Scope of Work;

e.     there was a mechanism for an impartial, unbiased, and independent Engineer to make decisions critical to HCCI's performance under the Contract which included, without limitation, (i) interpretations under the Contract, (ii) adding Contract Price and/or Time, or both, when the Scope of Work changed, (iii) assessing HCCI's claims,, and (iv) accepting HCCI's work; and

f.     after HCCI completed 50% of the Scope of Work, Springwoods could, at that one trigger date, decide to reduce the retainage from 10% to 5% for the remainder of the project.

HCCI relied upon the provisions of the Contract..

15.     By entering into the Contract, Springwoods and the District accepted the terms of

HCCI's bid and the timetable included in that bid.

Unofficial Copy Office of Harris County District Clerk

4

**Breaches of the Contract.**

*HCCI Commences Work*

16.    In August 2011, in Harris County, Texas, HCCI received the Notice to Proceed.

17.    Prior to receiving the Notice to Proceed, HCCI had submitted schedules (which were approved by Springwoods and the District) and had mobilized its workers and equipment.

18.    HCCI, thus, was prepared to proceed on the approved schedule when it received the Notice to Proceed and, accordingly, proceeded as directed. HCCI would thereafter fully perform as required on its behalf in Harris County, Texas.

*There Were Over 500 Revisions to the Drawings Which*
*Materially Changed the Scope of Work, the Contract Price and the Contract Time*

19.    From the onset, in Harris County, Texas, HCCI notified Springwoods and the District with problems with the drawings.

20.    HCCI also objected when, at the onset, Costello submitted construction drawings which contained unilateral revisions not made under the Contract. Costello confirmed that HCCI was not bound by these specific unilateral revisions.

21.    In addition, in Harris County, Texas, Springwoods and the District, thereafter, made revisions to the drawings under the Contract.

22.    Ultimately, there would be over five-hundred (500) such revisions to the drawings.

23.    These revisions and changes to the drawings comprise a failure by Springwoods and the District, in Harris County, Texas, to comply with the obligation under the Contract to supply the proper drawings to HCCI for HCCI to perform its Scope of Work.

24.     Springwoods and the District, moreover, was required to secure the timely approval of the revisions and the changes to the drawings before HCCI could secure all of the necessary permits from Harris County, Texas.  Even though time was of the essence, Springwoods and the District did not do so.

25.     In addition and even though time was of the essence under the Contract, Springwoods and the District failed to timely answer HCCI's multiple requests for information, failed to timely respond to HCCI's requests for plan corrections, and failed to timely return HCCI's submittals.

26.     The conduct described in ¶¶ 21-25 further disrupted, interfered and/or delayed HCCI's work in Harris County, Texas.

27.     HCCI requested that Springwoods and the District cure each failure to comply with the obligations of Springwoods and the District as described in ¶¶ 21-25.  Springwoods and the District have refused to do so and continue to refuse to do so.

### *Springwoods and the District Have Required HCCI to Do More Work in Less Time, Yet Refuse to Pay HCCI For Such Work*

28.     Throughout the revisions to the drawings and the project, Springwoods and the District, in Harris County, Texas, have directed HCCI to perform the expanded Scope of Work without delay.

29.     Springwoods and the District, in Harris County, Texas, have required HCCI to perform more work in less time or in an accelerated manner which has resulted in material inefficiencies and loss of productivity. Springwoods and the District, in Harris County, Texas, seek to unilaterally revoke, rescind or revise previously executed Change Orders without due compensation to HCCI..

6

30.     Springwoods and the District, in Harris County, Texas, have threatened HCCI with liquidated damages and with claims of breach of the Contract unless HCCI performs the expanded Scope of Work.

31.     HCCI has continued to fully perform.

32.     Therefore, without limitation:

a.     Under the Contract, in Harris County, Texas. HCCI was and is entitled to be paid for the full work performed and to be performed under the original scope of work and any agreed-to additional scope of work;

b.     Alternatively, in Harris County, Texas, Springwoods and/or the District, on one hand, and HCCI, on the other hand, amended the Contract by their respective conduct and HCCI was and is entitled to be paid for the full work performed and to be performed under the original scope of work and any agreed-to additional scope of work;

c.     Alternatively, in Harris County, Texas, there have been material or cardinal changes in the terms of the Contract under which HCCI was and is entitled to be paid for the full work performed and to be performed under the original scope of work and any agreed-to additional scope of work;

d.     Alternatively, in Harris County, Texas, the District directed HCCI to perform additional work in connection with the Contract and HCCI was and is entitled to be paid for the full work performed and to be performed under the original scope of work and any agreed-to additional scope of work;

e.     Alternatively, in Harris County, Texas, Springwoods directed HCCI to perform additional work which Springwoods knew that HCCI expected to be paid for such work and HCCI was and is entitled to be paid the value of such work performed to the benefit of Springwoods and to be performed which exceeds the agreed-to scope of work.

33.     Despite each such obligation, Springwoods has not paid HCCI all amounts due and owing.   Each such failure to pay is a failure to pay under the obligations owed by Springwoods.

34.    HCCI requested that Springwoods cure each failure to comply with the Contract. Springwoods has refused to do so and continues to refuse to do so.

### The Wholesale Failure of the Independent Engineer Decision-Making Mechanism

35.    Springwoods and the District, in Harris County, Texas, chose Costello and Moore to serve as the Engineer under the Contract which included, without limitation, the role as the independent Engineer, in Harris County, Texas, under the mechanism to make interpretations and changes in Contract Price and Contract Time, or both.

36.    Costello and Moore, thus, occupied a critical role which has impacted and will impact the timing and the cost of HCCI's performance under the Contract.

37.    When making such decisions, in Harris County, Texas, Costello and Moore had to act in good faith, impartially and without preference to Springwoods, the District or HCCI respectively.

38.    Under this duty of good faith, Costello and Moore each had to avoid any bias and any conflict of interest.

39.    Consequently, any decision tainted by bad faith, partiality, bias or a conflict of interest was and is void.

40.    HCCI relied upon this agreed-to mechanism and the accompanying independent duties.

41.    HCCI invoked the agreed-to mechanism and these independent duties in Harris County, Texas. HCCI filed a series of claims for changes in the Contract Price and the Contract Time which Springwoods and the District asked to be treated as a consolidated claim. HCCI asked for a series of interpretations under the Contract.

42.     HCCI, however, has learned that this agreed-to mechanism has been and is illusory and non-existent.

43.     HCCI has learned that Moore cannot ever be impartial or unbiased because of a fundamental conflict of interest. Most of the decisions submitted to an independent Engineer review involve the problems created by the revisions to the drawings prepared by Moore.  Moore is principally motivated by the self-interest to try to cover-up or protect against its insufficient drawings.

44.     HCCI has also learned that Moore supplied an evaluation of HCCI's consolidated claim which was used to evaluate HCCI's claims, but which HCCI was never provided notice of the contents of that report.  Consequently, HCCI was involved in an Engineer decision-making process where there was a secretive basis for evaluating HCCI's consolidate claim.

45.     Costello has agreed with material parts of HCCI's consolidated claim. Yet, Costello refuses to act on its own evaluation and has acted contrary to its own evaluation.  It appears that Costello has preferred the perceived economic benefit of its other joint venture projects with Moore over its independent obligations.

46.     Springwoods and the District failed to comply with the Contract when Moore and Costello were allowed to continue to be the Engineers under the independent Engineer decision-making mechanism.

47.     Springwoods and the District have retained Moore and Costello even though Springwoods and the District have retained the services of a third-party Engineer whom, HCCI is of the information and belief, can be independent and even though Springwoods and the District have made a claim against Moore and Costello to indemnify Springwoods and the District for their

9

conduct which led to HCCI's consolidated claim.

48.     Springwoods and the District have refused to respond properly to HCCI's consolidated claim. They have refused to meet with HCCI to discuss the details of HCCI's consolidated claim. Springwoods and the District functionally refused to address HCCI's consolidated claim. Instead, they have simply deferred ruling, rather than making an impartial, good-faith decision required under the Contract.

49.     Springwoods and the District, moreover, now rely upon a pretext to try to defer further HCCI's consolidated claim.  Springwoods and the District now claim that they cannot decide HCCI's consolidated claim because HCCI allegedly failed to respond to an earlier request by Costello to HCCI for HCCI to supply certain documents.  Yet, HCCI has supplied, what even Springwoods and the District has characterized as, volumes of pages after the request by Costello. During that time that HCCI supplied its documents, neither Springwoods nor the District complained that HCCI failed to supply the documents requested by Costello.  Further during that time, HCCI expressly requested Springwoods and the District to identify any problems with the documents submitted, and neither Springwoods nor the District identified any problem.

50.     Springwoods and the District also seek to partially utilize work performed by HCCI without complying with the requirements for acceptance of partially utilized work under the Contract.  They want the benefit of the work without paying for it.  They want to impose additional insurance costs which should be incurred.  They did not provide the mandatory certification under Section 14D of the Contract.  None of these actions would have occurred if Springwoods and the District would have chosen to use impartial, objective engineers.

51.     This conduct described in ¶¶ 46-50 by Springwoods and the District, jointly and severally, comprised and continues to comprise failures to comply with the Contract.

### *Springwoods Elected to Reduce the Retainage from 10% to 5%, But Has Continued to Hold-Back 10%*

52.     Under the Contract, in Harris County, Texas, when HCCI reached the 50% point in its scope of work, Springwoods had the right to decide whether to reduce the remaining retainage from 10% to 5%. Springwoods exercised this right and agreed to reduce the retainage from 10% to 5%.

53.     Having made the decision, HCCI had a vested right to the lowered retainage and Springwoods could not reverse that decision.  HCCI relied upon the decision.

54.     Nevertheless, Springwoods failed to comply with, and continues to fail to comply with, the Contract by withholding the full 10% retainage.

55.     Springwoods has failed to comply with Contract.

56.     HCCI notified Springwoods of this failure to comply and provided it with an opportunity to cure each failure to comply with the Contract.

57.     Despite the notice and the opportunity to cure, Springwoods has refused to release the 5% retainage and continues to do so.

### *Springwoods Seeks to Wrongfully Claw-Back Authorized Payments Made*

58.     Springwoods authorized and made certain payments to HCCI in Harris County, Texas.

59.     HCCI relied upon such payments and, among other matters, made payments to is subcontractors out of the payments made to HCCI by Springwoods.

11

60.     Inexplicably, Springwoods thereafter sought to claw-back part of these payments in Harris County, Texas.

61.     Springwoods has failed to comply with Contract.

62.     HCCI notified Springwoods of this failure to comply and provided it with an opportunity to cure each failure to comply with the Contract.

63.     Despite the notice and the opportunity to cure, Springwoods has continued to try to claw-back prior authorized payments

### Damages and Injuries Sustained by HCCI

64.     The conduct described in ¶¶ 16-63 by Springwoods and the District, jointly and severally in Harris County, Texas, comprised, and continues to comprise, failures to comply with the respective obligations owed to HCCI.

65.     That conduct is not excused and has comprised, and continues to comprise, a breach of these respective obligations.

66.     That conduct has been the actual, producing and proximate cause of damages or injuries to HCCI.  For example, without limitation:

a.      HCCI was required to do more work, in less time, on an accelerated basis, in an inefficient manner and with a material lack of productivity;

b.      HCCI has not been paid all amounts due and owing to them;

c.      HCCI was forced to do work which Springwoods and the District have refused to compensate and continues to refuse to compensate such that HCCI has had to finance that portion of the work; and

d.      HCCI has not been able to complete the work in the scheduled and  reasonable time required to do the work and hence has not been able to mobilize for other jobs while having to maintain crews and equipment for Spirngwoods and the District.

12

67.     HCCI's damages and injuries are ongoing.  HCCI has tried to mitigate these damages and injuries, but Springwoods and the District have delayed, hindered and otherwise interfered with those efforts.

68.     HCCI only seeks to recover damages or relief against the District which are within the Court's jurisdiction and which are, to the maximum extent possible, permitted under the waiver of the governmental or sovereign immunity or where no such immunity exists.

69.     HCCI seeks to recover damages and relief from Springwoods which are within the Court's jurisdiction and which are, to the maximum extent possible, recoverable at law, in equity, by statute or otherwise.

70.     HCCI can quantify some of these damages and injuries, but not all of them.  There is no complete, full, practical and efficient damage remedy.

71.     HCCI also asks the Court to reform the Contract, imply a promise or render such relief to prevent the unjust enrichment of Springwoods and/or the District, to disgorge any ill-gotten enrichment, and to grant full restitution to HCCI.

### Waiver of Sovereign Immunity by the District

72.     Springwoods is not a governmental entity. It is not entitled to claim any governmental or sovereign immunity.

73.     To the extent the District claims any governmental or sovereign immunity, the District, and any party claiming derivative immunity through the District, have waived immunity from liability.  TEX. LOC. GOV'T CODE § 271.151 through 271.153 and  375.091 through 375.092.

**Exhaustion of Administrative Remedies**

74.      HCCI seeks relief which does not require the exhaustion of any prior administrative remedy.

75.      HCCI also seeks relief from a consolidated claim under Article 10.5 of the Standard Conditions.  As permitted, HCCI requested a "mediation" which occurred on July 2, 2012 under Article 16.01 of the Standard Conditions.   HCCI files this petition within thirty (30) days of the completion of the mediation. HCCI has exhausted any applicable administrative remedies for any applicable claims.  Alternatively, any applicable administrative remedies have become arbitrary and capricious so as to deny HCCI due process and are illusory and futile.

**Conditions Precedent**

76.      All conditions precedent to HCCI's right to recover under each cause of action has occurred or has been performed.

77.      These background facts are incorporated into each cause of action as necessary.

**CAUSES OF ACTION**

**Breach of Contract**

78.       Based upon the foregoing facts, Springwoods and/or the District failed to comply with their respective obligations owed to HCCI and such failures are not excused and have comprised and continue to comprise a breach of such respective obligations.

79.      HCCI sues Springwoods and the District, jointly and severally, to recover all recoverable damages proximately caused by each above described failure to comply with material terms of the obligations owed to HCCI.

14

**Directed Work by the District**

80.     Alternatively, based upon the foregoing facts, HCCI completed agreed-to work for which Texas law imposes a statutory obligation on the District under Loc. Gov't Code § 271.153(a)(2).

81.     HCCI sues to recover the amount owed for additional work HCCI was directed to perform by the District in connection with the Contract.

**Assumpsit/Quantum Meruit/Unjust Enrichment**

82.     Alternatively, based upon the foregoing facts, Springwoods owes HCCI for the full value of the work performed.

83.     HCCI sues to recover that full value of work.

**Attorneys' Fees, Interest and Costs**

84.     HCCI sues the District to recover maximum recoverable attorneys' fees, interest, costs and pre- and post-judgment interest under the Prompt Payment Act and Loc. Gov't Code § 271.153(a)(3).

85.     HCCI sues Springwoods to recover maximum recoverable attorneys' fees, interest, costs and pre- and post-judgment interest.

**Jury Demand**

86.     HCCI hereby demands a jury trial.

87.     HCCI pays the jury fee.

HCCI prays that the District and Springwoods be cited to appear and answer, that the Court grant judgment for HCCI and against the District and Springwoods for all damages, remedies and relief as requested or as supported by the evidence, and that the Court grant all other available

15

general, specific, whole, partial, legal, equitable, statutory or other relief.

Respectfully submitted,

Zukowski, Bresenhan & Sinex, L.L.P.

*/s/ Pascal Paul Piazza*

_____

Pascal Paul Piazza
State Bar No. 15966850
1177 West Loop South, Suite 1100
Houston, Texas 77027
(713) 965-9969/(713) 963-9169 (Fax)

16

# EXHIBIT
# 11

| From: | Jessica Holoubek |
|---|---|
| Sent time: | 02/21/2013 03:04:12 PM |
| To: | Rick Rose |
| Subject: | RE: Hassell - |

I agree, and I am cautiously optimistic about our new representation. He is certainly active and moving fast to get up to speed right now.

I think my autocorrect changed your name to "Right" instead of Rick, is that telling of something?
Jessica
Jessica Biddle Holoubek
713-860-6491
jholoubek@abhr.com

**b$_p$h** Please consider whether It is necessary to print this e-mail.

---

**From:** Rick Rose [mailto:rrose@coatsrose.com]
**Sent:** Thursday, February 21, 2013 3:00 PM
**To:** Jessica Holoubek
**Subject:** RE: Hassell -


Every now and then I recall something from many years ago. Maybe it will help. I think
                                        I cart imagine what the expenses have and
 Will be before this is over.

---

**From:** Jessica Holoubek
**Sent:** Thursday, February [1, tins z:bb PM
**To:** Rick Rose
**Subject:** FW: Hassell -

Right,
            See below.
Jessica
Jessica Biddle Holoubek
713-860-6491
jholoubek@abhr.com

**6-0⁴3** Please consider whether it is necessary to print this e-mail.

---

**From:** john engvall yahoo
**Sent:** Thursday, February 21, 2013 2:51 PM
**To:** Dwayne Mason; Lynne Humphries; Jessica Holoubek
**Cc:** Kim Buettner E&L; Ashley Kempenski **firm email** E&L
**Subject:** Fwd: Hassell -

See below;


J E

John Engvall **Jr.**
**Engvall & Lopez, L.L.P.**
**1900 St. James Place, Suite 210**
**Houston, Texas 77056**
Tel: **713-787-6700**
Cell: **713-725-2571**

# EXHIBIT
# 12

| From: | Susan Hostetler |
|-------|-----------------|
| Sent time: | 07/03/2012 **11:41:49** AM |
| To: | Rick Rose |
| Subject: | Your message to Lynne |

They were not even close to a settlement.

Susan Hostetler
Legal Assistant
Allen Boone Humphries Robinson LLP
3200 Southwest Freeway, Suite 2600
Houston, Texas 77027
(713) 860-6432 (office)
(713) 860-6632 (fax)

CONFIDENTIALITY NOTICE

The information in this email may be confidential and/or privileged. This email is intended to be reviewed by only the individual or organization named above If you are not the intended recipient or an authorized representative of the intended recipient, you are hereby notified that any review, dissemination or copying of this email and its attachment, it any, or the information contained herein is prohibited. If you received this email in error please immediately notify the sender by return email and delete this email from your system.

.CIRCULAR 230 NOTICE

The rules imposed by IRS Circular 230 require Allen Boone Humphries Robinson LLP to inform you that, unless expressly slated above or in an attachment hereto, this communication including any attachments, is not intended or written to be used, and it cannot be used, by you or any person or entity for the purpose of avoiding any penalties that may or could be imposed under the United States Internal Revenue Code, nor for the promoting, marketing or recommending to another party any transaction or tax-related matter(s).

# EXHIBIT
# 13

| | |
|---|---|
| **From:** | Phillip Hassell |
| **To:** | Sawyer, Gene; Rosalyn Hassell; Beth Gary |
| **Cc:** | Patrick Gaas |
| **Subject:** | Contact Information |
| **Date:** | Friday, September 20, 2013 4:39:41 PM |

To All:

Listed below you will find the Corporate counsel contact information for Hassell Construction Company, Inc.:

Mr. Patrick Gaas
Coats, Rose, Yale, Ryman & Lee, P.C.
3 Greenway Plaza, Suite 2000
Houston, Texas 77046

Any legal matters relating to R. Hassell, Royce Hassell or Silvia Hassell may be directed to Patrick Gaas. Please cc us on any communications you may have.

Please feel free to contact me at any time concerning any and all matters.

Regards,
Phillip Hassell
Hassell Construction Co., Inc.
16111 Hollister Rd.
Houston, TX 77066
281-893-2570

LIBERTY 000037

# EXHIBIT
# 14

Petitioner's Exhibit "35", Page 1 of 3



**12211 DUNCAN ROAD**
**HOUSTON, TEXAS 77066**
**PH. 281-893-2570**
**FAX 281-580-9170**
*est. 1976*

August 15, 2012

R. Hassell Companies
Royce Hassell
5302 Maple St.
Houston, TX 77401

Royce:

In connection with an examination of our accounting records as of June 30, 2012, it is requested that you confirm the correctness of the R. Hassell Companies account balances as shown below, directly to our auditors, Morris, Ligon & Rodriguez, Certified Public Accountants, 245 Commerce Green, Suite 210, Sugar Land, Texas 77478:

A/R – balance due from R. Hassell Companies
at 6/30/12:                                                          $2,739,924.36

A/P – Trade balances due to R. Hassell & Co., Inc./
R. Hassell Builders at 6/30/12:                          $176,995.22

A/P – Retainage balances due to R. Hassell & Co., Inc./
R. Hassell Builders at 6/30/12:                          $871,669.93

Security:
➤  Liens on Royce Hassell personal property:
  o  6417 and 6421 Buffalo Speedway
  o  Far Hills, Lots 11, 28-B, 29-A, & 29-B
  o  5302 Maple St., Lot 23 Braeburn Country Club Estates
➤  Claim on Harris County Improvement District No. 18 – Springwoods Village Parkway project

Sincerely,

Shawn Potts, Secretary/Treasurer

Morris, Ligon & Rodriguez
Certified Public Accountants
245 Commerce Green, Suite 210
Sugar Land, TX 77478

Dear Sirs:

By signing below I am confirming the above balances at 6/30/12.  Any exceptions are noted below:

_____                    9/14/12
Signed                                                          Date

**RH6707**

Petitioner's Exhibit "35", Page 2 of 3

RHC06182
10/8/2014



**12211 DUNCAN ROAD**
**HOUSTON, TEXAS 77066**
**PH. 281-893-2570**
**FAX 281-580-9170**
*est. 1976*

August 15, 2012

R. Hassell Companies
Royce Hassell
5302 Maple St.
Houston, TX 77401

Royce:

In connection with an examination of our accounting records as of June 30, 2012, it is requested that you confirm the correctness of the R. Hassell Companies account balances as shown below, directly to our auditors, Morris, Ligon & Rodriguez, Certified Public Accountants, 245 Commerce Green, Suite 210, Sugar Land, Texas 77478:

| | |
|---|---|
| A/R – balance due from R. Hassell Companies at 6/30/12: | $2,739,924.36 |
| A/P – Trade balances due to R. Hassell & Co., Inc./ R. Hassell Builders at 6/30/12: | $176,995.22 |
| A/P – Retainage balances due to R. Hassell & Co., Inc./ R. Hassell Builders at 6/30/12: | $871,669.93 |

Security:
> ➤ Liens on Royce Hassell personal property:
>   o 6417 and 6421 Buffalo Speedway
>   o Far Hills, Lots 11, 28-B, 29-A, & 29-B
>   o 5302 and 5304 Maple St.

Sincerely,

*Shawn Potts*

Shawn Potts, Secretary/Treasurer

Morris, Ligon & Rodriguez
Certified Public Accountants
245 Commerce Green, Suite 210
Sugar Land, TX 77478

Dear Sirs:

By signing below I am confirming the above balances at 6/30/12.  Any exceptions are noted below:

Signed _____    Date 9/14/12

**HCCI Ex. 31**
Petitioner's Exhibit "35", Page 3 of 3

HCCI Ex. 31

# EXHIBIT
# 15

From: **Phil Hassell** <jphassell@hassellconstruction.com>
Date: Thu, Jul 11, 2013 at 1:06 PM
Subject: Fwd: Hassell FW: Deficient Concrete Backup
To: Royce Hassell <conrcrete@gmail.com>


FYI

Phil Hassell
Hassell Construction
12211 Duncan Road
Houston, Texas 77066
Phone 281-893-2570
Fax 281-580-9170

Begin forwarded message:

**From:** "Hassell, Rosalyn" <Rosalyn.Hassell@chsinc.com>
**Date:** July 11, 2013 12:38:34 PM CDT
**To:** Phil Hassell <jphassell@hassellconstruction.com>
**Subject: Fwd: Hassell FW: Deficient Concrete Backup**



Rosalyn Hassell
CHS Surety

Begin forwarded message:

**From:** "Sawyer, Gene" <Gene.Sawyer@LibertyMutual.com>
**Date:** July 11, 2013, 11:53:16 AM CDT
**To:** "Hassell, Rosalyn <Rosalyn.Hassell@impactrisksolutions.com>
(Rosalyn.Hassell@impactrisksolutions.com)" <Rosalyn.Hassell@impactrisksolutions.com>
**Subject: Hassell FW: Deficient Concrete Backup**

Rosalyn –

I received a call earlier this week from Jessica, attorney for the District, about this matter.  She
got my letter and wanted to make me aware the District intends on proceeding with the work
and using the withheld contract funds to pay for the costs.  They do not intend on pursuing the
performance bond on that work.

As to the bioswales (as she described it), the District intends on demanding Hassell/Liberty to
repair the alleged defects and, if not, then look to us for reimbursement of those related costs.


**Gene Sawyer**
**Liberty Mutual Surety**
**Surety Claims Dept**
**ph 972.808.4641**

**From:** Hassell, Rosalyn [mailto:Rosalyn.Hassell@chsinc.com]
**Sent:** Wednesday, June 26, 2013 8:53 AM
**To:** Sawyer, Gene
**Subject:** Hassell FW: Deficient Concrete Backup

Gene,

Attached and below you will find correspondence regarding the concrete at Springwoods. Please review and let me know your thoughts. Thanks Gene!

*Rosalyn D. Hassell*
**Rosalyn D. Hassell**
Account Executive, Ag States Group
CHS Surety Division

_____
This outbound email has been scanned for all viruses by the MessageLabs Skyscan service.
For more information please visit http://www.symanteccloud.com
_____

25025 N I-45 Freeway, Suite 525 | The Woodlands, TX 77380
P 832-482-4732 | F 414-231-4604 | C 281-898-0013
rosalyn.hassell@chsinc.com | Visit us at chsinc.com

*We do not guarantee receipt of incoming e-mail messages, be advised that coverage is not considered bound, changed or cancelled by using e-mail unless you receive subsequent written confirmation of your request or speak directly with one of our licensed representatives.*

*CONFIDENTIAL NOTICE: This electronic transmission and any documents or other writings sent with it are confidential information which is intended only for the named recipient and which may be legally privileged. If you receive this communication by error, please immediately notify the sender by telephone at 832-482-4732 for instructions on its destruction or return. Any disclosure, copying, distribution, or the taking of any action concerning the contents of this communication or any attachment(s) by anyone other than the named recipient is strictly prohibited.*

**From:** Phil Hassell [mailto:jphassell@hassellconstruction.com]
**Sent:** Wednesday, June 26, 2013 6:24 AM
**To:** Hassell, Rosalyn
**Subject:** Fwd: Deficient Concrete Backup

FYI, we need to see if surety agrees with us that we have and are willing to respond to the situation, if so then we would encourage a written response from them disagreeing with ABHR (District's attorney) claim.
Phil Hassell
Hassell Construction
12211 Duncan Road
Houston, Texas 77066
Phone 281-893-2570
Fax 281-580-9170

Begin forwarded message:
**From:** Royce Hassell <conrcrete@gmail.com>
**Date:** June 25, 2013 4:08:45 PM CDT
**To:** Phillip Hassell <jphassell@hassellconstruction.com>
**Subject: Deficient Concrete Backup**
Attached are the emails and letters that document this topic for the surety.

# EXHIBIT
# 16

**From:** Patrick Gaas [mailto:pgaas@coatsrose.com]
**Sent:** Monday, November 18, 2013 11:35 AM
**To:** bob@kruckemeyerlaw.com
**Subject:** Hassell

Bob-

Got your phone message.  I'm covered up at the moment, but wanted to reply asap.

Let's meet here tomorrow at 1:30 pm.  I'll set it up with my client.  And "yes", I'll be advising Hassell at the meeting, the answer of Tyler & Das notwithstanding.

-Pat


This e-mail and/or attachment is for the sole use of the intended recipient(s) and may contain confidential and/or legally privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message.

# EXHIBIT
# 17

1/24/2014 3:14:39 PM
Chris Daniel - District Clerk Harris County
Envelope No. 297225
By: ALEX CASARES

CAUSE NO. 2013-61995

| | | |
|---|---|---|
| R. HASSELL & CO, INC.; | § | IN THE DISTRICT COURT |
| R. HASSELL BUILDERS, INC.; | § | |
| R. HASSELL HOLDING CO., INC; | § | |
| G.R. GROUP RESOURCES, LLP | § | |
| | § | |
| PLAINTIFFS, | § | |
| | § | |
| VS. | § | 125TH JUDICIAL DISTRICT |
| | § | |
| HASSELL CONSTRUCTION CO., INC.; | § | |
| HASSELL MANAGEMENT | § | |
| SERVICES, LLC | § | |
| | § | |
| DEFENDANTS | § | HARRIS COUNTY, TEXAS |

**DEFENDANTS' REPLY TO PLAINTIFFS' RESPONSE REGARDING
PLAINTIFFS' MOTION TO SUBSTITUTE COUNSEL**

TO THE HONORABLE JUDGE OF SAID COURT:

Defendants Hassell Construction Co., Inc. and Hassell Management Services, LLC ("Defendants") file this reply to R. Hassell & Co, Inc., R. Hassell Builders, Inc., R. Hassell Holding Co., Inc., and G.R. Group Resources, LLP's ("Plaintiffs") response regarding Plaintiffs' motion to substitute Silvia Hassell as counsel for and on behalf of Plaintiffs, subject to and without waiving Defendants' motion to compel arbitration and abatement pending arbitration against Plaintiffs, and would respectfully show as follows.

**I.**

1.      Subject to and without waiving Defendants' motion to compel arbitration, Defendants do not object to the general proposition of Plaintiffs' request to substitute counsel in this matter; however, Defendants object to Ms. Silvia Hassell's role as counsel, witness and party in this litigation on behalf of Plaintiffs.

1

2.      It is undisputed that Ms. Silvia Hassel will and "can be expected to testify in the matter" and has personal knowledge of relevant facts in this case.  In their response, Plaintiffs have not disputed or denied that Ms. Hassell was personally involved in several aspects of the joint venture.  Plaintiffs have not disputed that Ms. Hassell was involved in the bid process and/or the process of securing projects contemplated by the joint venture.  Plaintiffs have not disputed that Ms. Hassell has personal knowledge of the  funding arrangements with Defendants on the joint venture projects which are the primary matters at issue in this case.  Plaintiffs admitted in their response that Plaintiffs are wholly owned by Ms. Hassell and her husband.

3.      Ms. Hassell's personal knowledge regarding the funding and appropriation of monies, among other things, are material to the allegations made by her and Plaintiffs in this lawsuit.  Without question, Ms. Hassell is a material witness necessary to establish essential facts of contested issues in this case.  When a lawyer is or may be a witness necessary to establish an essential fact, Texas Disciplinary Rule of Professional Conduct 3.08 ***prohibits*** the lawyer from acting as both an advocate and a witness in an adjudicatory proceeding.

## A.      Plaintiffs Have Not Shown Any Substantial or Undue Hardship

4.      Plaintiffs maintain that Ms. Hassell's disqualification or failure to substitute in as counsel will cause undue hardship on Plaintiffs under Rule 3.08 of the Texas Disciplinary Rules of Professional Conduct   Plaintiffs' claim is improper and without support.

5.      As a matter of law, Plaintiffs must provide evidence that they will suffer some substantial and undue hardship if Ms. Hassell is prevented from acting as counsel for Plaintiffs. *In re Guidry*, 316 S.W.3d 729, 740 (Tex.App.-Houston [14th Dist.] 2010, orig. proceeding). Plaintiffs have not provided any evidence whatsoever of any undue hardship, and even if such existed it would not override the principles of why Ms. Hassell cannot serve as both a witness

(advocate) and counsel.  In lieu of providing evidence, Plaintiffs maintain that it has "informed" Defendants of circumstances constituting a substantial hardship.

6.      Plaintiffs cannot avoid the spirit of Rule 3.08 by making blanket allegations without support of their purported hardship.  If Plaintiffs are claiming some financial hardship, Plaintiffs have not provided any financial statements, tax returns, or other financial information demonstrating same.      Moreover, Plaintiffs have failed to show how Ms. Hassell's disqualification and/or prohibition of acting as counsel for Plaintiffs would work a substantial hardship on the client because of the distinctive value of the lawyer... as counsel in the particular case." *Warrilow v. Norrell*, 791 S.W.2d 515, 520 (Tex.App.1989).  This "substantial hardship" exception generally contemplates an attorney who has some expertise in a specialized area of law such as patents, and the burden is on the attorney seeking to continue representation to prove distinctiveness.  *Id.* at 520. *See also Supreme Beef Processors, Inc. v. American Consumer Industries, Inc.*, 441 F.Supp. 1064, 1068–69 (N.D.Texas 1977).

7.      This case is a relatively straightforward civil case; neither the contested issues nor the factual background are particularly complex.  Further, Plaintiffs wholly failed to assert any "distinctiveness" regarding Ms. Hassell's representation of Plaintiffs as required by Texas law. *Warrilow,* 791 S.W.2d at 520.  Thus, a change in counsel will impose no hardship whatsoever upon Plaintiffs.

8.      Plaintiffs' reliance on *In re Bahn,* 13 S.W.3d 865, 872 (Tex.App.-Fort Worth 2000, orig. proceeding) is misplaced.  *Bahn* discusses whether notice of a substantial hardship was prompt.  In fact, in *Bahn,* the court held that  testimony of lead attorney as witness would go to an essential fact of collector's case and could cause confusion that would keep jury from fairly evaluating case on the merits, and thus, disqualification of attorney from the trial was warranted.

9.      Notwithstanding, there is no automatic hardship exception as alleged by Plaintiffs. Plaintiffs are required to provide evidence of substantial hardship and show "distinctiveness" of Ms. Hassell's expertise. *In re Guidry,* 316 S.W.3d 729, 740 (Tex.App.-Houston [14th Dist.] 2010, orig. proceeding; *Warrilow v. Norrell*, 791 S.W.2d 515, 520 (Tex.App.1989); S*ee also Supreme Beef Processors, Inc. v. American Consumer Industries, Inc.*, 441 F.Supp. 1064, 1068– 69 (N.D.Texas 1977).  Plaintiffs have failed to provide any evidence to support its conclusory claim that the undue hardship exception applies in this case.

10.      Serving as both an advocate and witness for Plaintiffs in this lawsuit creates confusion for the finder of fact and will unfairly prejudice Defendants in violation of both the professional rules (Rule 3.08 of the Tex. Disc. P. Rules of Prof'l Conduct) and Texas common law.  Confusion of the jury and any fact finder over whether Ms. Hassell's statements as advocate-witness should be taken as proof or as an analysis of the proof will absolutely prejudice Defendants under Rule 3.08.  Her dual role is exactly the kind of circumstance that the rules of professional conduct seek to prevent.

11.      Ms. Hassell should be prevented or disqualified from acting as an advocate before this pending adjudicatory proceeding when she knows or believes that she is or may be a witness necessary to establish essential facts on behalf of Plaintiffs.

**B.      Defendants Do Not Have Any Conflicts of Issue**

12.      Plaintiffs have written over 5 pages of their response discussing their unfounded assertions about a conflict of interest of Defendants.  Plaintiffs claim that there exists a conflict of interest with the law firm of Coats | Rose.  Coats | Rose is not a party to this litigation, is not an attorney of record to this litigation, and has not appeared on behalf of any party in this Court. Any claims of conflict of interest are moot and not applicable to Plaintiffs' motion.

Notwithstanding, there is no conflict of interest with Coats | Rose.  The attorney appearing on behalf of Defendants is Micky Das of Tyler & Das, and there is no conflict of interest with Micky Das.

13.    Plaintiffs are distracting the court with baseless allegations regarding a conflict of interest to avoid Rule 3.08 and Texas common law against Ms. Hassell's dual role as lawyer and witness which will unquestionably result in prejudice to Defendants.    Plaintiffs are manufacturing some purported conflict of interest that does not exist.

14.    The facts are undisputed.  **Ms. Hassell has admitted that she will be called to testify as a witness in this case.**  Her deposition will be taken by Defendants. Her testimony will go to the crux of Plaintiffs' claim as well as Defendants' defenses relating to the existence of the JVA, Plaintiffs' claims that Defendants appropriated joint venture income and work for themselves, Plaintiffs' claims that Defendants used funds to pay its overhead, Plaintiffs' breach of contract claim against Defendants and the parties' duties and obligations arising out of the JVA.  Her testimony will be based on personal knowledge.  Her testimony will cause confusion to the jury in light of the fact that it is coming from the Plaintiffs' trial counsel and that such confusion would keep the jury from fairly evaluating the case on the merits.

WHEREFORE, PREMISES CONSIDERED, Defendants Hassell Construction Co., Inc. and Hassell Management Services, LLC respectfully request that this Court deny Plaintiffs' Motion to Substitute Ms. Silvia Hassell as attorney for Plaintiffs, disqualify her from representation of Plaintiffs in this matter, and for such other and further relief, general and special, legal and equitable, to which Defendants may show themselves justly entitled.

Respectfully submitted,

TYLER & DAS

By: _____/s/ Micky Das_____
Micky N. Das, TBN: 05402300
Tyler & Das
Attorneys At Law
2000 Bering Dr., Suite 401
Houston, Texas 77057
(713) 739-1900
Fax: (713) 739-8347

**ATTORNEYS FOR DEFENDANTS
HASSELL CONSTRUCTION CO., INC. AND
HASSELL MANAGEMENT SERVICES, LLC**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been forwarded to the following by facsimile on the 24th day of January 2014:

_____/s/ Micky Das_____
Micky N. Das

6

# EXHIBIT 18

# COATS | ROSE

DAVID LYNCH
DIRECTOR

dlynch@coatsrose.com
Direct Dial
(713) 653-7300

July 17, 2014

**Via Email: sehassell@aol.com**
Silvia Hassell
Attorney At Law
12512 Cutten Road, Suite A
Houston, Texas 77066

Re:    Case No.:  01-14-0000-3178; *James C. Hassell, Hassell Construction Company, Inc. v. R. Hassell Holding Co., Inc., R. Hassell & Company, Inc., R. Hassell Builders, Inc. and G.R. Group Resources LLP, Royce J. Hassell, and Silvia T. Hassell,* Before the American Arbitration Association; *and*

Case No.:  01-14-0000-3294*; R. Hassell & Co., Inc., R. Hassell Holding Co., Inc., G.R. Group Resources, LLP v. Hassell Construction Company, Inc. Hassell Management Services, LLC.,* Before the American Arbitration Association.

Dear Ms. Hassell:

This letter is written in response to your correspondence dated July 16, 2014.   First, as you are aware, this law firm represents James C. Hassell, Hassell Construction Company, Inc. and Hassell Management Services, LLC in the above-referenced arbitration proceedings.  At no time has Coats Rose ever represented you, Royce Hassel or any "R. Hassell" entity, and at no time has Coats Rose ever represented any party in your dispute related to the "Springwoods Project".  As such, no duty is owed to you, Royce Hassell or the R. Hassell entities by Coats Rose, and we will not comply with any of your demands.

The misnomer in my previous correspondence dated May 21, 2013 notwithstanding, at no time did Royce Hassell or an "R. Hassell" entity consult with Mr. Gaas or Ms. Asselin.  I wrote the May 21st letter after you and Royce Hassell contacted Mr. Gaas, purporting to speak on behalf of Hassell Construction Company, Inc., stated that the R. Hassell entities and other entities with the Hassel name were essentially one in the same, and berated Mr. Gaas because of our engagement on behalf of Gall Construction in a lawsuit involving R. Hassell Builders., Inc.

Not long after my letter, we learned that you and Royce Hassell did not possess any authority to speak on behalf of Hassell Construction Company, that you and Royce Hassell were, at best, disingenuous, and that the two of you have had a history of trading off the goodwill and good name of Jim Hassell and Hassell Construction Company, be it with respect to prospective

COATS | ROSE | YALE | RYMAN | LEE
*A Professional Corporation*

3 East Greenway Plaza, Suite 2000   Houston, Texas  77046-0307
Phone: 713-651-0111   Fax: 713-651-0220
Web: www.coatsrose.com

July 17, 2014
Page 2

customers, trade creditors and even lawyers. Although your deceptions resulted in the establishment of a "Chinese Wall" with respect to the *Gall Construction* matter, it would soon become clear that such precautions should never have been established in the first instance, as the R. Hassell entities are and have always been an opposing party to our clients, and that in your dual capacity as a party and an advocate, you lack objectivity and the ability to adhere to common standards of fair and honest dealing.

Throughout your letter you make reference to the "Springwoods Project" and lawsuit. Presumably, you are referring to Cause No. 20124298; *Hassell Construction Co., Inc. v. Springwoods Realty, Co., et al.*; In the 333rd Judicial District Court of Harris County, Texas (hereafter "Springwoods Litigation"). Hassell Construction Co., Inc. is the Plaintiff and the only "Hassell" entity which is a party to that lawsuit.  None of the R. Hassell entities are parties to that litigation, nor are you counsel for any party in that litigation.   Moreover, as stated above, Coats Rose is not counsel for any party in the Springwoods Litigation.  As is indicated by the Harris County District Clerk's "active parties" list in this matter (attached) the parties and counsel involved in the Springwoods Litigation are as follows:  *Plaintiff, Hassell Construction Co., Inc. is represented by Pascal Piazza of Zukowski, Bresnhan, Sinex & Petry.*  Springwoods Realty Company, the defendant and third-party plaintiff, is represented by Timothy McDaniel of the McDaniel Holt law firm, defendant;  Harris County Improvement District #18 is represented by John Engvall of the Lopez Engvall law firm;  third party defendants Walter P. Moore and Walter P. Moore & Associates, Inc. are represented by Gregory Ziegler at MacDonald Devin and finally, third party defendant, Costello, Inc. is represented by John Cahill at Hays McConn.

Further,  contrary to your continuing misrepresentations, Rick L. Rose, a member of this law firm, serves as a director, on the Board of Directors, on the Harris County Improvement District # 18 ("District") in his capacity as a private citizen.   Coats Rose and Mr. Rose do not represent the District. Although Coats Rose is not involved in the *Springwoods Litigation*, after Mr. Rose became aware that Coats Rose represented Hassell Construction Company, Inc. in connection with disputes involving the R. Hassell entities, he recused himself from any further involvement in meetings or executive sessions held by the District's Board of Directors related to the *Springwoods Litigation.*   Mr. Rose also executed and filed a Local Government Officer Conflicts Disclosure Statement in accordance with Section 176.003 of the Texas Local Government Code.

Significantly,  you have acknowledged that both Hassell Construction Co., Inc. and Walter P. Moore have served ExxonMobil's counsel (not Coats Rose) with non-party discovery requests in the *Springwoods Litigation* and that "their attorneys" – again, not Coats Rose, have or will respond to same.   Mr. Piazza, Hassell Construction Co., Inc.'s counsel in that matter will receive ExxonMobil's responses and documents, if any, related to that document production. The fact that you are "out of the loop" in this process is consistent with the fact you do not represent any party and are not involved in that litigation.

Consistent with your past behavior, you now claim the existence of a "partnership" relationship between Hassell Construction Co., Inc. and the R. Hassell entities and are attempting to use it as both a sword and shield asserting everything from privileges to entitlement to information and to demand that Coats Rose withdraw in the referenced arbitrations based on same.   Using this same basis you have also demanded the immediate production of unspecified

July 17, 2014
Page 3

documents and information in the *Springwoods Litigation* which you suggest (without any basis for same) that Coats Rose "must possess" be turned over to you. You further suggest that Coats Rose should simply open its offices to you on the basis of the existence of a purported "partnership." No such partnership exists. However, even if a partnership did exist (which is denied), under your theory, partners could never sue one another and/or find representation against one another as that would pose a "conflict" for any firm that attempted to represent a partner. Needless to say, we disagree with your interpretation of conflicts.

Hassell Construction Co., Inc. and the R. Hassell entities are opposing parties and are litigating over numerous issues. In the due course of the arbitration process the arbitration panel will determine the scope of discovery in what we anticipate will be a consolidated arbitration proceeding related to the above-referenced arbitration matters. Claimants/counter-defendants, James Hassell, Hassell Construction Co., Inc. and Hassell Management Co., will timely and properly respond to discovery as permitted by the arbitrators.

You have persisted in making false and defamatory statements verbally and in writing regarding this law firm. You have also made numerous claims of alleged ethical violations which are unseemly, baseless and totally devoid of merit. You have contacted our firm in your capacity as an attorney (per your letterhead) but with regard to a matter to which you have no standing, and in which we have no involvement. You have made broad and overreaching demands for actions to which neither you nor your purported clients have any entitlement. In the future, we will only acknowledge the receipt of correspondence related to requests for documents and information as permitted by the arbitrators. Do not contact our firm with any further correspondence of this nature again.

Sincerely yours,

David S. Lynch

DSL:pb

Office of Harris County District Clerk - Chris Daniel

Page 1 of 1

**HCDistrictclerk.com**      HASSELL CONSTRUCTION CO INC vs.         7/16/2014
                             SPRINGWOODS REALTY COMPANY
                             Cause: 201242981      CDI: 7      Court: 333

## ACTIVE PARTIES

| Name | Type | Post Jdgm | Attorney |
|------|------|-----------|----------|
| HASSELL CONSTRUCTION CO INC | PLAINTIFF - CIVIL | | PIAZZA, PASCAL PAUL |
| SPRINGWOODS REALTY COMPANY | DEFENDANT - CIVIL | | MCDANIEL, TIMOTHY M |
| SPRINGWOODS REALTY COMPANY | THIRD PARTY PLAINTIFF | | HOILT, EILEEN MIGGINS |
| HARRIS COUNTY IMPROVEMENT DISTRICT #18 | DEFENDANT - CIVIL | | WISE, WARREN BROWNING |
| HARRIS COUNTY IMPROVEMENT DISTRICT #18 | THIRD PARTY PLAINTIFF | | ENGVALL, JOHN LOGAN JR |
| SPRINGWOODS REALTY COMPANY (TEXAS CORPORATION) MAY BE SERVED BY | REGISTERED AGENT | | |
| HARRIS COUNTY IMPROVEMENT DISTRICT #18 MAY BE SERVED BY THE HARRIS | REGISTERED AGENT | | |
| DUCKERS, SARAH ANN | MEDIATOR | | |
| WALTER P MOORE & ASSOCIATES INC (DBA WALTER P MOORE) | THIRD PARTY DEFENDANT | | |
| WALTER P MOORE & ASSOCIATES INC (DBA WALTER P MOORE) | THIRD PARTY DEFENDANT | | |
| WALTER P MOORE & ASSOCIATES INC (DBA WALTER P MOORE) | THIRD PARTY PLAINTIFF | | ZIEGLER, GREGORY N |
| MOORE, WALTER P | THIRD PARTY DEFENDANT | | ZIEGLER, GREGORY N |
| MOORE, WALTER P | THIRD PARTY DEFENDANT | | |
| MOORE, WALTER P | THIRD PARTY PLAINTIFF | | ZIEGLER, GREGORY N |
| WALTER P MOORE & ASSOCIATES INC (DBA WALTER P MOORE) BY SERVING ITS | REGISTERED AGENT | | |
| COSTELLO INC | THIRD PARTY DEFENDANT | | CAHILL, JOHN P JR |
| COSTELLO INC (TEXAS CORPORATION) BY SERVING ITS REGISTERED AGENT | REGISTERED AGENT | | |

## INACTIVE PARTIES

No inactive parties found.

# EXHIBIT
# 19

8/3/2017 1:55:27 PM
Chris Daniel - District Clerk
Harris County
Envelope No: 18621516
By: SIMON, FARRAH H
Filed: 8/3/2017 1:55:27 PM

Pgs-1

LD3PX

CAUSE NO. 2017-00535

| | | |
|---|---|---|
| HASSELL CONSTRUCTION COMPANY, INC., | § | IN THE DISTRICT COURT OF |
| *Plaintiff*, | § | |
| | § | |
| V. | § | HARRIS COUNTY, TEXAS |
| | § | |
| PASCAL PIAZZA; ZUKOWSKI, | § | |
| BRESENHAN & PIAZZA, L.L.P.; | § | |
| and SILVIA HASSELL, | § | |
| *Defendants*. | § | 152ND JUDICIAL DISTRICT |

**ORDER GRANTING MOTION FOR LEAVE TO DESIGNATE RESPONSIBLE THIRD-PARTY**

On this day, the Court considered Defendants Pascal Piazza and Zukowski, Bresenhan &

Piazza, LLP's this Motion for Leave to Designate Responsible Third Party ("Motion"). After

considering the Motion, the arguments of counsel, the pleadings and evidence on file, if any, the

Court is of the opinion that the Motion should be GRANTED. It is therefore,

ORDERED that Bogdan Rentea and the law firm of Rentea & Associates are hereby

designated as responsible third-parties.

SIGNED THIS _____ DAY OF _____, 2017.

Signed:
8/18/2017        *Robert K Schaffer*

_____
JUDGE PRESIDING

# EXHIBIT
# 20



**12211 DUNCAN ROAD**
**HOUSTON, TEXAS 77066**
**PH. 281 893-2570    Fax 281 580-9170**
*Established 1976*

March 26, 2013

Mr. Pascal Piazza
Zukowski Bresenhan, Sinex & Petry, L.L.P.
1177 West Loop South, Suite 1100
Houston, Texas 77027

Dear Pascal:

Hassell Construction Company, Inc. hired the law firm of Coats, Rose, Yale, Ryman Lee to assist in assessing and proceeding in its relationship with Royce Hassell and R. Hassell and Company, Inc. and R. Hassell Builders. This consultation was made both as a family and on behalf of Hassell Construction and the R. Hassell Companies because these are companies owned by members of the same family, we were jointly working on several large projects, and it was our desire for a positive outcome for all involved. During that consultation we provided the law firm with confidential information regarding the relationships of Hassell Construction Company, the R. Hassell Companies, Royce Hassell, Jim Hassell and the Hassell family.

Now Coats, Rose is representing Gall and Hassell's current bonding company, Safeco/Liberty Mutual, against R. Hassell. Safeco/Liberty Mutual has bonded and currently bonds joint projects of Hassell Construction Company and the R. Hassell Companies. We want to make sure all the confidential information we shared with Coats, Rose in the process of our consultation remains privileged and confidential from both Gall and our current bonding company. We do not see how it is possible for Coats Rose to represent these parties against us when we have confided in them in the process of getting their advice and they represent our bonding company.

We think Coats Rose has a conflict and should withdraw from representing these parties against us.

Very truly yours,

J. Phillip Hassell
Hassell Construction Company, Inc.

Royce J. Hassell
R. Hassell Builders, Inc.

# EXHIBIT
# 21



# COATS | ROSE

*A Professional Corporation*

### FACSIMILE TRANSMITTAL PAGE

**Date:**   May 21, 2013

**To:**   Pascal Piazza      **Fax Number:**   713-963-9169

**From:**  David S. Lynch      **Phone:**   713-653-7300

**No. of Pages (including cover page):**   *9*

**Client/Matter #:**   1.82540

**Message:**   Please see attached.

---

If this FAX transmission is illegible or you do not receive all pages,
please call the sender at the number above.

### IF YOU WISH TO RESPOND, USE FAX NO. (713) 651-0220

The information contained in this FAX is confidential and/or privileged.  This FAX is intended to be reviewed initially by only the individual(s) named above.  If the reader of this TRANSMITTAL PAGE is not the intended recipient or a representative of the intended recipient, you are hereby notified that any review, dissemination or copying of this FAX or the information contained herein is prohibited. If you have received this FAX in error, please immediately notify the sender by telephone and return this FAX to the sender at the above address.  Thank you.

4851-9191-0674, v. 1

3 East Greenway Plaza, Suite 2000   Houston, Texas  77046-0307
Phone: 713-651-0111   Fax: 713-651-0220
Web: www.coatsrose.com

HOUSTON | CLEAR LAKE | AUSTIN | DALLAS | SAN ANTONIO | NEW ORLEANS

# COATS | ROSE

*A Professional Corporation*

DAVID S. LYNCH

dlynch@coatsrose.com
Direct Dial
(713) 653-7300
Direct Fax
(713) 890-3935

May 21, 2013

**Via Facsimile: 713-963-9169**
**Certified Mail – Return Receipt Requested**
Mr. Pascal Piazza
Zukowski, Bresenhan, Sinex & Petry, L.L.P.
1177 West Loop South, Suite 1100
Houston, Texas 77027

Re:     Hassell Builders, LLC

Dear Mr. Piazza:

On behalf of Hassell Builders, LLC, you have advised our firm that R. Hassell Builders, Inc. believes that a conflict of interest existed with respect to our firm's representation of Gall Construction of America Limited. in the following matters arising out of a construction contract between R. Hassell Builders, Inc. and Gall Construction of America Limited concerning construction of the Bellaire Town Square Family Aquatic Center:

*Gall Construction of America, Limited v. R. Hassell Builders, Inc.*, Cause Number 2011-70117, in the 295th Judicial District Court of Harris County, Texas; and

*In the Matter of the Arbitration Between Gall Construction of America Limited vs. R. Hassell Builders, Inc.*, Case Number 50 110 T 00188 1, in the American Arbitration Association.

R. Hassell Construction, Inc. consulted with Pat Gaas and Heather Asselin of our firm in January of 2012. It is my understanding that an initial interview took place between representatives of R. Hassell Construction, Inc. and Mr. Gaas and Ms. Asselin, and that subsequent attempts were made by them to obtain documentation and information to enable them to provide advice to R. Hassell Construction, Inc. However, it is also my understanding that the documentation and information was never provided. As such, the retainer provided was not cashed, and our firm did not execute the engagement letter. I am returning the retainer check and attaching a copy of the engagement letter. As a result, no attorney client relationship was established between R. Hassell Construction, Inc. and our firm.

May 21, 2013
Page 2

I would also note that the engagement letter states that the matters upon which R. Hassell Construction, Inc. was potentially seeking legal advice were as follows:

> [E]valuation of various secured transactions and potential defensive strategies related to transactions or matters involving R. Hassell Builders, R. Hassell companies and Royce and Sylvia Hassell.

A review of the two matters indicates that they are not substantially similar. As such, a conflict does not exist which would necessitate our withdrawing from the representation of Gail Construction Limited in the construction contract litigation. See Tex. R. Pro. Conduct 1.06.

You have advised that Hassell Builders, Inc. communicated confidential information to Mr. Gaas and Ms. Asselin; however, you have not articulated the exact information other than in generalities. It appears that the concern of Hassell Builders, Inc. is that somehow this information might be communicated to third parties. In light of this concern, and out of the principal of comity, the firm has taken the following steps to ensure that information that might be in the possession of Mr. Gaas or Ms. Asselin not be communicated to any person working on the construction contract litigation:

> Access to the materials retained by Mr. Gaas and Ms. Asselin, although limited, will be restricted to any person other than Mr. Gaas and Ms. Asselin;

> Access to the file maintained regarding the construction contract litigation will be restricted to those persons involved in that case;

> Mr. Gaas and Ms. Asselin will be restricted from any access to the file relating the construction contract litigation;

> Mr. Gaas and Ms. Asselin will be instructed not to discuss the construction contract litigation or any matters relating to Hassel Construction, Inc. or Hassell Builders, Inc. with any person involved in the construction contract litigation; and

> All persons involved in the construction contract litigation will be instructed to refrain from discussing that matter and will be instruction to refrain from discussing R. Hassel Builders, Inc. or R. Hassell Construction, Inc. with Mr. Gaas and Ms. Asselin.

In the event that you or R. Hassell Builders, Inc. believes that a conflict of interest actually exists in this matter, we would request that you advise me in writing of the full particulars of that claim so that any new information can be evaluated.

Should you have any questions or comments please do not hesitate to contact me.

Sincerely yours,

David S. Lynch

THE FACE OF THIS DOCUMENT HAS A COLORED BACKGROUND ON WHITE PAPER

**HASSELL CONSTRUCTION CO., INC.**
12211 DUNCAN ROAD
HOUSTON, TX 77066
(281) 893-2570

VISTA BANK TEXAS
HOUSTON, TX 77040
88-378/1131

60984

CHECK NO.

60984

DATE 2/27/2012    AMOUNT ***********2,500.00

THE SUM OF TWO THOUSAND FIVE HUNDRED DOLLARS AND NO CENTS ***************************

PAY
TO THE
ORDER
OF

Coats Rose Yale Ryman & Lee PC
3 East Greenway Plaza
Suite 2000
Houston, TX 77046-0307

SECURITY FEATURES INCLUDED. DETAILS ON BACK.

**HASSELL CONSTRUCTION CO., INC.**

60984

Coats Rose Yale Ryman & Lee PC
3 East Greenway Plaza
Suite 2000
Houston, TX 77046-0307

Check: 60984
Date: 2/27/2012
Vendor: 2956

| Invoice | P.O. Num. | Invoice Amt | Prior Balance | Retention | Discount | Amt Paid |
|---|---|---|---|---|---|---|
| 2/2012 Retainer for Services | | 2,500.00 | 2,500.00 | 0.00 | 0.00 | 2,500.00 |
| | | 2,500.00 | 2,500.00 | 0.00 | 0.00 | 2,500.00 |

# AGREEMENT FOR HOURLY FEE REPRESENTATION
## BY COATS, ROSE, YALE, RYMAN AND LEE, P.C.
## WITH MANDATORY ARBITRATION

The purpose of this agreement, when executed by both of us as indicated below, will constitute a formal contract between you, Hassel Construction Company, Inc. (variously referred to as "client," "you" or "your"), and us; this agreement will help ensure that we both understand the scope of work to be performed and the duties and responsibility of each of us.

1.     The specific matter or matters you desire us to address is evaluation of various secured transactions and potential defensive strategies related to transactions or matters involving R Hassell Builders, R Hassell Company and Royce and Sylvia Hassell.

2.     It is envisioned that various attorneys in our firm may provide services in connection with this engagement.

3.     In consideration of services to be performed, you agree to pay on an hourly basis for the services rendered by us, and in some cases, our staff. Our fees are based upon the time expended at the following hourly rates, currently as follows:

| | |
|---|---|
| Principals: | $300-600 per hour |
| Associates: | $150-295 per hour |
| Paralegals: | $ 75- 95 per hour |
| Other Staff: | $ 35- 50 per hour, when applicable |

4.     You agree to pay itemized expenses and costs, including the following: photocopying, postage, local telephone calls, telecopy charges, and routine courier fees. For other than these nominal expenses (travel, third party expenses, etc.), we will obtain your advance approval first, unless circumstances prevent us from doing so without prejudice to your legal rights.

5.     Additionally, you will also billed for Westlaw charges, if that services is used on your behalf during the pendency of this matter. Coats | Rose has a flat fee subscription to Westlaw, which includes many but not all of the frequently used legal research databases. Each month the firm is billed at Westlaw's standard rate for charges that are outside of its subscription. Those standard rate charges are passed on to you, if they are incurred on your behalf. Charges for the use of databases which are included in the Westlaw package are charged or coded as a "special pricing charge." This charge is calculated on a pro-rata basis based on the contract rate between Coats | Rose and Westlaw and is lower than Westlaw's standard rate. Research performed in databases that are within Coats | Rose's package with Westlaw will be charged to you at the discounted rate on a pro rata basis. You will only be charged when Westlaw research is actually performed on your behalf and for the time spent and databases used.

6.     Fees or expenses which have been billed and outstanding for more than 30 days, all outstanding balances will begin to accrue interest at a per annum rate of 12%. We cannot state for certain the total amount of fees and expenses which will accrue in this matter.

7.     When provided, our periodic (twice-monthly or monthly) statements describe the work accomplished during the prior billing period. Our invoices include a detailed account of all non-nominal expenses incurred. You agree to pay our statements in full, on receipt, unless otherwise waived or modified in writing between us. Your payment of fees and expenses is not contingent upon the results obtained in the final disposition of the matter for which we have been engaged.

8.     To secure payment of the fees and costs incurred on behalf of the Client, the Firm requests payment of an initial retainer of Two Thousand, Five Hundred Dollars and No/100 Dollars ($2,500.00) at the time this agreement is executed ("Retainer"). This amount shall remain in trust to be billed against the final invoice. If the engagement terminates while a positive balance remains in the Retainer account, such balance shall be remitted to the Client. If the balance of the Retainer is insufficient to cover the outstanding invoices, the Client shall remain responsible for the balance owed on such invoices after any draw against the Retainer.

9.     If the funds you deposit under the preceding paragraph become depleted, we will not be required to perform any additional services on your behalf and we may, at our option, immediately withdraw from our representation of you (or as soon as possible without causing undue prejudice to you). The balance of the funds you keep on deposit with us must always be equal to or greater than the amount we agree on at the commencement of our engagement.

10.     **Arbitration and waiver of trial by jury.** We do not anticipate a dispute over our representation or related fees and expenses. However, if a dispute should arise, all claims, disputes, controversies, differences or other matters in question arising out of our relationship to each other in the matters stated in the first numbered paragraph of this Agreement (the claims) and all other matters on which we and any of our attorneys and other employees have ever provided any type of legal services at any time, now or in the future, whether or not those matters are encompassed within the first numbered paragraph of this document—(including, but not limited to compensation for services rendered by the Firm) shall be settled finally, completely and conclusively by arbitration, and not by trial by jury, in Houston, Harris County, Texas, in accordance with the Federal Arbitration Act and the Rules of the American Arbitration Association (the "Rules"), by one arbitrator chosen in accordance with the Rules. Arbitration shall be initiated by written demand and the party seeking arbitration. This Agreement to arbitrate shall be specifically enforceable only in the District Court of Harris County, Texas. Both parties expressly agree that by agreeing to arbitrate, they will not submit any dispute they may have to a lawsuit or trial by jury. A decision of the arbitrator shall be final, conclusive and binding on the Firm and you, and judgment may be entered thereon in the District Court of Harris County, Texas, to enforce such decision and the benefits thereof. If Counsel is required to seek the enforcement of this agreement or this particular paragraph, Counsel shall be entitled to recover its reasonable and necessary attorneys' fees and costs from Client.

11.     No claim (whether in contract, tort or otherwise) shall be brought by either party to this agreement, against any other party to this agreement (including all employees of Coats, Rose, Yale, Ryman & Lee P.C.) more than 25 months after such claim shall have accrued.

12.     You may terminate our representation of you at any time for any reason or no reason at all. If you notify us in writing of your desire to terminate our services, we will stop

work immediately (or as you may instruct), and you will be responsible for paying us only for services already performed until the time the termination is effective.

13.    You agree that we may withdraw from representing you in the matters governed by this Agreement if at anytime you fail to timely pay for services rendered and/or expenses incurred and/or advanced, or for any reason authorized by the Texas Disciplinary Rules of Professional Responsibility. In the event of withdrawal from employment, the Firm will take reasonable steps to avoid foreseeable prejudice to your rights, including giving due notice, allowing time for employment of other counsel, delivering to you all papers and property to which you are entitled, and complying with applicable laws.

14.    You acknowledge that we cannot and do not guarantee the outcome of any litigation, business transaction or negotiated settlement.

15.    This Agreement embodies the only agreement between us and there are no other oral or written contemporaneous agreements that modify, diminish, or expand the terms and conditions contained within this document. This Agreement is governed by Texas law. This agreement may be supplemented or modified only if done in writing and only if such writing is signed by both of us.

16.    Our receipt of your signed copy of this Agreement with the above stated fee deposit, followed by our signing of it, will be the date our relationship becomes effective.

ACCEPTED and AGREED to this 2Y day of FEBRUARY, 2012.

CLIENT:
HASSELL CONSTRUCTION COMPANY, INC.

By: _____
Its: PRESIDENT
Date: 2-24-2012

COUNSEL:
COATS, ROSE, YALE, RYMAN & LEE, P.C.

By: _____
Its: _____
Date: _____

# Client Information Sheet
*Attachment to Fee Agreement*

Name  James P. HASSEN

████████████ / ████████████

Texas Driver's License Number / Social Security Number

_____ / _____

Home Street Address                Business Street Address

25106 HUFSMITH (Cemetery Rd)    12215 DUNCAN

Tomball TX 77375   /   Houston, TX 77066

(City, State & Zip)                (City, State & Zip)

Home Phone: (221) 357-5965 / Office Phone: (201) 893-2570

Personal Mobile Phone: (713) 882-9933

Personal Page: ( )_____

Personal Fax: ( )_____

Personal Email Address: (1)_____

          (2)_____

          (3)_____

BUSINESS E-MAIL
JPHASSELL@HASSEL
CONSTRUCTION.COM

(Signature)

2-24-2012

(Date)

## IMPORTANT MEMO CONCERNING E-MAIL

Internet E-mail transmissions, although protected by law, can be intercepted by technically sophisticated third parties. Although E-mail can be encrypted, (provided we both use the same software for that purpose), there are no guarantees of security even then. We are therefore offering various options regarding the use of E-mail communication. Please select the options you choose from the following:

[Initial One]

[      ] 1. Do not communicate with me via E-mail.

[      ] 2. Send only non-sensitive matters via E-mail.

[  X  ] 3. You may communicate with me regarding any matters via E-mail.

Please sign here: By:

Title: PRESIDENT

Name of Company: HASSELL CONSTRUCTION CO., INC.

Date signed: 2-24-2012

# EXHIBIT
# 22



**12211 DUNCAN ROAD**
**HOUSTON, TEXAS 77066**
**PH. 281-893-2570**
**FAX 281-580-9170**
*est. 1976*

September 17, 2013

RRR No. 70082810000135472271 &

BY TELECOPIER  713-963-9169

Re: Letter of Conflict

Dear Pascal,

I am writing to inform you that I am rescinding my signature on the letter dated March 26, 2013, concerning the engagement of Coats|Rose.  I was influenced by Royce Hassell to sign that letter, and as part of an effort at family reconciliation, I did so.  However, regrettably the letter presented to me by Royce contains or implies facts that are not true.  When we consulted Coats|Rose, we sought advice only on behalf of Hassell Construction Company, Inc., and not for Royce or any of his companies.  We didn't even have knowledge of the matter referenced in the letter, and clearly did not and could not have imparted confidential information to Coats|Rose concerning the matter.  There is not now, nor has there ever been a conflict regarding our engagement with Coats|Rose, and it should not have been suggested to them otherwise.  Please be clear on our position – we have no objection to Coats|Rose's continued participation in whatever matter they are involved in with regards to R. Hassell.  Please also note that that we do not consent to the use of that letter for any purpose.  If required to do so, we will furnish testimony or affidavits about the letter consistent with this communication.

Also, be advised that until otherwise notified, Coats|Rose is our counsel in all matters concerning our relationship with Royce Hassell or his companies; therefore, should you need to communicate with us regarding that relationship, please do so through Patrick Gaas at Coats|Rose.

One more thing – we did not authorize the receipt of the previous engagement agreement and retainer check from Coats|Rose.  It was never disclosed to us that you had received the check.  Please return both items to me, they can be sent to Mr. Gaas.


Sincerely,

Hassell Construction Company, Inc.

James P. Hassell

President

# EXHIBIT
# 23

## AGREEMENT FOR HOURLY FEE REPRESENTATION BY COATS, ROSE, YALE, RYMAN AND LEE, P.C. WITH MANDATORY ARBITRATION

The purpose of this agreement, when executed by both of us as indicated below, will constitute a formal contract between you, Hassel Construction Company, Inc. (variously referred to as "client," "you" or "your"), and us; this agreement will help ensure that we both understand the scope of work to be performed and the duties and responsibility of each of us.

1.     The specific matter or matters you desire us to address is evaluation of various secured transactions and potential defensive strategies related to transactions or matters involving R Hassell Builders, R Hassell Company and Royce and Sylvia Hassell.

2.     It is envisioned that various attorneys in our firm may provide services in connection with this engagement.

3.     In consideration of services to be performed, you agree to pay on an hourly basis for the services rendered by us, and in some cases, our staff. Our fees are based upon the time expended at the following hourly rates, currently as follows:

| | |
|---|---|
| Principals: | $300-600 per hour |
| Associates: | $150-295 per hour |
| Paralegals: | $ 75- 95 per hour |
| Other Staff: | $ 35- 50 per hour, when applicable |

4.     You agree to pay itemized expenses and costs, including the following: photocopying, postage, local telephone calls, telecopy charges, and routine courier fees. For other than these nominal expenses (travel, third party expenses, etc.), we will obtain your advance approval first, unless circumstances prevent us from doing so without prejudice to your legal rights.

5.     Additionally, you will also billed for Westlaw charges, if that services is used on your behalf during the pendency of this matter. Coats | Rose has a flat fee subscription to Westlaw, which includes many but not all of the frequently used legal research databases. Each month the firm is billed at Westlaw's standard rate for charges that are outside of its subscription. Those standard rate charges are passed on to you, if they are incurred on your behalf. Charges for the use of databases which are included in the Westlaw package are charged or coded as a "special pricing charge." This charge is calculated on a pro-rata basis based on the contract rate between Coats | Rose and Westlaw and is lower than Westlaw's standard rate. Research performed in databases that are within Coats | Rose's package with Westlaw will be charged to you at the discounted rate on a pro rata basis. You will only be charged when Westlaw research is actually performed on your behalf and for the time spent and databases used.

6.     Fees or expenses which have been billed and outstanding for more than 30 days, all outstanding balances will begin to accrue interest at a per annum rate of 12%. We cannot state for certain the total amount of fees and expenses which will accrue in this matter.

1688174.1/000001.000387

7.      When provided, our periodic (twice-monthly or monthly) statements describe the work accomplished during the prior billing period. Our invoices include a detailed account of all non-nominal expenses incurred. You agree to pay our statements in full, on receipt, unless otherwise waived or modified in writing between us. Your payment of fees and expenses is not contingent upon the results obtained in the final disposition of the matter for which we have been engaged.

8.      To secure payment of the fees and costs incurred on behalf of the Client, the Firm requests payment of an initial retainer of Two Thousand, Five Hundred Dollars and No/100 Dollars ($2,500.00) at the time this agreement is executed ("Retainer"). This amount shall remain in trust to be billed against the final invoice. If the engagement terminates while a positive balance remains in the Retainer account, such balance shall be remitted to the Client. If the balance of the Retainer is insufficient to cover the outstanding invoices, the Client shall remain responsible for the balance owed on such invoices after any draw against the Retainer.

9.      If the funds you deposit under the preceding paragraph become depleted, we will not be required to perform any additional services on your behalf and we may, at our option, immediately withdraw from our representation of you (or as soon as possible without causing undue prejudice to you). The balance of the funds you keep on deposit with us must always be equal to or greater than the amount we agree on at the commencement of our engagement.

10.     **Arbitration and waiver of trial by jury.** We do not anticipate a dispute over our representation or related fees and expenses. However, if a dispute should arise, all claims, disputes, controversies, differences or other matters in question arising out of our relationship to each other in the matters stated in the first numbered paragraph of this Agreement (the claims) and all other matters on which we and any of our attorneys and other employees have ever provided any type of legal services at any time, now or in the future, whether or not those matters are encompassed within the first numbered paragraph of this document—(including, but not limited to compensation for services rendered by the Firm) shall be settled finally, completely and conclusively by arbitration, and not by trial by jury, in Houston, Harris County, Texas, in accordance with the Federal Arbitration Act and the Rules of the American Arbitration Association (the "Rules"), by one arbitrator chosen in accordance with the Rules. Arbitration shall be initiated by written demand and the party seeking arbitration. This Agreement to arbitrate shall be specifically enforceable only in the District Court of Harris County, Texas. Both parties expressly agree that by agreeing to arbitrate, they will not submit any dispute they may have to a lawsuit or trial by jury. A decision of the arbitrator shall be final, conclusive and binding on the Firm and you, and judgment may be entered thereon in the District Court of Harris County, Texas, to enforce such decision and the benefits thereof. If Counsel is required to seek the enforcement of this agreement or this particular paragraph, Counsel shall be entitled to recover its reasonable and necessary attorneys' fees and costs from Client.

11.     No claim (whether in contract, tort or otherwise) shall be brought by either party to this agreement, against any other party to this agreement (including all employees of Coats, Rose, Yale, Ryman & Lee P.C.) more than 25 months after such claim shall have accrued.

12.     You may terminate our representation of you at any time for any reason or no reason at all. If you notify us in writing of your desire to terminate our services, we will stop

work immediately (or as you may instruct), and you will be responsible for paying us only for services already performed until the time the termination is effective.

13.     You agree that we may withdraw from representing you in the matters governed by this Agreement if at anytime you fail to timely pay for services rendered and/or expenses incurred and/or advanced, or for any reason authorized by the Texas Disciplinary Rules of Professional Responsibility. In the event of withdrawal from employment, the Firm will take reasonable steps to avoid foreseeable prejudice to your rights, including giving due notice, allowing time for employment of other counsel, delivering to you all papers and property to which you are entitled, and complying with applicable laws.

14.     You acknowledge that we cannot and do not guarantee the outcome of any litigation, business transaction or negotiated settlement.

15.     This Agreement embodies the only agreement between us and there are no other oral or written contemporaneous agreements that modify, diminish, or expand the terms and conditions contained within this document. This Agreement is governed by Texas law. This agreement may be supplemented or modified only if done in writing and only if such writing is signed by both of us.

16.     Our receipt of your signed copy of this Agreement with the above stated fee deposit, followed by our signing of it, will be the date our relationship becomes effective.

ACCEPTED and AGREED to this **24** day of **FEBRUARY**, 2012.

CLIENT:                                                    COUNSEL:
HASSELL CONSTRUCTION COMPANY, INC.                         COATS, ROSE, YALE, RYMAN & LEE, P.C.

By: _____                               By: _____
Its: PRESIDENT                                             Its: _____
Date: 2-24-2012                                            Date: _____

1688174.1/000001.000387

# Client Information Sheet
### *Attachment to Fee Agreement*

Name    *James P Hassell*

_____ / _____
Texas Driver's License Number          Social Security Number

_____ / _____

Home Street Address                Business Street Address

25106 HUFSMITH Cemetery Rd        12215 DUNCAN

Tomball TX 77375              Houston, TX 77066

(City, State & Zip)                (City, State & Zip)

Home Phone: (221) 357-5965 / Office Phone: (201) 893-2570

Personal Mobile Phone: (713) 882-9933

Personal Page: ( ) 7_____

Personal Fax: ( )_____

Personal Email Address: (1)_____      BUSINESS E-MAIL
                        (2)_____      JPHASSELL @ HASSEL
                        (3)_____      CONSTRUCTION.COM

_____
(Signature)

2-24-2012
(Date)

**IMPORTANT MEMO CONCERNING E-MAIL**

Internet E-mail transmissions, although protected by law, can be intercepted by technically sophisticated third parties. Although E-mail can be encrypted, (provided we both use the same software for that purpose), there are no guarantees of security even then. We are therefore offering various options regarding the use of E-mail communication. Please select the options you choose from the following:

[Initial One]

[    ] 1. Do not communicate with me via E-mail.

[    ] 2. Send only non-sensitive matters via E-mail.

[ X ] 3. You may communicate with me regarding any matters via E-mail.

Please sign here: By:

Title: PRESIDENT

Name of Company: HASSELL CONSTRUCTION Co., INC.

Date signed: 2-24-2012