# EXHIBIT "A"

## CONSTRUCTION JOINT VENTURE AGREEMENT

**T H I S   A G R E E M E N T** is made this First day of July, 2012, by and between Hassell Construction Co, Inc. and R. Hassell Holding Company et. al whose principal business addresses are in Houston, Texas, are collectively, "the Joint Venturers" and by this agreement mutually agree to engage in, undertake and carry on, as Joint Venturers, certain public and/or private sector construction projects and any profits derived from and any liability for losses arising out of the performance, be defined by an agreement in writing:

THEREFORE, It is agreed as follows:

1.  FORMATION OF JOINT VENTURE
    a.  The joint venturers hereby constitute themselves as joint venturers for the purpose of performing and completing the certain public and/or private sector construction projects consummating the understanding and agreement that both Venturers have different skills and expertise in differing areas of construction and in order to expand into new markets heretofore untouched, combine their efforts as Venturers. From time to time upon written consent of all joint venturers, joint venturers may include new projects to their joint venture including any upcoming projects, ongoing projects or any others that may apply.

2   DURATION AND TERMINATION
    a.  This agreement shall remain in full force and effect until all the purposes for which this Venture has been undertaken have been accomplished and completed or until both parties mutually agree to its termination and dissolution, whichever comes first.

3.  PLACE OF BUSINESS
    a.  The principal place of business of the joint venture shall be at a designated place or at such other place as may from time to time be agreed upon by the Joint Venturers.

4.  INTERESTS OF THE JOINT VENTURERS
    a.  The interest of the Joint Venturers in and to the Construction Contract, and in and to any and all property and equipment acquired in connection with the performance thereof and in and to any and all monies which may be derived from the performance thereof and the obligations and Construction Contract and with respect to any and all liabilities and losses in connection therewith shall be to their contribution regardless of the contractual party to the Construction Contract (either individually as Hassell Construction Co., Inc. or R. Hassell, or jointly as Hassell Construction/R. Hassell JV).

5.  CONTRIBUTIONS AND DIVISION OF PROFITS
    a.  The interest of the parties in and to any profits and assets derived from the performance of the Construction Contract, and in and to any property acquired by the joint venture in connection with the work to be performed under this instrument, and in and to all contributions required, all moneys received, and losses incurred in the performance of the Construction Contract shall be those percentages set opposite their respective names as follows:

| Name | Percentage |
|------|-----------|
| Hassell Construction Co., Inc. | 75% |

R. Hassell Holding Co., Inc. et. al          25%
R. Hassell & Co. Inc.
R. Hassell Builders, Inc.
G.R. Group Resources LLP.

6.  INDEMNITY AGREEMENTS; SURETY BONDS; INSURANCE

    a.  Each of the parties agrees to execute all applications and indemnity agreements required by the sureties on any bond or bonds required in connection with the bids and Construction Contracts executed either jointly or individually as part of this agreement. All financial obligations assumed by the parties, or any of them, in connection with the performance of the Construction Contracts under this agreement, all liabilities assumed by or charged to them, or any of them, as contractors, guarantors, or indemnitors, in connection with any surety bond or other bonds which may be given or executed in connection with the Construction Contracts of the Venturers, either jointly or individually, and all other obligations and liabilities of any kind or character which are assumed or undertaken by the parties, or any of them, in connection with and for the benefit of the performance of the Construction Contracts under this agreement shall be shared by the parties proportionately and in accordance with their respective interest as set forth in Article (5). All insurance for the Joint Venture will be provided for by Hassell Construction Co., Inc. including but not limited to : General Liability, Workers Compensation, Excess Coverage (umbrella), Auto, Equipment and Property, Builder's Risk and any other that may be necessary for all projects either jointly or individually in the above Venturers corporate names, both currently under contract and any and all future contracts.

7.  AUTHORIZED REPRESENTATIVES

    a.  To facilitate the handling of all matters and questions in connection with the performance of the Construction Contract, each of the Joint Venturers appoints the following representatives to act for it in all such matters, with full and complete authority to act on its behalf in relation to any matters or things in connection with, arising out of, or relative to the Joint Venture and in relation to any matters or things involving the performance of the Construction Contract.

Authorized Representatives of

Hassell:

Phillip Hassell

Authorized Representative of R.

Hassell: Royce Hassell

    b.  Either Joint Venturer may at any time and from time to time change its representative by filing with the other a notice and duly executed appointment of a new representative or alternate, but until the appointment and filing of such notice the actions of the representative or alternate hereby appointed shall be conclusively binding on such Joint Venturer.

8.  MANAGEMENT OF JOINT VENTURE

    a.  The representatives of the Joint Venturers shall meet from time to time as required to act on necessary matter pertaining to the Construction contract. All decisions, commitments, agreements, undertakings, understandings, or other matters pertaining to the performance of the Construction Contract shall be mutually agreed upon by such representatives. No representative shall be liable to the Joint Venturers by reason of his acts as such, except in the case of its gross negligence or actual fraudulent or dishonest

conduct. In the event the representatives cannot agree on a matter of Joint Venture policy, the matter shall be submitted to informal, but binding, arbitration to a mutually acceptable third party. If the Joint Venturers cannot agree on an arbitrator, then the matter shall be resolved by binding commercial arbitration as provided in Article (26) below.

9.   COST OF CONSTRUCTION

    a.   Cost of construction shall consist of the costs of all subcontracts, labor, material, plant, and equipment purchased or rented, bonds, insurance, taxes on labor and material, imports, charges, legal fees, liabilities not secured by insurance, and all other expenses and obligations incurred or suffered in and about the performance of the Construction Contract of a nature which under sound accounting practices would be properly charged as a cost of the performance of the Construction Contract. Such costs shall include any charges against the Joint Venture for any overhead expenses or charges of the main or branch offices of the Joint Venturers or for the time which may be expended in connection with the work by any of the Joint Venturers or their officers or employees. Equipment, autos, trucks etc. rented from either of the Joint Venturers shall be charged as a construction cost at a rate mutually agreed on by the representatives of the parties to the Joint Venture project cost.

10.  RECORDS

    (a)   Accounting for the performance of the Construction Contract and all matters pertaining thereto shall be kept and maintained at the main office of one of the Joint Venturers. All records of the Joint Venture shall be open for inspection of either Joint Venturer at all reasonable times.

    (b)   A periodic audit of such books shall be made by an independent firm of accountants or by such individuals as may be mutually agreed upon by the Joint Venturers, and a like audit shall be made upon completion of the Construction Contract. With respect to the periodic audits there shall be included, if requested by the Joint Venturers, a periodic comparison between the items of cost and the items set up in the estimate of cost. The cost of any such audits shall be a part of the cost of construction.

    (c)   Upon the completion of the Construction Contract a true and correct accounting shall be had of all costs and expenses and all accounts, vouchers, and other data relating to the Construction Contract and its performance.

    (d)   To the extent that the records must be kept subsequent to the completion of the Construction Contract, pursuant to the provisions of law, the same shall be kept at such place or places as the Joint Venturers may from time to time determine, and the cost thereof shall be borne equally by the Joint Venturers.

11.  PROFITS

    a.   Upon the completion of the Construction Contract, after providing for and paying (a) all costs disbursed or incurred in the performance of the Construction Contract; (b) all other costs and charges ordinarily and usually charged as costs in the performance of such a contract; (c) any and all claims not secured by insurance; (d) proper reserves for any claims which shall have either been brought against the Joint venturers or which the Joint Venturers may reasonably anticipate will be brought against them; and (e) reserves for contingencies, if any, that shall be determined by the Joint Venturers in their discretion to be necessary, and after repaying all sums advanced by the Joint Venturers for working capital, any profits thereafter remaining, resulting from the performance of the Construction Contract, shall be distributed and divided per the above percentages between the Joint Venturers. Any reserves, when no longer required, or so much thereof as shall remain, shall be similarly distributed.

12.  LOSSES

    a.   If the performance of the Construction Contract results in a loss, the Joint Venturers shall be obligated

equally for any such loss. Such equal liability of the Joint Venturers for the bearing of losses shall continue with respect to any claims which at any time, either before or after the completion of the Construction Contract, shall be made against them or either of them by reason of this Joint Venture or any matter or thing in connection therewith.

13. TAX RETURNS
   a. Each Joint Venturer shall prepare and file all required income tax returns for their individual venturers after the distribution of profits or losses.

14. TIME/EFFORTS DEVOTED TO JOINT VENTURE
   a. In general, each Joint Venturer shall cooperate in whatever manner is reasonably necessary to carry out the purposes of the Joint Venture, including, but not limited, to making joint applications (with the other Joint Venturer) for and obtaining construction related bonds. Neither of the Joint Venturers shall be required to spend any fixed amount of time in Joint Venture business, however, each of the Joint Venturers shall spend a sufficient amount of time to adequately perform such Joint Venturer's respective duties and obligations under this Agreement. Joint Venturers shall have the duty to disclose to the other Joint Venturer or the Joint Venture any business opportunities of which it becomes aware, and neither Joint Venturer may take such opportunities for itself without being in breach of its duties or obligations hereunder.

15. PAYMENT OF JOINT VENTURE EXPENSES
   a. The Joint Venture shall pay all reasonable and necessary expenses of the Joint Venture, including, but not limited to, reasonable rent for tools, machinery, personnel, etc., provided by one of the Joint Venturers to the Joint Venture, as agreed by the Joint Venturers in advance. In addition, the Joint Venture shall reimburse each Joint Venturer for other reasonable and necessary expenses incurred by it in the ordinary and proper conduct of the Joint Venture business and/or for the preservation of the Joint Venture business or property.

16. PROHIBITED ACTS
   a. Neither Joint Venturer shall take any action in the name of the Joint Venture except in the ordinary course of the Joint Venture business, without the written consent of the other Joint Venturer.

17. LEASING OF MACHINERY AND EQUIPMENT
   a. The parties shall lease to the joint venture, and the Joint Venture shall lease from the parties, for the terms respectively commencing when the Joint Venture shall require them for use in performing the Construction Contract without delay and continuing subsequently whenever and for as long as the same shall be required in such performance, such machinery, equipment, autos and trucks as the parties may have available for use on the project, at and for the unit rental rates mutually agreed on by the representatives of the parties.
   b. Schedules of the mutually agreed rental rates shall be signed by each Venturer and attached to this agreement.

18. BANKRUPTCY OR DISSOLUTION OF PARTY
   a. In the event of the bankruptcy or dissolution of any of the parties, this Joint Venture shall immediately cease and terminate on its occurrence. Then, the successors, receivers, trustees, or other legal representatives, in this agreement called "representatives" of any party so affected shall cease to have any interest in the performance of the Construction Contract and shall cease to have any interest in and to the Joint Venture or its assets. In any such case the remaining party shall have the right to wind up the affairs of the joint venture and to carry out and complete the performance of the Construction Contract. On such completion or sooner termination and receipt of payment of all amounts due under the Construction Contract, the remaining Joint Venturer shall account to the

representatives of the party or parties so affected and such representative shall then be entitled to receive from the remaining Joint Venturer an amount equal to the sums advanced by the party represented, plus such party's proportionate share of the profits, or less such party's proportionate share of the losses resulting from the performance of the Construction Contract to the date of the termination of the Joint Venture. Provided, however, that the profit or loss computed as of the day of the termination shall be in the same proportion to the whole profit or loss resulting from the performance of the Construction Contract as the amount of work done under it at such time bears to all of the work which is done under it.

19. ASSIGNMENTS AND TRANSFERS
    a.   Neither this agreement nor the interest of the parties or any of them in this agreement, including its respective interest in any moneys belonging to or which may accrue to the Joint Venture in connection with the Construction Contract, may be assigned, pledged, transferred or hypothecated, except that in the event a party desires to obtain banking accommodations, such party may assign, pledge, or hypothecate to the lending institution as security for such banking accommodation, its interest in the moneys to be received by such party under this agreement when distributed to it in accordance with its terms, if the other parties to this agreement give their written consent to it in advance.

20. ADJUSTMENT OF ACCOUNTS
    a.   On completion of the performance of the Construction Contract, the parties shall render a true and correct account, each to the others, of all expenses incurred on account of and all moneys received as result of, such performance. The parties mutually agree, on completion of the performance of the Construction Contract, to settle and adjust all accounts in connection with the performance of the Construction Contract, and to pay, each to the others, such sums as well result in reach of the parties receiving that portion of all profits arising from the performance of the Construction Contract, or bearing that proportion of all losses arising from it in accordance with Articles see forth in this agreement.

21. TRUST FUNDS
    a.   All moneys contributed by the Joint Venturers to this Joint Venture and all moneys received as payments under the Construction Contract or otherwise received shall be treated and regarded as, and are hereby declared to be, trust funds for the performance of the Construction Contract and for no other purpose until the Construction Contract shall have been fully completed and accepted by owner and until all obligations of the Joint Venturers hereto shall have been paid, otherwise discharged, or provided for adequate reserves. Such reserves shall likewise be treated as trust funds until they shall have served the purposes for which they were created.

22. DISSOLUTION OF JOINT VENTURE
    a.   Upon dissolution of the Joint Venture, except as otherwise provided herein, the operation of the Joint Venture's business shall be confined to those activities necessary to wind up the Joint Venture's affairs, discharge its obligations, and preserve and distribute its assets. Any gains or losses of the Joint Venture arising out of the liquidation of the Joint Venture's assets shall be allocated, and the cash and other property of the Joint Venture remaining after satisfaction of Joint Venture obligations shall be distributed, to the Joint Venturers in accordance with the provisions of Article (5) above.

23. BINDING EFFECT
    a.   Except as otherwise provided in this agreement, this agreement shall inure to the benefit of, and be binding on the parties, their successors, trustees, assigns, receivers and legal representatives, but shall not inure to the benefit of any other person, firm, or corporation.

24. GOVERNING LAW
    a.   All questions relative to the execution, validity, interpretation, and performance of this agreement

shall be governed by the laws of the State of Texas.

25.  **DISPUTE RESOLUTION**

a.   If a dispute arises that cannot be resolved through direct discussions, Joint Venturers shall participate in mediation before recourse to any other form of binding dispute resolution. The location of the mediation shall be in Houston, Texas. Agreements reached in mediation shall be binding and enforceable as any other settlement agreement. If the Joint Venturers are not able to resolve the dispute in Mediation, then such disputes shall be resolved through binding arbitration carried out in accordance with the rules and regulations of the American Arbitration Association.  The decision of the arbitrator in any such proceeding shall be fully enforceable in any court of competent jurisdiction.

26.  **ENTIRE AGREEMENT**

This agreement contains the sole and only agreement of the parties hereto relating to the Joint Venture. Any prior agreement, promises, negotiations or representations not expressly set forth in this Agreement are of no force and effect.

**IN WITNESS WHEREOF**, the undersigned have executed this Joint Venture Agreement as of the first day of July, 2012.

HASSELL CONSTRUCTION CO., INC.

Phillip Hassell

R. HASSELL HOLDING CO., INC.
R. HASSELL & COMPANY, INC
R. HASSELL BUILDERS, INC.
GH GROUP RESOURCES

Royce Hassell

# EXHIBIT "B"

| 2013-61995 / Court: 125 |
|---|

Filed 13 October 15 P2:29
Chris Daniel - District Clerk
Harris County
ED101J017770292
By: Sharon Carlton

CAUSE NO. _____

| | | |
|---|---|---|
| R. HASSELL & CO., INC., | § | IN THE DISTRICT COURT OF |
| R. HASSELL BUILDERS, INC. | § | |
| R. HASSELL HOLDING CO., INC. | § | |
| AND | § | |
| G.R. GROUP RESOURCES LLP, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | HARRIS COUNTY, TEXAS |
| | § | |
| | § | |
| HASSELL CONSTRUCTION CO., | § | |
| INC. AND | § | |
| HASSELL MANAGEMENT | § | |
| SERVICES, LLC | § | |
| | § | _____ JUDICIAL DISTRICT |
| Defendants. | § | |

## PLAINTIFFS' ORIGINAL PETITION FOR DECLARATORY JUDGMENT

R. Hassell & Co., Inc. ("RHC"), R. Hassell Builders, Inc. ("RHB"), R. Hassell Holding

Co., Inc. ("RHH") and G. R. Group Resources LLP ("GRGR") (collectively "Plaintiffs") file

their Original Petition against Hassell Construction Co., Inc. and Hassell Management Services,

Inc. (hereinafter jointly referred to as "HCCI") as follows:

### PARTIES

1.    R. Hassell & Co., Inc. is a Texas corporation with its principal place of business

in Harris County, Texas.

2.    R. Hassell Builders, Inc. is a Texas corporation with its principal place of

business in Harris County, Texas.

3.    R. Hassell Holding Co., Inc. is a Texas corporation with its principal place of

business in Harris County, Texas.

4.     G. R. Group Resources LLP is a Texas limited partnership with its principal place of business in Harris County, Texas.

5.     Hassell Construction Co., Inc. is a Texas corporation with its principal place of business in Harris County, Texas. HCC may be served with process herein by serving its registered agent for service of process, James C. Hassell, 12211 Duncan, Houston, Texas 77066.

6.     Hassell Management Services, LLC is a Texas limited liability company with its principal place of business in Harris County, Texas.  HMS may be served with process herein by serving its registered agent for service of process, James P. Hassell, 12211 Duncan, Houston, Texas 77066.

## VENUE

7.     Venue is proper in Harris County, Texas pursuant to Civ. Prac. & Rem. Code § 15.002 in that Harris County is the county in which all or a substantial part of the events or omissions giving rise to the claim occurred.

## FACTUAL BACKGROUND

8.     James Hassell is the founder of HCCI. Royce Hassell, James Hassell's son from James Hassell's first marriage, worked at HCCI for many years. In the early 1990s Royce Hassell separated from HCCI and formed RHC and the other Plaintiff companies over time. Thereafter, Phillip Hassell, Mike Hassell and Shawn Hassell, James Hassell's children from James Hassell's second marriage, began working at HCCI. Phillip Hassell became the President of HCCI and runs it on a day-to-day basis.

9.     Throughout the years the parties involved one another in various separate and joint construction projects under various business arrangements.  In 2012 the parties formed a joint venture and later executed a Construction Joint Venture Agreement ("JV") dated July 1,

2012. The July 1, 2012 date was requested by HCCI to coincide with HCCI's fiscal year. The
JV reads, in part, as follows:

1.     FORMATION OF JOINT VENTURE

a.     The joint venturers hereby constitute themselves as joint venturers for the
purpose of performing and completing the certain public and/or private
sector construction projects consummating the understanding and
agreement that both Venturers have different skills and expertise in
differing areas of construction and in order to expand into new markets
heretofore untouched, combine their efforts as Venturers. From time to
time upon written consent of all joint venturers, joint venturers may
include new projects to their joint venture including any upcoming
projects, ongoing projects or any others that may apply.

9.  COST OF CONSTRUCTION

a. … Equipment, autos, trucks etc. rented from either of the Joint
Venturers shall be charged as a construction cost at a rate mutually agreed
on by the representatives of the parties to the Joint Venture project cost.

10.     RECORDS

(a) … All records of the Joint Venture shall be open for inspection of
either  Joint Venturer at all times.
…

(c) Upon the completion of the Construction Contract a true and correct
accounting shall be had of all costs and expenses and all accounts,
vouchers, and other data relating to the Construction Contract and its
performance.

15.     PAYMENT OF JOINT VENTURE EXPENSES

a. The Joint Venture shall pay all reasonable and necessary expenses of the
Joint Venture, including, but not limited to, reasonable rent for tools,
machinery, personnel, etc., provided by one of the Joint Venturers to the
Joint Venture, as agreed by the Joint Venturers in advance. In addition, the
Joint Venture shall reimburse each Joint Venturer for other reasonable and
necessary expenses incurred by it in the ordinary and proper conduct of
the Joint Venture business and/or for the preservation of the Joint Venture
business or property.

17.     LEASING OF MACHINERY AND EQUIPMENT

a.   The parties shall lease to the joint venture, and the Joint Venture shall lease from the parties, for the terms respectively commencing when the Joint Venture shall require them for use in performing the Construction Contract without delay and continuing subsequently whenever and for as long as the same shall be required in such performance, such machinery, equipment, autos and trucks as the parties may have available for use on the project, at and for the unit rental rates mutually agreed on by the representatives of the parties.

b.   Schedules of the mutually agreed rental rates shall be signed by each Venturer and attached to this agreement.

21. TRUST FUNDS

a.   All moneys contributed by the Joint Venturers to this Joint Venture and all moneys received as payments under the Construction Contract or otherwise received shall be treated and regarded as, and are hereby declared to be, trust funds for the performance of the Construction Contract and for no other purpose until the Construction Contract shall have been fully completed and accepted by owner and until all obligations of the Joint Venturers hereto shall have been paid, otherwise discharged, or provided for adequate reserves. Such reserves shall likewise be treated as trust funds until they shall have served the purposes for which they were created.

10.    In or around September of 2012 the JV bid and began work on various projects. After the formation of the JV Phillip Hassell stated to employees of Plaintiffs and HCCI who were performing JV work that "from now on there is no more HCCI or R. Hassell, there is just 'Hassell.'" Plaintiffs contend the JV projects include, but are not limited to, the following projects which were bid by, awarded to and are being prosecuted by the JV:

    i.    Cinco Ranch Northwest Sections 7, 5 and 69.

    ii.   Cy-Fair ISD Paving and Utilities for West Green

    iii.  Cinco Ranch Southwest Sections 5 (Phase 2), 70 and 71

    iv.   Stuebner Airline Segment B

    v.    U.S. 59 Frontage Road

Other projects, such as Transtar II, are JV projects.

11.     During the course of the JV relationship HCCI took over assets of Plaintiffs under the auspices of the JV and utilized them to conduct work on HCCI projects that were not included in the JV but which were ongoing at the formation of the JV.  These assets of Plaintiffs include employees, equipment and goodwill.  Certain employees have been paid through Hassell Management Services, LLC.  No accounting has been conducted of HCCI's use of these assets.

12.     No JV accounting has been made of the JV projects and non-JV projects wherein HCCI utilized assets of Plaintiffs.  The funds from such projects as well as the records of such projects are controlled by HCCI.   Plaintiffs repeatedly objected to the lack of JV accounting and to being denied access to source documents necessary to perform an accounting.

13.     Certain JV projects have been concluded and require a final JV accounting. However, HCCI has sole control of the information necessary to account for these projects.

14.     HCCI has not reimbursed Plaintiffs for reasonable and necessary JV expenses including overhead, labor, equipment, sub-contractor costs and continues to withhold accounting and funds from JV projects.

15.     HCCI has not paid Plaintiffs for the use of equipment by the JV or nor has it paid Plaintiffs for use of Plaintiff's equipment by HCCI on non-JV projects.

16.     HCCI has appropriated JV projects, has appropriated assets of Plaintiffs, has obtained monies from construction contracts, failed to treat them as Trust Funds and has distributed money to itself while withholding money from Plaintiffs.

## CAUSES OF ACTION

### *Declaratory Judgment*

17.     RHC, RHB, RHH and GRGR re-allege the allegations set forth above.

18.     RHC, RHB, RHH and GRGR are interested under the JV and requests the Court

to determine questions of validity of the JV and various other business arrangements. RHC, RHB, RHH and GRGR seek to obtain a declaration of their rights, status or other legal relations thereunder pursuant to Tex. Civ. Prac. & Rem. Code §37.004.

<em>Breach of Joint Venture Agreement</em>

19.     RHC, RHB, RHH and GRGR re-allege the allegations set forth above.

20.     HCCI's actions as described above constitute a breach of the Joint Venture Agreement. HCCI's action as described above constitute breaches of various other business arrangements prior to and concurrent with the JV. Because of HCC's breach, Plaintiffs have been damaged in an amount in excess of the jurisdictional limits of this court.

<em>Accounting</em>

21.     RHC, RHB, RHH and GRGR re-allege the allegations set forth above.

22.     RHC, RHB, RHH and GRGR request an accounting of the amounts owed to them pursuant to the JV agreement and the various other business arrangements of the parties.

<em>Attorneys' Fees</em>

23.     RHC, RHB, RHH and GRGR re-allege the allegations set forth above.

24.     RHC, RHB, RHH and GRGR request the Court to award costs and reasonable and necessary attorneys' fees to RHC, RHB, RHH and GRGR from HCCI as are equitable and just pursuant to Tex. Civ. Prac. & Rem. Code §37.009 and §38.001 *et seq.*

<strong><u>PRAYER</u></strong>

Accordingly, R. Hassell & Co., Inc., R. Hassell Builders, Inc., R. Hassell Holding Co., Inc. and G. R. Group Resources LLP pray that Hassell Construction Co., Inc. and Hassell Management Services, Inc. be cited to appear and answer herein and that upon final trial hereof RHC, RHB, RHH and GRGR have judgment against HCCI as follows:

A. A declaratory judgment as set forth above;

B. Actual damages;

C. Attorneys' fees payable to RHC, RHB, RHH and GRGR by HCCI; and

D. Such other and further relief to which RHC, RHB, RHH and GRGR may show themselves justly entitled.

Respectfully submitted,

_____
Robert J. Kruckemeyer, SBOT # 11735700
800 Commerce Street
Houston, Texas 77002
Ph: (713) 226-5175 - Fax: (713) 225-0827

Attorneys for Plaintiffs

# EXHIBIT "C"

**FILED**
Chris Daniel
District Clerk

MAR 0 3 2014

Time: _____
          Harris County, Texas
By _____
              Deputy

CAUSE NO. 2013-61995

| | | |
|---|---|---|
| R. HASSELL & CO, INC.; | § | IN THE DISTRICT COURT |
| R. HASSELL BUILDERS, INC.; | § | |
| R. HASSELL HOLDING CO., INC; | § | |
| G.R. GROUP RESOURCES, LLP | § | |
| | § | |
| PLAINTIFFS, | § | |
| | § | |
| VS. | § | 125TH JUDICIAL DISTRICT |
| | § | |
| HASSELL CONSTRUCTION CO., INC.; | § | |
| HASSELL MANAGEMENT | § | |
| SERVICES, LLC | § | |
| | § | |
| DEFENDANTS | § | HARRIS COUNTY, TEXAS |

*p2*
*ARBIX*
*PABAX*

## ORDER

On this the _____ day of _____, 2013, came to be heard DefendantsHassel Construction Co., Inc. and Hassell Management Services, LLC's ("Defendants")Motion to Compel Arbitration and Abatement Pending Arbitration against R. Hassell & Co, Inc., R. Hassell Builders, Inc., R. Hassell Holding Co., Inc., and G.R. Group Resources, LLP ("Plaintiffs"), and the Court having considered the motion and being of the opinion that the motion is in all things proper, it is hereby

ORDERED that Defendants' Motion to Compel Arbitration and Abatement Pending Arbitration is granted; it is further

ORDERED that this matter is referred to arbitration in accordance with the arbitration agreement executed between Plaintiffs and Defendants; it is further

ORDERED that any and all claims and causes of action asserted by Plaintiffs against Defendants in the referenced lawsuit are abated until the arbitration award is rendered; it is further

1

ORDERED that Plaintiffs shall commence arbitration proceedings with the American Arbitration Association pursuant to the arbitration agreement within 60 days from the entry of this Order. Upon notice by any party that such arbitration has not been commenced within said period, this Court shall dismiss this case without prejudice and all costs shall be taxed against Plaintiffs.

SIGNED on this the ___3___ day of ___March___, 2015.

_____
JUDGE PRESIDING

Unofficial Copy Office of Chris Daniel District Clerk

2

# EXHIBIT "D"



**12211 DUNCAN ROAD**
**HOUSTON, TEXAS 77066**
**PH. 281-893-2570**
**FAX 281-580-9170**
*est.1976*

## Promissory Note

On this date of October 5, 2010, in return for valuable consideration received, the undersigned borrower promises to pay to Hassell Construction Company Inc., the "Lender", the sum of $(350,000.00) Three Hundred Fifty Thousand Dollars, together with the interest thereon at the initial rate of 5%.

This loan shall be repaid under the following terms: Starting on October 15, 2010 and continuing thereafter quarterly until October 15, 2011 Royce Hassell personally shall make payments of interest only on balance of note at the current rate being charged by Vista Bank of Texas. On October 15, 2011 final payment is due in the amount of $(350,000.00) Three Hundred Fifty Thousand Dollars.

This note may be prepaid in whole or in part at any time without premium or penalty. All prepayments shall first be applied to the interest due, and then to the principle.

Borrower Royce Hassell

Signed in the presence of:

Witness

# EXHIBIT "E"

**NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OF THE FOLLOWING INFORMATION FROM THIS INSTRUMENT BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER**

## DEED OF TRUST

**DATE:**     June 13, 2011

**GRANTOR:**   Royce J. Hassell and Silvia T. Hassell

**GRANTOR'S MAILING ADDRESS (INCLUDING COUNTY):**

P. O. Box 20487, Houston, Harris County, Texas 77225-0487

**TRUSTEE:**   Shaw Potts, Trustee

**TRUSTEE'S MAILING ADDRESS (INCLUDING COUNTY):**

25034 Huffsmith Cemetery Road, Tomball, Texas 77375

**BENEFICIARY:**     James C. Hassell

**BENEFICIARY'S MAILING ADDRESS (INCLUDING COUNTY):**

12211 Duncan Road, Houston, Harris County, Texas 77056

**INSTRUMENT SECURED:**

James C. Hassell's obligation as a guarantor to pay any principal, interest or other amount based upon any funds received by R. Hassell under that certain Line of Credit between Jim Hassell , as Borrower, and Vista Bank, as Lender (and any amendments, extensions, renewals, substitutions, modifications, and supplements) in an amount never to exceed the principal amount of $2,500,000 plus any accrued interest thereon (the "Obligation").

**PROPERTY (INCLUDING ANY IMPROVEMENTS):**

This is a deed of trust lien against that real property more particularly described in that certain "General Warranty Deed with Vendor's Lien," dated May 20, 2002 between Mike Mitchell and spouse, Debbie Mitchell, as Grantors, and Royce J. Hassell and spouse, Silvia T. Hassell, as Grantees, as recorded at Film Code 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 of the Official Real Property Records of Montgomery County, Texas (the "Property").



This lien is subordinate to that certain Deed of Trust, dated January 30, 2003, between Royce J. Hassell and Silvia T. Hassell, as Barrower, PRLAP, Inc., as Trustee and Bank of America, NA, as Beneficiary, recorded at Film Code 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 of the Official Real Property Records of Montgomery County, Texas.

## OTHER EXCEPTIONS TO CONVEYANCE AND WARRANTY:

Subject to any and all valid and subsisting restrictions, easements, rights of way, mineral and royalty reservations, maintenance charges, zoning laws, ordinances of municipal and/or other governmental authorities, conditions and covenants, if any, applicable to and enforceable against the Property and properly of record respectively in the office of the County Clerk of the county in which the Property is located in whole or in part.

For value received and to secure payment of the Note, Grantor conveys all right, title and interest in, to and under the Property to Trustee in trust. Grantor warrants and agrees to defend the title to the property. If Grantor performs all the covenants and there is no Event of Default under this Deed of Trust, this Deed of Trust shall have no further effect, and Beneficiary shall release it at Grantor's expense.

## GRANTOR'S OBLIGATIONS AND EVENTS OF DEFAULT:

Grantor agrees to:

1.    keep the property in good repair and condition;

2.    pay all taxes and assessments on the property when due;

3.    preserve the respective Lien's priority as it is established in this Deed of Trust; and

4.    maintain the current insurance on the real property for the full replacement value of all improvements with Grantor as beneficiaries; and

The failure of Grantor to comply with any of the foregoing four (4) obligations after thirty (30) days written notice to comply shall constitute an Event of Default.

If (a) Beneficiary has paid any amount under the Obligation and (b) Grantor does not reimburse Beneficiary all such amounts paid by Beneficiary in full after sixty (60) days written notice, then, upon the condition that all of these two events have occurred, there is an Event of Default.

## BENEFICIARY'S RIGHTS:

1.    Beneficiary may appoint in writing a substitute or successor trustee, succeeding to all rights and responsibilities of Trustee.

2.      If there is an Event of Default, Beneficiary may:

      a.      request Trustee to foreclose this Lien, in which case Beneficiary or Beneficiary's agent shall give notice of the foreclosure sale as provided by the Texas Property Code as then amended; and

      b.      purchase the property at any foreclosure sale by offering the highest bid and then have the bid credited to the Note.

**TRUSTEE'S DUTIES:**

If requested by Beneficiary to foreclose this Lien, Trustee shall:

1.      either personally or by agent give notice of the foreclosure sale as required by the Texas Property Code as then amended;

2.      sell and convey all or part of the property to the highest bidder for cash with a general warranty binding Grantor, subject to prior liens and to other exceptions to conveyance and warranty; and

3.      from the proceeds of the sale, pay, in this order:

      a.      expenses of foreclosure, including a commission to Trustee of 5% of the bid;
      b.      to Beneficiary, the full amount paid by Beneficiary under the Obligation;
      c.      any amounts required by law to be paid before payment to Grantor; and
      d.      to Grantor, any balance.

**GENERAL PROVISIONS:**

1.      If any of the Property is sold under this Deed of Trust, Grantor shall immediately surrender possession to the purchaser. If Grantor fails to do so, Grantor shall become a tenant at sufferance of the purchaser, subject to an action for forcible detainer.

2.      Recitals in any Trustee's deed conveying the property will be presumed to be true.

3.      Proceeding under this Deed of Trust, filing suit for foreclosure, or pursuing any other remedy will not constitute an election of remedies.

4.      This lien shall remain superior to liens later created even if the time of payment of all or part of the Note is extended or part of the property is released.

5.      If there is a casualty loss which can be restored to the pre-loss condition of the Property with the proceeds from the insurance, then Grantor shall so restore the Property to the its

pre-loss condition. If there is any other casualty loss or a whole or partial condemnation of the Property, then Grantor shall receive the proceeds from the insurance or the condemning authority and deposit those proceeds in a certificate of deposit with a market interest rate. Grantor grants a security interest to Beneficiary in the right to receive those proceeds, in the proceeds, and in the certificate of deposit. Grantor agrees to sign any documents necessary to perfect this security interest and agreement. Grantor also grants a limited power of attorney to Beneficiary to sign any document necessary to perfect this security interest and agreement. The rights in this paragraph are subordinate to any respective prior deed of trust lien or vendor's lien.

6.        When context requires, singular nouns and pronouns include the plural.

7.        This Deed of Trust shall bind, inure to the benefit of, and be exercised by successors in interest of all parties.

8.        If Grantor and Maker are not the same person, the "Grantor" shall include Maker.

9.        As evidence of the discharge of Grantor's responsibility to pay all taxes and assessments and to keep said premises insured, Grantor shall deliver to any holder of the indebtedness the official receipts for said taxes and assessments before the same shall become delinquent and shall deliver to any holder of the indebtedness receipts showing said insurance premiums as having been paid in advance for each succeeding year for any and all parcels of secured property named herein.

10.       Beneficiary may remedy any Event of Default without waiving it and may waive any Event of Default without waiving any prior or subsequent Even of Default.

_____
ROYCE J. HASSELL

_____
SILVIA T. HASSELL


STATE OF TEXAS       §
                       §
COUNTY OF HARRIS   §

This instrument was acknowledged before me on this 18 ᵗʰ day of July , 2011, by Royce J. Hassell.

CYNTHIA L. GROOMS
NOTARY PUBLIC STATE OF TEXAS
COMMISSION EXPIRES:
06-16-2012

_____
Notary Public -- State of Texas

STATE OF TEXAS       §
                             §

COUNTY OF HARRIS    §

This instrument was acknowledged before me on this _1 8 th_ day of _July_, 2011, by Silvia T. Hassell.



Notary Public -- State of Texas

**AFTER RECORDING PLEASE RETURN TO:**

Shawn Potts
25034 Huffsmith Cemetery Road
Tomball, Texas 77375

CYNTHIA L. GROOMS
NOTARY PUBLIC STATE OF TEXAS
COMMISSION EXPIRES:
06-15-2012

Doc# 2011062057

**FILED FOR RECORD**
07/18/2011   3:27PM

*Mark Turnbull*
COUNTY CLERK
MONTGOMERY COUNTY, TEXAS

STATE OF TEXAS
COUNTY OF MONTGOMERY
I hereby certify this instrument was filed in file number
sequence on the date and at the time stamped herein
by me and was duly RECORDED in the Official Public
Records of Montgomery County, Texas.

**07/18/2011**

*Mark Turnbull*
County Clerk
Montgomery County, Texas

# EXHIBIT "F"

**NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OF THE FOLLOWING INFORMATION FROM THIS INSTRUMENT BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER**

## DEED OF TRUST

**DATE:**      June 13, 2011

**GRANTOR:**  Royce J. Hassell and Silvia T. Hassell

**GRANTOR'S MAILING ADDRESS (INCLUDING COUNTY):**

P. O. Box 20487, Houston, Harris County, Texas 77225-0487

**TRUSTEE:**   Shaw Potts, Trustee

**TRUSTEE'S MAILING ADDRESS (INCLUDING COUNTY):**

25034 Huffsmith Cemetery Road, Tomball, Texas 77375

**BENEFICIARY:**     James C. Hassell

**BENEFICIARY'S MAILING ADDRESS (INCLUDING COUNTY):**

12211 Duncan Road, Houston, Harris County, Texas 77056

**INSTRUMENT SECURED:**

James C. Hassell's obligation as a guarantor to pay any principal, interest or other amount based upon any funds received by R. Hassell under that certain Line of Credit between Jim Hassell, as Borrower, and Vista Bank, as Lender (and any amendments, extensions, renewals, substitutions, modifications, and supplements) in an amount never to exceed the principal amount of $2,500,000 plus any accrued interest thereon (the "Obligation").

**PROPERTY (INCLUDING ANY IMPROVEMENTS):**

This is a deed of trust lien against that certain real property more particularly described as 5302 Maple Street, Bellaire, Harris County, Texas and more particularly described as Lot Twenty-three (23), of BRAEBURN COUNTRY CLUB ESTATES, a subdivision in Harris County, Texas, according to the map or plat thereof, recorded in Volume 22, Page 72 of the Official Real Property Records of Harris County, Texas. (the "Property").

This deed of trust lien is subordinate to that certain Deed of Trust, dated June 6, 2007, between Royce J. Hassell and Silvia T. Hassell, as Grantor, James W. Goolsby, Jr., as Trustee, and Sterling Bank, as Beneficiary, recorded at File No. 2007-0423777 of the Official Real Property Records of Harris County, Texas as modified.

OTHER EXCEPTIONS TO CONVEYANCE AND WARRANTY:

Subject to any and all valid and subsisting restrictions, easements, rights of way, mineral and royalty reservations, maintenance charges, zoning laws, ordinances of municipal and/or other governmental authorities, conditions and covenants, if any, applicable to and enforceable against the Property and properly of record respectively in the office of the County Clerk of the county in which the Property is located in whole or in part.

For value received and to secure payment of the Note, Grantor conveys all right, title and interest in, to and under the Property to Trustee in trust. Grantor warrants and agrees to defend the title to the property. If Grantor performs all the covenants and there is no Event of Default under this Deed of Trust, this Deed of Trust shall have no further effect, and Beneficiary shall release it at Grantor's expense.

GRANTOR'S OBLIGATIONS AND EVENTS OF DEFAULT:

Grantor agrees to:

1.    keep the property in good repair and condition;

2.    pay all taxes and assessments on the property when due;

3.    preserve the respective Lien's priority as it is established in this Deed of Trust; and

4.    maintain the current insurance on the real property for the full replacement value of all improvements with Grantor as beneficiaries; and

The failure of Grantor to comply with any of the foregoing four (4) obligations after thirty (30) days written notice to comply shall constitute an Event of Default.

If (a) Beneficiary has paid any amount under the Obligation and (b) Grantor does not reimburse Beneficiary all such amounts paid by Beneficiary in full after sixty (60) days written notice, then, upon the condition that all of these two events have occurred, there is an Event of Default.

BENEFICIARY'S RIGHTS:

1.      Beneficiary may appoint in writing a substitute or successor trustee, succeeding to all rights and responsibilities of Trustee.

2.      If there is an Event of Default, Beneficiary may:

   a.      request Trustee to foreclose this Lien, in which case Beneficiary or Beneficiary's agent shall give notice of the foreclosure sale as provided by the Texas Property Code as then amended; and

   b.      purchase the property at any foreclosure sale by offering the highest bid and then have the bid credited to the Note.

## TRUSTEE'S DUTIES:

If requested by Beneficiary to foreclose this Lien, Trustee shall:

1.      either personally or by agent give notice of the foreclosure sale as required by the Texas Property Code as then amended;

2.      sell and convey all or part of the property to the highest bidder for cash with a general warranty binding Grantor, subject to prior liens and to other exceptions to conveyance and warranty; and

3.      from the proceeds of the sale, pay, in this order:

   a.      expenses of foreclosure, including a commission to Trustee of 5% of the bid;
   b.      to Beneficiary, the full amount paid by Beneficiary under the Obligation;
   c.      any amounts required by law to be paid before payment to Grantor; and
   d.      to Grantor, any balance.

## GENERAL PROVISIONS:

1.      If any of the Property is sold under this Deed of Trust, Grantor shall immediately surrender possession to the purchaser. If Grantor fails to do so, Grantor shall become a tenant at sufferance of the purchaser, subject to an action for forcible detainer.

2.      Recitals in any Trustee's deed conveying the property will be presumed to be true.

3.      Proceeding under this Deed of Trust, filing suit for foreclosure, or pursuing any other remedy will not constitute an election of remedies.

4.      This lien shall remain superior to liens later created even if the time of payment of all or part of the Note is extended or part of the property is released.

5.      If there is a casualty loss which can be restored to the pre-loss condition of the Property with the proceeds from the insurance, then Grantor shall so restore the Property to the its pre-loss condition. If there is any other casualty loss or a whole or partial condemnation of the Property, then Grantor shall receive the proceeds from the insurance or the condemning authority and deposit those proceeds in a certificate of deposit with a market interest rate. Grantor grants a security interest to Beneficiary in the right to receive those proceeds, in the proceeds, and in the certificate of deposit.  Grantor agrees to sign any documents necessary to perfect this security interest and agreement.  Grantor also grants a limited power of attorney to Beneficiary to sign any document necessary to perfect this security interest and agreement.  The rights in this paragraph are subordinate to any respective prior deed of trust lien or vendor's lien.

6.      When context requires, singular nouns and pronouns include the plural.

7.      This Deed of Trust shall bind, inure to the benefit of, and be exercised by successors in interest of all parties.

8.      If Grantor and Maker are not the same person, the "Grantor" shall include Maker.

9.      As evidence of the discharge of Grantor's responsibility to pay all taxes and assessments and to keep said premises insured, Grantor shall deliver to any holder of the indebtedness the official receipts for said taxes and assessments before the same shall become delinquent and shall deliver to any holder of the indebtedness receipts showing said insurance premiums as having been paid in advance for each succeeding year for any and all parcels of secured property named herein.

10.     Beneficiary may remedy any Event of Default without waiving it and may waive any Event of Default without waiving any prior or subsequent Even of Default.

_____          _____
ROYCE J. HASSELL                                          SILVIA T. HASSELL

STATE OF TEXAS                   §
                                                   §
COUNTY OF HARRIS              §

    This instrument was acknowledged before me on this 18th day of July, 2011, by Royce J. Hassell.

CYNTHIA L. GROOMS
NOTARY PUBLIC STATE OF TEXAS
COMMISSION EXPIRES:
06-15-2012

_____
Notary Public -- State of Texas

STATE OF TEXAS                    §
                                 §
COUNTY OF HARRIS                 §

    This instrument was acknowledged before me on this 18th day of July, 2011, by Silvia T. Hassell.

                                          _____
                                          Notary Public -- State of Texas

**AFTER RECORDING PLEASE RETURN TO:**

Shawn Potts
25034 Huffsmith Cemetery Road
Tomball, Texas 77375

CYNTHIA L. GROOMS
NOTARY PUBLIC STATE OF TEXAS
COMMISSION EXPIRES:
08-16-2012

ANY PROVISION HEREIN WHICH RESTRICTS THE SALE, RENTAL, OR USE OF THE DESCRIBED REAL PROPERTY BECAUSE OF COLOR OR RACE IS INVALID AND UNENFORCEABLE UNDER FEDERAL LAW.
THE STATE OF TEXAS
COUNTY OF HARRIS
    I hereby certify that this instrument was FILED in File Number Sequence on the date and at the time stamped hereon by me, and was duly RECORDED, in the Official Public Records of Real Property of Harris County, Texas.

JUL 19 2011

Stan Stanart
COUNTY CLERK
HARRIS COUNTY, TEXAS

Stan Stanart
COUNTY CLERK
HARRIS COUNTY, TEXAS

2011 JUL 19 PM 2: 59
FILED

# EXHIBIT "G"

2011029712Z
07/19/2011  RP2  $32.00

**NOTICE OF CONFIDENTIALITY RIGHTS:  IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OF THE FOLLOWING INFORMATION FROM THIS INSTRUMENT BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER**

## DEED OF TRUST

**DATE:**      June 13, 2011

**GRANTOR:**  Royce J. Hassell and Silvia T. Hassell

**GRANTOR'S MAILING ADDRESS (INCLUDING COUNTY):**

P. O. Box 20487, Houston, Harris County, Texas 77225-0487

**TRUSTEE:**   Shawn Potts, Trustee

**TRUSTEE'S MAILING ADDRESS (INCLUDING COUNTY):**

25043 Huffsmith Cemetery Road, Tomball, Texas 77375

**BENEFICIARY:**     Vista Bank

**BENEFICIARY'S MAILING ADDRESS (INCLUDING COUNTY):**

14561 Northwest Freeway, Houston, Harris County, Texas 77040

**INSTRUMENT SECURED:**

James C. Hassell's obligation as a guarantor to pay any principal, interest or other amount based upon any funds received by R. Hassell under that certain Line of Credit between Jim Hassell , as Borrower, and Vista Bank, as Lender (and any amendments, extensions, renewals, substitutions, modifications, and supplements) in an amount never to exceed the principal amount of $2,500,000 plus any accrued interest thereon (the "Obligation").

**PROPERTY (INCLUDING ANY IMPROVEMENTS):**

This is a deed of trust lien against that certain real property located 6417 Buffalo Speedway, Houston, Harris County, Texas and more particularly described as the North Fifty Feet (N. 50') of Block Nine (9), in Block Twelve (12), of WEST UNIVERSITY PLACE, an addition in Harris County, Texas, according to the map or plat thereof, recorded in Volume 444, Page 563 of the Official Real Property Records of Harris County, Texas. (the "Property").

This deed of trust lien is subordinate to that certain Deed of Trust, dated July 6, 2007, between Royce J. Hassell and Silvia T. Hassell, as Grantor, James W. Goolsby, Jr., as Trustee, and Sterling Bank, as Beneficiary, recorded at File Code 2007-0423777.

## OTHER EXCEPTIONS TO CONVEYANCE AND WARRANTY:

Subject to any and all valid and subsisting restrictions, easements, rights of way, mineral and royalty reservations, maintenance charges, zoning laws, ordinances of municipal and/or other governmental authorities, conditions and covenants, if any, applicable to and enforceable against the Property and properly of record respectively in the office of the County Clerk of the county in which the Property is located in whole or in part.

For value received and to secure payment of the Note, Grantor conveys all right, title and interest in, to and under the Property to Trustee in trust. Grantor warrants and agrees to defend the title to the property. If Grantor performs all the covenants and there is no Event of Default under this Deed of Trust, this Deed of Trust shall have no further effect, and Beneficiary shall release it at Grantor's expense.

## GRANTOR'S OBLIGATIONS AND EVENTS OF DEFAULT:

Grantor agrees to:

1.  keep the property in good repair and condition;

2.  pay all taxes and assessments on the property when due;

3.  preserve the respective Lien's priority as it is established in this Deed of Trust; and

4.  maintain the current insurance on the real property for the full replacement value of all improvements with Grantor as beneficiaries; and

The failure of Grantor to comply with any of the foregoing four (4) obligations after thirty (30) days written notice to comply shall constitute an Event of Default.

If (a) Grantor is in default under the Trustmark Loan, (b) Beneficiary has paid any amount under the Jim Hassell Guaranty, and (c) Grantor does not reimburse Beneficiary all such amounts paid by Beneficiary in full after sixty (60) days written notice, then, upon the condition that all of these three events have occurred, there is an Event of Default.

## BENEFICIARY'S RIGHTS:

1.     Beneficiary may appoint in writing a substitute or successor trustee, succeeding to all rights and responsibilities of Trustee.

2.     If there is an Event of Default, Beneficiary may:

    a.     request Trustee to foreclose this Lien, in which case Beneficiary or Beneficiary's agent shall give notice of the foreclosure sale as provided by the Texas Property Code as then amended; and

    b.     purchase the property at any foreclosure sale by offering the highest bid and then have the bid credited to the Note.

**TRUSTEE'S DUTIES:**

If requested by Beneficiary to foreclose this Lien, Trustee shall:

1.     either personally or by agent give notice of the foreclosure sale as required by the Texas Property Code as then amended;

2.     sell and convey all or part of the property to the highest bidder for cash with a general warranty binding Grantor, subject to prior liens and to other exceptions to conveyance and warranty; and

3.     from the proceeds of the sale, pay, in this order:

    a.     expenses of foreclosure, including a commission to Trustee of 5% of the bid;
    b.     to Beneficiary, the full amount paid by Beneficiary under the Jim Hassell Guaranty;
    c.     any amounts required by law to be paid before payment to Grantor; and
    d.     to Grantor, any balance.

**GENERAL PROVISIONS:**

1.     If any of the Property is sold under this Deed of Trust, Grantor shall immediately surrender possession to the purchaser. If Grantor fails to do so, Grantor shall become a tenant at sufferance of the purchaser, subject to an action for forcible detainer.

2.     Recitals in any Trustee's deed conveying the property will be presumed to be true.

3.     Proceeding under this Deed of Trust, filing suit for foreclosure, or pursuing any other remedy will not constitute an election of remedies.

4.     This lien shall remain superior to liens later created even if the time of payment of all or part of the Note is extended or part of the property is released.

5.      If there is a casualty loss which can be restored to the pre-loss condition of the Property with the proceeds from the insurance, then Grantor shall so restore the Property to the its pre-loss condition. If there is any other casualty loss or a whole or partial condemnation of the Property, then Grantor shall receive the proceeds from the insurance or the condemning authority and deposit those proceeds in a certificate of deposit with a market interest rate. Grantor grants a security interest to Beneficiary in the right to receive those proceeds, in the proceeds, and in the certificate of deposit.  Grantor agrees to sign any documents necessary to perfect this security interest and agreement. Grantor also grants a limited power of attorney to Beneficiary to sign any document necessary to perfect this security interest and agreement. The rights in this paragraph are subordinate to any respective prior deed of trust lien or vendor's lien.

6.      When context requires, singular nouns and pronouns include the plural.

7.      This Deed of Trust shall bind, inure to the benefit of, and be exercised by successors in interest of all parties.

8.      If Grantor and Maker are not the same person, the "Grantor" shall include Maker.

9.      As evidence of the discharge of Grantor's responsibility to pay all taxes and assessments and to keep said premises insured, Grantor shall deliver to any holder of the indebtedness the official receipts for said taxes and assessments before the same shall become delinquent and shall deliver to any holder of the indebtedness receipts showing said insurance premiums as having been paid in advance for each succeeding year for any and all parcels of secured property named herein.

10.     Beneficiary may remedy any Event of Default without waiving it and may waive any Event of Default without waiving any prior or subsequent Even of Default.

ROYCE J. HASSELL                                         SILVIA T. HASSELL

STATE OF TEXAS            §
                          §
COUNTY OF HARRIS          §

This instrument was acknowledged before me on this __18th__ day of June, 2011, by Royce J. Hassell.

CYNTHIA L. GROOMS
NOTARY PUBLIC STATE OF TEXAS
COMMISSION EXPIRES:
06-15-2012

Notary Public -- State of Texas

STATE OF TEXAS                     §
                                   §
COUNTY OF HARRIS                   §

This instrument was acknowledged before me on this ___18th___ day of June, 2011, by Silvia T. Hassell.

_____
Notary Public -- State of Texas

**AFTER RECORDING PLEASE RETURN TO:**

Shawn Potts
25034 Huffsmith Cemetery Road
Tomball, TX 77375

CYNTHIA L. GROOMS
NOTARY PUBLIC STATE OF TEXAS
COMMISSION EXPIRES:
06-16-2012

ANY PROVISION HEREIN WHICH RESTRICTS THE SALE RENTAL, OR USE OF THE DESCRIBED REAL PROPERTY BECAUSE OF COLOR OR RACE IS INVALID AND UNENFORCEABLE UNDER FEDERAL LAW.
THE STATE OF TEXAS
COUNTY OF HARRIS
I hereby certify that this instrument was FILED in File Number Sequence on the date and at the time stamped hereon by me, and was duly RECORDED, in the Official Public Records of Real Property of Harris County, Texas

JUL 19 2011

Stan Stanart
COUNTY CLERK
HARRIS COUNTY, TEXAS

Stan Stanart
COUNTY CLERK
HARRIS COUNTY, TEXAS

2011 JUL 19 PM 3:00

FILED

## RELEASE

### 1.  Definitions

Deed of Trust shall mean that certain Deed of Trust, dated June 13, 2011, between Royce J. and Silvia T. Hassell, as Grantor, Shawn Potts, as Trustee, and Vista Bank, as Beneficiary, and recorded at File No. 20110297122 of the Official Real Property Records of Harris County, Texas;

Property shall mean the real property described in the Deed of Trust;

Liens shall mean any and all claims, vendor's liens, deed of trust liens, security interests, or other liens, charges, or encumbrances against the Property;

Holder shall mean the undersigned as the sole owner of all right, title and interest in, to or under the Debt, the Deed of Trust, and the Liens who has not otherwise pledged, assigned, conveyed or transferred, or agreed to pledge, assign, convey or transfer, any whole or part of any right, title and interest in, to or under the Debt, the Deed of Trust, and the Liens

Maker shall mean each person obligated under the Debt.

### 2.  Recitals

Maker has now paid the Debt secured by the Liens. Holder executes this Release to release and discharge the Liens.

### 3.  Text

For good and valuable consideration (the receipt and sufficiency of which has been acknowledged), the Holder, through the undersigned fully authorized and binding signature, do HEREBY RELEASE, ACQUIT AND FOREVER DISCHARGE, and by this instrument do RELEASE, ACQUIT AND FOREVER DISCHARGE, the Liens and do hereby CONFIRM, and by this instrument do CONFIRM, that the Property is free and clear of the Liens.

Signed this _31_ day of _August_, 2011 at _2522 Cottlnfd, Harris_ County, Texas.

By: _____

Name:  SHAWN POTTS

Position:  Trustee

1

State of Texas

County of Harris

    This instrument was acknowledged before me on the _31_ day of _August_, 2011 by Shawn Potts, Trustee.



MARY HELEN RIVERA
Notary Public, State of Texas
My Commission Expires
September 23, 2013

Notary Public - State of Texas

After Recording, Please Return:

Royce J. Hassell
P.O. Box 20487
Houston, TX 77225

2