# EXHIBIT B

1/3/2014 12:20:40 PM
Chris Daniel - District Clerk Harris County
Envelope No. 127560
By: ALEX CASARES

CAUSE NO. 2013-61995

| | | |
|---|---|---|
| R. HASSELL & CO, INC.; | § | IN THE DISTRICT COURT |
| R. HASSELL BUILDERS, INC.; | § | |
| R. HASSELL HOLDING CO., INC; | § | |
| G.R. GROUP RESOURCES, LLP | § | |
| | § | |
| PLAINTIFFS, | § | |
| | § | |
| VS. | § | 125TH JUDICIAL DISTRICT |
| | § | |
| HASSELL CONSTRUCTION CO., INC.; | § | |
| HASSELL MANAGEMENT | § | |
| SERVICES, LLC | § | |
| | § | |
| DEFENDANTS | § | HARRIS COUNTY, TEXAS |

### DEFENDANTS' OBJECTION AND RESPONSE TO PLAINTIFFS' MOTION TO SUBSTITUTE COUNSEL

TO THE HONORABLE JUDGE OF SAID COURT:

Defendants Hassell Construction Co., Inc. and Hassell Management Services, LLC ("Defendants") file this objection and response to Plaintiffs' motion to substitute Silvia Hassell as counsel for and on behalf of Plaintiffs R. Hassell & Co, Inc., R. Hassell Builders, Inc., R. Hassell Holding Co., Inc., and G.R. Group Resources, LLP ("Plaintiffs"), subject to and without waiving Defendants' motion to compel arbitration and abatement pending arbitration against Plaintiffs, and would respectfully show as follows.

### A.    REQUEST FOR ORAL HEARING

1.    Defendants request that Plaintiffs' Motion to Substitute Counsel be removed from this Court's submission docket of January 6, 2014, and instead, be added to this Court's hearing docket on January 27, 2014 at 10:00a.m.  Defendants have a pending Motion to Compel Arbitration and  Abatement set for oral hearing on January 27, 2014 at 10:00a.m.

1

4815-9279-3111.v1

## B.    INTRODUCTION

2.      Subject to and without waiving Defendants' motion to compel arbitration, Defendants do not object to the general proposition of Plaintiffs' request to substitute counsel in this matter; however, Defendants object to Ms. Hassell's role as counsel, witness and party in this litigation.  Ms. Hassel admitted that she will and "can be expected to testify in the matter." See Exhibit "A".  Ms. Hassell has personal knowledge of relevant facts in this case.  Ms. Hassell was personally involved in several aspects of the joint venture.  She was involved in the bid process and/or the process of securing projects contemplated by the joint venture.  See Exhibit "B".  With regards to the Transtar projects complained of by Plaintiffs in this matter, Ms. Hassell admitted that she was an "indemnitor" on the bonds secured on the joint venture projects, including the Transtar project.  That is, Ms. Hassell along with her husband, Mr. Royce Hassell, claimed to be indemnitors and third party beneficiaries to the funding arrangements with Defendants on the joint venture projects.  Funding and appropriation of monies are the primary matters at issue in this case.

3.      Ms. Hassell has also represented to others that she is a  part owner of  the various Plaintiffs (legal entities) and that she has knowledge and is expected to testify that Defendants have withheld salaries and other payments from folks on the Transtar project.  Ms. Hassell's personal knowledge regarding the funding and appropriation of monies, among other things, are material to the allegations made by her and Plaintiffs in this lawsuit.  Without question, Ms. Hassell is a material witness necessary to establish essential facts of contested issues in this case.

4.      When a lawyer is or may be a witness necessary to establish an essential fact, Texas Disciplinary Rule of Professional Conduct 3.08 ***prohibits*** the lawyer from acting as both an advocate and a witness in an adjudicatory proceeding.  Although Rule 3.08 was promulgated

as a disciplinary standard rather than one of procedural disqualification, Texas courts have recognized that the rule provides guidelines relevant to a disqualification determination.  As such, it is well-settled that when a lawyer becomes a witness, the lawyer is disqualified to act as a lawyer in the case.

5.       Serving as both an advocate and witness for Plaintiffs in this lawsuit creates confusion for the finder of fact and will unfairly prejudice Defendants in violation of both the professional rules and Texas common law as described below.  By way of example, the "Rule" could never be invoked as to Ms. Hassell, and her  testimony would cause confusion to the jury and any fact finder in light of the fact that it is coming from Plaintiffs' trial counsel, after hearing other witnesses, and that such confusion would keep the jury and any fact finder from fairly evaluating the case on the merits.  Confusion of the jury and any fact finder over whether Ms. Hassell's statements as advocate-witness should be taken as proof or as an analysis of the proof will absolutely prejudice Defendants.  Her dual role is exactly the kind of circumstance that the rules of professional conduct seek to prevent.

6.       Ms. Hassell should be prevented or disqualified from acting as an advocate before this pending adjudicatory proceeding when she knows or believes that she is or may be a witness necessary to establish essential facts on behalf of Plaintiffs.

### B.       BACKGROUND

7.       In 2012, Plaintiffs and Defendants formed a joint venture and executed a Construction Joint Venture Agreement (the "JVA") dated July 1, 2012.  See Exhibit "C".  Over a year later, on October 15, 2013, Plaintiffs filed their original petition for declaratory judgment alleging Defendants breached their JVA with Plaintiffs, among other claims arising out of the JVA.  See Exhibit "D".

4815-9279-3111.v1

8.      Specifically, Plaintiffs allege that Defendants breached the JVA by taking over assets of Plaintiffs and using them to conduct work on projects that were not included in the joint venture.  Plaintiffs allege that no accounting was made of the joint venture and non-joint venture projects in which Defendants allegedly used assets of Plaintiffs in violation of the JVA. Plaintiffs also maintain that Defendants have not reimbursed Plaintiffs for reasonable and necessary joint venture expenses and for the use of equipment by the joint venture in violation of the JVA.

9.      As an integral witness in this case, Ms. Hassell has relevant personal knowledge regarding essential facts of the contested issues enumerated in Plaintiffs' original petition.  Ms. Hassell was personally involved in several aspects of the joint venture.  With regards to the Transtar projects complained of by Plaintiffs in this matter, Ms. Hassell, along with her husband, Mr. Royce Hassell, claimed to be indemnitors and third party beneficiaries to the funding arrangements with Defendants on the joint venture projects.  Ms. Hassell made representations to others that she was part owner of Plaintiffs.  Ms. Hassell claimed that Defendants were withholding salaries, and instead paying their own salaries on the projects.  Ms. Hassell indicated that representatives of Defendants were paying for health insurance with monies from the projects.  Ms. Hassell also indicated that she has factual knowledge that Defendants have withheld monies from subcontractors, causing them to abandon the projects.

10.      In her role as witness-advocate, Ms. Hassell indicated that Defendants have "unilaterally and completely repudiated the existence of any joint venture" and "ignored the Construction Joint Venture by appropriating all joint venture income, work and plaintiffs' employees for themselves and utilizing the funds to pay their own overhead."  See Exhibit "E".

4815-9279-3111.v1

11.     It is undisputed that Ms. Hassell's statements are central to the contested issues plead by Plaintiff.  It is also undisputed that Ms. Hassell's deposition and testimony at trial could be essential to the issues in this matter.  She was instrumental in making of decisions moving forward on construction joint venture projects, and she was instrumental in advising Plaintiffs on ongoing projects.

## C.     ARGUMENTS AND AUTHORITIES

12.     When a lawyer becomes a witness, the lawyer is disqualified to act as a lawyer in the case. *See Mauze v. Curry*, 861 S.W.2d 869, 870 (Tex. 1993); see also Tex. Disc. R. Prof'l Conduct 3.08 (prohibiting an attorney from appearing both as a witness and as counsel).  When, as here, a lawyer's testimony may be necessary to establish an essential fact on its client's behalf, the court should disqualify the lawyer. *See In re Bahn*, 13 S.W.3d 865, 874 (Tex. App.—Fort Worth 2000, orig. proceeding).

13.     The Texas Supreme Court has repeatedly observed that the Texas Disciplinary Rules of Professional Conduct guide when counsel is disqualified in litigation. *In re Epic Holdings,* 985 S.W.2d 41, 48 (Tex. 1998). The Disciplinary Rules, unlike the ethical considerations, are mandatory because they establish the minimum level of conduct below which no lawyer can fall. *Warnow v. Nonett*, 791 S.W.2d 515,519 (Tex. App. - Corpus Christi 1989, writ denied), *citing to United Pacific Insurance Co. v. Zardenetta*, 661 S.W.2d 244, 249 (Tex.App. - San Antonio 1983, orig. proceeding).

14.     If the lawyer's role as both an advocate and a witness will cause the opposing party actual prejudice, the court should disqualify the lawyer. *In re Sanders*, 153 S.W.3d 54, 57 (Tex. 2004).  Rule 3.08 recognizes the potential prejudice and jury confusion created by a lawyer

4815-9279-3111.v1

acting in a dual capacity as both a lawyer/advocate and as a witness.  Comment 4 to Rule 3.08 explains:

> In all other circumstances, the principal concern over allowing a lawyer to serve as both an advocate and witness for a client is the possible confusion that those dual roles could create for the finder of fact. . . If . . . the lawyer's testimony concerns a controversial or contested matter, combining the roles of advocate and witness can unfairly prejudice the opposing party. A witness is required to testify on the basis of personal knowledge, while an advocate is expected to explain and comment on evidence given by others. It may not be clear whether a statement by an advocate-witness should be taken as proof or as an analysis of the proof.

See TEX. DISCIPLINARY R. PROF'L CONDUCT 3.08, comment 4.

15.     The Texas Supreme Court has repeatedly held that the confusion to the jury when one person acts as both witness and advocate is sufficient to justify disqualification. *See, e.g., Anderson Producing Inc. v. Koch Oil Co.*, 929 S.W.2d 416, 422 (Tex. 1996).  In following Comment 4 and citing to prior precedent on this issue, the court in *In re Acevedo* set forth the following policy considerations underlying Rule 3.08: "(1) the attorney may be more impeachable for interest and, therefore, a less effective witness; (2) the attorney's role as advocate may handicap the opposing counsel in challenging the credibility of the attorney; (3) it may place the testifying advocate in the unseemly and ineffective position of arguing his own credibility; and (4) the role of advocate and witness are inconsistent because the function of an advocate is to advance his client's cause and that of a witness is to state facts objectively, and it may be unclear to the fact finder whether a statement by the testifying attorney should be taken as proof or an analysis of the proof." *In re Acevedo*, 956 S.W.2d 770, 773 (Tex.App.--San Antonio 1997, orig. proceeding).

16.     As stated above, Ms. Hassell's dual role as lawyer and witness will unquestionably result in prejudice to Defendants.  **Ms. Hassell has admitted that she will be**

**called to testify as a witness in this case.**  Her deposition will be taken by Defendants. Her testimony will go to the crux of Plaintiffs' claim as well as Defendants' defenses relating to the existence of the JVA, Plaintiffs' claims that Defendants appropriated joint venture income and work for themselves, Plaintiffs' claims that Defendants used funds to pay its overhead, Plaintiffs' breach of contract claim against Defendants and the parties' duties and obligations arising out of the JVA.  Her testimony will be based on personal knowledge.  Her testimony will cause confusion to the jury in light of the fact that it is coming from the Plaintiffs' trial counsel and that such confusion would keep the jury from fairly evaluating the case on the merits.

17.     Ms. Hassell's conclusory and blanket statement that Plaintiffs will suffer some purported undue hardship if she is disqualified is without support.  Plaintiffs have not provided any evidence whatsoever of any undue hardship, and even if such existed it would not override the principles of why Ms. Hassell cannot serve as both a witness (advocate) and counsel.

18.     Therefore, under Rule 3.08 and Texas common law, Ms. Hassell should be disqualified as counsel for Plaintiffs and not be permitted to substitute in as counsel.  It would be unduly prejudicial to the Defendants and confusing to the jury and any fact finder to allow Ms. Hassell to proceed as advocate and witness for Plaintiffs against the Defendants in the declaratory action and contract cause of action.  For the reasons set out above, this Court should disqualify Ms. Silvia Hassell from representing Plaintiffs in this matter against Defendants and deny her motion to be substituted in as lead and only counsel for Plaintiffs.

WHEREFORE, PREMISES CONSIDERED, Defendants Hassell Construction Co., Inc. and Hassell Management Services, LLC respectfully request that this Court deny Plaintiffs' Motion to Substitute Ms. Silvia Hassell as attorney for Plaintiffs, disqualify her from

7

representation of Plaintiffs in this matter, and for such other and further relief, general and special, legal and equitable, to which Defendants may show themselves justly entitled.

Respectfully submitted,

TYLER & DAS

By: _____/s/ Micky Das_____
Micky N. Das, TBN: 05402300
Tyler & Das
Attorneys At Law
2000 Bering Dr., Suite 401
Houston, Texas 77057
(713) 739-1900
Fax: (713) 739-8347

**ATTORNEYS FOR DEFENDANTS
HASSELL CONSTRUCTION CO., INC. AND
HASSELL MANAGEMENT SERVICES, LLC**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been forwarded to the following by facsimile on the 3rd day of January 2014:

_____/s/ Micky Das_____
Micky N. Das

# EXHIBIT C

1/24/2014 3:14:39 PM
Chris Daniel - District Clerk Harris County
Envelope No. 297225
By: ALEX CASARES

CAUSE NO. 2013-61995

| | | |
|---|---|---|
| R. HASSELL & CO, INC.; | § | IN THE DISTRICT COURT |
| R. HASSELL BUILDERS, INC.; | § | |
| R. HASSELL HOLDING CO., INC; | § | |
| G.R. GROUP RESOURCES, LLP | § | |
| | § | |
| PLAINTIFFS, | § | |
| | § | |
| VS. | § | 125TH JUDICIAL DISTRICT |
| | § | |
| HASSELL CONSTRUCTION CO., INC.; | § | |
| HASSELL MANAGEMENT | § | |
| SERVICES, LLC | § | |
| | § | |
| DEFENDANTS | § | HARRIS COUNTY, TEXAS |

**DEFENDANTS' REPLY TO PLAINTIFFS' RESPONSE REGARDING
PLAINTIFFS' MOTION TO SUBSTITUTE COUNSEL**

TO THE HONORABLE JUDGE OF SAID COURT:

Defendants Hassell Construction Co., Inc. and Hassell Management Services, LLC ("Defendants") file this reply to R. Hassell & Co, Inc., R. Hassell Builders, Inc., R. Hassell Holding Co., Inc., and G.R. Group Resources, LLP's ("Plaintiffs") response regarding Plaintiffs' motion to substitute Silvia Hassell as counsel for and on behalf of Plaintiffs, subject to and without waiving Defendants' motion to compel arbitration and abatement pending arbitration against Plaintiffs, and would respectfully show as follows.

**I.**

1.     Subject to and without waiving Defendants' motion to compel arbitration, Defendants do not object to the general proposition of Plaintiffs' request to substitute counsel in this matter; however, Defendants object to Ms. Silvia Hassell's role as counsel, witness and party in this litigation on behalf of Plaintiffs.

1

2.       It is undisputed that Ms. Silvia Hassel will and "can be expected to testify in the matter" and has personal knowledge of relevant facts in this case.  In their response, Plaintiffs have not disputed or denied that Ms. Hassell was personally involved in several aspects of the joint venture.  Plaintiffs have not disputed that Ms. Hassell was involved in the bid process and/or the process of securing projects contemplated by the joint venture.  Plaintiffs have not disputed that Ms. Hassell has personal knowledge of the  funding arrangements with Defendants on the joint venture projects which are the primary matters at issue in this case.  Plaintiffs admitted in their response that Plaintiffs are wholly owned by Ms. Hassell and her husband.

3.       Ms. Hassell's personal knowledge regarding the funding and appropriation of monies, among other things, are material to the allegations made by her and Plaintiffs in this lawsuit.  Without question, Ms. Hassell is a material witness necessary to establish essential facts of contested issues in this case.  When a lawyer is or may be a witness necessary to establish an essential fact, Texas Disciplinary Rule of Professional Conduct 3.08 *prohibits* the lawyer from acting as both an advocate and a witness in an adjudicatory proceeding.

A.    **Plaintiffs Have Not Shown Any Substantial or Undue Hardship**

4.       Plaintiffs maintain that Ms. Hassell's disqualification or failure to substitute in as counsel will cause undue hardship on Plaintiffs under Rule 3.08 of the Texas Disciplinary Rules of Professional Conduct    Plaintiffs' claim is improper and without support.

5.       As a matter of law, Plaintiffs must provide evidence that they will suffer some substantial and undue hardship if Ms. Hassell is prevented from acting as counsel for Plaintiffs. *In re Guidry*, 316 S.W.3d 729, 740 (Tex.App.-Houston [14th Dist.] 2010, orig. proceeding). Plaintiffs have not provided any evidence whatsoever of any undue hardship, and even if such existed it would not override the principles of why Ms. Hassell cannot serve as both a witness

(advocate) and counsel.  In lieu of providing evidence, Plaintiffs maintain that it has "informed" Defendants of circumstances constituting a substantial hardship.

6.      Plaintiffs cannot avoid the spirit of Rule 3.08 by making blanket allegations without support of their purported hardship.  If Plaintiffs are claiming some financial hardship, Plaintiffs have not provided any financial statements, tax returns, or other financial information demonstrating same.     Moreover, Plaintiffs have failed to show how Ms. Hassell's disqualification and/or prohibition of acting as counsel for Plaintiffs "would work a substantial hardship on the client because of the distinctive value of the lawyer ... as counsel in the particular case." *Warrilow v. Norrell*, 791 S.W.2d 515, 520 (Tex.App.1989).  This "substantial hardship" exception generally contemplates an attorney who has some expertise in a specialized area of law such as patents, and the burden is on the attorney seeking to continue representation to prove distinctiveness.  *Id.* at 520. *See also Supreme Beef Processors, Inc. v. American Consumer Industries, Inc.*, 441 F.Supp. 1064, 1068–69 (N.D.Texas 1977).

7.      This case is a relatively straightforward civil case; neither the contested issues nor the factual background are particularly complex.  Further, Plaintiffs wholly failed to assert any "distinctiveness" regarding Ms. Hassell's representation of Plaintiffs as required by Texas law. *Warrilow,* 791 S.W.2d at 520.  Thus, a change in counsel will impose no hardship whatsoever upon Plaintiffs.

8.      Plaintiffs' reliance on *In re Bahn,* 13 S.W.3d 865, 872 (Tex.App.-Fort Worth 2000, orig. proceeding) is misplaced.  *Bahn* discusses whether notice of a substantial hardship was prompt.  In fact, in *Bahn,* the court held that  testimony of lead attorney as witness would go to an essential fact of collector's case and could cause confusion that would keep jury from fairly evaluating case on the merits, and thus, disqualification of attorney from the trial was warranted.

3

9.      Notwithstanding, there is no automatic hardship exception as alleged by Plaintiffs. Plaintiffs are required to provide evidence of substantial hardship and show "distinctiveness" of Ms. Hassell's expertise. *In re Guidry,* 316 S.W.3d 729, 740 (Tex.App.-Houston [14th Dist.] 2010, orig. proceeding; *Warrilow v. Norrell*, 791 S.W.2d 515, 520 (Tex.App.1989); *See also Supreme Beef Processors, Inc. v. American Consumer Industries, Inc.*, 441 F.Supp. 1064, 1068– 69 (N.D.Texas 1977). Plaintiffs have failed to provide any evidence to support its conclusory claim that the undue hardship exception applies in this case.

10.      Serving as both an advocate and witness for Plaintiffs in this lawsuit creates confusion for the finder of fact and will unfairly prejudice Defendants in violation of both the professional rules (Rule 3.08 of the Tex. Disc. P. Rules of Prof'l Conduct) and Texas common law. Confusion of the jury and any fact finder over whether Ms. Hassell's statements as advocate-witness should be taken as proof or as an analysis of the proof will absolutely prejudice Defendants under Rule 3.08. Her dual role is exactly the kind of circumstance that the rules of professional conduct seek to prevent.

11.      Ms. Hassell should be prevented or disqualified from acting as an advocate before this pending adjudicatory proceeding when she knows or believes that she is or may be a witness necessary to establish essential facts on behalf of Plaintiffs.

**B.      Defendants Do Not Have Any Conflicts of Issue**

12.      Plaintiffs have written over 5 pages of their response discussing their unfounded assertions about a conflict of interest of Defendants. Plaintiffs claim that there exists a conflict of interest with the law firm of Coats | Rose. Coats | Rose is not a party to this litigation, is not an attorney of record to this litigation, and has not appeared on behalf of any party in this Court. Any claims of conflict of interest are moot and not applicable to Plaintiffs' motion.

4

Notwithstanding, there is no conflict of interest with Coats | Rose. The attorney appearing on behalf of Defendants is Micky Das of Tyler & Das, and there is no conflict of interest with Micky Das.

13.     Plaintiffs are distracting the court with baseless allegations regarding a conflict of interest to avoid Rule 3.08 and Texas common law against Ms. Hassell's dual role as lawyer and witness which will unquestionably result in prejudice to Defendants.    Plaintiffs are manufacturing some purported conflict of interest that does not exist.

14.     The facts are undisputed.   **Ms. Hassell has admitted that she will be called to testify as a witness in this case.**  Her deposition will be taken by Defendants. Her testimony will go to the crux of Plaintiffs' claim as well as Defendants' defenses relating to the existence of the JVA, Plaintiffs' claims that Defendants appropriated joint venture income and work for themselves, Plaintiffs' claims that Defendants used funds to pay its overhead, Plaintiffs' breach of contract claim against Defendants and the parties' duties and obligations arising out of the JVA. Her testimony will be based on personal knowledge. Her testimony will cause confusion to the jury in light of the fact that it is coming from the Plaintiffs' trial counsel and that such confusion would keep the jury from fairly evaluating the case on the merits.

WHEREFORE, PREMISES CONSIDERED, Defendants Hassell Construction Co., Inc. and Hassell Management Services, LLC respectfully request that this Court deny Plaintiffs' Motion to Substitute Ms. Silvia Hassell as attorney for Plaintiffs, disqualify her from representation of Plaintiffs in this matter, and for such other and further relief, general and special, legal and equitable, to which Defendants may show themselves justly entitled.

Respectfully submitted,

TYLER & DAS

By:        /s/ Micky Das
           Micky N. Das, TBN: 05402300
           Tyler & Das
           Attorneys At Law
           2000 Bering Dr., Suite 401
           Houston, Texas 77057
           (713) 739-1900
           Fax: (713) 739-8347

**ATTORNEYS FOR DEFENDANTS
HASSELL CONSTRUCTION CO., INC. AND
HASSELL MANAGEMENT SERVICES, LLC**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been forwarded to the following by facsimile on the 24th day of January 2014:

           /s/ Micky Das
           Micky N. Das

6

# EXHIBIT D

```
 1              IN THE UNITED STATES BANKRUPTCY COURT

 2             FOR THE SOUTHERN DISTRICT OF TEXAS

 3                      HOUSTON DIVISION

 4   IN RE:                     §     CASE NO. 18-31189-H1-7
                                §     HOUSTON, TEXAS
 5   HASSELL 2012 JOINT VENTURE, §     FRIDAY,
                                §     MARCH 9, 2018
 6              DEBTOR.          §     11:00 A.M. TO 11:19 A.M.
     ********************************************************
 7   R. HASSELL AND COMPANY, INC. §    CASE NO. 18-3042-H1-ADV
                                §     HOUSTON, TEXAS
 8   VERSUS                     §     FRIDAY,
                                §     MARCH 9, 2018
 9   HASSELL CONSTRUCTION, INC.  §     11:00 A.M. TO 11:19 A.M.

10

11                    EMERGENCY MOTION HEARING
                       (TELEPHONIC CONFERENCE)

12             BEFORE THE HONORABLE MARVIN ISGUR
                 UNITED STATES BANKRUPTCY JUDGE

13

14

15        APPEARANCES:                    SEE NEXT PAGE

16

17

18

19

20                  TRANSCRIPTION SERVICE BY:

21             JUDICIAL TRANSCRIBERS OF TEXAS, LLC
                     935 ELDRIDGE ROAD, #144
22                   SUGAR LAND, TEXAS 77478
               Tel: 281-277-5325 ▼ Fax: 281-277-0946
23                  www.judicialtranscribers.com

24

25        Proceedings recorded by electronic sound recording;
          transcript produced by transcription service.
```

Unofficial Copy Office of Christ Daniel District Clerk

2

```
 1                          APPEARANCES:
                       (APPEARING TELEPHONICALLY)
 2


 3   FOR R. HASSELL BUILDERS,
     ET AL:                       LEONARD H. SIMON, ESQ.
 4                                ROBERT PENDERGRAFT, ESQ.
                                  PENDERGRAFT & SIMON, LLP
 5                                THE RIVIANA BUILDING
                                  2777 ALLEN PARKWAY, SUITE 800
 6                                HOUSTON, TEXAS  77019
                                  713-737-8207
 7
     FOR THE MOVANTS:
 8   R. HASSELL AND COMPANY;
     R. HASSELL BUILDERS;
 9   R. HASSELL HOLDING COMPANY;
     GR GROUP RESOURCES;
10   ROYCE HASSELL; AND
     SYLVIA HASSELL:              DERRICK CARSON, ESQ.
11                                JONATHAN PELAYO, ESQ.
                                  CHRISTIAN PEREZ, ESQ.
12                                LOCKE LORD, LLP
                                  JPMORGAN CHASE TOWER
13                                600 TRAVIS
                                  HOUSTON, TEXAS   77002
14                                713-226-1200

15   FOR THE MOVANTS:
     HASSELL CONSTRUCTION CO.;
16   HASSELL MANAGEMENT SERVICES;
     JAMES C. HASSELL;
17   INTERVENORS: PHILIP HASSELL;
     MICHAEL HASSELL;
18   SEAN HASSELL; JASON HASSELL;
     AND MICHAEL HASSELL, TRUSTEE
19   OF JAMES C. HASSELL
     INTERVIVOS TRUST:            BOGDAN RENTEA, ESQ.
20                                RENTEA & ASSOCIATES
                                  700 LAVACA, SUITE 1400
21                                AUSTIN, TEXAS  78701
                                  512-472-6291
22
                                  RON SATIJA, ESQ.
23                                HAJJAR PETERS, LLP
                                  3144 BEE CAVES ROAD
24                                AUSTIN, TEXAS  78746
                                  512-637-4956
25
```

1          HOUSTON, TEXAS; FRIDAY, MARCH 9, 2018; 11:00 A.M.

2                    (TELEPHONIC CONFERENCE)

3          THE COURT:  All right.  Good afternoon.  We are

4  here for a telephonic hearing on an emergency basis in a

5  recently-filed involuntary petition in a removed adversary

6  proceeding.  The involuntary is Hassell 2012 Joint Venture,

7  18-31189.  The Adversary Proceeding is R. Hassell and

8  Company, Inc. versus Hassell Construction, Inc., 18-3042.

9          We'll take appearances on the telephone.  We have

10  no appearances in court, as expected.  If you wish to

11  appear, please press five star on your phone.  If you're

12  just observing, you don't need to press anything.

13          Mr. Simon?

14          MR. SIMON:  Leonard Simon, S-I-M-O-N, along with

15  my partner, Robert Pendergraft.

16          MR. PENDERGRAFT:  Good morning, Your Honor.

17          THE COURT:  Good morning.  From 713-238-3612.

18          MR. CARSON:  Also on the call, Your Honor,

19  is Derrick Carson from Locke Lord, with my partner,

20  Jonathan Pelayo and Christian Perez.

21          THE COURT:  And who do you represent, Mr. Carson?

22          MR. CARSON:  We represent, Your Honor, the

23  Movants but not in this proceeding.  We represent them in

24  the State Court action and all through the arbitration.

25          THE COURT:  And who would that be, who's the

1  Movant?

2          MR. CARSON:  Sure.  R. Hassell and Company;

3  R. Hassell Builders; R. Hassell Holding Company, GR Group

4  Resources, LLP.

5          THE COURT:  Thank you.

6          MR. CARSON:  And also Sylvia Hassell and

7  Royce Hassell.

8          THE COURT:  Thank you.  Mr. Rentea?

9          MR. RENTEA:  (No verbal response).

10         THE COURT:  Mr. Rentea?

11         MR. RENTEA:  Your Honor, good morning.  This

12  is Bogdan Rentea representing the moving parties:

13  Hassell Construction Company, Inc.; Hassell Management

14  Services; James C. Hassell; and Intervenors, Philip Hassell,

15  Michael Hassell, Sean Hassell (phonetic), Jason Hassell and

16  Michael Hassell, as the Trustee of the James C. Hassell

17  Intervivos Trust.

18         THE COURT:  Thank you.  And from an Austin area

19  code, it's 512-637-4956.

20         MR. SATIJA:  Your Honor, this is Ron Satija and I

21  represent -- S-A-T-I-J-A -- and I represent the same parties

22  as Mr. Rentea.

23         THE COURT:  All right.  So, Mr. Satija, what are

24  you trying to accomplish with the involuntary bankruptcy

25  filing?

1          MR. SATIJA:  Your Honor, so obviously you've been

2    through the whole, you know, previous --

3          THE COURT:  Yeah.  Mr. Satija.

4          MR. SATIJA:  -- involuntary case and --

5          THE COURT:  Mr. Satija, what are you trying to

6    accomplish with the involuntary bankruptcy filing?

7          MR. SATIJA:  Your Honor, there is -- right now we

8    have a partner who has --

9          THE COURT:  Mr. Satija?

10          MR. SATIJA:  Yes.

11          THE COURT:  Listen to my question.

12          MR. SATIJA:  Yes.

13          THE COURT:  What are you trying to accomplish

14    with the involuntary bankruptcy filing?

15          MR. SATIJA:  We are trying to bring before this

16    Court a situation where there is property of the Estate that

17    needs to be administered by a bankruptcy court.

18          THE COURT:  All right.  Then is -- in the

19    adversary proceeding, that property is going to be the

20    collection of the arbitration award, right?

21          MR. SATIJA:  Yes, Your Honor --

22          THE COURT:  Okay.

23          MR. SATIJA:  -- as well as --

24          THE COURT:  Okay.

25          MR. SATIJA:  I mean, with clarification and --

1          THE COURT:  So, Mr. Rentea --

2          MR. SATIJA:  -- once we --

3          THE COURT:  So, Mr. Rentea, are --

4          MR. SATIJA:  -- clarified and clarified --

5          THE COURT:  Mr. Rentea, is your client prepared

6   to deposit the money into the Court's Registry so that we

7   can administer it and prepared to release the liens in

8   accordance with the arbitration award?

9          MR. RENTEA:  Only that portion that we believe is

10  an uncontested amount of profits owed to one of the partners

11  by the Partnership.

12         THE COURT:  No.  It all comes in, right?  And

13  then --

14         MR. RENTEA:  Excuse me?

15         THE COURT:  If what's going to happen is: we're

16  going to have an involuntary proceeding to figure out how to

17  allocate it, then the Judgment and the arbitration award

18  needs to be paid or else let's go to the State Court so that

19  it can be paid and I'll order it all to come into here to

20  the Registry.

21         But why wouldn't we at least collect it all if

22  the goal is what I was told by Mr. Satija?  The money all

23  has to come in, right?

24         MR. RENTEA:  Correct, there's currently an

25  amount.

1            THE COURT:  Then -- and just -- then --

2            MR. RENTEA:  However, Judge, that it's

3    undisputed --

4            THE COURT:  I don't care what's disputed.

5            MR. RENTEA:  -- that income is.

6            THE COURT:  I don't care what's disputed or

7    undisputed.  I have an arbitration award.  If that gets

8    confirmed, it's all undisputed.  If you want to dispute it,

9    go dispute it.

10           But if the purpose of the involuntary is to see

11   that the money is allocated outright, then why wouldn't we

12   either get the money deposited into our Registry for the

13   full amount of the arbitration award or let the State Court

14   decide what to do with the arbitration award and then have

15   all the money put into the Court's Registry?  It looks to me

16   like that the fiduciaries to this Estate who are alleging

17   that they are partners are trying not to collect the money

18   into the Estate, not the other way around.  And Mr. Satija

19   told me the right thing: he's trying to get money into the

20   Estate.  Let's get it in.

21           MR. SATIJA:  Your Honor, Ron Satija again for the

22   Movants.  But the amount, as we speak, is incorrect.  There

23   is an undisputed amount but there's also a disputed amount

24   and --

25           THE COURT:  There is an arbitration award.

Unofficial Copy Office of Chris Daniel District Clerk

8

```
 1           If you don't think it ought to be confirmed, why
 2   isn't the State Court going to decide that question?  And
 3   why in the world are you arguing, Mr. Satija, if you're
 4   representing a partner of the Partnership, that the
 5   Partnership shouldn't collect more, not less?  Let's be
 6   careful about what position you're taking.
 7           MR. SATIJA:  No, no, no.  And I do understand
 8   that, Your Honor.  The problem at that point is that the
 9   arbitrators have decided -- and the math is completely
10   incorrect in the arbitration award and obviously
11   Mr. Rentea can address that, you know, more clearly than I
12   can but --
13           THE COURT:  Why is he capable --
14           MR. SATIJA:  -- if there is --
15           THE COURT:  What is Mr. Rentea incapable of doing
16   that to the State Court?
17           MR. SATIJA:  I think there's --
18           THE COURT:  Mr. Rentea, why can't you do that at
19   the State Court?
20           MR. RENTEA:  Well, we can do it in State Court,
21   but I just thought that once a bankruptcy was filed, the
22   proper place to have all issues addressed was in Bankruptcy
23   Court, not bring you a decision from a state court.
24           THE COURT:  Well, I appreciate that courtesy and
25   I don't need it.  I'll remand the case, if that's why we did
```

1   it.  Let's let the State Judge decide what should happen.

2   And then I agree with you that if we have -- if the money

3   belongs to the Joint Venture, whatever gets collected gets

4   deposited into the Registry until we figure out if we're

5   going to have a Joint Venture case or not.  We'll figure out

6   later whether we have a Joint Venture case.

7           Why shouldn't I remand if the only reason you did

8   that was out of courtesy to me?

9           MR. SATIJA:  Your Honor, I mean --

10          THE COURT:  All right.

11          MR. SATIJA:  -- I wouldn't say it's out of

12  courtesy.  I would say there's $4.9 -- this is Mr. Satija

13  again, I apologize.  There's $4.9 million that is supposedly

14  owed in partnership profits to the Royce Hassell entities

15  and what the arbitrator doesn't address at all is that means

16  that there's essentially $15 million owed to the Hassell

17  Construction Company and the removing party entities.

18          THE COURT:  Yes, so why would you --

19          MR. SATIJA:  And that's an issue --

20          THE COURT:  Tell me again --

21          MR. SATIJA:  -- the bankruptcy --

22          THE COURT:  Tell me again why, as a partner of

23  this entity, would you want to argue that it should collect

24  less?

25          MR. SATIJA:  No.  If there's $20 million owed,

1  then I'm arguing that there's money out there to be

2  collected, there's more money --

3          THE COURT:  Well, all that's in there --

4          MR. SATIJA:  -- out there.

5          THE COURT:  All that's in there that needs to be

6  paid over right now is a million-two and release the liens.

7          If everybody's agreeing it's at least a million-

8  two, doesn't that just resolve it?  I'll keep it, you put

9  the money here in the Registry.

10          MR. SATIJA:  Mr. Rentea, what is the amount

11  that's undisputed?

12          MR. RENTEA:  Your Honor, Bogdan Rentea.

13  Your Honor, there's not a million-two owed.  The arbitrators

14  netted out amounts owed and came up with the $1.2 million.

15          THE COURT:  Right.

16          MR. RENTEA:  We believe that if the proper

17  profits are calculated, we are owed half a million dollars

18  on a net basis.

19          THE COURT:  I understand that.

20          MR. RENTEA:  That's the profit of --

21          THE COURT:  Go litigate that.

22          But way are you bringing it to me?

23          MR. RENTEA:  Because once the Petition was filed,

24  I thought that this core proceeding should be in front of

25  you versus staying in State Court.  That's --

1             THE COURT:  Okay.  Well, that's wrong.  I'm

2   remanding.

3             MR. RENTEA:  -- what our (indiscernible).

4             THE COURT:  If that's the reason, then I'm

5   remanding.

6             MR. SATIJA:  Your Honor, this is Mr. Satija

7   again.  You know, it's -- my feeling is that -- and the

8   reason that we filed the bankruptcy is that there's an issue

9   here where there is -- a partner is filing an involuntary to

10  determine and to -- essentially to dissolve a partnership,

11  to determine the Partnership assets.  We do have an

12  arbitration award, but the arbitration award shouldn't

13  necessarily be the guiding light.  It shouldn't necessarily

14  be the loadstone as far as where that's heard, whether

15  that's heard in the State Court or whether it's heard in the

16  Federal Court.

17            Our feeling is: we have an estate, the Estate has

18  certain assets, that we satisfy the Section 303(b)(3)(A)

19  criteria and, you know, those assets -- you know, they're

20  undisputed that we don't have a problem with or happily can

21  come into this Court, and then this Court can make a

22  determination, which it's in the best position to do, as to

23  what the remaining assets of the Bankruptcy Estate are.

24            THE COURT:  So let me ask you once again because

25  that's a different answer than where we started.

1    What was the purpose of the filing of the

2 Involuntary Petition, what are you trying to accomplish?  If

3 what you're trying to accomplish is to --

4    MR. SATIJA:  Filing the Involuntary --

5    THE COURT:  If what you're trying to accomplish

6 is to minimize money into the Estate, tell me that.  But if

7 you're trying to maximize money into the Estate, we should

8 remand.

9    What are you trying to do?

10   MR. SATIJA:  We're trying to determine the

11 correct amount of money into the Estate, Your Honor.

12   THE COURT:  No, you're not.

13   MR. SATIJA:  What -- I would --

14   THE COURT:  Why would you file -- why would you

15 bother to file an involuntary to figure out the correct

16 amount of money?  I asked not why you remanded it -- why you

17 removed the adversary.  I asked why you filed the

18 involuntary.

19   Why did you file the involuntary?

20   MR. SATIJA:  We filed the involuntary because

21 under 303, a partner has a right to file the involuntary to

22 basically determine the debts and assets of the Partnership

23 and make a proper distribution when there's no authority to

24 file a voluntary case.

25   THE COURT:  That's telling me a legal basis on

1  which it was legal to file it.  It doesn't tell me why you

2  filed it.

3          Did you file it to minimize of to maximize the

4  money coming into the Estate or neither one?

5          MR. SATIJA:  Well, I mean, once the bankruptcy is

6  filed and all the assets are determined, it's -- I don't

7  know that it's a question of minimization or maximization.

8  It's a question of paying the creditors, and the creditors

9  will get paid the amount that they deserve from the

10 Bankruptcy Estate.  That's --

11         THE COURT:  So why did you file the involuntary

12 bankruptcy, what is the -- what are you trying to

13 accomplish?

14         MR. SATIJA:  We're trying to accomplish having

15 the Court that has -- that's a proper court for jurisdiction

16 over the dissolution of the Partnership essentially, to

17 essentially dissolve the Partnership, determine the correct

18 assets and debts of the Partnership, get everybody paid and

19 on their merry way.

20         THE COURT:  And why shouldn't we allow the State

21 Court to determine how much is owed under the arbitration

22 award?

23         MR. SATIJA:  In connection with the filing of

24 this case, Your Honor, I think it's allowable to remove the

25 case, you know, and there's not an emergency.  I mean,

1   that's one thing that I do want to address here.

2               THE COURT:  Well, why did you wait until the --

3               MR. SATIJA:  In any --

4               THE COURT:  -- day before the hearing to file it?

5               MR. SATIJA:  -- situation I --

6               THE COURT:  Why did you wait till the day before

7   the hearing to file this?  You've known about it for a long

8   time.  You waited till the day before to file it.

9               Why did you do that?

10              MR. SATIJA:  This is the reason, Your Honor --

11              THE COURT:  Okay.

12              MR. SATIJA:  -- that waited until the day

13  before --

14              THE COURT:  Okay.

15              MR. SATIJA:  -- is that there's 90 days after an

16  arbitration award is entered to dispute the finding of the

17  Court and we're -- we -- yesterday was the 91st day and that

18  means that there was some -- there's some debts that we're

19  disputing obviously from the arbitration award but there are

20  some debts that are undisputed.  They filed a motion to

21  confirm the award.  We filed a motion to vacate or modify.

22  And so obviously their -- they think that some of those

23  debts are undisputed since they're filing a motion to

24  confirm it, and we are not disputing certain of those debts.

25  So yesterday is the day that --

```
1          THE COURT:  The arbitration award has nothing to
2  do on its face with the debts of Hassell 2012 Joint Venture.
3  It has to do --
4          MR. SATIJA:  Your Honor, it's also --
5          THE COURT:  -- with an award --
6          MR. SATIJA:  -- that if we're going to satisfy --
7  I think it's 303(h) that says the business is not paying its
8  debts, its undisputed debts -- the previous case was
9  dismissed.  The previous bankruptcy case was dismissed
10 because there -- you know, there were undisputed debts.
11         Here there are undisputed debts and it gives us
12 the mechanism under 303 to file it --
13         THE COURT:  Yeah, I'm not --
14         MR. SATIJA:  -- and that has happened.
15         THE COURT:  I am not today going to dismiss --
16         MR. SATIJA:  And the reason that I say that
17 there's no emergency or that the emergency is minimal is
18 because when I normally see these situations, Your Honor,
19 it's filed at the last minute, a jury is impaneled,
20 witnesses are coming in from other jurisdictions.  And in
21 this case, we have a bench trial and it's purely on the
22 Record with no witnesses.
23         So, I mean, for Mr. Simon, you know, to file
24 this, you know, on such a quick turnaround basis and not
25 give us the ability to respond with due process and make
```

1  these arguments, you know, in the Bankruptcy Court, there is
2  not an emergency.  The Court can easily -- the State Court,
3  if it hears it in a week or if it hears it in a month, it's
4  not going to make that much of a difference.

5      And Mr. Simon contended in his Motion that there's
6  some issue with refinancing of his client's homestead and,
7  Your Honor, we've not been approached to release the lien to
8  have a refinance for the homestead.  And obviously any
9  creditor goes through that analysis, you know.  In Texas, if
10  somebody wants the lien released on their homestead to
11  refinance it, of course we have to look into it and do that.

12          THE COURT:  Well, I'll give you --

13          MR. SATIJA:  I'll --

14          THE COURT:  I will give the responding parties in
15  the arbitration an option: I'm either going to remand the
16  case, or the liens will be released and the funds that are
17  ordered by the arbitration award, which is about a million-
18  two, will be deposited into the Registry.

19          What do you want?

20          MR. SATIJA:  May I ask a question before
21  answering?

22          THE COURT:  Sure.

23          MR. SATIJA:  If it turns out that the award goes
24  the other way and the liens are valid, then wouldn't that be
25  something that this Court should determine and be able to

1  then collect on the liens?  I mean, I feel like we're taking

2  away property of the Estate at that point.

3          THE COURT:  No problem.  I'm happy to --

4          MR. SATIJA:  To those liens.

5          THE COURT:  I am happy to remand.

6          MR. SATIJA:  We would be happy to release the

7  liens on Mr. Simon's client's homestead, of course.

8          THE COURT:  I'm happy to remand.

9          Would you like to comply with the arbitration

10  award by releasing the liens and depositing the funds into

11  the Court's Registry or have the case remanded?  I'm very

12  familiar with this case.  It should never have occurred.

13          Now which do you all want to do?

14          MR. SATIJA:  I'll defer to Mr. Rentea on that and

15  to the client, Your Honor.

16          THE COURT:  Mr. Rentea?

17          MR. RENTEA:  Remand.  Would remand.  There's no

18  $1.2 million to deposit, Your Honor.

19          THE COURT:  All right.  The case is remanded.

20          I find this case was removed in bad faith, never

21  should have been removed.  It was -- you all waited, you

22  removed it till the day before to avoid the State Court

23  hearing and there's absolutely no reason why it should be

24  heard in the Bankruptcy Court.

25          The issue for the Bankruptcy Court is: whether

1  the proceeds of the arbitration award, which are not made in

2  the name of Hassell 2012 Joint Venture, should come into

3  Hassell 2012 Joint Venture?

4          As to whether or not the bankruptcy case ought to

5  be dismissed, Mr. Simon, I'll let you address that but I

6  don't see an emergency on that question and I'm inclined for

7  that just to come up in the ordinary course.

8          MR. SIMON:  Well, Your Honor, if that's your

9  decision on that, I'm going to defer to you on it.  We do

10  want the case remanded.  We want to go forward with our

11  hearing.  Hopefully we can still go forward with it today at

12  1:30.

13          THE COURT:  All right.  We'll enter the Order

14  right away.  I'm going to remand the case.  I will carry the

15  Joint Venture to allow an ordinary response to be filed and

16  we'll determine whether to dismiss it, not on an emergency

17  basis.

18          Adversary 18-3042 is remanded.  I don't want to

19  see more games like this.

20          MR. SIMON:  Your Honor, what about sanctions for

21  bad faith removal?

22          THE COURT:  Well, that's not going to happen

23  today.  There's no emergency on that.

24          MR. SIMON:  Okay.

25          THE COURT:  All right.

1        MR. SIMON:  All right.  That's fine.

2        THE COURT:  We're in adjournment.

3        MR. SIMON:  Thank you.

4     (These proceedings concluded at 11:19 a.m.)

5                    * * * * *

6        *I certify that the foregoing is a correct*

7  *transcript to the best of my ability produced from the*

8  *electronic sound recording of the proceedings in the above-*

9  *entitled matter.*

10 */S/ MARY D. HENRY*

11 *CERTIFIED BY THE AMERICAN ASSOCIATION OF*

12 *ELECTRONIC REPORTERS AND TRANSCRIBERS, CET**337*

13 *JUDICIAL TRANSCRIBERS OF TEXAS, LLC*

14 *JTT TRANSCRIPT #58332*

15 *DATE FILED:  MARCH 14, 2018*

16

17

18

19

20

21

22

23

24

25

Unofficial Copy Office of Chris Daniel District Clerk

# EXHIBIT E

1/22/2014 11:08:19 AM
Chris Daniel - District Clerk Harris County
Envelope No. 269664
By: ALEX CASARES

**CAUSE NO. 2013-61995**

| | | |
|---|---|---|
| R. HASSELL & CO., INC., et al, | § | IN THE DISTRICT COURT OF |
| Plaintiffs, | § | |
| | § | |
| v. | § | HARRIS COUNTY,   T E X A S |
| | § | |
| HASSELL CONSTRUCTION CO., | § | |
| INC., et al, | § | |
| Defendants. | § | 125th JUDICIAL DISTRICT |

**Plaintiffs' Response In Opposition to Defendants'
Motion to Reconsider Order Substituting Counsel
And Request for In Camera Hearing**

TO THE HONORABLE JUDGE OF SAID COURT:

Plaintiffs ask the Court to deny defendants' "Motion to Reconsider Order" allowing Silvia T. Hassell to substitute in as attorney for plaintiffs.  Defendants' request should be denied because the request is overly broad and, after notice to defendants' counsel, plaintiffs can demonstrate that disqualification of Ms. Hassell would cause the plaintiffs undue hardship.  In support of this Response and request for an *in camera* hearing the plaintiffs would respectfully show the Court as follows:

**I.  Introduction and Legal Authority**

1. The plaintiffs come before this Court in great need of immediate legal and equitable protections from harms being caused by the ongoing wrongful conduct of the defendants as directed by their attorneys. Plaintiffs have been left without an adequate remedy at law and seek this Court's protection.  It would be fundamentally unfair to disqualify Ms. Hassell under the circumstances of this case.  Part III of this Response details the conduct of the defendants.  Part IV of this Response details how the defendants have been directed in their course of conduct by attorneys who labor under multiple conflicts of interests which have worked to the detriment of both the plaintiffs and the defendants herein.

### A. Defendants' Request is Overly Broad and Is Part of an Effort to Silence Ms. Hassell's Objections to the Multiple Conflicts of Interest of the Attorneys for the Defendants

2.   Defendants' request to disqualify Ms. Hassell is overly broad in that it seeks the disqualification of Ms. Hassell from acting as "attorney, lawyer or legal advocate for on behalf of Plaintiffs in this matter."  (Defendants' proposed "Order" attached as Exhibit A.) The seeking of this overly broad prohibition is a further attempt by counsel for defendants to prevent Ms. Hassell from serving as attorney for the plaintiffs in any manner.  Counsel for defendants have desired to silence Ms. Hassell's asserted continuing objections to the multiple conflicts of interest of attorneys for the law firm of Coats Rose who have been representing the defendants in this litigation.

3.   Defendants base their motion on Rule 3.08 of the Texas Rules of Professional Conduct.  "Rule 3.08 is grounded principally on the belief that the finder of fact may become confused when one person acts as both advocate and witness." *Anderson Producing, Inc. v. Koch Oil Co.,* 929 S.W. 2d (Tex. 1996.)  As such Comment 8 to Rule 3.08 explains that "Rule 3.08 does not prohibit the lawyer who may or will be a witness from participating in the preparation of a matter for presentation to a tribunal.  *See,* TEX. DISCIPLINARY R. PROF'L CONDUCT 3.08 cmt. 8."  *In re Bahn*, 13 S.W.3d 865 at 873 (Tex. Civ. App. – Forth Worth 2000, orig. proceeding).  Even an attorney who might otherwise have been disqualified from representation at trial "can continue to participate in the client's case until trial commences; he may continue to assist in pretrial matters such as drafting pleadings, engaging in settlement negotiations, and assisting in trial strategy."  *Id,.* at 874, citing *Anderson Producing Inc. v. Koch Oil Co.,* 929 S.W.2d 416, 422 (Tex.1996).

4.  The overly broad prohibitions against Ms. Hassell began after she objected to Coats Rose's accepting of representation of the defendants against the plaintiffs in this matter.  Mr. Gaas immediately began to use the fact that Ms. Hassell is both an attorney and a witness as a two-edged sword to attempt to prevent her participating in this case in any manner as attorney for the plaintiffs:  First, by instructing her to only make communications through him as attorney for the defendants (Exhibit B); and then, by refusing to communicate with her at all on the grounds that she is a witness. (Exhibit C).  The chilling consequences of the conflicts of Coats Rose's has ultimately destroyed any chance of the parties to engage in negotiations to mitigate harms herein or to effectuate a settlement.

5.  A short-lived hope that when attorney Mickey Das appeared and answered this lawsuit on the defendants' behalf instead of an attorney from Coats Rose, it meant that the defendants had finally obtained un-conflicted legal representation.  This hope has been dashed as the plaintiffs have now discovered that Mr. Das has intended to merely follow Mr. Gaas' lead and has engaged in the same type of conduct as Mr. Gaas which includes refusing to take or respond to Ms. Hassell telephone calls and refusing to meet or correspond with Ms. Hassell to discuss possible settlement of all or part of the issues in this and other pending cases.  Mr. Das even went so far as to fail to serve Ms. Hassell with pleadings in this case after she was substituted in as counsel for the plaintiffs by this Court.  It has only just been discovered by the plaintiffs that although Mr. Das is not associated with the law firm of Coats Rose, Mr. Das owes his loyalties to Mr. Gaas in that they have been business partners together for many years, extending from before the time this controversy began.  (Exhibit D hereto is a copy of the Texas Comptroller's Office public filings pertaining to MDPG

Holdings 1, LLC an entity which has been jointly owned and controlled by Mickey Das and

Patrick Gas since 2007.)

### B.  The Undue Hardship Exception to Rule 3.08 Particularly Applies Herein Because it is the Conduct of the Defendants and their Attorneys Which Has Caused the Plaintiffs' Extreme and Continuing Hardships

6.  As set out in Section III to this Response disqualification of Ms. Hassell would

result in substantial hardships to the plaintiffs.  Ms. Hassell has made timely notice of such

hardships to the attorneys for the defendants prior to the filing of the motion to substitute her

as attorney for plaintiffs.  (Exhibit E.)  Thus, the Exception of Rule 3.08(5) applies.

7.  The importance of timely notice is discussed by the Court's in *In re Bahn:*

We note that relator did not ensure Phelps's ability to testify and represent relator by sending a letter to opposing counsel pursuant to rule 3.08(a)(5). See TEX. DISCIPLINARY R. PROF'L CONDUCT 3.08 (a)(5). **Although the case law supports what appears to be an automatic hardship exception**, Phelps did not send the letter to opposing counsel until August 6, 1999, three days after the motion to disqualify was filed. See Ayres, 790 S.W.2d at 557; *In re A.M.,* 974 S.W.2d at 864; see also TEX. DISCIPLINARY R. PROF'L CONDUCT 3.08(a)(5). Based on this fact, Phelps's notice is surely not "prompt." TEX. DISCIPLINARY R. PROF'L CONDUCT 3.08(a)(5). Thus, Phelps waited too long to rely on this exception. See TEX. DISCIPLINARY R. PROF'L CONDUCT 3.08 cmt. 7 (stating one of the purposes of prompt notification is to "prevent[ ] the testifying lawyer from creating a 'substantial hardship,' where none once existed, by virtue of a lengthy representation of the client in the matter at hand").

*In re Bahn*, supra at 874 (emphasis added).

8.  Ms. Hassell's notice was made to the defendants' counsel just weeks after the case

was filed and before commencement of formal discovery.  Defendants have not contended

that the notice was not prompt.  In addition, the plaintiffs can demonstrate that counsel for

defendants has been extensively informed of the circumstances constituting the substantial

hardships to the plaintiffs both as a result of the continuing conduct of the defendants and as

a result of the conflicted representation of the attorneys for the defendants.

9.  The plaintiff "clients" in this case are corporations wholly owned by Royce and Silvia Hassell as community property and controlled by Royce.  The conduct of the defendants made the subject of plaintiffs' suit occurred at a time when Royce was going through a prolonged period of serious illness which included a kidney transplant.  Members of Royce's own family participated in the actions which ultimately resulted in the defendant corporations wrongfully taking the assets of the plaintiffs leaving the plaintiffs' with no income, no cash flow, and no jobs in progress such that plaintiffs are now unable to obtain counsel to represent them before this Court.  Leaving plaintiffs without legal representation before the Court would be unduly harsh and would not be in the interests of justice.  Such a result would be especially harsh since the plaintiffs' dire circumstances have been caused by the conduct of the defendants and their attorneys.

10.  Especially since disqualification would be such a drastic remedy in this situation, Exception 5 is applicable.  Texas Courts have repeatedly recognized that:

> Disqualification is a severe remedy. See Spears, 797 S.W.2d at 656; *NCNB Tex. Nat'l Bank v. Coker,* 765 S.W.2d 398, 400 (Tex.1989) (orig.proceeding). The courts must adhere to an exacting standard when considering motions to disqualify so as to discourage their use as a dilatory trial tactic. *See Spears*, 797 S.W.2d at 656. In order to prevent such misuse of the rule, the trial court should require the party seeking disqualification to demonstrate actual prejudice to itself resulting from the opposing lawyer's service in the dual roles. See *Ayres v. Canales,* 790 S.W.2d 554, 558 (Tex.1990) (orig.proceeding) (citing TEX. DISCIPLINARY R. PROF'L CONDUCT 3.08 cmt. 10).

*In re Bahn, supra*, 13 S.W. 3d at 873.  The complexity and far reaching nature of this litigation, in the midst of having to navigate multiple attorney conflicts, means it will take hundreds of attorney hours to fully protect the plaintiffs and their claims.  Defendants' conduct has negatively impacted several lawsuits which were already pending before this

5

case was filed.  Defendants' conduct will result in additional lawsuits from third parties

which have already been filed or have been threatened to be filed.  And in the meantime,

after wrongfully freezing plaintiffs out of a joint venture and other business agreements, the

defendants are receiving and expending the income and cash flow from millions of dollars of

ongoing joint construction projects to the exclusion of the plaintiffs.

## II.  Factual Background Pertaining to the Parties

11.  The plaintiffs (hereinafter jointly referred to as RHHC) are construction

companies wholly owned by Royce and Silvia Hassell as community property.  Royce

manages and controls the RHHC companies.   Silvia Hassell received her law degree in 1982

and practiced law for many years before essentially retiring from the practice of law in 1999

following extensive surgery and chemotherapy as a result of breast cancer.  Beginning in

2009 Royce's health also began to deteriorate due to end stage kidney disease and the related

effects of this illness.  In November of 2011 Royce was blessed with receiving a kidney

transplant and is now much improved.

12.  Defendant,  Hassell Construction Co., Inc, is a construction company specializing

in civil construction and roadways.  The company was founded and is owned in part by

Royce's father, James C. Hassell, and the "James C. Hassell Intervivos Trust" of which

Royce is a co-equal beneficiary along with Royce's three half-siblings from James' second

marriage, Phillip Hassell, Michael Hassell, Shawn Potts, and Royce's half-sibling from

James' third marriage, Jason Hassell.  Hassell Construction is managed and controlled by

James C. Hassell as CEO, and his three children from his second marriage, Phillip Hassell as

President, Michael Hassell as Vice President and Shawn Potts as secretary/treasurer.

6

13.  Defendant Hassell Management Services, LLC. (hereinafter HMS) is a corporation jointly owned, managed and controlled by Royce's father, James C. Hassell, and his three children from his second marriage who also control and manage Hassell Construction Company, Inc., Phillip Hassell, Michael Hassell and Shawn Potts.

### III.  Factual Background Pertaining to the Defendants' Conduct

14.  Plaintiffs filed this case to defend themselves from wrongful conduct of the defendants, carried out through family members, during and following Royce's serious health crisis which lasted several years.   The defendants' conduct surrounding the Hassell Joint Venture is one example.

15.  The Hassell Joint Venture was proposed by Royce's half-brother Phillip, as President of the defendant corporations, in August of 2012, just nine months after Royce's transplant.  Phillip proposed that Royce's wholly owned corporations "combine resources" and begin operating jointly with the defendants to obtain and pursue a profit. Royce's companies brought many assets to the venture including, but not limited to:  the use of an extensive equipment inventory valued at approximately 2.5 million dollars; extensively experienced personnel in several areas of construction and particularly including building construction experience (an area of construction in which the defendant corporations were not qualified); Royce's 40 years' experience in the construction industry along with his management abilities as a result of his experience and educational background.  When Phillip presented the completed 'combined resources' Hassell Joint Venture agreement to a combined meeting of employees of the plaintiffs and the defendants in September of 2012, he stated words of the effect of, "from now on there is no more R. Hassell or Hassell Construction, from now on there is just 'Hassell.'"  Simultaneously with the formation of the

Hassell Joint Venture, Phillip proposed that Royce to come back to work for and "run the office" of defendant Hassell Construction which Royce had previously managed as President twenty years earlier before leaving to start his own companies.  Royce agreed to this arrangement and the family voted to make Royce an officer and director of Hassell Construction and Chief Operating Officer of the company.  In addition to the plaintiffs' interest in the "Hassell Joint Venture" the defendants also promised Royce a salary and profit interest in the defendant, Hassell Construction Company.

16.  The Hassell Joint Venture and Royce's employment for Hassell Construction simultaneously began in September of 2012.  Phillip proposed that  Royce "run the office" of the Hassell Joint Venture and of Hassell Construction.  Phillip also proposed that he, Phillip, would "run the field" of the civil construction projects of the Joint Venture as well as any pre-existing  projects and any new projects which might be acquired by the plaintiffs or the defendants.  According to Phillip, running the field included "supervising" the plaintiffs' longtime field superintendant, Zef Garcia, who had "run the field" for the plaintiffs' civil construction projects for over fifteen years.

17.  Phillip proposed that to streamline costs of the Hassell Joint Venture the plaintiffs' employees should be combined into the defendant corporations and duplicative positions should be eliminated.  Thereafter, Royce allowed the majority of plaintiffs' long time, experienced personnel to be paid through the defendants.

18.  Phillip proposed that to streamline costs of the Hassell Joint Venture Royce should cause the plaintiffs to sell off any equipment of the plaintiffs which was duplicative of equipment already owned by the defendants.  Thereafter, Royce caused the plaintiffs to sell off major part of the plaintiffs' equipment fleet.

19.  Phillip proposed that to streamline costs of the Hassell Joint Venture, the accounting should be done at the Hassell Construction offices by Shawn, his sister. Unfortunately, no joint venture accounting was maintained or provided to Royce.

20.  As the months went by it started becoming obvious that by causing the plaintiffs to take the above actions in reliance on the existence of the Hassell Joint Venture, and by limiting Royce role as officer and director at Hassell Construction, and by preventing Royce access to accounting data, the defendants had placed themselves in a position to seize control of the assets of the plaintiff corporations, including jobs in progress and job income, which the defendants eventually did.  It now appears the defendants took concerted, and perhaps preplanned, steps to completely freeze  Royce out of the family business enterprise and seize control of his companies.

21.  Most critically for purposes of this Response, because the income of the Hassell Joint Venture was going from the owners through the defendants as part of the "accounting" of the Hassell Joint Venture, the defendants have also been able to freeze the plaintiffs out of the receipt of any income.  The defendants also refuse to reimburse the plaintiffs or account for costs which the plaintiffs have expended both on for the Hassell Joint Venture jobs and jobs of the plaintiffs and defendants which existed before the Hassell Joint Venture was formed.   One day, the defendants simply changed the locks on the doors and even refused Royce physical access to his own offices.

22. At the time of the foregoing conduct, the parties and Royce had been jointly working on over one hundred million dollars in construction contracts.  Almost overnight the effect of defendants' wrongful conduct was to cause plaintiffs to go from involvement in and prosecution of construction contracts totaling over $100,000,000 to being with no work, no

9

jobs and no income.  From one day to the next the plaintiffs were left with no income to pay

rent, utilities, insurance, salaries, equipment notes, vendors, or taxes, much less pay an

attorney the enormous fees it will take to pursue their claims.

23.  As this conduct continues the defendants are enjoying the benefits of utilizing the

funds from these projects to hire attorneys to represent their interests, leaving the plaintiffs

with no funds to do the same.

### IV.  Factual Background Pertaining to the Conflicts of Interest of the Attorneys for the Defendants

24.  To make matters worse the defendants are now directed in these actions by their

retained attorney Patrick Gaas and the law firm of Coats Rose.  Mr. Gaas and the law firm of

Coats Rose have multiple conflicts of interest making their role as attorneys for the

defendants herein extremely egregious.

25.  The conflicts of Coats Rose have prevented the parties from engaging in

settlement discussions, have exacerbated and at times even created the harms to the plaintiffs,

and have needlessly increased the cost of this and other pending litigation.    Although Mr.

Gaas has not made a formal appearance before this Court, he has been working through

attorney Mickey Das, counsel of record for the defendants.

26.  The conflicts of Mr. Gaas and the law firm of Coats Rose, first began when

members of the Hassell family, including Royce, jointly determined to make a legal

consultation just two months after Royce's transplant.  This consultation was necessitated, in

large part, as a result of large losses which were being incurred by the parties in an ongoing

$15,000,000 construction project to construct the infrastructure and roadways for Exxon's

new worldwide campus located in Springwoods, between Houston and the Woodlands.

("Springwoods Project.")  The Exxon campus construction had begun in late August of 2011

and was publicly contracted to the parties herein by Springwoods Realty Company (who had sold the campus to Exxon in a contract negotiated by Coats Rose) and Harris County Improvement District 18.  Records now show that just weeks into the project Springwoods Realty, and perhaps Harris County District 18, discovered that construction plans for Exxon's campus infrastructure and roads being constructed by the parties herein were defective. Springwoods and Harris County District 18 have now sued the engineers who designed the plans, Walter P. Moore, for defective plans.  However, during construction Springwoods tried to hide the extent of the defects from the parties to this case, engaging in a string-a-long endeavor to keep the construction going so that they could meet Exxon's exacting construction deadlines and reimbursement parameters which formed a part of the purchase agreement for the campus.

27.  By January of 2012 while the losses on the project were taking a toll on the parties herein, the family agreed to consult an attorney to best determine how to proceed under all the circumstances.  The family consultation was attended by attorneys Patrick Gas and Heather Anselin of Coats Rose, and Royce's father and brother on behalf of the family. The attorneys gave advice which was then related to Royce and the other members of the family who then jointly agreed to go forward based on the advice of Coats Rose.  Thereafter, the parties completed construction of the Exxon campus in a timely manner but a at great loss to the parties.  A lawsuit for over five million dollars in damages is now pending against Springwoods and Harris County District 18 in Cause No. 2012-42981; *Hassell Construction Co., Inc. v. Springwoods Realty Company and Harris County Improvement  District #18;*  In the 333rd Judicial District Court of Harris County, Texas.

28.  What the plaintiffs did not know at the time this advice was obtained and what the plaintiffs did not become aware of until just days ago in preparation of this Response, was that Coats Rose had also represented Exxon, *and had represented Exxon with regard to the purchase of its campus from Springwoods Realty.  A purchase deal which includes the very same deadlines for construction which the parties herein were struggling to meet in January of 2012, and which included reimbursement agreements with regard to certain construction work performed by the parties to this suit.*

29.  Both the plaintiffs and the defendants previously had objected to another conflict of Coats Rose following the family consultation.  In February of 2012 attorneys for Coats Rose, Hancock and Paul Catalano, substituted in as attorneys in a pending lawsuit styled "Cause No. 2011-70117, *Gall Construction of America, Ltd. v. R. Hassell Builders, Inc.*, in the 295th Judicial Court of Harris County, Texas" which was a lawsuit involving a dispute between the plaintiff, R. Hassell Builders, Inc. and a subcontractor, Gall Construction, who had underperformed on a job.  Years before the case was filed by Gall, R. Hassell had made a claim against Gall's bonding company, Safeco, for losses caused by Gall's defective and untimely performance.  The matter appeared resolved by offset to the subcontract price and lay dormant for years until just prior to the expiration of the statute of limitations deadline, when Gall sued for the balance of the contract price.  The plaintiffs then brought in Gall's bonding company Safeco who by then had been bought out by Liberty Mutual.  Coats Rose's entry of appearance for Gall and Safeco/Liberty Mutual caused the parties to this case great concern.

30.  Based on the Hassell family consultation wherein confidential financial and other personal information had been confided to Coats Rose which would be relevant to the Gall

case, Royce and Phillip wrote a letter objecting to Coats Rose's representation.  Royce and

Phillip were especially concerned in that Coats Rose was now undertaking representation of

Liberty Mutual against the plaintiffs.  The Hassell's objected to Coats Rose' appearance

because of the confidential information which had been disclosed to Mr. Gaas and Ms.

Anselin in the earlier family consultation.  The parties feared that Coats Rose would now

able to use that information to benefit of its other clients Liberty Mutual/Safeco and Gall

Construction Company to the detriment of the plaintiffs and the defendants.  (Since the

plaintiffs were not even aware at the time that Coats Rose also represented Exxon that

particular objection was not even asserted.)

31.  Despite the asserted objections Coats Rose proceeded to represent Gall and

Liberty Mutual/Safeco against the plaintiffs.  But, very tellingly in recognition that things

were not quite right, Coats Rose purported to erect a "Chinese Wall" between lawyers in the

firm such that they claimed information would not be shared between attorneys to the firm

regarding information by the differing clients.

32.  The Gall case is still pending and has now been referred to arbitration.  It is

scheduled to go to trial in just a few months. The advice given to the defendants by Coats

Rose in this case will and has impacted the rights of Coats Rose's other clients in the Gall

litigation and has also impacted both the plaintiffs and the defendants in relation to that case.

33.  Another particular concern is that Coats Rose represents the bonding company,

Liberty Mutual, of Hassell Construction and the Hassell Joint Venture against the plaintiffs.

Both the plaintiffs and the defendants are co-indemnitors on behalf of Liberty Mutual for any

joint projects.  The combined multiple conflicts of Coats Rose's regarding the previous

advice given to the parties, the current representation of Liberty Mutual in a lawsuit against

the plaintiffs, the representation of Exxon in the purchase from Springwoods which now forms the basis of a suit by the parties to this case against Springwoods, and the representation of the defendants against the plaintiffs to this case, have caused a complete obstacle to the ability of the plaintiffs to have open and fair discussions with the defendants in order to attempt to resolve the multiple issues in this case.  The plaintiffs request an *in camera* hearing to present the extents of the harms these conflicts have caused.

34.  To add another layer of complexity to the conflicts, while all these conflicts were unfolding, Mr. Rose, of Coats Rose, became a board member of Harris County Improvement District 18 *which is one of the named defendants in the Springwoods case and which Hassell Construction sued in July of 2012 to recover for the millions of dollars of losses incurred in constructing the public infrastructure for Exxon's campus by the parties herein*.

35.  The various conflicts of Coats Rose militate against their role in undertaking representation of one part of the Hassell family against the other in disputes that ultimately involve the Springwoods litigation.  The most egregious result of the conflicts, however, occurred when attorney Gaas  called off settlement discussions because of his conflicts related to the Springwoods litigation.  This notwithstanding that Mr. Gaas has been obtaining information related to that case through Mr. Das, his co-counsel.

36.  Believing at first, that Mr. Das did not labor under the same conflicts as Mr. Gaas, on several occasions Silvia Hassell called and wrote letters to him which have gone unanswered.  These letters and telephone messages implored Mr. Das to meet to discuss ways to mitigate harms and settle some or all of the issues in this case.  The letters explained how Mr. Gaas' conflicts are harming the plaintiffs and the defendants and asking him to help ameliorate the harms such conflicts were causing to this and other pending cases;  conflicts

so extensive as to cause Mr. Gaas to, in his own words, "hire an ethics counsel out of his own pocket." Notwithstanding the obvious fact of the various conflicts of Coats Rose Mr. Gaas has remained as counsel in the various matter and was, therefore, forced to walk out of a meeting where the plaintiffs were to present their response to a settlement proposal of the defendants because he claimed not to be want to or be able "to hear about Springwoods" or even how it is an integral part of this litigation.  It is most telling that Mr. Gaas believed he could not even listen to a settlement offer that involved discussion of the Springwoods matter and considered that more important than representing the defendants in an imminent settlement.

37.  Hours after Mr. Gaas cancelled settlement discussions and walked out of the settlement meeting without even listing to the plaintiffs' response to the defendants' settlement proposal, which would have included a manner of jointly completing an $8,000,000 project, his clients took over the last project of the plaintiffs were working on, the Harris County Emergency Response center, which the defendants would not even have been qualified to bid had it not been for the expertise brought to the table by the plaintiffs.

38.  Because the plaintiffs believed that Mr. Das was not laboring under the same conflicts as Coats Rose and was representing the defendants independently of the Coats Rose's conflicts the plaintiffs have divulged information to him in efforts to settle this case. Information which the plaintiffs now believe has been merely forwarded to Mr. Gaas to the detriment of the plaintiffs and the defendants.

### Conclusion and Prayer

39.  The conduct of defendants in wrongfully taking and controlling the funds which would have allowed the plaintiffs to retain other counsel, combined with the conflicted

conduct of the attorneys for the defendant,  has caused substantial harms to the plaintiffs,

needlessly delayed this case and increased the costs of this litigation. It will take hundreds of

attorney hours to adequately understand and be able to pursue the remedies which the

plaintiffs require in light of the foregoing wrongs.  It would take hundreds of attorney hours

to become familiar enough with all the pending causes of action encompassed by this

controversy to determine how they are interrelated.  It will take hundreds of attorney hours to

marshal the evidence necessary to pursue these claims.   Unless the case settles, which is an

impossibility with the participation of lawyers from Coats Rose, the plaintiffs estimate that,

at the end of the day, it will take hundreds of attorney hours before all the matters

encompassed in this litigation are concluded.  At this time, and due to the wrongful actions of

the defendants, the plaintiffs have no way of committing to pay any attorney the enormous

fees it will take to pursue the plaintiffs' rights and remedies.

40.  In light of the foregoing the plaintiffs request that this Court deny the defendants' motion to reconsider the Court's order of December 30, 2013, and allow Ms. Hassell to continue to serve as attorney for plaintiffs.  Additionally, the plaintiffs request such other and other and further relief to which they may be entitled.

Respectfully submitted,

_____/s/_____

Silvia T. Hassell
Attorney at Law

State Bar Number 09205200
12512 Cutten Road, Suite A
Houston, Texas 77066
Telephone: 713-725-0581
Telecopier: 713-665-0369

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of this instrument was served on:

Micky Das, Esq.
Tyler & Das
2000 Bering Drive, Suite 401
Houston, Texas 77057

attorney for defendants Hassell Construction Co., Inc. and Hassell Management Services LLC. by telefacsimile to 713) 739-8347  on the  21 day of January, 2013.

_____/s/_____

Silvia T. Hassell

17

# EXHIBIT F

8/3/2017 1:55:27 PM
Chris Daniel - District Clerk
Harris County
Envelope No: 18621516
By: SIMON, FARRAH H
Filed: 8/3/2017 1:55:27 PM

CAUSE NO. 2017-00535

| | | |
|---|---|---|
| HASSELL CONSTRUCTION COMPANY, INC., | § | IN THE DISTRICT COURT OF |
| *Plaintiff,* | § | |
| | § | |
| V. | § | HARRIS COUNTY, TEXAS |
| | § | |
| PASCAL PIAZZA; ZUKOWSKI, | § | |
| BRESENHAN & PIAZZA, L.L.P.; | § | |
| and SILVIA HASSELL, | § | |
| *Defendants.* | § | 152ND JUDICIAL DISTRICT |

## ORDER GRANTING MOTION FOR LEAVE TO DESIGNATE RESPONSIBLE THIRD-PARTY

On this day, the Court considered Defendants Pascal Piazza and Zukowski, Bresenhan &

Piazza, LLP's this Motion for Leave to Designate Responsible Third Party ("Motion").  After

considering the Motion, the arguments of counsel, the pleadings and evidence on file, if any, the

Court is of the opinion that the Motion should be GRANTED.  It is therefore,

ORDERED that Bogdan Rentea and the law firm of Rentea & Associates are hereby

designated as responsible third-parties.

SIGNED THIS _____ DAY OF _____, 2017.

Signed:
8/18/2017          *Robert K. Schaffer*
                   _____
                   JUDGE PRESIDING

Unofficial Copy Office of Chris Daniel District Clerk

6/14/2018 12:23 PM
Chris Daniel - District Clerk Harris County
Envelope No. 25292861
By: janel gutierrez
Filed: 6/14/2018 12:23 PM

Cause No. 2016-87708

| | | |
|---|---|---|
| HASSELL CONSTRUCTION COMPANY, INC., | § | IN THE DISTRICT COURT OF |
| | § | |
| *Plaintiff* | § | |
| | § | |
| v. | § | HARRIS COUNTY, TEXAS |
| | § | |
| ROYCE HASSELL and | § | |
| SILVIA HASSELL, | § | |
| *Defendants* | § | 113TH  JUDICIAL DISTRICT |

## ORDER ON MOTION TO DISQUALIFY SILVIA HASSELL
## AS COUNSEL FOR ROYCE HASSELL

ON the 15th day of June, 2018, the Court considered the Motion to Disqualify Silvia Hassell as counsel for Royce Hassell.  After considering the motion, the response, and the arguments of counsel, the Court finds that the motion should be GRANTED.

The Court finds that Royce Hassell is currently represented by the firm of Locke, Lord, and it is unnecessary, and confusing, to allow Silvia Hassell to participate as counsel, and, particularly, as lead counsel in this matter.

It is, therefore, **ORDERED** that the Motion to Disqualify Silvia Hassell as counsel, and lead counsel, for Royce Hassell is GRANTED.

Signed this _____ day of _____ 2018.

_____

MICHAEL LANDRUM, JUDGE PRESIDING

6/14/2018 1:06 PM
Chris Daniel - District Clerk Harris County
Envelope No. 25294364
By: janel gutierrez
Filed: 6/14/2018 1:06 PM

CAUSE NO. 2016-87708

| | | |
|---|---|---|
| HASSELL CONSTRUCTION COMPANY, INC., | § | IN THE DISTRICT COURT OF |
| *Plaintiff* | § | |
| | § | |
| v. | § | HARRIS COUNTY, TEXAS |
| | § | |
| ROYCE HASSELL and | § | |
| SILVIA HASSELL, | § | |
| *Defendants* | § | 113TH  JUDICIAL DISTRICT |

## **RESPONSE TO ROYCE HASSELL'S ANTI-SLAPP MOTION[1]**

NOW COME PHILLIP HASSELL ("PH"), JASON HASSELL ("JH"), SHAWN POTTS ("SP"), and MICHAEL HASSELL ("MH") (collectively "Counter-Plaintiffs"), and in support of this response, show as follows:

1.      Royce Hassell's ("Royce") Anti-SLAPP motion under the Texas Citizen Participation Act ("TCPA"), (the "Motion"), should be in all things denied.

2.      First, the Motion is not properly maintainable under the TCPA because, under the specific circumstances of this case, the TCPA does not apply.  Second, even if the TCPA applies, the Counter-Plaintiffs have shown, by clear and specific evidence included in the Appendix attached hereto, and the referenced pleadings, that they can make out a prima facie case on each of elements of the causes of action brought by them against Royce.  Third, Royce has not and cannot establish a valid defense, to the claims brought against him by the Counter-Plaintiffs.

3.      Like always, context is everything.  It is not only important, but paramount to an understanding of the circumstances that lead to this dispute, and the reason that the claims of Counter-Plaintiffs must be allowed to go forward. To disallow them, would deprive them of their constitutional rights to petition and associate, which the TCPA is intended to protect.

---

[1] This response is made subject to the motion to allow limited discovery under section 27.006(b) of the TCPRC, filed on June 12, 2018.

4.     The main action was initially filed by Hassell Construction Company, Inc., ("HCCI") against Royce, and his spouse, Silvia Hassell ("Silvia').  It involved a request for a declaration that Royce is not a shareholder in HCCI, and that Silvia Hassell, as his spouse, does not have any community property interest in any HCCI shares, either.  That action was filed on **December 22, 2016**.

5.     HCCI had difficulty serving Royce and Silvia and was forced to obtain an order for substituted service.  Royce and Silvia filed their original answer on **April 19, 2017**.

6.     Pending at that time was an arbitration proceeding between HCCI, James C. Hassell, and SP, only in her capacity as trustee on several deeds of trust, on one side, and Royce, Silvia, and several companies they owned and operated, on the other side.

7.     The arbitration hearing commenced on **June 19, 2017**. (As will be shown below, none of the Counter-Plaintiffs were parties to the arbitration.)

8.     Approximately a month before the start of the arbitration proceeding, specifically on **May 19, 2017**, Royce filed a counterclaim against HCCI, and a third-party petition against his siblings, PH, MH, and SP.  MH was sued both individually and in his capacity as the trustee of the James C. Hassell Intervivos trust ("Trust").  It is not entirely clear why Royce filed this action so close to the beginning of the arbitration hearing, other than to maybe intimidate his siblings.  What is undisputed is that Royce made no efforts whatsoever to serve his siblings.  The action remained dormant until after the arbitrators issued their award.

9.     The allegations in Royce's own counterclaim are essential to this response and the request to deny the anti-SLAPP motion.

10.     As seen in the attached and highlighted counterclaim, Royce alleged a myriad of damages stemming from breaches of fiduciary duties by PH, MH and SP, **due to their role in the**

**family business**.  *See* Appendix at **Exhibit A.**  (Royce alleges that the breach of fiduciary duties is based on a theory of confidential relationship between the siblings.  See discussion of applicable law, at paragraphs 31-34, infra.)

11.     In direct response to those allegations, the siblings, joined by JH, another sibling of Royce, filed their answer and their own counterclaim against Royce, predicated on the same theory as advanced by Royce.

12.     For Royce to now claim that his actions cannot be scrutinized in the same proceeding in which he is scrutinizing the actions of his siblings, and based on the same theory of recovery, is hypocritical, frivolous, and should not be allowed to form the basis of TCPA motion.  The TCPA was not intended to deprive a person from defending himself/herself in a legal proceeding, either by asserting affirmative defenses or by asserting meritorious counter claims.  That is especially so when the theories of recovery, on both sides, mirror each other.

13.     **The claims of Counter-Plaintiffs are not barred by limitations.**

14.     Because the claims of Counter-Plaintiffs are asserted against Royce in the form of a counter claim, they are not barred by limitations.[2]

15.     **There is no dispute that none of the Counter-Plaintiffs were parties to the underlying arbitration**.

16.     Although it is true that SP was a party to the arbitration in her capacity as Trustee on some of the Deeds of Trust at issue in the arbitration, she was not a party in that proceeding in her individual capacity.  It must be noted that Royce is suing her, in her individual capacity, in this

---

[2] Section 16.069 of the Civil Practice and Remedies Code permits a counterclaim or cross-claim to be brought not later than the thirtieth day after a party's answer is due, providing it arises from the same transaction. The net effect of section 16.069 is to disregard any applicable statute of limitations and to allow the counter or cross-claim even if it would be time-barred if brought as an independent action. Tex.Civ.Prac. & Rem.Code Ann. § 16.069 (Vernon 1986). *Barraza v. Koliba*, 933 S.W.2d 164, 167 (Tex. App.—San Antonio 1996, writ denied)

case, by and through the same attorneys that represented him in the arbitration proceeding.[3]  Unless Royce and his counsel in this case are merely trying to harass SP by suing her for matters already addressed and determined in the arbitration proceeding, it must be assumed that they are doing so recognizing the limited and specific capacity in which she appeared as a party in the arbitration.

17.     The claim that the Counter-Plaintiffs were "virtually represented" in the arbitration is frivolous and contrary to the actual agreements of the parties and rulings in that proceeding. Specifically, various parties were attempted to be added, including, but not limited to, PH, MH and SP.[4]  That request was denied as untimely by the arbitration Panel.[5]  Therefore, those parties were specifically excluded from the arbitration, and the unsupported claim of "virtual representation" is just that, an unsupported claim.

18.     Finally, JH and the Trustee were not parties in the arbitration proceeding, and were never attempted to be added in that proceeding.

19.     **The claims, brought by the Counter-Plaintiffs, are not barred by res judicata, nor are they a collateral attack on the arbitration Award.  The other litany of alleged defenses of waiver, ratification, estoppel, accord and satisfaction, and settlement, are simply not applicable**.

20.     At the core of these arguments is the regret by Royce that some of his decisions and positions in arbitration, left some doors open.

21.     It must first be pointed out that, when it suits him, he is only too eager to walk through those doors; however, is unwilling to accept that those open doors are not reserved for his use alone.

---

[3]  *See* **Exhibit A**.
[4]  *See* motion to add parties, attached hereto as **Exhibit B**.
[5]  *See* Panel Order No. 9, attached hereto as **Exhibit C**.

22.     Specifically, as discussed supra, Royce is the one suing PH, SP, MH and the Trustee in this matter.  Additionally, as evidenced by his motion to modify the arbitration Award, he argued strenuously that he needed to be allowed to proceed with claims against PH, MH and others, absent which right, he would be "unilaterally disarmed".[6]  Stated differently, he recognized that the siblings he sued might seek relief of their own, and wanted to make sure to retain all of his own rights.  He also took the position that neither PH, MH nor SP (individually), were parties to the arbitration, nor entitled to any relief in the arbitration.[7]  To now claim otherwise, is frivolous, if not outright sanctionable.

23.     The fact is that the arbitration did not resolve the issues between the parties to this proceeding, and Counter-Plaintiffs can pursue their claims, no matter how much Royce now wished differently.

24.     **The Counter-Plaintiffs have standing to pursue their claims**.

25.     There is no dispute that Counter-Plaintiffs are beneficiaries of the Trust.  It is also undisputed that they filed their claims, inter alia, in their capacity as beneficiaries.

26.     Generally, only personal representatives and heirs have standing to sue for recovery of property on behalf of an estate. *See, e.g., Fort Motor Co. v. Cammack*, 999 S.W.2d 1, 4 (Tex.App. —Houston [14th Dist] 1998, pet. denied) (citing *Shepherd v. Ledford*, 962 S.W.2d 28, 31 (Tex.1998)).  Personal representatives and heirs have a justiciable interest in the estate property. If a beneficiary has an interest in estate property under a probated will, then the beneficiary has standing as an heir to sue for recovery of estate property. *Houston v. Ludwick*, 14-09-00600-CV, 2010 WL 4132215, at *3-4 (Tex. App. —Houston [14th Dist.] Oct. 21, 2010, pet. denied).

---

[6]  *See* Royce's Motion to Modify Award, attached hereto as **Exhibit D**, at footnote 3, on pg.2.
[7]  *See* **Exhibit D**, at pg. 3.

27.     Royce, however, is trying to equate Counter-Plaintiffs' rights to those of shareholders in a corporation.  The case of *Linegar v. DLA Piper LLP (US)*, 495 S.W.3d 276, 281 (Tex. 2016) is instructive and dispositive of that argument, as well.

28.     In that case, DLA Piper argued that the plaintiff did not have standing to sue the firm for malpractice because the firm had provided services to the corporation and not to the plaintiff, a shareholder in that corporation, and because the loan in question was made by the corporation and not the individual plaintiff.

29.     The Texas Supreme Court disagreed with the Court of Appeals, and found that the individual plaintiff did have standing:

> "There was evidence that Zaychan loaned the money to IdentiPHI because Linegar individually directed it to do so.  And there was evidence that Linegar caused Zaychan to make the loan because of the assurances he individually and personally received from DLA Piper that the loan would be secure from loss.  Under the circumstances, the loss on the original loan Zaychan made to IdentiPHI in March 2008 fell substantively and directly on Linegar and gave him standing to seek recovery for the loss."

*Linegar v. DLA Piper LLP (US)*, 495 S.W.3d 276, 281 (Tex. 2016)

30.     The same factual pattern is present here.  It was Counter-Plaintiffs, as family members, that caused HCCI to loan money to Royce and Silvia and their companies, and it was Counter-Plaintiffs, as family members, that agreed to authorize those loans because of assurances made to them by Royce and Silvia, both as to repayment and as to the security in the form of deeds of trust.  Under the circumstances, the losses, caused by the positions taken by Royce and Silvia, fall directly on the Counter-Plaintiffs, and that gives them standing to seek recovery for those losses.[8]

---

[8]  *See* **Exhibit E** attached hereto, representing just one of many misrepresentations, or outright "lies", told by Royce and Silvia Hassell to the family members, (even invoking the name of God) to convince them, to their detriment and personal loss, to keep advancing money to them.  *See also* **Exhibit F**, a handwritten note from Royce Hassell to PH, misrepresenting the need for the JV agreement.  *See also* **Exhibit G**, broken promises and misuse of moneys loaned.

31.     Further, Royce owed the family members fiduciary duties, based on the confidential relationship between them that gave rise to an informal fiduciary relationship, breached those duties when they made material misrepresentations to all family members, failed to disclose material information to them, which, in turn, caused the family members to agree to certain loans, albeit from a family controlled corporation, and suffered personal losses when those loans were not repaid in full.[9]

32.     In Texas, the law is clear that a party acts in a fiduciary capacity when "the business which [it] transacts, or the money or property which [it] handles, is not [its] own or for [its] benefit, but for the benefit of another person, as to whom [it] stands in a relationship implying or necessitating great confidence and trust on the one part and a high degree of good faith on the other part." *See In re Jones*, 445 B.R. 677, 706 (Bankr. N.D. Tex. 2011) (internal citation omitted) (emphasis added). The Fifth Circuit recently stated the proposition more directly in citing the Supreme Court: "control over funds belonging to others is the classic situation in which a fiduciary duty arises." *Lincoln General Ins. Co. v. U.S. Auto Ins. Services, Inc.*, 787 F.3d 716 (5th Cir. 2015).

33.     Further, under Texas law, an informal fiduciary relationship arises from a "confidential relationship" wherein one party "trusts in and relies upon another, whether the relation is a moral, social, domestic or purely personal one." *Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 176 (Tex. 1997).  A party is justified in placing confidence in the belief that another party will act in its best interest "where he or she is accustomed to being guided by the judgment or advice of the other party, and there exists a long association in a business, relationship, as well as personal friendship." *Hoggett v. Brown*, 971 S.W.2d 472, 488 (Tex. App.

---

[9] The myriad of material misrepresentations and omissions, are shown in the exhibits contained in the Appendix, and supporting the allegations made in Counter-Plaintiffs' counterclaim.

—Houston [14th Dist.] 1997, pet. denied).  Stated differently, a confidential relationship may arise "when the parties have dealt with each other in such a manner for a long period of time that one party is justified in expecting the other to act in its best interest." *Ritchie v. Rupe*, 05-08-00615-CV, 2016 WL 145581, at *4 (Tex. App. —Dallas Jan. 12, 2016, pet. denied).

34.     While the determination as to whether an informal fiduciary duty exists is not subject to bright-line rules, many of the guiding principles dictate toward a determination that Royce and his siblings had a "confidential relationship" giving rise to an informal fiduciary duty. Where family members have a history of doing business together, under Texas law, an informal fiduciary relationship exists.  *Flanary v. Mills*, 150 S.W.3d 785, 794 (Tex. App. —Austin 2004, pet. denied).  In *Flanary*, the defendant was the plaintiff's uncle, was only six or seven years older than plaintiff, and was like a brother to plaintiff when they were growing up. *Id*. The parties had a history of doing business together, having been partners is at least one previous roofing business. *Id*. The court held that this "ample evidence supports the finding that a fiduciary relationship existed."  *Id*.  The same is true here with regard to the longstanding nature of the business relationships.  Moreover, as to the fiduciary duty relationship, the individuals involved here are all family.  Royce, SP, PH, MH and JH all grew up spending time together, and they engaged in business dealings with each other--understandably, the siblings put their trust and confidence in Royce to ensure that all promises he made to the family were fulfilled, and that he would not make claims against the family business which Royce knew to be false.

35.     The personal losses suffered by the Counter-Plaintiffs did not fully demonstrate themselves, until the arbitration Award was issued.  Now is the proper time for them to bring their claims. The single asset of the Trust is its stock in HCCI. Value of HCCI has been materially impacted by the actions and inactions of Royce, and its value reduced to nothing. The value of

each siblings' shares in the Trust has been reduced to nothing. Compare the value of HCCI as of June 30, 2016, to its current value, as of May 2018. *See* **Exhibits H and I**, respectively.

36.     To the extent that some matters will be, by necessity, re-litigated, may be true, but unavoidable.  As shown above, Royce agreed that the Counter-Plaintiffs were not parties to the arbitration, and that their claims were not adjudicated. He himself, is pressing claims against them, but wants their claims, based on his own theory of recovery, dismissed. Other matters are however new. For example, the garnishment initiated by Royce, will full knowledge of its impact on the company, and the damages it would necessarily create, certainly occurred post arbitration. *See* **Exhibit J, T and U.**

37.     **Royce's recitation of facts, as contained in the "Factual Background" section, and the 50 separate exhibits attached to his motion, should be struck**.

38.     Royce, without providing an affidavit or declaration to support them, alleges a factual narrative, spanning more than a decade, and attaches fifty separate exhibits, which present a story, which is difficult, if not at times, impossible to follow, and which seem either irrelevant to the dispute, or admittedly already determined in the now confirmed arbitration award. For example, Royce sets out in great detail the alleged wrongdoing of a Richard Rose and the firm of Coats, Rose. He fails to inform the Court however, that he sued Richard Rose and his firm, and lost, ironically after that Court granted a TCPA motion to dismiss. The Court's FOF and COL, are attached hereto as **Exhibit K.**  The case is now on appeal, but the district court's dismissal, stands for now. As another example, Royce set out in great detail the losses his companies allegedly suffered due to actions of HCCI and its attorney, Bogdan Rentea, due to a non-suit of a case related to the Springwoods project. Again, Royce fails to inform this Court, that the arbitrators denied Royce's claim for over $4.8MM, and that the matter is now closed. (See Arbitration award attached

to Royce's motion). There are a myriad of other examples of irrelevant facts and exhibits, and the fact remains that Royce's motion is a factual and information "dump" intended to confuse, obfuscate, and needlessly increase the cost of a response.

39.     In order to be able to counter the narrative, and explore the relevance of the exhibits, should the Court allow them to stand, the Counter-Plaintiffs should be allowed to conduct some discovery.  They have filed a separate motion related to that request, as allowed by the TCPA, section 27.006(b).

40.     As it now stands, however, the narrative and the exhibits should be struck.

41.     **This response is based upon, and supported by, the declaration of Phillip Hassell, and the exhibits included in the attached Appendix.  Further, to the extent pleadings are referenced and attached, the Court is asked to take judicial notice of its files, as well as the files and records of the other district courts of Harris County, Texas, in which those pleadings are currently on file**.

42.     Though the TCPA initially demands more information about the underlying claim, the Act does not impose an elevated evidentiary standard or categorically reject circumstantial evidence. In short, it does not impose a higher burden of proof than that required of the plaintiff at trial. We accordingly disapprove those cases that interpret the TCPA to require direct evidence of each essential element of the underlying claim to avoid dismissal.  *In re Lipsky*, 460 S.W.3d 579, 591 (Tex. 2015)

43.     The Counter-Plaintiffs would respectfully urge, to the extent that the TCPA applies, that they have met their burden of showing, by clear and specific evidence, support for each and every element of their causes of action, and the inapplicability of Royce's defenses.

44.    **An award of attorney fees, costs, expenses, or sanctions against Counter-Plaintiffs is not justified under the circumstances presented here.**

45.    Royce is seeking attorney fees, cost, expenses and sanctions, under section 27.009 (a)(1) and (2) of the TCRPC.

46.    The Court should deny the requested relief. Those provisions do not make such an award mandatory. Subsection (a)(1) for example, is limited to an award of attorney's fees, cost and other expenses, "as justice and equity may require". Under the circumstances presented here, justice and equity would only be served by denying Royce any fees, costs or expenses, even if the Court was persuaded that the Motion should be granted. Neither should the Court consider and award any sanctions under subsection (a)(2), as no facts were presented by Royce justifying such relief.

47.    Section 27.009 should not be used to chill any person's right to file and attempt to maintain meritorious claims, even if the Court ultimately finds that the action must be dismissed for various reasons. Unless the action is determined to be without any possible merit, and patently frivolous, the Court should not award attorney fees, cost and expenses, or otherwise sanction the non-prevailing party.

48.    Under the circumstances presented here, the Counter-Plaintiffs would argue that the Court should in fact find that the TCPA motion was filed for delay, and award Counter-Plaintiffs their attorney fees and costs, under subsection (b).

### PRAYER

WHEREFORE, PREMISES CONSIDERED, the Counter-Plaintiffs pray that Royce's TCPA motion be in all respects denied, and that they be granted such other and further relief to which they may show themselves justly entitled.

11

Respectfully Submitted,

**RENTEA & ASSOCIATES**
700 Lavaca, Suite 1400-2678
Austin, Texas 78701
(512) 472-6291
(512) 472-6278 Facsimile
brentea@rentealaw.com


By: */s/ Bogdan Rentea*
    Bogdan Rentea
    State Bar No. 16781000
ATTORNEY FOR COUNTER-PLAINTIFFS


## CERTIFICATE OF SERVICE

By my signature above, I hereby certify that on June 14th, 2018, all counsel of record, who have registered with the e-filing service, or who could be located on the e-filing system, were served with a copy of the foregoing *Response to Anti-SLAPP Motion* via the Court's e-filing system. An email was also sent to all counsel of record with a copy of this pleading.

CAUSE NO. <u>2016-87708</u>

| | | |
|---|---|---|
| HASSELL CONTRUCTION CO., INC., et al., | § | IN THE DISTRICT COURT OF |
| *Plaintiffs*, | § | |
| | § | |
| V. | § | HARRIS COUNTY, TEXAS |
| | § | |
| ROYCE HASSELL, et al., | § | |
| *Defendants*. | § | 113ᵗʰ JUDICIAL DISTRICT |

## APPENDIX

TAB 1        Declaration of Phillip Hassell

TAB 2        Exhibits

Exhibit A    Original Counterclaim and Third Party Petition of Royce Hassell
             filed in Cause No. 2016-87708 on May 19, 2017

Exhibit B    Motion to Join Additional Parties of RHHC and Royce and Sylvia Hassell
             filed in the arbitration proceeding.

Exhibit C    Order No. 9 entered on December 22, 2017 in arbitration proceeding

Exhibit D    Respondents' Motion to Modify the Arbitration Award
             filed in arbitration proceeding on December 27, 2017

Exhibit E    Royce Hassell action plan

Exhibit F    Royce Hassell handwritten note to Phil Hassell

Exhibit G    Emails between Royce Hassell, Shawn Potts, Michael Hassell, and Phillip Hassell
             dated March 31, 2011

Exhibit H    HCCI annual financial statements, exhibit in arbitration proceeding

Exhibit I    Hassell Construction Company, Inc. Balance Sheet as of May 3, 2018

Exhibit J    Affidavit of Royce J. Hassell dated April 10, 2018

Exhibit K    Findings of Fact and Conclusions of Law
             entered in Cause No. 2015-29275 on March 30, 2016

Exhibit L    Letter from Sylvia Hassell to Andrew Barton with American Arbitration Association
             dated May 2, 2014

Exhibit M    Royce Hassell emails with bonding company

Exhibit N      AIC Contractor's Qualification Statement dated September 29, 2010 with forged signature of Phillip Hassell

Exhibit O      2008 Submission to Safeco

Exhibit P      Email from Douglas Fountain with Arch Insurance re declination dated February 6, 2008

Exhibit Q      Email between Michael Kremheller, Robert Overbey, and Royce Hassell re International Fidelity Insurance Company declination dated January 23, 2008 and February 6, 2008

Exhibit R      2008 SureTec General Indemnity Agreement & Bonding Line

Exhibit S      R. Hassell Holding Companies, Inc. Financial Statements as of September 30, 2011

Exhibit T      Garnishee CommunityBank of Texas, N.A.'s Verified Original Answer and Request for Attorney's Fees

Exhibit U      UCC Financing Statement filed August 21, 2008 and UCC Financing Statement Amendment filed August 25, 2017

Exhibit V      Email from Liberty Mutual re HCCI Financials dated November 14, 2013

Exhibit W      Email from Royce Hassell to Phil Hassell, Shawn Potts, and Michael Hassell re payables

Exhibit X      Options Letter from Royce

Exhibit Y      Correspondence with Notes – 2008 re BondPro

Exhibit Z      Fraud on Copier Lease

Cause No. 2016-87708

| | | |
|---|---|---|
| HASSELL CONSTRUCTION COMPANY, INC., | § § § | IN THE DISTRICT COURT OF |
| *Plaintiff* | § § | |
| v. | § § | HARRIS COUNTY, TEXAS |
| ROYCE HASSELL and SILVIA HASSELL, | § § § | |
| *Defendants* | § | 113TH  JUDICIAL DISTRICT |

## DECLARATION OF PHILLIP J. HASSELL

    1.    My name is Phillip J. Hassell.  My date of birth is 2/11/1966 and my address is 26903 Candaba Drive, Magnolia, Texas, 77354.

    2.    I am a CounterPlaintiff in this action.

    3.    I make this Declaration in support of the Response ("response") to Royce Hassell's AntiSLAPP Motion ("motion").

    4.    I have reviewed the Exhibits included in the Appendix attached to the response, and all documents are authentic, and represent a true and correct copy, and, if not directly authored or received by me, represent true and correct copies obtained from the sources indicated, and shared with Royce Hassell  in this or other proceedings.

    5.    I have read the factual allegations in the counterclaim filed against Royce Hassell, and they are all true and correct, including, but not limited to the facts stated in section I, 2c,d,e,f,g,h and i, thereof.

    6.    I have reviewed the exhibits referenced in the counterclaim filed against Royce Hassell, and all exhibits are authentic, and true and correct copies.

    7.    I have reviewed the factual allegations in the response, and they are all true and correct and within my personal knowledge.

    8.    I declare under penalty of perjury that the facts stated herein are within my personal knowledge, and are true and correct.

    Executed in Harris County, State of Texas, on the _13TH_ day of June, 2018.

PHILLIP J. HASSELL

TAB 1

CAUSE NO. 2016-87708

| | | |
|---|---|---|
| HASSELL CONSTRUCTION CO., INC., | § | IN THE DISTRICT COURT |
| *Plaintiff,* | § | |
| | § | |
| v. | § | HARRIS COUNTY, TEXAS |
| | § | |
| ROYCE HASSELL and | § | |
| SILVIA HASSELL, | § | |
| *Defendants.* | § | 113th JUDICIAL DISTRICT |

## ORIGINAL COUNTERCLAIM AND THIRD PARTY PETITION OF <u>ROYCE HASSELL</u>

COMES NOW Defendant/Counter-Plaintiff/Third-Party Plaintiff Royce Hassell ("Royce") and files this Original Counterclaim and Original Third-Party Petition against Plaintiff/Counter-Defendant Hassell Construction Co., Inc. ("HCCI"), Third-party defendant Michael Hassell ("Michael"), Third-party defendant Phillip Hassell ("Phillip"), Third-party defendant Shawn Hassell Potts ("Shawn"), and the Trustee of the James C. Hassell Intervivos Trust ("Trustee") and, in support thereof, respectfully shows the Court as follows:

## <u>PARTIES</u>

1.     Counter-plaintiff Royce Hassell is an individual residing in Harris County, Texas. Counter-plaintiff Royce Hassell is an interested person as defined in the Property Code under § 111.004.

2.     Counter-defendant, Hassell Construction Company, Inc., is a Counter-Defendant. HCCI has appeared in this case and may be served through its counsel of record.

3.     Third-party defendant Michael Hassell ("Michael") is employed by Hassell Management Services, LLC ("HMS") and resides in Harris County, Texas.  He may be served

**Exhibit
A**

with this suit at his usual place of employment, Hassell Management Services, 12211 Duncan Road, Houston, TX 77066 or wherever he may be found.

4.      Third-party defendant Trustee of James C. Hassell Intervivos Trust ("Trustee") is currently Michael Hassell.  The Trustee may be served by serving Michael Hassell, at his usual place of employment, Hassell Management Services, 12211 Duncan Road, Houston, TX 77066 or wherever he may be found.

5.      Third-party defendant Phillip Hassell ("Phillip") is employed by HMS and resides in Harris County, Texas.  He may be served with this suit at his usual place of employment, Hassell Management Services, 12211 Duncan Road, Houston, TX 77066, or wherever he may be found.

6.      Third-party defendant Shawn Hassell Potts ("Shawn") is employed by HMS and resides in Harris County, Texas.  She may be served with this suit at his usual place of employment, Hassell Management Services, 12211 Duncan Road, Houston, TX 77066, or wherever she may be found.

## JURISDICTION & VENUE

7.      The Court has jurisdiction over the parties because all parties are residents of Harris County, Texas, and HCCI's principal place of business is in Harris County, Texas.  Venue is proper in this county because the actions made the subject of this suit have occurred primarily in Harris County, Texas.

8.      The Court has subject matter jurisdiction over this proceeding because the amount in controversy exceeds this Court's minimum jurisdiction requirement.  Pursuant to Rule 47 of the Texas Rules of Civil Procedure, Counter-plaintiff seeks monetary relief in excess of

$1,000,000 as well as declaratory relief pursuant to Chapter 37 of the Texas Civil Practice and Remedies Code.

## DISCOVERY CONTROL PLAN

9.      Discovery in this case should be conducted under Level 3 of the Texas Rules of Civil Procedure §190.4.

## FACTUAL BACKGROUND

10.     Royce Hassell ("Royce") has been a shareholder in HCCI since 1979.  In 1986, Royce and his four siblings (the children of Royce's father, James C. Hassell) became equal beneficiaries in the James C. Hassell Intervivos Trust ("JCH Trust").[1]   The purpose of forming the JCH Trust was to convey equal beneficial ownership interest in HCCI to each of James Hassell's children.  Upon information and belief, the JCH Trust is the majority shareholder of HCCI.  Consequently, in addition to his individually owned shares, Royce also holds beneficial ownership of HCCI shares.[2]

11.      Royce was appointed and served as the original Trustee of the JCH Trust from 1986 until October of 1999 when Royce stepped down in order to take care of his ailing wife. Third-party Defendant Michael Hassell, Royce's brother and also a beneficiary of the JCH Trust, has served as Trustee since 1999.  Unfortunately, Michael has failed to fulfill his obligations and responsibilities as Trustee and has not complied with his fiduciary duties in good faith.

12.     Upon information and belief, Michael is believed to have allowed a life insurance policy of James C. Hassell, which provides funds to the JCH Trust, to lapse.  Michael required

---

[1] The beneficiaries of the JCH Trust are the five children of James C. Hassell ("JCH").  Royce Hassell is JCH's only child from his first marriage; Michael Hassell, Phillip Hassell, and Shawn Hassell Potts are JCH's children from his second marriage; and Jason Hassell is JCH's only child from JCH's third marriage.  The children of JCH, all adults, are each equal, per stirpes, undivided beneficiaries of the JCH Trust.  Among the assets of the JCH Trust is the majority of HCCI's shares.

[2] Defendants Royce and Silvia Hassell have been married since 1978.  Silvia Hassell is a shareholder of HCCI by virtue of her community property interest in the shares owned by Royce Hassell.

Royce's assistance to reinstate the life insurance policy.  In addition to Michael's negligent oversight of the life insurance policy, Michael has greatly reduced the value of the JCH Trust by losing and/or transferring valuable trust assets out of the JCH Trust.  In fact, the JCH Trust is a spendthrift trust which by its terms does not permit the alienation of ownership by its beneficiaries.

13.    Royce has been a continuous shareholder of HCCI since acquiring shares of HCCI in 1979, as well as his ownership in HCCI by virtue of his status as a beneficiary of the JCH Trust beginning in 1986.  Royce has not transferred or sold his shares in HCCI to any party.

14.    In 2012, Royce was appointed to act as HCCI's Chief Operating Officer. But he was not employed by HCCI.  Rather he was employed as COO by HMS and leased as employee by HCCI.

15.    HMS is owned and managed by Royce's family members, including but not limited to Michael and Phillip.  Royce has no ownership or management role in HMS.

16.    Nevertheless, in 2013, Royce was purportedly terminated from his role in HCCI by HMS, Phillip, and Michael, which allegedly included a loss of his ownership in HCCI. Royce maintains that this termination was wrongful and that he still is an owner of HCCI, through his direct ownership in HCCI as well as his status of beneficiary in the JCH Trust.

17.    Despite his continuous status as a shareholder of HCCI, Royce has been denied access to the corporate records of HCCI and the Trust records of the JCH Trust by Michael and the other beneficiaries of the JCH Trust.  As a shareholder and a beneficiary, Royce has a right to inspect these records, and denial by Michael, Phillip, and HCCI constitute breaches of fiduciary duty, violations of the Texas Trust Code, and violations of the Texas Business Organizations Code.

18.     Further, Michael has pledged the JCH's Trust assets to secure bonding, insurance and banking accommodations to personally benefit only selected beneficiaries of the JCH Trust and to perpetuate frauds.  According to the Texas Secretary of State Office public records, in approximately 2005-2006 and without Royce Hassell's knowledge, Michael Hassell voted the JCH Trust shares in favor of HCCI merging with another corporation in which Royce Hassell owns no interest, Hassell Contractors, Inc.  However, because Royce Hassell has been denied access to the corporate records of HCCI and the records of the JCH Trust, and these transactions have not been disclosed to Royce Hassell, Royce Hassell has been unable to discover all the events which have transpired within HCCI to affect his direct stock ownership in HCCI and his beneficial ownership interest through the JCH Trust.

19.     Additionally, Michael Hassell has pledged the trust assets of the JCH Trust to co-indemnify Liberty Mutual and now perhaps other sureties, as surety and a beneficiary of a General Agreement of Indemnity for projects performed by HCCI to the exclusion of Royce Hassell.  Thus, it now appears that on all projects being performed by HCCI, the JCH Trust assets including Royce Hassell's undivided interest, are at risk.

## CAUSES OF ACTION

### *Count I:  Breaches of Fiduciary Duties by Michael Hassell and Trustee*

20.     Counter-Plaintiff Royce restates paragraphs 1 – 19 as if fully restated herein.

21.     Michael owes fiduciary duties to Royce and his heirs as Trustee of the JCH Trust of which Royce is a beneficiary.  Michael also owes fiduciary duties to Royce as an officer, director, and beneficial shareholder of HCCI.

22.     Michael has breached his fiduciary duties to Royce.

23.    Michael's breaches of fiduciary duties resulted in injury to Royce and benefit to Michael and HCCI.

### Count II:  Violation of the Texas Trust Code by Trustee

24.    Counter-Plaintiff Royce restates paragraphs 1 – 19 as if fully restated herein.

25.    Michael owes fiduciary duties to Royce and his heirs as Trustee of the JCH Trust, of which Royce is a beneficiary.

26.    Under the Texas Trust Code, Trustee was responsible to Royce for the trust property pursuant to the requirements of Section 114.001 of the Trust Code, including the trust property's management, supervision, and safeguarding.

27.    Trustee has breached his fiduciary duties to Royce by actions, including but not limited to its duty of trust, in failing to appropriately manage, supervise, and safeguard the trust property.

28.    In addition, not only has Trustee failed to comply with his duty of disclosure to beneficiaries under the Texas Trust Code, Trustee has repeatedly denied Royce access to records regarding the JCH Trust, for almost four years despite continuous requests for access to such information.

29.    Royce suffered damages as a result of Michael's violation of his duties under the Texas Trust Code.

### Count III:  Knowing Participation in Breaches of Fiduciary Duties

30.    Counter-Plaintiff Royce restates paragraphs 1 – 19 as if fully restated herein.

31.    Michael owes a fiduciary duty to Royce as Trustee of the JCH Trust of which Royce is a beneficiary.

32.    Phillip and Shawn are aware of the fiduciary relationship.

33.     By participating in the termination of Royce's ownership in HCCI and preventing Royce from viewing the books of HCCI and the JCH Trust, Phillip and Shawn participated in the breach of the fiduciary relationship.

34.     Phillip and Shawn participated in the breach of fiduciary duties that caused damage to Royce.

### Count IV:  Breaches of Fiduciary Duties by Phillip Hassell

35.     Counter-Plaintiff Royce restates paragraphs 1 – 19 as if fully restated herein.

36.     Phillip owes fiduciary duties to HCCI as an officer of HCCI.

37.     Phillip Hassell is President of Hassell Management Services, LLC and Hassell Construction Company, Inc.  As President, Phillip owes a fiduciary duty to HCCI.  Further, based on the relationship between Phillip and Royce and Royce's longtime confidence placed in Phillip in his role in the family businesses, Phillip owes Royce a fiduciary duty.

38.     Phillip Hassell owes HCCI and Royce a duty of loyalty, duty to disclose material information, the duty not to engage in self-dealing, and the duty not to harm the company for personal gain.  Phillip breached his duties by, among other things, refusing to make distributions to Royce and engaging in transactions as an interested director.

39.     Phillip Hassell has violated his fiduciary obligations to HCCI and HCCI's shareholders by using HCCI's corporate name to perpetuate frauds for his personal benefit. Phillip Hassell's use of the JCH Trust's assets to obtain benefits for himself and Hassell Management Services, LLC to the detriment of HCCI is a continuing breach of his fiduciary duties as an officer and director of HCCI to HCCI and its shareholders.

### Count V:  Violations of the Texas Business Organizations Code

40.     Counter-Plaintiff Royce restates paragraphs 1 – 19 as if fully restated herein.

41.     Royce is a shareholder in and owner of HCCI.

42.     Under Section 3.153 of the Texas Business Organizations Code, among others, Royce is entitled to examine the books and records of HCCI.

43.     HCCI, Phillip, and Michael have refused to allow Royce to inspect the corporate records of HCCI, causing Royce damages.

### *Count VI: Aider and Abetter / Conspiracy Liability*

44.     Counter-Plaintiff Royce restates paragraphs 1 – 19 as if fully restated herein.

45.     Michael and Phillip have each conspired in and aided and abetted the respective violations of fiduciary duties alleged above.  Further, Shawn also aided and abetted in the violations.  They have all conspired in a deliberate attempt to deprive Royce of the benefits of his interests in HCCI and the JCH Trust.

### *Count VII:  Fraud, Use of the Corporate Form as a Sham to Perpetuate a Fraud, and Fraudulent Concealment*

46.     Counter-Plaintiff Royce restates paragraphs 1 – 19 as if fully restated herein.

47.     As a beneficiary of the JCH Trust and as a shareholder of HCCI, Royce is entitled to disclosure of pertinent information regarding the business.  However, facts have been concealed from Royce Hassell.  The doctrine of fraudulent concealment applies in this case and defers the accrual of claims for breach of fiduciary duty.  Such breaches may include acts in violation of the Trust Code and other statutes.

48.     Michael and Phillip Hassell, as Trustee of the JCH Trust and as President of HCCI respectively, are continuing to use HCCI's corporate form as a sham and to perpetuate a fraud on Royce Hassell and his heirs, among others.  Currently, Michael and Royce are inconsistently using the JCH Trust's assets which include the majority ownership of HCCI stock to obtain surety, insurance and banking accommodations to benefit themselves personally and

others to the detriment of the non-participating JCH Trust beneficiaries, namely Royce Hassell and his heirs.

49.     Additionally, they have also used HCCI's name to bring a serious of meritless lawsuits to benefit Hassell Management and selected beneficiaries of the JCH Trust, while failing to pursue and, in fact, non-suiting valuable and meritorious causes of actions against third parties who have injured HCCI's interests.

50.     Additionally, even the public records evidence that after ousting Royce Hassell as the Chief Operating Officer of HCCI, HCCI has been mismanaged by the owners of Hassell Management Services, LLC.  For instance, due to apparent mismanagement HCCI was recently cited by the U.S. Department of Labor's Occupational Safety and Health Administration for 16 safety violations, including six egregious *willful* violations and nine serious violations for failing to protect workers inside an excavation and was subject to penalties of $423,900.

51.     Despite having his ownership interests in HCCI at risk, Royce Hassell has been denied access to both the corporate records of HCCI and the records of the JCH Trust. The records being sought will undoubtedly disclose additional frauds which have been and are being committed.

52.     Unless immediate access to such records is permitted, Royce Hassell reserves the right to seek an injunction pursuant to Tex. Bus. & Com. Code Ann.  §24.008(a)(3) and  to seek the imposition of a receivership on certain assets of HCCI, as well as the removal of Michael Hassell as Trustee of the JCH Trust.  Specifically, the continuous refusal to grant Royce Hassell access to the corporate records of HCCI and the trust records of the JCH Trust has obstructed HCCI and the JCH Trust claims against third parties who have harmed and are harming HCCI as

a family owned corporation and the JCH Trust for the benefit of all five of JCH's children and their descendants.

### *Count VIII: Declaratory Judgment on Royce Hassell's Ownership of HCCI*

53.     Counter-Plaintiff Royce restates paragraphs 1 – 19 as if fully restated herein.

54.     This Court has the power to  "declare rights, status, and other legal relations whether or not further relief is or could be claimed."  TEX. CIV. PRAC. & REM. CODE § 37.003.  A person "whose rights, status, or other legal relations are affected by a statute, municipal ordinance, contract, or franchise may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise and obtain a declaration of rights, status, or other legal relations thereunder.  Id. § 37.004.

55.     Specifically, based on the controversies described above, Counter-plaintiff seeks the following declarations from the Court:

        a.     the identity of and current ownership interest of HCCI's shareholders;

        b.     Royce Hassell's right to access HCCI's books and records;

        c.     Royce Hassell's right to an accounting of HCCI;

        d.     Royce Hassell's right to access the JCH Trust's books and records; and

        e.     Royce Hassell's right to an accounting of the JCH Trust.

### *Count IX:  Attorneys' Fees*

56.     Counter-plaintiff hereby incorporates all of the preceding paragraphs by reference.

57.     Counter-plaintiff has retained the law firm of Locke Lord LLP to prosecute its claims in this matter.  Accordingly, Counter-plaintiff is entitled to recover its attorneys' fees and

costs pursuant to Chapter 37 and Chapter 38 of the Texas Civil Practice and Remedies Code. *See* TEX. CIV. PRAC. & REM. CODE §§ 37.009 and 38.001, *et seq.*

58.      Counter-plaintiff also reserves the right to seek mandatory indemnification under Texas Business Organizations Code 8.051, and/or Court-Ordered Indemnification under Texas Business Organizations Code 8.052.

## **PRAYER**

Counter-plaintiff Royce Hassell prays that Counter-defendant HCCI and Third-party Defendants Michael Hassell, Shawn Hassell Potts, Phillip Hassell, and Trustee of the JCH Trust be cited to appear and answer in this Court and that, upon final determination of the merits, Counter-plaintiff be awarded his damages, attorneys' fees, pre- and post-judgment interest at the highest rates allowed by law, costs of court, an accounting of HCCI, and all further relief, whether by law or in equity, to which he may be justly entitled.

Respectfully submitted,

**LOCKE LORD LLP**

By: _____
DERRICK CARSON
State Bar No. 24001847
DEANNA WILLSON
State Bar No. 24092759
CHRISTIAN PEREZ
State Bar No. 24098243
2800 JPMorgan Chase Tower
600 Travis St.
Houston, Texas  77002
dcarson@lockelord.com
Deanna.willson@lockelord.com
cperez@lockelord.com
(713) 226-1197 - Telephone
(713) 223-2622 - Facsimile

ATTORNEYS FOR DEFENDANTS
ROYCE AND SILVIA HASSELL AND
COUNTER-PLAINTIFF ROYCE HASSELL

## CERTIFICATE OF SERVICE

I certify that on May 19, 2017, a true and correct copy of this Original Claims of Counter-Plaintiff Royce Hassell was served on the following counsel of record:

Bogdan Rentea
Rentea & Associates
700 Lavaca, Suite 1400-2678
Austin, Texas 78701
(512) 472-6291
(512) 472-6278 (facsimile)
brentea@rentealaw.com

_____
**Deanna M. Willson**