**BEFORE THE
AMERICAN ARBITRATION ASSOCIATION
Construction Industry Arbitration Rules**

JAMES C. HASSELL  and HASSELL     §
CONSTRUCTION COMPANY, INC.     §
    §
*Claimants,*     §
    §
    §
vs.     §     No.  01-14-0000-3178
    §
    §
R. HASSELL HOLDING CO., INC.,     §
R. HASSELL & COMPANY, INC.,     §
R. HASSELL BUILDERS, INC.,     §
G.R. GROUP RESOURCES LLP, ROYCE     §
J. HASSELL and SILVIA HASSELL,     §
    §
*Respondents.*     §

<u>**ORDER NO. 9**</u>

On December 15 and 16, 2016, the parties appeared for a preliminary hearing regarding the issues outlined in Order No. 8 in this proceeding, dated October 21, 2016.  On the basis of the hearing, and by agreement of the parties[1], the Panel orders as follows:

The parties will proceed to final hearing with the current parties to this arbitration proceeding only[2], and based only upon currently-filed claims and counterclaims, subject to amendment authorized to be filed by the panel upon good cause shown. The final hearing shall last ten (10) days, which each party has agreed will be sufficient for each to present their respective claims and defenses. Claimants and Respondents, respectively, will each be responsible for one-half of the anticipated costs, fees and expenses of arbitration going forward,

---

[1] Respondents have asserted their objection and lack of consent to being required to continue participating in this arbitration proceeding, and have regularly and consistently asserted their objections and non-waiver of their position in this regard. In their Preliminary Scheduling Order No 1, the panel granted the Respondents a running objection and note that all agreements referenced in this Scheduling Order and subsequent orders shall be without waiver by Respondents of their said objections. The agreement of the Respondents reflected herein continues to be subject to said objection as well as to their claimed due process objections and asserted right to appeal the panel's decision not to grant Respondents' motion to join additional parties due to Respondents' failure to file their motion to join by November 18, 2016, as required by Preliminary Order No 8.

[2] At the December, 2016, hearing, Respondents reasserted their objection to the participation in this proceeding by the law firm of Coats, Rose, and the participation of attorney Bogdan Rentea, both as attorneys for Claimants. The panel has previously denied motions to remove Coats, Rose, and here reaffirms that prior decision, nor will the panel interfere with Claimants' desire to retain Mr. Rentea in this proceeding.

as will be estimated by the arbitrators based upon the revised schedule calling for ten days of hearing, together with anticipated arbitrator study and travel time and such other criteria as are normally used by the arbitrators in reaching its estimates. Respondents may pay their one-half share in five equal installments, provided their entire share is paid in full no later than thirty (30) days prior to the beginning of the final hearing on June 19, 2016. If Respondents' full share of the estimated costs, fees and expenses of arbitration is not paid in full on or before thirty (30) days prior to the final hearing, their affirmative claims are subject to being stricken by the panel.

   In addition the following schedule and procedures will govern the prompt and efficient resolution of this dispute:

1. **<u>Final Evidentiary Hearing</u> – The final evidentiary hearing in this matter will be held June 19—23, and June 26-30, 2017. On June 19, 2017, the hearing shall commence at 9:30a.m., but thereafter each day of hearing shall commence at 9:00 a.m.** The parties agree that the foregoing hearing schedule will allow the parties sufficient opportunity to present their respective claims. **<u>This is a firm setting, and will not be continued absent very exceptional circumstances and upon a showing of good cause</u>**. Claimants and Respondents will each be afforded 5 days worth of time, and their participation in the final hearing will be subject to a clock, so that all testimony elicited by a side, together with all argument, objection and other use of time during the final hearing shall count towards each side's aliquot share of time allotted. The arbitration will be conducted in Houston, Texas, at an address to be determined by agreement of the parties; however, should the parties not agree upon a venue for the hearing and communicate their agreement to that venue to the panel and the case manager by **April 1, 2017**, the hearing location in Houston will be determined by the case manager and/or the panel.

2. **<u>Amendment or Supplementation of Claims</u>**

   No Amendment or Supplementation of Claims or Counterclaims shall be allowed except upon good cause shown, and no supplemented or amended claim or counterclaim filed with the AAA shall be deemed filed unless and until so ordered by the panel.

3. **<u>Additional Motions/Motions for Leave to File</u>**

Any party wishing to file a motion for consideration by the Panel shall accompany their proposed Motion with a Motion for Leave to File the motion. Any motion for leave should be limited to three double spaced pages, shall be dated and signed by an attorney of record for the submitting party. Should the Panel desire a response to any such Motion for Leave, it will so inform the parties. No Motion will be deemed filed if submitted without a Motion for Leave to File or absent the Panel granting a Motion for Leave to File such Motion.

4.      **Expert Disclosures and Reports**

Not later than **February 15, 2017,** each party seeking affirmative relief shall designate any expert witness expected to be called to testify.  Each party shall further provide on that date the name, address and telephone number of each such expert, and shall also provide curriculum vitae of the expert, a description of the general areas on which the expert is expected to testify.   Expert reports relating to a party's affirmative claims shall be due no later than **May 1, 2017**. Rebuttal Expert Reports shall be due no later than **May 15 2017.** No person will be allowed to testify as an expert witness if not timely designated and no designated expert will be allowed to testify as to opinions not reasonably disclosed in the expert's written report.

5.      **Discovery Permitted**  Each party shall be permitted to conduct discovery under the following conditions and limitations:

A.      **Depositions:**   Claimant has agreed and stipulated that in order to prepare for the final hearing it will need to take only the depositions of the following: Royce J. Hassell, a representative for each of the Respondent corporate or other legal entities, and Respondents' Expert Witness(es). Respondent has agreed and stipulated that in order to prepare for the final hearing it will need to take only the depositions of the following: Shawn Hassell Potts, Phillip Hassell, James C. Hassell, Steve Ligon and Claimants' Expert Witness(es). Absent agreement of the parties, depositions may only be taken between 8:30 a.m. and 5:30 p.m., Monday through Friday, excluding holidays, and the witness shall be permitted a fifteen minute break in the morning and afternoon, and a one hour and fifteen minute break for lunch. Except on leave of the panel, for good cause shown, no individual deposition shall last over 6 hours.

B.      **Written Discovery:**   Each party may serve upon a party opponent requests for production of relevant documents (but not interrogatories or requests for admission) and tangible items.  No request for production of relevant documents shall be filed after **January 16, 2017**. Responses to any request for production of relevant documents shall be made no later than 30 days following the date of the request. Discovery practices which are determined to be repetitive, unreasonably burdensome, harassing, or abusive may result in sanctions, including further limitations as to the amount and scope of discovery permitted.

C.      **Automatic Exclusion:**  As a general principle, a party who fails to make, amend or supplement a discovery response in a timely manner may not introduce in evidence the material or information which was not timely disclosed, or offer in evidence the testimony of a witness who was not timely identified, absent a showing of exceptionally good cause for the party's failure to timely provide the required discovery.

D.    **Discovery Supplementation:**   As the case progresses, on an ongoing basis, each party shall have a continuing obligation to voluntarily and seasonably supplement its initial disclosures and discovery responses to include any updated information or documents that are relevant to the matters previously raised in discovery requests.

E.    **Discovery Dispute:** If any dispute arises during the course of discovery, the parties shall confer for the purpose of attempting to resolve the dispute.   If the parties are unable to agree, they shall not file any written materials, but shall contact the Case Manager to schedule a conference. The parties have agreed that any such dispute shall be heard by the Panel Chair or any one available member of the panel. Written materials relating to the discovery dispute shall only be filed if requested by the Panel member(s) hearing the dispute.   If any dispute arises during the conduct of a deposition, the parties shall attempt to resolve the disagreement.   If the parties are unable to do so, then they must contact the Case Manager to determine if the matter can be immediately considered in a telephone conference with an available Panel member. If the parties are unable to secure an immediate hearing and resolution of the objection(s), then complete, non-argumentative, objections shall be stated on the record; however the deposition shall be completed with respect to non-objectionable matters.   With respect to those matters to which an objection has been made and the witness has not answered, the parties shall promptly contact the Case Manager to schedule a conference as set out above with respect to other discovery disputes.

6.    **Close of Discovery** – Not later than **June 1, 2017,** all discovery shall be completed. Parties are expected to make such arrangements as are necessary to insure that designated witnesses can be made reasonably available for deposition by the party opponent, if requested, within the allotted time.   The parties are free to conduct depositions and written discovery after the deadlines established herein, by agreement; however such agreement to conduct late discovery will not be enforced by the Panel, absent a showing of good cause and substantial need, nor shall any such agreement constitute good cause for a delay in the hearing schedule.

7.    **Exchange of Pretrial Information** – Not later than **June 12, 2017,** the parties shall exchange their respective witness lists, exhibit lists, and page/line designations of deposition excerpts to be introduced in direct examination at the hearing.   Counter-designations by a party opponent of deposition portions to be introduced for cross examination shall be exchanged no later than **June 14, 2017**. Prior to and during the final hearing the parties will be expected to make good faith efforts to keep one another reasonably and timely apprised of one another's expected witness schedules and any changes thereto.

8.    **Pre-Hearing Submission** – Not later than **June 16, 2017,** the parties shall jointly prepare and file a Pre-Hearing Submission, including the following:

A.    A brief (one page or less) list of each party's **ultimate** fact and legal issues to be decided by the Panel.

B.     If agreement is possible, a joint statement of uncontested or stipulated facts.

C.     A list of witnesses to be called at the hearing by each party, separated between fact and expert witnesses.  For each witness, a brief explanation of the witness' role in the case should be provided.   For witnesses whose testimony will be presented by videotape, affidavit, deposition or other electronic or remote means, identify the method by which the testimony will be presented.

D.     Copies of essential cases, applicable law from jurisdictions other than Texas, and other important legal authorities which are likely to be the central focus of a party's arguments regarding disputed issues of law, or which will likely be needed by the Panel in order to properly interpret the testimony and other evidence to be presented at the hearing.   Materials regarding common or well settled legal standards and principles need not be provided.

E.     Each party may, but it is not required to, submit a pre-hearing brief setting forth its factual and legal arguments.  The brief should not exceed twenty double-spaced pages exclusive of exhibits and other attachments. The parties are directed to avoid excessive and lengthy exhibits.

9.     **<u>Subpoenas and Compulsory Process</u>** – To secure the appearance of witnesses or production of documents from non-parties subpoenas will be issued by the Chair pursuant to AAA Rules, and applicable statutory authority.   Parties who desire to have subpoenas issued should timely make such a request through the Case Manager

10.     **<u>Hearing Procedures</u>** – Evidentiary hearing procedures generally will follow the customary order of proof and presentation style typical of bench trials in Federal court.   Exhibits should be prepared jointly, in binders, pre-marked with exhibit labels and numbered binder tabs.  The Panel strongly encourages the parties to confer and provide joint exhibit binders at the hearing, as this will avoid duplication of exhibits, and will minimize confusion and disruption during the proceedings.    Separate sets of exhibit binders must be provided for each counsel, the witness stand, and each Arbitrator.

11.     **<u>Exhibits</u>:**

A.     Pre-admission of all exhibits will be the first order of business at the final evidentiary hearing.

B.     The parties shall confer in good faith and attempt to agree upon the authenticity and/or admissibility of exhibits, including charts, summaries, and demonstrative aids. All joint exhibits will be numbered consecutively, shall be admitted into evidence at the beginning of the hearing and may be used by any party.

C.     To the extent the parties are unable to agree as to the authenticity

or admissibility of an exhibit, chart, summary or demonstrative aid, each party shall submit its own binder(s) for each member of the Panel.  The exhibits shall be designated "C" for Claimants and "R" for Respondents and numbered consecutively beginning with "1."

D.      In addition to the foregoing, the parties are requested to provide electronic copies of all exhibits to the panel, in PDF format, via Dropbox no later than the **Friday June 16, 2017.**

12.     **Witness Testimony:**

A.      Witness testimony may be offered live or by deposition (transcript or video) and with agreement of counsel or authorization by the panel, via telephone or in any other manner which promotes the efficient presentation of the evidence.  The parties shall make arrangements in advance of the hearing for any special equipment which may be required to facilitate the presentation of evidence (e.g. speaker-phone, VCR, TV, projector, etc.).

B.      Affidavits may be accepted as evidence at the hearing only by agreement of the parties, or if no agreement, then only if the affiant is available to the party-opponent for immediate confrontation and cross examination.  The panel may relax this rule only for good cause shown.

C.      The parties shall make arrangements to schedule the attendance of witnesses in order that the trial may proceed expeditiously and without any unnecessary delay.

D.      The parties shall advise each other by 5:00 p.m. of the preceding hearing day as to the witnesses and the order of witnesses they expect to call the following day.

13.     **Award:**  The award shall be a Standard Award. Any issue regarding an award of attorneys' fees will be presented through post-hearing submissions, and will be decided by the Panel solely on the basis of the papers and other supporting materials, unless oral argument is requested by the Panel.

14. **Miscellaneous Matters:**

A. The Panel remains available to the parties to assist with resolution of any other matters that are not addressed in this Order.  All questions, inquiries and scheduling requests should be directed to the AAA Case Manager, who will forward the information to the Panel.  There is no direct communication between the parties and the Panel.

B. Any preliminary matters not otherwise provided for herein shall be submitted to the Panel by **June 1, 2017.**

C. The parties shall indicate no later than **June 1, 2017,** whether a court reporter will be utilized.

D. The use of email for communications between the parties, the Case Manager and the Panel is authorized. All communication from the parties shall be done through lead counsel only.

E. All deadlines in this Order expire at 5:00 p.m. CST or CDT on the specified date.

F. Additional pre-hearing status conferences, if needed, are scheduled for **April 7, 2017 at 10:00 a.m. and on May 19, 2017 at 10:00 a.m.**   The status conferences will be conducted telephonically and will be conducted as scheduled absent agreement by all parties and the panel.

G. A post-hearing briefing and submission schedule will be established at the conclusion of the evidentiary hearing.

This Order shall continue in effect unless and until amended by subsequent order of the Panel.

Signed this 22nd day of December, 2017.

_____
James Chrisman Phillips, Chair
for the Panel

# BEFORE THE AMERICAN ARBITRATION ASSOCIATION

JAMES C. HASSELL, ET AL., §
§
*Claimants*, §
§
VS. §
§
R. HASSELL HOLDING COMPANY, INC., §
ET AL., §   **Case No. 01- 14-0000-3178**
*Respondents*. §
§

## RESPONDENTS' MOTION TO MODIFY THE ARBITRATION AWARD

In accordance with R-51 of the AAA Construction Rules and § 171.054 of the Texas Civil Practice & Remedies Code, Respondents respectfully request that the Tribunal modify the Award in two respects:

1. During the arbitration hearing, the parties stipulated that Respondents' derivative claims were not before the Tribunal, and the merits of the derivative claims were therefore never addressed. Respondents request the Award be modified to be consistent with the parties' agreement that those claims were not before the Tribunal.

2. In the Award, the Tribunal correctly ruled that the Deeds of Trust executed by Royce and Silvia in favor of James C. Hassell as beneficiary were declared void. But the Award incorrectly states that there were only *two* such Deeds of Trust, when in fact there were *three* introduced at the hearing. Respondents request that the Award be corrected to reflect that all three Deeds of Trust are declared void.

## A.   This Panel's Limited Authority to Modify the Award

Having issued its final award, this Panel is *functus officio* and has exceedingly limited authority to modify its award. *See Stage Stores, Inc. v. Gunnerson*, 477 S.W.3d 848, 855 (Tex. App.—Houston [1st Dist.] 2015, no pet.). But the very narrow relief that the Respondents seek is authorized by § 171.054 of the Texas Civil Practice & Remedies Code, which allows an arbitrator to modify an award on the grounds stated in § 171.091. Section 171.091(2) authorizes modification if "the  arbitrators have made an award with respect to a matter not submitted to them and the award may be corrected without affecting the merits of the decision made with respect to the issues that were submitted." This Panel further has authority under §

1

**Exhibit D**

171.091(1)(B) and R-51 of the AAA Construction Rules, which allow modification to correct clerical errors such as errors in description of a "person, thing, or property referred to in the award."

**B.      Respondents' Derivative Claims were not before the Tribunal.**

In the Award, the Panel stated that all claims not expressly granted, including Respondents' derivative claims, were denied.[1]  However, as the parties agreed at the hearing, the Panel did not have jurisdiction to make any rulings regarding Respondents' derivative claims because those claims were not before the Panel.[2]  In accordance with their agreement, the parties did not substantively address the derivative claims, and an award that denies relief for any derivative claims improperly precludes Respondents from addressing the merits of such claims in an appropriate forum should it ever be necessary, though hopefully it will not.[3]

As noted in the prior section, the Panel may correct an award "with respect to a matter not submitted to them and the award may be corrected without affecting the merits of the decisions made with respect to the issues that were submitted."[4]  Because the issue of derivative claims was not before the Tribunal, the following phrase should be struck from the Award:

> *Respondents' derivative claims against HCCI, James C. Hassell, Phillip J. Hassell, Shawn Hassell Potts, and Michael Hassell for fraud, conspiracy to defraud, fraud by non-disclosure, promissory estoppel, tortious interference, constructive discharge of Royce Hassell, libel, slander, business*

---

[1] The Award states: "All claims not expressly granted herein, including, without limitation…(ii) Respondents' derivative claims against HCCI, James C. Hassell, Phillip J. Hassell, Shawn Hassell Potts, and Michael Hassell for fraud, conspiracy to defraud, fraud by non-disclosure, promissory estoppel, tortious interference, constructive discharge of Royce Hassell, libel, slander, business disparagement, fraud in the inducement, assumpsit, quantum meruit, unjust enrichment, and punitive damages…"

[2] Arb. Hearing Trans., at 1985:7–14.

[3] Respondents recognize the Solomon-like way the Panel has attempted to end all hostilities among this family.  By making this request, Respondents do not seek to disturb that balance but rather enhance it.  Taking away potential claims from Silvia and Royce, while leaving untouched claims that others not a party to this arbitration may assert, is essentially a unilateral disarmament likely to lead to conflict, not prevent it.

[4] Tex. Civ. P. & Rem. Code § 171.054. *See also* R-51 of the AAA Construction Rules.

*disparagement, fraud in the inducement, assumpsit, quantum meruit, unjust enrichment, and punitive damages, (iii)*

This modification is particularly appropriate given that the derivative actions include parties and issues that were in no way included in this arbitration.  Neither Phillip J. Hassell, Shawn Hassell Potts (individually), nor Michael Hassell were parties to this proceeding or entitled to any relief in this proceeding.  Ms. Potts was a party only in her capacity as trustee of the deed of trusts at issue.

**C.**   **Three Deeds of Trust, not two, were signed by Royce and Silvia**.

The Award provides that the "***two*** Deeds of Trust executed by Royce Hassell and Silvia Hassell to secure the LOC, where James C. Hassell is the beneficiary, are declared void and of no further force and effect…" (emphasis added).  But there were ***three*** deeds of trust executed by Royce and Silvia where James C. Hassell is the beneficiary, and each was introduced as an exhibit at the hearing.[5]

In accordance with § 171.054 of the Texas Civil Practice & Remedies Code and R-51 of the AAA Construction Rules, the Tribunal may correct clerical, typographical, technical, or computation errors in the award.  As there were ***three*** deeds of trust executed by Royce and Silvia where James C. Hassell is the beneficiary, the Award should be modified to correct the clerical error suggesting that there were only two.

**CONCLUSION**

For the reasons stated in this motion, Respondents respectfully request that the Award be modified to (1) clearly provide that Respondents' derivative claims, by agreement of the parties, were not within the jurisdiction of the Tribunal and (2) correct the clerical mistake suggesting

---

[5] *See* R-321, R-324, and R-330.  R-330 was admitted as C-88. *See also* Arb. Hearing Trans. 1048:1-1053:24. Respondents' note that Mr. Rentea inadvertently referred to the two deeds of trust with the beneficiary as James C. Hassell (*see* Arb. Hearing Trans. 611:15-20), but later testimony and the evidence itself proves otherwise.

that there were only two deeds of trust declared void by the Tribunal, when in fact there were three.

Respectfully submitted,

*/s/ Derrick B. Carson*

Derrick B. Carson
State Bar No. 24001847
dcarson@lockelord.com
Jonathan Pelayo
State Bar No. 24060402
jpelayo@lockelord.com
Deanna M. Willson
State Bar No. 24092759
Deanna.willson@lockelord.com
Christian Perez
State Bar No. 24098243
cperez@lockelord.com
**LOCKE LORD LLP**
600 Travis, Suite 2800
Houston, Texas 77002
Telephone: (713) 226-1197
Facsimile: (713) 229-2612
ATTORNEYS FOR RESPONDENTS AND
COUNTER-CLAIMANTS

**Of Counsel:**

Silvia T. Hassell
12512 Cutten, Suite A
Houston, Texas 77066
Tel: (713) 665-2442
Fax: (713) 665-0369
sehassell@aol.com

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on December 27, 2017, a true and correct copy of the foregoing was

served on Claimants and the Tribunal.

*/s/ Deanna M. Willson*
Deanna M. Willson

Action Plan
2/17/12

I, Royce James Hassell, propose this
Action Plan to Reduce our debit
And to preserve our Ability to pay
Off our Obligations - going forward.

## PREAmble
Pre conditions

1. Silvia & I fully Recognize that our
Obligations Are of our own making
& that what we do has & will impact
others.

2. It is our Desire to continue working/
bidding on projects in order to
Make a profit that would Enable
us to pay off our Obligations.

3. We will need to market our Real estate
in the upmost favourable position to
Maximize our Return for that purpose.

4. To preserve our strengths As A
family And to Ask for forgiveness
for Any ill Feelings, hurt, pain, Economic
stress that we have placed Anyone in own
Caused Anyone.

CCI Ex. 24

Exhibit
E

Exhibit
C-81

HCCI Ex. 24

HCCI-AAA-PRODUCTION-002963

5. To work with every ounce God can give us both to work toward a resolution & Restoration.

6. To fully Trust in God, His (this should Be #1) Faithfulness, Provision, Grace, Wisdom & Love.

7. To learn meekness, humbleness & exhibit them to have a better attitude towards others.

## Action

1. To move into Building on Cotton Road or Trailer (not sure Enough time to do immediately) - store excess @ Duncan until sold or other places

2. Continue to work to make Springwood & Kingwood Profitable & future projects

3. Help Phillip / Shawn / Mike in any way possible from Running the office to mopping the floors & to oversee Projects for us to be profitable to pay our obligations.

4. To Give 100% of my time & energy During working hours to make us (family) successful, whole and complete.

HCCI-AAA-PRODUCTION-002964

5. To resolve all past dues so that I can focus on the bright future.

6. Reduce the stress on everyone involved - immediately

7. To accept God's will in all this whichever way he leads us.

## Conclusion

I accept responsibility for all past events, ask for forgiveness and pledge to use my God given talents to go forward, to work hand to fulfill my obligations, to trust in others and to be resolved to accept whichever way God takes us. I feel that God has blessed me throughout my life and He will not foresake me but will provide me an opportunity to be successful in my future.

Roger J Horsell

P.S. I LOVE YOU, SO VERY much & I AM SO

HCCI-AAA-PRODUCTION-002965

Phil,

my intent is to use this for the
Insurane issue which
I think we have Accomplished.

As far as the Accounting &
Lison we will continue on As-is
( with modifications As needed )

This should Be the only place /
Document Regarding the J.V.

Roger

**Exhibit F**

**Exhibit C-234**

**HCCI Ex. 121**

HCCI Ex. 121

To:        Royce Hassell[conrcrete@gmail.com]
Cc:        Shawn Potts[spotts@hassellconstruction.com]; Michael
Hassell[mhassell@hassellconstruction.com]
From:      Phil
Sent:      Thur 3/31/2011 12:05:32 PM
Subject:   Re: payables
MAIL_RECEIVED:      Thur 3/31/2011 12:06:12 PM

You did not pay the bills that you said you were going to, furthermore you paid bills that were
not on your aging report which makes what we talked about not correct. Living expense are not
bills to vendors or subcontractors. Yes I am disappointed because I don't understand what you
are doing, the hole keeps getting deeper. How do you plan on paying the bills that did not get
paid for. We had a plan why did you change what we discussed we were going to do?

Phillip Hassell
Hassell Construction Company, Inc.
12211 Duncan Road
Houston, Texas  77066
281-893-2570 Office
281-580-9170 Fax

On Mar 31, 2011, at 11:43 AM, Royce Hassell <conrcrete@gmail.com> wrote:

Phil,

As we discussed last weekend, it is going to be April before we are
out of this hole.  Furthermore, how can you expect for me to go for
three months and not have any income to keep the business going?  I
am not complaining but I think it is unrealistic to assume that we can
just pay bills and not make payroll etc. (if we are truly working off
your LOC then we should have either included some $ for our
expenses or resolve it afterwards.  As we discussed when we did the
LOC wire, you asked me about "living money" and I said give me
some time for the dust to settle and Id get back to you.  When I did
there was no reply) Its not a very likeable situation on my part but I
don't think either of us can afford for me to not keep the projects
moving forward.  I've done that and now you are livid.

Having said that, I have tried to show you how by the end of April

<table>
<tr><td>**Exhibit G**</td><td>**Exhibit C-42**</td><td>**HCCI Ex. 124**</td></tr>
</table>

HCCI Ex. 124

HCCI-AAA-PRODUCTION-002957

we should be back on level ground. Here is another recapp of
EXACTLY where we are cost vs. revenue. I don't know what else to
show or say but that we are in much better shape than we were even
6 months ago.

| | | |
|---|---|---|
| LOC | -$1,116,342.00 | |
| Jan. Pay Request | $498,637.00 | |
| Feb. Pay | $690,899.00 | |
| March Pay | $892,000.00 | |
| Subtotal | $965,194.00 | |
| Costs thru 3/30 | | Includes the unpaids |
| Hillhouse | -$70,000.00 | |
| NC Foote | -$330,000.00 | |
| Research | -$326,000.00 | |
| FS | -$364,000.00 | |
| | -$124,806.00 | |

Obviously, I wish the $124 was a positive number but there is
money in the retainage account to cover this if we aren't able to
make it up in profit and if I don't then Ill cut you a check when the
Willowbend property closes. I don't think that will be necessary
though. Additionally, it doesn't include any April receivables which
some of those costs are associated with.

Surely the $124 isn't a large enough amount for your Surety to
question our sustainability, is it?

Brother, I want to make this work and I trying as hard as I know how

HCCI-AAA-PRODUCTION-002958

under the circumstances.


Royce


On Thu, Mar 31, 2011 at 10:05 AM, Phil <jphassell@hassellconstruction.com> wrote:

Shawn,

Here is what should have been paid with the funds that we wired Royce, according to
the aging report that we discussed in our meeting on Friday when you were leaving for
Spring Break.
Royce sent a check preview on March 14 for NC Foote & Research and on March 15
for Hillhouse and Wayne Grey, I used these for the funds that were wired to Royce.
The only thing that changed was that I added $21,672.00 to Southern Star to pay them
in full for NC Foote because the balance was way past due. What Royce has paid is not
what we had planned on, I am not sure what the situation is. I have a meeting with Dad
tomorrow about my meeting with the bonding company next week, he is going to blow
a gasket with the bills not being paid like I presented to him. I will not be able to go to
the bonding with the current status of payment. This situation needs to be remedied
immediately. I have copied Royce on this e-mail and will call as soon as I can to
discuss it with him.


NC FOOTE: $278,441.58

| | |
|---|---|
| Acme | 13,698.90 |
| Brazos | 5,691.60 |
| Chemical | 2,782.12 |
| HCB | 34,650.00 |
| Progressive | 180,500.00 |
| Southern Star | 30,198.00 |
| Volt master | 10,920.96 |


Wayne Grey   $252,993.70

| | |
|---|---|
| DTA | 44,346.00 |
| White Water | 208,647.70 |


Hillhouse   $ 45,368.58

HCCI-AAA-PRODUCTION-002959

| | |
|---|---|
| CMC | 1,556.20 |
| CL Davis | 7,225.00 |
| Hasssell | 36,587.38 |

| | |
|---|---|
| Firestation | $270,590.73 |

| | |
|---|---|
| Advantage | 9,630.00 |
| Allstate | 7,506.81 |
| American | 42.78 |
| ARCI | 40,500.00 |
| ARCI | 27,000.00 |
| Arc. Louvers | 1,824.00 |
| CMC | 548.60 |
| Curry | 30,150.00 |
| Geargrid | 6,407.00 |
| HAD | 21,807.00 |
| HAD | 2,484.00 |
| HCB | 17,460.00 |
| Impact | 2,697.00 |
| Multi-graphics | 644.00 |
| Myrex | 1,028.79 |
| Old Spring | 24,300.00 |
| Overhead | 19,800.00 |
| Voltmaster | 47,547.00 |
| Voltmaster | 9,213.75 |

| | |
|---|---|
| Research | $268,947.53 |

| | |
|---|---|
| AAA Asphalt | 2,174.04 |
| AAA Asphalt | 14,759.82 |
| Cherry | 971.60 |
| CMC | 3,951.44 |
| Curb Planet | 4,982.50 |
| GE Capital | 3,426.01 |
| Highway Paving | 36,476.80 |
| Lazer | 4,143.82 |
| Max Heavy Haul | 1,800.00 |
| Precision | 1,485.00 |
| Southern Star | 173,370.50 |
| Steel Effects | 21,406.00 |

HCCI-AAA-PRODUCTION-002960

Phillip Hassell
Hassell Construction Company, Inc.
12211 Duncan Road
Houston, Texas  77066
281-893-2570 Office
281-580-9170 Fax

HCCI-AAA-PRODUCTION-002961