# HASSELL CONSTRUCTION COMPANY, INC.

## *BALANCE SHEET*

### *MAY 3, 2018*

| HCCI Net Worth Contest Exhibit _____ | Exhibit I |
|---|---|

# C O N T E N T S

BALANCE SHEET .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  2

**HASSELL CONSTRUCTION COMPANY, INC.**
**BALANCE SHEET**
**MAY 3, 2018**

**<u>A S S E T S</u>**

**CURRENT ASSETS:**

| | | | |
|---|---|---|---|
| Note receivable - stockholder | | $ | 250,000 |
| Accounts receivable: | | | |
| Estimates and trade | $ 3,052,391 | | |
| Retainage | 998,479 | | |
| Federal income tax | 152,389 | | |
| Affiliate | 26,459 | | |
| Officers | 13,017 | | |
| Other | 4,119 | 4,246,854 | |
| Prepaid expenses and deposits: | | | |
| Prepaid rent | 1,000 | | |
| Prepaid insurance | 120,016 | | |
| Deposits - other | 10,071 | 131,087 | |
| Total current assets | | 4,627,941 | |
| **PROPERTY AND EQUIPMENT:** | | | |
| Buildings and improvements | 558,574 | | |
| Machinery and equipment | 8,769,500 | | |
| Leasehold improvements | 109,498 | | |
| Automobiles and trucks | 142,978 | | |
| Furniture and fixtures | 104,220 | | |
| | 9,684,770 | | |
| Less accumulated depreciation | 7,136,070 | | |
| | 2,548,700 | | |
| Land | 79,145 | 2,627,845 | |
| **OTHER ASSETS:** | | | |
| Miscellaneous deposits | 3,027 | | |
| Cash value life insurance | 62,744 | 65,771 | |
| TOTAL | | $ 7,321,557 | |

**Amounts are the representation of Company Management, no assurance is provided**

## L I A B I L I T I E S   A N D   S T O C K H O L D E R S'   E Q U I T Y

**CURRENT LIABILITIES:**

| | | | |
|---|---|---|---|
| Bank overdraft | | $ | 130,961 |
| Current maturities of long-term debt | | | 2,266,590 |
| Accounts payable: | | | |
| Trade | $ 3,875,372 | | |
| Subcontractor retainage | 411,727 | | |
| Miscellaneous | 8,936 | 4,296,035 | |
| Accrued expenses: | | | |
| Insurance, interest and taxes | 36,084 | | |
| Payrolls | 19,810 | | |
| Other | 67,760 | 123,654 | |
| Total current liabilities | | | 6,817,240 |
| **DEFERRED FEDERAL INCOME TAX** | | | 245,000 |
| **LONG-TERM DEBT:** | | | |
| Total | 2,718,947 | | |
| Less current maturities | 2,266,590 | 452,357 | |
| **STOCKHOLDERS' EQUITY:** | | | |
| Preferred stock | 1,647,000 | | |
| Common stock | 112,006 | | |
| Additional paid-in capital | 1,059,903 | | |
| Accumulated deficit | (2,607,928) | | |
| | 210,981 | | |
| Less treasury stock - at cost | (404,021) | (193,040) | |
| TOTAL | | $ | 7,321,557 |

**Amounts are the representation of Company Management, no assurance is provided**

CAUSE NO. 2013-61995A

| R. HASSELL & COMPANY, INC. AND | § | IN THE DISTRICT COURT |
|---|---|---|
| R. HASSELL BUILDERS, INC., | § | |
| *Plaintiffs / Garnishors,* | § | |
| | § | |
| v. | § | HARRIS COUNTY, TEXAS |
| | § | |
| | § | |
| COMMUNITYBANK OF TEXAS, N.A., | § | |
| *Garnishee.* | § | 61ST JUDICIAL DISTRICT |

## AFFIDAVIT OF ROYCE J. HASSELL

| STATE OF TEXAS | § |
|---|---|
| COUNTY OF HARRIS | § |

BEFORE ME, the undersigned authority, on this day personally appeared Royce J. Hassell, known to me to be a credible person, and who after being duly sworn, upon oath did depose and say:

1. My name is Royce J. Hassell. I am over the age of twenty one (21) years, of sound mind, and capable of making this affidavit. This affidavit is based on my personal knowledge, although some facts are stated upon my information and belief, as permitted by Texas Rule of Civil Procedure 658.

2. I am the president of Plaintiffs R. Hassell & Company, Inc. and R. Hassell Builders, Inc. (the "Plaintiffs").

3. On March 26, 2018, a Final Judgment was entered in Cause Number 2013-61995, *R. Hassell & Co., Inc., R. Hassell Builders, Inc., R. Hassell Holding Co., Inc. and G.R. Group Resources, LLP v. Hassell Construction Co., Inc. and Hassell Management Services, LLC,* in the 61st Judicial District Court of Harris, County, Texas.

4. Pursuant to the terms of the Final Judgment, Plaintiffs are entitled to recover one million, one hundred sixty-seven thousand, five hundred forty-nine dollars and ninety-five cents ($1,167,549.95) from Hassell Construction Company, Inc. ("HCCI").

5. Plaintiffs are also entitled to recover interest at the rate of five percent per annum, compounded annually, from December 7, 2017 until the Final Judgment is paid in full.

6. Accordingly, interest is accruing on the Final Judgment at the rate of $159.94 per diem. As of the date of this filing, $19,832.56 (124 days x $159.94/day).

1

Exhibit
J

7.   The Final Judgment is valid, subsisting, and unsatisfied by HCCI.

8.   Within my knowledge, HCCI does not possess property in Texas subject to execution sufficient to satisfy the Final Judgment.

9.   On information and belief, and based on information available on the Texas Secretary of State's website, many of HCCI's other creditors claim security interests and liens on HCCI's non-exempt property in Texas, including HCCI's real property and equipment, that would otherwise be subject to execution to satisfy the Final Judgment.

10.  On information and belief, and based on information contained in filings in the real property records, CommunityBank of Texas, N.A. has a security interest in HCCI's real property, which is known as Lot Thirteen in Block Six, Independence Grove, in Harris County, Texas.   That document also indicates that CommunityBank of Texas, N.A. claims a security interest in HCCI's equipment.

11.  On information and belief, and based on information contained in financing statements filed with the Texas Secretary of State, TCF Equipment Finance, Inc. ("TCF") claims a security interest in all equipment, inventory, software, and other personal property subject to a lease between TCF and HCCI, including, but not limited to, a 2009 Gomaco Model GPH2600 Slipform Paver.

12.  On information and belief, and based on information contained in financing statements filed with the Texas Secretary of State, Caterpillar Financial Services Corporation claims a security interest in a 140M Motor Grader owned by HCCI.

13.  On information and belief, and based on information contained in financing statements filed with the Texas Secretary of State, Wells Fargo Equipment Finance, Inc. claims a security interest in a 2012 Gomaco Model T/C-600 Concrete Paving Texture/Cure Machine owned by HCCI.

14.  On information and belief, and based on information contained in financing statements filed with the Texas Secretary of State, GE Capital Commercial, Inc. claims a security interest in a Planer Model # 40IN owned by HCCI.

15.  Based on all of the foregoing, I do not believe that HCCI possesses property in Texas subject to execution sufficient to satisfy the Final Judgment.

Royce J. Hassell

SIGNED AND SWORN TO BEFORE ME on April 10th, 2018.

Notary Public in and for the State of Texas



CYNTHIA L. GROOMS
NOTARY PUBLIC - STATE OF TEXAS
ID# 2044942
COMM. EXP. 08-15-2020

3/29/2016 5 58 01 PM
Chris Daniel - District Clerk
Harris County
Envelope No 9844444
By CORNETT, LAWANDA
Filed 3/29/2016 5 58 01 PM

NO 2015–29275

| R HASSELL HOLDING COMPANY, | § | IN THE DISTRICT COURT OF *P-14* |
|---|---|---|
| INC , R HASSELL & COMPANY, INC , | § | *FFCLX* |
| R HASSELL BUILDERS, INC AND | § | |
| ROYCE HASSELL | § | |
| | § | |
| v | § | HARRIS COUNTY, TEXAS |
| | § | |
| COATS, ROSE, RYMAN & LEE, P C , | § | |
| RICHARD L ROSE, PATRICK GAAS, | § | |
| HEATHER ASSELIN AND | § | |
| DAVID LYNCH | § | 234TH JUDICIAL DISTRICT |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

A    **Findings Of Fact**

|  |  | **Granted** | **Denied** |
|---|---|---|---|
| 1 | Any conclusions of law that have been designated as findings of fact will be considered conclusions of law | _____ | _____ |
| 2 | James C Hassell and his children, James Phillip Hassell, Shawn Hassell Potts, Mike Hassell, Jason James Hassell, among others, are the current and/or former owners, officers, and directors of Hassell Construction Company, Inc ("HCCI"), a general contractor | _____ | _____ |
| 3 | Royce Hassell ("Royce") is the owner of and/or principal in R Hassell Builders, Inc , R Hassell & Company, Inc , R Hassell Holding Company, Inc ("RHHC"), and/or G R Group Resources, LLC (all together with Royce, the "R Hassell Entities") | _____ | _____ |
| 4 | Royce's wife, Silvia Hassell ("Silvia"), is an attorney, and previously represented Plaintiffs in this suit | _____ | _____ |
| 5 | One or more of the R Hassell Entities was in debt to HCCI at all or part of the time that the events giving rise to this suit occurred | _____ | _____ |

```
┌─────────────┐
│   Exhibit   │
│      K      │
└─────────────┘
```

|  | Granted | Denied |
|---|---|---|

6   In January 2012, Heather Asselin ("Asselin") and Patrick Gaas ("Gaas"), both attorneys and directors of the law firm Coats Rose, P C ("Coats Rose") met with James C Hassell and James Phillip Hassell on behalf of HCCI to evaluate various secured transactions and potential defensive strategies related to matters involving R Hassell Builders, Inc , R Hassell & Company, Inc , Royce, and Silvia

7   The communications between and amongst HCCI's representatives and Coats Rose that occurred before, during, and after the January 2012 consultation were made for the purpose of facilitating Coats Rose's rendition of legal advice to HCCI and/or with a view to HCCI's obtaining professional legal services from Coats Rose

8   Neither Royce nor Silvia was present at the January 2012 consultation, and no one attended the meeting on behalf of Royce's other companies, which included RHHC, R Hassell & Company, Inc , R Hassell Builders, Inc , and G R Group Resources LLP

9   During the January 2012 consultation, Coats Rose was not asked to represent any of the R Hassell Entities or Royce or Silvia Hassell

10   In January 2012, Coats Rose was actively engaged representing Gall Construction of America, Limited against R Hassell Builders, Inc in Cause No 2011–70117, *Gall Construction of America, Ltd v R Hassell Builders, Inc* , in the 295th Judicial District Court of Harris County, Texas

11   Coats Rose was not asked to represent any joint venture, or to provide advice on behalf of or for the benefit of any joint venture or any of the R Hassell Entities



– 2 –

|  | Granted | Denied |
|---|---|---|

12     Following the January 2012 consultation with James C Hassell and James Phillip Hassell, Coats Rose sent an engagement agreement to James Phillip Hassell on behalf of HCCI

13     James Phillip Hassell on behalf of HCCI signed the 2012 engagement agreement and sent a retainer, but did not provide Coats Rose with the information necessary to proceed with any work at that time

14     It was not until September 2013 that HCCI formally engaged Coats Rose, provided Coats Rose with information and documentation, and authorized Coats Rose to provide services in the representation of HCCI, James C Hassell, and Hassell Management Services, LLC ("HMS")

15     At no time have Defendants[1] ever represented, been asked to represent, or provided advice or any other services for or on behalf of the R Hassell Entities, Royce, or Silvia

16     At no time did Defendants—including Gaas, Asselin, or any other Coats Rose attorney—ever consult with any of the R Hassell Entities, Royce, or Silvia regarding providing them with any legal services

17     At all times, including the January 2012 consultation, the R Hassell Entities—including RHHC—were adverse parties to Coats Rose clients James C Hassell, James P Hassell, HCCI, and HMS

18     At no time have Defendants given Royce or Silvia any reason to believe that they or the R Hassell Entities were represented by Coats Rose, Gaas, Asselin, or any of the Defendants

---

[1] "Defendants" means Defendants Coats Rose, along with Coats Rose directors Asselin, Gaas, David Lynch ("Lynch"), and Richard Rose ("Rose")

| | Granted | Denied |
|---|---|---|

19    Defendants have informed Silvia, who is and has been counsel for Royce and the R Hassell Entities, orally and in writing on more than one occasion that Defendants do not represent Royce, Silvia, or any of the R Hassell Entities

20    Rose is a director and founding member of Coats Rose

21    Rose serves on the board of Harris County Improvement District 18 ("HCID 18") as a private citizen, not as a representative of or attorney for Coats Rose

22    Although HCID 18 is a defendant and a third party plaintiff in Cause No 2012–42981, *Hassell Constr Co , Inc  v  Springwoods Realty Co  and Harris Co Improvement Dist  #18*, in the 333rd Judicial District Court of Harris County, Texas (the "Springwoods Suit")

23    Defendants are not, nor have they ever been, counsel of record for any party in the Springwoods Suit

24    Rose has recused and disqualified himself from participating in any deliberations, votes, or other activities of HCID 18 that relate or refer to HCCI or any of the R  Hassell Entities

25    Rose has filed a Local Government Officer Disclosure Statement so that there would be no possibility of influencing HCID 18 on behalf of Coats Rose's client HCCI

<u>**Granted**</u>   <u>**Denied**</u>

26    Gaas sent Silvia a letter on September 20, 2013, stating     _____    _____
      in part as follows

            As you know, this firm represents [HCCI]
            (hereafter, the "Company")    Please immediately
            cease all communications with the Company
            concerning its business with R  Hassell Builders
            and direct all such communications to my
            attention

                              * * *

            As you are further aware, this law firm does not
            represent R  Hassell Builders in any matter

27    On October 15, 2013, several of the R  Hassell Entities     _____    _____
      filed a declaratory judgment action against HCCI and
      HMS in a presumed effort to circumvent arbitration of a
      dispute between James C  Hassell, HMS, and HCCI on
      the one hand and the R  Hassell Entities on the other
      hand [2]

28    Houston attorney Robert Kruckemeyer ("Kruckemeyer")     _____    _____
      originally represented the plaintiffs in the Dec Action

29    Defendants are not, nor have they ever been, counsel of     _____    _____
      record for any party in the Dec Action

30    Silvia substituted in as counsel for plaintiffs in the Dec     _____    _____
      Action on December 30, 2013 over opposition from the
      defendants in that proceeding

31    For the first time in an official proceeding, and in     _____    _____
      response to the defendants' objections to the motion to
      substitute, the plaintiffs in the Dec Action claimed that
      Coats Rose had a conflict of interest in representing
      HCCI and HMS

---

[2] The "Dec Action" is Cause No  2013–61995, *R  Hassell & Co   Inc , R  Hassell Builders, Inc ,
R  Hassell Holding Co , Inc   and G R  Group Resources LLP  v  Hassell Construction Co , Inc  and
Hassell Management Services  LLC*, in the 125th Judicial District Court of Harris County, Texas

– 5 –

|  | Granted | Denied |
|---|---|---|

32    On March 3, 2014, the trial court in the Dec Action granted HCCI's and HMS's motion to compel arbitration, sending the entire dispute to arbitration

33    Represented by Silvia, the Dec Action plaintiffs moved for reconsideration of the ruling, attaching a proposed First Amended Petition for Declaratory Judgment that again raised the issue of Coats Rose's alleged conflict of interest

34    The trial court in the Dec Action denied the plaintiffs' motion to amend their pleadings, motion for reconsideration, and various other forms of requested relief on April 2, 2014

35    The Dec Action plaintiffs subsequently sought mandamus relief of the order compelling arbitration in No 01–14–00349–CV, *In re R Hassell & Company, Inc , R Hassell Builders, Inc , R Hassell Holding Company, Inc , and G R Group Resources, L L C ,* in the Court of Appeals for the First District of Texas at Houston, which was subsequently consolidated with No 01–14–00996–CV, *In re Royce J Hassell and Silvia T Hassell,* in the Court of Appeals for the First District of Texas at Houston (together the "Mandamus")

36    On May 2, 2014, Coats Rose filed an arbitration demand on behalf of James C Hassell and HCCI in No 1–14–0000–3178, *James C Hassell and Hassell Construction Company, Inc v R Hassell Holding Co , Inc , R Hassell & Company, Inc , R Hassell Builders, Inc and G R Group Resources, LLP, Royce J Hassell and Silvia T Hassell,* Proceeding Before the American Arbitration Association in Houston, Texas (the "Arbitration")

37    Certain of the R Hassell Entities also initiated an arbitration on May 2, 2014, however, the R Hassell Entities-initiated proceeding was subsequently consolidated with the Arbitration

– 6 –

<u>Granted</u>   <u>Denied</u>

38    Royce and Silvia subsequently filed suit against James
      C Hassell and HCCI on June 24, 2014 in No 2014–
      36326, *Royce Hassell and Silvia Hassell v  James C
      Hassell and Hassell Construction Company, Inc* , in the
      215th Judicial District Court of Harris County, Texas
      seeking a declaration that claims brought in the
      Arbitration are not arbitrable  The case, in which Coats
      Rose is not and has never been counsel of record, was
      subsequently consolidated with the Dec Action

39    The Arbitration is the only proceeding in which Coats
      Rose has actually appeared as counsel of record for
      James C Hassell, HCCI, and/or HMS

40    The Arbitration is a judicial proceeding

41    In the Arbitration, Defendants—including Gaas,
      Asselin, and Coats Rose—have made one or more
      statements and/or submitted one or more documents on
      behalf of their clients, Plaintiffs' opponents

42    Shortly after the Arbitration began, Silvia sent a letter
      to then sole arbitrator Hunter T  McLean raising her
      objections to the representation of James C Hassell and
      HCCI by Coats Rose and requesting "injunctive relief
      pertaining to the participation of Coats Rose in these
      proceedings  " on the same grounds as are alleged in
      this lawsuit

43    In response to Silvia's letter, on July 17, 2014, Lynch
      wrote to Silvia, stating in part as follows

            At no time has Coats Rose ever represented you,
            Royce Hassell[l]or any "R Hassell" entity, and at
            no time has Coats Rose ever represented any
            party in your dispute related to the "Springwoods
            Project "

44    On September 16, 2014, the R  Hassell Entities filed a
      formal motion in the Arbitration, supported by
      purported evidence, objecting to the participation and
      seeking the disqualification of Coats Rose as counsel for
      the R  Hassell Entities' opponents

– 7 –

|  | Granted | Denied |
|---|---|---|

45    On October 28, 2014, after allowing for and receiving full briefing by all parties on the merits of the disqualification dispute, a fully constituted three member arbitration panel denied the R Hassell Entities' objection and motion to disqualify Gaas, Asselin, and Coats Rose as counsel for the R Hassell Entities' opponents

46    On September 15, 2014—over two years after the Springwoods Suit was filed and the day before the R Hassell Entities moved to disqualify Coats Rose in the Arbitration—the R Hassell Entities and Silvia purported to intervene in the Springwoods Suit, naming Coats Rose as a defendant on the same grounds as are alleged in this lawsuit

47    HCCI answered and moved to strike the intervention of the R Hassell Entities and Sylvia in the Springwoods Suit

48    Coats Rose also answered the petition in intervention in the Springwoods Suit, requesting that the intervention be stricken

49    On October 20, 2014—eight days before the three-member arbitration panel denied the R Hassell Entities' objection and motion to disqualify in the Arbitration—the Presiding Judge of the 333rd Judicial District Court struck the petition in intervention, effectively dismissing Coats Rose from the Springwoods Suit

50    The arbitration panel signed an order in the Arbitration on January 20, 2015, setting an evidentiary hearing for February 6 and 7, 2015 on various issues

|  | Granted | Denied |
|---|---|---|
| 51 | Within days of the Arbitration panel's January 20, 2015 order setting an evidentiary hearing, RHHC filed involuntary bankruptcy proceedings against two alleged entities, Hassell 2012 Joint Venture and Springwoods Joint Venture, effectively halting the Arbitration [3] | _____ | _____ |
| 52 | James C Hassell, HCCI, and HMS appeared in the Bankruptcy, seeking dismissal of both proceedings, which were eventually consolidated into one case | _____ | _____ |
| 53 | Defendants are not now, nor have they ever been, counsel of record for any party in the Bankruptcy, nevertheless, RHHC sought discovery—including privileged communications between James C Hassell, HCCI, and HMS on the one hand and Coats Rose and other attorneys on the other hand—from James C Hassell, HCCI, and HMS | _____ | _____ |
| 54 | In moving to compel the discovery, RHHC yet again made the same allegations that it now makes in this case and that it had previously made—and that had been rejected three previous times | _____ | _____ |
| 55 | In this suit, Plaintiffs[4] claim that Defendants committed wrongdoing because they were, *inter alia*, "actively involved in representing HCCI against the interests of RHHC" | _____ | _____ |
| 56 | The R Hassell Entities have at all pertinent times had counsel other than Defendants representing them | _____ | _____ |
| 57 | Only one meeting between representatives of Coats Rose and the R Hassell Entities ever took place—a meeting attended by Gaas and Silvia, which was approved in advance by the R Hassell Entities' then counsel Bob Kruckemeyer | _____ | _____ |

---

[3] Case Nos 15–30781 and 15–32751, *In re Hassell 2012 Joint Venture and Springwoods Joint Venture Debtors*, in the United States Bankruptcy Court for the Southern District of Texas (the Bankruptcy")

[4] "Plaintiffs" means Plaintiffs RHHC, R Hassell & Company, Inc , R Hassell Builders, Inc , and Royce

– 9 –



|  | | **Granted** | **Denied** |
|---|---|---|---|

58   Defendants were not asked to represent or to provide advice to any of the R Hassell Entities at the one meeting or at any other time

59   All of Defendants' alleged actions with respect to Plaintiffs were taken and continue to be taken on behalf of James C Hassell, HMS, and HCCI—Plaintiffs' adversaries—in connection with the claims made in the Arbitration

60   All of Defendants' actions undertaken in connection with prosecuting and defending claims in the Arbitration are part of the discharge of their duties to their clients and Plaintiffs' adversaries, James C Hassell, HMS, and HCCI

61   Any representations made by Defendants to Plaintiffs occurred (and indeed still occur) in the context of Defendants' representation of HCCI in the ongoing arbitration proceeding against one or more of the Plaintiffs

62   Coats Rose—a law firm and its individual directors—is primarily engaged in the practice of law

63   Plaintiffs failed to present any expert testimony of causation and damages

64   There is no evidence that any fees were paid to Coats Rose, including less any fees paid by any joint venture

## B   Conclusions Of Law

|  | | **Granted** | **Denied** |
|---|---|---|---|

1   Any findings of fact that have been designated as conclusions of law will be considered findings of fact



|  | | Granted | Denied |
|---|---|---|---|

2    Defendants have a constitutional right that is specifically protected under the Texas Citizens Participation Act (the "TCPA") to represent its clients in the Arbitration (or any litigation for that matter) without that representation being chilled by a third party

3    By filing and pursuing a judicial proceeding, *i e*, the Arbitration, against Plaintiffs, Defendants exercised and acted within their protected constitutional right to petition

4    Defendants established by a preponderance of the evidence that this suit is based on, relates to, and is in response to actions purportedly taken and communications purportedly made by Defendants in filing and pursuing the Arbitration

5    Plaintiffs failed to establish by clear and specific evidence each essential element of their claim for negligence/legal malpractice, specifically, Plaintiffs failed to establish by clear and specific evidence that (1) Defendants owed Plaintiffs a duty, (2) Defendants breached that duty, and (3) Defendants caused Plaintiffs damages

6    Plaintiffs failed to establish by clear and specific evidence each essential element of their claim for negligent misrepresentation, specifically, Plaintiffs failed to establish by clear and specific evidence that (1) Defendants made a representation in the course of business or a transaction in which Defendants had a pecuniary interest, (2) the representation was false and intended for the guidance of others, (3) Defendants failed to use reasonable care in making the representation, (4) Plaintiffs justifiably relied on the representation, and (5) Plaintiffs' justifiable reliance caused pecuniary loss to the Plaintiffs

| | Granted | Denied |
|---|---|---|

7    Plaintiffs failed to establish by clear and specific evidence each essential element of their claim for breach of fiduciary duty, specifically, Plaintiffs failed to establish by clear and specific evidence that (1) Defendants owed Plaintiffs a fiduciary duty, (2) Defendants breached that duty, focusing on "whether an attorney obtains an improper benefit from representing a client", and (3) Defendants caused Plaintiffs damages

8    Plaintiffs failed to establish by clear and specific evidence each essential element of their claim for fraud, specifically, Plaintiffs failed to establish by clear and specific evidence that that (1) one or more Defendants made a material representation of fact, (2) the representation of fact was false, (3) when the representation of fact was made, the speaker knew that it was false or made the representation recklessly without any knowledge of its truth and as a positive assertion, (4) the speaker made the representation with the intent that the person to whom the representation was made act upon it, (5) the person to whom the representation was made acted in justifiable reliance on the representation, and (6) the representation caused damages

9    Plaintiffs failed to establish by clear and specific evidence each essential element of their purported claim for fraudulent concealment, specifically, Plaintiffs failed to establish by clear and specific evidence that that (1) Defendants Rose had actual knowledge of the wrong, (2) Defendants concealed the wrong by making a misrepresentation or by remaining silent when it had a duty to speak, (3) Defendants had a fixed purpose to conceal the wrong, and (4) Plaintiffs reasonably relied on the misrepresentation or silence

|  | **Granted** | **Denied** |
|---|---|---|

10    Plaintiffs failed to establish by clear and specific evidence each essential element of their claim for violations of the Texas Deceptive Trade Practices—Consumer Protection Act (the "DTPA"), specifically, Plaintiffs failed to establish by clear and specific evidence that (1) Plaintiffs are DTPA consumers such that they sought or acquired by purchase or lease goods or services that are the basis of the complaint, (2) one of the following (a) a false, misleading, or deceptive act or practice by Defendants, (b) an unconscionable action or course of action by Defendants—meaning that Defendants, to the Plaintiffs' detriment, took advantage of the lack of knowledge, ability, experience, or capacity of the Plaintiffs to a grossly unfair degree, or (c) the making of an express warranty by Defendants, coupled with a failure to comply with the warranty, (3) causation, and (4) damages

11    Plaintiffs failed to establish by clear and specific evidence that this case falls within one of the following exceptions to the DTPA's professional services exemption by failing to establish by clear and specific evidence any of the following (1) an express misrepresentation of a material fact that cannot be characterized as advice, judgment, or opinion, (2) a failure to disclose information in violation of Section 17 46(b)(24), (3) an unconscionable action or course of action that cannot be characterized as advice, judgment, or opinion, (4) breach of an express warranty that cannot be characterized as advice, judgment, or opinion, or (5) a violation of Section 17 46(b)(26) of the Texas Business & Commerce Code

12    Defendants immune from suit by Plaintiffs

13    Coat Rose's representation of HCCI occurs in the context of the Arbitration, in which the intended audience of any statements made by Defendants is the arbitration panel, not Plaintiffs

– 13 –

|  | Granted | Denied |
|---|---|---|

14    Plaintiffs failed to meet their burden to demonstrate that the commercial speech exemption under the TCPA applies by failing to establish that 1) this cause of action is against a person primarily engaged in the business of selling or leasing goods or services, 2) this cause of action arises from a statement or conduct by Defendants consisting of representations of fact about Defendants' or a business competitor's business operations, goods, or services, 3) a statement or conduct was made by one or more Defendants for the purpose of obtaining approval for, promoting, or securing sales or leases of, or commercial transactions in, Defendants' goods or services or in the course of delivering the goods or services, and 4) the intended audience for the statement or conduct at issue is an actual or potential buyer or customer

15    Plaintiffs failed to establish by clear and specific evidence a prima facie case for each essential element of each of their claims

16    Plaintiffs are not entitled to forfeiture of legal fees that they did not pay

17    Plaintiffs cannot sue to recover alleged damages suffered by any alleged joint venture of which they purport to be a member

Signed, this _____ 30 _____ day of _____ March _____ 2016

MAR 3 0 2016

_____
Judge Presiding

– 14 –

**Attachment 1**

### Silvia T. Hassell
Attorney at Law

12512 Cutten, Suite A
Houston, Texas  77066
(713) 725-0581

**Mr. Andrew Barton,**
**Vice-President**
**Houston Regional Office**
3200 Southwest Freeway
Suite 3300
Houston, Texas 77027
Email:  BartonA@adr.org

Re:   March 3, 2014 Order compelling arbitration and abatement pending
      arbitration in Cause Number 2013-61995; *R. Hassell & Company, Inc, R.*
      *Hassell Builders, Inc., R. Hassell Holding Company, Inc. and G.R. Group*
      *Resources, L.L.C. v. Hassell Construction Company, Inc. and Hassell*
      *Management Services, L.L.C.;* in the 125th Judicial District Court of Harris
      County, Texas.

Dear Mr. Barton:

        Thank you for speaking with me this morning regarding our situation.  As
we discussed, on March 3, 2014, Judge Kyle Carter of the 125th Judicial District
Court of Harris County, Texas, entered an order compelling arbitration and
abatement of the lawsuit which was filed by the R. Hassell Companies, R. Hassell
& Company, Inc., R. Hassell Builders, Inc., R. Hassell Holding Company, Inc. and
G. R. Group Resources L.L.C.  (herein jointly referred to as "RHHC"), against
Hassell Construction Company, Inc. and Hassell Management Services, Inc. (See
attached order dated March 3, 2014, **Attachment 2**).  RHHC disagrees with the
trial court's order compelling arbitration in that RHHC does not agree a valid
arbitration agreement exists.   The claims of RHHC are based on two oral

**Exhibit**
**L**

May 2, 2014
Page -2-

partnership agreements and are outlined in the attached "Plaintiffs' First Amended Original Petition," and did not include an agreement to arbitrate. (**Attachment 3**).

RHHC has filed a Petition for Writ of Mandamus in the Texas Court of Appeals asking the appellate court to review the trial court's order compelling arbitration and abatement as well as other orders which were entered by the trial court on March 3, 2014. (**Attachment 4**). Although no stay has been granted RHHC desires to allow sufficient time for the Court of Appeals to determine whether it will grant the writ to review the trial court's orders in the interest of economy and expediency. Most particularly in this regard, RHHC will require emergency relief in arbitration with regard to the fees in arbitration since the respondents have converted the partnership assets of claimants in the form of all ongoing projects, all income from the projects, all cash flow and have left the claimants with no employees, no on-going projects and no income.

The second partnership commenced operations on September 1, 2102. Sometime in 2013 the respondents procured the signature of Mr. Royce Hassell on a document entitled "Construction Joint Venture Agreement" which contains an arbitration provision and purports to be dated 'as of July 1, 2012.' (**Attachment 5**).

In the event the appellate court does not grant review of the trial court's order by mandamus, RHHC would request that the issue of arbitrability and scope of the agreement be initially determined as there are other pending lawsuits which are being simultaneously harmed by the conduct of respondents which have not been abated and which are not the subject of arbitration. It will be critical, therefore, to make the preliminary determination. Additionally, RHHC will be in immediate need of equitable and injunctive relief as the respondents' wrongful conversion of the ongoing projects as well as the income and cash flow from these projects has left RHHC without funds to pay the large arbitration costs and fees.

Please note that RHHC's demand herein is court ordered and involuntary, under protest and without waiver of its rights to contest the jurisdiction of an arbitral forum to determine the dispute.

Very truly yours,

Silvia T. Hassell

Silvia T. Hassell   (clg)

## Carolyn Campbell

**From:** Robert Overbey
**Sent:** 01 September, 2010 10:06 AM
**To:** Carolyn Campbell
**Subject:** FW: 6/30/10 financial statement

Carolyn:

Please scan in this email to the R. Hassell underwriting file.

Thanks,

Robert M. Overbey, Jr.
President
BondPro, Inc.
8 Greenway Plaza, Suite 814
Houston TX 77046
713-355-1000
713-355-1001
713-503-0600 cell
robert@bondproinc.com
www.bondproinc.com

**From:** Royce Hassell [mailto:conrcrete@gmail.com]
**Sent:** Wednesday, September 01, 2010 9:47 AM
**To:** Robert Overbey
**Subject:** Re: 6/30/10 financial statement

Robert, if you remember the Officer receiveable is my salary for the last three years (since the loss) and the plan is to pay that back once the office is sold -we have two million in equity in the office. I have shown my salary as a loan and have not paid any rent (from the company to me) for the year until the market & margins improve. Futhermore, we have have had both Buffalo homes up for same and finally rented one and the other is still for sale as are the Maple lots. Down side is that not much real estate is currently moving. Hopefully that will change after the mid-terms.

THe $46,925 are employee loans/production awards etc that will be expensed as normal in December.

GR Group is a small container company we own that hauls all of our in-house garbage/trash. During these tight times we have only paid the necessary costs to keep them running and have stopped any other in-house billings.

On Wed, Sep 1, 2010 at 8:22 AM, Robert Overbey <robert@bondproinc.com> wrote:
Hi Royce:

SureTec has a couple of questions on the referenced financial statement:

- Why has the officers' receivable increased by $374,000 since fiscal year-end 9/30/09 and what is the plan for reducing this amount which is now $1,639,051?
- Please explain the employee receivables of $46,925 and advise when this would be paid back to the company.
- Affiliate receivables are up approximately $74,000 from fiscal year end and SureTec needs an explanation of these.

9/1/2010

| Exhibit<br>C-250C | Exhibit<br>M |

I have a meeting set up next Tuesday with the new underwriter that replaced Bill King, Morris Plagens, and he is the one asking these questions.

Thanks for your help.

Robert M. Overbey, Jr.
President
BondPro, Inc.
8 Greenway Plaza, Suite 814
Houston TX 77046
713-355-1000
713-355-1001
713-503-0600 cell
robert@bondproinc.com
www.bondproinc.com

## Carolyn Campbell

| | |
|---|---|
| **From:** | Robert Overbey |
| **Sent:** | 09 August, 2010 3:38 PM |
| **To:** | Carolyn Campbell |
| **Subject:** | FW: June |

**Attachments:** June .10 statement.pdf

Carolyn:

Please scan in this financial to R. Hassell's 6/30/10 9-month statement to TokOpen.

Thanks,

Robert M. Overbey, Jr.
President
BondPro, Inc.
8 Greenway Plaza, Suite 814
Houston TX 77046
713-355-1000
713-355-1001
713-503-0600 cell
robert@bondproinc.com
www.bondproinc.com

**From:** Robert Overbey
**Sent:** Monday, August 09, 2010 3:34 PM
**To:** 'Bill King'
**Subject:** FW: June

Bill:

As promised, I have attached for your review the 6/30/10 financial for R. Hassell with an accompanying concurrent WIP schedule.

I have inquired as to the underbillings and expect to hear back from Royce shortly.

Please let me know if you have any questions or comments.

Robert M. Overbey, Jr.
President
BondPro, Inc.
8 Greenway Plaza, Suite 814
Houston TX 77046
713-355-1000
713-355-1001
713-503-0600 cell
robert@bondproinc.com
www.bondproinc.com

**From:** Royce Hassell [mailto:conrcrete@gmail.com]
**Sent:** Monday, August 09, 2010 1:16 PM
**To:** Robert Overbey
**Subject:** Re: June

8/10/2010

OOOps!

On Mon, Aug 9, 2010 at 12:38 PM, Robert Overbey <robert@bondproinc.com> wrote:
Royce:

The financial statement was not attached.

Thanks,

Robert M. Overbey, Jr.
President
BondPro, Inc.
8 Greenway Plaza, Suite 814
Houston TX 77046
713-355-1000
713-355-1001
713-503-0600 cell
robert@bondproinc.com
www.bondproinc.com

**From:** Royce Hassell [mailto:conrcrete@gmail.com]
**Sent:** Friday, August 06, 2010 11:52 AM
**To:** Robert Overbey
**Subject:** June

Robert, attached please find the June financial.  Although it does show a small loss, we are confident that we may finish the year with a slight profit.

Furthermore, I told Bill but to keep you on the loop...we have put up for sale three of our properties listed on our financial-the two Maple lots and 6417 Buffalo.  Additionally, we had a very positive showing of our office today to a ambulance company and the commercial realtor said somethings are starting to move.

Further positive indicators include some of the big developers are putting some work on the streets ie. Ryan, Cemex and Morrison Homes.

Let me know if you have any questions.

Royce

## Carolyn Campbell

**From:**   Robert Overbey
**Sent:**   09 August, 2010 3:17 PM
**To:**   Carolyn Campbell
**Subject:** FW: June

Carolyn:

Please scan in this email to the R. Hassell surety underwriting file.

Thanks,

Robert M. Overbey, Jr.
President
BondPro, Inc.
8 Greenway Plaza, Suite 814
Houston TX 77046
713-355-1000
713-355-1001
713-503-0600 cell
robert@bondproinc.com
www.bondproinc.com

**From:** Royce Hassell [mailto:conrcrete@gmail.com]
**Sent:** Friday, August 06, 2010 11:52 AM
**To:** Robert Overbey
**Subject:** June

Robert, attached please find the June financial.  Although it does show a small loss, we are confident
that we may finish the year with a slight profit.

Furthermore, I told Bill but to keep you on the loop...we have put up for sale three of our properties
listed on our financial-the two Maple lots and 6417 Buffalo.  Additionally, we had a very positive
showing of our office today to a ambulance company and the commercial realtor said somethings are
starting to move.

Further positive indicators include some of the big developers are putting some work on the streets ie.
Ryan, Cemex and Morrison Homes.

Let me know if you have any questions.

Royce

8/9/2010

## Carolyn Campbell

| | |
|---|---|
| **From:** | Robert Overbey |
| **Sent:** | 13 May, 2010 1:15 PM |
| **To:** | Carolyn Campbell |
| **Subject:** | FW: R. Hassell - Financial - 03/31/10 |
| **Attachments:** | 10 (Ver 1).pdf |

Carolyn:

Please scan in this attachment and email to the R. Hassell bond underwriting file in TokOpen.

Thanks,

Robert M. Overbey, Jr.
President
BondPro, Inc.
8 Greenway Plaza, Suite 814
Houston TX 77046
713-355-1000
713-355-1001
713-503-0600 cell
robert@bondproinc.com
www.bondproinc.com

**From:** Robert Overbey
**Sent:** Thursday, May 13, 2010 1:14 PM
**To:** 'Bill King'
**Subject:** FW: R. Hassell - Financial - 03/31/10

Bill:

As promised, I have attached for your review R. Hassell's 6-month financial statement and concurrent WIP schedule reflective through 3/31/10.

I was glad to see that the company is showing a net profit through 6 months: $99,223.59 on a volume of $7,798,222.62 for a return of 1.2%. The gross profit margin is 10.9%, which is also an improvement.

Working capital is still at a deficit due to the $1,367,030 Officers Receivable, but overall there appears to be genuine improvement. Further debt to worth remains high @ 12 to 1.

Further, Royce emailed me that Hassell Construction picked up the Research Forest project in the Woodlands, and R. Hassell will have the civil portion of that job, and the Ella job for Harris County he projects will turn around due to the pending change orders and hopefully reach their original estimate.

Thanks for your continued support and please let me know if you need me for anything.

Robert M. Overbey, Jr.
President
BondPro, Inc.
8 Greenway Plaza, Suite 814
Houston TX 77046
713-355-1000
713-355-1001
713-503-0600 cell

robert@bondproinc.com
www.bondproinc.com

**From:** Carolyn Campbell [mailto:carolyncampbell9@gmail.com] **On Behalf Of** Carolyn Campbell
**Sent:** Thursday, May 13, 2010 1:07 PM
**To:** Robert Overbey
**Subject:** R. Hassell - Financial - 03/31/10

## Robert Overbey

| | |
|---|---|
| **From:** | Robert Overbey |
| **Sent:** | Wednesday, February 17, 2010 12:39 PM |
| **To:** | 'Ballinger, Bill'; 'keith@triplebservices.com' |
| **Subject:** | Backlog |

Hi Bill and Keith:

As promised in our conversations from yesterday and earlier today, the following is my assessment of the company's current backlog:

- **Backlog** at 9/30/09 - **$39 million**
- **Run off** through March 2010 – 6 months x $4 million per month x 92% cost factor = **$22.1 million**
- **New contract bonds,** including TxDOT – Brazoria County SH 35 (bond number 022-029-133); Bay Colony West Enclave (bond number 022-029-129); and Ashton Treeline Section 2 (bond number 022-029-136) totaling **approximately $22.7 million.**
- **Current low bids,** including Galveston County FM 646 - $17.5 million; Parkside Haven - $2.4 million; and Harris County – Richey Road - $307,548, totaling **$20.2 million in low bids.**

Thus, per my calculation, at March 2010, Triple B's current backlog is approximately $59.8 million. Granted that once the referenced new projects start they will be reflected at a cost basis rather than contract basis, but this is an approximation.

Let me know what you think and thanks for your consideration.

Robert M. Overbey, Jr.
President
BondPro, Inc.
8 Greenway Plaza, Suite 814
Houston TX 77046
713-355-1000
713-355-1001
713-503-0600 cell
robert@bondproinc.com
www.bondproinc.com

3/4/2010

**Robert Overbey**

From:    Robert Overbey
Sent:    Tuesday, February 16, 2010 4:57 PM
To:      Ballinger, Bill
Subject: Re: 10-0139 FM 646 from FM 1764 to FM 517 - RESULTS

Hi Bill:

I called Keith, and he advised that Triple B initially had a 10% gross profit margin. Prior to the opening, they reduced this from 10% to 8%, which of course had they left the extra 2% in there then Triple B would have been low by 6%.

He is comfortable but told me he would review the bid tabs for a more in depth comparison.

Thanks for the support.

Robert

Sent via BlackBerry by AT&T

From: "Ballinger, Bill" <Bill.Ballinger@LibertyMutual.com>
Date: Tue, 16 Feb 2010 16:02:46 -0600
To: Robert Overbey<robert@bondproinc.com>
Subject: 10-0139 FM 646 from FM 1764 to FM 517 - RESULTS

Robert:

Nice low bid for these guys.  Please get Keith's thoughts on the spread when you have time.

Thanks,

Bill Ballinger, AFSB
Liberty Mutual Surety
Dallas, TX
972.663.2908 Phone

From: Suzonne Lawrence [mailto:suzonne@bondproinc.com]
Sent: Tuesday, February 16, 2010 3:40 PM
To: Ballinger, Bill
Cc: Robert Overbey
Subject: FW: 10-0139 FM 646 from FM 1764 to FM 517 - RESULTS

Bill, .

Please see the bid results below.

Thanks,

Suzonne Lawrence
Claims Coordinator
BondPro, Inc.
8 Greenway Plaza, Suite 814
Houston, Texas 77046
suzonne@bondproinc.com
713-355-1000 - Phone
713-355-1001 - Fax

From: Lynzi Hill [mailto:lynzi@triplebservices.com]
Sent: 2/16/2010 3:37 PM
To: Andy Nichols'; Annette Burke; 'Bob Seyle'; 'Buddy Kaiser'; 'Carlos Carrillo'; 'Chris Burke'; 'Curt Aydelotte'; 'David Green'; 'Donna Burke'; 'Gary Gerbig'; 'Jim Yow'; 'Joe Almaguer'; 'John Betancourt'; 'Keith Burke'; 'Kevin Burke'; Larry Bennett; 'Lynzi Hill'; 'Marsha Williams'; 'Matt Veinotte'; Mignon; 'Mike Murrell'; 'Neal Jameyson'; 'Rick Taylor'; Robert Overbey; 'Shad Bass'; 'Stacy Kelly'; 'Sloney Welch'; Suzonne Lawrence; Teri Sweeney; Tiffany Galvan; Vivian Ellis
Subject: 10-0139 FM 646 from FM 1764 to FM 517 - RESULTS

WAY TO GO GARY & BUDDY!!!!!

And a little thanks goes to Lynzi for her insanely awesome driving skills!!!

| 620 OLD ATASCOCITA ROAD<br>HUFFMAN, TEXAS 77336 |  | OFFICE: 281-324-3264<br>FAX: 281-324-1304<br>www.triplebservices.com |
|---|---|---|
| TRIPLE B SERVICES, L.L.P. | | |
| lynzi@triplebservices.com | | |

3/4/2010

*NOTES*:For your files

## BID RESULTS

JOB:   10-0139 FM 646 from FM 1764 to FM 517 - Gary & Buddy
DATE:   2/16/2010

|  | BIDDER | BID | INCREMENT DIFFERENCE | LOW BID DIFFERENCE |
|---|---|---|---|---|
| 1 | Triple B | 17,545,124 |  |  |
| 2 | SER | 18,984,832 | 8.21% | 8.21% |
| 3 | Hassell | 19,322,612 | 1.78% | 10.13% |
| 4 | WW Webber | 19,686,999 | 1.89% | 12.21% |
| 5 | TX Sterling | 19,765,010 | 0.40% | 12.65% |
| 6 | JD Abrams | 22,531,748 | 14.00% | 28.42% |
| 7 |  |  |  |  |
| 8 |  |  |  |  |
| 9 |  |  |  |  |
| 10 |  |  |  |  |
| 11 |  |  |  |  |
| 12 |  |  |  |  |
| 13 |  |  |  |  |
| 14 |  |  |  |  |
| 15 |  |  |  |  |
| 16 |  |  |  |  |
| 17 |  |  |  |  |
| 18 |  |  |  |  |
| 19 |  |  |  |  |
| 20 |  |  |  |  |
| 21 |  |  |  |  |
| 22 |  |  |  |  |
| 23 |  |  |  |  |
| 24 |  |  |  |  |
| 25 |  |  |  |  |
| 26 |  |  |  |  |
| 27 |  |  |  |  |

3/4/2010

## Robert Overbey

**From:**  Robert Overbey
**Sent:**  Wednesday, January 27, 2010 8:11 AM
**To:**  Bill King; 'Conrcrete@aol.com'
**Subject:** 1/22/10 meeting

Bill/Royce:

Thanks again for meeting this past Friday.  The following is a brief summary of some of our discussion (but let me know if I have erred in my assessment):

- **Brazos Transit/Woodlands contract** – contracts are being reissued, and there is hope for a 2/1/10 start date.  Once contracts are received, please let me know and we will begin the process of having the bonds executed.
- **R. Hassell Builders – Baytown project** – this project recently started.
- **3550 Willow Bend/related property** – there is the potential to sell the property for $1.8 million.
- **7907 Rice Blvd. sale** – inspections are pending and closing would follow.
- **6421 Buffalo Speedway sale** – the asking price is $675,000 and the debt is approximately $300,000.
- **6417 Buffalo Speedway sale** – the asking price is $1.599 million and the debt is approximately $750,000.
- **$1,265,961 officers' receivable -** Royce outlined how this would be reimbursed via the sale of the referenced properties, and how monies owed the bank would play into these disbursements.
- **Harris County – Ella Blvd. project** – this job may ultimately double in size due to a potential change order which would include a detention pond.  Royce will advise once the paperwork is received and/or the county requires an increase rider on the bond to include this increase.
- **Payment bond claims** – Jimmy Sparks at SureTec will prepare and send a spread sheet of open payment bond claims to me and Royce for us to review.  Royce will respond by attaching any applicable releases and/or status reports.

Thanks again for your time and consideration and I will suspense my files for some of these pending items.  Please let me know if you have any questions or comments.  As always, I am grateful for SureTec's continued support.

Robert M. Overbey, Jr.
President
BondPro, Inc.
8 Greenway Plaza, Suite 814
Houston TX 77046
713-355-1000
713-355-1001
713-503-0600 cell
robert@bondproinc.com
www.bondproinc.com

R Hassell                    [ 1/22/10 ]

· Woodlands / Brazos Transit (public entity)
       2/1/10 - start date / contracts to be issued..
       $2.5 m

· Baytown startup — bldrs
· P/s # 86 / Hassell Cmb

· 3500 willow Bend ~ offer?
       $ 1.8mm offer — ($1.2 m owed)
· Rice Blvd sale - inspection → closing soon?

· another offer - Little Buffalo Speedway
                   asking $675m ($300m debt)
· offer - for sale or rent - Buffalo Speedway 1.5??
                                              asking
                        · ($750 debt)            price

· # officer's receivable - to be paid off by sale of properties
Nc/
· Ella Blvd. ~ - may double up a resubd / change
                order - $800m t - detention pond..

· payment bond claims - Jimmy Sparks shared e-mail spread sheet
  of open bond claims to Royce. Royce will respond;
  attach any applicable releases; e-mail Jimmy
  and me.. ( need lien releases)

## Robert Overbey

| | |
|---|---|
| **From:** | Robert Overbey |
| **Sent:** | Friday, January 08, 2010 12:41 PM |
| **To:** | 'Bill King' |
| **Subject:** | FW: draft |

**Attachments:** rhhc 2008 draft.pdf

Bill:

In analyzing the draft for R. Hassell's year end review at 9/30/09, I noted the following:

- Gross Profit - $1,467,626 on a volume of $17,194,792 for a return of 9%
- Net Income - $71,426 for a return of .4%.
- Debt to Worth – 17.06 to 1
- The $1,114,861 in Receivable – Stockholder, per Royce, his salary is shown as a loan that would be repaid once the real estate starts to sell.
- Once I delete and/or discount some of the current assets, working capital is approximately ($813,000). The primary reason for such is the Receivable – Stockholder as noted above.
- The Harris County – TC Jester project appears to be underbilled by $251,232 at 9/30/09. Royce indicated that they have subsequently negotiated an approved change order which will improve this amount substantially, although to what extent I am uncertain.

The contracts for the Woodlands – Brazos Transit – should be forthcoming early next week.

Let me know when you would like to meet with Royce. I will continue to follow up for the following:

- 9/30/09 final reviewed financial statement
- Updates on all payment bond claims

Thanks for your continued support and please let me know if you have any questions or comments.

Robert M. Overbey, Jr.
President
BondPro, Inc.
8 Greenway Plaza, Suite 814
Houston TX 77046
713-355-1000
713-355-1001
713-503-0600 cell
robert@bondproinc.com
www.bondproinc.com

**From:** Conrcrete@aol.com [mailto:Conrcrete@aol.com]
**Sent:** Wednesday, January 06, 2010 9:58 AM
**To:** Robert Overbey
**Subject:** draft

attached is the latest draft. It should be the last one. I hope. We are in the process of getting the LOC renewed which has already been approved by loan committee. Mike just yesterday asked for it and it doesn't renew until April but needs to be done now to make it long term.

## Robert Overbey

| | |
|---|---|
| **From:** | Robert Overbey |
| **Sent:** | Friday, January 08, 2010 12:41 PM |
| **To:** | 'Bill King' |
| **Subject:** | FW: draft |

**Attachments:** rhhc 2008 draft.pdf

Bill:

In analyzing the draft for R. Hassell's year end review at 9/30/09, I noted the following:

- Gross Profit - $1,467,626 on a volume of $17,194,792 for a return of 9%
- Net Income - $71,426 for a return of .4%.
- Debt to Worth – 17.06 to 1
- The $1,114,861 in Receivable – Stockholder, per Royce, his salary is shown as a loan that would be repaid once the real estate starts to sell.
- Once I delete and/or discount some of the current assets, working capital is approximately ($813,000). The primary reason for such is the Receivable – Stockholder as noted above.
- The Harris County – TC Jester project appears to be underbilled by $251,232 at 9/30/09. Royce indicated that they have subsequently negotiated an approved change order which will improve this amount substantially, although to what extent I am uncertain.

The contracts for the Woodlands – Brazos Transit – should be forthcoming early next week.

Let me know when you would like to meet with Royce. I will continue to follow up for the following:

- 9/30/09 final reviewed financial statement
- Updates on all payment bond claims

Thanks for your continued support and please let me know if you have any questions or comments.

Robert M. Overbey, Jr.
President
BondPro, Inc.
8 Greenway Plaza, Suite 814
Houston TX 77046
713-355-1000
713-355-1001
713-503-0600 cell
robert@bondproinc.com
www.bondproinc.com

**From:** Conrcrete@aol.com [mailto:Conrcrete@aol.com]
**Sent:** Wednesday, January 06, 2010 9:58 AM
**To:** Robert Overbey
**Subject:** draft

attached is the latest draft. It should be the last one. I hope. We are in the process of getting the LOC renewed which has already been approved by loan committee. Mike just yesterday asked for it and it doesn't renew until April but needs to be done now to make it long term.

1/8/2010

## Robert Overbey

**From:** Conrcrete@aol.com
**Sent:** Wednesday, January 06, 2010 12:40 PM
**To:** Robert Overbey
**Subject:** Re: draft

For some reason Karlins had changed what Alan had for long term vs short term on both the equipment line, the LOC and my loan. This was inconsistent to all of our previous audits and our internals so he had to change it. That draft Alan and I had not reviewed when I sent it to you over the Thanksgiving holiday. It should be all correct now. The lower profit was due to me lowering some anticipated profits on the jobs.

I saw Ricardo's email concerning South Fork. I feel very comfortable with this developer. He has developed here and other places. This is his 8th section and I understand there are only two bidders so you should win whomever is low!

Addtionally, we are still in negoiations on S Rice. We have also received an offer on 6417 for $600K and have countered. Seems to be a little activity out there.

Royce

In a message dated 1/6/2010 12:18:58 P.M. Central Standard Time, robert@bondproinc.com writes:

> Royce:
>
> Thanks and on cursory review I noted the changes made to the long-term debt from the initial draft statement (revolving lines of credit and how they were accounted for on the financial statement). So essentially the current maturities and long term debt were reversed; what happened to cause this restatement? Obviously though it improves the working capital position.
>
> With your permission, once I complete my review I would like to email this to both Bill King at SureTec and Doug Fountain at Arch Insurance (who I have met with concerning R. Hassell) for their assessments.
>
> Thanks and let me know if you need me for anything.
>
> Robert M. Overbey, Jr.
>
> President

1/6/2010

BondPro, Inc.

8 Greenway Plaza, Suite 814

Houston TX 77046

713-355-1000

713-355-1001

713-503-0600 cell

robert@bondproinc.com

www.bondproinc.com

---

**From:** Conrcrete@aol.com [mailto:Conrcrete@aol.com]
**Sent:** Wednesday, January 06, 2010 9:58 AM
**To:** Robert Overbey
**Subject:** draft

attached is the latest draft.   It should be the last one. I hope.  We are in the process of getting the LOC renewed which has already been approved by loan committee. Mike just yesterday asked for it and it doesn't renew until April but needs to be done now to make it long term.

## Robert Overbey

**From:** Conrcrete@aol.com
**Sent:** Tuesday, January 05, 2010 10:42 AM
**To:** Robert Overbey
**Subject:** Re: FW: Draft

In a message dated 1/5/2010 7:54:15 A.M. Central Standard Time, robert@bondproinc.com writes:

> Royce:
>
> I am trying to set up a meeting with SureTec and wanted to check on the following:
>
> • Please note the following questions/comments from the 9/30/09 draft and let me know your responses.
>
> • When will the final review be available for 9/30/09?I just finished the final review with the CPA and the final will be released once the bank finishes the papers on the LOC renewal. Normally, Steve Ligon asked for that up front and Mike saw that it did not renew until April and it has not been processed yet. However, the bank has already approved the renewal so we just need to do the paperwork.
>
> • What projects are forthcoming that will require bid and final bonds? Ricardo is bidding a South Fork Project that is a bid subdivision (yea)
>
> • Bill King and SureTec has been requesting for about a month that I pay the premium for the following bonds: Invoice number 4196 – Fort Bend County MUD 199 for $11,447.00 and invoice number 4535 – City of Baytown, City Hall for $18,241.00.  These would have been in Funds Control Lite but I was wondering when they would be funded and the premiums paid. Yes
>
> • Did 7907 S. Rice close on 12/31/09?No we are still in negoiations

The draft has been changed in several areas including the short term assets and liabilities.  I will send you the new draft when Mike sends it to me this afternoon.

The note receiveable which has been on the interuims is from me...I showed my salary as as loan and it will be repaid when the real estate starts to sell.  The related parties are just the timing of the invoices for GR Group for the trash hauling.  I have not paid them during these tight cash flow times.

We have just finished negoiating a large change order on both TC Jester and Ella but I have knocked the anticipated profits down $75k on TC Jester.  THe change order should inprove the #'s.

Thanks for your help and please let me know if you need me for anything.

Robert M. Overbey, Jr.

President

BondPro, Inc.

8 Greenway Plaza, Suite 814

Houston TX 77046

713-355-1000

713-355-1001

713-503-0600 cell

robert@bondproinc.com

www.bondproinc.com

**From:** Robert Overbey
**Sent:** Monday, December 21, 2009 4:27 PM
**To:** 'conrcrete@aol.com'
**Subject:** RE: Draft

Hi Royce:

Thank you for sending the draft of the 9/30/09 reviewed statement.

First of all, congratulations on a profitable 2009!  I am very hopeful that the coming year is even better for R. Hassell with more opportunities.

In review of the statement, I had a few questions; please note the following:

- Working capital was dropped from $200,000 at 9/30/08 to approximately ($2.6 million) in 2009, and it appears that the primary reason was the increase in current maturities of long term debt.  This is confirmed in Note 6 as it addresses the 2 lines of credit.  Please advise as to altering the long term to short term repayment.

- What is the $796,742 receivable from stockholder? See Note 4

- What makes up the $127,497 in Accounts Receivable – Other?

- The TC Jester project is underbilled at 9/30/09 by $251,232.  Please explain.

Thanks again and please let me know if you need me for anything.

Robert M. Overbey, Jr.

President

BondPro, Inc.

8 Greenway Plaza, Suite 814

Houston TX 77046

713-355-1000

713-355-1001

713-503-0600 cell

robert@bondproinc.com

www.bondproinc.com

**From:** conrcrete@aol.com [mailto:conrcrete@aol.com]
**Sent:** Friday, December 18, 2009 5:15 PM
**To:** Robert Overbey
**Subject:** Fw: Draft

Sent from my BlackBerry® smartphone with Nextel Direct Connect

**From:** "Mike Karlins" <MKarlins@karlinsramey.com>

**Date:** Fri, 18 Dec 2009 15:42:08 -0600

**To:** Alan Stembridge<astembridge@rhassell.com>; <Conrcrete@aol.com>

**Cc:** Jeff Opitz<JOpitz@karlinsramey.com>

**Subject:** Draft


Royce/ Alan —


Attached is a draft of the Sept 30, 2009 Reviewed Financial Statements for your approval. On Note 5 we need some amounts to include.


I'll be out of the office on Monday & Tuesday (but should be available by email/ cell phone). Or you can call Jeff Opitz at 281.362.2903 as he has worked with me on this. If you're around on Wednesday morning, I can swing by.


Have a great weekend.



**Mike Karlins**

1610 Woodstead Court, Suite 245

The Woodlands, Texas 77380


Direct   (281) 362-2902

Main    (281) 364-0245

Cell     (713) 882-7825

E-mail mailto:mkarlins@karlinsramey.com


1/8/2010

# ▓▓AIA® Document A305™ – 1986

**Exhibit C-20**

## Contractor's Qualification Statement

The Undersigned certifies under oath that the information provided herein is true and sufficiently complete so as not to be misleading.

**SUBMITTED TO:** HONORABLE GUADALUPE CANALES
JIM HOGG COUNTY JUDGE

**ADDRESS:** 102 E. TILLEY
HEBBRONVILLE, TX 78361-3500
P.O. BOX 729
HEBBRONVILLE, TX 78361

**SUBMITTED BY:** E. JOE REBECEK, EXEC. VICE PRESIDENT, HASSELL
CONTRUCTION CO., INC./
TERRY TAURIELLO, EXEC. VICE PRESIDENT, R. HASSELL
BUILDERS, INC.

**NAME:** HASSELL CONSTRUCTION CO., INC. /
R. HASSELL BUILDERS, INC., JOINT VENTURE

**ADDRESS:** P.O. BOX 20487
HOUSTON, TEXAS 77225

**PRINCIPAL OFFICE:** 3550 WILLOWBEND BLVD.
HOUSTON, TEXAS 77054
(713) 400-7516    FAX: (713) 665-0369

[ ] Corporation

[ ] Partnership

[ ] Individual

[ X ] Joint Venture

[ ] Other:

**ADDITIONS AND DELETIONS:**
The author of this document has added information needed for its completion. The author may also have revised the text of the original AIA standard form. An *Additions and Deletions Report* that notes added information as well as revisions to the standard form text is available from the author and should be reviewed. A vertical line in the left margin of this document indicates where the author has added necessary information and where the author has added to or deleted from the original AIA text.

This document has important legal consequences. Consultation with an attorney is encouraged with respect to its completion or modification.

This form is approved and recommended by the American Institute of Architects (AIA) and The Associated General Contractors of America (AGC) for use in evaluating the qualifications of contractors. No endorsement of the submitting party or verification of the information is made by AIA or AGC.

**NAME OF PROJECT:** *(if applicable)* JIM HOGG COUNTY JAIL

**TYPE OF WORK:** *(file separate form for each Classification of Work)*

[ X ] General Construction

[ ] HVAC

[ ] Electrical

[ ] Plumbing

[ ] Other: *(Specify)*

AIA Document A305™ – 1986. Copyright © 1964, 1969, 1979 and 1986 by The American Institute of Architects. **All rights reserved. WARNING: This AIA®** Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 14:49:13 on 09/29/2010 under Order No.6735974520_1 which expires on 07/15/2011, and is not for resale.
User Notes:                                                                                                          (2019844972)

1

**Exhibit N**

HCCI-AAA-PRODUCTION-002719

## § 1 ORGANIZATION

§ 1.1 How many years has your organization been in business as a Contractor? HASSELL CONSTRUCTION COMPANY, INC. ("HCC") 33 YEARS / R. HASSELL BUILDERS, INC. ("RHB") 14 YEARS

§ 1.2 How many years has your organization been in business under its present business name? HCC – 33 YEARS / RHB – 14 YEARS

§ 1.2.1 Under what other or former names has your organization operated?

NONE

§ 1.3 If your organization is a corporation, answer the following:

|  | HCC | RHB |
|---|---|---|
| § 1.3.1 Date of incorporation: | 7/27/76 | 7/1991 |
| § 1.3.2 State of incorporation: | TEXAS | TEXAS |
| § 1.3.3 President's name: | JAMES P. HASSELL | ROYCE J. HASSELL |
| § 1.3.4 Vice-president's name(s) | E. JOE REBECEK | TERRY TAURIELLO |

|  | HCC | RHB |
|---|---|---|
| § 1.3.5 Secretary's name: | SHAWN POTTS | ALAN STEMBRIDGE |
| § 1.3.6 Treasurer's name: | SHAWN POTTS | ALAN STEMBRIDGE |

§ 1.4 If your organization is a partnership, answer the following:
§ 1.4.1 Date of organization: N/A
§ 1.4.2 Type of partnership (if applicable): N/A
§ 1.4.3 Name(s) of general partner(s)

§ 1.5 If your organization is individually owned, answer the following:
§ 1.5.1 Date of organization: N/A
§ 1.5.2 Name of owner: N/A

§ 1.6 If the form of your organization is other than those listed above, describe it and name the principals: N/A

## § 2 LICENSING

§ 2.1 List jurisdictions and trade categories in which your organization is legally qualified to do business, and indicate registration or license numbers, if applicable.

LICENSE NOT REQUIRED IN TEXAS

§ 2.2 List jurisdictions in which your organization's partnership or trade name is filed.

TEXAS

## § 3 EXPERIENCE

§ 3.1 List the categories of work that your organization normally performs with its own forces.

SITEWORK, SITE CONCRETE, CARPENTRY (ROUGH), FOUNDATIONS & PAINTING

§ 3.2 Claims and Suits. (If the answer to any of the questions below is yes, please attach details.)
§ 3.2.1 Has your organization ever failed to complete any work awarded to it?

AIA Document A305™ – 1986. Copyright © 1964, 1969, 1979 and 1986 by The American Institute of Architects. All rights reserved. WARNING: This AIA Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 14:49:13 on 09/29/2010 under Order No.5735974520_1 which expires on 07/15/2011, and is not for resale.
User Notes:                                                                                                          (2019644972)

2

HCCI-AAA-PRODUCTION-002720

NO

§ 3.2.2 Are there any judgments, claims, arbitration proceedings or suits pending or outstanding against your organization or its officers?

NO

§ 3.2.3 Has your organization filed any law suits or requested arbitration with regard to construction contracts within the last five years?

NO

§ 3.3 Within the last five years, has any officer or principal of your organization ever been an officer or principal of another organization when it failed to complete a construction contract? (If the answer is yes, please attach details.)

NO

§ 3.4 On a separate sheet, list major construction projects your organization has in progress, giving the name of project, owner, architect, contract amount, percent complete and scheduled completion date.

ATTACHED

§ 3.4.1 State total worth of work in progress and under contract:

| HCC | RHB |
|---|---|
| $49,790,000 | $20,000,000 |

§ 3.5 On a separate sheet, list the major projects your organization has completed in the past five years, giving the name of project, owner, architect, contract amount, date of completion and percentage of the cost of the work performed with your own forces.

ATTACHED

§ 3.5.1 State average annual amount of construction work performed during the past five years:

| HCC | RHB |
|---|---|
| $36,000,000 | $15,000,000 |

§ 3.6 On a separate sheet, list the construction experience and present commitments of the key individuals of your organization.

SEE ATTACHED KEY INDIVIDUAL RESUMES

## § 4 REFERENCES
§ 4.1 Trade References:

ATTACHED

§ 4.2 Bank References:

| HCC | RHB |
|---|---|
| VISTA BANK OF TEXAS | ALLEGIANCE BANK TEXAS |
| 14561 N.W. FREEWAY | 8727 W. SAM HOUSTON PARKWAY N., STE 100 |
| HOUSTON, TEXAS 77040 | HOUSTON, TEXAS 77040 |
| BRANDON BURK, BRANCH PRESIDENT | PHIL HOWARD, VICE PRESIDENT |
| (713) 210-7602 | (281) 894-3200 |

§ 4.3 Surety:

§ 4.3.1 Name of bonding company:

AIA Document A305™ – 1986. Copyright © 1964, 1969, 1979 and 1986 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 14:49:13 on 09/29/2010 under Order No 6735974520_1 which expires on 07/15/2011, and is not for resale.
User Notes: (2019844972)

3

HCCI-AAA-PRODUCTION-002721

HCC
SAFECO INSURANCE COMPANY OF AMERICA
1001 FOURTH AVENUE
SEATTLE, WA 98154

§ 4.3.2 Name and address of agent:

HCC

ROSALYN D. HASSELL
IMPACT RISK SOLUTIONS, LLC
200 VALLEYWOOD DRIVE, SUITE B100
THE WOODLANDS, TX 77380
(281) 863-9867

## § 5 FINANCING
§ 5.1 Financial Statement.

§ 5.1.1 Attach a financial statement, preferably audited, including your organization's latest balance sheet and income statement showing the following items: Will be furnished upon request

Current Assets (e.g., cash, joint venture accounts, accounts receivable, notes receivable, accrued income, deposits, materials inventory and prepaid expenses);

Net Fixed Assets;

Other Assets;

Current Liabilities (e.g., accounts payable, notes payable, accrued expenses, provision for income taxes, advances, accrued salaries and accrued payroll taxes);

Other Liabilities (e.g., capital, capital stock, authorized and outstanding shares par values, earned surplus and retained earnings).

§ 5.1.2 Name and address of firm preparing attached financial statement, and date thereof:

§ 5.1.3 Is the attached financial statement for the identical organization named on page one?

§ 5.1.4 If not, explain the relationship and financial responsibility of the organization whose financial statement is provided (e.g., parent-subsidiary).

§ 5.2 Will the organization whose financial statement is attached act as guarantor of the contract for construction?

Yes

## § 6 SIGNATURE
§ 6.1 Dated at this 29th day of SEPTEMBER 2010

AIA Document A305™ – 1986. Copyright © 1964, 1969, 1979 and 1986 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 14:49:13 on 09/29/2010 under Order No.6735974520_1 which expires on 07/15/2011, and is not for resale.
User Notes: (2019844972)

4

HCCI-AAA-PRODUCTION-002722

Name of Organization: HASSELL CONSTRUCTION CO., INC. / R. HASSELL BUILDERS, INC.

By:

Title:     JAMES P. HASSELL                 TERRY TAURIELLO
           PRESIDENT                   EXECUTIVE VICE PRESIDENT
           HASSELL CONSTRUCTION CO., INC.      R. HASSELL BUILDERS, INC.

§ 6.2

MR. JAMES P. HASSELL and MR. TERRY TAURIELLO being duly sworn depose and say that the information provided herein is true and sufficiently complete so as not to be misleading.

Subscribed and sworn before me this 29th day of SEPTEMBER 2010

Notary Public: *(signature)*

My Commission Expires: 6-15-12

CYNTHIA L. GROOMS
NOTARY PUBLIC STATE OF TEXAS
COMMISSION EXPIRES:
06-15-2012

AIA Document A305™ – 1986. Copyright © 1964, 1969, 1979 and 1986 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 14:49:13 on 09/29/2010 under Order No.6735974520_1 which expires on 07/15/2011, and is not for resale.
User Notes:                                          (2019844972)

5

HCCI-AAA-PRODUCTION-002723

**Schanette Holtke**

| | |
|---|---|
| **From:** | Robert Overbey [robert@bondproinc.com] |
| **Sent:** | 2/1/2008 12:25 PM |
| **To:** | frazeb@safeco.com |
| **Cc:** | Schanette Holtke |
| **Subject:** | FW: R. Hassell Surety Submission |

**Attachments:** 9_30_06 & 9_30_07 Financials -R. Hassell Holding Co.tif; 12_31_07 Financials - R. Hassell Holding Co..tif; 12_31_07 Financials-R. Hassell Holding Co.tif; 1_16_08 Hartford Meeting Agenda.tif; 1_16_08 Royce Personal Financial Statement.tif; 2008 EM between Robert & Eric re Financials.tif; 1_11_08 EM re Financials-Robert & Eric.tif; 2006 Hartford GIA.tif; Royce Personal Financials.tif; Resume-Ricardo.tif; Resume-Terry Tauriello.tif; Resume-Royce Hassell.tif; 2007 Promissory Note.tif; 9_30_04 & 9_30_05 Financials-R. Hassell Holding Co.tif; 9_30_05 & 9_30_06 Financials-R. Hassell & Co.tif

      

9_30_06 & _30_07 Financials -.   12_31_07 .nancials - R. Hasse.   12_31_07 .inancials-R. Hassell.   1_16_08 Hartford Meeting Agend...   1_16_08 Royce Personal Financi...   2008 EM between Robert & Eric ...   1_11_08 EM re Financials-Rober...   2006 Hartford GIA.tif (658 KB)...

      

Royce Personal Financials.tif ...   Resume-Ricardo.tif (32 KB)   Resume-Terry Tauriello.tif (11...   Resume-Royce Hassell.tif (54 K...   2007 Promissory Note.tif (2 MB...   9_30_04 & _30_05 Financials-R...   9_30_05 & _30_06 Financials-R

Frank:

Thanks for speaking with me regarding R. Hassell. As I mentioned, the Hartford has withdrawn as surety for R. Hassell, based primarily on the fact that the company lost $2 million in 2007 as well as an increase in debt caused by the refinancing of their equipment. Their fiscal year-end is 9/30/07.

However, their first quarter has reflected an immediate turnaround as witnessed by the compiled statement provided herein.

Lastly, Royce Hassell, as you will note from his personal statement, has numerous assets which may be placed in to the company as additional paid – in capital (e.g. he owns $700,000+ in Trustmark stock), or to offset the debt.

They are looking for a $2 million/$10 million program, so I am hopeful that you could assist us in reestablishing this company's bonding program. As I mentioned, I have represented them through the Hartford for over 8 years, and until now, has been a very good client for both of us.

Thank you for your consideration.

Robert M. Overbey, Jr.
BondPro, Inc.
713-355-1000 Phone
713-355-1001 Fax

From: Schanette Holtke [mailto:schanette@gmail.com]
Sent: Tuesday, January 22, 2008 8:52 AM
To: robert@bondproinc.com
Subject: R. Hassell Surety Submission

| Exhibit C-5 | Exhibit O |
|---|---|

**Schanette Holtke**

| | |
|---|---|
| **From:** | Robert Overbey [robert@bondproinc.com] |
| **Sent:** | 2/6/2008 11:56 AM |
| **To:** | Conrcrete@aol.com |
| **Cc:** | 'robert' |
| **Subject:** | FW: Paid in Capital |

Royce,


Below is the response from Arch Insurance.


Schanette L. Holtke for

Robert M. Overbey, Jr.

BondPro, Inc.

713-355-1000 Phone

713-355-1001 Fax




---

From: Fountain, Douglas [mailto:DFountain@archinsurance.com]
Sent: Wednesday, February 06, 2008 11:42 AM
To: Robert Overbey
Subject: RE: Paid in Capital


Robert,


Thank you for updating me on R. Hassell.  While the $300M infusion is an obvious positive for
both cash flow and the current financial situation, my other concern with R. Hassell is their
ability to sustain a profit.  As I indicated to you in my previous email, there has been $2.5MM
in operating losses over the past two years.  I would like to see the operation sustain a profit
over the course of the year.  I do recognize you need a more expedient response in order to
restore bonding support, however, I would like to see more of a trend than just one quarter of
positive earnings before further considering bonding support.  I know it is not the answer you
were looking for but this is our position at this time.  Please feel free to contact me if you
have any additional questions.


Thanks,


Doug Fountain
Arch Insurance
2800 Post Oak, #5858
Houston, TX  77056
713-344-2234  (Direct)
713-344-2240 (Fax)
713-377-8433 (cell)

| Exhibit C-8 | Exhibit P |
|---|---|

1

From: Robert Overbey [mailto:robert@bondproinc.com]
Sent: Tuesday, February 05, 2008 12:50 PM
To: Fountain, Douglas
Subject: FW: Paid in Capital


Doug:


I have attached for your review verification of additional paid-in capital from Royce Hassell to
R. Hassell & Co., Inc.  Please advise if this assists in strengthening R. Hassell's position
insofar as procurement of a surety line of credit from Arch is concerned.


Thanks,


Robert M. Overbey, Jr.

BondPro, Inc.

713-355-1000 Phone

713-355-1001 Fax




From: Conrcrete@aol.com [mailto:Conrcrete@aol.com]
Sent: Tuesday, February 05, 2008 11:26 AM
To: Robert@bondproinc.com; sligon@mlrcpa.com
Subject: Paid in Capital


Attached is the deposit receipt for the $300,000 paid in capital.  My wife and I have personally
paid this money into the corporation and tomorrow we will be able to furnish you with the bank
verification.


Royce




Who's never won? Biggest Grammy Award surprises of all time on AOL Music.
<http://music.aol.com/grammys/pictures/never-won-a-grammy?NCID=aolcmp00300000002548>




The information contained in this e-mail message may be privileged and confidential information
and is intended only for the use of the individual and/or entity identified in the alias address
of this message. If the reader of this message is not the intended recipient, or an employee or

**Robert Overbey**

| | |
|---|---|
| **From:** | Robert Overbey [robert@bondproinc.com] |
| **Sent:** | Wednesday, February 06, 2008 11:53 AM |
| **To:** | 'Conrcrete@aol.com' |
| **Cc:** | 'robert' |
| **Subject:** | FW: R. Hassell Holding Companies, Inc. |

Royce,

Below is the recent response from International Fidelity.

Schanette L. Holtke for
Robert M. Overbey, Jr.
BondPro, Inc.
713-355-1000 Phone
713-355-1001 Fax

**From:** Michael Kremheller Jr. [mailto:mkremheller@IFIC.com]
**Sent:** Wednesday, February 06, 2008 11:09 AM
**To:** Robert Overbey
**Subject:** FW: R. Hassell Holding Companies, Inc.

Here you go.  Please keep me posted as I am interested, but cannot move right now.  If the 3/31/08 (6-month) numbers continue to be profitable, I would like to meet with the account to see if there is compatibility for bond support.

Have a good day,
Mike Kremheller
Regional Manager
Houston Contract Regional Office
International Fidelity Insurance Company
Tel (281) 681-3900 ext 14
Fax (281) 681-3903
Cell (281) 923-3065
mkremheller@ific.com

**From:** Michael Kremheller Jr.
**Sent:** Wednesday, January 23, 2008 9:59 AM
**To:** 'Robert Overbey'
**Subject:** R. Hassell Holding Companies, Inc.

Thanks for the submission.  I know this account by reputation and reviewed all the underwriting information you sent.  As discussed IFIC cannot support this account at this time even with limited capacity.  If you have any further questions, do not hesitate to call.  I look forward to working with you on the next prospect.

Have a good day,
Mike Kremheller
Regional Manager
Houston Contract Regional Office
International Fidelity Insurance Company
Tel (281) 681-3900 ext 14
Fax (281) 681-3903
Cell (281) 923-3065
mkremheller@ific.com

| | |
|---|---|
| **Exhibit C-9** | **Exhibit Q** |

2/6/2008

**Schanette Holtke**

| | |
|---|---|
| **From:** | Bill King [bking@suretec.com] |
| **Sent:** | 2/27/2008 10:56 AM |
| **To:** | Robert Overbey |
| **Cc:** | Schanette Holtke |
| **Subject:** | RE: R.Hassell |

Correction...make that a copy of the deposit receipt along with a copy of the check.

---

From: Bill King
Sent: Wednesday, February 27, 2008 10:53 AM
To: 'Robert Overbey'
Cc: 'Schanette Holtke'
Subject: R.Hassell

I have confirmed with Scott Olsen that Royce can deposit the checks directly into the Frost Bank account. Our only request with this arrangement is that they fax a copy of the check and the deposit slip that we will provide directly to Scott.

Bill King
SureTec
713-683-1480
www.suretec.com <http://www.suretec.com/>

**Exhibit
C-6**

**Exhibit
R**

## Schanette Holtke

**From:** Schanette Holtke [schanette@bondproinc.com]
**Sent:** 2/11/2008 3:30 PM
**To:** Conrcrete@aol.com
**Cc:** 'Robert Overbey'
**Subject:** R. Hassell / 2008 SureTec GIA (unsigned)

**Attachments:** 2008 SureTec GIA (unsigned).tif



2008 SureTec GIA
 (unsigned).ti...

Royce,

Pursuant to your conversation with Robert, attached is a copy of the SureTec General Indemnity
Agreement.  Please sign and have notarized where indicated.  If you have any questions, please
contact me or Robert.  Have a good afternoon.

Regards,

Schanette L. Holtke, CISR CIC
Assistant Vice President
BondPro, Inc.
Commercial Insurance/Surety Bonds
Ph: 713-355-1000
Fx: 713-355-1001
Cell: 713-416-5745
Visit our Website: www.bondproinc.com

1

2/18/2008 3:44 PMRobert Overbey

## Robert Overbey

| | |
|---|---|
| **From:** | Bill King [bking@suretec.com] |
| **Sent:** | Friday, February 08, 2008 12:19 PM |
| **To:** | Robert Overbey |
| **Cc:** | Christy Breining |
| **Subject:** | RE: R. Hassell & Co., Inc. |

- $6million SureTec bonded work.  However, we will still underwrite the total case on the total program (bonded & unbonded).
- Subjective; however, logical points of re-evaluation would be when the Hartford's liability is gone-as the debt is reduced-continued profitable operations.  Also, when our FDS staff advises of their opinion on the backroom.

| | |
|---|---|
| **From:** | Robert Overbey [mailto:robert@bondproinc.com] |
| **Sent:** | Friday, February 08, 2008 12:09 PM |
| **To:** | Bill King |
| **Cc:** | Christy Breining |
| **Subject:** | RE: R. Hassell & Co., Inc. |

Hi Bill:

Thank you very much for your proposal, and prior to my advising Royce Hassell, I wanted to clarify and/or confirm a couple of items:

- When you indicate $6 million "aggregate bonded program" is this interpreted as bonded work only?  In other words, unbonded work would therefore not count against the aggregate, correct?
- Are there certain parameters that would need to be met in the future to wean R. Hassell from the funds control requirement, or is more subjective at this point?
- Corporate and personal indemnity in favor of SureTec is not an issue, as Hartford has both as well.

Thanks again, and I am grateful for your offer of support, and look forward to hearing from you.

Robert M. Overbey, Jr.
BondPro, Inc.
713-355-1000 Phone
713-355-1001 Fax

**From:** Bill King [mailto:bking@suretec.com]
**Sent:** Friday, February 08, 2008 11:22 AM
**To:** Robert Overbey
**Cc:** Christy Breining
**Subject:** RE: R. Hassell & Co., Inc.

Robert, here is what we propose.

Robert M. Overbey, Jr.                                    1
BondPro, Inc.
robert@bondproinc.com
713-355-1000 phone
713-355-1001 fax
713-503-0600 cell

2/18/2008 3:44 PMRobert Overbey

Initially we will support R Hassell on a $3million single/$6million aggregate bonded program using our Funds Disbursement Service.  The fee attached to FDS is 1% of the contract price and is in addition to the standard bond premium.  At this point in time we cannot offer the Retro-rate program.

The FDS accomplishes two things from our prospective, first and foremost it protects and segregates our bonded obligation from the former surety's obligations.  Secondly, it will give us invaluable insight into the backroom operations of Royce's company.

The debt is still a concern for us and we will be closely monitoring the reduction of these obligations.

We will also require the full corporate and personal indemnities involved.

I will be happy to personally visit with you regarding this.  Here is a link to our FDS program from our website so you & Royce may review http://www.suretec.com/fds/index.htm.

| | |
|---|---|
| **From:** | Robert Overbey [mailto:robert@bondproinc.com] |
| **Sent:** | Friday, February 08, 2008 10:16 AM |
| **To:** | Bill King |
| **Subject:** | FW: R. Hassell |

Hi Bill:

I wanted to check with you on the status of R. Hassell & Co., Inc..  Thanks and I look forward to hearing from you.

Robert M. Overbey, Jr.
BondPro, Inc.
713-355-1000 Phone
713-355-1001 Fax

**From:** Robert Overbey [mailto:robert@bondproinc.com]
**Sent:** Wednesday, February 06, 2008 3:34 PM
**To:** 'Bill King'
**Subject:** RE: R. Hassell

Bill:

Thanks, and I have advised Royce as to the timeframe.  I appreciate your assistance very much!

Robert M. Overbey, Jr.
BondPro, Inc.
713-355-1000 Phone
713-355-1001 Fax

**From:** Bill King [mailto:bking@suretec.com]

Robert M. Overbey, Jr.                              2
BondPro, Inc.
robert@bondproinc.com
713-355-1000 phone
713-355-1001 fax
713-503-0600 cell

2/18/2008 3:44 PMRobert Overbey
**Sent:** Wednesday, February 06, 2008 11:44 AM
**To:** Robert Overbey
**Subject:** RE: R. Hassell

Robert while I am at a conference I have Christy inputting the data into the system so we can review and make a proposal to you.  It will be this week but may be as late as Friday.

        -----Original Message-----
**From:**        Robert Overbey [mailto:robert@bondproinc.com]
**Sent:**        Wednesday, February 06, 2008 7:10 AM
**To:**          Bill King
**Subject:**     R. Hassell

Hi Bill:

I wanted to check in with you and see how you were coming on R. Hassell.

Thanks for your consideration and I look forward to hearing from you.

Robert M. Overbey, Jr.
President
BondPro, Inc.
8 Greenway Plaza, Suite 814
Houston, Texas 77046
713-355-1000 Phone
713-355-1001 Fax
robert@bondproinc.com
www.bondproinc.com

Robert M. Overbey, Jr.                          3
BondPro, Inc.
robert@bondproinc.com
713-355-1000 phone
713-355-1001 fax
713-503-0600 cell

**BondPro, Inc.**
**8 Greenway Plaza, Ste 814**
**Houston, Texas 77046**
**713/355-1000**
**www.bondproinc.com**

Date: February 14, 2008

| To: | Bill King |
|---|---|
| Company: | SureTec |
| From: | Schanette L. Holtke, CIC |
| Company: | BondPro, Inc. |
| RE: | **R. Hassell Holding Companies, Inc. GIA** |

Bill,

Attached is the original signed GIA for the referenced.

Regards,

Schanette L. Holtke, CIC
Assistant Vice President
Phone: 713/355-1000
Fax:    713/355-1001

# R. HASSELL HOLDING COMPANIES, INC

**P. O. Box 20487**
**Houston, TX  77225-0487**
**713-665-2442  •  713-665-5616**

# LETTER OF TRANSMITTAL

| DATE:  February 13, 2008 | JOB NO. |
|---|---|
| **ATTENTION** | |

**TO:**   Mr. Robert Overby

Bond Pro

WE ARE SENDING YOU    ❑ Attached   ❑ Under separate cover via _____ the following items:

❑ Shop Drawings      ❑ Prints      ❑ Plans      ❑ Samples  ❑ Specifications

❑ Copy of Letter      ❑ Change Order      ❑ *Will pick up* _____

| NO. OF COPIES | DATE | DESCRIPTION |
|---|---|---|
| 1 | | General Agreement of Indemnity - SureTec |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

These are transmitted as checked below:

❑ For Approval       ❑ Approved as submitted       ❑ Resubmit _____ copies of approval
❑ For your use       ❑ Approved as noted            ❑ Submit _____ copies for distribution
❑ As requested       ❑ Returned for corrections      ❑ Return _____ corrected prints
❑ For review/comment  ❑ _____
❑ FOR BIDS DUE _____      ❑ PRINTS RETURNED AFTER LOAN TO US

Remarks: _____

_____

Copy To: _____      Signed: *Royce Hassell*

*If enclosures are not as noted, kindly notify us at once. Thank you.*



R. Hassell Holding Companies, Inc., et al

## GENERAL AGREEMENT OF INDEMNITY

This General Agreement of Indemnity, herein called the "Agreement," is made and executed this 11th day of February , 2008 by the undersigned, herein called the "Indemnitors," in favor of, and for the benefit of, SureTec Insurance Company and its co-sureties, reinsurers, and other sureties through whom it may procure the execution of bonds and undertaking, herein collectively called the "Company."

Witnesseth:

WHEREAS, in the transaction of business certain bonds, guaranties, obligations of suretyship, undertakings and other writings obligatory in the nature of a bond or ancillary thereto (all such bonds, guaranties, obligations, and undertakings being collectively referred to herein as "bonds") may have heretofore been, and may hereafter be, required by, for, or on behalf of the Indemnitors or any one or more of the Indemnitors in whose bonds the Indemnitors do hereby affirm to have a substantial material and beneficial interest, and as a condition precedent to the execution of any and all such bonds, the Company requires execution of this General Agreement of Indemnity.

NOW, THEREFORE, in consideration of these premises, and of the execution or continuance of such bonds, and for other good and valuable consideration, the Indemnitors do, for themselves, their heirs, executors, administrators, personal representatives, assigns and any and all of their wholly or partially owned subsidiary companies, subsidiaries of subsidiaries, proprietorships, divisions or affiliates, partnerships, joint ventures or co-ventures in which any of the undersigned Indemnitors, have any interest or participation, whether open or silent, now in existence or which may hereafter be created or acquired, jointly and severally agree with, and make this General Agreement of Indemnity in favor of, and for the benefit of, the Company as follows:

1.   The Indemnitors shall pay to the Company, at its home office at 952 Echo Lane, Suite 450, in the City of Houston, Harris County, Texas, premiums, fees, and charges at the rates and at the times specified by Company, and will continue to pay the same when such premium, fee, or charge is annual and when additional premiums, fees, or charges are due for changes to underlying bonded obligations. Premiums are due and payable upon execution of bonds and upon renewal thereof. The Indemnitors shall be liable for additional and renewal premiums hereunder until the Company shall be discharged and released from any and all liability and responsibility upon and from each such bond or liability arising therefrom, and until the Indemnitors shall deliver to the Company at its home office in Houston, Texas, competent written evidence, satisfactory to the Company, of the Company's discharge from all liability on such bond or bonds.  The Indemnitors shall also pay to Company, its affiliates, or to third parties, as the case may be, all underwriting, inspection, funds disbursement, escrow, special handling, filing, recording, and similar fees required or charged in connection with the underwriting, execution, or administration of any bonds.

2.   The Indemnitors shall indemnify and save the Company harmless from and against every claim, demand, liability, cost, loss, charge, suit, judgment, award, fine, penalty, and expense which the Company may pay, suffer, or incur in consequence of having executed, delivered, or procured the execution of such bonds, or any renewals or continuations thereof or substitutes therefor, including, but not limited to, court costs, mediation and facilitation fees and expenses, fees and expenses of attorneys, accountants, adjusters, inspectors, experts, and consultants, whether on salary, retainer, in-house, or otherwise, and the expense of determining liability, or procuring, or attempting to procure, release from liability, or in bringing suit or claim to enforce the obligation of any of the Indemnitors under this Agreement.  In the event the Company deems it necessary to respond to, make an investigation of, or settle, defend, or compromise a claim, demand or suit, the Indemnitors acknowledge and agree that all expense attendant to such response, investigation, settlement, defense, and compromise, whether incurred

internally or otherwise, and whether or not Indemnitor has offered to defend Company, is included as an indemnified expense and shall be paid by Indemnitors to Company on demand. In the event of payments by the Company, a voucher, affidavit, bordereaux or other evidence of such payments are prima facie evidence of the propriety thereof, and of the Indemnitors' liability therefor to the Company. In the event that Indemnitors are covered by any insurance policy or policies for any matter or claim that may be brought against Company, or for which Company may have any exposure or liability, the coverage under such insurance policy or policies shall be primary. Indemnitors waive any and all claims of subrogation against Company.

3.  Payment of loss or deposit of collateral shall be made to the Company by the Indemnitors as soon as liability exists or is asserted against the Company, whether or not the Company shall have made any payment therefor. Such payment shall be equal to the larger of (a) the amount of any reserve set by the Company, or (b) such amount as the Company, in its sole judgment, shall deem sufficient to protect it from loss. The Company shall have the right to use the deposit, or any part thereof, in payment or settlement of any liability, loss or expense for which the Indemnitors would be obligated to indemnify the Company under the terms of this Agreement. If for any reason the Company shall deem it necessary to increase a reserve to cover any possible liability or loss, the Indemnitors will deposit with the Company, immediately upon demand, a sum of money equal to any increase thereof as collateral security to the Company for such liability or loss. Indemnitors acknowledge that there is no adequate remedy at law for the breach of this provision and that payment of damages would not adequately compensate Company for such breach. Accordingly, Company may compel Indemnitors to specifically perform these obligations pursuant to applicable law.

4.  The Indemnitors immediately upon becoming aware of any demand, notice, or proceeding preliminary to determining or fixing any liability, with which the Company may be subsequently charged under any such bond, shall notify the Company thereof in writing at its home office, 952 Echo Lane, Suite 450, Houston, Texas, 77024.

5.  The Company shall have the right to settle, compromise, prosecute, or defend any claim or action brought against the Company or any Indemnitor upon or relating to any bond or by any Indemnitor against a third party relating to any bonds or any interests granted herein. Company's decision with respect thereto shall be binding and conclusive upon the Indemnitors.

6.  The Company, and its designated agents, consultants, and representatives, shall at any and all reasonable times, have free access to the books and records of the Indemnitors. Indemnitors consent to Company's requests for, and use of, consumer credit reports and investigative consumer credit reports with respect to any of the individual Indemnitors. Any bank, depository, creditor, credit bureau or credit reporting agency, obligee of a bond, subcontractor, material supplier, claimant,  prior surety, agent, or other person, firm or corporation possessing records or having information concerning the financial affairs and records or having information concerning the current or past financial affairs and operations of the Indemnitors is hereby authorized to furnish to the Company and its representatives, consultants, and affiliates, any such records or information requested by the Company. Indemnitors will execute, as requested by the Company, any additional documents necessary to cause the release and production of records and information authorized by this paragraph.

7.  In the event the Indemnitors, or any of them, shall (a) fail to pay any premium or underwriting charge or fee when due, or (b) fail to pay any amounts due hereunder, (c) abandon, forfeit or breach a bonded contract or obligation, or have been alleged to have abandoned, forfeited, or breached any such contract, (d) breach or be declared to have breached any bond issued by or at the request of Company, (e) have proceedings instituted against them, or any them, alleging that they are insolvent, or for the appointment of a receiver or trustee for the benefit of creditors, whether such Indemnitor(s) are insolvent or not, (f) have proceedings instituted against them, or any of them, the effect of which may be to deprive any of them of the use of any part of the equipment, funds, or assets used in connection with the work under bonded contract so as to hinder, delay or impede the normal satisfactory progress of the work,  (g) fail to cooperate with Company in the investigation of claims made or threatened to be made against Company, or (h) the Company shall become insecure or unsure of the Indemnitors' willingness or ability to perform their obligations hereunder, and irrespective of whether Indemnitors have been declared in default under any bond or undertaking, the Company shall have the right, but not the obligation, to: (x) take possession of the work and under any other contract in connection with which the Company has given its bond or bonds within the purview of this Agreement and, at the expense of the Indemnitors, to continue performance of the contract(s), or cause,  consent to, or arrange for, the completion thereof, (y) direct the obligees under such bonds to hold or forward contract proceeds and retainages due, earned, or to become due or earned, under the contract to the Company or its designees for disbursement or offset against other obligations of Indemnitors to

Company as it deems necessary or advisable, and/or (z) take such other and further action as the Company may, in its sole discretion, deem advisable, prudent, or necessary.

8.     Indemnitors shall pay interest on, and interest shall accrue on, all unpaid indebtedness of Indemnitors to Company at an interest rate equal to the lesser of: (a) eighteen percent (18%) per annum or (b) the Highest Lawful Rate (as such term is defined below). Interest on unpaid premiums shall not begin to accrue, however, until 45 days following the date of execution of a bond, or the renewal of a bond, by Company or its attorney-in-fact. Notwithstanding any other provision herein, the aggregate interest rate charged under this Agreement, including all charges, fees, or other payments in connection herewith or therewith deemed in the nature of interest under applicable law shall not exceed the Highest Lawful Rate. It is the intention of Company and Indemnitors to conform strictly to any applicable usury laws. Accordingly, if Company contracts for, charges, or receives any consideration which constitutes interest in excess of the Highest Lawful Rate, then any such excess shall be canceled automatically and, if previously paid, shall at Company's option be applied to the outstanding principal balance due hereunder or be refunded to Indemnitors. As used in this paragraph, the term "Highest Lawful Rate" means the maximum lawful interest rate, if any, that at any time or from time to time may be contracted for, charged, or received under the laws applicable to Company which are presently in effect or, to the extent allowed by law, under such applicable laws which may hereafter be in effect and which allow a higher maximum non-usurious interest rate than applicable laws now allow.

9.     As further security, the Indemnitors hereby grant to the Company a security interest in, and lien on, all of their equipment, machinery, plant, inventory, insurance policies, vehicles, tools, real property, and materials, as well as sums, claims, causes of action, accounts, accounts receivable, and rights due or to become due in connection with any contract, whether or not bonded by Company. This Agreement shall constitute a Security Agreement and a Financing Statement for the benefit of the Company in accordance with the Uniform Commercial Code and all similar statutes and a deed of trust or mortgage, as applicable, and may be filed by the Company without notice to perfect the security interests and liens granted herein. The Company may add schedules, property descriptions, and other documents to this Agreement as necessary and may sign a copy of this Agreement, or copy thereof, where required for filing as a Financing Statement or to otherwise perfect any interest granted herein. For the purpose of recording this Agreement, a photocopy of this Agreement acknowledged by a representative of Company before a Notary Public as being a true copy hereof shall be regarded as an original. The grant of the security interest and lien position, and any efforts to perfect same, are in addition to, and not in abrogation of, substitution for, nor restriction of any and all rights which the Company has or may have under this Agreement, at law, or in equity.

10.     The Indemnitors hereby irrevocably nominate, constitute, appoint and designate the Company and its designees as their attorney-in-fact with the right, power, and authority, but not the obligation, to exercise all of the rights and powers of the Indemnitors assigned, transferred, and set over to the Company in this Agreement, and in the name of the Indemnitors, or any one or more of them, to make, endorse, execute, sign, and deliver any and all additional or other instruments and writings, including, but not limited to, assignments, financing statements, documents, instruments, checks, drafts, deposit, ACH, and wire transfer directives and orders, change of address notices, liens and releases thereof, applications, certificates, draw requests, orders, releases, and papers deemed necessary or desirable by the Company, and to collect the proceeds thereof, in order to give full effect not only to the intent and meaning of the obligations assumed, and the agreements made, by Indemnitors hereunder, and the assignments and conveyances made herein, but also the full protection intended to be herein given to the Company under all other provisions of this Agreement. The Indemnitors hereby ratify and confirm all acts and actions taken and done by the Company and its designees as such attorney-in-fact. The powers and authority granted herein shall not be affected by the disability or incapacity of the Indemnitors or any one or more of them.

11.     The Indemnitors understand and agree that the circumstances, financial or otherwise, of any one or more of the Indemnitors may change substantially over the period of this agreement and the Indemnitors therefore agree to keep themselves fully informed as to the business activities and financial affairs of any one or more of the Indemnitors and of the risks being engaged in so that the Indemnitors are always aware of the risks of hazards in continuing to act as Indemnitors.  The Indemnitors hereby expressly waive any requirement for notice from the Company of any fact or information coming to the notice or knowledge of the Company affecting its rights or the rights or liabilities of the Indemnitors.

12.   In the event of any claim or demand being made by the Company against the Indemnitors, or any one of more of the parties so designated, by reason of the execution of a bond or bonds, the Company is hereby expressly authorized to settle or compromise with any one or more of the Indemnitors individually, and without reference to the others, and such settlement or composition shall not affect the liability of any of the others and the Indemnitors

hereby expressly waive the right to be discharged by reason of the release of one or more of the Indemnitors, and hereby consent to any settlement or compromise that may hereafter be made.

13.   The Company is not required, by reason of any application for a bond or by reason of having issued a previous bond, bid bond, "bondability letter," or otherwise, to execute or procure the execution of or participate in the execution or renewal of any further bond or bonds. The Company, at its sole option and without assigning any reason therefor, may decline to execute or to participate in or procure the execution or renewal of any bond without impairing the validity of this Agreement or incurring any liability to Indemnitors. Any promise or agreement by Company or its representatives to issue or execute any bond or undertaking in the future shall be revocable at will by Company unless and until such bond or undertaking is properly authorized and issued by Company. Company's failure or refusal to issue final bonds after bid bonds or other proposal guarantees have been issued shall not excuse Indemnitors from their liability to indemnify and hold Company harmless from any loss or claim against such bid bond or proposal guarantee, nor shall such failure or refusal give rise to any cause of action in favor of Indemnitors for alleged losses of anticipated profits or other benefits.

14.   **The Indemnitors acknowledge and agree this it is their sole responsibility to provide the proper forms for the bonds to be executed by the Company, and to review and approve any bond and undertaking executed by the Company on its own forms. Neither the Company, nor its agents, shall have any liability whatsoever to the Indemnitors if they shall fail to furnish the Company with the proper forms or to object to forms furnished by the Company.  It shall be the sole responsibility of the Indemnitors to review all bond forms executed by the Company for appropriateness and for any errors or omissions prior to delivery of the bonds to an obligee. The Company and its agents shall have no liability to the Indemnitors on account of any negligence (whether sole or concurrent), inadvertence, error or omission in the preparation, execution, or delivery of any bonds. Prior to requesting that the Company issue any bond, the Indemnitors shall obtain confirmation that the proposed obligee on the bond will accept the Company as surety on the proposed bond, and neither the Company, nor its agents, shall have any liability whatsoever if any obligee refuses, for whatever reason, to accept the Company as surety on any bond. The Indemnitors agree that the Indemnitors shall be solely responsible for arranging, independent of the Company, for the timely delivery of any bond to the obligee. The Company and its agents shall have no liability to the Indemnitors if any bond is not timely delivered to any obligee for any reason whatsoever, including any negligent acts or omissions on the part of the Company or its agents.**

15.   **The Indemnitors agree that the  Company's liability, if any, to the Indemnitors, or to any of them, on account of any acts or omissions by the Company or any of its consultants, affiliates, agents, or representatives (whether such acts or omissions arise in tort, negligence, trespass, breach of contract, by statute, or at law) arising out of or relating to any bonds or any other conduct of the Company or its agents, representatives, employees, attorneys, attorneys-in-fact, adjustors, or consultants is hereby expressly limited to an amount not to exceed the premium actually paid to the Company for such bond.**

16.   If the Company procures the execution of such bonds by or for other companies, including specifically, but without limitation, **American Contractors Indemnity Company, Texas Bonding Company,** or **U.S. Specialty Insurance Company,** or executes such bonds with co-sureties, or reinsures any portions of such bonds with reinsuring companies, then all the terms and conditions of this Agreement shall apply and operate for the benefit of, and may be enforced by, such other companies, co-sureties and reinsurers as their interests may appear. A written statement, signed by an officer of SureTec Insurance Company, attached to a copy of this Agreement before or after execution hereof by Indemnitors, confirming procurement of execution, co-surety, or reinsurance by such other companies, shall be prima facie evidence of the rights of such other companies hereunder and shall be binding on Indemnitors to the same extent as if such companies were named as the Company herein in the first instance. Any action to enforce this Agreement may be brought in the name of such other companies without the necessity of joinder of Company.

17.   The liability of the Indemnitors hereunder shall not be affected by the failure of the Indemnitors, or any one or more of them, to sign any contract,  bond, rider, undertaking, or this Agreement, nor by any claim that other indemnity, security, or collateral was to have been obtained, nor by the release of any indemnity, nor the return or exchange of any collateral, nor the forbearance or neglect in the enforcement of any requirements relating to the disbursement, administration or control or contract proceeds, that may have been obtained or occurred. If any party signing this Agreement is not bound for any reason, this Agreement shall still be binding upon each and every other Indemnitor.  The Company may, but shall not be obligated to, accept other and further Agreements of Indemnity from Indemnitors or others, and may allow Indemnitors or additional indemnitors to execute Agreements of

Indemnity in multiple counterparts. It is understood and agreed that the execution of multiple, successive, replacement, or additional Agreements of Indemnity or the release or partial release or the capping of liability of some of the Indemnitors shall not operate to release Indemnitors. Indemnitors waive any and all claims that such other or additional Agreements of Indemnity constitute novations, substitutions or releases of the Indemnitors.

18.   This Agreement may be terminated by the Indemnitors, or any one or more of the parties so designated, only upon written notice, of not less than thirty (30) days, sent by registered mail to the home office of the Company, 952 Echo Lane, Suite 450, Houston, Harris County, Texas 77024. In no event, however, shall any such termination notice operate to modify, bar, discharge, limit, affect or impair the liability of the party sending such termination notice, with respect to, upon or by reason of any and all such bonds executed prior to a date thirty (30) days after the date of the Company's actual receipt of such notice in its home office as aforesaid. Any such termination notice shall not operate to modify, bar, discharge, limit, affect or impair the liability of non-terminating Indemnitors, with respect to, upon or by reason of any and all bonds issued by Company.

19.   The Indemnitors understand and agree that this document is a continuing agreement to indemnify over an indefinite period and that bonds issued by the Company may vary widely in amounts and nature and that the Indemnitors will be bound by all such bonds, and any changes in the amounts of such bonds or underlying obligations, whether or not Company consents to such changes. The Indemnitors shall continue to remain bound under the terms of the Agreement even though the Company may from time to time, heretofore or hereafter, with or without notice to or knowledge of the Indemnitors, accept or release other agreements of indemnity, collateral, or conditions in connection with the procurement of bonds, from Indemnitors or others, it being expressly understood and agreed by the Indemnitors that any and all other rights which the Company may have or acquire against the Indemnitors or others under any such other or additional agreements of indemnity or collateral shall be in addition to, and not in lieu of, the rights afforded Company under this Agreement.

20.   This General Agreement of Indemnity is governed by, and shall be interpreted in accordance with, the laws of the State of Texas without giving effect to any law or rule that would cause the laws of any jurisdiction other than the State of Texas to be applied. All of your duties and obligations under this Agreement are due, payable, and performable in Houston, Harris County, Texas. If any provision or provisions, or portion thereof, of this Agreement shall be void or unenforceable under the laws of any jurisdiction governing its construction, this Agreement shall not be void or vitiated thereby, but shall be construed and enforced with the same effect as though such provision or provisions, or portion thereof, were omitted and the other provisions shall remain in full force and effect.

21.   This General Agreement of Indemnity applies to bonds written by or at the request of Company as surety, co-surety, or reinsurer on behalf of the undersigned Indemnitors, or any of them,  and any and all of their wholly or partially owned subsidiary companies, subsidiaries of subsidiaries, proprietorships, divisions or affiliates, partnerships, joint ventures or co-ventures in which any of the undersigned Indemnitors, their wholly or partially owned subsidiary companies, subsidiaries of subsidiaries, divisions, proprietorships, or affiliates, have any interest or participation whether open or silent; jointly, severally, or in any combination with each other; now in existence or which may hereafter be created or acquired.

22.   The Indemnitors hereby warrant and represent the accuracy of all financial statements submitted or to be submitted to the Company, and covenant and agree that the assets described therein are dedicated to and imposed with a trust for the purpose of this Agreement of Indemnity and for the benefit of the Company.

23    Except where prohibited by law, Indemnitors hereby waive all right to claim any property, including homestead, as exempt from levy, execution, sale or other legal process secured or requested by Surety under the laws of the United States or of any state or province or of any other government.

24.   All monies due and to become due under any contract or contracts covered by bonds issued by the Company are trust funds, whether in the possession of the Indemnitors or otherwise, for the benefit of and for payment of all obligations for which the Company would be liable under any of said bonds, which said trust also inures to the benefit of the Company for any liability or loss it may have or sustain under any of said bonds, and this Agreement shall constitute notice of such trust.

**25.  THE UNDERSIGNED INDEMNITORS REPRESENT TO THE COMPANY THAT THEY HAVE CAREFULLY READ THIS ENTIRE AGREEMENT CONSISTING OF THIS PAGE, THE PRECEDING PAGES, AND ANY PAGES WHICH FOLLOW, AND THAT THERE ARE NO OTHER PROMISES, AGREEMENTS OR UNDERSTANDINGS WHICH IN ANY WAY LESSEN OR MODIFY THE OBLIGATIONS SET FORTH HEREIN. THE UNDERSIGNED**

INDEMNITORS RECOGNIZE THAT THE ABOVE AND FOREGOING AGREEMENTS INCLUDE BROAD RIGHTS IN FAVOR OF COMPANY AND LIMITATIONS ON THE LIABILITY OF COMPANY AND ITS AGENTS FOR CERTAIN ACTS AND OMISSIONS, INCLUDING NEGLIGENT ACTS AND OMISSIONS. THE EFFECTIVE DATE OF THIS AGREEMENT OF INDEMNITY SHALL BE THE DAY AND YEAR FIRST ABOVE WRITTEN, REGARDLESS OF THE DATE OR DATES ON WHICH THE UNDERSIGNED MAY EXECUTE THIS AGREEMENT AND REGARDLESS OF WHETHER BONDS WERE ISSUED BY THE COMPANY BEFORE OR AFTER THE EXECUTION OR EFFECTIVE DATE OF THIS AGREEMENT. THE COMPANY'S ACCEPTANCE OF THIS AGREEMENT SHALL BE PRESUMED AND IS DEEMED EFFECTIVE BY ITS RECEIPT OF THIS AGREEMENT, ITS RELIANCE HEREON, OR BY ITS EXECUTION OF ANY BOND OR UNDERTAKING FOR INDEMNITORS OR ANY OF THEM.

**Corporation or Partnership**

Name:   R. Hassell Holding Companies, Inc.

By: _____
Signature

Printed Name & Title:
**Royce J. Hassell, President**

**3550 Willow Bend, Houston, TX 77054**
Street or P.O. Box   City          State/Zip

**Corporation or Partnership**

Name:   R. Hassell & Co, Inc.

By: _____
Signature

Printed Name & Title:
**Royce J. Hassell, President**

**3550 Willow Bend, Houston, TX 77054**
Street or P.O. Box   City          State/Zip

**LLC**

Name:   G. R. Group Resources, LLC

By: _____
Signature

Printed Name & Title:
**Royce J. Hassell, President**

**3550 Willow Bend, Houston, TX 77054**
Street or P.O. Box   City          State/Zip

**Corporation or Partnership**

Name:   R. Hassell Builders, Inc.

By: _____
Signature

Printed Name & Title:
**Royce J. Hassell, President**

**3550 Willow Bend, Houston, TX 77054**
Street or P.O. Box   City          State/Zip

**Individual**

Name:   Royce J. Hassell

By:     _Signature_

**7907 S. Rice Blvd., Bellaire, TX 77401**
Street or P.O. Box    City          State/Zip

**Individual**

Name:   Silvia T. Hassell

By:     _Signature_

**7907 S. Rice Blvd., Bellaire, TX 77401**
Street or P.O. Box    City          State/Zip

## Individual Notary Acknowledgment

State of   TEXAS                                      §
                                                      §
County of  HARRIS                                     §

On this   12 Th   day of   February   2008 ,          before me personally appeared

**Royce J. Hassell  and Silvia T. Hassell**

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are
subscribed to the within and foregoing instrument, and acknowledged to me that he/she/they executed the same in his/
her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument, the person(s) executed the
instrument.

WITNESS my hand and official seal

_Isabel Repka_
Notary Public
Commission Expires   4-21-2010

**ISABEL REPKA**
**NOTARY PUBLIC**
**STATE OF TEXAS**
**COMM. EXPIRES 04-21-2010**

## Corporate Notary Acknowledgment

State of _TEXAS_ §
§
County of _HARRIS_ §

On this _12th_ day of _February_ 20 _08_ , before me personally appeared

**Royce J. Hassell**

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her authorized capacity as the **President** of **R. Hassell Holding Companies, Inc.** , said corporation, and that by his/her signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.
WITNESS my hand and official seal

_Isabel Repka_
Notary Public
Commission Expires _4-21-2010_

ISABEL REPKA
NOTARY PUBLIC
STATE OF TEXAS
COMM. EXPIRES 04-21-2010

## Corporate Notary Acknowledgment

State of _TEXAS_ §
§
County of _HARRIS_ §

On this _12th_ day of _February_ 20 _08_ , before me personally appeared

**Royce J. Hassell**

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her authorized capacity as the **President** of **R. Hassell & Co, Inc.** , said corporation, and that by his/her signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.
WITNESS my hand and official seal

_Isabel Repka_
Notary Public
Commission Expires _4-21-2010_

ISABEL REPKA
NOTARY PUBLIC
STATE OF TEXAS
COMM. EXPIRES 04-21-2010

## Corporate Notary Acknowledgment

State of _TEXAS_ §
County of _HARRIS_ §
§

On this _12th_ day of _February_ 20 _08_ , before me personally appeared

**Royce J. Hassell**

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her authorized capacity as the **President** of **R. Hassell Builders, Inc.** , said corporation, and that by his/her signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.
WITNESS my hand and official seal

_Isabel Repka_
Notary Public
Commission Expires _4-21-2010_

**ISABEL REPKA**
NOTARY PUBLIC
STATE OF TEXAS
COMM. EXPIRES 04-21-2010

## LLC Notary Acknowledgment

State of _TEXAS_ §
County of _HARRIS_ §
§

On this _12th_ day of _February_ 20 _08_ , before me personally appeared

**Royce J. Hassell**

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her authorized capacity as the **President** of **G. R. Group Resources, LLC** , said corporation, and that by his/her signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.
WITNESS my hand and official seal

_Isabel Repka_
Notary Public
Commission Expires _4-21-2010_

**ISABEL REPKA**
NOTARY PUBLIC
STATE OF TEXAS
COMM. EXPIRES 04-21-2010



R. Hassell Holding Companies, Inc., et al

## GENERAL AGREEMENT OF INDEMNITY

This General Agreement of Indemnity, herein called the "Agreement," is made and executed this <u>11th</u> day of <u>February</u> , <u>2008</u> by the undersigned, herein called the "Indemnitors," in favor of, and for the benefit of, SureTec Insurance Company and its co-sureties, reinsurers, and other sureties through whom it may procure the execution of bonds and undertaking, herein collectively called the "Company."

**Witnesseth:**

**WHEREAS**, in the transaction of business certain bonds, guaranties, obligations of suretyship, undertakings and other writings obligatory in the nature of a bond or ancillary thereto (all such bonds, guaranties, obligations, and undertakings being collectively referred to herein as "bonds") may have heretofore been, and may hereafter be, required by, for, or on behalf of the Indemnitors or any one or more of the Indemnitors in whose bonds the Indemnitors do hereby affirm to have a substantial material and beneficial interest, and as a condition precedent to the execution of any and all such bonds, the Company requires execution of this General Agreement of Indemnity.

**NOW, THEREFORE**, in consideration of these premises, and of the execution or continuance of such bonds, and for other good and valuable consideration, the Indemnitors do, for themselves, their heirs, executors, administrators, personal representatives, assigns and any and all of their wholly or partially owned subsidiary companies, subsidiaries of subsidiaries, proprietorships, divisions or affiliates, partnerships, joint ventures or co-ventures in which any of the undersigned Indemnitors, have any interest or participation, whether open or silent, now in existence or which may hereafter be created or acquired, jointly and severally agree with, and make this General Agreement of Indemnity in favor of, and for the benefit of, the Company as follows:

1.    The Indemnitors shall pay to the Company, at its home office at 952 Echo Lane, Suite 450, in the City of Houston, Harris County, Texas, premiums, fees, and charges at the rates and at the times specified by Company, and will continue to pay the same when such premium, fee, or charge is annual and when additional premiums, fees, or charges are due for changes to underlying bonded obligations. Premiums are due and payable upon execution of bonds and upon renewal thereof. The Indemnitors shall be liable for additional and renewal premiums hereunder until the Company shall be discharged and released from any and all liability and responsibility upon and from each such bond or liability arising therefrom, and until the Indemnitors shall deliver to the Company at its home office in Houston, Texas, competent written evidence, satisfactory to the Company, of the Company's discharge from all liability on such bond or bonds. The Indemnitors shall also pay to Company, its affiliates, or to third parties, as the case may be, all underwriting, inspection, funds disbursement, escrow, special handling, filing, recording, and similar fees required or charged in connection with the underwriting, execution, or administration of any bonds.

2.    The Indemnitors shall indemnify and save the Company harmless from and against every claim, demand, liability, cost, loss, charge, suit, judgment, award, fine, penalty, and expense which the Company may pay, suffer, or incur in consequence of having executed, delivered, or procured the execution of such bonds, or any renewals or continuations thereof or substitutes therefor, including, but not limited to, court costs, mediation and facilitation fees and expenses, fees and expenses of attorneys, accountants, adjusters, inspectors, experts, and consultants, whether on salary, retainer, in-house, or otherwise, and the expense of determining liability, or procuring, or attempting to procure, release from liability, or in bringing suit or claim to enforce the obligation of any of the Indemnitors under this Agreement.   In the event the Company deems it necessary to respond to, make an investigation of, or settle, defend, or compromise a claim, demand or suit, the Indemnitors acknowledge and agree that all expense attendant to such response, investigation, settlement, defense, and compromise, whether incurred

internally or otherwise, and whether or not Indemnitor has offered to defend Company, is included as an indemnified expense and shall be paid by Indemnitors to Company on demand. In the event of payments by the Company, a voucher, affidavit, bordereaux or other evidence of such payments are prima facie evidence of the propriety thereof, and of the Indemnitors' liability therefor to the Company. In the event that Indemnitors are covered by any insurance policy or policies for any matter or claim that may be brought against Company, or for which Company may have any exposure or liability, the coverage under such insurance policy or policies shall be primary. Indemnitors waive any and all claims of subrogation against Company.

3.     Payment of loss or deposit of collateral shall be made to the Company by the Indemnitors as soon as liability exists or is asserted against the Company, whether or not the Company shall have made any payment therefor. Such payment shall be equal to the larger of (a) the amount of any reserve set by the Company, or (b) such amount as the Company, in its sole judgment, shall deem sufficient to protect it from loss.  The Company shall have the right to use the deposit, or any part thereof, in payment or settlement of any liability, loss or expense for which the Indemnitors would be obligated to indemnify the Company under the terms of this Agreement.  If for any reason the Company shall deem it necessary to increase a reserve to cover any possible liability or loss, the Indemnitors will deposit with the Company, immediately upon demand, a sum of money equal to any increase thereof as collateral security to the Company for such liability or loss. Indemnitors acknowledge that there is no adequate remedy at law for the breach of this provision and that payment of damages would not adequately compensate Company for such breach. Accordingly, Company may compel Indemnitors to specifically perform these obligations pursuant to applicable law.

4.     The Indemnitors immediately upon becoming aware of any demand, notice, or proceeding preliminary to determining or fixing any liability, with which the Company may be subsequently charged under any such bond, shall notify the Company thereof in writing at its home office, 952 Echo Lane, Suite 450, Houston, Texas, 77024.

5.     The Company shall have the right to settle, compromise, prosecute, or defend any claim or action brought against the Company or any Indemnitor upon or relating to any bond or by any Indemnitor against a third party relating to any bonds or any interests granted herein. Company's decision with respect thereto shall be binding and conclusive upon the Indemnitors.

6.     The Company, and its designated agents, consultants, and representatives, shall at any and all reasonable times, have free access to the books and records of the Indemnitors. Indemnitors consent to Company's requests for, and use of, consumer credit reports and investigative consumer credit reports with respect to any of the individual Indemnitors. Any bank, depository, creditor, credit bureau or credit reporting agency, obligee of a bond, subcontractor, material supplier, claimant,   prior surety, agent, or other person, firm or corporation possessing records or having information concerning the financial affairs and records or having information concerning the current or past financial affairs and operations of the Indemnitors is hereby authorized to furnish to the Company and its representatives, consultants, and affiliates, any such records or information requested by the Company. Indemnitors will execute, as requested by the Company, any additional documents necessary to cause the release and production of records and information authorized by this paragraph.

7.     In the event the Indemnitors, or any of them, shall (a) fail to pay any premium or underwriting charge or fee when due, or (b) fail to pay any amounts due hereunder,  (c) abandon, forfeit or breach a bonded contract or obligation, or have been alleged to have abandoned, forfeited, or breached any such contract,  (d) breach or be declared to have breached any bond issued by or at the request of Company, (e) have proceedings instituted against them, or any them, alleging that they are insolvent, or for the appointment of a receiver or trustee for the benefit of creditors, whether such Indemnitor(s) are insolvent or not, (f) have proceedings instituted against them, or any of them, the effect of which may be to deprive any of them of the use of any part of the equipment, funds, or assets used in connection with the work under bonded contract so as to hinder, delay or impede the normal satisfactory progress of the work,  (g) fail to cooperate with Company in the investigation of claims made or threatened to be made against Company, or (h) the Company shall become insecure or unsure of the Indemnitors' willingness or ability to perform their obligations hereunder, and irrespective of whether Indemnitors have been declared in default under any bond or undertaking, the Company shall have the right, but not the obligation, to: (x) take possession of the work and under any other contract in connection with which the Company has given its bond or bonds within the purview of this Agreement and, at the expense of the Indemnitors, to continue performance of the contract(s), or cause,  consent to, or arrange for, the completion thereof, (y) direct the obligees under such bonds to hold or forward contract proceeds and retainages due, earned, or to become due or earned, under the contract to the Company or its designees for disbursement or offset against other obligations of Indemnitors to

Company as it deems necessary or advisable, and/or (z) take such other and further action as the Company may, in its sole discretion, deem advisable, prudent, or necessary.

8.    Indemnitors shall pay interest on, and interest shall accrue on, all unpaid indebtedness of Indemnitors to Company at an interest rate equal to the lesser of: (a) eighteen percent (18%) per annum or (b) the Highest Lawful Rate (as such term is defined below). Interest on unpaid premiums shall not begin to accrue, however, until 45 days following the date of execution of a bond, or the renewal of a bond, by Company or its attorney-in-fact. Notwithstanding any other provision herein, the aggregate interest rate charged under this Agreement, including all charges, fees, or other payments in connection herewith or therewith deemed in the nature of interest under applicable law shall not exceed the Highest Lawful Rate. It is the intention of Company and Indemnitors to conform strictly to any applicable usury laws. Accordingly, if Company contracts for, charges, or receives any consideration which constitutes interest in excess of the Highest Lawful Rate, then any such excess shall be canceled automatically and, if previously paid, shall at Company's option be applied to the outstanding principal balance due hereunder or be refunded to Indemnitors. As used in this paragraph, the term "Highest Lawful Rate" means the maximum lawful interest rate, if any, that at any time or from time to time may be contracted for, charged, or received under the laws applicable to Company which are presently in effect or, to the extent allowed by law, under such applicable laws which may hereafter be in effect and which allow a higher maximum non-usurious interest rate than applicable laws now allow.

9.    As further security, the Indemnitors hereby grant to the Company a security interest in, and lien on, all of their equipment, machinery, plant, inventory, insurance policies, vehicles, tools, real property, and materials, as well as sums, claims, causes of action, accounts, accounts receivable, and rights due or to become due in connection with any contract, whether or not bonded by Company. This Agreement shall constitute a Security Agreement and a Financing Statement for the benefit of the Company in accordance with the Uniform Commercial Code and all similar statutes and a deed of trust or mortgage, as applicable, and may be filed by the Company without notice to perfect the security interests and liens granted herein. The Company may add schedules, property descriptions, and other documents to this Agreement as necessary and may sign a copy of this Agreement, or copy thereof, where required for filing as a Financing Statement or to otherwise perfect any interest granted herein. For the purpose of recording this Agreement, a photocopy of this Agreement acknowledged by a representative of Company before a Notary Public as being a true copy hereof shall be regarded as an original. The grant of the security interest and lien position, and any efforts to perfect same, are in addition to, and not in abrogation of, substitution for, nor restriction of any and all rights which the Company has or may have under this Agreement, at law, or in equity.

10.    The Indemnitors hereby irrevocably nominate, constitute, appoint and designate the Company and its designees as their attorney-in-fact with the right, power, and authority, but not the obligation, to exercise all of the rights and powers of the Indemnitors assigned, transferred, and set over to the Company in this Agreement, and in the name of the Indemnitors, or any one or more of them, to make, endorse, execute, sign, and deliver any and all additional or other instruments and writings, including, but not limited to, assignments, financing statements, documents, instruments, checks, drafts, deposit, ACH, and wire transfer directives and orders, change of address notices, liens and releases thereof, applications, certificates, draw requests, orders, releases, and papers deemed necessary or desirable by the Company, and to collect the proceeds thereof, in order to give full effect not only to the intent and meaning of the obligations assumed, and the agreements made, by Indemnitors hereunder, and the assignments and conveyances made herein, but also the full protection intended to be herein given to the Company under all other provisions of this Agreement. The Indemnitors hereby ratify and confirm all acts and actions taken and done by the Company and its designees as such attorney-in-fact. The powers and authority granted herein shall not be affected by the disability or incapacity of the Indemnitors or any one or more of them.

11.    The Indemnitors understand and agree that the circumstances, financial or otherwise, of any one or more of the Indemnitors may change substantially over the period of this agreement and the Indemnitors therefore agree to keep themselves fully informed as to the business activities and financial affairs of any one or more of the Indemnitors and of the risks being engaged in so that the Indemnitors are always aware of the risks of hazards in continuing to act as Indemnitors. The Indemnitors hereby expressly waive any requirement for notice from the Company of any fact or information coming to the notice or knowledge of the Company affecting its rights or the rights or liabilities of the Indemnitors.

12.    In the event of any claim or demand being made by the Company against the Indemnitors, or any one of more of the parties so designated, by reason of the execution of a bond or bonds, the Company is hereby expressly authorized to settle or compromise with any one or more of the Indemnitors individually, and without reference to the others, and such settlement or composition shall not affect the liability of any of the others and the Indemnitors

hereby expressly waive the right to be discharged by reason of the release of one or more of the Indemnitors, and hereby consent to any settlement or compromise that may hereafter be made.

13. The Company is not required, by reason of any application for a bond or by reason of having issued a previous bond, bid bond, "bondability letter," or otherwise, to execute or procure the execution of or participate in the execution or renewal of any further bond or bonds. The Company, at its sole option and without assigning any reason therefor, may decline to execute or to participate in or procure the execution or renewal of any bond without impairing the validity of this Agreement or incurring any liability to Indemnitors. Any promise or agreement by Company or its representatives to issue or execute any bond or undertaking in the future shall be revocable at will by Company unless and until such bond or undertaking is properly authorized and issued by Company. Company's failure or refusal to issue final bonds after bid bonds or other proposal guarantees have been issued shall not excuse Indemnitors from their liability to indemnify and hold Company harmless from any loss or claim against such bid bond or proposal guarantee, nor shall such failure or refusal give rise to any cause of action in favor of Indemnitors for alleged losses of anticipated profits or other benefits.

14. **The Indemnitors acknowledge and agree this it is their sole responsibility to provide the proper forms for the bonds to be executed by the Company, and to review and approve any bond and undertaking executed by the Company on its own forms. Neither the Company, nor its agents, shall have any liability whatsoever to the Indemnitors if they shall fail to furnish the Company with the proper forms or to object to forms furnished by the Company.  It shall be the sole responsibility of the Indemnitors to review all bond forms executed by the Company for appropriateness and for any errors or omissions prior to delivery of the bonds to an obligee. The Company and its agents shall have no liability to the Indemnitors on account of any negligence (whether sole or concurrent), inadvertence, error or omission in the preparation, execution, or delivery of any bonds. Prior to requesting that the Company issue any bond, the Indemnitors shall obtain confirmation that the proposed obligee on the bond will accept the Company as surety on the proposed bond, and neither the Company, nor its agents, shall have any liability whatsoever if any obligee refuses, for whatever reason, to accept the Company as surety on any bond. The Indemnitors agree that the Indemnitors shall be solely responsible for arranging, independent of the Company, for the timely delivery of any bond to the obligee. The Company and its agents shall have no liability to the Indemnitors if any bond is not timely delivered to any obligee for any reason whatsoever, including any negligent acts or omissions on the part of the Company or its agents.**

15. **The Indemnitors agree that the  Company's liability, if any, to the Indemnitors, or to any of them, on account of any acts or omissions by the Company or any of its consultants, affiliates, agents, or representatives (whether such acts or omissions arise in tort, negligence, trespass, breach of contract, by statute, or at law) arising out of or relating to any bonds or any other conduct of the Company or its agents, representatives, employees, attorneys, attorneys-in-fact, adjustors, or consultants is hereby expressly limited to an amount not to exceed the premium actually paid to the Company for such bond.**

16. If the Company procures the execution of such bonds by or for other companies, including specifically, but without limitation, **American Contractors Indemnity Company, Texas Bonding Company,** or **U.S. Specialty Insurance Company,** or executes such bonds with co-sureties, or reinsures any portions of such bonds with reinsuring companies, then all the terms and conditions of this Agreement shall apply and operate for the benefit of, and may be enforced by, such other companies, co-sureties and reinsurers as their interests may appear. A written statement, signed by an officer of SureTec Insurance Company, attached to a copy of this Agreement before or after execution hereof by Indemnitors, confirming procurement of execution, co-surety, or reinsurance by such other companies, shall be prima facie evidence of the rights of such other companies hereunder and shall be binding on Indemnitors to the same extent as if such companies were named as the Company herein in the first instance. Any action to enforce this Agreement may be brought in the name of such other companies without the necessity of joinder of Company.

17. The liability of the Indemnitors hereunder shall not be affected by the failure of the Indemnitors, or any one or more of them, to sign any contract,  bond, rider, undertaking, or this Agreement, nor by any claim that other indemnity, security, or collateral was to have been obtained, nor by the release of any indemnity, nor the return or exchange of any collateral, nor the forbearance or neglect in the enforcement of any requirements relating to the disbursement, administration and control or contract proceeds, that may have been obtained or occurred. If any party signing this Agreement is not bound for any reason, this Agreement shall still be binding upon each and every other Indemnitor.  The Company may, but shall not be obligated to, accept other and further Agreements of Indemnity from Indemnitors or others, and may allow Indemnitors or additional indemnitors to execute Agreements of

Indemnity in multiple counterparts. It is understood and agreed that the execution of multiple, successive, replacement, or additional Agreements of Indemnity or the release or partial release or the capping of liability of some of the Indemnitors shall not operate to release Indemnitors. Indemnitors waive any and all claims that such other or additional Agreements of Indemnity constitute novations, substitutions or releases of the Indemnitors.

18.   This Agreement may be terminated by the Indemnitors, or any one or more of the parties so designated, only upon written notice, of not less than thirty (30) days, sent by registered mail to the home office of the Company, 952 Echo Lane, Suite 450, Houston, Harris County, Texas 77024. In no event, however, shall any such termination notice operate to modify, bar, discharge, limit, affect or impair the liability of the party sending such termination notice, with respect to, upon or by reason of any and all such bonds executed prior to a date thirty (30) days after the date of the Company's actual receipt of such notice in its home office as aforesaid. Any such termination notice shall not operate to modify, bar, discharge, limit, affect or impair the liability of non-terminating Indemnitors, with respect to, upon or by reason of any and all bonds issued by Company.

19.   The Indemnitors understand and agree that this document is a continuing agreement to indemnify over an indefinite period and that bonds issued by the Company may vary widely in amounts and nature and that the Indemnitors will be bound by all such bonds, and any changes in the amounts of such bonds or underlying obligations, whether or not Company consents to such changes. The Indemnitors shall continue to remain bound under the terms of the Agreement even though the Company may from time to time, heretofore or hereafter, with or without notice to or knowledge of the Indemnitors, accept or release other agreements of indemnity, collateral, or conditions in connection with the procurement of bonds, from Indemnitors or others, it being expressly understood and agreed by the Indemnitors that any and all other rights which the Company may have or acquire against the Indemnitors or others under any such other or additional agreements of indemnity or collateral shall be in addition to, and not in lieu of, the rights afforded Company under this Agreement.

20.  This General Agreement of Indemnity is governed by, and shall be interpreted in accordance with, the laws of the State of Texas without giving effect to any law or rule that would cause the laws of any jurisdiction other than the State of Texas to be applied. All of your duties and obligations under this Agreement are due, payable, and performable in Houston, Harris County, Texas. If any provision or provisions, or portion thereof, of this Agreement shall be void or unenforceable under the laws of any jurisdiction governing its construction, this Agreement shall not be void or vitiated thereby, but shall be construed and enforced with the same effect as though such provision or provisions, or portion thereof, were omitted and the other provisions shall remain in full force and effect.

21.  This General Agreement of Indemnity applies to bonds written by or at the request of  Company as surety, co-surety, or reinsurer on behalf of the undersigned Indemnitors, or any of them,  and any and all of their wholly or partially owned subsidiary companies, subsidiaries of subsidiaries, proprietorships, divisions or affiliates, partnerships, joint ventures or co-ventures in which any of the undersigned Indemnitors, their wholly or partially owned subsidiary companies, subsidiaries of subsidiaries, divisions, proprietorships, or affiliates, have any interest or participation whether open or silent; jointly, severally, or in any combination with each other; now in existence or which may hereafter be created or acquired.

22.   The Indemnitors hereby warrant and represent the accuracy of all financial statements submitted or to be submitted to the Company, and covenant and agree that the assets described therein are dedicated to and imposed with a trust for the purpose of this Agreement of Indemnity and for the benefit of the Company.

23   Except where prohibited by law, Indemnitors hereby waive all right to claim any property, including homestead, as exempt from levy, execution, sale or other legal process secured or requested by Surety under the laws of the United States or of any state or province or of any other government.

24.   All monies due and to become due under any contract or contracts covered by bonds issued by the Company are trust funds, whether in the possession of the Indemnitors or otherwise, for the benefit of and for payment of all obligations for which the Company would be liable under any of said bonds, which said trust also inures to the benefit of the Company for any liability or loss it may have or sustain under any of said bonds, and this Agreement shall constitute notice of such trust.

25.  **THE UNDERSIGNED INDEMNITORS REPRESENT TO THE COMPANY THAT THEY HAVE CAREFULLY READ THIS ENTIRE AGREEMENT CONSISTING OF THIS PAGE, THE PRECEDING PAGES, AND ANY PAGES WHICH FOLLOW, AND THAT THERE ARE NO OTHER PROMISES, AGREEMENTS OR UNDERSTANDINGS WHICH IN ANY WAY LESSEN OR MODIFY THE OBLIGATIONS SET FORTH HEREIN. THE UNDERSIGNED**

INDEMNITORS RECOGNIZE THAT THE ABOVE AND FOREGOING AGREEMENTS INCLUDE BROAD RIGHTS IN FAVOR OF COMPANY AND LIMITATIONS ON THE LIABILITY OF COMPANY AND ITS AGENTS FOR CERTAIN ACTS AND OMISSIONS, INCLUDING NEGLIGENT ACTS AND OMISSIONS. THE EFFECTIVE DATE OF THIS AGREEMENT OF INDEMNITY SHALL BE THE DAY AND YEAR FIRST ABOVE WRITTEN, REGARDLESS OF THE DATE OR DATES ON WHICH THE UNDERSIGNED MAY EXECUTE THIS AGREEMENT AND REGARDLESS OF WHETHER BONDS WERE ISSUED BY THE COMPANY BEFORE OR AFTER THE EXECUTION OR EFFECTIVE DATE OF THIS AGREEMENT. THE COMPANY'S ACCEPTANCE OF THIS AGREEMENT SHALL BE PRESUMED AND IS DEEMED EFFECTIVE BY ITS RECEIPT OF THIS AGREEMENT, ITS RELIANCE HEREON, OR BY ITS EXECUTION OF ANY BOND OR UNDERTAKING FOR INDEMNITORS OR ANY OF THEM.

### Corporation or Partnership

Name:   **R. Hassell Holding Companies, Inc.**

By:   _____
              Signature

Printed Name & Title:
**Royce J. Hassell, President**

**3550 Willow Bend, Houston, TX 77054**
Street or P.O. Box    City              State/Zip

### Corporation or Partnership

Name:   **R. Hassell & Co, Inc.**

By:   _____
              Signature

Printed Name & Title:
**Royce J. Hassell, President**

**3550 Willow Bend, Houston, TX 77054**
Street or P.O. Box    City              State/Zip

### LLC

Name:   **G. R. Group Resources, LLC**

By:   _____
              Signature

Printed Name & Title:
**Royce J. Hassell, President**

**3550 Willow Bend, Houston, TX 77054**
Street or P.O. Box    City              State/Zip

### Corporation or Partnership

Name:   **R. Hassell Builders, Inc.**

By:   _____
              Signature

Printed Name & Title:
**Royce J. Hassell, President**

**3550 Willow Bend, Houston, TX 77054**
Street or P.O. Box    City              State/Zip

**Individual**

Name: **Royce J. Hassell**

By: _____
                    Signature

**7907 S. Rice Blvd., Bellaire, TX 77401**
Street or P.O. Box    City              State/Zip

**Individual**

Name: **Silvia T. Hassell** _____

By: _____
                    Signature

**7907 S. Rice Blvd., Bellaire, TX 77401**
Street or P.O. Box    City              State/Zip

# Individual Notary Acknowledgment

**State of** _____ §
                                       §
**County of** _____ §

On this _____ day of _____ 20 ___ , _____ before me personally appeared

**Royce J. Hassell  and Silvia T. Hassell** _____

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within and foregoing instrument, and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument, the person(s) executed the instrument.

WITNESS my hand and official seal

                                       _____
                                       Notary Public
                                       Commission Expires _____

# Corporate Notary Acknowledgment

**State of** _____   §
                                        §
**County of** _____   §

On this _____   day of _____   20____ ,   before me personally appeared

**Royce J. Hassell**

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person whose name is
subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her authorized
capacity as the   **President** _____   of   **R. Hassell Holding Companies, Inc.** _____ , said
corporation, and that by his/her signature on the instrument the person, or the entity upon behalf of which the person
acted, executed the instrument.
WITNESS my hand and official seal

                                        _____
                                        Notary Public
                                        Commission Expires

# Corporate Notary Acknowledgment

**State of** _____   §
                                        §
**County of** _____   §

On this _____   day of _____   20____ ,   before me personally appeared

**Royce J. Hassell**

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person whose name is
subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her authorized
capacity as the   **President** _____   of   **R. Hassell & Co, Inc.** _____ , said
corporation, and that by his/her signature on the instrument the person, or the entity upon behalf of which the person
acted, executed the instrument.
WITNESS my hand and official seal

                                        _____
                                        Notary Public
                                        Commission Expires

## Corporate Notary Acknowledgment

State of _____ §
                                  §
County of _____ §

On this _____ day of _____ 20 ___ , _____ before me personally appeared

**Royce J. Hassell**
_____

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person whose name is
subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her authorized
capacity as the ____**President**____ of __R. Hassell Builders, Inc._____ , said
corporation, and that by his/her signature on the instrument the person, or the entity upon behalf of which the person
acted, executed the instrument.
WITNESS my hand and official seal

                                    _____
                                    Notary Public
                                    Commission Expires _____

## LLC Notary Acknowledgment

State of _____ §
                                  §
County of _____ §

On this _____ day of _____ 20 ___ , _____ before me personally appeared

**Royce J. Hassell**
_____

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person whose name is
subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her authorized
capacity as the ____**President**____ of __G. R. Group Resources, LLC_____ , said
corporation, and that by his/her signature on the instrument the person, or the entity upon behalf of which the person
acted, executed the instrument.
WITNESS my hand and official seal

                                    _____
                                    Notary Public
                                    Commission Expires _____

**Schanette Holtke**

| | |
|---|---|
| **From:** | Schanette Holtke [schanette@bondproinc.com] |
| **Sent:** | 2/8/2008 3:02 PM |
| **To:** | 'Bill King' |
| **Cc:** | 'Robert Overbey' |
| **Subject:** | R. Hassell |

**Importance:**     High

Bill,

Royce accepts the terms of SureTec's offer for surety bonding.  Please forward the indemnity
agreement at your earliest convenience.  Once the indemnity agreement has been signed, we would
like to set up another meeting with R. Hassell & SureTec.

If you have any questions, please contact our office.  Have a good weekend.

Regards,

Schanette L. Holtke, CISR CIC
Assistant Vice President
BondPro, Inc.
Commercial Insurance/Surety Bonds
Ph: 713-355-1000
Fx: 713-355-1001
Cell: 713-416-5745
Visit our Website: www.bondproinc.com <http://www.bondproinc.com/>

**Schanette Holtke**

| | |
|---|---|
| **From:** | Robert Overbey [robert@bondproinc.com] |
| **Sent:** | 2/6/2008 11:57 AM |
| **To:** | Conrcrete@aol.com |
| **Cc:** | 'robert' |
| **Subject:** | FW: R. Hassell - PLEASE READ THIS ONE! |

Royce,

Below is the response from SureTec.  There is a good chance we will be able to get a favorable quote/bonding line by Friday.

Schanette L. Holtke for
Robert M. Overbey, Jr.
BondPro, Inc.
713-355-1000 Phone
713-355-1001 Fax


From: Bill King [mailto:bking@suretec.com]
Sent: Wednesday, February 06, 2008 11:44 AM
To: Robert Overbey
Subject: RE: R. Hassell

Robert while I am at a conference I have Christy inputting the data into the system so we can review and make a proposal to you.  It will be this week but may be as late as Friday.

-----Original Message-----
From:      Robert Overbey [mailto:robert@bondproinc.com]
Sent: Wednesday, February 06, 2008 7:10 AM
To:   Bill King
Subject:   R. Hassell

Hi Bill:

I wanted to check in with you and see how you were coming on R. Hassell.

Thanks for your consideration and I look forward to hearing from you.

Robert M. Overbey, Jr.
President
BondPro, Inc.
8 Greenway Plaza, Suite 814
Houston, Texas 77046
713-355-1000 Phone
713-355-1001 Fax
robert@bondproinc.com
www.bondproinc.com

1