

*Surety Bonds · Insurance*

August 15, 2008

Mr. Bill King
President
SureTec Insurance Company
952 Echo Lane, Suite 450
Houston TX 77024

RE:  R. HASSELL HOLDING COMPANIES, INC.
       R. HASSELL & CO., INC.
       R. HASSELL BUILDERS, INC.

Dear Bill:

In order to make sure that your files are currently maintained, I have enclosed for your review R. Hassell's 9-month statement, reflective through 6/30/08.

On analysis, please note the following:

- Working Capital – approximately $240,000
- Gross Profit – 9% at $1,789,241 on a volume of $20,436,649
- Net Profit – ($237,984.81) – Per Royce, this is primarily due to a lack of volume on the R. Hassell & Co., Inc. side.  R. Hassell Builders actually is realizing $700,000 in profit.   It is Royce's assertion that the company will be profitable by year-end.
- Overhead is at 10.1%.
- The Woodlands projects as a whole are only reflecting a 7% gross margin.
- Last quarter - $5 million in billings.
- General and Administrative expenses, per Royce, are on target for $2.7 million this fiscal year.

Thanks and please let me know if you have any questions or comments.

Sincerely,

Robert M. Overbey, Jr.
President

RMO
encl

**Exhibit
Y**

6/19/8

{ Royce Hassell  – R Hassell
Bill King  – SureTec
R mo  – Bod fur mr

· nd oCR  $150m  debt – (Interco. receivable?)
· Civil market - has declined significantly
        ① Woodlands representatives
              ↳ Wood+hrest Development
                        Virgil Yoakum
        ② RM – sporadic – to pick up by 4th Gvantes
        ③ Centers sporadic

· possible bids forthcoming – (due to Bellaine / Aquatic)
        may be more to performing Blue Ridai Co.

· possible JV / subk – R. Hassell


    from the bond Joe T. Hassell
> 3 jobs – Baytown
            need to increase volume

· structured to do civil; how does your model
  work to get the gc work?


– Co. absorbs all G&A Ex person
– Gc works would be in Co. name  – sot 4%
                                        %
– Gc work/ 15% – split w/ Hassell – have not decided

*Page 2*

- aquatic center / pool
- duration / completion time –
  - $3m or under – 1year (or less)
  - (open by Memorial Day)
- @ present – $5m CTC
  incl. ① Vista Bank
  ② Lakeview Business Park
- Layer capacity – CTVS / pay projects – NEED!
- look @ 5/31/8 PK
- house in Bellaire – off the market for now ..:
- Vista has been requesting R. Harrell's banking business
  by Vista or Trustmark

- Steve recommends — "Reporting only on R. Hassell Co.: not Holding + retain the benefits of the suspended loss carryover related to Holding. (... push for this before going to the trouble of the spin-off." (Does this refer to the # 2.1 mm loss @ 9/30/17?)

- Re: 6 month — interim F/s — review or audit.

- If we go with Steve's recommendation to only report / audit RHC, then the surety will still want a F/s on RHB — primarily to assess @ P/2 @ progress on bonded projects @ A/R collection @ lawsuits pending, etc.

- Look @ RHB 1/31/18 F's — There are 2 statements. Which is correct?

- Note — would have to deduct #1.4m from R Hassell Co Assets & S/E, giving a deficit w/c position or only $600m in equity                                    (also affiliates)

Can do review / audit on Co — @ 9/30/17
(fairly early — w/in a week)
left w/ #2mm in S/E / even after b's

- Instead of consolidation, deconsolidate

- audit on CO @ 9/30/7

- @ March 31, 2008 review @ RHC
  w/ the hope being

Alan:
re $1.3 m owed by RHB to RHC
  · $300 m FK paid to RHB
  · down to $1 mm
  · $437 mm → to RHC to RHH to RHC to
                    RHB to RHC
  · reduce to $600 m w/ Bldr pmt
  · remaining

  $ 1.6 m WC
  $ 1 mm N/W

Trustmark — ?
  new job? give to CO
  but keep flda's document

Mid - June - RHB - all work done

certify 9/30/2 stand alone
            + certifialle
            + starting point —

# Robert Overbey

**From:** Conrcrete@aol.com
**Sent:** Tuesday, February 12, 2008 3:52 PM
**To:** Robert@bondproinc.com
**Subject:** From Royce

I will leave the timing up to you but this is what I want to approach Mr. King with:

The Holding company (RHHC) statement is made up of two separate company financials, R. Hassell & Co., Inc. (the original company started in 1991) and R. Hassell Builders. I had the two formed seperately to limit the liability and exposure. However, there came a point in 2000 that Steve Ligon said that there were so many inter-party transactions between the two (RHC did all the site work for RHB) that we should really form a holding company and he would therefore audit the one company RHHC.

Today, that is not working well. If you look at RHB's financial (see attached January draft) they have been the loser. Although they have been a good revenue stream, we have not been able to make much profit because of our overhead (that's since the Frito Lay worked ended—which was very profitable) and therefore we intend on shutting that company down..

Obviously, with Builders weighing Company down I have asked Steve Ligon, our CPA, how we might reverse what we did with the Holding Company and let RHC stand on its own. He says it is possible and in fact he recommends it. He would then report (audit) only on Company.

RHC has been profitable and has a good financials (see attached January draft) only losing last year because of the rain. So with Steve Ligon's input, we have decided to de-consolidate. That can be done either by:

Steve Ligon explains:

"What you are talking about is a tax free spin-off in which we would take Company and spin it off to you so that you would be the direct owner of Company and Holding Company would only own Builders. We would then have a completely separated company not attached to Builders. We could do that tax free and you would take the suspended loss carryovers of Holding that attach to Company. In order to do that since Holding company does not have any business activity other than its investment in Company and Builders, the only asset it should have on its books are those investments plus a minimal amount of cash just to keep bank account open for transactions. Alan and I would need to get together to get Holding Company's books cleaned up before doing this. This would not effect the financial statements of Company since the only thing that has changed is the owner. We could liquidate Builders and Holding company after all work is done and everything is paid and collected. The only problem is that you would not be able to apply suspended losses related to Builders at 9/30/07 to offset future taxable income generated by Company which you would be able to do if they remain consolidated. In addition, the transaction would be complex from an accounting standpoint to some extent.

I am of the opinion that we can accomplish the same effect by simply reporting only on Company and not Holding Company and retain the benefits of the suspended loss carryover related to Holding Company. I would definitely push for this with the bonding company before going to the trouble of the spin-off."

Of course there are some issues that we will need to work through, one being to clear up the payable to RHC from RHB. Steve's recommendations is:

"Company takes cash and borrows on the line to pay back RHH the net $437,093 it owes. You invest the $300,000 in RHH. RHH takes the $737, 093 and invests this in RHB. RHB uses this to pay on debt to RHC. This would reduce the debt to $571,231. RHC Takes an installment note with 4% interest from RHB for remainder to paid back in 24-36 months. You would either have to contribute cash to RHB to cover the note payments or keep running jobs through RHB to pay this off. I believe you told me

*handwritten annotations:*
ok ? Bldrs assets ?
Dormant ?
how to repair until
all work in complett ?
737
571
13 08
where is this on P/S ?
personally
RHB owes RHC $1.3 my

2/13/2008

that RHB should generate $300,000 in profits just on the work it has now. If this is correct, that money could go to paying down on the debt." The balance then being minimal.
I have made all of Steve Ligon's recommended changes and have asked him to review them and he has. Attached you will find the revised RHHC, RHB & RHC financials to reflect such. I want to have him either perform a Review or Audit, whichever SureTec requires, at the 6 month interval, so that we may move forward with a more stable financial and true picture of R. Hassell.

I would like, if necessary, for Bill, Steve, me and you to discuss this in detail so that we might go forward. Let me know.

Royce

---

The year's hottest artists on the red carpet at the Grammy Awards. AOL Music takes you there.

2/13/2008

# R. HASSELL BUILDERS, INC.
## BALANCE SHEET

January 31, 2008

ASSETS

### CURRENT ASSETS

Cash                                                                    $34,411.00

| | | |
|---|---|---|
| A/R - Trade | $1,171,444.16 | |
| A/R - Retainage | $370,019.31 | |
| A/R - Employees | $7,317.71 | |
| A/R - Officers | $0.00 | |
| Affiliate - RHH, INC. | ($609,142.45) | |
| Total Accounts Receivable | | $939,638.73 |

Cost in excess of billings                                             $0.00

| | | |
|---|---|---|
| Prepaid  - Insurance | $570.00 | |
| Pepaid - Rent | $0.00 | |
| Prepaid Taxes | $0.00 | |
| Deposits - Utilities | $1,700.00 | |
| Deposits - Bids & Plans | $0.00 | |
| Deposits - Miscellaneous | $0.00 | |
| Total Prepaid Expenses | | $2,270.00 |

Total Current Assets                                                   $976,319.73

### PROPERTY AND EQUIPMENT

| | | |
|---|---|---|
| Machinery & Equipment | $141,018.90 | |
| Autos & Trucks | $0.00 | |
| Furniture & Fixtures | $69,071.36 | |
| Leasehold Improvements | $278,520.90 | |
| Accumulated Depreciation | ($269,469.53) | |
| Total Property & Equipment | | $219,141.63 |

TOTAL ASSETS                                                          $1,195,461.36

# R. HASSELL BUILDERS, INC.
## BALANCE SHEET

January  31, 2008

### LIABILITIES & EQUITY

**CURRENT LIABILITIES**
| | | | |
|---|---|---|---|
| N/P - Currrent Maturity - Long Term Debt | | $0.00 | |
| | | | |
| A/P - Trade | $1,213,033.90 | | |
| Affiliate - RHC | $618,324.38 | | |
| Subcontractor Retainage | $452,993.21 | | |
| A/P - Officers | $0.00 | | |
| | -------------------------- | | |
| Total Acccounts Payable | | $2,284,351.49 | |
| | | | |
| Accrued Franchise Tax | $0.00 | | |
| Accrued Insurance | $0.00 | | |
| Accrued Payroll Taxes | $7,122.09 | | |
| Accrued Bonuses | $0.00 | | |
| | -------------------------- | | |
| Total Accrued Liabilities | | $7,122.09 | |
| | | | |
| Billings in excess of cost | | $804,930.00 | |
| | | -------------------------- | |
| Total Current Liabilities | | | $3,096,403.58 |

**OTHER LIABILITIES**
| | | | |
|---|---|---|---|
| N/P - Long Term Debt | | $0.00 | |
| Total Other Liabilities | | | $0.00 |

**STOCKHOLDER'S EQUITY**
| | | | |
|---|---|---|---|
| Common Stock | | $2,000.00 | |
| Paid in Capital | | $0.00 | |
| Treasury Stock | | $0.00 | |
| Retained Earnings | | ($1,952,871.16) | |
| Current Net Income (Loss) | | $49,928.94 | |
| | | -------------------------- | |
| Total Stockholder's Equity | | | ($1,900,942.22) |
| | | | -------------------------- |
| Total Liabilities and Equity | | | $1,195,461.36 |
| | | | =============== |

# R. HASSELL & CO., INC.
# BALANCE SHEET

### January 31, 2008

### ASSETS

**CURRENT ASSETS**

Cash                                                                    $1,557,717.47   *cash difference*

| | | |
|---|---:|---:|
| A/R - Trade | $2,443,583.57 | |
| A/R - Retainage | $798,938.55 | |
| A/R - Employees | $5,293.54 | |
| A/R - Officers | $265,986.25 | |
| Affiliate - RHB, INC. | $618,324.38 | |
| Affiliate - GR GROUP RESOUCES | $18,645.44 | |
| Total Accounts Receivable | | $4,150,771.73 |

Cost in excess of billings                                          $320,875.00

| | | |
|---|---:|---:|
| Prepaid - Insurance | $343,667.43 | |
| Pepaid - Rent | $64,000.00 | |
| Prepaid Taxes | $0.00 | |
| Deposits - Utilities | $8,550.00 | |
| Deposits - Bids & Plans | $0.00 | |
| Deposits - Miscellaneous | $7,837.02 | |
| Total Prepaid Expenses | | $424,054.45 |

Total Current Assets                                                $6,453,418.65

*1. 6 m*

**PROPERTY AND EQUIPMENT**

| | | |
|---|---:|---:|
| Machinery & Equipment | $7,525,258.60 | |
| Autos & Trucks | $591,111.54 | |
| Furniture & Fixtures | $280,803.30 | |
| Leasehold Improvements | $346,784.98 | |
| Accumulated Depreciation | ($6,105,874.97) | |

Total Property & Equipment                                      $2,638,083.45

**TOTAL ASSETS**                                                   $9,091,502.10

# R. HASSELL & CO., INC.
# BALANCE SHEET

January 31, 2008

## LIABILITIES & EQUITY

**CURRENT LIABILITIES**

| | | |
|---|---|---|
| N/P - Currrent Maturity - Long Term Debt | | $547,514.90 |
| A/P - Trade | $3,267,419.15 | |
| Subcontractor Retainage | $89,915.18 | |
| A/P - Officers | $0.00 | |
| Total Acccounts Payable | | $3,357,334.33 |
| Accrued Franchise Tax | $0.00 | |
| Accrued Insurance | $0.00 | |
| Accrued Payroll Taxes | $6,380.32 | |
| Accrued Bonuses | $0.00 | |
| Total Accrued Liabilities | | $6,380.32 |
| Billings in excess of cost | | $0.00 |
| Total Current Liabilities | | | $3,911,229.55 |

**OTHER LIABILITIES**

| | | |
|---|---|---|
| N/P - Long Term Debt | | $3,220,628.96 |
| Total Other Liabilities | | | $3,220,628.96 |

**STOCKHOLDER'S EQUITY**

| | | |
|---|---|---|
| Common Stock | | $115.00 |
| Paid in Capital | | $77,069.70 |
| Treasury Stock | | ($59,354.00) |
| Retained Earnings | | $1,760,673.67 |
| Current Net Income (Loss) | | $181,139.22 |
| Total Stockholder's Equity | | | $1,959,643.59 |
| Total Liabilities and Equity | | | $9,091,502.10 |

# R. HASSELL HOLDING COMPANIES, INC.
## BALANCE SHEET

January 31, 2008

ASSETS

### CURRENT ASSETS

| | | |
|---|---:|---:|
| Cash | | $6,779.99 |
| | | |
| A/R - Trade | $0.00 | |
| A/R - Retainage | $0.00 | |
| A/R - Employees | $0.00 | |
| A/R - Officers | $0.00 | |
| Affiliate - RHB, Inc. | $609,142.45 | |
| Total Accounts Receivable | | $609,142.45 |
| | | |
| Cost in excess of billings | | $0.00 |
| | | |
| Prepaid - Insurance | $0.00 | |
| Pepaid - Rent | $0.00 | |
| Prepaid Taxes | $3,281.00 | |
| Deposits - Utilities | $0.00 | |
| Deposits - Bids & Plans | $0.00 | |
| Deposits - Miscellaneous | $0.00 | |
| Total Prepaid Expenses | | $3,281.00 |
| | | ------------------------ |
| | | |
| Total Current Assets | | $619,203.44 |

### PROPERTY AND EQUIPMENT

| | | |
|---|---:|---:|
| Machinery & Equipment | $0.00 | |
| Autos & Trucks | $0.00 | |
| Furniture & Fixtures | $0.00 | |
| Leasehold Improvements | $0.00 | |
| Accumulated Depreciation | $0.00 | |
| | ------------------------ | |
| Total Property & Equipment | | $0.00 |
| | | ------------------------ |
| **TOTAL ASSETS** | | $619,203.44 |
| | | ================ |

# R. HASSELL HOLDING COMPANIES, INC.
# BALANCE SHEET

### January 31, 2008

### LIABILITIES & EQUITY

**CURRENT LIABILITIES**

| | | | |
|---|---|---|---|
| N/P - Currrent Maturity - Long Term Debt | | $0.00 | |
| | | | |
| A/P - Trade | $0.00 | | |
| Subcontractor Retainage | $0.00 | | |
| A/P - Officers | $0.00 | | |
| | ------------------- | | |
| Total Acccounts Payable | | $0.00 | |
| | | | |
| Accrued Franchise Tax | $0.00 | | |
| Accrued Insurance | $0.00 | | |
| Accrued Payroll Taxes | $0.00 | | |
| Accrued Bonuses | $0.00 | | |
| | ------------------- | | |
| Total Accrued Liabilities | | $0.00 | |
| | | | |
| Billings in excess of cost | | $0.00 | |
| | | ------------------- | |
| Total Current Liabilities | | | $0.00 |

**OTHER LIABILITIES**

| | | | |
|---|---|---|---|
| N/P - Long Term Debt | | $0.00 | |
| Total Other Liabilities | | | $0.00 |

**STOCKHOLDER'S EQUITY**

| | | | |
|---|---|---|---|
| Common Stock | | $1,000.00 | |
| Paid in Capital | | $900,000.00 | |
| Retained Earnings | | ($283,239.09) | |
| Current Net Income (Loss) | | $1,442.53 | |
| | | ------------------- | |
| Total Stockholder's Equity | | | $619,203.44 |
| | | | ------------------- |
| Total Liabilities and Equity | | | $619,203.44 |
| | | | ================ |

Balance Sheet
# R. HASSELL BUILDERS, I..C.
2/7/2008
For Jan, 2008

Page 1
2/7/08 11:21
Company: L0

## Assets

### Current Assets
| | | | |
|---|---|---|---|
| Cash | | 34,411.00 | |
| | | | |
| A/R - Trade | 1,171,444.16 | | |
| A/R - Retainage | 370,019.31 | | |
| A/R - Employees | 6,736.03 | | |
| A/R - Emp Child Support | 581.68 | | |
| A/R - Affiliate - RHH Inc | 80,857.55 | | |
| Total Accounts Receivable | | 1,629,638.73 | |
| | | | |
| Prepaid - Insurance | 570.00 | | |
| Deposits - Utilities | 1,700.00 | | |
| Total Prepaid Expenses | | 2,270.00 | |
| | | | |
| Total Current Assets | | | 1,666,319.73 |

### Property and Equipment
| | | |
|---|---|---|
| Machinery & Equipment | 141,018.90 | |
| Furniture & Fixtures | 69,071.36 | |
| Leasehold Improvements | 278,520.90 | |
| Accumulated Depreciation | -269,469.53 | |
| Total Property and Equipment | | 219,141.63 |
| | | |
| Total Assets | | 1,885,461.36 |

Balance Sheet
R. HASSELL BUILDERS, INC.
2/7/2008
For Jan, 2008

## Liabilities & Equity

### Current Liabilities

| | | | |
|---|---|---|---|
| A/P - Trade | 1,213,033.90 | | |
| A/P - Affiliate - RHC Inc | 1,308,324.38 | | |
| A/P - Sub. Retainage | 452,993.21 | | |
| Total Accounts Payable | | 2,974,351.49 | |
| | | | |
| Accrued Payroll Taxes | 7,122.09 | | |
| Total Accrued Liabilities | | 7,122.09 | |
| | | | |
| Billings in excess of cost | | 804,930.00 | |
| | | | |
| Total Current Liabilities | | | 3,786,403.58 |

### Stockholder's Equity

| | | | |
|---|---|---|---|
| Common Stock | 2,000.00 | | |
| Retained Earnings | -1,952,871.16 | | |
| Current Net Income | 49,928.94 | | |
| Total Stockholder's Equity | | -1,900,942.22 | |
| Total Liabilities & Equity | | 1,885,461.36 | |

Balance Sheet

R. HASSELL & CO., INC.

2/8/2008

For Jan, 2008

### Assets

**Current Assets**

Cash

| | | | |
|---|---|---|---|
| Total Cash | | 954,810.28 | 954,810.28 |

| | | |
|---|---|---|
| A/R - Trade | 2,443,583.57 | |
| A/R - Retainage | 798,938.55 | |
| A/R - Employees | 5,150.00 | |
| A/R - Emp Child Support | 143.54 | |
| A/R - Officers | 265,986.25 | |
| A/R - Affiliate - RHB Inc | 1,308,324.38 | |
| A/R - Affiliate - RHH Inc | 162,907.19 | |
| A/R - GR Group Resources | 18,645.44 | |
| Total Accounts Receivable | | 5,003,678.92 |

Cost in Excess of Billings — 320,875.00

| | | |
|---|---|---|
| Prepaid - Insurance | 343,667.43 | |
| Prepaid - Rent | 64,000.00 | |
| Deposits - Utilities | 8,550.00 | |
| Deposits - Miscellaneous | 7,837.02 | |
| Total Prepaid Expenses | | 424,054.45 |

| | |
|---|---|
| Total Current Assets | 6,703,418.65 |

**Property and Equipment**

| | | |
|---|---|---|
| Machinery & Equipment | 7,525,258.60 | |
| Autos & Trucks | 591,111.54 | |
| Furniture & Fixtures | 280,803.30 | |
| Leasehold Improvements | 346,784.98 | |
| Accumulated Depreciation | -6,105,874.97 | |
| Total Property and Equipment | | 2,638,083.45 |

| | |
|---|---|
| Total Assets | 9,341,502.10 |

Balance Sheet
R. HASSELL & CO., INC.
2/8/2008
For Jan, 2008

## Liabilities & Equity

| | | | |
|---|---|---|---|
| **Current Liabilities** | | | |
| N/P-Cur Maturity L/T Debt | | | 547,514.90 |
| | | | |
| A/P - Trade | | 3,267,419.15 | |
| A/P - Sub. Retainage | | 89,915.18 | |
| Total Accounts Payable | | | 3,357,334.33 |
| | | | |
| Accrued Payroll Taxes | | 6,380.32 | |
| Total Accrued Liabilities | | | 6,380.32 |
| | | | |
| Total Current Liabilities | | | 3,911,229.55 |
| | | | |
| **Other Liabilities** | | | |
| N/P-Long Term Debt | | 2,870,628.96 | |
| A/P - Affiliate - RHH Inc-L/T | | 600,000.00 | |
| Total Long-Term Debt | | | 3,470,628.96 |
| Total Other Liabilities | | | 3,470,628.96 |
| | | | |
| **Stockholders Equity** | | | |
| Common Stock | | | 115.00 |
| Paid in Capital | | | 77,069.70 |
| Treasury Stock | | | -59,354.00 |
| Retained Earnings | | | 1,760,673.67 |
| Current Net Income | | | 181,139.22 |
| Total Stockholders Equity | | | 1,959,643.59 |
| Total Liabilities & Equity | | | 9,341,502.10 |

@ 9/30/7  - P g E

  * · Net profit / net loss - ( $ )

  * - working capital - $

  * D/W -

@ 12/31/7 , st qtr -

  * net profit / Net loss $

  * working capital - +

· net Results - refinancing

  Summit Equipment appraised R.Hassell's
  equipment - R Hassell took these appraised
  values to Trustmark Bank, which in
  turn agreed to loan R Hassell up to 70%
  of the appraised values - purpose - generating
  working capital. The appraised values
  came to ( $2,475,000 ) from which
  Trustmark allowed a $1,100,000
  credit line.

Done because Ps a save

hm Re P/s will go

j.l.i

2. not as This is a long - term 2 year note
  $ 000,000 owed - working capital line
  $2,240,735 owed - equipment refinanced and

· need copy of Trustmark Bank 2-year note.
  of need copy →

meeting - 1/10/8

  · Rain an issue

  · presentation

  ① schedule of pouring cancellations

  ② weather report & ≈206 working days
         151 rain @/ear

  ③ Even
  w/rain - G: A sem on ...  1/10"
   what to do.

↓ / backdrop ↓

also - along w/ estimation / belief that there
would be dry days. also belief that
the job would also make # estimated
to make.

( V/s went away; did not pan out )

depends on econ

this contributed — did not salvage
profits on the job . . .

→ about all in one year . . .

→ payables current !

→ V/B — once it
stopped raining

@ 12/31/7 #846M over billing in December
4 very conservative

Steve Lyons made him
change V/s

- me/ec
Bill King

K. Hassell
Royce Hassell

BPI Inc
Robert Overbey

- Honze: Buffalo Speedway
        Pink Ribbon

- Family    Robert    } 2nd Baptist
           Walter    } Rice

- Discussed rain situation — loss of gross profit.

- Fire station/ #861 drizzner from 2006  = 500 m loss
  COH

- Frito Ley ks — (3) generated #1mm in gross profit.

- add'l profit — #75m in the Bellare Aquatic
  center. however the Cedar/ark k is doing much
  better; will realize a strong GP

- Sanctuary in Port Lavaca  ~50% complete c  

- overhead carried by the Company..

- no utility work @ #1 — subcontract any utility cable

- Debt / Reducing —

- we had discussed the debt reduction

- Equity — saved #470m per year by lay offs

↳ foremen released — civil srdes

↳ Combined @ crews — civil side

↳ totaly 5 —

4> Builder down to Royce: Terry

- Land — Trinity TX
  purchased in 1995
  2 hay barns
  2 trailers
  make $ from per year for sale / hay
                          + calves

- N/R — Stockholder — means that the
  company is owed $ ~~????~~ 248,917 from
  the stockholder — taxes are paid.

- GR — 2 container trucks owned ; haul own
  frac↲

  ↳ Ricardo, Royce — haul containers w/ capacity
    to haul frac — ~~to~~ Royce - 51%
                        Ricardo - 24.5%
                    3rd party / internal - 24.5%

                    1 truck driver
                    floor nurses

## Robert Overbey

**From:** Sauer,Richard W [RSAUER@travelers.com]
**Sent:** Wednesday, February 06, 2008 4:30 PM
**To:** Robert Overbey
**Subject:** R. Hassell Holding Companies, Inc.

Robert,

Thank you for the opportunity to consider the captioned case.  As you well know, R. Hassell has been a well-known and well-respected contractor in Houston for many years.

Unfortunately, Travelers will not be in a position to provide surety support to R. Hassell at this time.  The reasons behind our decision are largely due to the two consecutive years showing a loss, the severity of the loss last year and resulting degradation of their overall financial position.  While they have shown a solid rebound in their backlog profitability and financial results as of 12/31/07, and Mr. & Mrs. Hassell have certainly shown their resolve and support in a tangible way with their capital infusion, we are still unable to justify involvement at this time.

I would very much like to monitor the account over time.  At the very least, I would like to see their 9/30/2008 Audit and evaluate their condition after a full year at the lower overhead level.  If it would be helpful to your position with the account, I would also be open to meeting with the key players at some point to discuss the circumstances under which we might potentially be in a position to reconsider our decision.

Again, thank you very much for the opportunity.

Regards,

Richard

**Richard Sauer**
*Travelers Bond & Financial Products*
*Construction Services*

*(281) 586-4723  Direct*
*(866) 269-4987  Fax*


*\*\*\*\*\*PLEASE NOTE NEW CONTACT INFO. EFFECTIVE 2/18/2008\*\*\*\*\**

*(281) 606-8418  Direct*

*4650 Westway Park Blvd.*
*Houston, TX 77041-2036*

---

**From:** Robert Overbey [mailto:robert@bondproinc.com]
**Sent:** Tuesday, February 05, 2008 12:48 PM
**To:** Sauer,Richard W
**Subject:** FW: Paid in Capital

Richard:

Please note the attached verification of paid in capital from Royce Hassell to R. Hassell & Co., Inc.  Please advise if this improves the company's position with St. Paul/Travelers as respects securing a bond line of credit, and thanks very much for your consideration.

2/7/2008

Robert M. Overbey, Jr.
BondPro, Inc.
713-355-1000 Phone
713-355-1001 Fax

---

**From:** Conrcrete@aol.com [mailto:Conrcrete@aol.com]
**Sent:** Tuesday, February 05, 2008 11:26 AM
**To:** Robert@bondproinc.com; sligon@mlrcpa.com
**Subject:** Paid in Capital

Attached is the deposit receipt for the $300,000 paid in capital.  My wife and I have personally paid this money into the corporation and tomorrow we will be able to furnish you with the bank verification.

Royce

---

Who's never won? Biggest Grammy Award surprises of all time on AOL Music.

2/7/2008 8:54 AMRobert Overbey

## Robert Overbey

**From:**          Robert Overbey [robert@bondproinc.com]
**Sent:**           Thursday, February 07, 2008 6:46 AM
**To:**             Conrcrete@aol.com
**Cc:**             robert@bondproinc.com
**Subject:**        Re: Fwd: Hassell


Royce:
The payment of a higher rate for bonds or bringing in a third party guarantor is an
option, but I think that this should be a last resort.  I am cautiously optimistic that
SureTec will offer a proposal and I similarly believe that International Fidelity will be
a player after the six month review is provided.
Thanks for sending me Steve's response.
Robert
-----Original Message-----
From: conrcrete@aol.com

Date: Wed, 06 Feb 2008 10:38:49
To:Robert@bondproinc.com
Subject: Fwd: Hassell


Robert, this is Ligons response to moving over to R. Hassell Properties Inc.

 What about his suggestion of a paying a higher bond rate and/or the guarantor?


 -----Original Message-----
 From: Steve Ligon <sligon@mlrcpa.com>
 To: Conrcrete@aol.com
 Sent: Tue, 5 Feb 2008 5:23 pm
 Subject: RE: Hassell



In looking at the 12/31/07 balance sheet of properties, they have a net worth of $79,791
and accounts receivable from affiliated companies of $74,200.  The $74,200 should be paid
back with the remainder going into paid in capital.  Also, board resolutions would have to
be adopted prohibting further loans to affilitates to avoid consolidation under FIN 46R.
My thoughts would be to lease the equipment from Company on a month to month basis with no
debt guaranty and arms length rental agreements, however, there could be some sales tax
issues here.  Company will have to generate profit to pay notes, but you have to be real
careful that it does not put Property's assets at risk.  The cleanest approach would be to
finish contracts in Company and start new contracts in Properties.  Labor could be leased
from Company.  At some time if this becomes a permanent move, the labor would need to be
tr ansferred over.  Let's hope you don't have to do this because it will create more
accounting work and administrative work not to mention there are tax benefits by keeping
the profits in Holding co. and potential sales tax problems with leasing.  It would be
better to maybe pay a little higher bonding rate or get a guarantor on the bonds for a fee
if it is a temporary situation, which it sounds like it may be since the company is
profitable at this time.


----------------


Robert M. Overbey, Jr.                          1
BondPro, Inc.
robert@bondproinc.com
713-355-1000 phone
713-355-1001 fax
713-503-0600 cell

2/7/2008 8:54 AMRobert Overbey
```
 From: Conrcrete@aol.com <mailto:Conrcrete@aol.com>  [mailto:Conrcrete@aol.com
<mailto:Conrcrete@aol.com?> ]
 Sent: Tuesday, February 05, 2008 4:06 PM
 To: Steve Ligon
 Subject: Re: Hassell
```

If, under a worst case scenario, the surety says no because of our recent loss (although
we are financially in a good position with our payables and 1st quarter profits) and we
had to instead put the paid in capital into say R. Hassell Properties and apply for
bonding.....what advice would you offer?

```
----------------
 Who's never won? Biggest Grammy Award surprises of all time on AOL Music.
<http://music.aol.com/grammys/pictures/never-won-a-grammy?NCID=aolcmp00300000002548>

----------------
 More new features than ever. Check out the new AOL Mail
<http://o.aolcdn.com/cdn.webmail.aol.com/mailtour/aol/en-us/text.htm?
ncid=aolcmp00050000000003> !
```

Robert M. Overbey, Jr.                    2
BondPro, Inc.
robert@bondproinc.com
713-355-1000 phone
713-355-1001 fax
713-503-0600 cell

**Robert Overbey**

| | |
|---|---|
| **From:** | Fountain, Douglas [DFountain@archinsurance.com] |
| **Sent:** | Wednesday, February 06, 2008 11:42 AM |
| **To:** | Robert Overbey |
| **Subject:** | RE: Paid in Capital |

Robert,

Thank you for updating me on R. Hassell. While the $300M infusion is an obvious positive for both cash flow and the current financial situation, my other concern with R. Hassell is their ability to sustain a profit. As I indicated to you in my previous email, there has been $2.5MM in operating losses over the past two years. I would like to see the operation sustain a profit over the course of the year. I do recognize you need a more expedient response in order to restore bonding support, however, I would like to see more of a trend than just one quarter of positive earnings before further considering bonding support. I know it is not the answer you were looking for but this is our position at this time. Please feel free to contact me if you have any additional questions.

Thanks,


**Doug Fountain**
*Arch Insurance*
*2800 Post Oak, #5858*
*Houston, TX  77056*
*713-344-2234  (Direct)*
*713-344-2240 (Fax)*
*713-377-8433 (cell)*

*Dfountain@archinsurance.com*

---

**From:** Robert Overbey [mailto:robert@bondproinc.com]
**Sent:** Tuesday, February 05, 2008 12:50 PM
**To:** Fountain, Douglas
**Subject:** FW: Paid in Capital

Doug:

I have attached for your review verification of additional paid-in capital from Royce Hassell to R. Hassell & Co., Inc. Please advise if this assists in strengthening R. Hassell's position insofar as procurement of a surety line of credit from Arch is concerned.

Thanks,

Robert M. Overbey, Jr.
BondPro, Inc.
713-355-1000 Phone
713-355-1001 Fax

---

**From:** Conrcrete@aol.com [mailto:Conrcrete@aol.com]

2/6/2008

**Sent:** Tuesday, February 05, 2008 11:26 AM
**To:** Robert@bondproinc.com; sligon@mlrcpa.com
**Subject:** Paid in Capital

Attached is the deposit receipt for the $300,000 paid in capital.  My wife and I have personally paid this money into the corporation and tomorrow we will be able to furnish you with the bank verification.

Royce

---

Who's never won? Biggest Grammy Award surprises of all time on AOL Music.

---

The information contained in this e-mail message may be privileged and confidential information and is intended only for the use of the individual and/or entity identified in the alias address of this message. If the reader of this message is not the intended recipient, or an employee or agent responsible to deliver it to the intended recipient, you are hereby requested not to distribute or copy this communication. If you have received this communication in error, please notify us immediately by telephone or return e-mail and delete the original message from your system.

**Robert Overbey**

| | |
|---|---|
| **From:** | Michael Kremheller Jr. [mkremheller@IFIC.com] |
| **Sent:** | Wednesday, February 06, 2008 11:09 AM |
| **To:** | Robert Overbey |
| **Subject:** | FW: R. Hassell Holding Companies, Inc. |

Here you go.  Please keep me posted as I am interested, but cannot move right now.  If the 3/31/08 (6-month) numbers continue to be profitable, I would like to meet with the account to see if there is compatibility for bond support.

Have a good day,
Mike Kremheller
Regional Manager
Houston Contract Regional Office
International Fidelity Insurance Company
Tel (281) 681-3900 ext 14
Fax (281) 681-3903
Cell (281) 923-3065
mkremheller@ific.com

**From:** Michael Kremheller Jr.
**Sent:** Wednesday, January 23, 2008 9:59 AM
**To:** 'Robert Overbey'
**Subject:** R. Hassell Holding Companies, Inc.

Thanks for the submission.  I know this account by reputation and reviewed all the underwriting information you sent.  As discussed IFIC cannot support this account at this time even with limited capacity.  If you have any further questions, do not hesitate to call.  I look forward to working with you on the next prospect.

Have a good day,
Mike Kremheller
Regional Manager
Houston Contract Regional Office
International Fidelity Insurance Company
Tel (281) 681-3900 ext 14
Fax (281) 681-3903
Cell (281) 923-3065
mkremheller@ific.com

2/6/2008

**Robert Overbey**

| | |
|---|---|
| **From:** | Conrcrete@aol.com |
| **Sent:** | Tuesday, February 05, 2008 11:26 AM |
| **To:** | Robert@bondproinc.com; sligon@mlrcpa.com |
| **Subject:** | Paid in Capital |

Attached is the deposit receipt for the $300,000 paid in capital.  My wife and I have personally paid this money into the corporation and tomorrow we will be able to furnish you with the bank verification.

Royce

Who's never won? Biggest Grammy Award surprises of all time on AOL Music.

## Robert Overbey

| | |
|---|---|
| **From:** | Robert Overbey [robert@bondproinc.com] |
| **Sent:** | Tuesday, February 05, 2008 12:47 PM |
| **To:** | 'Bill King' |
| **Subject:** | FW: Paid in Capital |

Hi Bill:

Please note the attached verification of paid-in capital from Royce Hassell to R. Hassell Holding Co.   This should assist in increasing the company's equity as well as improving the debt to worth ratio.

Please advise of SureTec's position and thanks for your assistance.

Robert M. Overbey, Jr.
BondPro, Inc.
713-355-1000 Phone
713-355-1001 Fax

**From:** Conrcrete@aol.com [mailto:Conrcrete@aol.com]
**Sent:** Tuesday, February 05, 2008 11:26 AM
**To:** Robert@bondproinc.com; sligon@mlrcpa.com
**Subject:** Paid in Capital

Attached is the deposit receipt for the $300,000 paid in capital.  My wife and I have personally paid this money into the corporation and tomorrow we will be able to furnish you with the bank verification.

Royce

Who's never won? Biggest Grammy Award surprises of all time on AOL Music.

2/5/2008

**Robert Overbey**

| | |
|---|---|
| **From:** | Robert Overbey [robert@bondproinc.com] |
| **Sent:** | Tuesday, February 05, 2008 12:48 PM |
| **To:** | 'Sauer,Richard W' |
| **Subject:** | FW: Paid in Capital |

Richard:

Please note the attached verification of paid in capital from Royce Hassell to R. Hassell & Co., Inc.  Please advise if this improves the company's position with St. Paul/Travelers as respects securing a bond line of credit, and thanks very much for your consideration.

Robert M. Overbey, Jr.
BondPro, Inc.
713-355-1000 Phone
713-355-1001 Fax


**From:** Conrcrete@aol.com [mailto:Conrcrete@aol.com]
**Sent:** Tuesday, February 05, 2008 11:26 AM
**To:** Robert@bondproinc.com; sligon@mlrcpa.com
**Subject:** Paid in Capital

Attached is the deposit receipt for the $300,000 paid in capital.  My wife and I have personally paid this money into the corporation and tomorrow we will be able to furnish you with the bank verification.

Royce


Who's never won? Biggest Grammy Award surprises of all time on AOL Music.

2/5/2008

## Robert Overbey

| | |
|---|---|
| **From:** | Robert Overbey [robert@bondproinc.com] |
| **Sent:** | Tuesday, February 05, 2008 12:50 PM |
| **To:** | 'Fountain, Douglas' |
| **Subject:** | FW: Paid in Capital |

Doug:

I have attached for your review verification of additional paid-in capital from Royce Hassell to R. Hassell & Co., Inc. Please advise if this assists in strengthening R. Hassell's position insofar as procurement of a surety line of credit from Arch is concerned.

Thanks,

Robert M. Overbey, Jr.
BondPro, Inc.
713-355-1000 Phone
713-355-1001 Fax

---

**From:** Conrcrete@aol.com [mailto:Conrcrete@aol.com]
**Sent:** Tuesday, February 05, 2008 11:26 AM
**To:** Robert@bondproinc.com; sligon@mlrcpa.com
**Subject:** Paid in Capital

Attached is the deposit receipt for the $300,000 paid in capital. My wife and I have personally paid this money into the corporation and tomorrow we will be able to furnish you with the bank verification.

Royce

---

Who's never won? Biggest Grammy Award surprises of all time on AOL Music.

## Robert Overbey

**From:**  Conrcrete@aol.com
**Sent:**  Monday, February 04, 2008 3:48 PM
**To:**  Robert@bondproinc.com
**Subject:** (no subject)

Please be advised that the January statement will reflect a total of $300,000 paid against the million dollar line of credit.

Thanks,

RJH

(I think I had previously told you $200,000...but we were able to make it $300,000)

---

Who's never won? Biggest Grammy Award surprises of all time on AOL Music.

## Robert Overbey

| | |
|---|---|
| **From:** | Conrcrete@aol.com |
| **Sent:** | Monday, February 04, 2008 8:34 AM |
| **To:** | Robert@bondproinc.com |
| **Subject:** | R. Hassell |

I am infusing $450,000 into the corporation personally.  The banker says that we should have it complete by the end of this week.

Attached is what the Revised December Balance Sheet would show with the additional Paid-In-Capital.

If I then need to have Ligon come in and certify such, please advise asap.

Royce

---

Who's never won? Biggest Grammy Award surprises of all time on AOL Music.

# R. HASSELL HOLDING COMPANIES, INC.
## BALANCE SHEET

December 31, 2007

ASSETS

### CURRENT ASSETS

Cash                                                *1,138,101*   ~~$688,101.42~~

| | | |
|---|---|---|
| A/R - Trade | $5,010,463.07 | |
| A/R - Retainage | $1,040,710.03 | |
| A/R - Employees | $8,209.82 | |
| A/R - Officers | $263,546.29 | |
| Total Accounts Receivable | | $6,322,929.21 |

Cost in excess of billings                             $358,795.00

| | | |
|---|---|---|
| Prepaid - Insurance | $382,422.70 | |
| Pepaid - Rent | $72,000.00 | |
| Prepaid Taxes | $3,281.00 | |
| Deposits - Utilities | $11,850.00 | |
| Deposits - Bids & Plans | $0.00 | |
| Deposits - Miscellaneous | $7,837.02 | |
| Total Prepaid Expenses | | $477,390.72 |

Total Current Assets                         *8,297,216*   ~~$7,847,216.35~~

### PROPERTY AND EQUIPMENT

| | |
|---|---|
| Machinery & Equipment | $7,635,799.79 |
| Autos & Trucks | $591,111.54 |
| Furniture & Fixtures | $349,874.66 |
| Leasehold Improvements | $625,305.88 |
| Accumulated Depreciation | ($6,295,800.75) |

Total Property & Equipment                            $2,906,291.12

TOTAL ASSETS                              *11,203,504*   ~~$10,753,507.47~~

*ADDITION of $450,000 PAID IN CAPITAL*

# R. HASSELL HOLDING COMPANIES, INC.
## BALANCE SHEET

December 31, 2007

### LIABILITIES & EQUITY

**CURRENT LIABILITIES**

| | | |
|---|---|---|
| N/P - Currrent Maturity - Long Term Debt | | $589,840.67 |
| | | |
| A/P - Trade | $4,852,305.53 | |
| Subcontractor Retainage | $584,206.75 | |
| A/P - Officers | $0.00 | |
| Total Acccounts Payable | | $5,436,512.28 |
| | | |
| Accrued Franchise Tax | $0.00 | |
| Accrued Insurance | $0.00 | |
| Accrued Payroll Taxes | ($360.00) | |
| Accrued Bonuses | $0.00 | |
| Total Accrued Liabilities | | ($360.00) |
| | | |
| Billings in excess of cost | | $846,384.00 |
| Total Current Liabilities | | | $6,872,376.95 |

**OTHER LIABILITIES**

N/P - Long Term Debt    $3,225,427.64    *3,025,000*

Total Other Liabilities    ~~$3,225,427.64~~

**STOCKHOLDER'S EQUITY**

| | | |
|---|---|---|
| Common Stock | *$ 1,050,000* | $10.00 |
| Paid in Capital | | ~~$600,000.00~~ |
| Retained Earnings | | ($455,682.72) |
| Current Net Income (Loss) | | $511,375.60 |
| Total Stockholder's Equity | | *1,105,702* ~~$655,702.88~~ |
| | | |
| Total Liabilities and Equity | | $10,753,507.47 |
| | | ================ |

## Robert Overbey

**From:**  Robert Overbey [robert@bondproinc.com]
**Sent:**  Thursday, January 31, 2008 10:15 AM
**To:**  'Sauer, Richard W'
**Subject:** FW: R. Hassell

Richard:

As stated, please note the following email from Royce Hassell, and thanks for your consideration.

Robert M. Overbey, Jr.
BondPro, Inc.
713-355-1000 Phone
713-355-1001 Fax

**From:** Conrcrete@aol.com [mailto:Conrcrete@aol.com]
**Sent:** Thursday, January 31, 2008 9:32 AM
**To:** Robert@bondproinc.com
**Subject:** R. Hassell

Robert,

Taking a hard prelim look at January, I want to point out that the long term debt will go down by $200,000. We have paid that back on the line of credit. I also believe that our bottom line will increase by $90,000.

Therefore, Long term Debt would now show $3,000,000 (instead of $3,225,427) and Stockholder's equity, increased by $90,000 would now become $755,702 (instead of $655,702) . That would put us in a 4.3 to 1 ratio---debt to equity.

And as we pay down on the equipment line that would only get better. Likewise, as we benefit from the attrition of the six employees previously mentioned.

I can offer any surety a first lien on 6421 Buffalo (see attached HCAD value of $806,000) until our ratios are lowered over time.  Furthermore, we can offer a second lien on our office and land which has over $1,000,000 in equity per market value.  If, in the short term, we need to give the surety a comfortable position until we can personally rearrange assets to improve the corporate ratios, I  will to try to meet any conditions for bonding.

Royce

Start the year off right. Easy ways to stay in shape in the new year.

1/31/2008

1/31/2008 3:50 PMRobert Overbey

## Robert Overbey

| | |
|---|---|
| **From:** | Robert Overbey [robert@bondproinc.com] |
| **Sent:** | Thursday, January 31, 2008 10:13 AM |
| **To:** | 'Sauer,Richard W' |
| **Subject:** | FW: R. Hassell Surety Submission |

Hi Richard:

Thanks for taking my call, and I appreciate your interest in Triple B. I will confirm our appointment for the 11th.

As indicated, I have attached a full submission on R. Hassell. Please review and let me know of any questions or comments. They are requesting a $2 million/$9 - $10 program.

Hartford withdrew for 2 reasons: $2 million loss, and the debt increase. However, I am sending you an email from this morning from their owner, Royce Hassell about how their January is faring, etc.

Thanks for your consideration.

Robert M. Overbey, Jr.
BondPro, Inc.
713-355-1000 Phone
713-355-1001 Fax

---

**From:** Schanette Holtke [mailto:schanette@gmail.com]
**Sent:** Tuesday, January 22, 2008 8:52 AM
**To:** robert@bondproinc.com
**Subject:** R. Hassell Surety Submission

        

9_30_06 &    12_31_07     12_31_07     1_16_08       1_16_08       2008 EM    1_11_08 EM re 2006 Hartford Royce Personal
0_07 Financialsancials - R. Hassancials-R. Hassord Meeting Age Personal Finaen Robert & Einancials-Rober.IA.tif (655 KB). Financials.tif ...

     

Resume-Ricard Resume-Terry  Resume-Royce      2007        9_30_04 &     9_30_05 &
o.tif (29 KB)  ˜auriello.tif (11.Jassell.tif (50 K.ssory Note.tif (20_05 Financials0_06 Financials·

Robert M. Overbey, Jr.                                        1
BondPro, Inc.
robert@bondproinc.com
713-355-1000 phone
713-355-1001 fax
713-503-0600 cell

1/31/2008 1:53 PMRobert Overbey

## Robert Overbey

| | |
|---|---|
| **From:** | Fountain, Douglas [DFountain@archinsurance.com] |
| **Sent:** | Thursday, January 31, 2008 1:36 PM |
| **To:** | Robert Overbey |
| **Subject:** | RE: R. Hassell Surety Submission |

Robert,

This follows our phone earlier phone conversation.  Thank you for forwarding your submission of the captioned.  I have reviewed the information therein and I just don't think there is anything we can do for R. Hassell at this time.  While he is showing a nice profit through the 1st qtr of FY2008, it is following two successive years of operating the losses totaling almost $2.5MM.  I think we would need to see some more time pass in order to see if they can sustain a profit.  My chief concern in addition to whether they are able to sustain a profit is the level of debt in place and impact to the overall financial condition.  It appears that R. Hassell has taken on some $3.5MM in debt over the past year, all of which appears for working capital purposes.  All of this debt is treated by the CPA as long-term debt though the $1MM LOC is now due in about 14 months, which for our purposes would be considered current.  As such our analysis of working capital is an $800M deficit.  It is obviously critical that R. Hassell is able to sustain the current profits shown both for financial recovery and evidence that they have effectively addressed the problems that caused the significant losses covering the past two years.  Royce may also want to consider some sort of capital infusion that could replace some of the debt currently taken out.  In any case, R. Hassell has a lot of hard work ahead to restore their financial condition and ability to obtain bonding.

Please feel free to keep us updated on their progress.

Let me know if you have any questions.

Best regards,


**Doug Fountain**
*Arch Insurance*
*2800 Post Oak, #5858*
*Houston, TX  77056*
*713-344-2234  (Direct)*
*713-344-2240 (Fax)*
*713-377-8433 (cell)*

*Dfountain@archinsurance.com*


| | |
|---|---|
| **From:** | Robert Overbey [mailto:robert@bondproinc.com] |
| **Sent:** | Monday, January 28, 2008 12:39 PM |
| **To:** | Fountain, Douglas |
| **Subject:** | FW: R. Hassell Surety Submission |

Doug:

Thanks for agreeing to take a look at R. Hassell for me.  As indicated, Hartford has withdrawn as surety, and I am hopeful that perhaps Arch may be amenable to issuing surety credit for them.

Thank you for your consideration.


Robert M. Overbey, Jr.                    1
BondPro, Inc.
robert@bondproinc.com
713-355-1000 phone
713-355-1001 fax
713-503-0600 cell

1/31/2008 1:53 PMRobert Overbey
Robert M. Overbey, Jr.
BondPro, Inc.
713-355-1000 Phone
713-355-1001 Fax

**From:** Schanette Holtke [mailto:schanette@gmail.com]
**Sent:** Tuesday, January 22, 2008 8:52 AM
**To:** robert@bondproinc.com
**Subject:** R. Hassell Surety Submission

The information contained in this e-mail message may be privileged and confidential information and is intended only for the use of the individual and/or entity identified in the alias address of this message. If the reader of this message is not the intended recipient, or an employee or agent responsible to deliver it to the intended recipient, you are hereby requested not to distribute or copy this communication. If you have received this communication in error, please notify us immediately by telephone or return e-mail and delete the original message from your system.

Robert M. Overbey, Jr.
BondPro, Inc.
robert@bondproinc.com
713-355-1000 phone
713-355-1001 fax
713-503-0600 cell



THE
HARTFORD

Bond

January 25, 2008

Mr. Robert M. Overbey, Jr.
BondPro, Inc.
8 Greenway Plaza, Suite 814
Houston, TX  77046

RE:  R. Hassell, et al

Dear Robert:

As previously discussed, Hartford is withdrawing its support of the captioned account effective immediately.    After the receipt and detailed review of the most recent audited financial statement along with subsequent financial information, it has been determined that R. Hassell's bond needs will be best suited with a new surety home.

Unfortunately, due to overall impact on the balance sheet at the last fiscal year-end, we are unable to provide any additional credit from this point on.

We certainly appreciate the opportunity to have worked with your agency on this account for the last eight years and wish Royce Hassell and his team the best in their future endeavors.

In order to monitor Hartford's exposure on this account, we are requesting to receive normal quarterly financial information, as prepared by Alan Stembridge and/or Steve Ligon.  We also request that you please keep us updated on your efforts of securing a new surety home for R. Hassell.

Please feel free to contact us if you have any further questions.

Regards,

Kurt Risk
Regional Bond Manager

Eric Anderson
Senior Underwriter

Northbelt II
785 Greens Parkway, Suite 200
Houston, TX 77067-4409
Mailing Address: P.O. Box 4611
Houston, TX 77210-4611
Telephone 281 877 3200
Toll Free 800 392 7805
Facsimile 281 877 3990

1/11/2008 12:51 PMRobert Overbey

## Robert Overbey

| | |
|---|---|
| **From:** | Robert Overbey [robert@bondproinc.com] |
| **Sent:** | Friday, January 11, 2008 12:49 PM |
| **To:** | 'Conrcrete@aol.com' |
| **Subject:** | 9/30/07 audit |

Hi Royce:

Thanks again for meeting with me yesterday. I have reviewed the statements and offer the following for your consideration in anticipation of our 10:00 a.m. meeting with Eric Anderson of the Hartford on Wednesday, 1/16/08:

 • As you had mentioned, the Hartford may indeed request that additional capital be input in to the company at some point; however, based on the fact that the 1st quarter is reflecting a turn for the positive, this may be negotiable.

 • I had of course previously provided the Hartford with full disclosure as to the reasoning for the equipment refinancing with Trustmark, and Eric may want to discuss this in more detail in light of the loss and significant drop in allowable working capital at fiscal year-end. Thus as you indicated, although the debt is no larger than the 2004 year reflected, Hartford will want to discuss the overall corporate debt thoroughly.

• I would also recommend being prepared to discuss the company's business outlook for 2008, especially as respects contract opportunities for R. Hassell & Co., Inc. in both the subdivision (private) market, as well as with, e.g. Harris County (and any other public entities). The issue of the credit crisis on Wall Street resulting from the subprime lending debacle which resulted in numerous home builders and/or developers cutting back on its estimates for construction in 2008 will similarly be of importance.

• If there are any resolutions to the ongoing litigations and claims that are shown in the audit, you may want to bring those to light.

• Is the backlog for both companies acceptable at this time? Are you OK with the cost to complete, or is an increase warranted? *~need add'l ~~rate~~ work...*

• I agree that the issues of rain vis a vis the overhead for fiscal 2007, as well as the write down of the underbillings due to profit fade, need to be a central part of your discussion. Also, Steve Ligon's recommendation that the company take all of the losses in 2007 to "start with a clean slate" should certainly be emphasized. *- Avry'z profit - bad year*

 • You had mentioned that you were concerned as to Hartford's overall perception – not the loss as much as the loss variance as the fact that the loss projected in August ballooned in September. This will be a good starting point from a relationship perspective insofar as our discussions are concerned.

• The present underbillings at 12/31/07 first quarter will need to be brought up in terms of whether these will convert to profits.

• Eric will be very interested in knowing if there are any other projects presently under construction that may or may not result in profit fade.

• Finally, as promised, I have not sent either statement to the Hartford.

*• personal financial statement - received....*

  I hope that this gives provides some guidance and/or assistance in what we may wish to accomplish, but I am sincerely hopeful that the first quarter provides Hartford with the knowledge that the situation is being rectified. You have always been very forthcoming with the Hartford, and Hartford's acknowledgement of such will undeniably be quite beneficial in all negotiations with them.

Thanks for your consideration and let me know your thoughts

Robert M. Overbey, Jr.
President
BondPro, Inc.
8 Greenway Plaza, Suite 814

Robert M. Overbey, Jr.                                   1
BondPro, Inc.
robert@bondproinc.com
713-355-1000 phone
713-355-1001 fax
713-503-0600 cell

*note -
add Trustmark
stock e add'l paid
in Capital
current asset
* if no loan*

1/11/2008 12:51 PMRobert Overbey
Houston, Texas 77046
713-355-1000 Phone
713-355-1001 Fax
robert@bondproinc.com
www.bondproinc.com

Robert M. Overbey, Jr.
BondPro, Inc.
robert@bondproinc.com
713-355-1000 phone
713-355-1001 fax
713-503-0600 cell

2

1/16/8

Hansford / R Hovell meeting

• preparing : 6 months
• FS for 9/30/07 - Discussion
  • 8/31/07 - ($600m)
    • Estimated 9/31/7 loss to be ($900m)
    • met w/ Steve Lyon @ MLR - discuss underbillings  reduce by
    • thought we could make up bad weather situation . . . . on
    • Background 9 year:
① Weather: key element - depreciation of equipment was a factor.
② Company comparisons - rain 2006 vs. 2007
③ no bleeding to death " philosophy - but rain never
   stopped. Steps were taken @ Re and 9 year to
   offset the rainy days ; increased overhead, including
   not purchasing equipment + lay-offs.
④ no difference in field operations - only rain

• Field profit — $723m which is 3%

where are we today? @ 1st Qtr, December 31, 2007,
                      $ 28 m  > CA
                      $ 6.8m  > CL         largest greater to
                                                      date
• refinanced equipment - Trustmark

• underbillings @ 12/31/7 - adequately offset by overbillings

- not homebuilders
  - Ryland
  - woodlands –
  - US. recession

\# - public work — — not adverse
  4 T. C. Tester
  9 except profitable work
  9 also do building & Parking lot
        RHB              site

- need to pick up work w/ Co. - $2mm per month

- Cedar bank doing better than expected . . .

- Maybe add'l Smart Financial; Trustmark bank
  Construction projects . . .

- if rents persist, worse case scenario ⟹ will reduce
  overhead dramatically . . .

Hard/ad to verify → underbillings w/ MWR

1/25/2008 7:28 AMRobert Overbey

## Robert Overbey

| | |
|---|---|
| **From:** | Williamson, Karl [Karl.Williamson@LibertyMutual.com] |
| **Sent:** | Wednesday, January 23, 2008 2:26 PM |
| **To:** | Robert Overbey |
| **Subject:** | R. Hassell Holding Company |

Robert,

This is in follow up to our telephone conversation today regarding R. Hassell. As mentioned we would not be in a position to provide surety credit for the contractor at this time due to the large loss at year end making two consecutive losing years. We were surprised at the loss as a profit was being shown through the first six months of the year. The losses have had a negative impact on the balance sheet including a sizable debt load with both bank lines near fully extended. I understand the contractor is considering a cash injection into the company however, we do not feel this would be adequate to allow us to provide surety credit.

  I appreciate the opportunity to review the account and regret we can't be of service. If there questions on this let me know.

Thanks,

Karl Williamson
Liberty Mutual Surety
1000 Heritage Center Circle
Round Rock, TX 78664
512-238-3363
512-238-3001 (fax)
512-585-1281 (cell)

Robert M. Overbey, Jr.                    1
BondPro, Inc.
robert@bondproinc.com
713-355-1000 phone
713-355-1001 fax
713-503-0600 cell

1/22/2008 1:43 PMRobert Overbey

## Robert Overbey

| | |
|---|---|
| **From:** | Robert Overbey [robert@bondproinc.com] |
| **Sent:** | Tuesday, January 22, 2008 11:07 AM |
| **To:** | 'Bill King' |
| **Subject:** | FW: R. Hassell Surety Submission |

Hi Bill:

I am interested in your reviewing the following attached submission for consideration by SureTec.

R. Hassell has been a client of mine since 2000, and Hartford has been their surety throughout this period.

R. Hassell is divided into 2 entities: R. Hassell & Co., Inc. – which is a paving contractor and primarily works for private developers, homebuilders, and public entities. Their average job size is $500,000 to $1.5 million. R. Hassell Builders, Inc. operates as a general contractor, and its projects range from $1 million to $2.5 million. R. Hassell Builders works for the City of Houston (e.g. construction of fire stations), City of Bellaire, various banks, etc.). (Generally R. Hassell Builders will subcontract a large percentage of the project, but will require its subcontractors of note to bond back to them). R. Hassell Holding Co. is the parent, and Royce Hassell owns 100% of all the companies, and his personal indemnity is available.

The company's year-end is 9/30.

R. Hassell has never needed a large program – generally a $2 million - $2.5 million single project/$9 million aggregate is sufficient – primarily because the paving work is quick turnover, with the combined companies averaging $2.5 million per month in billings.

Hartford is considering withdrawing as primary surety for the following reason: at 8/30/07 (11 months into the last fiscal year), R. Hassell was indicating a potential loss of $500,000. At fiscal year-end 9/30/07 – one month later – the loss grew to $2 million. The primary reason was incessant rain and so Steve Ligon thought it best to write down the existing underbillings as the rain (which had decimated the company's ability to work throughout the year) caused unmitigated profit fades.

The first quarter of the current years reflects how much the company has rebounded, and Morris Ligon will similarly provide a reviewed statement at the 6-month period, reflective through 3/31/08.

However, the loss has caused the Hartford to reconsider its position. I would appreciate your reviewing the attached underwriting information below and letting me know of SureTec's potential interest in this long-time client. You will note that I included emails to the Hartford endeavoring to explain various aspects of the loss, as well as an actual copy of the weather reports outlining the days that were adversely affected by rain.

I have been a staunch proponent of the philosophy that one bad year  - all things considered - should not necessarily nullify and offset almost a decade of relations between the contractor and its surety company, but unfortunately that might be the reality regarding R. Hassell.

Thanks very much for your consideration.

Robert M. Overbey, Jr.
BondPro, Inc.
713-355-1000 Phone
713-355-1001 Fax



Robert M. Overbey, Jr.                                    1
BondPro, Inc.
robert@bondproinc.com
713-355-1000 phone
713-355-1001 fax
713-503-0600 cell

1/22/2008 1:43 PMRobert Overbey

**From:** Schanette Holtke [mailto:schanette@gmail.com]
**Sent:** Tuesday, January 22, 2008 8:52 AM
**To:** robert@bondproinc.com
**Subject:** R. Hassell Surety Submission

        

9_30_06 &    12_31_07    12_31_07    1_16_08    1_16_08    2008 EM    1_11_08 EM re  2006 Hartford  Royce Personal
0_07 Financialsancials - R. Hasancials-R. Hassend Meeting Age Personal Finaeen Robert & Einancials-Rober.IA.tif (655 KB). Financials.tif ...

     

Resume-Ricard Resume-Terry Resume-Royce    2007    9_30_04 &    9_30_05 &
o.tif (29 KB)  `auriello.tif (11.Jassell.tif (50 K.ssory Note.tif (20_05 Financials0_06 Financials·

Robert M. Overbey, Jr.                           2
BondPro, Inc.
robert@bondproinc.com
713-355-1000 phone
713-355-1001 fax
713-503-0600 cell

**Robert Overbey**

| | |
|---|---|
| **From:** | Michael Kremheller Jr. [mkremheller@IFIC.com] |
| **Sent:** | Wednesday, January 23, 2008 9:59 AM |
| **To:** | Robert Overbey |
| **Subject:** | R. Hassell Holding Companies, Inc. |

Thanks for the submission.  I know this account by reputation and reviewed all the underwriting information you sent.  As discussed IFIC cannot support this account at this time even with limited capacity.  If you have any further questions, do not hesitate to call.  I look forward to working with you on the next prospect.

Have a good day,
Mike Kremheller
Regional Manager
Houston Contract Regional Office
International Fidelity Insurance Company
Tel (281) 681-3900 ext 14
Fax (281) 681-3903
Cell (281) 923-3065
mkremheller@ific.com

1/22/2008 10:46 AMRobert Overbey

## Robert Overbey

| | |
|---|---|
| **From:** | Robert Overbey [robert@bondproinc.com] |
| **Sent:** | Tuesday, January 22, 2008 10:06 AM |
| **To:** | 'Michael Kremheller Jr.' |
| **Subject:** | FW: R. Hassell Surety Submission |

Mike:

Thanks for speaking with me yesterday regarding the referenced client.

I have represented R. Hassell since 2000, and their surety has been the Hartford throughout this 8 year period.

R. Hassell is divided into 2 entities:  R. Hassell & Co., Inc. – which is a paving contractor and primarily works for private developers, homebuilders, and public entities.  Their average job size is $500,000 to $1.5 million.  R. Hassell Builders, Inc. operates as a general contractor, and its projects range from $1 to $2.5 million.  R. Hassell Builders works for the City of Houston (e.g. construction of fire stations), City of Bellaire, various banks, etc.).  (Generally R. Hassell Builders will subcontract a large percentage of the project, but will require its subcontractors of note to bond back to them).   R. Hassell Holding Co. is the parent, and Royce Hassell owns 100% of all the companies, and his personal indemnity is available.

The company's year-end is 9/30.

R. Hassell has never needed a large program – generally a $2 million - $2.5 million single job/$9 million aggregate is sufficient - primarily because the paving work is quick turnover, with the combined companies averaging $2.5 million per month in billings.

Hartford is considering withdrawing for the following reason: at 8/30/07 (11 months into the last fiscal year), R. Hassell was indicating a potential loss of $500,000.  At 9/30/07, the loss grew to $2 million.  The primary reason was that Steve Ligon thought it best to write down the existing underbillings as the rain (which had decimated the company's ability to work throughout the year) caused unmitigated profit fades.

The first quarter of the current year reflects how much the company has rebounded, and Morris Ligon will similarly provide a review at the 6-month period, reflective through 3/31/08.

However, the loss has caused Hartford to reconsider its position.  I would appreciate your reviewing the attached underwriting information and letting me know what International Fidelity might be willing to support.  (You will note that I have included emails to the Hartford endeavoring to explain various aspects of the loss, as well as an actual copy of the weather reports outlining the days that were adversely affected by the rain.)

I have been a proponent of the philosophy that one bad year should not nullify almost a decade of relations with a surety, but unfortunately I believe that this could be the case.

Thanks for your consideration and let me know of any comments or questions.

Robert M. Overbey, Jr.
BondPro, Inc.
713-355-1000 Phone
713-355-1001 Fax

---

**From:** Schanette Holtke [mailto:schanette@gmail.com]

Robert M. Overbey, Jr.                                          1
BondPro, Inc.
robert@bondproinc.com
713-355-1000 phone
713-355-1001 fax
713-503-0600 cell

1/22/2008 10:46 AMRobert Overbey
**Sent:** Tuesday, January 22, 2008 8:52 AM
**To:** robert@bondproinc.com
**Subject:** R. Hassell Surety Submission

        

9_30_06 &    12_31_07    12_31_07    1_16_08    1_16_08    2008 EM    1_11_08 EM re   2006 Hartford  Royce Personal
0_07 Financialsıncials - R. Hassıncials-R. Hasseard Meeting Agıe Personal Finaeen Robert & Einancials-Rober₁IA.tif (655 KB). Financials.tif ...

   

Resume-Ricard Resume-Terry Resume-Royce    2007      9_30_04 &    9_30_05 &
o.tif (29 KB)  ˜auriello.tif (11.lassell.tif (50 K₁ssory Note.tif (20_05 Financials0_06 Financials·

Robert M. Overbey, Jr.
BondPro, Inc.
robert@bondproinc.com
713-355-1000 phone
713-355-1001 fax
713-503-0600 cell

1/11/2008 10:49 AMRobert Overbey

## Robert Overbey

| | |
|---|---|
| **From:** | Robert Overbey [robert@bondproinc.com] |
| **Sent:** | Friday, January 11, 2008 10:49 AM |
| **To:** | 'Anderson, Eric (Bond, Houston/RO)' |
| **Subject:** | R. Hassell Holding Co., Inc. |

Eric:

As discussed, we are on for 10:00 on Wednesday, 1/16. Royce had asked me not to forward the audit and 1st quarter numbers so that he could properly explain them, and I will of course respect his request. However, I wanted to give you the benefit of the numbers prior to the meeting so that a) the shock towards reflecting the loss and reduction in equity would be diminished and b) you would be provided with an opportunity to review the numbers.

Further, please note the following:

1)  The rain for Company was the sole issue, along with the fact that he maintained the overhead and did not reduce it during the year. However, he has already taken steps to reduce it for the current year.
2)  There were 276 working days in the fiscal year; 151 were rained out.
3)  The backlog – which was profitable – was not the issue; rather it was the fact that the rained curtailed production which inevitably adversely affected the net profit.
4)  The underbillings were compromised and ultimately written down by Steve Ligon; the rain and actual job profit fade contributed to the demise here. Steve recommended that Royce absorb the total blow in the year ended 9/30/07 and not carry forward any additional potential problems.
5)  At 12/31/07, Royce will have a review prepared for these interim figures.
6)  Also at 12/31/07 there are $846,000 in overbillings which is very conservative.
7)  Royce is willing to put additional funds into the company on Hartford's request; he will probably bring this up.

The following encapsulates the 09/30/07 audited statement:

- Working Capital – between $200,000 and $450,000 depending on the allowance of the note receivable – stockholder, which we may want to have subordinated to the Hartford.
- Net profit – ($2,186,167) which is over 3 times the amount he had indicated in August at 11 months. Again, the write down of the underbillings due to profit fade caused by rain is the reason behind this decline. However some of these may be realized at a later date if profits increase and thus readjusted.
- Retained Earnings – ($475,436)
- Equity - $145,395
- Gross profit margin – 3%

At 12/31/07, there is improvement as follows:

- Working Capital - $827,000 – I discounted the Officers Receivable
- Net Profit – $511,375 (6% net) on a volume of $9,272,000+
- Retained Earnings - $56,000+
- Equity - $655,702
- Gross Profit Margin – 13%

Again, he is willing to have a reviewed statement prepared on this as well as at the 6-month period. Royce also indicated a willingness to input capital into the company as advised by Hartford.

Robert M. Overbey, Jr.
BondPro, Inc.
robert@bondproinc.com
713-355-1000 phone
713-355-1001 fax
713-503-0600 cell

1

1/11/2008 10:49 AMRobert Overbey

Thanks and let me know your thoughts.  As indicated, we will not issue further bonds until after our meeting next week.

Thanks for your consideration.

Robert M. Overbey, Jr.
President
BondPro, Inc.
8 Greenway Plaza, Suite 814
Houston, Texas 77046
713-355-1000 Phone
713-355-1001 Fax
robert@bondproinc.com
www.bondproinc.com

Robert M. Overbey, Jr.                              2
BondPro, Inc.
robert@bondproinc.com
713-355-1000 phone
713-355-1001 fax
713-503-0600 cell

# ABM

**American Business Machines**

**Value Lease Agreement**

| APPLICATION NO. | CONTRACT NO. |
|---|---|
| | |

7303 West Sam Houston Parkway North   Houston, TX 77040   Phone 713-688-8873   Fax 713-688-1162

This document is written in "Plain English". The words you and your refer to the customer. The words Lessor, we, us and our refer to American Business Machines, Inc. Every attempt has been made to eliminate confusing language and create a simple, easy-to-read document.

## CUSTOMER INFORMATION

| FULL LEGAL NAME | | | STREET ADDRESS | |
|---|---|---|---|---|
| Hassell Construction Company, Inc. | | | 12522 Cutten Rd | |
| CITY | STATE | ZIP | PHONE | FAX |
| Houston | TX | 77066 | 281-893-2570 | |
| BILLING NAME (IF DIFFERENT FROM ABOVE) | | | BILLING STREET ADDRESS | |
| | | | | |
| CITY | STATE | ZIP | FEDERAL TAX I.D.# | E-MAIL |
| | | | 74-1876093 | |

EQUIPMENT LOCATION (IF DIFFERENT FROM ABOVE)

| MAKE/MODEL NO./ACCESSORIES | SERIAL NO. | STARTING METER |
|---|---|---|
| SAVIN MP4502SPF | W512LB01000 | |
| | | |
| | | |

## LEASE TERMS   LEASE PAYMENT AMOUNT   SECURITY DEPOSIT   ADVANCE PAYMENT

Term in Months **59** (mos.)

Monthly Payments of $ **602.07**
(Plus Applicable Taxes)
Lease Payment Period is Monthly Unless Otherwise Indicated.

$ **0.00** OR $ **0.00**
(Plus Applicable Taxes)   (Plus Applicable Taxes)

Payment includes **10,000** B&W Images month

Payment includes _____ Color Images per month

_(initial)_ by initialing here, you agree that service and supplies are included in this Agreement.

**END OF LEASE OPTIONS:** You will have the following options at the end of the original term, provided the Lease has not terminated early and no event of default under the Lease has occurred and is continuing. 1. Purchase the Equipment for the Fair Market Value. 2. Renew the Lease per paragraph 1. 3. Return Equipment as provided in Paragraph 6.

## LESSOR ACCEPTANCE

| **9|13|13** | American Business Machines, Inc. | | |
|---|---|---|---|
| DATED | LESSOR | SIGNATURE | TITLE |

## CUSTOMER ACCEPTANCE

| **9/13/13** | Hassell Construction Company Inc | (X) _signature_ | C.O.O. |
|---|---|---|---|
| DATED | CUSTOMER | SIGNATURE | TITLE |
| | | Royce Hassell (PRINT NAME) | |

## GUARANTY

As additional inducement for us to enter into the Agreement, the undersigned ("you") unconditionally, jointly and severally, personally guarantees that the customer will make all payments and meet all obligations required under this Agreement and any supplements fully and promptly. You agree that we may make other arrangements including compromise or settlement with the customer and you waive all defenses and notice of those changes and will remain responsible for the payment and obligations of this Agreement. We do not have to notify you if the customer is in default. If the customer defaults, you will immediately pay in accordance with the default provision of this Agreement as sums due under the terms of the Agreement and will perform all the obligations of this Agreement. If it is necessary for us to proceed legally to enforce this guaranty, you expressly consent to the jurisdiction of the court set out in paragraph 15 and agree to pay all costs, including attorneys fees incurred in enforcement of this guaranty. It is not necessary for us to proceed first against customer before enforcing this guaranty. By signing this guaranty, you authorize us to obtain credit bureau reports for credit and collection purposes.

| PRINT NAME OF GUARANTOR | (X) | SIGNATURE | DATED |
|---|---|---|---|

## ACCEPTANCE OF DELIVERY

| **9/13/13** | Hassell Construction Company Inc | (X) _signature_ | C.O.O. |
|---|---|---|---|
| DATE OF DELIVERY | CUSTOMER | SIGNATURE | TITLE |

**THIS IS A NONCANCELABLE / IRREVOCABLE AGREEMENT, THIS AGREEMENT CANNOT BE CANCELED OR TERMINATED.**

**Exhibit Z**

1. **AGREEMENT:** You agree to rent from us the personal property described under "MAKE/MODEL/ACCESSORIES" and as modified by supplements to this Master Agreement from time to time signed by you and us (such property and any upgrades, replacements, repairs and additions referred to as "Equipment") for business purposes only. You agree to all of the terms and conditions contained in this Agreement and any supplement, which together are a complete statement of our Agreement regarding the listed equipment ("Agreement") and supersedes any purchase order or outstanding invoice. This Agreement may be modified only by written Agreement and not by course of performance. You authorize us to insert in this Agreement serial numbers and other identification about the Equipment, as well as other omitted factual matters. This Agreement becomes valid upon execution by us and will begin on the date shown and will continue from the first day of the following month for the number of consecutive months shown. The term will be extended automatically for successive 12 month terms unless you send us written notice between sixty (60) and one hundred fifty (150) days before the end of any term of your intent to purchase or return the equipment AND complete the purchase or return within 30 days of the end of term. THE BASE RENTAL PAYMENT SHALL BE ADJUSTED PROPORTIONATELY UPWARD OR DOWNWARD, IF THE ACTUAL COST OF THE EQUIPMENT EXCEEDS OR IS LESS THAN THE ESTIMATE PROVIDED TO YOU. If any provision of this Agreement is declared unenforceable in any jurisdiction, the other provisions herein shall remain in full force and effect in that jurisdiction and all others. You authorize us to insert or correct missing information on this lease including your proper legal name, serial numbers and any other numbers describing the Equipment. You agree to provide updated annual and/or quarterly financial statements to us upon request.

2. **RENT:** Rent will be payable in installments, each in the amount of the basic lease payment shown plus any applicable sales, use or property tax. If we pay any tax on your behalf, you agree to reimburse us promptly along with a processing fee. You will pay the security deposit on the date you sign this Agreement. Subsequent installments will be payable on the first day of each lease payment period shown beginning after the first lease payment period or as otherwise agreed. We will have the right to apply all sums received from you to any amounts due and owed to us under the terms of this Agreement.

3. **MAINTENANCE AND SUPPLIES:** The charges established by this Agreement include payment for the use of the designated Equipment and accessories, maintenance by Supplier (during normal business hours); inspection, adjustment, parts replacement, drums and cleaning material required for the proper operation, as well as black toner and developer. Paper must be separately purchased by customer. Color toner, not included in this Agreement will be billed separately. If necessary, the service and supply portion of this Agreement may be assigned. We may charge you a Supply Freight Fee to cover our costs of shipping supplies to you.

4. **OWNERSHIP OF EQUIPMENT:** We are the Lessor of the equipment and have title to the equipment (excluding software). You agree to keep the equipment free and clear of all liens and claims.

5. **WARRANTY DISCLAIMER:** WE MAKE NO WARRANTY EXPRESS OR IMPLIED, INCLUDING THAT THE EQUIPMENT IS FIT FOR A PARTICULAR PURPOSE OR THAT THE EQUIPMENT IS MERCHANTABLE. YOU AGREE THAT YOU HAVE SELECTED EACH ITEM OF EQUIPMENT BASED UPON YOUR OWN JUDGMENT AND DISCLAIM ANY RELIANCE UPON ANY STATEMENTS OR REPRESENTATIONS MADE BY US.

6. **LOCATION OF EQUIPMENT:** You will keep and use the equipment only at your address shown above and you agree not to move it unless we agree in it. At the end of the Agreement's term, you will return the Equipment to a location we specify at your expense, in retail resalable condition, full working order, and in complete repair.

7. **LOSS OR DAMAGE:** You are responsible for the risk of loss or for any destruction of or damage to the equipment. No such loss or damage relieves you from the payment obligations under this Agreement. You agree to promptly notify us in writing of any loss or damage and you will then pay to us the present value of the total of all unpaid rental payments for the full rental term plus the estimated fair market value of the Equipment at the end of the originally scheduled term, all discounted at six percent (6%) per year. Any proceeds of insurance will be paid to us and credited, at our option, against any loss or damage. You authorize us to sign on your behalf and appoint us as your attorney in fact to execute in your name any insurance drafts or checks issued due to loss or damage to the equipment.

8. **COLLATERAL PROTECTION AND INSURANCE:** If you do not provide Us with Insurance Proof within 30 days of the Commencement Date, or if such insurance terminates for any reason, then (a) You agree that We have the right, but not the obligation, to obtain such Property Insurance and/or Liability Insurance in such forms and amounts from an insurer of Our choosing in order to protect Our interests ("Other Insurance"), and (b) You agree that We may charge you a periodic charge for such Other Insurance. This periodic charge will include reimbursement for premiums advanced by Us to purchase Other Insurance, billing and tracking fees, charges for Our processing and related fees associated with the Other Insurance, and a finance charge of up to 18% per annum (or the maximum rate allowed by law, if less) on any advances We make for premiums, (collectively, the "Insurance Charge"). If We obtain Other Insurance, we and/or one or more of our affiliates and/or agents may receive a portion of the Insurance Charge, which may also include a profit. We are not obligated to obtain, and may cancel, Other Insurance at any time without notice to you. Any Other Insurance need not cover you as an insured or protect your interests. The Insurance Charge and the property damage surcharge may be higher than any Property and Liability insurance you obtain on your own. Should you request that we make the insurance requirement and not obtain Other Insurance we may charge you a monthly property damage surcharge in the amount of .0035 of the equipment cost and on which we may make a profit.

9. **INDEMNITY:** We are not responsible for any loss or injuries caused by the installation or use of the equipment. You agree to hold us harmless and reimburse us for loss and to defend us against any claim for losses or injury caused by the Equipment.

10. **TAXES AND FEES:** You agree to pay when invoiced all taxes (including personal property tax, fines and penalties) and fees relating to this Agreement or the Equipment. You agree to (a) reimburse us annually for all personal property taxes which we are required to pay as Lessor of the Equipment or to remit to us each month our estimate of the monthly equivalent of the annual property taxes to be assessed. We will file all personal property, use or other tax return and you agree to pay us a process fee for making such filings. In addition you agree to pay us a UCC filing fee of $35.00 and reimburse us for all costs involved in documenting and servicing this Agreement. You further agree to pay us up to $79.50 on the date the first payment is due as an origination fee. If the total sum of the payments exceeds $76,000, the origination fee will be no greater than $99.50. We reserve the right to charge a fee upon termination of this Agreement either by trade-up, buy-out or default. Any fee charged under this Agreement may include a profit and is subject to applicable taxes.

11. **ASSIGNMENT:** YOU HAVE NO RIGHT TO SELL, TRANSFER, ASSIGN OR SUBRENT THE EQUIPMENT OR THIS AGREEMENT. We may sell, assign, or transfer this Agreement without notice. You agree that if we sell, assign, or transfer this Agreement, the new Lessor will have the same rights and benefits that we have now and will not have to perform any of our obligations. You agree that the rights of the new Lessor will not be subject to any claims, defenses, or set offs that you may have against us.

12. **DEFAULT AND REMEDIES:** If you do not pay any rental payment or other sum due to us or other party when due or if you break any of your promises in the Agreement or any other Agreement with us, you will be in default. If any part of a payment is late, you agree to pay a late charge of 15% of the payment which is late or if less, the maximum charge allowed by law. If you are ever in default, we may retain your security deposit and at our option, we can terminate or cancel this Agreement and require that you pay (1) the accelerated unpaid balance of this Agreement (discounted at 6%); (2) the amount of any purchase option and if none is specified, 20% of the original equipment cost which represents our anticipated residual value in the equipment; (3) and return the equipment to us a location designated by us. We may recover interest on any unpaid balance at the rate of 6% per annum. We may also use any of the remedies available to us under Article 2A of the Uniform Commercial Code as enacted in the State of Lessor or its Assignee or any other law. You agree to pay our reasonable attorney's fees and actual court costs. If we have to take possession of the equipment, you agree to pay the cost of repossession. The net proceeds of the sale of any repossessed Equipment will be credited against what you owe us relating to any claim arising under this Agreement including, but not limited to, or referral for collection. YOU AGREE THAT WE WILL NOT BE RESPONSIBLE TO PAY YOU ANY CONSEQUENTIAL OR INCIDENTAL DAMAGES FOR ANY DEFAULT BY US UNDER THIS AGREEMENT. You agree that any delay or failure to enforce our rights under this Agreement does not prevent us from enforcing any rights at a later time. It is further agreed that your rights and remedies are governed exclusively by this Agreement and you waive customer's rights under Article 2A (508-522) of the UCC.

13. **UCC FILINGS:** You grant us a security interest in the equipment if this Agreement is deemed a secured transaction and you authorize us to record a UCC-1 financing statement or similar instrument, and appoint us your attorney-in-fact to execute and deliver such instrument, in order to show our interest in the equipment.

14. **SECURITY DEPOSIT:** The security deposit is non interest bearing and is to secure your performance under this Agreement. Any security deposit made may be applied by us to satisfy any amount owed by you, in which event you will promptly restore the security deposit to its full amount as set forth above. If all conditions herein are fully complied with and provided you have not ever been in default of this Agreement per paragraph 12, the security deposit will be refunded to you after the return of the equipment in accordance with paragraph 6.

15. **CONSENT TO LAW, JURISDICTION, AND VENUE:** This Agreement shall be deemed fully executed and performed in the state of Lessor or its Assignee's principal place of business and shall be governed by and construed in accordance with its laws. If the Lessor or its Assignee shall bring any judicial proceeding in relation to any matter arising under the Agreement, the Customer irrevocably agrees that any such matter may be adjudicated or determined in any court or courts in the state of the Lessor or its Assignee's principal place of business, or in any court or courts in Customer's state of residence, or in any other court having jurisdiction over the Customer or assets of the Customer, all at the sole election of the Lessor. The Customer hereby irrevocably submits generally and unconditionally to the jurisdiction of any such court so elected by Lessor in relation to such matters. You waive trial by jury in any action between us.

16. **OVERAGES AND COST ADJUSTMENTS:** You agree to comply with any billing procedures designated by us, including notifying us of the meter reading at the end of each month. At the end of the first year of this Agreement and once each successive twelve month period, we may increase the base usage charge per image and per image charge over the base minimum by a maximum of 15% of the existing charge.

17. **UPGRADE/DOWNGRADE PROVISION:** AFTER INCEPTION OF THE AGREEMENT AND UPON YOUR REQUEST, WE MAY REVIEW YOUR IMAGE VOLUME AND PROPOSE OPTIONS FOR UPGRADING OR DOWNGRADING TO ACCOMMODATE YOUR NEEDS.

18. **TRANSITION BILLING:** In order to facilitate an orderly transition, including installation and training, and to provide a uniform billing cycle, the "Effective Date" of this Agreement will be the tenth (10th) day of the month following installation. You agree to pay a prorated amount for the period between the Installation date and the Effective Date. This payment for the transition period will be based on the base minimum usage payment prorated on a 30 day calendar month and will be added to your first invoice.

## FOR MUNICIPALITIES ONLY

19-A. **CUSTOMER COVENANTS:** You covenant and warrant that (1) it has, in accordance with the requirements of law, fully budgeted and appropriated sufficient funds for the current budget year to make the payments scheduled to come due and to meet its other obligations under this Agreement and such funds have not been expended for other purposes; and

(2) that there is no action, suit, proceeding or investigation pending, or threatened in any court or other tribunal or competent jurisdiction, state or federal or before any public board or body, in any way would (a) restrain or enjoin the delivery of this Agreement or the ability of you to make its Base Payments (as set out above); (b) contest or affect the authority for the execution or delivery of, or the validity of, the Agreement; or (c) contest the existence and powers of you; nor is there any basis for any such action, suit, proceeding or investigation; and

(3) That the equipment will be operated and controlled by you and will be used for essential government purposes and will be essential for the term of the Agreement.

(4) You have not previously terminated a rental for non-appropriation, except as specifically described in letter appended hereto.

19-B. **SIGNATURES:** Each signer (two if required) appearing herein below is fully conversant with the governing relevant legal and regulatory provisions and has full power and authorization to bind you. Signer(s) for you further warrant(s) its governing body has taken the necessary steps; including any legal bid requirements, under applicable law to arrange for acquisition of the Equipment; the approval and execution has been in accordance with all applicable open meeting laws; and that a resolution of the governing body of you authorizing execution of the Agreement has been duly adopted and remains in full force and effect.

19-C. **NON-APPROPRIATION:** In the event you are in default under the Agreement because:

1. Funds are not appropriated for a fiscal period subsequent to the one in which the Agreement was entered into which are sufficient to satisfy all of your obligations under the Agreement during said fiscal period;
2. Such non-appropriation did not result from any act or failure to act of you;
3. You have exhausted all funds legally available for all payment due under the Agreement; and
4. There is no other legal procedure by which payment can be made to Lessor.

Then, provided that (a) you have given Lessor written notice of the occurrence of paragraph 1 above thirty (30) days prior to such occurrence; (b) Lessor has received a written opinion from your counsel verifying the same within ten (10) days thereafter; and (c) you do not directly or indirectly purchase, rent or in any way acquire any services or equipment supplied or provided for hereunder; upon receipt of the equipment delivered to a location designated by Lessor, at your expense, Lessors remedies for such default shall be to terminate the Agreement. On the Effective Date of any such fiscal period during which notice is given; retain the advance payments, if any; and/or sell, dispose of, hold, use or rent the equipment as Lessor in its sole discretion may desire, without any duty to account to you.

22593 - 06/20/2008

6/14/2018 2:07 PM
Chris Daniel - District Clerk Harris County
Envelope No. 25297424
By: janel gutierrez
Filed: 6/14/2018 2:07 PM

Cause No.  2016-87708

| | | |
|---|---|---|
| HASSELL CONSTRUCTION COMPANY, INC., | § | IN THE DISTRICT COURT OF |
| *Plaintiff* | § | |
| | § | |
| v. | § | HARRIS COUNTY, TEXAS |
| | § | |
| ROYCE HASSELL and | § | |
| SILVIA HASSELL, | § | |
| *Defendants* | § | 113TH  JUDICIAL DISTRICT |

## AMENDED CERTIFICATE OF SERVICE

By my signature below, I hereby certify that on June 12th, 2018, all counsel of record, who have registered with the e-filing service, were served with a copy of the MOTION TO ALLOW DISCOVERY UNDER SECTION 27.006 OF THE TCPRC (the "Motion") via the Court's e-filing system.  On June 13th, 2018, an email was also sent to all counsel of record with a copy of the Motion, when the undersigned was notified that Silvia Hassell, a party in the case, who recently appeared as an attorney for another party in the case, alongside current counsel from Locke, Lord, had not received a copy of this pleading.

Respectfully Submitted,

**RENTEA & ASSOCIATES**
700 Lavaca, Suite 1400-2678
Austin, Texas  78701
(512) 472-6291
(512) 472-6278 Facsimile
brentea@rentealaw.com

By: */s/ Bogdan Rentea*
    Bogdan Rentea
    State Bar No. 16781000
ATTORNEY FOR PLAINTIFFS

## CERTIFICATE OF SERVICE

By my signature above, I hereby certify that on the 14th day of June, 2018, a true and correct copy of the foregoing *Amended Certificate of Service* was served on all parties of record through their counsel of record via the Court's e-file system, and an email was also sent to all counsel, in case the e-filing did not reach all counsel.

6/14/2018 4:43 PM
Chris Daniel - District Clerk Harris County
Envelope No. 25307736
By: janel gutierrez
Filed: 6/14/2018 4:43 PM

## CAUSE NO. 2016-87708

| | | |
|---|---|---|
| HASSELL CONSTRUCTION CO., INC., | § | IN THE DISTRICT COURT OF |
|     Plaintiff | § | |
| | § | |
| v. | § | HARRIS COUNTY, TEXAS |
| | § | |
| ROYCE AND SILVIA HASSELL, | § | |
|     Defendants | § | 113th JUDICIAL DISTRICT |

## RESPONSE IN OPPOSITION TO MOTION TO ALLOW DISCOVERY UNDER SECTION 27.006 OF THE TCPRC

**TO THE HONORABLE JUDGE OF SAID COURT:**

Royce Hassell (herein "Defendant"), the subject of newly asserted claims of Counter-Plaintiffs Phillip Hassell, Jason Hassell, Shawn Hassell Potts, and Michael Hassell (herein "Plaintiffs") opposes the motion of Plaintiffs for limited discovery and would show the Court as follows:

1.      Plaintiffs have failed to establish the requisite good cause for conducting discovery on the Anti-Slapp Motion to Dismiss (the "Motion to Dismiss") filed by Defendant Royce Hassell. The discovery requested by Plaintiffs is neither specific, nor do Plaintiffs specific how the requested discovery is necessary in order to respond to the Motion to Dismiss.

2.      Plaintiffs wish to depose Royce Hassell, again, over the exhibits to his Motion to Dismiss, most of which are either rulings or pleadings or transcripts in other cases, and the vast majority of which are documents prepared by HCCI. One is a transcript which includes Royce Hassell's testimony. The Motion to Dismiss exhibits are comprised of:

- A Final Judgment (Ex. 1);
- A final arbitration award (Ex. 2);
- A Bankruptcy Court Memorandum Opinion (Ex. 5),
- State District Court orders involving HCCI (Exs. 4, 19, 32; 33);

- Transcripts of Hearings involving HCCI including Royce Hassell's testimony (Exs. 6, 30; 31);
- Documents Produced by HCCI (Exs. 8, 14, 47);
- HCCI's own pleadings (Exs. 10, 17; 24;27; 28; 29; 34 35; 36; 37);
- Documents of Harris County Improvement District No. 18 (Exs. 11, 12; 41);
- Documents Produced by Liberty Mutual received from Phillip Hassell (Ex. 13);
- Documents prepared by HCCI's attorneys (Exs. 16; 18, 21, 22, 23, 39, 42, 44, 48);
- Privilege logs of HCCI's attorneys (Ex 9, 40);
- <u>Phillip Hassell's own affidavit, Phillip Hassell's verifications and *his own letters and emails*</u> (Exs. 7, 26; 45; 46; 20);
- State Comptroller Records pertaining to MDPG Holdings I (Ex. 38);
- A decision of the American Arbitration Association to recuse an arbitrator for evident partiality to HCCI and its attorneys (Ex. 49)
- A partial summary judgment in the case Mr. Rentea now represents HCCI in (Ex. 50).

The TCPA is meant to prevent needless use of resources defending meritless claims.  It is HCCI which owes Royce Hassell money and not the other way around.  As already determined in the arbitration, Royce Hassell breached no fiduciary duties and made no misrepresentations and he owes no money to HCCI much less to its controlling owners which dragged HCCI and Royce Hassell through years of arbitration needlessly.  *See,* Exhibit 1, to Motion to Dismiss which is the Final Judgment.

3.    A comparison of the allegations made by the corporation which the Plaintiffs control, HCCI, in 2014, and the newly repackaged allegations the controlling owners are asserting in this case in 2018, are the same claims:

| April 2018 ALLEGATIONS MADE IN NEW SUIT | MAY 2014 ALLEGATIONS MADE IN ARBITRATION DEMAND AND AMENDMENTS THERETO (Exhibit 34 to Defendant's Motion to Dismiss) |
|---|---|
|  |  |

| PARTIES | PARTIES |
|---|---|
| HCCI, Michael Hassell, Phillip Hassell, Shawn Hassell Potts, Jason Hassell. | "PARTIES:  CLAIMANT Hassell Construction Company, Inc.. . .  Mr. James Hassell remains Chairman of the Board of Directors and CEO for HCCI.  The other officers include its President James Phillip ("Phil") Hassell, Executive Vice-President Mike Hassell and Secretary/Treasurer Shawn Potts, the half-brother/sister, respectively of Respondent Royce Hassell.<br><br>Exhibit 34, Demand, para. 1. |
| **BREACH OF FIDUCIARY DUTY (para. 2)** | **BREACH OF FIDUCIARY DUTY (Ex. 34, p. 13)** |
| "Due to Royce's claimed status in and former status with HCCI, Royce at all times relevant herein, owed a fiduciary duty to [Plaintiffs], additionally, because of the confidential relationship among the parties, Royce owed an informal fiduciary duty to [Plaintiffs]. "<br><br>Para. 2b.<br><br>"These family members put their trust and confidence in Royce, the company business, HCCI was damaged by those false representations and breaches of the informal fiduciary duty, and, in turn, Phillip, Michael, Shawn and Jason's interest at HCCI and in a Trust has been diminished for which they now sue."<br><br>(2.h) | "As an officer and director of HCCI, Royce Hassell had a fiduciary relationship with HCCI, and in multiple instances set forth above, he breached his fiduciary duties to HCCI.  Royce Hassell's breach resulted in injury to HCCI and/or benefit to Royce Hassell. "<br><br>Ex. 34, Demand, para. 13.<br><br>"Mr. Hassell and HCCI (and the rest of the Hassell family most of whom work for HCCI) have continuously made special efforts to help extricate Royce Hassell and his companies from adverse effects of his financial mismanagement."<br><br>Ex. 34, Demand, Para. 9. |
| "Royce's action in operating RHP caused damages to HCCI, and in turn, Phillip, Michael, Shawn and Jason's interest in HCCI was diminished, for which they now sue."<br><br>(Paragraph 2d). | "Later, Royce Hassell would procure a job named Stellar Oil . . . Royce Hassell would invoice the owners for Stellar under his own company's name, while he was an officer and director for HCCI, yet retain all the monies paid to his company.  He would never reimburse HCCI for any of its costs, even after recognizing them on the cost to complete schedule that he had prepared for HCCI's financial statement."<br><br>Ex. 34, Demand, para. 29. |
| "FIRST, Royce breached that duty by activating a business in competition with HCCI under the corporate name of R. Hassell Properties, Inc." (paragraph 2.b.) | "Royce would prepare an agreement which was signed by Phil.  As part of this process Royce prepared documents that showed the structure of the Joint Venture which he submitted in his quest to obtain insurance coverage for the R. Hassell entities, including R. Hassell Properties, Inc.  Royce represented that R. Hassell Properties, Inc. was a wholly owned subsidiary of the R. Hassell Holding Company, Inc. which was one of the entities that was part of the Joint Venture.  HCCI would have no reason |

| | to believe that the corporate structure was not as Royce represented."<br><br>Ex. 34, Amended Demand, para. 26.<br><br>"After many meetings and again on July 15, 2013, Phil Hassell would meet with Royce Hassell at Royce's office to again discuss reduction of forces, the line of credit, and equipment, and to create a plan on what needed to happen.  It was at this meeting that Royce Hassell would bring up to Phil that he had several people that wanted to invest in a new company with him completely separate from HCCI and Royce's other entities.  ..A few days later at a meeting with HCCI, Mr. Hassell would confront Royce Hassell about starting another company and request an explanation and plan on how Royce Hassell would reduce his debt to HCCI."<br><br>Ex. 34, Demand, para. 30. |
|---|---|
| "and by using funds designated to reduce debt owed to HCCI to capitalize RHP;" (paragraph 2.c) | "Royce would sell his equipment in an attempt to reduce his debt to Trustmark.  HCCI would not benefit from the sale of his equipment.  While on Royce and Silvia Hassell (and their companies) would benefit from the sale. . . "<br>Ex. 34, Demand, para. 33.<br><br>"He would never reimburse HCCI for any of its costs, even after recognizing them on the cost to complete schedule."<br><br>Ex. 34 Demand, para. 29. |

| | |
|---|---|
| " Royce repeatedly represented to Phillip, Michael, Shawn and Jason, that he would pay a promissory note and repay a line of credit, and in reliance thereto, they agreed to allow the family owned and controlled business, to extend credit to Royce. "<br><br>(2.e) | "Royce Hassell has broken nearly every promise to reform his business practices, curb his lavish lifestyle and wasteful spending habits and repay debts to Mr. Hassell and HCCI, which are now $4 million.  This has harmed HCCI's financial condition its banking and surety relationships, and last but not least, its ability to procure and perform new work.  As a result of these unpaid debts, as well as other acts and omissions, HCCI has been damaged in an amount up to $10,000,000, Claimant's damages are continuing, and as such Claimants reserve the right to specific a claim in excess of $10,000,000 at the appropriate time. "<br><br>Ex. 34, Demand, para. 9. |

| | |
|---|---|
| "Royce further represented to Phillip, Michael, Shawn and Jason, that the money's borrowed would be used for business and not for personal purposes and, in reliance on these representations, they agreed to allow the family owned and controlled business to continue to extend credit to Royce."<br><br>(2.f) | **BREACH OF CONTRACT** (Debt/Foreclosure)<br><br>"Respondents borrowed money from HCCI which they have refused to pay back notwithstanding demand. The debt has been repeatedly acknowledged and secured by the multiple deeds of trust.  Respondent's breach of their obligations has caused Claimants injury."<br><br>Ex. 34, Demand, para. 37.<br><br>"Royce would misapply a significant portion of the funds for his personal living expenses which he represented to HCCI would be used to pay vendors and subcontractors. . . "<br><br>Ex 34 Amended Demand, para. 15. |
| "SECOND, Royce repeatedly represented to Phillip, Michael, Shawn and Jason, that he would pay a promissory note and repay a line of credit, and in reliance thereto, they agreed to allow the family owned and controlled business, to extend credit to Royce. (Para. 2(e ).)<br><br>"The representations of Royce were false, made with the intention that the family members rely on them, and the family members relied on them to their damage and detriment." Para. 2.g.<br><br>"The representations of Royce were false, made with the intention that the family members rely on them, and the family members relied on them to their damage and detriment." (2.g)<br><br>Royce fraudulently induced his family, by lying to Phil and causing him to sign, under false representation as to its real purpose, a joint venture agreement. (2.f) | **FRAUD**<br><br>"In multiple instances described above, Respondents made material representations to Claimants which were false and either known to be false or made recklessly, as a positive assertion, without knowledge of its truth. Respondents made the representations with the intent that the Claimants act on them, and Claimants relied on the representations to their detriment."<br>Ex. 34 Demand, Para 38.<br><br>"Royce and Silvia . . .  diverted the funds to pay off other debts. . . Royce and Silvia Hassell have taken from HCCI, in virtually every way conceivable, much to the detriment of HCCI, its stockholders, employees and families."<br><br>Ex. 34, Demand, para. 36.<br><br>"Claimants would rely on these false and/or reckless statements representations to their detriment by allowing the R. Hassell entities to draw down on the line of credit and as a result would sustain millions of dollars in damages . . . "<br><br>Ex. 34, Amended Demand, para. 15. |
| Additionally, Royce induced the family members to agree to extend and provide bonding capacity to Royce's business, by providing false financial information about his financial position. (2.f)<br><br>"Royce lied about and intentionally failed to disclose (i) the use of borrowed funds (ii) liens filed on construction project for which he was borrowing | In January of 2009, Royce Hassell and R. Hassell Builders, would begin work on the Wayne Gray . . .project procured under HCCI's name and surety relationship. . . . It was not long thereafter that HCCI would start receiving a large number of lien notices. . . [in] October 2010, when Royce Hassell and Silvia Hassell finally admitted they were having cash flow issues. . . |

| | |
|---|---|
| money (iii) the solvency of his companies (iv) the fact that he was under "funds control" and (v_ the fact that bonding companies had rejected him (vi) his affiliation with HCCI (viii) his forgery of Phil's signature on documents (viii) the validity of liens which he voluntarily gave on hiss properties. (Para. 2f) | Ex. 34, Demand, para. 11. |
| The improper use of the joint venture agreement caused significant damages to the family members. (2.f) | "Royce Hassell would hatch the idea of entering into a joint venture agreement – he would represent that this was for insurance purposes only, and it would him to be insured through HCCI's insurance carrier. . . . Ex. 34 Amended Demand Para. 25. |
| | |

4.     Plaintiffs can demonstrate no good cause to depose Royce Hassell on matters over which he has already been extensively interrogated by HCCI and about which he has testified frequently in multiple forums.

5.     Under the TCPA, the Court "may allow specified and limited discovery relevant to the motion," but only upon a showing of good cause.  *See., e.g.,* Tex. Civ. Prac. & Rem. Code 27.006(b); *see also Combined Law Enforcement Ass'ns of Tex. V. Sheffield,* No. 03-13-001-5-CV, 2014 WL 411672, *10 (Tex. App.-Austin, Jan.31, 2014)("These provisions can curtail potentially costly discovery in a possibly meritless case, thus serving the TCPA's goal of keeping litigation from being used to chill the exercise of constitutional rights, but can permit discovery upon a showing of good cause.").   In determining whether dismissal is warranted, "the court shall consider the pleadings and supporting affidavits stating that the facts on which the liability or defense is based."  *Id.*

6.     Allowing Royce Hassell's deposition would wholly defeat the underlying purpose of the TCPA, *i.e.,* to dispose of meritless cases *before* the commencement of costly and time-

consuming discovery.  Accordingly, Defendant respectfully requests that the Court deny Plaintiffs'

Motion for discovery.


Respectfully submitted,


/s/ *Silvia T. Hassell*_____
Silvia T. Hassell
Texas Bar No. 09205200
sehassell@aol.com
12807 Haynes Street, Bldg. C
Houston, Texas 77066
Tel. 713-665-1812
Fax. 713-665-0369

Attorney for Royce Hassell

## Certificate of Service

By my signature above I certify that counsel of record are being served with a copy of the foregoing document by Texas E-file and serve on the 14th day of June, 2018.

6/15/2018 9:58 AM
Chris Daniel - District Clerk Harris County
Envelope No. 25316414
By: janel gutierrez
Filed: 6/15/2018 9:58 AM

## CAUSE NO. 2016-87708

| | | |
|---|---|---|
| HASSELL CONSTRUCTION CO., INC., | § | IN THE DISTRICT COURT OF |
|     Plaintiff | § | |
| | § | |
| v. | § | HARRIS COUNTY, TEXAS |
| | § | |
| ROYCE AND SILVIA HASSELL, | § | |
|     Defendants | § | 113th JUDICIAL DISTRICT |

### REPLY TO THE RESPONSE OF PLAINTIFFS
### TO ROYCE HASSELL'S ANTI-SLAPP MOTION TO DISMISS

**TO THE HONORABLE JUDGE OF SAID COURT:**

Royce Hassell (herein "Defendant"), the subject of newly asserted claims of Counter-Plaintiffs Phillip Hassell, Jason Hassell, Shawn Hassell Potts, and Michael Hassell (herein "Plaintiffs"), makes this reply to the response of Plaintiffs to Defendants' Anti-Slapp Motion to Dismiss:

### PLAINTIFFS DO NOT ALLEGE CLAIMS
### "ON THE SAME THEORY AS ADVANCED BY ROYCE"

1.      The Plaintiffs have not alleged claims "on the same theory as advanced by Royce," as Plaintiffs argue in their response.

2.      This suit began when Hassell Construction Co., Inc. ("HCCI"), as controlled by Royce Hassell's siblings, asserted claims purportedly on behalf of HCCI that Royce Hassell has no ownership interest in HCCI.  No arbitration agreement exists regarding the issue of ownership and the matter was not the subject of the arbitration such that doors were neither opened or closed on that subject in the arbitration.

3.      In return, Royce Hassell has asserted claims in this case that he is an owner of HCCI, that he is an equal co-beneficiary of the JCH Irrevocable Trust with his Siblings, and that the Siblings are wrongfully denying him his equal share of HCCI and the JCH Trust through fraud.

4.      Now the Siblings have initiated a new suit, which is the subject of Defendants' Motion to Dismiss, purportedly as a counterclaim.  The new suit asserts old claims which have already been arbitrated and reduced to a Final Judgment in proceedings where the Siblings, who are in privity with HCCI, were virtually if not actually represented.   In this new suit, the Siblings again make the claims that Royce Hassell has failed to repay loans to HCCI which the Siblings claim they authorized HCCI to make to him because they trusted him as their fiduciary.  They also claim, again, that the Hassell 2012 Joint Venture partnership of which HCCI and the R. Hassell companies were partners, was fraudulently induced by Royce Hassell.  These claims are the subject of Royce Hassell's Anti-Slapp Motion to Dismiss.[1]

5.      In the middle of this dispute are attorneys, who while claiming to be loyal to a family corporation, HCCI, are loyal to others including a select group of owners of the company, the Siblings. Those same attorneys "represented" HCCI in the arbitration, and now claim to be "representing" HCCI in this case- when in fact they are seeking a do-over of the arbitration under the guise of a "counter-claim" for selected HCCI owners.

### THE ARBITRATION DETERMINED THE LOANS AND THE PARTNERSHIP BUT NOT THE STOCK OWNERSHIP

6.      Plaintiffs' arguments would turn *Linegar v. DLA Piper LLP,* 45 S.W. 3d 276 (Tex. 2016), on its head.  In *Linegar,* a shareholder who provided a loan to the corporation from his self-directed retirement account had standing to sue the corporation's lawyers when the corporation went bankrupt and the shareholder learned the lawyers had failed to file a UCC-1 financing statement which would have secured the loan.   *Id.* at 382.  Thus, he "had standing to sue the

---

[1] Defendant further supports its Anti-Slapp Motion to Dismiss with the affidavit of Royce Hassell attached as Exhibit 1, and the declaration of Silvia Hassell proving up documents which is Exhibit 2 to this Reply

corporation's law firm for malpractice for assuring the stockholder that the loan would be secured" when the corporation later went bankrupt. *In re SBMC HealthCare, LLC*, Civil Action 16-2947

7.     In this case neither HCCI nor the shareholders have been damaged by non-repayment of loans by Royce Hassell, because the arbitrators offset the loans with interest against profits owed to Royce Hassell's companies.   Nor have the Siblings been damaged because of a partnership which the arbitrators found was profitable. More importantly, Plaintiffs cannot demonstrate a "confidential relationship" with Royce Hassell because they did not trust him.

8.     By this suit, Plaintiffs are seeking to punish Royce Hassell for petitioning to enforce a judgment he won in arbitration.   Plaintiffs suit to re-litigate issues which have already been decided by Final Judgment is a collateral attack on that judgment and should be dismissed.

9.     Defendants respectfully prays that the Court grant Royce Hassell's Anti-Slapp Motion to Dismiss.

Respectfully submitted,

/s/ *Silvia T. Hassell*_____
Silvia T. Hassell
Texas Bar No. 09205200
sehassell@aol.com
12807 Haynes Street, Bldg. C
Houston, Texas 77066
Tel. 713-665-1812
Fax. 713-665-0369

Attorney for Royce Hassell

## Certificate of Service

By my signature above I certify that counsel of record are being served with a copy of the foregoing document by Texas E-file and serve on the 15th day of June, 2018.

# Attachment 1

**CAUSE NO. 2016-87708**

| | | |
|---|---|---|
| HASSELL CONSTRUCTION CO., INC., | § | IN THE DISTRICT COURT OF |
|     Plaintiff | § | |
| | § | |
| v. | § | HARRIS COUNTY, TEXAS |
| | § | |
| ROYCE AND SILVIA HASSELL, | § | |
|     Defendants | § | 113th JUDICIAL DISTRICT |

STATE OF TEXAS        §

COUNTY OF HARRIS     §

**AFFIDAVIT OF ROYCE J. HASSELL**

Before me, the undersigned notary, on this day personally appeared Royce J. Hassell, the affiant, a person whose identity is known to me who, after being duly sworn by me, upon oath stated:

1. My name is Royce Hassell. I am a Defendant and Third-Party Plaintiff in this case.  I am over the age of 21 years and am fully competent to make this Affidavit.  The facts contained in this affidavit are within my personal knowledge and are true and correct.

2. I am a defendant and counter-plaintiff in the above-styled and numbered cause.  As part of my involvement in litigation which has spanned the last four years, I have received and reviewed correspondence, pleadings and discovery responses related to the cases involving Hassell Construction Co., Inc.  I have personal knowledge of and am personally familiar with the documents identified herein.

3. I have read and am familiar with "Royce Hassell's Anti-Slapp Motion to Dismiss" and its supporting exhibits filed on May 21, 2018, in this case.

4. I have personal knowledge regarding Exhibits 7, 15, 20, 25 and 43 to the Motion to Dismiss as follows:

**EXHIBIT 7** to Royce Hassell's Anti-Slapp Motion to Dismiss, is a true and correct copy of an August 2012 letter handed to me by my brother Phillip in August of 2012, first proposing a partnership between HCCI and the R. Hassell Companies which eventually became the Hassell 2012 Joint Venture.

**EXHIBIT 15** to Royce Hassell's Anti-Slapp Motion to Dismiss, are true and correct copies of emails which I received in June of 2013, which were forwarded to me by my brother Philip Hassell of communications between himself and his wife, Rosalyn Hassell, who is the attorney-in-fact for the surety of the Springwoods Project, Liberty Mutual.

**EXHIBIT 20** to Royce Hassell's Anti-Slapp Motion to Dismiss, is a true and correct copy of a March 26, 2013, letter signed by my brother Phillip Hassell and me, which we sent to our attorney, Pascal Piazza, informing him that Coats Rose had a conflict of interest with HCCI and the R. Hassell Companies because we had jointly consulted with the law firm as a family in January of 2012, at which time we confided in them confidential information about our companies and our family circumstances.  At the time of this letter my brother personally expressed to me his concerns about confidential communications made to Coats Rose about our family and companies staying confidential.

**EXHIBIT 25** to Royce Hassell's Anti-Slapp Motion to Dismiss, is a true and correct copy of an email exchange between CommunityBank and myself dated May 10, 2017, after CommunityBank admitted to me they had given my private banking information to my siblings at Hassell Construction Company, Inc. at their request and without my permission in August of 2011.

**Exhibit 43** to Royce Hassell's Anti-Slapp Motion to Dismiss, is a true and correct copy of a g-mail exchange ending January 7, 2016, in which I exchanged correspondence with Harris County Improvement District No. 18 related to my Texas Pubic Information Act requests to Harris County Improvement District No. 18 related to Richard Rose's involvement in HCCI's case against the District.

5.   Additionally, I have personal knowledge that the events and facts described and set out in paragraphs 10-14; 16-30; the second part of paragraph 31; 32-35; 38-45; 71; 74-76; 85; 90; 106-108; 118-122 and 12-126; 129; and 136 of the Motion to Dismiss are true and correct.

6.   My knowledge of paragraph 15 of the Motion to Dismiss is from information obtained in the Texas Comptroller's Office public website.

7.  My knowledge of the first part of paragraph 31 of the Motion to Dismiss is from information filed in court records in Travis County, Texas.

8.  My knowledge of the events described in paragraph 36 -37 of the Motion to Dismiss comes from documents obtained through a Texas Open Records Act request.

9.  As a result of the outcome of the arbitration I owe no monies to Hassell Construction Company, Inc., rather Hassell Construction Company, Inc. owes my companies over $1.2 million dollars.

10. Hassell Construction Company, Inc. is controlled by Michael Hassell, Phillip Hassell, Shawn Hassell Potts and Jason Hassell.  The facts which I discovered over the last four years show that rather than trusting me, my Siblings had a plan to take Hassell Construction Company, Inc. for themselves to my exclusion.

11. The Hassell 2012 Joint Venture was Phillip Hassell's idea as he represented to me of a way of maximizing profits on projects by combining my companies' personnel, experience, equipment, offices and accounting, with that of Hassell Construction Company, Inc.  If Philip Hassell intended the partnership to be a fake, then he was lying to me and not the other way around.

12. At no time since 1991 have I had signature authority on HCCI bank accounts, nor was in control of the partnership accounting of the Hassell 2012 Joint Venture which was maintained on HCCI's books.

13. At a time when I was gravely ill, I trusted my siblings and they violated that trust.  I did not breach any fiduciary duties to Hassell Construction Company, Inc. and had no fiduciary duty to my siblings who had far superior knowledge and control of the events going on behind my back of which I was not aware.

14. From the time my siblings locked me out of Hassell Construction Company, Inc. in July of 2013, we have not spoken to each other, except as opposing litigants and/or through attorneys, since then.

I declare under penalty of perjury that the foregoing is true and correct.

Further affiant sayeth not.



ROYCE J. HASSELL

SWORN TO AND SUBSCRIBED before me by the said Royce J. Hassell on this 14th day of June, 2018, to verify which witness my hand and official seal.

_____

Notary Public in and For the State of Texas

CYNTHIA L. GROOMS
NOTARY PUBLIC - STATE OF TEXAS
ID# 2 9 4 4 9 4 - 2
COMM. EXP. 06-15-2020

Attachment 2

**CAUSE NO. 2016-87708**

| | | |
|---|---|---|
| **HASSELL CONSTRUCTION CO., INC.,** | § | **IN THE DISTRICT COURT OF** |
| **Plaintiff** | § | |
| | § | |
| **v.** | § | **HARRIS COUNTY, TEXAS** |
| | § | |
| **ROYCE AND SILVIA HASSELL,** | § | |
| **Defendants** | § | **113th JUDICIAL DISTRICT** |

<u>**DECLARATION OF SILVIA HASSELL**</u>

My name is Silvia Hassell.  I am over the age of 21 years and am fully competent to make this Declaration.

I am a licensed attorney in the State of Texas in good standing and have been since 1982.

I am counsel for Royce Hassell in the above-styled and numbered cause as well as a Defendant. As part of my duties as counsel, I prepare, serve, receive, and record pleadings and discovery on the parties herein and maintain those records.   My position as counsel requires that I have personal knowledge of and be personally familiar with all pleading, discovery, and events related to the case.  All information contained in this declaration it true and correct, and based on both my personal knowledge and my role as counsel of record for Royce Hassell.

This declaration refers to and pertains to the Exhibits attached to "Royce Hassell's Anti-Slapp Motion to Dismiss" filed on May 21, 2018, in this case.

**EXHIBIT 1** to Royce Hassell's Anti-Slapp Motion to Dismiss, is a true and correct copy of the Arbitration Award in favor of Royce Hassell's companies in Arbitration Case No. 0000-3178; Hassell Construction Company, Inc., et al v. R. Hassell Holding Co., Inc. et al.

**EXHIBIT 2** to Royce Hassell's Anti-Slapp Motion to Dismiss, is a true and correct copy of the "Final Judgment Confirming Arbitration Award", dated March 26, 2018, in Cause No. 2013-61995; *R. Hassell & Co., Inc., et al v. Hassell Construction Co., Inc., et al* in the 61st Judicial District Court of Harris County, Texas.

**EXHIBIT 3** to Royce Hassell's Anti-Slapp Motion to Dismiss, is a true and correct copy of "Plaintiffs' Motion to Strike Plea in Intervention" filed of record by R. Hassell & Company, Inc. moving to strike the plea in intervention of Michael Hassell, Phillip Hassell, Shawn Hassell Potts, and Jason Hassell on February 27, in Cause No. 2013-61995; *R. Hassell & Co., Inc., et al v. Hassell Construction Co., Inc., et al,* in the 125th Judicial District Court of Harris County, Texas.

**EXHIBIT 4** to Royce Hassell's Anti-Slapp Motion to Dismiss, is a true and correct copy of "Order Granting Plaintiffs' Motion to Strike Pleading in Intervention" signed on March 16 2018, by the Honorable Fredericka Phillips, Judge of the 61st Judicial District Court of Harris County, Texas, and entered of record in Cause No. 2013-61995; *R. Hassell & Co., Inc., et al v. Hassell Construction Co., Inc., et al,* in the 61st Judicial District Court of Harris County, Texas.

**EXHIBIT 5** to Royce Hassell's Anti-Slapp Motion to Dismiss, is a true and correct copy of a Memorandum Opinion of United States Bankruptcy Judge Marvin Isgur entered on May 11, 2015, in Case No. 15-30781; *In re: Hassell 2012 Joint Venture and Springwoods Joint Venture,* in the United States Bankruptcy Court for the Southern District of Texas, Houston Division.

**EXHIBIT 6** to Royce Hassell's Anti-Slapp Motion to Dismiss, is a true and correct copy of a transcript of an Emergency Motion Hearing (Telephonic Conference), of May 9, 2018, in Case No. 18-31189-H1-7; and Case No. 18-03042-HI-ADV, *In re Hassell 2012 Joint Venture,* in the United States Bankruptcy Court for the Southern District of Texas, Houston Division.

**EXHIBIT 8** to Royce Hassell's Anti-Slapp Motion to Dismiss, is a true and correct copy a document produced by HCCI in the bankruptcy litigation as HCCI Parties 042378 which purports to be an e-mail between Shawn Hassell Potts and Phillip Hassell dated June 28, 2012, regarding Coats Rose.

**EXHIBIT 9** to Royce Hassell's Anti-Slapp Motion to Dismiss, is a true and correct copy of "Defendants' Privilege Log" of Coats Rose prepared by or on behalf of Coats Rose and filed of record in Cause No. 2015-29275; *R. Hassell Holding Company, Inc., et al v. Coats Rose Ryman & Lee, et al*; in the 234th Judicial District Court of Harris County, Texas.

**EXHIBIT 10** to Royce Hassell's Anti-Slapp Motion to Dismiss, is a true and correct copy of "Plaintiff's Original Petition" filed of record by HCCI in Cause No. 2012-42981; *Hassell Construction Co., Inc. v. Springwoods Realty Co., et al,* In the 333rd Judicial District Court of Harris County, Texas.

**EXHIBIT 11** to Royce Hassell's Anti-Slapp Motion to Dismiss, is a true and correct copy of a document produced by Harris County Improvement District 18 in response to a Texas Open Records Act request which purports to be a redacted email dated 2/1/2013 exchange of February 21, 2013, involving Richard Rose of Coats Rose which was filed of record in Cause No. 2015-29275; *R. Hassell Holding Company, Inc., et al v. Coats Rose Ryman & Lee, et al,* In the 234th Judicial District Court of Harris County, Texas.

**EXHIBIT 12** to Royce Hassell's Anti-Slapp Motion to Dismiss, is a true and correct copy of a document produced by Harris County Improvement District 18 in response to a Texas Open Records Act request

which purports to be a redacted email to Richard Rose of Coats Rose dated 7/03/2012, which was filed of record in Cause No. 2015-29275; *R. Hassell Holding Company, Inc., et al v. Coats Rose Ryman & Lee, et al,* In the 234th Judicial District Court of Harris County, Texas.

**EXHIBIT 13** to Royce Hassell's Anti-Slapp Motion to Dismiss, is a true and correct copy of a document produced by Liberty Mutual in response to a document subpoena in the bankruptcy litigation bates stamped as LIBERTY 000037 which purports to be an email dated September 20, 2013, from Phillip Hassell appointing Coats Rose as HCCI's corporate counsel

**EXHIBIT 14** to Royce Hassell's Anti-Slapp Motion to Dismiss, is a true and correct copy of Hassell Construction Company, Inc. audit confirmation requests dated August 15, 2012, which were introduced and filed of record in as evidence during Royce Hassell's testimony in the bankruptcy hearing of March 25, 2015 and also as RH6707 and filed of record in Case 15-30781, *In re Hassell 2012 Joint Venture and Springwoods Joint Venture,* in the United States Bankruptcy Court for the Southern District of Texas, Houston, Division.

**EXHIBIT 16** to Royce Hassell's Anti-Slapp Motion to Dismiss, is a true and correct copy of an email forwarded to me by my co-counsel, Robert Kruckemeyer, which was filed of record in Cause No. 2013-61995; *R. Hassell & Co., Inc., et al, v. Hassell Construction Company, Inc.,* in the 125th Judicial District Court of Harris County, Texas, consisting of an e-mail he received from Patrick Gaas of Coats Rose dated November 18, 2013.

**EXHIBIT 17** to Royce Hassell's Anti-Slapp Motion to Dismiss, is a true and correct copy of Hassell Construction Company, Inc. and Hassell Management, Inc's "Defendants' Reply to Plaintiffs' Response Regarding Plaintiffs' Motion to Substitute Counsel" which was filed of record on January 24, 2014, in Cause No. 2013-61995; *R. Hassell & Co., Inc., et al v. Hassell Construction Co., Inc., et al,* in the 125th Judicial District Court of Harris County, Texas

**EXHIBIT 18** to Royce Hassell's Anti-Slapp Motion to Dismiss, is a true and correct copy of an email letter I received on July 17, 2014, from Coats Rose Director David Lynch, just prior to the second, July 21, 2014, mediation in the Springwoods lawsuit asserting in part "Royce Hassell do[es] not possess any authority to speak for Hassell Construction Company, Inc" which was filed of record in Cause No. 2015-29275, *R. Hassell Holding Company, Inc., et al v. Coats Rose Ryman and Lee, et al;* In the 234th Judicial District Court of Harris County, Texas.

**EXHIBIT 19** to Royce Hassell's Anti-Slapp Motion to Dismiss, is a true and correct copy of the "Order Granting Motion for Leave to Designate Responsible Third-Party [Bogdan Rentea]" dated August 18, 2017, entered in the malpractice lawsuit he filed for HCCI against Pascal Piazza and Silvia Hassell in Cause No. 2017-00535, *Hassell Construction Co., Inc. v. Pascal Piazza and Silvia Hassell,* in the 152nd Judicial District Court of Harris County, Texas.

**EXHIBIT 21** to Royce Hassell's Anti-Slapp Motion to Dismiss, is a true and correct copy of a May 21, 2013, email and attachments is a letter Pascal Piazza forwarded to me which he received from Coats Rose Director David Lynch, purportedly responding to the March 26 2013, objections to Coats Rose's conflicts expressed by Royce Hassell and Phillip Hassell on behalf of Hassell Construction Co., Inc. and the R. Hassell Companies, which has been filed of record in Cause No. 2013-61995; *R. Hassell & Co., Inc. v. Hassell Construction Co., Inc.,* In the 125th Judicial District Court of Harris County, Texas.

**EXHIBIT 22** to Royce Hassell's Anti-Slapp Motion to Dismiss, is a true and correct copy of a September 23, 2013, letter forwarded to me from Pascal Piazza wherein Phillip Hassell purports to rescind his signature on the March 26, 2013, letter to Pascal Piazza, which has been filed of record in Cause No. 2013-61995; *R. Hassell & Co., Inc., et al v. Hassell Construction Co., Inc., et al;* In the 125th Judicial District Court of Harris County, Texas.

**EXHIBIT 23** to Royce Hassell's Anti-Slapp Motion to Dismiss, is a true and correct copy of a correspondence forwarded to me which purports to include a fee agreement between HCCI and Coats Rose dated February 24, 2012, signed by Phillip Hassell wherein Hassell Construction retained Coats Rose to "evaluate potential defensive strategies related to transactions of matters involving R. Hassell Builders, R. Hassell & Company, and Royce and Silvia Hassell which has been filed of record in Cause No. 2012-61995; *R. Hassell & Co., Inc., et al v. Hassell Construction Co., Inc., et al,* In the 125th Judicial District Court of Harris County, Texas.

**EXHIBIT 24** to Royce Hassell's Anti-Slapp Motion to Dismiss, is a true and correct copy of "Defendants'/Third-Party Defendants' Motion to Consolidate" filed of record on August 14, 2014, in Cause No. 2013-61995, *R. Hassell & Co., Inc. v. Hassell Construction Co., Inc.,* in the 125th Judicial District Court of Harris County, Texas, asserting, in part, that claims and parties should be consolidated into the case under the single action rule.

**EXHIBIT 26** to Royce Hassell's Anti-Slapp Motion to Dismiss, is a true and correct copy of an affidavit singed by Phillip Hassell dated October 6, 2014, filed of record in the American Arbitration Association Case No. 01-14-0000-3178 by Coats Rose as counsel for Hassell Construction Co., Inc., Hassell Management and Shawn Hassell Potts, asserting, in part, that Hassell Construction Co., Inc. had been adverse to Royce and Silvia Hassell and the R. Hassell companies at all times from January of 2012, forward.

**Exhibit 27** to Royce Hassell's Anti-Slapp Motion to Dismiss, is a true and correct copy of a "Verified Answer of Hassell Construction Company, Inc. to the Petition in Intervention" signed by Phillip Hassell and filed of record on October 1, 2014, in Cause No. 2012-42981; *Hassell Construction Co., Inc. v. Springwoods Realty Company,* in the 333rd Judicial District Court of Harris County, Texas, asserting, in part, that Hassell Construction Co., Inc. had not been partners with the R. Hassell companies "at any time."

**Exhibit 28** to Royce Hassell's Anti-Slapp Motion to Dismiss, is a true and correct copy of Bogdan Rentea's "Plaintiffs' Notice of Non-Suit" filed of record on October 3, 2016, in Cause No. 2012-42981; *Hassell Construction Co., Inc. v. Springwoods Realty Company, et al,* in the 333rd Judicial District Court of Harris County, Texas, dismissing Harris County Improvement District 18 and Springwoods Realty from a lawsuit which had been filed more than four years previously by Hassell Construction Co., Inc. as directed by Royce Hassell.

**Exhibit 29** to Royce Hassell's Anti-Slapp Motion to Dismiss, is a true and correct copy of HCCI's "Defendant's Response in Opposition to Various Motions for Reconsideration, Request for an Evidentiary and In Camera Hearing, and Extensions of time Filed on March 19, 2014" filed of record on March 26, 2014, in Cause No. 2013-619995; *R. Hassell & Co., Inc., et al v. Hassell Construction Co., Inc, et al.;* in the 125th Judicial District Court of Harris County, Texas asserting, in part, "all issues that relate to the construction and application of the contract, including the construction of letters that the Plaintiffs now contend are evidence of the existence of additional and distinct oral contracts concerning the parties' continuing business relationship are questions for the arbitrators to decide." (pg. 3)

**Exhibit 30** to Royce Hassell's Anti-Slapp Motion to Dismiss, is a true and correct copy of an official transcript of March 25, 2015, proceedings Document 48, filed of record in United States Bankruptcy Court Case 15-30781, *In re Hassell 2012 Joint Venture and Springwoods Joint Venture,* which includes the sworn testimony of Royce Hassell.

**Exhibit 31** to Royce Hassell's Anti-Slapp Motion to Dismiss, is a true and correct copy of the first page of "Claimants Post Hearing Brief" filed of record in American Arbitration Association Case No. 01-14-0000-3178 wherein attorneys for Hassell Construction Co., Inc. and Hassell Management Services, LLC, including Bogdan Rentea, identify and describe the parties to the arbitration as "Claimants James C. Hassell ("JCH") and Hassell Construction Company, Inc. ("HCCI"). Counter-Respondents are Hassell Management Services, LLC (("HMS"), Shawn Potts, James C. Hassell and HCCI.  Because Respondent Royce Hassell has brought a derivative claim on behalf of HCCI's and HMS' officers and directors, putative Counter-Respondents are also those officers and directors, i.e., Phillip Hassell and Michael Hassell."

**Exhibit 32** to Royce Hassell's Anti-Slapp Motion to Dismiss, is a true and correct copy of an "Order Granting Defendants/Third Party Defendants' Motion to Consolidate" entered on November 17, 2014, in Cause No. 2013-61995*, R. Hassell & Company, Inc., et al v. Hassell Construction Co., Inc., et al;* in the 125th Judicial District Court of Harris County, Texas.

**Exhibit 33** to Royce Hassell's Anti-Slapp Motion to Dismiss, is a true and correct copy of an "Order of Recusal and Transfer" entered on March 9, 2018, in Cause No. 2013-61995; *R. Hassell & Co., Inc. v. Hassell Construction Co., Inc.,* transferring the case to the 61st Judicial District Court of Harris County, Texas.

**Exhibit 34** to Royce Hassell's Anti-Slapp Motion to Dismiss, are true and correct copies of the arbitration demands drafted by Coats Rose and Bogdan Rentea and filed of record in American Arbitration Association Case No. 01-14-0000-3178 beginning on May 2, 2014, which was consolidated with matters compelled to arbitration in Cause No. 2013-61995; *R. Hassell & Co., Inc., et al v. Hassell Construction, Co., Inc., et al;* In the 125th Judicial District Court of Harris County, Texas, as consolidated.

**Exhibit 35** to Royce Hassell's Anti-Slapp Motion to Dismiss, is a true and correct copy of "Claimants' Motion to Join Additional Parties" filed by Bogdan Rentea of record in American Arbitration Association Case No. 01-14-0000-3178 on behalf of HCCI on November 16, 2016, stating joinder of R. Hassell Properties "is necessary, if not indispensable, in order to give an ultimate Award in favor of Claimants, full relief against all members of the Hassell 2012 JV" and asserting multiple additional parties may be added to the case.

**Exhibit 36** to Royce Hassell's Anti-Slapp Motion to Dismiss, is a true and correct copy of an agreement proposed by Coats Rose and Bogdan Rentea and emailed to my co-counsel, Leonard H. Simon during hearings held December 15 and 16, 2016, in American Arbitration Association Case No. 01-14-0000-3178, which Mr. Simon forwarded to me.

**Exhibit 37** to Royce Hassell's Anti-Slapp Motion to Dismiss, is a true and correct copy of "Defendants' Motion to Compel Arbitration and Abatement Pending Arbitration" filed of record by Hassell Construction Co., Inc. and Hassell Management Services, LLC in Cause No. 2013-61995; *R. Hassell & Co., Inc., et al v. Hassell Construction Co., Inc. and Hassell Management Services, LLC,* in the 125th Judicial District Court of Harris County, Texas.

**Exhibit 38** to Royce Hassell's Anti-Slapp Motion to Dismiss, is a true and correct copy of a public records I obtained from the Texas Comptroller's website regarding MDPG Holdings, I, LLC which shows it to be an entity registered in 2007, whose members are Micky Das and Patrick Gaas, and with a registered agent of Patrick Gaas, at Coats Rose 3 E. Greenway Plaza, Ste. 2000, Houston, Texas 77046.

**Exhibit 39** to Royce Hassell's Anti-Slapp Motion to Dismiss, is a true and correct copy of an October 30, 2013, letter from Patrick Gaas of Coats Rose forwarded to me by my co-counsel Robert J. Kruckemeyer pertaining to Cause No. 2013-61995; *R. Hassell & Co., Inc., et al v. Hassell Construction Co., Inc., et al,* asserting "It is regrettable that there are no funds available to distribute the joint venture members" as well as additional documents and correspondence received by me pertaining to the lien asserted by Coats Rose on the Stellar project.

**Exhibit 40** to Royce Hassell's Anti-Slapp Motion to Dismiss, is a true and correct copy of Bogdan Rentea's privilege log served on me by Mr. Rentea in Cause No. 2017-00535; *Hassell Construction Co., Inc. v. Pascal Piazza and Silvia Hassell;* In the 152 Judicial District Court of Harris County, Texas.

**Exhibit 41** to Royce Hassell's Anti-Slapp Motion to Dismiss, is a true and correct copy of a "Local Government Officer Conflicts Disclosure Statement" filed of record in Cause No. 2015-29275; *R. Hassell Holding Co., Inc., et al v. Coats Rose, et al;* In the 234th Judicial District Court of Harris County, Texas; signed by Richard Rose on September 30, 2013, which states "Hassell Construction Co., Inc., or a related company or entity, has retained Coats Rose PC as legal counsel.  I am a shareholder/director of Coats Rose PC.  I am not involved in the representation of Hassell Construction Co., Inc. or any related company or entity, and have no knowledge of such representation."

**Exhibit 42** is a true and correct copy of a settlement proposed made by Coats Rose in November of 2013 to settle all matters in contention between the Hassells which included a term "forget conflicts" which had been claimed against Coats Rose in connection with Cause No. 2013-61995; *R. Hassell & Co., Inc., et al v. Hassell Construction Co., Inc., et al,* In the 125th Judicial District Court of Harris County, Texas.

**Exhibit 44** to Royce Hassell's Anti-Slapp Motion to Dismiss, is a true and correct copy of an email received by me from Heather Asselin addressed to various persons dated January 14, 2015, pertaining to American Arbitration Association Case No. 01-14-0000-3178 advising "Coats Rose will be representing Phil, Shawn and Michael Hassell."

**Exhibit 45** to Royce Hassell's Anti-Slapp Motion to Dismiss, is a true and correct copy of Phillip Hassell's December 20, 2013, verification on behalf of Hassell Construction Co., Inc. of the "Motion to Compel Arbitration and Abatement Pending Arbitration" filed of record in Cause No. 2013-61995; *R. Hassell & Co., Inc., et al v. Hassell Construction Co., Inc., et al*

**Exhibit 46** to Royce Hassell's Anti-Slapp Motion to Dismiss, is a true and correct copy of "Defendants' Reply to Plaintiffs' Response to Motion to Compel Arbitration and Abatement Pending Arbitration" filed of record on January 24, 2014, in Cause No. 2013-61995, which attaches the Verification of Phillip Hassell dated January 23, 2014, on behalf of Hassell Management Services LLC. verifying that al claims "arise directly out of the JVA, and fit squarely within the scope of the arbitration provision contained in the JVA between Plaintiffs and Defendants." (para. 11).

**Exhibit 47** to Royce Hassell's Anti-Slapp Motion to Dismiss, is a true and correct copy of pages from Hassell Construction Co., Inc.'s Audited Financials produced in Case No. 15-30781; *In re:  Hassell 2012 Joint*

*Venture and Springwoods Joint Venture,* in the United States Bankruptcy Court for the Southern District of Texas, Houston Division.

**Exhibit 48** to Royce Hassell's Anti-Slapp Motion to Dismiss, is a true and correct copy of a document produced by Richard Rose at his deposition, identified by him and marked as Exhibit 15 to his deposition in Cause No. 2015-29275; *R. Hassell Holding Company, Inc., et al v. Coats Rose, et al;* In the 234th Judicial District Court of Harris County, Texas.

**Exhibit 49** to Royce Hassell's Anti-Slapp Motion to Dismiss, is a true and correct copy (with redactions which I added deleting the names of the arbitrators) of an email I received from the American Arbitration Association pertaining to American Arbitration Association Case No. 01-14-0000-3178 on November 13, 2016, removing one of the arbitrators for evident partiality.

**Exhibit 50** to Royce Hassell's Anti-Slapp Motion to Dismiss, is a true and correct copy of a "Partial Summary Judgment" signed by the Honorable Daryl L. Moore on September 5, 2017, and entered in Cause No. 206-84811, *Hassell Construction Co., Inc., v. Springwoods Realty Company,* In the 333rd Judicial District Court of Harris County, Texas, dismissing Hassell Construction Co., Inc.'s claims against the Springwoods defendants WITH PREJUDICE except for a single invoice dated December 28, 2012.

In addition to the foregoing I also attach and identify the following affidavits of Royce J. Hassell filed in other cases:

Affidavit of Royce Hassell dated October 14, 2014, filed of record in Cause No. 2012-42981; *Hassell Construction Co., Inc. v Springwoods Realty, Inc. and Harris County Improvement District, et al,* In the 333rd Judicial District Court of Harris County, Texas.  [Attachment 1];

Affidavit of Royce Hassell dated January 18, 2016, filed of record in Cause No. 2015-29275; *R. Hassell Holding Co., Inc., et al v. Coats, Rose, Ryman & Lee, P.C., et al,* In the 234th Judicial District Court of Harris County, Texas.  [Attachment 2].

I declare under penalty of perjury that the foregoing is true and correct.

Executed in Houston, Texas, on the 14th day of June 2018.


 *Silvia T. Hassell*

SILVIA T. HASSELL

6/15/2018 10:00 AM
Chris Daniel - District Clerk Harris County
Envelope No. 25317136
By: janel gutierrez
Filed: 6/15/2018 10:00 AM

Cause No.  2016-87708

| | | |
|---|---|---|
| HASSELL CONSTRUCTION COMPANY, INC., | § | IN THE DISTRICT COURT OF |
| *Plaintiff* | § | |
| | § | |
| v. | § | HARRIS COUNTY, TEXAS |
| | § | |
| ROYCE HASSELL and | § | |
| SILVIA HASSELL, | § | |
| *Defendants* | § |  113TH  JUDICIAL DISTRICT |

### SUPPLEMENT TO THE ORIGINAL ANSWER, COUNTERCLAIM AND THIRD-PARTY PETITION OF MICHAEL HASSELL

NOW COMES MICHAEL HASSELL ("Michael") and would show the Court as follows:

1.     Michael hereby incorporates, for all purposes, all matters asserted and set forth in his Original Answer, Counterclaim and Third Party Petition ("original pleading"), filed on April 16, 2018.

2.     Michael hereby supplements said original pleading as follows:  to the extent not made clear in his original pleading, Michael also asserts the claims set out in his original pleading against Royce Hassell and the third parties, in his capacity as Trustee of the James C. Hassell Intervivos Trust ("Trust").

WHEREFORE, Michael Hassell prays that Third-Party Defendants be cited to appear and answer herein and that, after trial, he be granted the damages, interest, attorney fees, and all other and further relief to which he may show himself justly entitled, in his capacity as Trustee of the Trust.

Respectfully Submitted,

**RENTEA & ASSOCIATES**
700 Lavaca, Suite 1400-2678
Austin, Texas  78701
(512) 472-6291
(512) 472-6278 Facsimile
brentea@rentealaw.com

By: */s/ Bogdan Rentea*

Bogdan Rentea
State Bar No. 16781000
ATTORNEY   FOR   PLAINTIFF,   and
PHILLIP, MICHAEL and JASON HASSELL
and SHAWN HASSELL  POTTS

## CERTIFICATE OF SERVICE

I hereby certify that on this 15th day of June, 2018, a true and correct copy of the foregoing *Supplement to the Original Answer, Counterclaim and Third-Party Petition of Michael Hassell*, was served on all opposing parties through their counsel of record via the Court's e-filing system.

*/s/ Bogdan Rentea*
Bogdan Rentea

6/15/2018 11:09 AM
Chris Daniel - District Clerk Harris County
Envelope No. 25320738
By: janel gutierrez
Filed: 6/15/2018 11:09 AM

## Silvia T. Hassell
### Attorney at Law
12807 Haynes St., Bldg.  C
Houston, Texas 77066
Telephone  713-665-2442
Telecopier:  713-665-0369

sehassell@aol.com

June 15, 2018

Chris Daniel, District Clerk

Harris County, Texas

201 Caroline, Suite 420

Houston, Texas 77002

(Via e-file).

Re:  Cause No. 2016-87708; *Hassell Construction Co., Inc., et al v. Royce Hassell, et al;*  In the 113th Judicial District Court of Harris County, Texas.

Dear Mr. Daniel:

     Please find e-filed herewith Exhibit 42 to "Royce Hassell's Anti-Slapp Motion to Dismiss" filed May 19, 2018.  Upon review it appears Exhibit 42 has not been uploaded into the system although I had served opposing counsel with a copy on May 19 (see below copy of email).  I apologize for any inconvenience.  If there is anything further I need to do, please let me know.

     Thank you for your assistance and cooperation.

Very truly yours,

*/s/ Silvia T. Hassell*

Silvia T. Hassell

**From:** sehassell <sehassell@aol.com>
**To:** brentea <brentea@rentealaw.com>
**Subject:** Cause No. 2016-87708 (Part IV)
**Date:** Sat, May 19, 2018 6:13 pm
**Attachments:** Exhibits 31-40 TCPA Motion to Dismiss.pdf (24633K)

---

Dear Mr. Rentea:

Attached are Exhibits 31-40 of Royce Hassell's TCPA Motion to Dismiss.

Silvia T. Hassell.


Very truly yours,

/s/ *Silvia T. Hassell*
Silvia T. Hassell

# EXHIBIT
# 42

EXHIBIT 16
WIT: Rose
DATE: 12-18-15
DEBBIE BOOTHE

①

Structure

① JV          7/1/12 K → are in JV

② All jobs stand on their own

June 30, 2012

③ Review accounting on each project
as completed and to allocate
To extent $ to Royce reduces
$3.7 MM Debt.

④ HCCI will fund proportionate cost
of project manager fee TRanstar I &
Superintendent on site 100%
Field labor                  100%
Subs suppliers will pay to
extent they can do so. /
(Capping out HCCI line)

⑤ RH will timely submit all bills
to SEC

① Sept or Oct 2013 RH walked
out and has not submitted
any estimate
applications for payment.

RH knows status of TI + II

SEC has to keep Surety
satisfied

SEC has to see all bills

②

Won't pay overhead

3rd Party
Overhead — limit reasonable allocation
Profit.

$118M, advance on Transtar
paid back.

Equipment billed same for both

Dismiss lawsuit
Forget conflict.

RH controls job
Relieves burden of financing
activity on site and PM

$3.7MM advanced on LOC
for RH operations

CONFIDENTIAL - RULE 408
FOR DISCUSSION PURPOSES ONLY

CINCO SW SEC 66

TRUNCTAIR 1

CINCO SW SEC 68

1-45 LEFT TURN

(SUMMER FINANCIAL)

CINCO NW SEC 7.5 PHASE 1

CY FAIR

STUBENER SEG. B

US 59 FRONTAGE

CINCO SW SEC 71

      "     "  69

      "     "  70

CINCO NW SEC 5 PH2

TRUNCTAIR II

MAHAFFEY

AIRPORT AVE EXT.

GOLFVIEW

CINCO NW SEC 8

STELLAR OILFIELD

STAFFORDSHIRE

CINCO NW SEC 9

MULHAFFEY PAVING

CINCO SW SEC 64

FM 105 TURN LANE

SYLVAN RODRIGUEZ

LAKES OF CYPRESS FOREST

6/20/2018 4:18 PM
Chris Daniel - District Clerk Harris County
Envelope No. 25436923
By: janel gutierrez
Filed: 6/20/2018 4:18 PM

# RENTEA & ASSOCIATES
_____

### Attorneys At Law

700 Lavaca, Suite 1400-2678
Austin, Texas  78701

**Bogdan Rentea\***

Tel. (512) 472-6291                    *\*Board Certified Administrative Law*
Fax  (512) 472-6278                    *Texas Board of Legal Specialization*
Email: brentea@rentealaw.com

June 20, 2018

The Honorable Michael Landrum
Judge, 113th Judicial District Court
Harris County, Texas

      Re:    Cause No. 2016-87708; Hassell Construction Company, Inc. et al
            v. Royce and Silvia Hassell

Dear Judge Landrum:

Following the oral hearing on Royce Hassell's ("Royce") anti-SLAPP motion, you directed the Counter-Plaintiffs[1] to provide you with answers to the following questions:

1. Do the Counter-plaintiffs have standing to seek general and exemplary damages from Royce, and/or his companies, as a result of the garnishments he attempted against HCCI's bank accounts?

2. If they do have standing, should their claim(s) in this regard be heard in this Court, or should they be transferred to the Court in which the wrongful garnishment action brought by HCCI is pending, i.e. the 61st Judicial District Court?

_____

[1]  Counter-Plaintiffs are Phillip, Michael and Jason Hassell, and Shawn Hassell Potts, in their individual capacities, and in their capacities as beneficiaries of the James C. Hassell Intervivos Trust ("Trust"), and Michael Hassell, in his capacity as trustee of the Trust.

**First, a short recap of the pending garnishment proceedings.**[2]

Royce's companies obtained a money judgment against HCCI on March 26, 2018.[3]

The 1st garnishment application was filed on April 10, 2018.

HCCI, as the debtor, filed a motion to vacate the garnishment on April 16, 2018, pointing out, inter alia, that the funds attempted to be garnished were subject to a prior lien by the bank, and represented construction funds.

Royce's companies filed a response to the motion on April 25, 2018.

HCCI and James C. Hassell, (Royce's father) filed a claim for wrongful garnishment on April 25, 2018.

Royce's companies, undeterred by the knowledge that the bank was going to call the note and apply over $1.4MM to an outstanding loan, filed a 2nd application for writ of garnishment on May 4, 2018.

The bank answered the first writ on May 7, 2018, confirming that it had called the note and applied over $1.4MM towards the outstanding balance on the note.

**Second, Royce now disregards his own corporate form**.

On June 13, 2018, Royce, now represented by his wife and business partner, Silvia Hassell, ("Silvia"), takes the new position that the judgment signed on March 26, 2018, was not only in favor of his companies, but for his individual benefit as well, and that he, personally, had every right to seek garnishment of HCCI's bank accounts. See his *Response to Motion to Disqualify Silvia*, at paragraphs 2, 3, and 5. The highlighted version of the response is attached hereto as **Exhibit A**.

Royce, in essence, admits that there should be no separation between him and his companies.  He disregards his own corporate form.

---

[2]     The Court is requested to take judicial notice of the pleadings in cause numbers 2013-61995A and 2013-61995B.

[3]     The proceeding in which the judgment was obtained is for practical purposes over.  Post judgment motions have been ruled upon, and all that remains to be filed is a notice of appeal.

Therefore, he should also be personally responsible for any damages caused by a wrongful garnishment, as he admits that he should be treated as the garnishee.

**Third, the various capacities of the Counter-Plaintiffs**.

This Court is aware that the Counter-Plaintiffs seek damages caused by Royce's garnishment, in their individual capacities, as well as in their capacity as beneficiaries of the trust.

The Court is hereby being advised that the Counter-Plaintiffs, in their individual capacity, with the exception of Jason, signed, as personal guarantors, the surety bond obtained by HCCI for the various construction jobs it had in progress at the time of the garnishment.  See Guarantee attached as **Exhibit B**.

Therefore, the Counter-Plaintiffs also bring their claims against Royce, in their capacity as individual guarantors for HCCI's performance of the bonded construction jobs.

**The specific answers to the Court's questions.**[4]

1. **The Counter-Plaintiffs have standing to assert claims for wrongful garnishment, in both their individual capacities, and as beneficiaries of the Trust.  The Trustee has standing to make a claim for damages to the Trust's assets.**

As individuals, they suffered damages due to Royce's garnishment, when the bank applied funds earmarked for construction related expenses, to the HCCI note. As guarantors of the construction projects, they became subject to liability for any unpaid expenses.

Royce knew that, and intended to harm them, by his garnishment, which he knew would yield him ZERO dollars. He filed not one, but two applications for a writ of garnishment, even after he was advised that construction finds were being applied by the bank towards payment of a note.

As beneficiaries, they have the right to pursue Royce for the recovery of lost funds, which the garnishment insured would happen and which Royce intended for it to happen.

---

[4] This letter shall also serve as a supplement to the response of Counter-Plaintiffs to Royce's anti-SLAPP motion.

They should be allowed to show the harm suffered by them, not only as beneficiaries of the Trust, but also as personal guarantors for the performance of HCCI's construction projects.

The law is settled as to their rights as beneficiaries of the Trust.

> "*Generally, only personal representatives and heirs have standing to sue for recovery of property on behalf of an estate.  See, e.g., Fort Motor Co. v. Cammack, 999 S.W.2d 1, 4 (Tex.App.-Houston [14th Dist] 1998, pet. denied) (citing Shepherd v. Ledford, 962 S.W.2d 28, 31 (Tex.1998)).  Personal representatives and heirs have a justiciable interest in thee state property. Id. at 5.  \*4 If a beneficiary has an interest in estate property under a probated will, then the beneficiary has standing as an heir to sue for recovery of estate property.  See, e.g., Jansen, 14 S.W.3d at 431-32 (residuary beneficiaries under will who were presently entitled to take property had standing to sue to set aside deed executed by decedent); Pike v. Crosby, 472 S.W.2d 588, 590 (Tex.App.-Eastland 1971, no writ) (requiring plaintiffs to show that they were beneficiaries under a probated will to sue to cancel deeds executed by decedent).  Successors in interest to such a beneficiary also have standing.  See Jansen,14 S.W.3d at 433.*"

*Houston v. Ludwick*, 14-09-00600-CV, 2010 WL 4132215, at \*3-4 (Tex. App.--Houston [14th Dist.] Oct. 21, 2010, pet. denied).

Here, the Trust at issue, is an irrevocable trust, that establishes and fixes the rights of the siblings.  Since the main asset of the trust is stock in HCCI, the beneficiaries and the trustee have standing to maintain their claims.

### 2.   Should the claim related to the garnishment be maintained in this case, or transferred to the 61st Judicial District court?

In short, the claim(s) related to the garnishment should remain in this Court, and the garnishment proceedings pending in the 61st Judicial District Court, transferred to this Court.

Such transfer would insure that all claims against all parties, are tried in one Court, and there is no possibility of inconsistent results, or double recovery. Further, judicial economy would be best served by such a transfer.

No party to the garnishment action pending in the 61st Judicial District Court would be inconvenienced or prejudiced by the transfer.

Finally, the trier of fact would have the benefit of considering all claims by all parties, in one proceeding, allowing for the most informed decision based on a totality of circumstances.

## Conclusion

Based on the foregoing, the Counter-Plaintiffs respectfully request that Royce's anti-SLAPP motion be in all things denied, and that the garnishment proceeding pending in the 61st Judicial District Court, be transferred to this Court for all purposes.

Respectfully submitted,

*/s/ Bogdan Rentea*

Bogdan Rentea

cc:     all counsel of record, via the Court's e-filing system.

**CAUSE NO. 2016-87708**

| | | |
|---|---|---|
| HASSELL CONSTRUCTION CO., INC., | § | IN THE DISTRICT COURT OF |
|     Plaintiff | § | |
| | § | |
| v. | § | HARRIS COUNTY, TEXAS |
| | § | |
| ROYCE AND SILVIA HASSELL, | § | |
|     Defendants | § | 113th JUDICIAL DISTRICT |

**ROYCE HASSELL'S RESPONSE TO DISQUALIFICATION MOTION**
**AGAINST SILVIA HASSELL AND REQUEST FOR SANCTIONS**

**TO THE HONORABLE JUDGE OF SAID COURT:**

Defendant/third-party plaintiff, Royce Hassell, by and through his undersigned attorney, Silvia Hassell, asks that the motion to disqualify Silvia Hassell as attorney for Royce Hassell be denied. The motion is brought by Royce Hassell's family owned corporation, Hassell Construction Company, Inc. ("HCCI"), and four of Royce Hassell's siblings who are co-owners of HCCI with Royce Hassell, Michael Hassell, Phillip Hassell, Shawn Hassell Potts and Jason Hassell ("the Siblings"). The motion to disqualify should be denied because it is being used as a tactical weapon to needlessly increase the cost of litigation and is not well grounded in fact or in law.

**INTRODUCTION**

1.      Silvia Hassell and Royce Hassell have been married since 1978. Silvia Hassell is a licensed attorney in Texas, State Bar No. 09205200, who has been licensed since 1982.

2.      HCCI is a construction corporation which initiated this suit by filing an unverified injunction demand against Royce Hassell to prevent him from asserting he is a shareholder of HCCI. Royce Hassell is defending himself by asserting claims that denial of his shareholder status by HCCI's controlling owners is fraudulent. HCCI is controlled by the same four Siblings who recently jointly sued Royce Hassell in this case in an attempt to punish him for exercising his constitutional rights pertaining to a judgment

**EXHIBIT A**

which Royce Hassell has against HCCI.  Royce Hassell has moved to dismiss the Siblings' suit under the Texas Anti-Slapp statute.

3.       The arbitration award was confirmed in a Final Judgment on March 26, 2018, after a costly arbitration before a panel of three Construction Industry arbitration specialists, in Cause No. 2013-61995; *R. Hassell & Co., Inc., et al v. Hassell Construction Co., Inc., et al*, in the 61st Judicial District Court of Harris County, Texas, in which Silvia Hassell was both a party and attorney along with Locke Lord.[1]  The award stems from events in August of 2012, when Royce Hassell's Siblings talked him into a partnership of corporations between HCCI and his companies, but a year later they locked him out of the family corporation and the partnership, taking all the projects and contracts with them leaving him without funds to defend against their conduct and refusing to pay him his share of the profits.

4.       Since 2013, Silvia Hassell has continuously been counsel for Royce Hassell regarding these disputes.  At times other attorneys have simultaneously represented Royce Hassell, including Locke Lord, but that has proven to be extremely costly.

5.       Because Royce Hassell's family has tied up all his partnership funds; denied his ownership interest in HCCI; and now refuses to pay him the judgment representing his share of the profits, it is simply not financially possible for Royce Hassell to continue being represented by multiple attorneys in the same case.  Particularly since HCCI and the Siblings still refuse to release deeds of trust on Royce and Silvia Hassell's properties including their homestead, which the arbitrators declared null and void, Royce and Silvia Hassell are actively being prevented from selling their properties or borrowing against the equity of the properties to finance legal fees.  Sadly, the deeds of trust were signed during a time Royce Hassell was gravely ill and unable to recognize the true intentions of his siblings.  As a result, substantial hardship is

---

[1] Exhibit "A," Final Judgment.

actively being caused by HCCI and the Siblings who are knowingly seeking to increase the cost of the litigation for tactical reasons.

**THE MOTION TO DISQUALIFY SILVIA HASSELL IS GROUNDLESS AND BROUGHT IN BAD FAITH**

6.      Since 2013, Royce and Silvia Hassell have incurred hundreds of thousands of dollars in outside attorneys' fees and costs simply to attempt to regain what is rightfully theirs which has resulted in further extreme hardship for them.  Particularly since the siblings have vowed, as they say, to never pay Royce Hassell "a dime" of the judgment, the hardship will continue.

7.      HCCI and the Siblings are tactically using this motion to disqualify Silvia Hassell on grounds that Silvia Hassell may be a witness; it is a fact that in the four years of litigation which precedes this case not one party has called Silvia Hassell as a witness in any proceeding and HCCI has never even bothered to take her deposition.  Even in 2014, HCCI's repeated efforts to disqualify her as a potential witness were summarily rejected by the Honorable Kyle Carter, Judge of the 125th Judicial District Court of Harris County, Texas, in Cause No. 2013-61995.[2]  Nothing has changed since 2013 to warrant the refiling of such a motion.

8.      In fact, the prejudice which would ensue from disqualification is much greater now given that since 2013, Silvia Hassell has continuously represented Royce Hassell and their jointly owned companies in multiple lawsuits and in the arbitration against HCCI as controlled by the Siblings, and she has the most complete understanding of what has occurred in each of the cases from a legal perspective.

9.      Moreover, this Court should be apprised that the motion to disqualify is being asserted by attorney Bogdan Rentea who is, in fact, an important witness in this case as he appears to be the one who provided HCCI with the legal opinion that Royce Hassell is not a shareholder, which is the basis of the

---

[2] Exhibit "B", Defendants' Objection and Response to Plaintiffs' Motion to Substitute Counsel of 1/3/2014; Exhibit "C", Defendants' Reply to Plaintiffs' Response Regarding Plaintiffs' Motion to Substitute Counsel of 1/24/2014.

suit he filed for HCCI seeking an injunction against Hassell petitioning derivatively for HCCI. *See, below email* from Bogdan Rentea of December 20, 2016:

> **From:** Bogdan Rentea
> **Sent:** Tuesday, December 20, 2016 5:37 PM
> **To:** Leonard Simon <LSimon@pendergraftsimon.com>; 'Felicia Harris' <fharris@barrycongeharris.com>
> **Subject:** your client, Royce Hassell
> **Importance:** High
>
> Leonard and Felicia,
>
> Your client, Royce Hassell, has recently taken the position, that as a shareholder in HCCI, he has the right to bring derivative actions on behalf of HCCI.
> To date, he has filed such an action in a state district court against Springwoods, et al. He has also tried to assert derivative claims in the AAA proceeding. Additionally, he has made a demand, as a shareholder of HCCI, to see corporate documents.
>
> Based on my review of certain HCCI corporate documents, specifically, a Buy-Sell Agreement executed, inter alia, by Royce Hassell, he lost his shareholder status in September of 2013.
>
> Therefore, this is a demand that your client, Royce Hassell, immediately cease and desist from filing any derivative actions, from continue any derivative actions already filed, and from making any demands on HCCI as a shareholder.
>
> Time is of the essence.
>
> Thank you for your anticipated prompt response.
>
>
> Bogdan Rentea
> Rentea & Associates
> 512.472.6291
> www.rentealaw.com

Board Certified Administrative Law
Texas Board of Legal Specialization

10.    The continued assertion of claims that Royce Hassell is not an owner of HCCI is in bad faith.  Royce Hassell owns HCCI stock both directly and beneficially. Royce Hassell is an owner in HCCI in at least two ways:  1) He individually owns shares of HCCI stock which he earned for his work on behalf of HCCI since 1978; and 2) Since 1986, Royce Hassell has beneficially owned stock in HCCI through the JCH

Intervivos Irrevocable Trust ("JCH Trust").   The JCH Trust is the majority owner of HCCI, and the beneficiaries of the JCH Trust are Royce Hassell and his four siblings Michael Hassell, Trustee of the JCH Trust, Phillip Hassell, Shawn Hassell Potts and Jason Hassell.   James C. Hassell, father to Royce Hassell and his Siblings through three marriages, is the JCH Trust settlor  who has in recent proceedings more than once confirmed under oath that each of his children are equal beneficiaries of the JCH Trust which owns the majority interest of HCCI.  *See,* for example, most recently the deposition testimony of James C. Hassell of June 5, 2018, in Cause No. 2012-42981:

> Q.  As I understand it, there was a transaction that was engaged in many years ago whereby the value of your interests [in HCCI] were frozen and there was a trust created, the beneficiaries of which were your five children.
>
> A.  That's correct.
>
> Q.  Each of them owned 20 percent of the company.
>
> A.  Yes.

Deposition of James C. Hassell, June 5, 2018, p. 40, ll. 9-14.

11.     HCCI's course of conduct in this case is consistent with its bad faith conduct in other cases. For example, currently the Siblings, HCCI and Bogdan Rentea, have all made themselves the subject of pending sanctions proceedings in United States Bankruptcy Court for the Southern District of Texas wherein Judge Marvin Isgur has found them to have acted in bad faith.  *See,* Exhibit "D," March 9, 2018, Transcript of Emergency Hearing. p. 18, ll. 20-21, "I find this case was removed in bad faith, should never have been removed."   Judge Isgur also admonished them, "I don't want to see more games like this." Exhibit "D", March 9, 2018, Hearing Transcript, pg. ll 18-19.

**LEGAL ARGUMENT**

12.     HCCI's motion to disqualify is legally and factually unfounded.

13.     First, Rule 3.08 "Lawyer as Witness" which concerns possible fact-finder confusion about an attorney as both an advocate and a witness in the same case does not apply to an attorney who is a party to the case and is appearing pro se. Tex. Disciplinary R. Prof. Conduct, Rule 3.08(a)(4).  In this case, Silvia Hassell is a party and is also appearing pro se.  She has been sued by HCCI which is also seeking to disqualify her; she is aligned with the interests of her husband, Royce Hassell, and it is in the interest of judicial economy that she be permitted to also represent him in this case.

14.     Comment 4 to Rule 3.08 provides that "the principal concern over allowing a lawyer to serve as both an advocate and witness for a client is the possible confusion that those dual rules would create for the finder of fact. . . " Tex. Disciplinary R. Prof'l. Conduct, 3.08, Comment 4.  HCCI and the Siblings concede in their own motion that regardless of the outcome of their motion to disqualify Silvia Hassell as her husband's attorney, she will nevertheless remain in the case as both an advocate and a witness.   *See,* Motion to Disqualify which states "Silvia may, of course, represent herself in this proceeding, and the Plaintiffs are not attempting to prevent that.  They simply ask that Silvia not be allowed to represent any other party."  Therefore, disqualification of Silvia Hassell as Royce Hassell's attorney would serve no purpose in alleviating any jury confusion.

15.     Further, Rule 3.08 "is not well suited to use as a standard for procedural disqualification. As a disciplinary rule it serves two principal purposes:  The first is to insure that a client's case is not compromised by being represented by a lawyer who could be a more effective witness for the client by not also serving as an advocate;" and "[t]he second is to insure that a client is not burdened by counsel who may have to offer testimony that is substantially adverse to the client's cause." Tex. Disciplinary R. Prof'l. Conduct, Rule 3.08, Comment 9.  Those concerns do not apply in this case, Silvia Hassell is necessarily an advocate and a witness in this case because she has been sued by HCCI and is a Defendants in this case.

16.     HCCI's feigned concern about the effect of Silvia Hassell's dual role is highly suspect.  Over the last four years of litigation between HCCI on one side and Royce and Silvia Hassell on the other side, Silvia Hassell has not been called as a witness by any party and HCCI has never even bothered to take her deposition.  Rule 3.08 "should not be used as a tactical weapon to deprive the opposing party of the right to be represented by the lawyer of his or her choice," and should not be invoked "by unnecessarily calling that lawyer as a witness."  Rule 3.08, Tex. Disciplinary R. Prof'l. Conduct, Comment 10.

17.     Rule 3.08 also provides a hardship exception if the other parties have been notified that "disqualification of the lawyer would work substantial hardship on the client."   Since 2013, Silvia Hassell has notified HCCI of the hardship which would result of Silvia Hassell was disqualified.  *See, 2013 "Plaintiffs' Response in Opposition to Defendants' Motion to Reconsider Order Substituting Counsel"* Exhibit "E."  Nothing has changed since then except that Royce and Silvia Hassell are all the poorer having gone through four years of litigation while maintaining the real properties and despite a $1.2 million-dollar judgment in their favor and a Final Judgment declaring liens on their real estate null and void which the Siblings have promised to indefinitely tie up in court.

18.     Similarly, Movants' reliance on Rule 1.06, "Conflict of Interest: General Rule" is misplaced.  Rule 1.06 prohibitions apply to an attorney representing "opposing parties to the same litigation."  Rule 1.06, Tex. Disciplinary R. Prof'l. Conduct.  Silvia Hassell does not represent opposing sides in this case, she represents only aligned parties.

19.      HCCI and the Siblings also point out that they are separately suing Silvia Hassell for malpractice.  Silvia Hassell contends that the malpractice suit has been mooted by the final arbitration award such that the malpractice claims are barred by *res judicata* and collateral estoppel.  The malpractice case filed during the arbitration is an attempt at another bite at the apple to retry issues which were decided in the arbitration.  The malpractice case is a needless diversion brought by Bogdan Rentea who non-suited the case he claims Silvia Hassell committed malpractice in such that by Order of the Honorable

Robert K. Schaffer of the 152nd Judicial District Court for the Southern District of Texas in Cause No. 2017-00535; *Hassell Construction Company, Inc. v. Pascal Piazza and Silvia Hassell,* Bogdan Rentea has been designated a responsible third party for any HCCI damages related to the case at issue.  (Exhibit "F").

**REQUEST FOR SANCTIONS**

20.     HCCI is fully aware of the hardship it has caused and is desiring to further cause by bringing this motion to disqualify Silvia Hassell.  Comment 10 to Rule 3.08 warns that the rule 'should not be used as a tactical weapon to deprive the opposing party of the right to be represented by the lawyer of his or her choice.".

21.     HCCI's motion to disqualify is retaliatory and a bad faith diversionary tactic meant to needlessly increase the cost of litigation

22.     Royce Hassell respectfully asks that the motion to disqualify Silvia Hassell be denied and he be awarded appropriate sanctions for having to defend the motion which was brought in bad faith and to harass, annoy and financially oppress him.

Respectfully submitted,

/s/ *Silvia T. Hassell*
Silvia T. Hassell
Texas Bar No. 09205200
sehassell@aol.com
12807 Haynes Street, Bldg. C
Houston, Texas 77066
Tel. 713-665-1812
Fax. 713-665-0369

Attorney for Royce Hassell

**Certificate of Service**

By my signature above I certify that counsel of record are being served with a copy of the foregoing document by Texas E-file and serve on the 13th day of June, 2018.