6/20/2018 9:32 PM
Chris Daniel - District Clerk Harris County
Envelope No. 25442205
By: DELTON ARNIC
Filed: 6/20/2018 9:32 PM

**CAUSE NO. 2016-87708**

| | | |
|---|---|---|
| **HASSELL CONSTRUCTION CO., INC., et al,** | § | **IN THE DISTRICT COURT OF** |
| *Plaintiffs* | § | |
| | § | |
| **v.** | § | **HARRIS COUNTY, TEXAS** |
| | § | |
| **ROYCE HASSELL, et al,** | § | |
| *Defendants* | § | **113th JUDICIAL DISTRICT** |

**DEFENDANT'S FIRST AMENDED AND SUPPLEMENTAL ANTI-SLAPP MOTION TO DISMISS**

**TO THE HONORABLE JUDGE OF SAID COURT:**

Defendant Royce Hassell ("RH"), files this First Amended and Supplemental Anti-Slapp Motion to Dismiss[1] and would respectfully show this Court as follows:

## INTRODUCTION

RH's siblings, the Plaintiffs, Michael Hassell, individually and as Trustee of the James C. Hassell Irrevocable Intervivos Trust ("JCH Trust"), Phillip Hassell, Shawn Hassell Potts, and Jason Hassell (herein the "Siblings"), sued their brother and co-equal beneficiary of the JCH Trust which is the majority shareholder of Hassell Construction Co., Inc. ("HCCI"). The Siblings bring three new claims against RH by way of Counterclaims, brought by Michael Hassell, Phillip Hassell and Shawn Hassell Potts, and a third-party claim brought by Jason Hassell.

The claims of the Siblings are as follows:

1) **First Claim**: Plaintiffs allege RH breached an informal fiduciary duty to them by "activating a business in competition with HCCI."

---

[1] Royce Hassell files this motion subject and without waiver of his right to move to compel arbitration in the event this legal action is not dismissed.

2) **Second Claim**:  Plaintiffs allege RH breached an informal fiduciary duty to his siblings and committed fraud by making "false representations" to obtain loans which he did not intend to repay which caused damage to the Hassell Construction Company, Inc. and "in turn the trust was diminished."

3) **Third Claim**:  Plaintiffs' allege RH "continues to take action designed to harm family members" which includes his supporting a writ of garnishment by allegedly intentionally giving false information.

I.  **THE FIRST PRONG:  EACH OF PLAINTIFFS' THREE CLAIMS IS "BASED ON, RELATES TO, OR IN RESPONSE TO" RH'S EXERCISE OF CONSTITUTIONAL RIGHTS PROTECTED UNDER THE TCPA[2]**

"The TCPA casts a wide net." *Adams v. Starside Custom Builders, LLC,* 16-0786 (Tex. 2018).  Under the broad definitions of the TCPA, each claim asserted by Plaintiffs against RH "is based on, relates to, or in is in response to" RH's exercise of rights protected by the TCPA.  RH has the right to speak freely, associate freely and petition freely, and the claims of the Siblings seek to retaliate against him for doing so.

The **First Claim** is based on, relates to and is in response to RH's right to associate with Terry Tauriello in order to "activate" a business which competes with HCCI.  The first claim therefore is related and in response to RH's right to speak freely with a person RH has associated himself with, Terry Tauriello, to do all the things which are necessary to "activate" a business, an activity which requires petitioning conduct as broadly defined in the TCPA.

The **Second Claim** alleges RH made "representations" which Plaintiffs claim were false and intended to induce them to approve loans from the corporation to him or his companies which he did not intend to repay.  Thus, Claim Two is necessarily "based on, relates to, or is in response to" RH's "exercise of the right of free speech" because it involves a communication made in connection with a matter of public concern, economics.

The **Third Claim** alleges RH signed an "affidavit" which Plaintiffs' claim is false to support his company's petition for writ of garnishment against HCCI.  The third claim, therefore, is in response to, related to and based on RH's right of free speech and his right to petition.

**THE RIGHT TO PETITION**

---

[2] The TCPA refers to Tex. Civ. Prac. & Rem. Code Ann Chapter 27.

The TCPA is to "encourage and safeguard constitutional rights of persons to petition, speak freely, associated freely, and otherwise participate in government to the maximum extent permitted by law and, at the same time, protect the rights of a person to file meritorious lawsuits for demonstrable injury."  TCPA 27.002.  A party who moves to dismiss under the TCPA must first show by a preponderance of the evidence the claim is based on, relates to, or in response to the movant's exercise of the right to petition, the right of free speech, or the right of association.  Tex. Civ. Prac. & Rem. Code §27.005(b).

The "[e]xercise of the right to petition" is defined to include the making of a "a communication in or pertaining to" a judicial proceeding, an official proceeding, a communication in connection with an issue under consideration or review by a legislative, executive, judicial, or other governmental body or in another governmental or official proceeding" and "any other communication that falls within the protection of the right to petition government under the Constitution of the United States or the constitution of this state."  Tex. Civ. Prac. & Rem. Code §27.001(4)(A, B and E).

The TCPA defines an "official proceeding" to include "any type of administrative, executive, legislative, or judicial proceeding that may be conducted before a public servant."  *Id.,* §27.001(8)."  *A "[c]ommunication includes the making or submitting of a statement or document in any form or medium, including oral, visual, written, audiovisual, or electronic."  Id. at §27.001(1).*

The **First Claim** is based on, relates to and in response to RH activating a business.  In order to activate a corporation, as is R. Hassell Properties, Inc, documents and statements are required to be filed with the Texas Secretary of State's office, including the Comptroller of Public Accounts.  Such filings broadly fall within the definition of the exercise of the right to petition. The siblings have brought the First Claim in retaliation for RH's right to petition as defined in the TCPA.

The **Second Claim** is based on, relates to and in response to RH's right to petition because it is brought to retaliate against RH for having successfully petitioned for a declaratory judgment that he does not owe HCCI any money for loans which has not been offset by the profits HCCI owes him or his companies.  The Siblings have brought this suit in retaliation for RH having successfully petitioned for a declaration that he has paid off the loans.

The **Third** Claim is based on, relates to and in response to RH's right to petition because is complains of an affidavit filed with the court in support of writ of garnishment.  The Siblings have brought this claim to retaliate for RH's right to petition.

**THE RIGHT OF FREE SPEECH**

The TCPA broadly defines the "exercise of the right of free speech" as "a communication made in connection with a matter of public concern."  Tex. Civ. Prac. & Rem. Code Ann §27.001(3).  A "'[m]atter of public concern' includes an issue related to: (A) health or safety; (B) environmental, <u>economic,</u> or community well-being; (c) the government; (D) a public official or public figure; or (E) a good, product or service in the marketplace."  *Id. §27.005(d). (Emphasis added).*  All three claims are based on, relate to and are in response to RH's right of free speech. Claim One, acting a business in association with another person, Terry Tauriello, necessarily relates to free speech which is required in order to form a business with another person.  Plaintiffs seek to place economic restraints on Defendant and punish him for activating a business which competes with HCCI.  Attempted economic restraint of trade is obviously a matter of public concern.  (*For example,* "Every contract, combination, or conspiracy in restraint of trade or commerce is unlawful."  Tex. C. Prac. & Rem Code § 15.05(a).; "It is unlawful for any person to monopolize, attempt to monopolize, or conspire to monopolize any part of trade or commerce." Id. § 15.05(b).  *See, also, Better Business Bureau of Metropolitan Houston, Inc. v. John Moore Services, Inc*., 500 S.W.3d 26, ([1st Dist.] 2016).)

The **First Claim** is based on, related to and in response to RH's right to speak freely with Terry Tauriello for purposes of acting R. Hassell Properties, Inc.

The **Second Claim** is based on, related to and in response to RH's communications with his Siblings, which they characterize as false, regarding loans to his company or him personally.

The **Third Claim** is based on, related to and in response to RH's communications in an affidavit which the Siblings claim are false.

## THE RIGHT OF ASSOCIATION

The "exercise of the right of association" to defined to mean "a communication between individuals who join together to collectively express, promote, pursue, or defend common interests."

The **First Claim** is based on, related to and in response to RH's Right of Association with Terry Tauriello in activating R. Hassell Properties, Inc.

II.    **THE SECOND PRONG:  Once the TCPA is found to apply to a claim, the burden shifts to the Plaintiff to provide "clear and specific" proof-to support each element of the claim.**

Each claim must be dismissed unless HCCI's Controlling Owners present the Court with "clear and specific" evidence to support each element of each cause of action that they bring against RH.  Tex. Civ. Prac. & Rem. Code §27.005(c).  This is a heightened standard that requires the non-movant to show with evidence specifically "when, where and  .. . how" the movant's conduct was actionable and how it resulted in injury.  *In re Lipsky,* 460 S.W. 3d at 590-91 (Tex. 2015).

**FIRST CLAIM**:  To establish that RH breached a fiduciary duty to the Plaintiffs, Plaintiffs must first evidence that he owed the Plaintiffs a fiduciary duty, that activating a business in competition with HCCI breached that duty by activating a business in competition with HCCI, that  he breached that duty, and that the breach caused damages.

Plaintiffs cannot demonstrate RH owed them a fiduciary duty because they had no confidential relationship with him and cannot evidence one. They have asserted no facts and submitted no evidence that they trusted him or relied on him.  Instead, as the narratives in the original TCPA motion demonstrates, the Siblings did not, in fact, trust him and hired conflicted attorneys behind his back.  Even if RH owed Plaintiffs a fiduciary duty, plaintiffs cannot demonstrate that "activating a business in competition with HCCI" would violate that duty.  There

is no prohibition against a beneficiary of an Intervivos trust from activating a business which

competes with the corporation of which the trust owns stock, particularly after the other trust

beneficiaries lock out the co-beneficiary from the corporation which the trust owns.  Thus, even if

RH owed a duty before he was locked out, he certainly did not owe one after he was locked out.

Additionally, Plaintiffs cannot demonstrate that the alleged breach of RH caused any damages to

HCCI.

**SECOND CLAIM** To establish their second claim that RH breached informal duties by making
representations about his financial condition and intent to repay loans which he did not intend to
repay.  However, Plaintiffs can evidence no confidential relationship, or that if there was one that
that he made false representations about his finances or intent to pay the loans, because in fact he
did repay the loans with interest and it was HCCI, through its controlling shareholders, the
Siblings, which failed to pay RH's companies the profits they owed such that RH was justified in
waiting until the arbitrators declared his rights and obligations under the various agreements.

To establish a fraud claim, HCCI's Controlling Owners must establish by clear and
specific evidence that RH  made a material representation of fact; The representation of fact was
false; When the representation of fact was made, the speaker knew that it was false or made the
representation recklessly without any knowledge of its truth and as a positive assertion; The
speaker made the representation with the intent that the person to whom the representation was
made act upon it; The person to whom the representation was made acted in justifiable reliance
on the representation; and The representation caused damages.  (*Exxon Corp. v. Emerald Oil &
Gas Co.,* 348 S.W. 3d 194, 217 (Tex. 2011); *Italian Cowboy Partners, Ltd. V. Prudential Ins.
Co. of Am.,* 341 S.W. 3d 323, 337 (Tex. 2011); *see also, Aquaplex, Inc. v. Rancho La Valencia,
Inc.,* 207 S.W. 3d 768, 774 (Tex. 2009).

There is no evidence that RH made false representations to the Siblings about his finances

as demonstrated by the narrative of the Siblings in the arbitration describing in great detail the

relationship of the parties beginning in 2008.  Now, ten years later, there is no evidence that RH

made a material representation of fact which he knew was false with the intent that the persons to

which the representations were made act upon it.  The representations, that RH would repay the

loans were true and he has repaid the loans with interest.

**THE THIRD CLAIM:**   The third claim, essentially for wrongful garnishment against a corporation, requires the Siblings to prove standing, and then to prove that a statement in RH's affidavit in support of the garnishment was false.  However, each and every statement RH made in support of the garnishment is true as supported by the financial information regarding HCCI's financial status which the Plaintiffs' themselves have submitted in this case.

III.   **EVEN IF PLAINTIFFS CAN PRODUCE CLEAR AND SPECIFIC EVIDENCE OF EACH ELEMENT OF EACH CLAIM, THE LEGAL ACTION MUST BE DISMISSED BECAUSE RH HAS ESTABLISHED EACH ESSENTIAL ELEMENT OF AN AFFIRMATIVE DEFENSE TO THE CLAIMS.**

(i)   **Section 27.005(d) of the TCPA.**

Under section 27.005(d) of the Act, "the court shall dismiss a legal action against the moving party if the moving party establishes by a preponderance of the evidence each essential element of a valid defense to the nonmovant's claim."  Tex. Civ. Prac. & Rem. Code § 27.005(d). This is true even if the nonmovant satisfies its "clear and specific" burden of proof discussed above.  *Id.*

(ii)   **Lack of Standing and/or Capacity.**

RH's co-beneficiaries lack capacity to bring the corporation's claims on their own behalf or to file claims.  The Plaintiffs bring this action as a thinly disguised attempt to relitigate the arbitration.  By filing this motion RH does not waive his objection to the lack of capacity of HCCI's Controlling Shareholders to bring claims for damages of HCCI simply because the arbitration award diminishes the value of their stock in the corporation.  Even if getting a judgment against a corporation could be considered a wrong, "[a] cause of action against one who has injured a corporation belongs to the corporation and not to the shareholders.  A corporate stockholder cannot recover damages personally for a wrong done solely to the corporation even though he may be injured by that wrong."  *Sawnk v. Cunningham, I258 S.W. 3d 647 (Tex. 2008) citing Wingate v. Hajdik,* 795 S.W. 2d 717, 719 (Tex. App.-Fort Worth 2007, pet denied).  Here,

HCCI's Controlling Owners sued RH because he is attempting to collect a judgment against HCCI for profits he is owed from a partnership between HCCI and his corporations.  Even if he had committed some wrong, which he denies, "[t]he individual shareholders have no separate and independent right of action for wrongs done to the corporation that merely result in depreciation in the value of their stock."  *Swank, supra, at 661.*

"The question of standing is a legal question regarding subject-matter jurisdiction which cannot be waived."  *Fitness Evolution, L.P. v. Headhunter Fitness, LLC, 05-13-00506-CV, (Tex. App.-Dallas (5th Dist.) 2015).*  However, since a challenge to a party's capacity to participate in a suit may be waived (*Id.),* Royce Hassell chooses not to waive them.  *See, Fitness Evolution, L.P. v. Headhunter Fitness, LLC, 05-13-00506-CV, (Tex. App.-Dalls [5th Dist.] 2015).*

Further, even if Plaintiffs had standing as beneficiaries of the JCH Trust, they can prove no causation or damages to the trust by virtue of any conduct of RH, who has repaid the loans complained of by Plaintiffs.

### (iii)    Limitations.

The purpose of limitations is to prevent stale or fraudulent claims.  *Kerlin v. Sauceda,* 263 S.W. 3d 920, 925 (Tex. 2008).  The statute of limitations bars the new suit by HCCI's Controlling Owners brought more than seven years after the evidence they proffer shows they suspected Royce Hassell of wrongdoing. Section 16.004(a)(4) of the Civil Practice and Remedies Code provides a "[p]erson must bring suit on [fraud or breach of fiduciary duty] not later than four years after the date the action accrues."  *Id. (4) and (5).* Exhibit "B" to the legal action is an e-mail chain of March 2011, which evidences that far from trusting Royce Hassell his siblings believed he had misapplied funds.  Additionally, there is evidence that as far back as 2011, HCCI's Controlling Owners were even spying on him by unlawfully requesting his private banking information from a bank president of CommunityBank, the subject to the writ of garnishment Royce Hassell's siblings want to stop him from pursuing.  Exhibit "25" to RH's Original TCPA Motion.

Evidence that no confidential relationship existed includes between Royce Hassell and his siblings during this time includes affidavits of Phillip Hassell prepared by conflicted lawyers representing their own interests which aver that from January of 2012, HCCI and his siblings were "adverse" to Royce Hassell and his companies "at all times."  Exhibit "26" to RH's Original TCPA Motion.  It is now more than six years later and any claims for breach of fiduciary duty, fraudulent inducement, and unfair competition against Royce Hassell are clearly barred by limitations.  Just the opposite, the promises of RH's Siblings was that they would watch *his* back while he was sick.

A misrepresentation constitutes fraudulent concealment when it prevents the plaintiff from discovering a wrong.  *Kanon v. Methodist Hosp.,* 9 S.W. 3d 365, 369 (Tex. App.-Houston [14th Dist.} 1999, no pet.) *disapproved on other grounds, Ernst & Young, LLP v. Pacific Mut. Life Ins. Co.,* 51 S.W. 3d 573 (Tex. 2001).  Royce Hassell's siblings were actively hiding a relationship with and following the directions lawyers which they knew were conflicted from at least January of 2012 forward with the intent of taking what belonged to Royce Hassell and his companies for themselves.

The "counterclaims" made by Michael Hassell, Phillip Hassell and Shawn Hassell Potts do not arise out of the same action or occurrence that is the basis of Royce Hassell's defending counterclaims he asserted when his siblings caused the family corporation, HCCI, to sue him in December of 2016, in the middle of the arbitration.  HCCI's suit falsely alleges Royce Hassell is not an owner.  The counterclaims of the Siblings are barred by limitations because they had actual knowledge of RH's counterclaims against HCCI, when their attorney was served with the suit, but waited until the conclusion of the arbitration to assert counterclaims which are time barred.

Jason Hassell brings an original suit, not by way of counterclaim, all claims of Jason Hassell are barred by limitations.

> **(iv)    Res Judicata**

"Res judicata precludes relitigation of claims that have been finally adjudicated, or that arise out of the same subject matter and that could have been litigated in the prior action." *Amstadt v. United State Brass Corp.,* 919 S.W. 2d 644 (1966), citing *Barr v. Resolution Trust Corp.,* 837 S.W. 2d 627, 628 (Tex. 1992). Res judicata entails proof of a final judgment on the merits by a court of competent jurisdiction; identity of parties or those in privity with them; and a second action based *on the same claims as were raised or could have been raised in the first action.* *See, Texas Water Rights Comm'n v. Crow Iron Works,* 582 S.W. 2d 768, 771-72 (Tex. 1979).  Although ["[g]enerally people are not bound by a judgment in a suit to which they were not parties, the doctrine of res judicata creates an exception to this rule by forbidding a second suit arising out of the same subject matter of an earlier suit by those in privity with the parties in the original suit." *Amstadt, pg. 653.*

In the arbitration Post Hearing Brief of HCCI prepared by it own lawyers, the "parties" on the claimants' side identified as follows:

Claimants are James C. Hassell ("JCH") and Hassell Construction Company, Inc. ("HCCI"). Counter-Respondents are Hassell Management Services, LLC ("HMS"), Shawn Potts, James C. Hassell, and HCCI.  (Because Respondent Royce Hassell has brought a derivative claim on behalf of HCCI against HCCI's and HMS' officers and directors, putative Counter-Respondents are also those officers and directors, *i.e.,* Phillip Hassell and Michael Hassell.)  Claimants and Counter-Respondents will be collectively referred to as Claimants when their individual names are not used."

Exhibit "31" to RH's Original TCPA motion, Claimants' Post Arbitration Hearing Brief, pg. 1.

The lawyers which filed pleadings for HCCI admitted they represented selected HCCI owners, including three of the four siblings now bringing a new suit as HCCI.  (Exhibit "44" to RH's original TCPA Motion).

As hereinbefore set out, HCCI's Controlling Shareholders were in privity with HCCI in the arbitration and were actually, if not virtually represented.  As a result, the claims they now brought again for breach of fiduciary duty and fraudulent inducement on the part of RH are barred by res judicata.

Claims of breach of fiduciary duty by Royce Hassell to HCCI which were pursued in the arbitration were denied.  *See*, Exhibit "1" to RH's Original TCPA Motion, December 7, 2017, Arbitration Award, pg. 4 "The award is in full settlement of all claims related to the Joint Venture greement and the business relationship between the parties.  All claims not expressly granted herein . . . are hereby DENIED."

The decision of the arbitrators, that the agreement between HCCI and Royce Hassell's companies is a valid agreement, was initially argued for HCCI and its controlling owners by Micky Das and was relied on by Judge Kyle Carter to compel arbitration.  Since then then another state district court judge, Frederika Phillips, a United States Bankruptcy Court Judge (Judge Marvin Isgur), and the arbitrators have upheld the validity of the agreement.

- *See, Exhibit 1 to RH's Original TCPA Motion, Final Arbitration Award;*

- *See,* Exhibit "32" to RH's Original TCPA Motion, State District Judge Kyle Carter's Orders Compelling Consolidation and Arbitration at HCCI's request based on the validity of the CJVA and its arbitration clause;

- *See,* Exhibit *"5,"* to RH's Original TCPA Motion, Memorandum Opinion dated May 11, 2015, of United States Bankruptcy Court Judge Marvin Isgur; Also see, Exhibit "30" to RH's Original TCPA Motion, Transcript of hearing preceding the Memorandum Opinion wherein Judge Isgur overruled HCCI's attempts to limit the terms of the CJVA for "insurance purposes" or for "tax purposes" as follows; See also, Exhibit "2" to RH's Original TCPA Motion,  Final Judgment entered by Harris County District Judge Frederika Phillips confirming the Final Arbitration Award.

RH's Siblings are estopped from arguing the Hassell 2012 Joint Venture was not real after they argued in other cases "[i]n 2012, Claimant HCCI, and Respondents R. Hassell Holding Company, Inc. R. Hassell & Company, Inc., R. Hassell Builders, Inc. and G.R. Group Resources LLP *formed a joint venture and executed a Construction Joint Venture Agreement (the "JVA") dated July 1, 2012"* with no mention of RHP, new claims against RHP are frivolous.  *See, for example*, documents such as, Exhibit "37" to RH's Original TCPA Motion, Motion to Compel Arbitration at para. 1; Exhibit "34" to RH's Original TCPA Motion, HCCI's

Arbitration Demand at para. 3; HCCI's First Amended Demand for Arbitration of January 12, 2015[3]; and, HCCI's Supplement Arbitration Demand.

Importantly, Royce Hassell's siblings are bound by the successful arguments of their own lawyers (especially since they were simultaneously Exxon's Lawyers and loyal to the District) that the CJVA binds non-signatories' "factually related to and factually intertwined" claims which are "significantly related to and factually intertwined with the JVA" (*See,* Exhibit "34" to RH's Original TCPA Motion, HCCI's Arbitration Demand at para. 4, and HCCI's First Amended Arbitration Demand at para. 6.)  No question exists that the Joinder Petition claims are factually related and factually intertwined with the CJVA.

(v)     **Estoppel[4]**

HCCI's Controlling Owners are estopped at law and in equity from asserting claims that Royce Hassell breached his fiduciary duties in relation to the CJVA or that the CJVA is "not real:"

(a) **Estoppel by Record or Judicial Estoppel:**  A party is estopped from asserting a position contrary to that taken under oath in an earlier judicial proceeding to gain an unfair advantage. *Ferguson v. Building Materials Corp.,* 295 S.W. 3d 642, 643 (Tex. 2009).

The verified pleadings, signed affidavits, deposition testimony, court testimony, sworn arbitration testimony as well as the explanations of counsel made by HCCI's Controlling Owners in earlier proceedings contradict the positions the siblings now assert regarding the validity of the CJVA.

Specifically, Phillip Hassell has repeated verified the CJVA is a valid, enforceable agreement with a valid, enforceable arbitration clause and caused his controlled corporation HCCI to take the same position.  For example, Phillip Hassell verified both for HCCI and Phillip Hassell's HCCI's Motion to Compel Arbitration which states "[i]n 2012, Plaintiffs and Defendants formed a joint venture and executed a

---

[3] The certificate of service on HCCI's "First Amended Demand for Arbitration" is erroneously dated January 12, 2014, but was served on  January  12, 2015.

[4] RH incorporates by reference the factual narrative and exhibits to his Original TCPA Motion in support of his affirmative defenses that RH did not owe fiduciary duties to the controlling owners of HCCI, and fellow beneficiaries of the JCH Trust in that they were actively defrauding him without his knowledge.

Construction Joint Venture Agreement ("the JVA") dated July 1, 2012.  The JVA contains a broad arbitration provision that mandates the arbitration of all disputes that arise between the parties. . . Accordingly, Plaintiffs' claims are subject to binding arbitration. . . Plaintiffs' attempt to avoid their contractual obligation to arbitrate their claims should not be countenanced. Whether a valid arbitration agreement exists is a question of law. . . Because a valid, enforceable arbitration agreement exists between Plaintiffs and Defendants, this Court has no discretion but to compel arbitration . . . "  Exhibit "37" to RH's Original TCPA Motion, Motion to Compel, pages 1 and 3; and Phillip Hassell's verifications for HCCI and HMS (a company in which Royce Hassell has no ownership).  Phillip Hassell's verification swears under oath that "he has personal knowledge of the facts contained [in the motion to compel] and that all factual statements are true and correct."  Exhibit "45" to RH's Original TCPA Motion, Phillip Hassell's verification for HCCI and Exhibit "46" to RH's Original TCPA Motion, page 10, Phillip Hassell's Verification for HMS.

      **(b) Estoppel by Contract:**  A party may not deny the terms of a valid contract which has not been set aside by fraud, accident or mistake.

The only two signatories to the CJVA, Phillip Hassell and Royce Hassell, have both given sworn testimony that the CJVA is a valid enforceable contract.

The CJVA has not been set aside by fraud, accident or mistake.  HCCI's attorneys have argued in various courts and the arbitration the agreement is valid before and after deciding to not appeal Judge Isgur's 2015 Memorandum Opinion, so holding.   RH's siblings cannot now deny the terms of the contract they have repeatedly caused their controlled corporation to embrace for purposes of obtaining relief. *Mathews v. Sun Oil Co.,* 411 S.W. 2d 561, 564 (Tex. App.-Amarillo 1996), aff'd., 425 S.W. 2d 330 (Tex. 1968).  Now that RH and his companies have acted in reliance on the agreement his siblings may not be permitted to disavow his just compensation for the acts he did in performance of the contract. *31 C.J.S. Estoppel and Waiver §70-73.*

(c) **Equitable Estoppel:**  Equitable estoppel prevents a party from changing its position after misrepresenting or concealing facts which the other party relied on to its detriment.  *Sefzik, v. City of McKinney,* 198 S.W. 3d 884, 895 (Tex. App.-Dallas 2006, no pet.).  **The elements of the equitable estoppel defense are:**   1) the plaintiff made a false representation to, or concealed a material fact from, the defendant; 2) the plaintiff intended that its representation or concealment be acted on; 3) the plaintiff knew or had the means of knowing the real facts; 4) the defendant neither knew nor had *the means* of knowing the real facts; 5) the defendant relied on the representation or concealment to its detriment.  *Johnson & Higgins v. Kenneco Energy, Inc.,* 962 S.W. 2d 507, 515-16 (Tex. 1998).

HCCI's Controlling Owners engaged in knowing concealment and false representations with intent that Royce Hassell act without knowledge of the true facts and in reliance on the false representations. Phillip Hassell proposed the Hassell 2012 Joint Venture in the presence of Mike Hassell in August of 2012. After the partnership began operations Shawn Hassell Potts told the accountant for the partnership, Steve Ligon, that the partnership was real; HCCI's Controlling Owners told the insurance company the agreement was real; and HCCI's Controlling Owners made repeated representation to Royce Hassell that it was real.

Because it was HCCI's Controlling Owners caused Royce Hassell (and other third parties) to believe the agreement was real and Royce Hassell relied on those representations to his detriment, HCCI's Controlling Owners are estopped from denying the validity of the agreement.

(d) **Promissory Estoppel:**  Promissory estoppel ("justifiable reliance") is an affirmative defense which prevents a party from claiming that a contract is invalid or unenforceable.  *Nagle v. Nagle,* 633 S.W. 2d 796, 800 (Tex. 1982).  **The elements of promissory estoppel are** 1) a promise by the plaintiff to the defendant; 2) the defendant reasonably and substantially relied on the plaintiff's promise to its detriment; 3) the plaintiff know or should have known its promise would lead the defendant to some definite and substantial injury; and 4) injustice can be avoided only by enforcing the plaintiff's promise.

In December of 2010, when Royce Hassell was gravely ill, Phillip Hassell, Michael Hassell, and Shawn Hassell Potts gave Royce Hassell a letter written by Phillip Hassell's wife, Rosalyn Hassell, that they "truly" wanted to be his partner if Royce Hassell would turn over the running of the finances on jobs with HCCI over to them, which he did, *i.e., see Joinder Petition exhibits "A" and B."*  In July of 2012, while

conspiring with conflicted attorneys Phillip Hassell proposed a sharing of profits combining of resources

partnership if HCCI could have 75% of the profits from the venture and Royce Hassell would take 25%

which Royce Hassell accepted.  HCCI's owners claim herein the agreement was not real.  However, Royce

Hassell relied on the agreement to his great detriment and injustice can only be avoided by enforcing the

promises they made.  HCCI's Controlling Owners are estopped from asserting the CJVA is a fake.

> **(e) Quasi Estoppel:** Quasi estoppel is an equitable doctrine that prevents a party from asserting
> to another's disadvantage, a right that is inconsistent with a position previously taken by that
> party.  *Lopez v. Munoz, Hockema & Reed, LLP,* 22 S.W. 3d 857, 864 (Tex. 2000).  **The elements
> of quasi-estoppel are**:  1) the plaintiff acquiesced to or accepted a benefit under a transaction;
> 2) the plaintiff's present position is inconsistent with its earlier position when it acquiesced to
> or accepted the benefit of the transaction; 3) it would be unconscionable to allow the plaintiff
> to maintain its present position, which is to another's disadvantage.  *Id.*

> **(vi)      Accord and Satisfaction; Settlement.**

Any claimed debt of RH or his companies to HCCI has been paid with Hassell 2012 Joint Venture

profits.  Thus, there is no debt for which RH and his companies are responsible and Plaintiffs can show no

causation or damages.

Further, any claims HCCI might have had against RH for activating RHP were compromised and

settled by attorneys Patrick Gaas and Bogdan Rentea, on behalf of the Hassell's they represent during the

same hearings they agreed to drop all claims against RHP as well as their threat to make claims against

Royce Hassell's 86-year-old mother-in-law and his two sons, in exchange for Royce Hassell dropping his

objections to the arbitration on the grounds of inability to pay.  Their clients which include Royce Hassell's

siblings are bound by that agreement which this suit violates because Royce Hassell performed his end of

the bargain to his detriment.  *Lopez v. Munoz, Hockema & Reed, LLP,* 22 S.W. 3d 857, 863 (Tex. 2000).

> **(vii)      Waiver**

Waiver is the intentional relinquishment of a know right or conduct inconsistent with claiming that right.  *Frazier v. GNRC Realty, LLC,* 476 S.W. 3d 70 (Tex. App.-Corpus Christi 2014, pet denied.)  The elements of waiver are:

> (1)  Existing right, benefit or advantage;
> (2)  actual or constructive knowledge of its existence; and
> (3)  an actual intent to relinquish the right inferable from the conduct.

*Ohrt v. Union Gas Corp.,* 398 S.W. 3d 315 (Tex. App.-Corpus Christi 2012, pet. denied).


HCCI and RH's siblings, through their own lawyers which they knew were conflicted, intentionally waived any rights to sue Royce Hassell based on his ownership of RHC, and waived the right to sue RHP or any of its owners and a host of other parties they had threatened to sue such as Royce Hassell's 86 year-old mother-in-law and his two sons, Royce Hassell's secretary and Royce Hassell's brother in law, in exchange for Royce Hassell going into debt  to pay the arbitration costs for an arbitration which benefit the District and Exxon.

Moreover, HCCI's Controlling Owners claimed the rights, benefits and advantages of the CJVA on numerous occasions.  As a result, even if they once believed it was a fraudulently induced agreement- which it was no on the part of Royce Hassell- they exhibited conduct of actual intent to relinquish the right inferable from claiming the agreement was invalid.  By relying on the terms CJVA to obtain benefits, not the least of which was the arbitration they compelled by it, HCCI's Controlling Owners have waived the right to now claim the agreement is "not real."

**(viii)    Ratification; Detrimental Reliance; Ultra Vires Contract and Unclean Hands.**

**The elements of ratification** include (1) approval by act, word, or conduct; (2) with full knowledge of the facts of the earlier act; and (3) with the intention of giving validity to the earlier act.  *Jamail v. Thomas,* 481 S.W. 2d 485, 490 (Tex. App.-Houston [1st Dist.] 1972, writ ref'd n.r.e.).

Beginning with repeatedly asserting the validity of the CJVA and also of its arbitration clause in 2013, HCCI's Controlling Owners approved the terms of the contract (to include a sharing of profits) with full knowledge of the facts _they now claim_ mean the agreement was not for "for profit" but for purposes of deceiving an insurance company of which Phillip Hassell's wife, Rosalyn Hassell is "attorney in fact." Having ratified the CJVA, HCCI's Controlling Owners have ratified its terms which the arbitrators found entitles Royce Hassell's companies to profits which HCCI now owes.

IV.     **Because Dismissal is Proper, the TCPA Requires the Court to Award Royce Hassell His Court Costs, Attorney's Fees and Expenses, and to Sanction Michael Hassell, Phillip Hassell, Shawn Hassell Potts and Jason Hassell.**

If the Court dismisses this new suit under the TCPA, then it "shall" award Royce Hassell his "court costs, reasonable attorney's fees, and other expenses incurred in defending against the legal action as justice and equity may require."  Tex. Civ. Prac. & Rem Code § 27.009(a)(1).  In other words, the TCPA "mandates" the award of fees and costs and expenses to a successful movant.  _See Alphonso v. Deshotel,_ 417 S.W. 3d 194, 200 (Tex. App.-El Paso 2013, no pet.), _disapproved of on other grounds by In re Lipsky,_ 460 S.W. 3d at 591.

Furthermore, the TCPA requires "sanctions against the party who brought the legal action as the court determines sufficient to deter the party who brought the legal action from bringing similar actions described in this chapter."  Tex. Civ. Prac. & Rem. Code § 27.009(a)(2).  HCCI's Controlling Owners are already the subject of sanctions proceedings in federal bankruptcy court for their bad faith filings.  (See Exhibit "6" to RH's Original TCPA Motion, Transcript of Emergency Bankruptcy Hearing, March 9, 2018, pp. 17-19.)  Because this is not the first, or second or third time HCCI's Controlling Owners have made the same claims, an award of sanctions should be entered to reduce the likelihood of future misconduct by HCCI's Controlling Owners.

The true gist and new claims of the legal action surfaces wherein HCCI's Controlling Owners complain against Royce Hassell allegedly for "support[ing] an application for a writ of garnishment against

HCCI's bank account, by intentionally giving misleading information therein." (Joinder Petition, Para. 2(i)) and taking "actions designed to damage HCCI and its owners, by, inter alia, diverting assets and business opportunities rightfully belonging to HCCI."   The obvious import of these legal actions is that they are based on, relate to, and/or are in response to Royce Hassell's exercise of his constitutional right to petition for a writ of garnishment, right to free speech for making a supporting affidavit, and right to associate with RHP and Terry Tauriello for the purposes of making a living.

In threatening that they will "add, after discovery, any additional parties, including, but not limited to, the officers and directors of RHP, including Cindy Grooms and Ricardo Todeschini, or any other person that aided and abetted in the formation of RHP and contributed to the damages alleged herein" (Joinder Petition, Page 2, *5) HCCI's Controlling Owners call for this Court to use its TCPA's sanctioning authority to deter these parties, through significant sanctions, from engaging in future violations of the TCPA.

Accordingly, in addition to dismissing claims of HCCI's Controlling Owners, the Court should award Royce Hassell sanctions as well as his court costs and attorney's fees and expenses.  Tex. Civ. Prac. & Rem. Code § 27.009.

In support of this motion, Royce Hassell relies on the pleadings on file, including the live petition of HCCI's Controlling Owners, and the exhibits identified on the index of exhibits that precedes this motion.  The exhibits are attached hereto and incorporated herein for all purposes.  Additionally, Royce Hassell asks the Court to take judicial notice of the pleadings in and judgments of other courts in matters related to this case and of the arbitration.

**Prayer.**

Royce Hassell prays the Court grant this motion, to dismiss with prejudice the legal action asserted against him by HCCI's Controlling Owners, to award Royce Hassell his costs, attorney's fees, and other expenses under the TCPA, and to sanction HCCI's Controlling Owners in accordance with the terms of the

TCPA.  Royce Hassell requests any other, further, or alternative relief to which it may be legally or equitably entitled.

Respectfully submitted,

By:  /s/ Silvia T. Hassell
Texas Bar No. 09205200
12807 Haynes Rd., Bldg. C
Houston, Texas 77066
Tel.  713-665-2442
Fax. 713-665-0369
E-Mail:  sehassell@aol.com

Attorney for Royce Hassell

**CERTIFICATE OF SERVICE**

I hereby certify that on 20th By day of June, 2018, a true and correct copy of the foregoing instrument was served on all known counsel of record in accordance with the Texas Rules of Civil Procedure by Texas E-file and serve.

/s/ Silvia T. Hassell

6/20/2018 11:54 PM
Chris Daniel - District Clerk Harris County
Envelope No. 25442480
By: DELTON ARNIC
Filed: 6/20/2018 11:54 PM

**CAUSE NO. 2016-87708**

| | | |
|---|---|---|
| **HASSELL CONSTRUCTION CO., INC., et al,** | § | **IN THE DISTRICT COURT OF** |
| *Plaintiffs* | § | |
| | § | |
| **v.** | § | **HARRIS COUNTY, TEXAS** |
| | § | |
| **ROYCE HASSELL, et al,** | § | |
| *Defendants* | § | **113th JUDICIAL DISTRICT** |


**DEFENDANT'S LEGAL MEMORANDUM IN SUPPORT OF**
**TCPA MOTION TO DISMISS**

**TO THE HONORABLE JUDGE OF SAID COURT:**

Defendant Royce Hassell respectfully files this legal memorandum in support of his

TCPA[1] Motion to Dismiss.


ISSUE PRESENTED:

IS THE TCPA DISMISSAL BURDEN-SHIFTING MECHANISM APPLIED TO EACH FILED
CLAIM OR THE ENTIRE LAWSUIT?

ANSWER:

The burden shifting mechanism is applied to each filed claim under the broadened
definitions of constitutional rights of the TCPA.  "The TCPA's dismissal procedure
contains a burden-shifting framework to ensure the legal actions to which the TCPA
applies have merit and are not brought to intimidate or silence those who exercise
First Amendment rights listed in the TCPA. *See Youngkin v. Hines,* No. 16-0935,
2018 WL 1973661, at *2 (Tex. Apr. 27, 2018)."  *James v. Elkins*, 04-17-00160-CV
(Tex. App-San Antonio [4th Dist.] 2018.   In considering whether the TCPA applies,
the broad definitions of the statute allow a court to test the Plaintiffs' motives. *Id.*

---

[1] TCPA refers to Tex. Civ. Prac. & Rem Code Chapter 27.

The TCPA defines "legal action" to mean "a lawsuit, cause of action, petition, complaint, cross-claim, or counterclaim or any other judicial pleading or filing that requests legal or equitable relief." Tex. Civ. Prac. & Rem. Code § 27.001(6).

If a court determines that a legal action "is based on, relates to, or is in response to" a party's exercise of rights enumerated in the TCPA, the dismissal procedure contains a burden-shifting mechanism for purposes of ensuring that the legal action has merit and is not brought to punish or retaliate against those who exercise their First Amendment rights.  Tex. Civ. Prac. & Rem. Code Chapter 27, *also see, Youngkin v. Hines,* No. 16-035, 2018 WL 1973661 (Tex. Apr.. 27, 2018).

The TCPA's definition of a "legal action" is broad, it can mean a "lawsuit" or a "cause of action."  *D. Magazine Partners, L.P. v. Rosenthal,* 529 S.W. 3d 429, 442 (Tex. 2017).  Although the TCPA does not further describe "cause of action," is means the fact or facts entitling one to institute and maintain an action, which must be alleged and proved in order to obtain relief. *Loaisiga v. Cerda,* 379 S.W. 248, 262 (Tex. 2012).

The TCPA provides that it is to be "construed liberally to effectuate its purpose and intent fully." Tex. Civ. Prac. & Rem. Code § 27.011(b).  "The TCPA pursues any such goals chiefly by defining a suspect class of legal proceedings that are deemed to implicate free expression, making these proceedings subject to threshold testing of potential merit, and compelling rapid dismissal-with mandatory cost-shifting and sanctions-for any found wanting."  *Cavin v. Abbott*, 03-16-00395-CV (Tex. App.—Austin [Third District] 2017).

Although the terms "exercise of the right of free speech, " "exercise of
the right to petition, " and "exercise of the right of association" correspond to

the familiar constitutional concepts that are the TCPA's ultimate stated concern, the Act supplies a specific definition of each term that does not, save one component of the "exercise of the right to petition" definition, explicitly reference or incorporate the rights of speech, petition, or association as recognized under the First Amendment or its Texas counterpart. In turn, "is based on, relates to, or is in response to" serves to capture, at a minimum, a "legal action" that is factually predicated upon alleged conduct that would fall within the TCPA's definitions of "exercise of the right of free speech, " petition, or association.

*Id.*

As held by the Texas Supreme Court in *ExxonMobil Pipeline Company v. Coleman,* the plain-meaning construction of the TCPA definitions must be applied based on the TCPA's broader purposes "even when this results in a vastly expansive application of the 'exercise of the right of free speech' to reach a business's internal personnel matters having only an indirect relationship to the 'matter[s] of public concern' made the basis for the motion." *ExxonMobil Pipeline Company v. Coleman,* 512 S.W. 3d 895 (2017). In *ExxonMobil Pipeline,* although the communications complained of had no explicit language related to a public concern, the Texas Supreme Court held that the court of appeals could not narrow the scope of the TCPA by ignoring the plain langue of the act and inserting requirements that the communications involve something more than a "tangential relationship" to matter of public concern as follows:

> Each of Coleman's arguments constitutes an effort to narrow the scope of the TCPA by reading language into the statute that is not there. Coleman fails to cite a provision of the TCPA, or a Texas court interpreting the statute, that provides support for the proposition that a plaintiff's conclusory assertion that the defendant's affidavit testimony is untrue defeats the Act's applicability. Similarly, we are not convinced that because a pre-printed form lacks specific reference to the issues identified by the Legislature as matters of public concern, we should ignore evidence suggesting that the user-provided statements added to the form constitute communications in connection with a matter of public concern. Coleman's final argument, in which he suggests the Legislature meant " in connection with" to " suggest[] something more than a tenuous or remote relationship," fails to rehabilitate the court of appeals' improper narrowing of the TCPA and instead highlights the error in the court of appeals' analysis. We do not substitute the words

of a statute in order to give effect to what we believe a statute should say; instead, absent an ambiguity, we look to the statute's plain language to give effect to the Legislature's intent as expressed through the statutory text. *Lippincott,* 462 S.W.3d at 509 (citing *Leland,* 257 S.W.3d at 206).

*ExxonMobil Pipeline Co. v. Coleman*, 512 S.W.3d 895, 900 (2017).

As such, the statements complained of need not actually mention the matters of public concern and need not have more than a 'tangential relationship' to matters of public concern, rather the TCPA only requires that statements be made "'in connection with' 'issue[s] related to' health, safety, environmental, economic, and other identified matters of public concern chosen by the Legislature." *Id*

Thus, under the TCPA although a parties "initial burden is to show that each 'legal action' in question 'is based on, relates to, or is in response to' either appellants' 'exercise of the right of free speech' . . . or their 'exercise of the right to petition,'" the issue of whether the action "'is based on, relates to, or is in response to' serves to capture, at a minimum, a 'legal action' that is factually predicated upon alleged conduct that would fall within the TCPA's definition of 'exercise of the right of free speech, petition, or association.'" *Cavin v. Abbott*, 03-16-00395-CV, supra.

In *System v. Khalil*, the First Court of Appeals recognized that the Texas Supreme court in *Lippincott v. Whisenhunt,* 462 S.W.3d 507, 509 (Tex. 2015), "did not evaluate whether each statement about Whisenhunt, when viewed independently of the other statements, addressed a matter of public concern. Instead, having found that at least one statement was a communication made in connection with a matter of public concern, the Court determined that Whisenhunt's suit was in response to the exercise of the right of free speech, as defined in the TCPA, and that the TCPA applied." *System v. Khalil*, 01-16-00512-CV (Tex. App.-Houston [First Dist.] 2017) pet den. (citing *Lippincott v. Whisenhunt,* 462 S.W.3d 507, 510 (Tex. 2015).  The First Court of

Appeals also noted that in *Combined Law Enforcement Ass'n of Tex. v. Sheffield,* No. 03-13-00105-CV, 2014 WL 411672, at *5 (Tex. App.-Austin Jan. 31, 2014, pet. denied) (mem. op.) the Court of Appeals analyzed each communication separately to determine if TCPA applied. *Id.* at footnote 4.

Respectfully submitted,

By: */s/ Silvia T. Hassell*
Texas Bar No. 09205200
12807 Haynes Rd., Bldg. C
Houston, Texas 77066
Tel.  713-665-2442
Fax. 713-665-0369
E-Mail:  sehassell@aol.com

Attorney for Royce Hassell

### CERTIFICATE OF SERVICE

I hereby certify that on 20th By day of June, 2018, a true and correct copy of the foregoing instrument was served on all known counsel of record in accordance with the Texas Rules of Civil Procedure by Texas E-file and serve.

/s/ Silvia T. Hassell

6/22/2018 3:05 PM
Chris Daniel - District Clerk Harris County
Envelope No. 25496797
By: DELTON ARNIC
Filed: 6/22/2018 3:05 PM

Cause No.  2016-87708

| | | |
|---|---|---|
| HASSELL CONSTRUCTION COMPANY, INC., | § | IN THE DISTRICT COURT OF |
| *Plaintiff* | § | |
| | § | |
| | § | |
| v. | § | HARRIS COUNTY, TEXAS |
| | § | |
| ROYCE HASSELL and | § | |
| SILVIA HASSELL, | § | |
| *Defendants* | § | 113TH  JUDICIAL DISTRICT |

## RESPONSE TO ROYCE HASSELL'S FIRST AMENDED
## AND SUPPLEMENTAL ANTI-SLAPP MOTION

NOW COME Counter-Plaintiffs and file this response[1] to Royce Hassell's ("Royce") first amended and supplemental anti-SLAPP motion to dismiss, and would show as follows:

**I.**     **The only claim to which the TCPA[2] may be applicable, is the claim based on Royce's filing of a misleading affidavit in support of his application(s) for a writ of garnishment.**

1.     The TCPA provides, in pertinent part, as follows:

*"If a legal action is based on, relates to, or is in response to a party's exercise of the **right of free speech**, **right to petition**, or **right of association**, that party may file a motion to dismiss the legal action."*
Tex. Civ. Prac. & Rem. Code Ann. § 27.003 (West) (Emphasis added).

*"**Exercise of the right of association** means a communication between individuals who join together to collectively express, promote, pursue, or defend common interests."*

*"**Exercise of the right of free speech** means a communication made in connection with a matter of public concern."*

---

[1]  Counter-Plaintiffs hereby incorporate their initial response filed on June 14, 2018 and their letter brief filed on June 20, 2018. Counter-Plaintiffs do not waive their objections to the amendment and/or supplement, to the extent filed after the time allowed by the TCPA.

[2]  Chapter 27 of the Tex. Civ. Practice & Remedies Code.

"***Matter of public concern*** *includes an issue related to:*
*(A)     health or safety;*
*(B)     environmental, economic, or community wellbeing;*
*(C)     the government;*
*(D)     a public official or public figure; or*
*(E)     a good, product, or service in the marketplace."*

"***Exercise of the right to petition****" means any of the following:*
*(A) a communication in or pertaining to:*
*(i) a judicial proceeding;*
Tex. Civ. Prac. § Rem. Code Ann. § 27.001 (West) (Emphasis added.)

2.      Royce has not shown, and cannot show, that he has taken any action that implicates his exercise of his right of free speech, because there are simply no matters of public concern involved.  His reliance on the word "economic" is misplaced and out of context.  The statute uses that word in the context of risk to the public, not risk to an individual or corporation.[3]

3.      Similarly, the right of association does not involve private individuals forming a corporation.  Royce has been unable to cite any case in his amended and supplemental pleading because there is none to be found.

4.      The only "right" remaining is his right to petition.  In that context, the only arguable "communication, in or pertaining to" a judicial proceeding, is his affidavit in support of his applications for a writ of garnishment.

5.      Counter-Plaintiffs have briefed that issue in their letter to the Court dated June 20, 2018, as well as supported with exhibits in their initial response to the antiSLAPP motion, filed on June 14, 2018.  Those arguments will not be repeated here.  The Court should deny the anti-SLAPP motion related to that claim.

## II.     The claims against R. Hassell Properties and Terry Tauriello are not properly the subject of an anti-SLAPP motion.

---

[3]   *"The statements, although private and among EMPCo employees, related to a 'matter of public concern' because they concerned Coleman's alleged failure to gauge tank 7840, a process completed, at least in part, to reduce the potential environmental, health, safety, and economic risks associated with noxious and flammable chemicals overfilling and spilling onto the ground.  Id. ( 27.001(7)(A),(B);"*
*ExxonMobil Pipeline Co. v. Coleman,* 512 S.W.3d 895, 901 (Tex. 2017) (Emphasis added)

6.      These parties have not been served and, therefore, are not before the Court.  Royce does not have the right to seek dismissal of those claims under the TCPA.  Therefore, the Court should deny that portion of the motion to dismiss.

III.    **In the event that the Court finds that the TCPA applies to each and every cause of action asserted against Royce, the Counter-Plaintiffs contend that they have supported each and every element of their claims, with clear and specific evidence, and have shown the inapplicability of each of Royce's defenses.**

7.      Counter-Plaintiffs incorporate their previously filed response, supported by the pleadings, declaration of Phillip Hassell, and the accompanying exhibits, as well as the recently filed letter brief to the Court ("incorporated materials").

8.      The incorporated materials support each claim against Royce, who has yet to provide an affidavit or declaration, denying the claims against him, or controverting the proof brought forward by the Counter-Plaintiffs.  Instead, Royce tries to convince this Court that the claims against him have already been adjudicated in another forum, and that he, alone, should be allowed to go forward and sue his siblings for breaches of their fiduciary duties to him  based, incredibly, on the very same legal theory which he claims is unavailable to them.  (See Exhibit A to the initial response.)

9.      Royce's laundry list of defenses are mere argument, and conclusions, and are not supported by facts.  Any reliance on the referenced arbitration proceeding is misplaced, as it has been conclusively shown that none of the Counter-Plaintiffs were parties to that proceeding. Actually, Royce strenuously objected to extending any ruling by the arbitrators to any of the Counter-Plaintiffs, and sought clarification on that issue in a motion to modify the award.  That motion was granted.  (See Exhibit D attached to the initial response.)

IV.     **Royce has not offered, and this Court has not admitted any evidence of his attorney fees, expenses and costs incurred in prosecuting the anti-SLAPP motion.**

10.     Because there is no evidence in the record as to Royce's fees and expenses incurred in prosecuting his motion to dismiss, the Court has no basis upon which to award him any such

fees, costs and expenses.

11.     Additionally, section 27.009 requires the Court to make an evaluation of whether justice and equity require an award of fees, costs and expenses.  At the hearing held on June 15, 2018, the Court expressed dissatisfaction with the length of the initial motion and directed Royce to file an amended and parred down version.  That fact should certainly be considered in any determination on this issue.

**V.     All unsupported factual statements in the initial motion and this amended and supplemental motion, should be struck.**

12.     Royce has not supported his factual statements in his motions with an affidavit or declaration other than to authenticate exhibits.  For example, he states, without a supporting affidavit or declaration, that:[4]  a) "the representations that RH would repay the loans, were true"; b) "[siblings] hired conflicted lawyers behind his back"; c) "he was locked out [of HCCI]"; d) "HCCI's Controlling owners were even spying on him"; e) "the promises of RH's siblings was that they would watch his back while he was sick"; f) etc., etc.  Examples of other factual statements are highlighted in the attached exhibit.  In essence, Royce's motion is akin to a traditional motion for summary, however, lacking support through affidavits or declarations.  The Counter-Plaintiffs are at a disadvantage and prejudiced by the lack of a verification from Royce.

13.     The Court should strike all such factual statements, or allow Counter-Plaintiffs the opportunity to depose Royce, as previously requested.

**VI.     Conclusion**

14.     For all the reasons stated in the initial response, this response and the letter brief, the Court should deny Royce's TCPA motion.

Respectfully Submitted,

**RENTEA & ASSOCIATES**

---

[4]  Since the amended motion is not paginated, the references are highlighted in the pleading, which is attached hereto as Exhibit 1.

700 Lavaca, Suite 1400-2678
Austin, Texas 78701
(512) 472-6291
(512) 472-6278 Facsimile
brentea@rentealaw.com


By: */s/ Bogdan Rentea*
   Bogdan Rentea
   State Bar No. 16781000
ATTORNEY FOR COUNTER-PLAINTIFFS


<u>CERTIFICATE OF SERVICE</u>

By my signature above, I hereby certify that on June 22, 2018, all counsel of record were served with a copy of the foregoing *Response to Royce Hassell's First Amended and Supplemental Anti-SLAPP Motion* via the Court's e-filing system.

5

CAUSE NO. 2016-87708

| | | |
|---|---|---|
| HASSELL CONSTRUCTION CO., INC., et al, | § | IN THE DISTRICT COURT OF |
| *Plaintiffs* | § | |
| | § | |
| v. | § | HARRIS COUNTY, TEXAS |
| | § | |
| ROYCE HASSELL, et al, | § | |
| *Defendants* | § | 113th JUDICIAL DISTRICT |

<u>DEFENDANT'S FIRST AMENDED AND SUPPLEMENTAL ANTI-SLAPP MOTION TO DISMISS</u>

TO THE HONORABLE JUDGE OF SAID COURT:

Defendant Royce Hassell ("RH"), files this First Amended and Supplemental Anti-Slapp Motion to Dismiss[1] and would respectfully show this Court as follows:

**INTRODUCTION**

RH's siblings, the Plaintiffs, Michael Hassell, individually and as Trustee of the James C. Hassell Irrevocable Intervivos Trust ("JCH Trust"), Phillip Hassell, Shawn Hassell Potts, and Jason Hassell (herein the "Siblings"), sued their brother and co-equal beneficiary of the JCH Trust which is the majority shareholder of Hassell Construction Co., Inc. ("HCCI"). The Siblings bring three new claims against RH by way of Counterclaims, brought by Michael Hassell, Phillip Hassell and Shawn Hassell Potts, and a third-party claim brought by Jason Hassell.

The claims of the Siblings are as follows:

1) **First Claim**:  Plaintiffs allege RH breached an informal fiduciary duty to them by "activating a business in competition with HCCI."

---

[1] Royce Hassell files this motion subject and without waiver of his right to move to compel arbitration in the event this legal action is not dismissed.

**EXHIBIT 1**

2) **Second Claim**:  Plaintiffs allege RH breached an informal fiduciary duty to his siblings and committed fraud by making "false representations" to obtain loans which he did not intend to repay which caused damage to the Hassell Construction Company, Inc. and "in turn the trust was diminished."

3) **Third Claim**:  Plaintiffs' allege RH "continues to take action designed to harm family members" which includes his supporting a writ of garnishment by allegedly intentionally giving false information.

I.     **THE FIRST PRONG:  EACH OF PLAINTIFFS' THREE CLAIMS IS "BASED ON, RELATES TO, OR IN RESPONSE TO" RH'S EXERCISE OF CONSTITUTIONAL RIGHTS PROTECTED UNDER THE TCPA[2]**

"The TCPA casts a wide net." *Adams v. Starside Custom Builders, LLC,* 16-0786 (Tex. 2018).  Under the broad definitions of the TCPA, each claim asserted by Plaintiffs against RH "is based on, relates to, or in is in response to" RH's exercise of rights protected by the TCPA.  RH has the right to speak freely, associate freely and petition freely, and the claims of the Siblings seek to retaliate against him for doing so.

The **First Claim** is based on, relates to and is in response to RH's right to associate with Terry Tauriello in order to "activate" a business which competes with HCCI.  The first claim therefore is related and in response to RH's right to speak freely with a person RH has associated himself with, Terry Tauriello, to do all the things which are necessary to "activate" a business, an activity which requires petitioning conduct as broadly defined in the TCPA.

The **Second Claim** alleges RH made "representations" which Plaintiffs claim were false and intended to induce them to approve loans from the corporation to him or his companies which he did not intend to repay.  Thus, Claim Two is necessarily "based on, relates to, or is in response to" RH's "exercise of the right of free speech" because it involves a communication made in connection with a matter of public concern, economics.

The **Third Claim** alleges RH signed an "affidavit" which Plaintiffs' claim is false to support his company's petition for writ of garnishment against HCCI.  The third claim, therefore, is in response to, related to and based on RH's right of free speech and his right to petition.

**THE RIGHT TO PETITION**

---

[2] The TCPA refers to Tex. Civ. Prac. & Rem. Code Ann Chapter 27.

The TCPA is to "encourage and safeguard constitutional rights of persons to petition, speak freely, associated freely, and otherwise participate in government to the maximum extent permitted by law and, at the same time, protect the rights of a person to file meritorious lawsuits for demonstrable injury." TCPA 27.002. A party who moves to dismiss under the TCPA must first show by a preponderance of the evidence the claim is based on, relates to, or in response to the movant's exercise of the right to petition, the right of free speech, or the right of association. Tex. Civ. Prac. & Rem. Code §27.005(b).

The "[e]xercise of the right to petition" is defined to include the making of a "a communication in or pertaining to" a judicial proceeding, an official proceeding, a communication in connection with an issue under consideration or review by a legislative, executive, judicial, or other governmental body or in another governmental or official proceeding" and "any other communication that falls within the protection of the right to petition government under the Constitution of the United States or the constitution of this state." Tex. Civ. Prac. & Rem. Code §27.001(4)(A, B and E).

The TCPA defines an "official proceeding" to include "any type of administrative, executive, legislative, or judicial proceeding that may be conducted before a public servant." *Id.,* §27.001(8)." *A "[c]ommunication includes the making or submitting of a statement or document in any form or medium, including oral, visual, written, audiovisual, or electronic." Id. at §27.001(1).*

The **First Claim** is based on, relates to and in response to RH activating a business. In order to activate a corporation, as is R. Hassell Properties, Inc, documents and statements are required to be filed with the Texas Secretary of State's office, including the Comptroller of Public Accounts. Such filings broadly fall within the definition of the exercise of the right to petition. The siblings have brought the First Claim in retaliation for RH's right to petition as defined in the TCPA.

The **Second Claim** is based on, relates to and in response to RH's right to petition because it is brought to retaliate against RH for having successfully petitioned for a declaratory judgment that he does not owe HCCI any money for loans which has not been offset by the profits HCCI owes him or his companies.  The Siblings have brought this suit in retaliation for RH having successfully petitioned for a declaration that he has paid off the loans.

The **Third** Claim is based on, relates to and in response to RH's right to petition because is complains of an affidavit filed with the court in support of writ of garnishment.  The Siblings have brought this claim to retaliate for RH's right to petition.

**THE RIGHT OF FREE SPEECH**

The TCPA broadly defines the "exercise of the right of free speech" as "a communication made in connection with a matter of public concern."  Tex. Civ. Prac. & Rem. Code Ann §27.001(3).  A "'[m]atter of public concern' includes an issue related to: (A) health or safety; (B) environmental, economic, or community well-being; (c) the government; (D) a public official or public figure; or (E) a good, product or service in the marketplace."  *Id. §27.005(d). (Emphasis added).*  All three claims are based on, relate to and are in response to RH's right of free speech. Claim One, acting a business in association with another person, Terry Tauriello, necessarily relates to free speech which is required in order to form a business with another person.  Plaintiffs seek to place economic restraints on Defendant and punish him for activating a business which competes with HCCI.  Attempted economic restraint of trade is obviously a matter of public concern.  (*For example,* "Every contract, combination, or conspiracy in restraint of trade or commerce is unlawful."  Tex. C. Prac. & Rem Code § 15.05(a).; "It is unlawful for any person to monopolize, attempt to monopolize, or conspire to monopolize any part of trade or commerce." Id. § 15.05(b).  *See, also, Better Business Bureau of Metropolitan Houston, Inc. v. John Moore Services, Inc*., 500 S.W.3d 26, ([1st Dist.] 2016).)

The **First Claim** is based on, related to and in response to RH's right to speak freely with Terry Tauriello for purposes of acting R. Hassell Properties, Inc.

The **Second Claim** is based on, related to and in response to RH's communications with his Siblings, which they characterize as false, regarding loans to his company or him personally.

The **Third Claim** is based on, related to and in response to RH's communications in an affidavit which the Siblings claim are false.

**THE RIGHT OF ASSOCIATION**

The "exercise of the right of association" to defined to mean "a communication between individuals who join together to collectively express, promote, pursue, or defend common interests."

The **First Claim** is based on, related to and in response to RH's Right of Association with Terry Tauriello in activating R. Hassell Properties, Inc.

**II.    THE SECOND PRONG:  Once the TCPA is found to apply to a claim, the burden shifts to the Plaintiff to provide "clear and specific" proof-to support each element of the claim.**

Each claim must be dismissed unless HCCI's Controlling Owners present the Court with "clear and specific" evidence to support each element of each cause of action that they bring against RH.  Tex. Civ. Prac. & Rem. Code §27.005(c).  This is a heightened standard that requires the non-movant to show with evidence specifically "when, where and  .. . how" the movant's conduct was actionable and how it resulted in injury.  *In re Lipsky,* 460 S.W. 3d at 590-91 (Tex. 2015).

**FIRST CLAIM**:  To establish that RH breached a fiduciary duty to the Plaintiffs, Plaintiffs must first evidence that he owed the Plaintiffs a fiduciary duty, that activating a business in competition with HCCI breached that duty by activating a business in competition with HCCI, that  he breached that duty, and that the breach caused damages.

Plaintiffs cannot demonstrate RH owed them a fiduciary duty because they had no confidential relationship with him and cannot evidence one. They have asserted no facts and submitted no evidence that they trusted him or relied on him.  Instead, as the narratives in the original TCPA motion demonstrates, the Siblings did not, in fact, trust him and hired conflicted attorneys behind his back.  Even if RH owed Plaintiffs a fiduciary duty, plaintiffs cannot demonstrate that "activating a business in competition with HCCI" would violate that duty.  There

is no prohibition against a beneficiary of an Intervivos trust from activating a business which competes with the corporation of which the trust owns stock, particularly after the other trust beneficiaries lock out the co-beneficiary from the corporation which the trust owns. Thus, even if RH owed a duty before he was locked out, he certainly did not owe one after he was locked out. Additionally, Plaintiffs cannot demonstrate that the alleged breach of RH caused any damages to HCCI.

**SECOND CLAIM** To establish their second claim that RH breached informal duties by making representations about his financial condition and intent to repay loans which he did not intend to repay. However, Plaintiffs can evidence no confidential relationship, or that if there was one that that he made false representations about his finances or intent to pay the loans, because in fact he did repay the loans with interest and it was HCCI, through its controlling shareholders, the Siblings, which failed to pay RH's companies the profits they owed such that RH was justified in waiting until the arbitrators declared his rights and obligations under the various agreements.

To establish a fraud claim, HCCI's Controlling Owners must establish by clear and specific evidence that RH  made a material representation of fact; The representation of fact was false; When the representation of fact was made, the speaker knew that it was false or made the representation recklessly without any knowledge of its truth and as a positive assertion; The speaker made the representation with the intent that the person to whom the representation was made act upon it; The person to whom the representation was made acted in justifiable reliance on the representation; and The representation caused damages. (*Exxon Corp. v. Emerald Oil & Gas Co.,* 348 S.W. 3d 194, 217 (Tex. 2011); *Italian Cowboy Partners, Ltd. V. Prudential Ins. Co. of Am.,* 341 S.W.3d 323, 337 (Tex. 2011); *see also, Aquaplex, Inc. v. Rancho La Valencia, Inc.,* 207 S.W.3d 768, 774 (Tex. 2009).

There is no evidence that RH made false representations to the Siblings about his finances as demonstrated by the narrative of the Siblings in the arbitration describing in great detail the relationship of the parties beginning in 2008. Now, ten years later, there is no evidence that RH made a material representation of fact which he knew was false with the intent that the persons to which the representations were made act upon it. The representations, that RH would repay the loans were true and he has repaid the loans with interest.

**THE THIRD CLAIM:**   The third claim, essentially for wrongful garnishment against a corporation, requires the Siblings to prove standing, and then to prove that a statement in RH's affidavit in support of the garnishment was false.   However, each and every statement RH made in support of the garnishment is true as supported by the financial information regarding HCCI's financial status which the Plaintiffs' themselves have submitted in this case.

III.   **EVEN IF PLAINTIFFS CAN PRODUCE CLEAR AND SPECIFIC EVIDENCE OF EACH ELEMENT OF EACH CLAIM, THE LEGAL ACTION MUST BE DISMISSED BECAUSE RH HAS ESTABLISHED EACH ESSENTIAL ELEMENT OF AN AFFIRMATIVE DEFENSE TO THE CLAIMS.**

(i)   **Section 27.005(d) of the TCPA.**

Under section 27.005(d) of the Act, "the court shall dismiss a legal action against the moving party if the moving party establishes by a preponderance of the evidence each essential element of a valid defense to the nonmovant's claim." Tex. Civ. Prac. & Rem. Code § 27.005(d). This is true even if the nonmovant satisfies its "clear and specific" burden of proof discussed above. *Id.*

(ii)   **Lack of Standing and/or Capacity.**

RH's co-beneficiaries lack capacity to bring the corporation's claims on their own behalf or to file claims. The Plaintiffs bring this action as a thinly disguised attempt to relitigate the arbitration. By filing this motion RH does not waive his objection to the lack of capacity of HCCI's Controlling Shareholders to bring claims for damages of HCCI simply because the arbitration award diminishes the value of their stock in the corporation. Even if getting a judgment against a corporation could be considered a wrong, "[a] cause of action against one who has injured a corporation belongs to the corporation and not to the shareholders. A corporate stockholder cannot recover damages personally for a wrong done solely to the corporation even though he may be injured by that wrong." *Sawnk v. Cunningham, I258 S.W. 3d 647 (Tex. 2008) citing Wingate v. Hajdik,* 795 S.W. 2d 717, 719 (Tex. App.-Fort Worth 2007, pet denied). Here,

HCCI's Controlling Owners sued RH because he is attempting to collect a judgment against HCCI ==for profits he is owed== from a partnership between HCCI and his corporations. ==Even if he had committed some wrong, which he denies,== "[t]he individual shareholders have no separate and independent right of action for wrongs done to the corporation that merely result in depreciation in the value of their stock." *Swank, supra, at 661.*

"The question of standing is a legal question regarding subject-matter jurisdiction which cannot be waived." *Fitness Evolution, L.P. v. Headhunter Fitness, LLC, 05-13-00506-CV, (Tex. App.-Dallas (5th Dist.) 2015).* ==However, since a challenge to a party's capacity to participate in a suit may be waived (*Id.*), Royce Hassell chooses not to waive them.== *See, Fitness Evolution, L.P. v. Headhunter Fitness, LLC, 05-13-00506-CV, (Tex. App.-Dalls [5th Dist.] 2015).*

Further, even if Plaintiffs had standing as beneficiaries of the JCH Trust, they can prove no causation or damages to the trust by virtue of any conduct of ==RH, who has repaid the loans complained of by Plaintiffs.==

      **(iii)**    **Limitations.**

The purpose of limitations is to prevent stale or fraudulent claims. *Kerlin v. Sauceda,* 263 S.W. 3d 920, 925 (Tex. 2008). The statute of limitations bars the new suit by HCCI's Controlling Owners brought more than seven years after the evidence they proffer shows they suspected Royce Hassell of wrongdoing. Section 16.004(a)(4) of the Civil Practice and Remedies Code provides a "[p]erson must bring suit on [fraud or breach of fiduciary duty] not later than four years after the date the action accrues." *Id. (4) and (5).* Exhibit "B" to the legal action is an e-mail chain of March 2011, which evidences that far from trusting Royce Hassell his siblings believed he had misapplied funds. Additionally, there is evidence that as far back as 2011, ==HCCI's Controlling Owners were even spying on him== by unlawfully requesting his private banking information from a bank president of CommunityBank, the subject to the writ of garnishment Royce Hassell's siblings want to stop him from pursuing. Exhibit "25" to RH's Original TCPA Motion.

Evidence that no confidential relationship existed includes between Royce Hassell and his siblings during this time includes affidavits of Phillip Hassell prepared by conflicted lawyers representing their own interests which aver that from January of 2012, HCCI and his siblings were "adverse" to Royce Hassell and his companies "at all times."  Exhibit "26" to RH's Original TCPA Motion.  It is now more than six years later and any claims for breach of fiduciary duty, fraudulent inducement, and unfair competition against Royce Hassell are clearly barred by limitations.  Just the opposite, the promises of RH's Siblings was that they would watch *his* back while he was sick.

A misrepresentation constitutes fraudulent concealment when it prevents the plaintiff from discovering a wrong.  *Kanon v. Methodist Hosp.,* 9 S.W. 3d 365, 369 (Tex. App.-Houston [14th Dist.} 1999, no pet.) *disapproved on other grounds, Ernst & Young, LLP v. Pacific Mut. Life Ins. Co.,* 51 S.W. 3d 573 (Tex. 2001).  Royce Hassell's siblings were actively hiding a relationship with and following the directions lawyers which they knew were conflicted from at least January of 2012 forward with the intent of taking what belonged to Royce Hassell and his companies for themselves.

The "counterclaims" made by Michael Hassell, Phillip Hassell and Shawn Hassell Potts do not arise out of the same action or occurrence that is the basis of Royce Hassell's defending counterclaims he asserted when his siblings caused the family corporation, HCCI, to sue him in December of 2016, in the middle of the arbitration.  HCCI's suit falsely alleges Royce Hassell is not an owner.  The counterclaims of the Siblings are barred by limitations because they had actual knowledge of RH's counterclaims against HCCI, when their attorney was served with the suit, but waited until the conclusion of the arbitration to assert counterclaims which are time barred.

Jason Hassell brings an original suit, not by way of counterclaim, all claims of Jason Hassell are barred by limitations.

**(iv)    Res Judicata**

"Res judicata precludes relitigation of claims that have been finally adjudicated, or that arise out of the same subject matter and that could have been litigated in the prior action." *Amstadt v. United State Brass Corp.,* 919 S.W. 2d 644 (1966), citing *Barr v. Resolution Trust Corp.,* 837 S.W. 2d 627, 628 (Tex. 1992). Res judicata entails proof of a final judgment on the merits by a court of competent jurisdiction; identity of parties or those in privity with them; and a second action based *on the same claims as were raised or could have been raised in the first action*. *See, Texas Water Rights Comm'n v. Crow Iron Works,* 582 S.W. 2d 768, 771-72 (Tex. 1979). Although ["[g]enerally people are not bound by a judgment in a suit to which they were not parties, the doctrine of res judicata creates an exception to this rule by forbidding a second suit arising out of the same subject matter of an earlier suit by those in privity with the parties in the original suit." *Amstadt, pg. 653.*

In the arbitration Post Hearing Brief of HCCI prepared by it own lawyers, the "parties" on the claimants' side identified as follows:

Claimants are James C. Hassell ("JCH") and Hassell Construction Company, Inc. ("HCCI"). Counter-Respondents are Hassell Management Services, LLC ("HMS"), Shawn Potts, James C. Hassell, and HCCI. (Because Respondent Royce Hassell has brought a derivative claim on behalf of HCCI against HCCI's and HMS' officers and directors, putative Counter-Respondents are also those officers and directors, *i.e.,* Phillip Hassell and Michael Hassell.) Claimants and Counter-Respondents will be collectively referred to as Claimants when their individual names are not used."

Exhibit "31" to RH's Original TCPA motion, Claimants' Post Arbitration Hearing Brief, pg. 1.

The lawyers which filed pleadings for HCCI admitted they represented selected HCCI owners, including three of the four siblings now bringing a new suit as HCCI. (Exhibit "44" to RH's original TCPA Motion).

As hereinbefore set out, HCCI's Controlling Shareholders were in privity with HCCI in the arbitration and were actually, if not virtually represented. As a result, the claims they now brought again for breach of fiduciary duty and fraudulent inducement on the part of RH are barred by res judicata.

Claims of breach of fiduciary duty by Royce Hassell to HCCI which were pursued in the arbitration were denied.  *See*, Exhibit "1" to RH's Original TCPA Motion, December 7, 2017, Arbitration Award, pg. 4 "The award is in full settlement of all claims related to the Joint Venture greement and the business relationship between the parties.  All claims not expressly granted herein . . . are hereby DENIED."

The decision of the arbitrators, that the agreement between HCCI and Royce Hassell's companies is a valid agreement, was initially argued for HCCI and its controlling owners by Micky Das and was relied on by Judge Kyle Carter to compel arbitration.  Since then then another state district court judge, Frederika Phillips, a United States Bankruptcy Court Judge (Judge Marvin Isgur), and the arbitrators have upheld the validity of the agreement.

- *See, Exhibit 1 to RH's Original TCPA Motion, Final Arbitration Award;*

- *See,* Exhibit "32" to RH's Original TCPA Motion, State District Judge Kyle Carter's Orders Compelling Consolidation and Arbitration at HCCI's request based on the validity of the CJVA and its arbitration clause;

- *See,* Exhibit "*5,*" to RH's Original TCPA Motion, Memorandum Opinion dated May 11, 2015, of United States Bankruptcy Court Judge Marvin Isgur; Also see, Exhibit "30" to RH's Original TCPA Motion, Transcript of hearing preceding the Memorandum Opinion wherein Judge Isgur overruled HCCI's attempts to limit the terms of the CJVA for "insurance purposes" or for "tax purposes" as follows; See also, Exhibit "2" to RH's Original TCPA Motion,  Final Judgment entered by Harris County District Judge Frederika Phillips confirming the Final Arbitration Award.

RH's Siblings are estopped from arguing the Hassell 2012 Joint Venture was not real after they argued in other cases "[i]n 2012, Claimant HCCI, and Respondents R. Hassell Holding Company, Inc. R. Hassell & Company, Inc., R. Hassell Builders, Inc. and G.R. Group Resources LLP _formed a joint venture and executed a Construction Joint Venture Agreement (the "JVA") dated July 1, 2012"_ with no mention of RHP, new claims against RHP are frivolous.  *See, for example*, documents such as, Exhibit "37" to RH's Original TCPA Motion, Motion to Compel Arbitration at para. 1; Exhibit "34" to RH's Original TCPA Motion, HCCI's

Arbitration Demand at para. 3; HCCI's First Amended Demand for Arbitration of January 12, 2015[3]; and, HCCI's Supplement Arbitration Demand.

Importantly, Royce Hassell's siblings are bound by the successful arguments of their own lawyers (especially since they were simultaneously Exxon's Lawyers and loyal to the District) that the CJVA binds non-signatories' "factually related to and factually intertwined" claims which are "significantly related to and factually intertwined with the JVA" (*See,* Exhibit "34" to RH's Original TCPA Motion, HCCI's Arbitration Demand at para. 4, and HCCI's First Amended Arbitration Demand at para. 6.) No question exists that the Joinder Petition claims are factually related and factually intertwined with the CJVA.

      (v)    **<u>Estoppel</u>**[4]

HCCI's Controlling Owners are estopped at law and in equity from asserting claims that Royce Hassell breached his fiduciary duties in relation to the CJVA or that the CJVA is "not real:"

    **(a) Estoppel by Record or Judicial Estoppel:**  A party is estopped from asserting a position contrary to that taken under oath in an earlier judicial proceeding to gain an unfair advantage. *Ferguson v. Building Materials Corp.,* 295 S.W. 3d 642, 643 (Tex. 2009).

The verified pleadings, signed affidavits, deposition testimony, court testimony, sworn arbitration testimony as well as the explanations of counsel made by HCCI's Controlling Owners in earlier proceedings contradict the positions the siblings now assert regarding the validity of the CJVA.

Specifically, Phillip Hassell has repeated verified the CJVA is a valid, enforceable agreement with a valid, enforceable arbitration clause and caused his controlled corporation HCCI to take the same position.  For example, Phillip Hassell verified both for HCCI and Phillip Hassell's HCCI's Motion to Compel Arbitration which states "[i]n 2012, Plaintiffs and Defendants formed a joint venture and executed a

---

[3] The certificate of service on HCCI's "First Amended Demand for Arbitration" is erroneously dated January 12, 2014, but was served on  January  12, 2015.
[4] RH incorporates by reference the factual narrative and exhibits to his Original TCPA Motion in support of his affirmative defenses that RH did not owe fiduciary duties to the controlling owners of HCCI, and fellow beneficiaries of the JCH Trust in that they were actively defrauding him without his knowledge.

Construction Joint Venture Agreement ("the JVA") dated July 1, 2012.  The JVA contains a broad arbitration provision that mandates the arbitration of all disputes that arise between the parties. . . Accordingly, Plaintiffs' claims are subject to binding arbitration. . . Plaintiffs' attempt to avoid their contractual obligation to arbitrate their claims should not be countenanced. Whether a valid arbitration agreement exists is a question of law. . . Because a valid, enforceable arbitration agreement exists between Plaintiffs and Defendants, this Court has no discretion but to compel arbitration . . . "  Exhibit "37" to RH's Original TCPA Motion, Motion to Compel, pages 1 and 3; and Phillip Hassell's verifications for HCCI and HMS (a company in which Royce Hassell has no ownership).  Phillip Hassell's verification swears under oath that "he has personal knowledge of the facts contained [in the motion to compel] and that all factual statements are true and correct."  Exhibit "45" to RH's Original TCPA Motion, Phillip Hassell's verification for HCCI and Exhibit "46" to RH's Original TCPA Motion, page 10, Phillip Hassell's Verification for HMS.

   **(b) Estoppel by Contract:**  A party may not deny the terms of a valid contract which has not been set aside by fraud, accident or mistake.

   The only two signatories to the CJVA, Phillip Hassell and Royce Hassell, have both given sworn testimony that the CJVA is a valid enforceable contract.

   The CJVA has not been set aside by fraud, accident or mistake.  HCCI's attorneys have argued in various courts and the arbitration the agreement is valid before and after deciding to not appeal Judge Isgur's 2015 Memorandum Opinion, so holding.   RH's siblings cannot now deny the terms of the contract they have repeatedly caused their controlled corporation to embrace for purposes of obtaining relief. *Mathews v. Sun Oil Co.,* 411 S.W. 2d 561, 564 (Tex. App.-Amarillo 1996), aff'd., 425 S.W. 2d 330 (Tex. 1968). Now that RH and his companies have acted in reliance on the agreement his siblings may not be permitted to disavow his just compensation for the acts he did in performance of the contract. *31 C.J.S. Estoppel and Waiver §70-73.*

(c) **Equitable Estoppel:**  Equitable estoppel prevents a party from changing its position after misrepresenting or concealing facts which the other party relied on to its detriment. *Sefzik, v. City of McKinney,* 198 S.W. 3d 884, 895 (Tex. App.-Dallas 2006, no pet.).  **The elements of the equitable estoppel defense are:**   1) the plaintiff made a false representation to, or concealed a material fact from, the defendant; 2) the plaintiff intended that its representation or concealment be acted on; 3) the plaintiff knew or had the means of knowing the real facts; 4) the defendant neither knew nor had *the means* of knowing the real facts; 5) the defendant relied on the representation or concealment to its detriment.  *Johnson & Higgins v. Kenneco Energy, Inc.,* 962 S.W. 2d 507, 515-16 (Tex. 1998).

HCCI's Controlling Owners engaged in knowing concealment and false representations with intent that Royce Hassell act without knowledge of the true facts and in reliance on the false representations. Phillip Hassell proposed the Hassell 2012 Joint Venture in the presence of Mike Hassell in August of 2012. After the partnership began operations Shawn Hassell Potts told the accountant for the partnership, Steve Ligon, that the partnership was real; HCCI's Controlling Owners told the insurance company the agreement was real; and HCCI's Controlling Owners made repeated representation to Royce Hassell that it was real.

Because it was HCCI's Controlling Owners caused Royce Hassell (and other third parties) to believe the agreement was real and Royce Hassell relied on those representations to his detriment, HCCI's Controlling Owners are estopped from denying the validity of the agreement.

(d) **Promissory Estoppel:**  Promissory estoppel ("justifiable reliance") is an affirmative defense which prevents a party from claiming that a contract is invalid or unenforceable.  *Nagle v. Nagle,* 633 S.W. 2d 796, 800 (Tex. 1982).  **The elements of promissory estoppel are** 1) a promise by the plaintiff to the defendant; 2) the defendant reasonably and substantially relied on the plaintiff's promise to its detriment; 3) the plaintiff know or should have known its promise would lead the defendant to some definite and substantial injury; and 4) injustice can be avoided only by enforcing the plaintiff's promise.

In December of 2010, when Royce Hassell was gravely ill, Phillip Hassell, Michael Hassell, and Shawn Hassell Potts gave Royce Hassell a letter written by Phillip Hassell's wife, Rosalyn Hassell, that they "truly" wanted to be his partner if Royce Hassell would turn over the running of the finances on jobs with HCCI over to them, which he did, *i.e., see Joinder Petition exhibits "A" and B."*  In July of 2012, while

conspiring with conflicted attorneys Phillip Hassell proposed a sharing of profits combining of resources partnership if HCCI could have 75% of the profits from the venture and Royce Hassell would take 25% which Royce Hassell accepted.  HCCI's owners claim herein the agreement was not real.  However, Royce Hassell relied on the agreement to his great detriment and injustice can only be avoided by enforcing the promises they made.  HCCI's Controlling Owners are estopped from asserting the CJVA is a fake.

> (e) **Quasi Estoppel:** Quasi estoppel is an equitable doctrine that prevents a party from asserting to another's disadvantage, a right that is inconsistent with a position previously taken by that party.  *Lopez v. Munoz, Hockema & Reed, LLP,* 22 S.W. 3d 857, 864 (Tex. 2000).  **The elements of quasi-estoppel are**: 1) the plaintiff acquiesced to or accepted a benefit under a transaction; 2) the plaintiff's present position is inconsistent with its earlier position when it acquiesced to or accepted the benefit of the transaction; 3) it would be unconscionable to allow the plaintiff to maintain its present position, which is to another's disadvantage.  *Id.*

> **(vi)    Accord and Satisfaction; Settlement.**

Any claimed debt of RH or his companies to HCCI has been paid with Hassell 2012 Joint Venture profits.  Thus, there is no debt for which RH and his companies are responsible and Plaintiffs can show no causation or damages.

Further, any claims HCCI might have had against RH for activating RHP were compromised and settled by attorneys Patrick Gaas and Bogdan Rentea, on behalf of the Hassell's they represent during the same hearings they agreed to drop all claims against RHP as well as their threat to make claims against Royce Hassell's 86-year-old mother-in-law and his two sons, in exchange for Royce Hassell dropping his objections to the arbitration on the grounds of inability to pay.  Their clients which include Royce Hassell's siblings are bound by that agreement which this suit violates because Royce Hassell performed his end of the bargain to his detriment.  *Lopez v. Munoz, Hockema & Reed, LLP,* 22 S.W. 3d 857, 863 (Tex. 2000).

> **(vii)    Waiver**

Waiver is the intentional relinquishment of a know right or conduct inconsistent with claiming that right. *Frazier v. GNRC Realty, LLC,* 476 S.W. 3d 70 (Tex. App.-Corpus Christi 2014, pet denied.)  The elements of waiver are:

(1) Existing right, benefit or advantage;
(2) actual or constructive knowledge of its existence; and
(3) an actual intent to relinquish the right inferable from the conduct.

*Ohrt v. Union Gas Corp.,* 398 S.W. 3d 315 (Tex. App.-Corpus Christi 2012, pet. denied).


HCCI and RH's siblings, through their own lawyers which they knew were conflicted, intentionally waived any rights to sue Royce Hassell based on his ownership of RHC, and waived the right to sue RHP or any of its owners and a host of other parties they had threatened to sue such as Royce Hassell's 86 year-old mother-in-law and his two sons, Royce Hassell's secretary and Royce Hassell's brother in law, in exchange for Royce Hassell going into debt  to pay the arbitration costs for an arbitration which benefit the District and Exxon.

Moreover, HCCI's Controlling Owners claimed the rights, benefits and advantages of the CJVA on numerous occasions.  As a result, even if they once believed it was a fraudulently induced agreement- which it was no on the part of Royce Hassell- they exhibited conduct of actual intent to relinquish the right inferable from claiming the agreement was invalid.  By relying on the terms CJVA to obtain benefits, not the least of which was the arbitration they compelled by it, HCCI's Controlling Owners have waived the right to now claim the agreement is "not real."

**(viii)    Ratification; Detrimental Reliance; Ultra Vires Contract and Unclean Hands.**

**The elements of ratification** include (1) approval by act, word, or conduct; (2) with full knowledge of the facts of the earlier act; and (3) with the intention of giving validity to the earlier act. *Jamail v. Thomas,* 481 S.W. 2d 485, 490 (Tex. App.-Houston [1st Dist.] 1972, writ ref'd n.r.e.).

Beginning with repeatedly asserting the validity of the CJVA and also of its arbitration clause in 2013, HCCI's Controlling Owners approved the terms of the contract (to include a sharing of profits) with full knowledge of the facts _they now claim_ mean the agreement was not for "for profit" but for purposes of deceiving an insurance company of which Phillip Hassell's wife, Rosalyn Hassell is "attorney in fact." Having ratified the CJVA, HCCI's Controlling Owners have ratified its terms which the arbitrators found entitles Royce Hassell's companies to profits which HCCI now owes.

**IV.   Because Dismissal is Proper, the TCPA Requires the Court to Award Royce Hassell His Court Costs, Attorney's Fees and Expenses, and to Sanction Michael Hassell, Phillip Hassell, Shawn Hassell Potts and Jason Hassell.**

If the Court dismisses this new suit under the TCPA, then it "shall" award Royce Hassell his "court costs, reasonable attorney's fees, and other expenses incurred in defending against the legal action as justice and equity may require."  Tex. Civ. Prac. & Rem Code § 27.009(a)(1).  In other words, the TCPA "mandates" the award of fees and costs and expenses to a successful movant.  *See Alphonso v. Deshotel,* 417 S.W. 3d 194, 200 (Tex. App.-El Paso 2013, no pet.), *disapproved of on other grounds by In re Lipsky,* 460 S.W. 3d at 591.

Furthermore, the TCPA requires "sanctions against the party who brought the legal action as the court determines sufficient to deter the party who brought the legal action from bringing similar actions described in this chapter."  Tex. Civ. Prac. & Rem. Code § 27.009(a)(2).  HCCI's Controlling Owners are already the subject of sanctions proceedings in federal bankruptcy court for their bad faith filings.  (See Exhibit "6" to RH's Original TCPA Motion, Transcript of Emergency Bankruptcy Hearing, March 9, 2018, pp. 17-19.)  Because this is not the first, or second or third time HCCI's Controlling Owners have made the same claims, an award of sanctions should be entered to reduce the likelihood of future misconduct by HCCI's Controlling Owners.

The true gist and new claims of the legal action surfaces wherein HCCI's Controlling Owners complain against Royce Hassell allegedly for "support[ing] an application for a writ of garnishment against

HCCI's bank account, by intentionally giving misleading information therein." (Joinder Petition, Para. 2(i)) and taking "actions designed to damage HCCI and its owners, by, inter alia, diverting assets and business opportunities rightfully belonging to HCCI."   The obvious import of these legal actions is that they are based on, relate to, and/or are in response to Royce Hassell's exercise of his constitutional right to petition for a writ of garnishment, right to free speech for making a supporting affidavit, and right to associate with RHP and Terry Tauriello for the purposes of making a living.

In threatening that they will "add, after discovery, any additional parties, including, but not limited to, the officers and directors of RHP, including Cindy Grooms and Ricardo Todeschini, or any other person that aided and abetted in the formation of RHP and contributed to the damages alleged herein" (Joinder Petition, Page 2, *5) HCCI's Controlling Owners call for this Court to use its TCPA's sanctioning authority to deter these parties, through significant sanctions, from engaging in future violations of the TCPA.

Accordingly, in addition to dismissing claims of HCCI's Controlling Owners, the Court should award Royce Hassell sanctions as well as his court costs and attorney's fees and expenses.  Tex. Civ. Prac. & Rem. Code § 27.009.

In support of this motion, Royce Hassell relies on the pleadings on file, including the live petition of HCCI's Controlling Owners, and the exhibits identified on the index of exhibits that precedes this motion.  The exhibits are attached hereto and incorporated herein for all purposes.  Additionally, Royce Hassell asks the Court to take judicial notice of the pleadings in and judgments of other courts in matters related to this case and of the arbitration.

**Prayer.**

Royce Hassell prays the Court grant this motion, to dismiss with prejudice the legal action asserted against him by HCCI's Controlling Owners, to award Royce Hassell his costs, attorney's fees, and other expenses under the TCPA, and to sanction HCCI's Controlling Owners in accordance with the terms of the

TCPA.  Royce Hassell requests any other, further, or alternative relief to which it may be legally or equitably

entitled.

Respectfully submitted,

By:  /s/ Silvia T. Hassell
Texas Bar No. 09205200
12807 Haynes Rd., Bldg. C
Houston, Texas 77066
Tel.  713-665-2442
Fax. 713-665-0369
E-Mail:  sehassell@aol.com

Attorney for Royce Hassell

**CERTIFICATE OF SERVICE**

I hereby certify that on 20th By day of June, 2018, a true and correct copy of the foregoing
instrument was served on all known counsel of record in accordance with the Texas Rules of Civil
Procedure by Texas E-file and serve.

/s/ Silvia T. Hassell

6/22/2018 6:40 PM
Chris Daniel - District Clerk Harris County
Envelope No. 25505636
By: DELTON ARNIC
Filed: 6/22/2018 6:40 PM

**CAUSE NO. 2016-87708**

| | | |
|---|---|---|
| HASSELL CONSTRUCTION CO., INC., et al, | § | IN THE DISTRICT COURT OF |
| *Plaintiffs* | § | |
| | § | |
| v. | § | HARRIS COUNTY, TEXAS |
| | § | |
| ROYCE HASSELL, et al, | § | |
| *Defendants* | § | 113ᵗʰ JUDICIAL DISTRICT |

<u>DEFENDANT'S TCPA MOTION TO DISMISS NEWLY</u>
<u>ASSERTED CLAIMS BY MICHAEL HASSELL AS TRUSTEE OF THE JCH TRUST</u>

**TO THE HONORABLE JUDGE OF SAID COURT:**

Defendant Royce Hassell (herein "Defendant" or "RH"), files this Motion to Dismiss the newly filed "Supplement to the Original Answer, Counterclaim, and Third-Party Petition of Michael Hassell" filed by Michael Hassell, as Trustee of the JCH Trust on June 15, 2018. RH moves for dismissal pursuant to Tex. Civ. Prac. & Rem. Code Chapter 27, "Actions Involving the Exercise of Certain Constitutional Rights" ("the TCPA").

## INTRODUCTION AND PROCEDURAL BACKGROUND

1.      On April 17, 2018, RH's siblings, the Plaintiffs, Michael Hassell, Phillip Hassell, Shawn Hassell Potts, and Jason Hassell (herein the "Siblings"), sued their brother and co-equal beneficiary of the JCH Trust which is the majority shareholder of Hassell Construction Co., Inc. ("HCCI"), after a Final Judgment was rendered in favor of Royce Hassell and his companies. On June 15, 2018, Michael Hassell, as Trustee of the James C. Hassell Intervivos Irrevocable Trust newly asserted the same three claims against RH.

2.      On May 21, 2018, RH filed "Royce Hassell's Anti-Slapp Motion to Dismiss" the claims (herein "Motion to Dismiss") and set the hearing on the motion for June 15, 2018.

3.      The Plaintiffs waited until June 14, 2018, Plaintiffs to file a "Response to Royce Hassell's Anti-Slapp Motion to Dismiss" newly attaching 26 exhibits to the response. Additionally, on June 15, 2018, at 10:00 AM, three hours before the scheduled hearing, Plaintiffs filed a "Supplement to the Original Answer, Counterclaim, and Third-Party Petition of Michael Hassell" supplemental Michael Hassell's original lawsuit by asserting the claims against Royce Hassell in his capacity as Trustee of the James C. Hassell Intervivos Trust.

4.      On June 15, 2018, at 1:00, this Court held a hearing on the Motion to Dismiss, also at that time directing Defendant to file a more particularized Motion to Dismiss as well as briefing on the legal issue of whether the entire lawsuit or each claim is tested against the TCPA's retaliatory purposes standard by June 20, 2018.  The Court also directed the Plaintiffs file a legal brief on the issue of standing.

5.      On June 20, 2018, Defendant filed it's "Defendant's First Amended and Supplemental Motion to Dismiss" and "Defendant's Legal Memorandum in Support of TCPA Motion to Dismiss."  On June 20, 2018, Plaintiff filed a letter brief with the Court on the issue of standing.

6.      Because Plaintiffs filed new claims on behalf of Michael Hassell, Trustee, at 10:00 AM on the morning of June 15, 2018, an issue may be raised as to whether the hearing of June 15 was sufficient to meet the TCPA's hearing requirements.  The TCPA requires that "[a] hearing on a motion under Section 27.003 must be set not later than the 60th day after the date of service of the motion unless the docket conditions of the court require a later hearing, upon a showing of good cause, or by agreement of the parties, but in no event shall the hearing occur more than 90

days after service of the motion under Section 27.003, except as provided by Subsection (c)." Tex. R. Civ. P. §27.004.

7.      Section 27.005 of the TCPA titled, "Ruling," provides that "[t]he court must rule on a motion under Section 27.003 not later than the 30th day following the date of the hearing on the motion." Tex. R. Civ. P. §27.005. Therefore, this Court must rule on the first Motion to Dismiss by July 15, 2018. Otherwise, the motion will be deemed denied by operation of law. Specifically, Section 27.008 of the TCPA provides that "[i]f a court does not rule on a motion to dismiss under Section 27.003 in the time prescribed by Section 27.005, the motion is considered to have been denied by operation of law and the moving party may appeal." Tex. R. Civ. P. §27.008.

8.      On June 22, 2018, Plaintiffs filed a "Response to Royce Hassell's First Amended and Supplemental Anti-Slapp Motion" which, at footnote 2 implies that the amended/supplement may be untimely, which RH denies. RH anticipates an issue may hereafter be raised as to whether the June 15, 2018, hearing encompassed the newly filed claims of Michael Hassell, Trustee, which were filed the morning of June 15. In an abundance of caution, RH has set a hearing on this motion to dismiss the claims of Michael Hassell, Trustee, for June 29, 2018, at 10:00 AM.

9.      In anticipation of the hearing and by this RH incorporates his originally previously filed pleadings and evidence in support of the motion to dismiss the claims of Michael Hassell, individually.

10.      Plaintiff moves for dismissal of the claims of Michael Hassell, Trustee, because each of the claims of Michael Hassell, as Trustee, ("Plaintiffs") are retaliatory and "based on,

relate[d] to, or in response to" Royce Hassell having successfully petitioned for a declaration of

the rights of Royce Hassell and his companies with regard to their business relationship with HCCI

as evidenced by the final arbitration award and final judgment.  In support of this motion to dismiss

RH hereby incorporates by reference the facts and evidence previously submitted in support of the

dismissal motion and as well as Royce Hassell's First Amended and Supplemental TCPA Motion

to Dismiss, his "Reply to the Response of Plaintiffs to Royce Hassell's Anti-Slapp Motion to

Dismiss" and his "Memorandum of Law in Support of His Motion to Dismiss."

11.     The claims of Plaintiff Michael Hassell, Trustee, which RH seeks to be dismissed

are:

**First Claim**:  Plaintiff claims RH breached an informal fiduciary duty to him by "activating a
business in competition with HCCI.

**Second Claim**:  Plaintiff claims RH breached an informal fiduciary duty to his siblings and
committed fraud by making "false representations" to obtain loans which he did not intend to repay
which caused damage to the Hassell Construction Company, Inc. and "in turn the trust was
diminished."

**Third Claim**:  Plaintiff claims RH "continues to take action designed to harm family members"
which includes his supporting a writ of garnishment by allegedly intentionally giving false
information.

12.     RH is a beneficiary of the JCH Trust and Michael Hassell is the Trustee of the Trust.

A "beneficiary" is a "person for whose benefit property is held in trust, regardless of the nature of

the interest." Tex. Prop. Code Ann. § 111.004(2).  "Breach of trust" means a violation by a trustee

of a duty the trustee owes to a beneficiary.  Tex. Prop. Code Ann. § 111.004(25).  In this case it is

Michael Hassell who has breached his formal fiduciary duties to RH, and not the other way around.

The claims of Michael Hassell, as Trustee of the JCH Trust against RH are frivolous.  To suggest

RH owed duties to Michael Hassell, as Trustee, who together with three other beneficiaries of the

JCH Trust controlled HCCI to the exclusion of RH is sanctionable, particularly under the circumstances of this case.

13.   As demonstrated, by his prior pleadings and evidence, 1) The Plaintiff's claims are retaliatory and violate the TCPA; 2) The Plaintiff has no evidence to support his claims; 3) Defendant RH has proven each element of each defense to the claims of Michael Hassell, Trustee; 4)  Defendant RH is entitled to be awarded attorney's fees and sanctions under the TCPA.

## PRAYER

RH prays the Court grant this motion seeking dismissal of the claims of Michael Hassell, Trustee, with prejudice, and that the Court award Royce Hassell his costs, attorney's fees, sanctions and other expenses as required by the TCPA.

Respectfully submitted,


By:  /s/ *Silvia T. Hassell*
Texas Bar No. 09205200
12807 Haynes Rd., Bldg. C
Houston, Texas 77066
Tel.  713-665-2442
Fax. 713-665-0369
E-Mail:  sehassell@aol.com

Attorney for Royce Hassell


## CERTIFICATE OF SERVICE

I hereby certify that on 22nd day of June, 2018, a true and correct copy of the foregoing instrument was served on all known counsel of record in accordance with the Texas Rules of Civil Procedure by Texas E-file and serve.

/s/ Silvia T. Hassell

6/22/2018 6:42 PM
Chris Daniel - District Clerk Harris County
Envelope No. 25505658
By: DELTON ARNIC
Filed: 6/22/2018 6:42 PM

CAUSE NO. 2016-87708

| | | |
|---|---|---|
| HASSELL CONSTRUCTION CO., INC., et al, | § | IN THE DISTRICT COURT OF |
| *Plaintiffs* | § | |
| | § | |
| v. | § | HARRIS COUNTY, TEXAS |
| | § | |
| ROYCE HASSELL, et al, | § | |
| *Defendants* | § | 113th JUDICIAL DISTRICT |

NOTICE OF HEARING

Please take notice that the oral hearing on the foregoing "Defendant's TCPA Motion to Dismiss Newly Asserted Claims by Michael Hassell as Trustee of the JCH Trust" is set for Friday, the June 29, 2018, at 10:00 A.M. in the 113th Judicial District Court at the Harris County Civil Courthouse, 201 Caroline Street, 10th Floor, Houston, Texas 77002.

Respectfully submitted,

By: /s/  *Silvia T. Hassell*
Silvia T. Hassell
State Bar No. 09205200
12807 Haynes Rd., Bldg. C
Houston, Texas 77066
Tel.  713-665-2442
Fax. 713-665-0369
E-Mail:  sehassell@aol.com

Attorney for Royce Hassell

**CERTIFICATE OF SERVICE**

I hereby certify that on 22nd day of June, 2018, a true and correct copy of the foregoing instrument was served on counsel of record in accordance with the Texas Rules of Civil Procedure.

/s/ Silvia T. Hassell

6/25/2018 9:10 AM
Chris Daniel - District Clerk Harris County
Envelope No. 25512432
By: DELTON ARNIC
Filed: 6/25/2018 9:10 AM

# RENTEA & ASSOCIATES

_____

### Attorneys At Law

700 Lavaca, Suite 1400-2678
Austin, Texas  78701

**Bogdan Rentea\***

Tel. (512) 472-6291                         *\*Board Certified Administrative Law*
Fax  (512) 472-6278                       *Texas Board of Legal Specialization*
Email: brentea@rentealaw.com

June 25, 2018

The Honorable Michael Landrum
Judge, 113th Judicial District Court
Harris County, Texas

       Re:      Cause No. 2016-87708; Hassell Construction Company, Inc. et al
                 v. Royce and Silvia Hassell

Dear Judge Landrum:

      On June 15, 2018, following the hearing on Royce Hassell's anti-SLAPP motion, you directed the Counter-Plaintiffs, to file a letter brief addressing the issue of the garnishment claim.

      You also advised the parties that you will discuss the matter with Judge Phillips of the 61st Judicial District Court, in which the garnishment action, as well as HCCI's wrongful garnishment claim, is pending.

      As directed, the Counter-Plaintiffs filed a letter brief on June 20, 2018.

      This letter is to advise of a recent development that may play a part in your ultimate decision, and that brings you current as to the matter pending in front of Judge Phillips.

      Yesterday evening, June 24, 2018, Royce filed an anti-SLAPP motion in the garnishment action, pending in the 61st.  A courtesy copy is attached hereto as Exhibit 1.

      The filing does not include a notice of hearing. It is anticipated that a hearing date will be requested soon. (Because the motion also requests dismissal under rule 91a, the hearing requires 21 days' notice.)

      The Counter-Plaintiffs do not request any relief herein, but are merely bringing this matter to the Court's attention.

Respectfully submitted,

*/s/ Bogdan Rentea*

Bogdan Rentea

BR/ch
encl.

cc:     All counsel of record, via the Court's e-filing system.

## CAUSE NO. 2013-61995A

| | | |
|---|---|---|
| R. HASSELL & CO., INC. and | § | IN THE DISTRICT COURT |
| R. HASSELL BUILDERS, INC., | § | |
| Plaintiffs/Garnishors, | § | |
| | § | |
| v. | § | OF HARRIS COUNTY, TEXAS |
| | § | |
| COMMUNITYBANK OF TEXAS, N.A., | § | |
| Garnishee. | § | 61st JUDICIAL DISTRICT |

**Plaintiffs' Special Exceptions and TCPA
Motion to Dismiss Intervenors' Counterclaim**

TO THE HONORABLE JUDGE OF SAID COURT:

Pursuant to Tex. R. Civ. P. 91, Tex. R. Civ. P. 91a and Tex. Civ. Prac. & Rem. Code Chapter 27 (the "TCPA"), R. Hassell & Co., Inc. and R. Hassell Builders, Inc. (herein jointly referred to as "RHC"), Garnishors, file this Motion to Dismiss the baseless wrongful garnishment claim of Hassell Construction Co., Inc. and James C. Hassell (herein jointly referred to as "HCCI"). The claim of wrongful garnishment is related to, based on and in response to the RHC's exercise of its TCPA protected constitutional rights to petition freely and speak freely.

Because the cause of actions fails to state a cause of action upon which relief can be granted and because the TCPA applies, pursuant to Rule 91, Rule 91a and the TCPA, immediate dismissal of the claim of HCCI is mandatory, as is the award of attorney's fees and sanctions, unless HCCI provides "clear and specific" evidence to support each element of its claim. And, even if HCCI could provide "clear and specific" evidence of each element of each of its claims--and they cannot--immediate dismissal of this case is still mandatory under the TCPA because RHC has established each essential element of an affirmative defense to HCCI's claim. This case should be dismissed under the TCPA and RHC should be awarded its attorney's fees and sanctions.

1

**EXHIBIT 1**

## I.     FACTUAL BACKGROUND

On March 26, 2018, this Court entered a Final Judgment confirming a final arbitration award in favor of RHC.  (Exhibit "A").  Among other things, the Final Judgment ordered HCCI to pay RHC one-million, one-hundred sixty-seven thousand five hundred forty-nine dollars and ninety-five cents ($1,167,549.95).     On April 10, 2018, while it was undisputed RHC had a valid, subsisting and wholly unsatisfied judgment, RHC filed an Application for Post Judgment Writ of Garnishment and requested that a writ of garnishment be issued against CommunityBank of Texas, N.A. ("CommunityBank"), which RHC believed had property, funds, or credits of HCCI in its possession.   The application was supported by an affidavit of Royce Hassell that, within RHC's knowledge, HCCI did not possess property in Texas subject to execution that is sufficient to satisfy the Final Judgment.  HCCI has not disputed this allegation in its wrongful garnishment suit and HCCI has made it clear it has no intention of voluntarily satisfying the Final Judgment.

On April 12, 2018, the Writ was issued.  The next day, the Writ was served on Community Bank.  Community Bank's counsel thereafter contacted RHC's counsel confirming the Writ was served.  The same day the Writ was served, RHC served HCCI with a copy of the Writ, through its counsel of record, as required by Texas Rule 663a.  On April 18, 2018, the same day RHC received a copy of the return of service on Community Bank, RHC provided HCCI's counsel with a copy of return.

## II. ARGUMENTS AND AUTHORITIES

A defendant whose property or account has been garnished may by sworn written motion, seek to vacate, dissolve, or modify the writ of garnishment.  Tex. R. Civ. P. 664a.  In a post judgment garnishment action, like this one, RHC's only burden is to "prove the grounds relied

2

upon for [the writ's] issuance."  Tex. R. Civ. P. 664a.  "In the context of a post-judgment garnishment, this requires the garnishor to prove it has a valid, subsisting judgment and, within its knowledge, the judgment debtor does not own property in Texas subject to execution sufficient to satisfy the judgment*."  Exterior Bldg. Supply, Inc. v. Bank of Am., N.A*., 270 S.W.3d 769, 771 (Tex. App.—Dallas 2008, no pet.); see also *Cadle Co. v. Davis*, 04-09-00763-CV, 2010 WL 5545389, at *5 (Tex. App.—San Antonio Dec. 29, 2010, pet. denied) (stating same); Tex. Civ. Prac. & Rem. Code § 63.001(3) (providing same).

Importantly, for a valid judgment RHC is not required to prove, as a matter of fact, that HCCI does not possess property in Texas subject to execution sufficient to satisfy the judgment. In *Black Coral*, the Houston appellate court ruled that a trial court erred in concluding that a "post-judgment garnishor must, upon the hearing of the judgment debtor's motion to quash under rule 664a, prove that as a matter of fact the judgment debtor does not have assets within the State of Texas sufficient to satisfy the subject judgment."  *Black Coral Investments v. Bank of the Sw.,* 650 S.W.2d 135, 136 (Tex. App.—Houston [14th Dist.] 1983, writ ref'd n.r.e.). The appellate court, in reversing the trial court, held that "such an interpretation places an unreasonable burden on the post-judgment garnishor."  *Id.*  Instead, the appellate court stated that the garnishor's burden is merely to show that the garnishor "ha[s] no knowledge of any property owned by the defendant in the state sufficient to satisfy the judgment."  *Id.* (emphasis in original).

It is undisputed that at the time the Writ of Garnishment was applied for, RHC had a valid, subsisting judgment against HCCI which remained wholly unsatisfied.  It is also undisputed that to RHC's knowledge, HCCI does not possess property in Texas subject to execution sufficient to satisfy the Final Judgment.  *Exterior Bldg. Supply,* 270 S.W.3d at 771.6   In RH's affidavit, he explained the basis for his knowledge that HCCI does not possess property in Texas subject to

3

execution sufficient to satisfy the Final Judgment.  Notably, Phillip Hassell, then the purported president of HCCI, did not dispute this allegation in the one-page, conclusory affidavit filed in support of HCCI's Motion opposing the Writ of Garnishment.   However, subsequently James C. Hassell, the Chief Executive Officer of HCCI testified under oath that Phillip Hassell is not employed by HCCI in any capacity and he is unaware of where Phillip Hassell works.  Therefore, Phillip Hassell does not even qualify to serve as HCCI's corporate representative.

"[T]he party moving to dissolve the writ [HCCI] bears the burden to prove the ground for dissolution."  *Walnut Equip. Leasing Co. v. J-V Dirt & Loam, a Div. of J-V Marble Mfg., Inc.,* 907 S.W.2d 912, 915 (Tex. App.—Austin 1995, writ denied) (citing to Rule 664a).  HCCI cannot meet its burden to establish a wrongful garnishment, so its claim should be denied.  HCCI claims that vacatur, dissolution, or modification of the Writ is appropriate for six reasons, but each one fails to provide a legitimate justification to dissolve the Writ.

HCCI claims that "the writ was not properly served."  HCCI is wrong.  The Writ was served upon the registered agent for service of the garnishee, CommunityBank.  After the Writ was served on CommunityBank, the Writ was served on HCCI, through its counsel of record, in accordance with Rule 663a.  HCCI also claims that "[t]he funds attempted to be garnished, are exempt from garnishment, as they represent, current wages for personal services."  This argument has been expressly rejected by the 1st Court of Appeals because the funds in HCCI's account(s) at CommunityBank are not current wages for personal services.  In a case directly on point, *Simulis, L.L.C. v. G.E. Capital Corp.,* 276 S.W.3d 109 (Tex. App.—Houston [1st Dist.] 2008, no pet.), the court held that the "current wage" exception did not exempt from garnishment funds in bank account that a judgment debtor held to pay employees' wages.  In rejecting the judgment debtor's attempt to dissolve a writ, the court stated: "[Employer] has directed us to no case in which the

4

current-wage exemption for garnishment was interpreted to mean funds held in reserve for the current wages of employees other than the debtor.  Neither have we found such a case."  *Id*. at 117. HCCI is not an employee, it is an employer.  And none of HCCI's employees are debtors here, only HCCI is. Fourth, HCCI claims that "[t]he funds attempted to be garnished, are exempt from garnishment, because they do not belong to HCCI, but are construction trust funds."  This argument is also misplaced because the relevant provision, Texas Property Code § 53.151, provides that "[a] creditor of an original contractor may not . . . garnish . . . money due the original contractor or the contractor's surety from the owner." (emphasis added).  RHC is not garnishing funds due to HCCI from an owner; they are garnishing funds sitting in HCCI's account(s) at CommunityBank. Moreover, even if the funds were construction trust funds, HCCI could not withdraw and utilize those funds to post a supersedeas bond, which, by its own admissions, is exactly what HCCI plans to do if the Court dissolves the Writ.  See Tex. Prop. Code § 162.001, et al.

HCCI claims that "[t]he funds attempted to be garnished, should be exempt from garnishment, because they belong to the garnishee which has a perfected UCC lien on any funds not exempt by law."  This is not HCCI's argument to make—it belongs to the garnishee, CommunityBank.  In any event, HCCI merely claims that the funds "should be exempt" but provides so arguments or support, despite its burden to "prove the grounds for dissolution." *Walnut Equip,* 907 S.W.2d at 915.  CommunityBank can assert whatever rights it claims to the garnished funds when it files its answer to the Writ.

RHC carried its burden in establishing that the Writ was proper and, as a result, there was no wrongful garnishment.  HCCI has failed to carry its burden that the garnishment was wrongful. By the pleadings and evidence, RHC has established each elements of its defense to HCCI's wrongful garnishment suit.  HCCI's suit should be dismissed, the Writ was properly issued in

accordance with the applicable statutes and Texas Rules.  There is not a single ground upon which HCCI's claim can be granted.

Rule 91a provides that when a cause of action is baseless an award of costs and attorney fees is required.  Except in an action by or against a governmental entity or a public official acting in his or her official capacity or under color of law, the court must award the prevailing party on the motion all costs and reasonable and necessary attorney fees incurred with respect to the challenged cause of action in the trial court.  The court must consider evidence regarding costs and fees in determining the award.

As demonstrated, by its prior pleadings and evidence, 1) HCCI's claims are retaliatory and violate the TCPA; 2) HCCI has no evidence to support its claims; 3) RHC as proven each element of each defense to the claims of HCCI;  4) RHC is entitled to be awarded attorney's fees and sanctions under the TCPA.  "A cause of action has no basis in law if the allegations, taken as true, together with inferences reasonably drawn from them do not entitle the claimant to the relief sought.  A cause of action has no basis in fact if no reasonable person could believe the facts pleaded."  Tex. R. Civ. P. 91a.

### III. CONCLUSION

 As demonstrated, by its prior pleadings and evidence, 1) HCCI's claims are baseless, and the claims are retaliatory and violate the TCPA; 2) HCCI has no evidence to support its claims; 3) RHC has proven each element of each defense to the claim of RHC 4)  RHC is entitled to be awarded attorney's fees under Tex. R. Civ P. 91a and attorney's fees and sanctions under the TCPA.

## PRAYER

RHC prays the Court grant its motion seeking dismissal of the claims of HCCI with prejudice, and that the Court award RHC its costs, attorney's fees, sanctions and other expenses as required by Tex. R. Civ. P. 91 and 91a as well as the TCPA.

Respectfully submitted,


By: */s/ Silvia T. Hassell*
Texas Bar No. 09205200
12807 Haynes Rd., Bldg. C
Houston, Texas 77066
Tel. 713-665-2442
Fax. 713-665-0369
E-Mail: sehassell@aol.com

Attorney for Royce Hassell


## CERTIFICATE OF SERVICE

I hereby certify that on 24th day of June, 2018, a true and correct copy of the foregoing instrument was served on all known counsel of record in accordance with the Texas Rules of Civil Procedure by Texas E-file and serve.

/s/ Silvia T. Hassell

6/27/2018 11:51 AM
Chris Daniel - District Clerk Harris County
Envelope No. 25587514
By: janel gutierrez
Filed: 6/27/2018 11:51 AM

Cause No.  2016-87708

| | | |
|---|---|---|
| HASSELL CONSTRUCTION COMPANY, INC., | § | IN THE DISTRICT COURT OF |
| *Plaintiff* | § | |
| | § | |
| | § | |
| v. | § | HARRIS COUNTY, TEXAS |
| | § | |
| ROYCE HASSELL and | § | |
| SILVIA HASSELL, | § | |
| *Defendants* | § |  113TH  JUDICIAL DISTRICT |

### RESPONSE TO ROYCE HASSELL'S TCPA MOTION
### AGAINST MICHAEL HASSELL, AS TRUSTEE

NOW COMES, Michael Hassell, in his capacity as trustee of the James C. Hassell Intervivos Trust (herein "Trustee" and "Trust" respectively), and, in response to Royce Hassell's ("Royce") motion to dismiss under the TCPA[1], shows as follows:

1.      The Trustee hereby adopts and incorporates by reference, as if fully set forth herein, the following pleadings on file with the Court, to wit: (a) *Response to Royce Hassell's Anti-SLAPP Motion*, filed on June 14, 2018, ("response"); (b) *Letter Brief*, dated June 20, 2018, ("brief"); (c) *Response to Royce Hassell's First Amended and Supplemental Anti-SLAPP Motion*, dated June 22, 2018, ("second response"), and (d) *Supplement to Original Answer, Counterclaim and Third Party Petition of Michael Hassell*, filed on June 15, 2018, ("supplement").

2.      The Trustee was originally sued by Royce, on May 19, 2017.  (See Exhibit A attached to the response.)  The Trustee was sued in his individual capacity, as well as in his capacity as a beneficiary of the Trust and as Trustee of the Trust.

3.      The Trustee filed his counterclaim against Royce on April 16, 2018.  The June 15, 2018 supplement simply made clear that he was filing his counterclaim against Royce in all capacities, i.e. as an individual, as a beneficiary, and as Trustee.

---

[1]  "TCPA" means Chapter 27 of the Tex. Civ. Practice & Rem. Code.

4.      In all capacities, he has shown that he has standing to sue, and the facts presented in the response, the second response and the brief support each element of his claims, and defeat each defense asserted by Royce.

5.      Royce should not be allowed to escape liability for his misdeeds against his siblings while, at the same time, and based on identical legal theories, be allowed to maintain his claims against the same siblings.  Clearly, the Trustee should not be deprived of his right and obligation, for that matter, to seek redress for damages caused by Royce and suffered by the Trust.

6.      Therefore, for all the reasons stated in the response, the second response and the brief, as well as this pleading, Royce's anti-SLAPP motion should be denied in all respects.

Respectfully Submitted,

**RENTEA & ASSOCIATES**
700 Lavaca, Suite 1400-2678
Austin, Texas 78701
(512) 472-6291
(512) 472-6278 Facsimile
brentea@rentealaw.com


By: */s/ Bogdan Rentea*
    Bogdan Rentea
    State Bar No. 16781000
ATTORNEY FOR PLAINTIFF, and PHILLIP,
MICHAEL, SHAWN and JASON HASSELL


CERTIFICATE OF SERVICE

By my signature above, I hereby certify that on June 27, 2018, all counsel of record were served with a copy of the foregoing *Response to Royce Hassell's TCPA Motion Against Michael Hassell, as Trustee* via the Court's e-filing system.

Filed 18 June 28 P3:08
Chris Daniel - District Clerk
Harris County

Cause No. 201687708

HASSELL CONSTRUCTION COMPANY INC             IN THE DISTRICT COURTS OF

V.                                           HARRIS COUNTY, TEXAS

HASSELL, ROYCE                               113 JUDICIAL DISTRICT


TRANSFER ORDER

It is ORDERED that the Harris County District Clerk transfer the above styled and numbered cause from the 113 District Court to the 061 District Court.


SIGNED Thursday, June 28, 2018

_____
HON. MIKE ENGELHART
ADMINISTRATIVE JUDGE
CIVIL TRIAL DIVISION


Attraction Cause Number 201361995

R HASSELL & CO INC

v.

HASSELL CONSTRUCTION CO INC

File Court 061

JUDGMENT DATE: 3/26/2018          JUDGMENT TYPE: PLAINTIFF
                CASE TYPE: DECLARATORY JUDGMENT

7/4/2018 8:26 PM
Chris Daniel - District Clerk Harris County
Envelope No. 25742171
By: TERESA KIRBY
Filed: 7/5/2018 12:00 AM

# SILVIA T. HASSELL

### ATTORNEY AT LAW

12807 Haynes St., Bldg. C.
Houston, Texas 77066

_____

Telephone:  713-665-2442
Telecopier:  713-665-0369
sehassell@aol.com

July 4, 2018

**VIA ELECTRONIC FILING**
Honorable Judge Fredericka Phillips
61st Judicial District Court
Harris County Civil Courthouse
201 Caroline, 9th Floor
Houston, Texas 77002

      Re:   Cause No. 2016-87708; *Hassell Construction Co., Inc., et al v. Royce Hassell, et al*, recently transferred from the 113th Judicial District Court to the 61st Judicial District Court of Harris County, Texas.

## REQUEST FOR RULING

Dear Judge Phillips:

      Defendant, Royce Hassell, respectfully requests the Court to rule on Royce Hassell's Anti-Slapp Motion to Dismiss ("Motion") by July 15, 2018.  The Motion was filed on May 21, 2018, and heard on June 15, 2018, by the Judge of the 113th Judicial District Court prior to the case being transferred to this Court.

      Section 27.005(a) of the Texas Civil Practice and Remedies Code provides that "[t]he court must rule on a motion under section 27.003 not later than the 30th day following the date of the hearing on the motion."  The 30th day following the hearing on Royce Hassell's Motion is July 15, 2018, a Sunday.

      Thank you for your consideration.

Very truly yours,

/s/  *Silvia T. Hassell*

Silvia T. Hassell

Cc:   ***Via Electronic Filing***
      Bogdan Rentea,
      Rentea & Associates

7/12/2018 3:17 PM
Chris Daniel - District Clerk Harris County
Envelope No. 25939455
By: janel gutierrez
Filed: 7/12/2018 3:17 PM

## CAUSE NO. 2016-87708

| | | |
|---|---|---|
| **HASSELL CONSTRUCTION CO.,** | § | **THE DISTRICT COURT OF** |
| **INC., et al,** | § | |
| *Plaintiffs* | § | |
| | § | |
| **v.** | § | **HARRIS COUNTY, TEXAS** |
| | § | |
| **ROYCE HASSELL, et al,** | § | |
| *Defendants* | § | **61st JUDICIAL DISTRICT** |

### REPLY TO PLAINTIFFS' RESPONSES TO ROYCE HASSELL'S
### TCPA MOTION TO DISMISS

**TO THE HONORABLE JUDGE OF SAID COURT:**

Royce Hassell (herein "Defendant" or "Royce") files this Reply to various post hearing responses of Counter-Plaintiffs Michael Hassell, Trustee of the JCH Trust (herein Michael or "Trustee"), Phillip Hassell (herein "Phillip"), and Shawn Hassell Potts (herein "Shawn") and of the Original Plaintiff Jason Hassell (herein "Jason") to "Royce Hassell's Anti-Slapp Motion to Dismiss" ("TCPA Motion").  In support of this Reply Defendant would respectfully show the Court as follows:

### I.   The TCPA applies to all three claims of Plaintiffs.

1.      Plaintiffs would deny that the TCPA applies to two of their three claims against Royce.  Their position ignores the mandate that the TCPA "shall be construed liberally to effectuate its purpose and intent fully."  Tex. Civ. Prac. & Rem Code Chap. 27 Sec. 27.011(b). The purpose of the TCPA, to protect against claims which seek to chill the rights of a party to exercise their freedom to petition, speak freely and associate freely, necessarily encompasses all three claims of the Plaintiffs.

2.      Section 27.006 of the TCPA provides that "[i]n determining whether a legal action should be dismissed under this chapter, the court shall consider the pleadings and supporting and opposing affidavits stating the facts on which the lability or defense is based."  Defendant submits this additional Reply and incorporates by reference the pleadings and evidence Defendant has previously submitted in support of his Motion to Dismiss including:

1)   "Royce Hassell's Anti-Slapp Motion to Dismiss" and exhibits 1-50 filed May 21, 2018;

2)   Royce Hassell's "First Amended and Supplemental TCPA Motion to Dismiss;"

3)   Royce Hassell's "Reply to the Plaintiffs' Response" as well as supporting affidavit of Royce Hassell and declaration of Silvia Hassell and exhibits filed June 15, 2018;

4)   Royce Hassell's Legal Memorandum in Support of TCPA Motion to Dismiss filed June 20, 2018;

5)   Royce Hassell's First Amended and Supplemental Motion to Dismiss filed June 20, 2018; and,

6)   Royce Hassell's TCPA Motion to Dismiss Newly Asserted Claims by Michael Hassell as Trustee of the JCH Trust filed June 22, 2018.

3.      With this Reply Royce also presents additional legal authority, evidence, pleadings and argument pertaining to the Motion to Dismiss including exhibits (A-I) filed herewith:

**Exhibit A** is the Plaintiffs' Plea in Intervention filed in Cause No. 2013-61996;
**Exhibit A-1** is the "Petitioning Parties' Response to Corrected Supplement to Motion for Sanctions" filed on July 10, 2018, in Case No. 18-31189; *In re Hassell 2012 Joint Venture,* in the United States Bankruptcy Court for the Southern District of Texas;
**Exhibit B** is the Declaration of Phillip Hassell dated February 5, 2016, filed in bankruptcy court case 15-32751;
**Exhibit C** is the Motion to Compel arbitration and the verification of Phillip Hassell in Cause No. 2013-61995;
**Exhibit D** is separate verification of the validity of the Construction Joint Venture Agreement by Phillip Hassell made on behalf of Hassell Management Services LLC in Cause No. 2013-61995;
**Exhibit E** is an affidavit of Phillip Hassell filed in the arbitration proceedings underlying the Final Judgment in Cause No. 2013-61995;
**Exhibit F** is the Coats Rose fee agreement and attendant documents filed as document 6007654 in Cause No. 2013-61995;

**Exhibit G** is an e-mail between Shawn and Phillip which was filed as Exhibit 8 to Royce Hassell's Original Anti-Slapp Motion to Dismiss in this case; and
**Exhibit H** is the Consolidation Order of Judge Carter dated November 17, 2014, in Cause No. 2013-61995.
**Exhibit I**:  is the "Notice of filing of Notice of Removal of Proceedings to the Bankruptcy Court for the Southern District of Texas-Houston Division" filed by the Plaintiffs herein in Cause No. 2013-61995; in the 125th Judicial District Court of Harris County, Texas.

4.      There can be no question that Plaintiffs' own pleadings in this and other cases evidence TCPA applicability because the claims were brought to chill Royce's constitutional rights. For instance, the very Plaintiffs in this case also filed a petition in intervention in the separate arbitration case which this Court struck shortly before the Plaintiffs brought their claims in this suit.  Exhibit A.  The intervention petition is evidence that the claims Plaintiffs first brought by intervention and then again re-asserted in this case are based on, related to and in response to Royce petitioning to confirm the arbitration award.  In fact, the claims are a thinly veiled collateral attack on this Court's Final Judgment confirming that award.  Exhibit "A".  For instance, Plaintiffs allege in the intervention petition that:

- The underlying consolidated actions concern the relationship and business dealings between the original plaintiffs and defendants; [Exhibit A, para. 7].
- Related thereto are several deeds of trust pledged as security on a line of credit ("LOC") drawn upon by the R. Hassell companies, as well as Royce and Silvia, *and remaining unpaid.* [Exhibit A, para. 9](emphasis added).
- The AAA Panel awarded HCCI only approximately $2.1MM on the LOC, $465,740 on the promissory note, however, awarded the R. Hassell companies $4.8MM in profits, for a net result that HCCI owes $1.2MM to the R. Hassell companies; [Exhibit A, para. 14].
- *Should the result reached by the AAA Panel stand, and the Award not be vacated or modified, HCCI's stock value will be significantly diminished, if not completely destroyed.* [Exhibit A, para. 15](emphasis added).
- The capital structure of HCCI is as follows.  It has 102,006 shares of class A common stock; It has 109,800 preferred shares.  It has 130,099 shares of class B. common stock.  [Exhibit A, para. 16].
- The 130,099 shares of class B stock have been owed by the Trust since 1986, when Royce was the trustee.  [Exhibit A, para. 17].

- The intervenor Trust has an interest, right and, most importantly, obligation to file this plea, *to insure that the Trust's assets are preserved and not diminished by an award that granted relief to the plaintiffs, which relief is based on incorrect calculations, improper determinations, and outright fraudulent claims and representations of and by the plaintiffs.*  [Exhibit A, para. 18] (emphasis added).
- *The beneficiary intervenors [Michael, Phillip and Shawn] have the same interest, right and obligation.*  [Exhibit A, para. 19] (emphasis added).
- Intervenors seek the . . .declaration[] that the plaintiffs are indebted to HCCI in the amount of $4,500,000 or the amount shown in HCCI's most recent audited annual statement; That plaintiffs may not recover under the CJVA profits which are contrary to the written provisions of the CJVA; That the deeds of trust executed by Royce and Silvia and offered to HCCI and JCH as security for debts owed to HCCI, are valid and enforceable. . . . [Exhibit A, para. 23, *et seq.*].

5.    After Plaintiffs' intervention petition was struck, Plaintiffs admit in a separate pleading that they merely moved the intervention claims to this case.  *See,* Exhibit A-1, Footnote 1: "Petitioning Parties also included the Intervenors, Trustee of the James C. Hassell Intervivos Trust, Phillip Hassell, Michael Hassell, Jason Hassell and Shawn Hassell.  Since the filing of the petition, and the Court's remand, the state court, as identified below, has struck the plea in intervention *and intervenors have decided to pursue their claims in a different proceeding.*  Exhibit A-1, Footnote 1.  "Petitioning Parties' Response to Corrected Supplement to Motion for Sanctions" filed on July 10, 2018, in Case No. 18-31189 in the United States Bankruptcy Court for the Southern District of Texas.

6.    Rule 201 of the Texas Rules of Evidence permits the Court to take judicial notice of the fact of pleadings and affidavits filed in other proceedings when the facts "can be accurately and readily determined from sources whose accuracy cannot reasonably by questioned."  Rule 201(b)(2) of the Texas Rules of Evidence.  Defendant requests the Court take judicial notice of pleadings and affidavits filed by Plaintiffs in other proceedings which have been submitted by Defendant in this case.

**II. Plaintiffs Have No Standing to Sue Individually for Causes of Action Which Belong to HCCI.**

7.      Plaintiffs have no standing to bring claims for alleged harms suffered by HCCI and find no support for their standing arguments in the cases they have cited.  In fact, still another pleading filed in a separate case, the removal notice filed in the arbitration case seeking to remove the arbitration case to United States Bankruptcy Court, the Plaintiffs in this case alleged their standing was not even derivative of HCCI, but was instead derivatively once removed from HCCI. Specifically, Plaintiffs alleged elsewhere to United States Bankruptcy Marvin Isgur *that the causes of action in the arbitration case actually belong to the Hassell 2012 Joint Venture*.

> The causes of action of Plaintiffs against Defendants in the State Court Action, as amended and/or supplemented in the arbitration proceeding, are property of Debtor's bankruptcy estate under 11 U.S.C. § 541 and therefore this Court has exclusive jurisdiction of such causes of action under 28 U.S.C. § 1334(e)(1).

Exhibit I, page 5.

8.      Thus, at the very least the Plaintiffs own arguments that the causes of action belong to a partnership once removed from HCCI, estop them from arguing in this case that the Plaintiffs have standing to pursue the claims of HCCI even though they have no evidence of damage personally caused to them unrelated to the value of HCCI's stock.

9.      Without a breach of a legal right belonging to a specific party, that party has no standing to litigate. *Cadle Co. v. Lobingier,* 50 S.W.3d 662, 669-70 (Tex. App.-Fort Worth 2001, pets. denied) (en banc op. on reh'g).  Standing focuses on the question of who may bring an action and presents the issue of whether a court may consider a dispute's merits; it is a threshold issue that implicates subject matter jurisdiction. *See, for ex., In re J.W.L.,* 291 S.W.3d 79, 85 (Tex. App.-

Fort Worth 2009, orig. proceeding [mand. denied]). "To have standing, a plaintiff must be personally aggrieved, and his alleged injury must be concrete and particularized, actual or imminent, and not hypothetical." *Heat Shrink Innovations, LLC v. Med. Extrusion Techs.-Tex., Inc.,* No. 02-12-00512-CV, 2014 WL 5307191, at *7 (Tex. App.-Fort Worth Oct. 16, 2014, pet. denied) (mem. op.) (citing *DaimlerChrysler Corp. v. Inman,* 252 S.W.3d 299, 304-05 (Tex. 2008)). Further, fiduciary duties do not extend to matters beyond the scope of the parties' underlying relationship. *Rankin v. Naftalis,* 557 S.W. 2d 940, 944 (Tex. 1977). In this case, even if Plaintiffs were able to evidence an informal duty owed to them personally by Royce, which they have not, Plaintiffs have no evidence, much less clear and specific evidence, of how such a relationship would give them standing to sue Royce individually for harms to the value of HCCI's stock.

10.     Plaintiffs cite, *Houston v. Ludwick, at 14-09-00600-CV,* 2010 WL 4132215 (Tex. App.-Houston [14th Dist.], 2010, pet denied), as authority on standing but that case revolves around the question of whether an heir to property has standing outside of the estate administrative process. It is axiomatic that "heirs . . . may maintain a suit to recover property which they claim has descended to them" upon showing "that no [estate] administration is pending and none is necessary." *Id., citing White v. White, I79 S.W.2d 503, 506 (Tex. 1994).* This case, however, is not an estate administration case. Importantly, *Houston v. Ludwick,* approvingly cites *Ford Motor Company v. Cammack,* 999 S.W. 2d 1 (Tex. App.-Houston [14th Dist.] 1998), a case which reinforces the rule that shareholders lack standing to recover individually for claims belonging to a corporation. *See, El T Mexican Restaurants, Inc. v. Bacon,* 921 S.W. 2d 247, 249-253 (Tex. App.-Houston [1st Dist. 1995, writ denied)( the "sole shareholder lacked standing to recover individually on claim belonging solely to corporation.") cited in *Ford Motor Company,* supra, 999 S.W. 2d at 5.

11.     Further, Plaintiffs' arguments are not supported by the case of *Linegar v. DLA Piper LLP (US),* 495 S.W. 3d 276 (Tex. 2016), which also reinforces the general rule that unless a non-derivate loss is at issue, "[a] corporate stockholder cannot recover damages personally for a wrong done solely to the corporation, even though he may be injured by that wrong." *Id.* at 279 citing *Wingate v. Hajdik,* 795 S.W. 2d 717 (Tex. 1990). In *Linegar,* the beneficiary of a self-directed retirement account was found to have standing to sue the trustee of his self-directed retirement account for legal malpractice because the trustee caused damages to the beneficiary personally. Standing was based on advice the trustee gave the beneficiary regarding the protection a UCC statement would provide upon the making of a loan from the beneficiaries' retirement account to a third party which was not repaid. *Id.* "The case was pleaded, tried, and submitted to the jury on claims that DLA Piper violated duties . . . and that those violations *proximately caused damages to him individually." Id.* at 282 (emphasis added). Unlike the *Linegar* plaintiff, the Plaintiffs in this case have filed pleadings which evidence that they were not individually damaged by virtue of any purported actions of the Defendant. Specifically, their petition at pages 2 and 3 sets out that Plaintiffs "agreed to allow the family owned and controlled business to extend credit to Royce" and that as a result of their trust and confidence in Royce "the company business, HCCI was damaged" and "in turn, Phillip, Michael, Shawn and Jason's interest in HCCI and in a Trust has been diminished, for which they now sue." Plaintiffs have not alleged any direct harms to themselves or even to the JCH Trust, but purport to sue only for alleged harms to the value of the shares of HCCI owned by the JCH Trust.

12.     More importantly, Plaintiffs have no evidence, much less clear and specific evidence, of an informal duty owed to them by Royce. Whether an informal fiduciary relationship exists must be determined from objective facts. *E.g., E.R. Dupuis Concrete Co. v. Penn. Mut. Life*

*Ins.,* 137 S.W. 3d 311, 319 (Tex. App.-Beaumont 2004) no pet.  The objective facts of this case show that Plaintiffs filed multiple pleadings and sworn statements in other cases denying the existence of any confidential relationship between them and Royce from 2008 going forward.

13.     Among the statements denying any fiduciary relationship is the Phillip's 2014 signed sworn declaration under penalty of perjury that after 2008 even his *personal relationship* with his brother was solely that of Contractor/Subcontractor ("<u>Neither I, personally</u>, nor as an authorized representative of HCCI, <u>have ever consented or agreed to proceed on any basis with Royce</u> and/or any of his companies, <u>other than on a contractor-subcontractor basis</u>. . . *Indeed,* RHHC and HCCI maintained separate credit arrangements, banking, employment and subcontracts for projects performed from 2008 forward.)   Exhibit "B," February 5, 2016, Declaration of Philip Hassell (emphasis added).

14.     Further, in 2013 and 2014, after Michael, Phillip, and Shawn locked Royce out of the partnership offices Phillip twice signed sworn verifications attesting to the to the validity and enforceability of the agreement he now claims in this case is invalid.  The pleadings verified by Phillip make no mention of any "for insurance purposes only" allegations instead including statements such as the following:

> In 2012, Plaintiffs and Defendants formed a joint venture and executed a Construction Joint Venture Agreement (the "JVA") dated July 1, 2012.  The JVA contains a broad arbitration provision that mandates the arbitration of all disputes that arise between the parties. . . . Despite the existence of an express contractual obligation to arbitrate Plaintiffs' claims against Defendants, on October 15, 2013, Plaintiffs filed their Original Petition for Declaratory Judgment in this Court. . .  The parties entered into a valid arbitration agreement that is enforceable under both Texas and federal laws. Each of the Plaintiffs was a signatory to the JVA, containing the Arbitration Provision; each of the Plaintiffs enjoyed the benefits of the JVA' each of the Plaintiffs filed this lawsuit based on disputes arising out of the JVA, and each of the Plaintiffs is bound by the

Arbitration Provision of the JVA. Accordingly, Plaintiffs' claims are subject to binding arbitration. . . . Because the trial court is presented with a valid arbitration agreement, the burden shifts to the party opposing arbitration to raise an affirmative defense to enforcing arbitration. . . Because a valid, enforceable arbitration agreement exists between Plaintiffs and Defendants, this Court has no discretion but to compel arbitration . . . Plaintiffs allege that Defendants breached the JVA by taking over assets of Plaintiffs and utilizing them to conduct work on projects that were not included in the joint venture. Plaintiffs allege that no accounting was made of the joint venture and non-joint venture projects in which Defendants utilized assets of Plaintiffs in violation of the JVA. Plaintiffs also maintain that Defendants have not reimbursed Plaintiffs for reasonable and necessary joint venture expenses and for use of equipment by the joint venture in violation of the JVA. Plaintiffs' claims and disputes against Defendants all arise directly out of the JVA, and fit squarely within the scope of the As set forth above, Plaintiffs and Defendants entered into a JVA and Arbitration Provision within the JVA. Plaintiffs' claims and dispute arise out of or related to the parties' JVA. Plaintiff's claims are subject to binding arbitration. Accordingly, . . . Defendants request that the Court issue an Order staying this action and compelling Plaintiffs to resolve their claims in appropriate arbitration proceedings."

Exhibit C, pages 2-9. In the verification to those pleadings Phillip's "declare[s] that he has read the above and foregoing Motion to Compel Arbitration and Abatement Pending Arbitration, that he has personal knowledge of the facts contained therein *and that all factual statements are true and correct."* Exhibit C, Page 10. Weeks later Phillip similarly verified the same allegations for Hassell Management Services LLC, a company solely owned by Michael, Phillip and Shawn once again making no mention of purported statements by Royce that the agreement was not real. Exhibit D.

15.    Moreover, the Plaintiffs' subjective assertions about the existence of an informal confidential relationship are objectively without merit when compared with the Plaintiffs' objective actions and other sworn statement statements such as Phillip's statement that "at all times" after Phillip met with Coats Rose attorneys in January 2012, Royce and his companies were

adverse parties to HCCI and its controlling owners.  Exhibit "E."   Following the January of 2012 meeting with Coats Rose which Phillip described in his affidavit, it was Shawn, a named party in the arbitration, who cut the check hiring Coats Rose to go after Royce and his companies even while Royce was still performing the Springwoods under contract to Harris County Improvement District No 18.  Exhibit F, page 4.  The evidence that Shawn and Phillip knowingly hired the law firm of the public officer director of Harris County Improvement District 18 to devise and implement "defensive strategies related to transactions or matters involving . . . Royce and Silvia Hassell . . . " (Exhibit F, page 3) which matters included the claims associated with construction of a $15,00,000 project for the benefit of Coats Rose's client Exxon, objectively demonstrate the lack of a confidential relationship with Royce.  More importantly, the objective evidence of the underlying circumstances demonstrates the Plaintiffs were willing participants in schemes involving breaches of moral, business, governmental and attorney ethics such that the principle of unclean hands should be applied against them.

16.    Plaintiffs' cannot evidence Royce proposed the Hassell 2012 Joint Venture because it has been repeatedly established that it was Phillip who proposed the Hassell 2012 Joint Venture for the plaintiffs.  More importantly, the Plaintiffs cannot evidence the existence of purported informal fiduciary duties owed by Royce when the evidence is overwhelming that during the time the Plaintiffs claims there was an informal duty owed to them by Royce, Royce was the victim of schemes whereby Plaintiffs intended to "seize" the assets of Royce to pay for the Springwoods Project losses which were being implemented by the law firm whose President was also directing the actions of the District which HCCI was suing for the Springwoods Project losses.   Exhibit "G".

**III.     Section 16.069 of the Texas Civil Practice and Remedies Code Does Not Apply to Prevent the Limitations Bar.**

17.     The claims of Plaintiffs are barred by limitations.  Plaintiffs' argument that limitations does not bar the claims of Michael, Phillip and Shawn because they bring claims by way of counterclaims incorrectly states the law.  Counterclaims which are not logically related to claims against that party are nevertheless barred by limitations even though the claims are asserted by way of counterclaims.  Tex. Civ. Prac. & Rem. Code Section 16.069.

18.     For its application Section 16.069 requires that a counterclaim "arise[] out of the same transaction or occurrence that is the basis of an action."  "For a counterclaim to arise out of the 'same transaction or occurrence' as the original claim . . .  the _essential facts on which the counterclaim is based must be significantly and logically relevant to both claims_."  *Smith v. Ferguson,* 160 S.W. 3rd 115 (Tex. Civ. App.- Dallas [5th Dist.] 2005), *reh'g overruled,* citing *Frazier v. Havens,* 102 S.W. 3d 406, 411 n. 3 (Tex. App.—Houston [14th Dis.] 2003 no pet.) (emphasis added).

19.     The logical relationship test is the same standard used in compulsory counterclaim determinations.  In *Gulf States Abrasive Manufacturing, Inc. v. Oertel,* 489 S.W. 2d 184 (Tex. Civ. App.-Houston [1st Dist.] 1972, writ ref'd n.r.e.), the court held that claims against a corporation for personal services and conversion of stock were not compulsory counterclaims to a suit brought by the corporation for breach of fiduciary duties in setting up a competing corporation.  *Id.* at 188. In another case, no significant relationship was found between claims asserted regarding the procurement and execution of a particular deed, and claims related to the interpretation of a particular provision of the deed.  *Freeman v. Cherokee Water Co.,* 11 S.W. 3d 480, 483 (Tex. Civ. App. -Texarkana 2000, pet denied).

20.     In this case Plaintiffs' claims relating to the business relationship between corporations owned by Royce and HCCI beginning in 2008- which were the subject of claims compelled to arbitration- are not logically or significantly related to claims about whether the Trustee of the JCH Trust, Michael, dissipated trust assets and/or violated his formal fiduciary duties to the beneficiaries of the trust by merging the corporation with a corporation of which he is an owner along with selected beneficiaries of the JCH Trust.

## IV.  By Court Order Shawn Hassell Potts, Individually, was a named party in the arbitration.

21.     Plaintiffs also continue to argue that Shawn was not a named party in the arbitration individually.  However, the consolidation order *proposed by her own attorney whereby Shawn sought to consolidate all claims involving the Hassell family into arbitration*, specifically named Shawn *individually and as Trustee* as a party to the consolidated case which was compelled to arbitration.  *See,* Exhibit H, *Consolidation Order* dated November 17, 2014. The argument that Shawn is not bound to the arbitration award and Final Judgment by principles of res judicata, collateral estoppel and judicial estoppel is wholly without merit as is the argument that Shawn, along with HCCI's other controlling owners Michael, Phillip and Jason, were not virtually or actually represented in the arbitration.

WHEREFORE, PREMISES CONSIDERED, Defendant Royce Hassell seeks dismissal of the Plaintiffs' claims under the TCPA because the claims are meritless and brought to punish the

Defendant for petitioning, speaking freely and associating freely. Defendant has requested a separate hearing on the amount of fees, costs and sanctions to be awarded to the Defendant under the TCPA.

Respectfully submitted,

By: _/s/ Silvia T. Hassell_
Texas Bar No. 09205200
12807 Haynes Rd., Bldg. C
Houston, Texas 77066
Tel.  713-665-2442
Fax. 713-665-0369
E-Mail:  sehassell@aol.com

Attorney for Royce Hassell

## **CERTIFICATE OF SERVICE**

I hereby certify that on 12th day of July, 2018, a true and correct copy of the foregoing instrument was served on all known counsel of record in accordance with the Texas Rules of Civil Procedure by Texas E-file and serve.

_/s/ Silvia T. Hassell_

# EXHIBIT A

CAUSE NO.  2013-61995

| | | |
|---|---|---|
| R. HASSELL & CO., INC.; | § | IN THE DISTRICT COURT OF |
| R. HASSELL BUILDERS, INC.; | § | |
| R. HASSELL HOLDINGS CO., INC.; | § | |
| and G.R. GROUP RESOURCES, LLP | § | |
| *Plaintiffs* | § | |
| | § | |
| v. | § | HARRIS COUNTY, TEXAS |
| | § | |
| HASSELL CONSTRUCTION | § | |
| COMPANY, INC. and HASSELL | § | |
| MANAGEMENT SERVICES, LLC, | § | |
| *Defendants* | § | 125th JUDICIAL DISTRICT |

## PLEA IN INTERVENTION

NOW COME, INTERVENORS, the JAMES C. HASSELL INTER-VIVOS TRUST ("Trust"), by and through its Trustee, Michael Hassell ("Trustee"), the Trust beneficiaries, PHILLIP HASSELL ("PH"), JASON HASSELL ("JH"), SHAWN POTTS ("SP"), and MICHAEL HASSELL ("MH"), and, in support of their plea in intervention, show as follows:

### Parties

1.      Intervenor Trust, is an irrevocable trust created on January 30, 1986.  Its current trustee is MH.  It is domiciled in Texas, and administered from Harris County, Texas.

2.      Intervenors PH, JH, SP and MH, are individuals residing in Harris County, Texas.

3.      The original plaintiffs in this consolidated matter[1] are R. HASSELL & CO, INC., R. HASSELL BUILDERS, INC., R. HASSELL HOLDING CO., INC., G. R. RESOURCES, LLP, collectively "R. Hassell companies", ROYCE HASSELL ("Royce"), and SILVIA HASSELL ("Silvia").  They are being served through their attorney of record, Derrick Carson.

4.      The original defendants in this consolidated action are HASSELL CONSTRUCTION COMPANY, INC. ("HCCI"), JAMES C. HASSELL ("JCH")[2], and HASSELL MANAGEMENT SERVICES, LLC. ("HMS").

---

[1]  See Order of Consolidation dated November 17, 2014.

[2]  James C. Hassell is also the Trustor of the Trust.

**Venue and Jurisdiction**

5.      The Court has jurisdiction over the original plaintiffs and defendants.  The Court has jurisdiction over the intervenors under Rule 60 of the TRCP, because they are residents of this state, do business in this state, and their claims are within the jurisdictional limits of this Court.  Venue is proper in this district under sections 15.002 and 15.005 of the TCPRC.  To the extent that rule 47 of the TRCP applies, the intervenors would show that they seek damages in excess of $1,000,000 and that their claims are within the jurisdictional limits of this Court.

**Intervention**

6.      A party possessing a "justiciable interest" in a suit is entitled to intervene in that lawsuit to protect that interest.  Tex. R. Civ. P. 60; *Stansell v. Fleming*, 81 Tex. 294, 16 S.W. 1033, 1034 (1891).  That is, an entity is given the right to intervene if it could have brought the same action, or any part thereof, on its own.  *See Guaranty Fed. v. Horseshoe Operating*, 793 S.W.2d 652, 657 (Tex. 1990).  The intervenor's interest may be legal or equitable.  *See Inter-Continental Corp. v. Moody*, 411 S.W.2d 578, 589 (Tex. Civ. App.--Houston [1st Dist.] 1966, writ ref'd n.r.e.).  Where the intervenor's claim or defense, and that involved in the pending action, arise from the same transaction or occurrence and involves a common question of law or fact, such leave should be freely given.  *See McWilliams v. Snap-Pac Corp.*, 476 S.W.2d 941, 949-50 (Tex. Civ. App.--Houston [1st Dist.] 1971, writ ref'd n.r.e.).  Under the circumstances as shown below, it is "necessary and proper" for intervenors to intervene to protect their interests.  *See Evan's World Travel Inc. v. Adams*, 978 S.W.2d 225, 234-35 (Tex. App.--Fort Worth 1998, no pet.).

**Factual Background and Allegations**

7.      The underlying consolidated actions concern the relationship and business dealings between the original plaintiffs and defendants.

8.      More specifically, the plaintiffs sought an accounting of what has come to be known as the CJVA[3].

---

[3]   CJVA is the CONSTRUCTION JOINT VENTURE AGREEMENT effective July, 1, 2012 between the R. Hassell companies, on one hand, and HCCI, on the other.

9.      Related thereto are several deeds of trust pledged as security on a line of credit ("LOC") drawn upon by the R. Hassell companies, as well as Royce and Silvia, and remaining unpaid.

10.      Because the CJVA contained an arbitration clause, the Court ordered the disputes to arbitration in front of the AAA.[4]

11.      In the arbitration, HCCI sought, inter alia, to recover from the R. Hassell companies, as well as Royce and Silvia, over $4,000,000 on the unpaid LOC, over $400,000 on an unpaid promissory note, and a determination that the profit due to the R. Hassell companies on the CJVA was less than $300,000.

12.      The intervenors were not parties to the arbitration.

13.      On December 7, 2017, the AAA Panel rendered an Award.  It was modified on January 22, 2018.

14.      The AAA Panel awarded HCCI only approximately $2.1MM on the LOC, $465,740 on the promissory note, however, awarded the R. Hassell companies $4.8MM in profits, for a net result that HCCI owes $1.2MM to the R. Hassell companies.

15.      Should the result reached by the AAA Panel stand, and the Award not be vacated or modified, HCCI's stock value will be significantly diminished, if not completely destroyed.

16.      The capital structure of HCCI is as follows.  It has 102,006 shares of class A common stock.  It has 109,800 preferred shares.  It has 130,099 shares of class B common stock.

17.      The 130,099 shares of class B stock have been owned by the Trust since June 1986, when Royce was the trustee.

**Intervenors' Interests**

18.      The intervenor Trust has an interest, right and, most importantly, obligation to file this plea, to insure that the Trust's assets are preserved and not diminished by an award that granted relief to the plaintiffs, which relief is based on incorrect calculations, improper determinations, and

---

[4]  AAA is the AMERICAN ARBITRATION ASSOCIATION.

outright fraudulent claims and representations of  and by the plaintiffs.

19.     The beneficiary intervenors have the same interest, right and obligation.

20.     Intervening in this proceeding, and at this stage, before the Award becomes final[5], fosters judicial economy, will not complicate the case, is essential to protecting their interests, and prevents potential inconsistent results from separate lawsuits.

21.     Intervenors contend that they should not be restricted in their plea to challenging the Award only on the grounds available to HCCI, JCH and HMS, as provided in the Texas Arbitration Act, section 171.001 et. seq. of the TCPRC, and do not intend to waive their rights in any respects.

22.     Therefore, intervenors plead the following causes of action against the plaintiffs.

### Causes of Action

**A.     Declaratory Judgment**

23.     Intervenors incorporate all preceding paragraphs.

24.     Intervenors seek the following declarations:

a.      That the plaintiffs are indebted to HCCI in the amount of $4,500,000 or the amount shown in HCCI's most recent audited annual statement;

b.      That plaintiffs may not recover under the CJVA profits which are contrary to the written provisions of the CJVA;

c.      That the deeds of trust executed by Royce and Silvia and offered to HCCI and JCH as security for debts owed to HCCI, are valid and enforceable;

**B.     Fraud and Fraudulent Misrepresentation and Breach of Informal Fiduciary Relationship arising from a Confidential Relationship**

25.     Intervenors incorporate all preceding paragraphs.

26.     Plaintiffs repeatedly represented to HCCI and JCH, the trustor, and to their family members, the individual intervenors herein, that they would pay the promissory note and LOC, and in reliance thereto, HCCI and JCH continued to extend credit to plaintiffs.

---

[5]   Intervenors understand that HCCI, JCH and HMS intend to file an application to vacate/modify the Award in response to the plaintiffs' application to confirm same.

4

27.     Plaintiffs further represented to HCCI and JCH, and their family members, the individual intervenors herein, that the moneys borrowed would be used only for proper purposes and, in reliance on those representations, HCCI and JCH continued to extend credit to plaintiffs.

28.     The representations of plaintiffs were false, made with the intention that HCCI and JCH and the other family members rely on them, and HCCI and JCH and the other family members relied on them to their damage and detriment.

29.     The intervenor family members put their trust and confidence in Royce and Silvia, HCCI was severely damaged, if not effectively destroyed, by their false representations and breaches of the informal fiduciary duties, and, in turn, the intervenors' interest in the Trust has been diminished, for which they now sue.

**C.      Exemplary Damages**

30.     Intervenors incorporate all preceding paragraphs.

31.     Intervenors are entitled to exemplary damages because plaintiffs' actions were malicious and unconscionable.

**D.      Attorney Fees**

32.     Intervenors incorporate all preceding paragraphs.

33.     Intervenors seek their reasonable and necessary attorney fees in prosecuting this action and rectifying the wrongs committed by the plaintiffs.

**E.      Adoption of Defendants' Application to Vacate/Modify Award**

34.     Without waiver of any claims made herein, and rights to assert additional claims for relief, the intervenors adopt all arguments and evidence set forth by HCCI, JCH and HMS, in their application to vacate/modify the Award.

**Prayer for Relief**

WHEREFORE, Intervenors pray that they be granted the relief sought herein, and such other and further relief to which they may show themselves justly entitled.

Respectfully submitted,

*/s/ Bogdan Rentea*
Bogdan Rentea
Texas Bar No. 16781000
RENTEA & ASSOCIATES
700 Lavaca, Suite 1400-2678
Austin, Texas  78701
Tele: (512) 472-6291
Fax: (512) 472-6278
brentea@rentealaw.com
ATTORNEYS FOR INTERVENORS

## CERTIFICATE OF SERVICE

By my signature above, I hereby certify that on this 5th day of February, 2018, a true and correct copy of the foregoing Plea in Intervention was served on the parties through their counsel of record as follows:

Derrick Carson                    Via Email: dcarson@lockelord.com
Locke Lord LLP
2800 JPMorgan Chase Tower
600 Travis Street
Houston, Texas 77002

# EXHIBIT A-1

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CASE # 18-31189 |
| HASSELL 2012 JOINT VENTURE | § | |
| | § | CHAPTER 7 |
| ALLEGED DEBTOR | § | |

## PETITIONING PARTIES' RESPONSE TO CORRECTED SUPPLEMENT TO MOTION FOR SANCTIONS
[Relates to Doc#17]

TO THE HON. MARVIN ISGUR, UNITED STATES BANKRUPTCY JUDGE:

Petitioning Party Hassell Construction Co., Inc. ("HCCI"), along with James C. Hassell (together "Petitioning Parties")[1] file this *Response to Corrected Supplement to Motion for Sanctions*[2] filed by Movants R. Hassell & Co., Inc., R. Hassell Builders, Inc., R. Hassell Holding Co., Inc., G.R. Group Resources, LLP, and Royce Hassell (the "Movants") and would respectfully show the Court as follows:

## I.    FACTS AND PROCEDURAL BACKGROUND

1.    This is the second bankruptcy case involving the Hassell 2012 Joint Venture ("JV"). The first case, 15-30781 ("Case 1") was dismissed on September 23,

---

[1] The Petitioning Parties also included the Intervenors, Trustee of the James C. Hassell Intervivos Trust, Phillip Hassell, Michael Hassell, Jason Hassell and Shawn Hassell. Since the filing of the initial petition, and the Court's remand, the state court, as identified below, has struck the plea in intervention and intervenors have decided to pursue their claims in a different proceeding.

[2] **The Supplemental Motion was filed in violation of Rule 15(d) of the F.R.C.P. since the Movants did not seek leave of Court. Petitioning Parties waive their objection to this defect by filing this response but wanted to bring the violation to the Court's attention. Additionally, the 21-day negative notice period has not run. Despite this the Movants unilaterally set the Motion for hearing on July 11, 2018, in violation of Local Rule 9013-1, without making a request for and receiving an order on emergency consideration. The Petitioning Parties file this response early as assistance for the Court in its decisionmaking, but reserve the right to file a supplement within the 21-day response period.**

1

2016, at the request of the Petitioning Parties, who were the Respondents therein.[3]
Thereafter, the Petitioning Parties and the Movants, resumed an arbitration
proceeding before the American Arbitration Association, ("AAA"), which proceeding
had been stayed pending the outcome of Case 1.

2.        On December 7, 2017, the AAA arbitrators issued their award, which is
attached as Exhibit A to Exhibit 1,[4] and incorporated herein. The award was modified
on January 22, 2018, and the modification is attached as Exhibit B to Exhibit 1.

3.        Movants filed an application to confirm the award, in all respects, in
the 61st District Court for Harris County, Texas[5] ("the state court"), and the
Petitioning Parties filed an opposition and an application to vacate/modify/correct
the award.

4.        The instant bankruptcy case was filed on March 8, 2018, along with
removal of the state court action. The Court held an emergency hearing on March
9, 2018, and remanded the state court action.  .

5.        Since the hearing on remand, the state court has now considered the
competing applications and the arbitration award has been confirmed. See Exhibit
1.

6.        With the arbitration award now confirmed, the state court has in
essence, agreed with the arbitrators' determination that the JV generated almost
$20 million in net profits, with $4,819,539 earned by the Movants under the 25/75

---

[3] Case 1 was dismissed again on September 21, 2017, after a remand from a largely unsuccessful appeal by the Movants herein.
[4] All referenced Exhibits were filed with the Court on July 9, 2018, and listed on the Petitioning Parties' Exhibit List. They are not reattached here.
[5] The state court from which the action was initially removed, the 125th Judicial District Court of Harris County, Texas, the Honorable district court judge, Kyle Carter presiding, recused himself on March 9, 2018, and the case was assigned to the 61st Judicial District Court of Harris County, Texas.

split, provided for in the JV agreement. Such a determination necessarily means that HCCI earned and received, $14,458,616 in net profits. HCCI avers that it did not in fact earn or receive, anything remotely close to that number from the JV. See Exhibits 15-19, HCCI's audited annual statement, which were admitted and used in the arbitration proceeding. See also the summary of the job cost reports upon which the arbitrators relied upon to determine profits, attached at Exhibits 11 and 12. (The arbitrators specifically referenced their reliance on these job cost reports, in their initial award, which is Exhibit A to Exhibit 1.)

7.      Some of the construction jobs, specifically three such jobs, were accounted for on the books of the Movants, while others were accounted for on the books of HCCI.[6]

8.      Though HCCI believes that the numbers in the arbitration award are flawed, neither HCCI nor the Movants dispute that a subset of the funds was earned and received by the Movants and Petitioning Parties as profits, meaning that there may be assets for a Chapter 7 Trustee to pursue, pay to creditors, and facilitate dissolution of the JV, which is the ultimate goal of all sides, and for which the bankruptcy is necessary.

9.      The following proceedings took place in the state court action, following this Court's remand order of March 9, 2018, to wit:

10.     On April 16, 2018, the judgment debtors, the Petitioning Parties herein, filed a motion for new trial and a motion to modify the judgment. Both motions were denied on May, 31, 2018.

---

[6] The Petitioning Parties have made demand on the Movants for the payment of their share of the net profits of the JV, as that share was determined in the now confirmed arbitration award. See Exhibit 14.

11.     On June 22, 2018, the judgment debtors filed their notice of appeal, and the appeal has now been assigned to the 1st Court of Appeals, of Harris County, Texas. See Exhibit 2.

12.     Judgment creditors, the Movants herein, filed their first application for writ of garnishment on April 10, 2018. See Exhibit 3.

13.     The judgment debtors filed a motion to vacate the garnishment on April 16, 2018, pointing out, inter alia, that any funds attempted to be garnished were subject to a prior lien by the garnishee bank, to secure HCCI's line of credit ("LOC").

14.     The judgment creditors, Movants herein, filed a response to the motion to vacate on April 15, 2018, and on the same day, the judgment debtors, Respondents herein, filed a claim for wrongful garnishment.

15.     The judgment creditors, undeterred by the fact that the bank was going to call the note evidencing the LOC, applied for a second garnishment on May 4, 2018.

16.     The garnishee bank filed an answer to the first writ on May 7, 2018, confirming that it had called the note evidencing the LOC, and applied over $1.4MM to the outstanding balance on the LOC.  See Exhibit 4.

17.      On May 7, 2018, HCCI posted a cash bond, supported by a net worth declaration, and suspended the enforcement of the judgment.

18.      The judgment creditors filed a contest challenging HCCI's net worth declaration. After notice and an evidentiary hearing, and several post hearing submissions, the state court upheld the sufficiency of the bond, and the enforcement of the judgment remains suspended. See Exhibits 5, and 28A-C.

4

19.     The following additional actions were taken by the non-petitioning partner and its attorney, following the filing of the involuntary petition which is the subject of their motion to dismiss and for sanctions:

20.     On May 18, 2018, the non-petitioning partner of the Hassell 2012 JV, through counsel, Leonard Simon, used the filing of this involuntary as the basis for the filing of a *Suggestion of Bankruptcy and Notice of Automatic Stay*, in a state court action which has no relation to, nor involves any assets of the Hassell 2012 JV. See Exhibit 6.

21.     On June 11, 2018, Royce Hassell, as president of the non-petitioning partner of the Hassell 2012 JV, wrote an email to CommunityBank, advising of his opinion that the bank potentially held partnership assets. See Exhibit 7.

22.     On June 22, 2018, the non-petitioning partner filed an answer to the involuntary admitting its allegations.

## II.     ARGUMENT AND AUTHORITIES

### A.  Property of the Estate and Violation of the Automatic Stay

23.     The Movants herein requested and received remand of the adversary case and now request sanctions for the Petitioning Parties defending themselves in that very case.  The Movants allege that the Petitioning Parties violated the automatic stay "for the intentional acts intended to denude the estate of HCCI so as to destroy the value of the arbitration award,… an asset they claimed was owned by the bankruptcy estate of the Debtor." Motion at ¶ 30.

24.     The first part of this statement alleges that there is an "estate of HCCI."  A bankruptcy case does not create an estate of any entity other than the

Debtor.  The commencement of a case under … this title creates an estate. Such estate is comprised of all the following property, "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C.A. § 541. The Debtor in this case is Hassell 2012 Joint Venture.  There is no "estate of HCCI." The Texas Business Organizations Code provides that a partnership is an entity distinct from its partners. Tex. Bus. Orgs. Code Ann. § 152.056.

25.    11 U.S.C. § 723 defines very clearly the rights of a partnership Trustee against a partner.[7]  The Trustee has a cause of action against the partner if all allowed claims of the partnership are not paid.  "The partnership debtor must exhaust the assets of the partnership prior to seeking a claim against a general partner, or at least must determine with reasonable certainty that such a deficiency exists." *In re I-37 Gulf Ltd. P'ship*, 48 B.R. 647, 649 (Bankr. S.D. Tex. 1985) (J. Houser).  The property of a general partner is not property of the estate. "The…partnership Trustee's rights against its general partner and its property are limited to a chose in action pursuant to 11 U.S.C. 723." *In re Lima Days Inn, Ltd.*, 10 B.R. 173, 174 (Bankr. N.D. Ohio 1981)

26.    This is what the Petitioning Parties intended in filing this present bankruptcy as discussed in their *Response to the Motion to Dismiss* [Document 10]. The effect of the case is not to bring in the property of either Joint Venturer nor, even more distantly, the property of James C. Hassell, but to bring in the Joint Venture, divide its property appropriately, effect its dissolution and, should there be a deficiency, enable the Trustee to bring against one or both Joint Venturers in

---

[7] As the Court will recall, in the prior case, the Court ruled the Joint Venture was to be treated as a general partnership.  *In re Hassell 2012 Joint Venture*, Case No. 15-30781, Document 145.

Case 19-03452 Document 23 Filed in TXSB on 05/03/19 Page 95 of 122

order to ensure that all claims against the Debtor are paid.

27.     The actions preserved against the partners are actions only a Trustee may bring. *In re Litchfield Co. of S.C. Ltd. P'ship*, 135 B.R. 797, 803 (W.D.N.C. 1992). Additionally, the action is for payment of the allowed claims against the Debtor, not to enrich one joint venturer at the expense of JV creditors. The Movants have unclean hands because their actions to collect on the judgment against HCCI were not to benefit the estate. They were not seeking to put money in the putative Trustee's hands when they garnished the accounts of HCCI. As they admit in their own motion, they just want to pay their own expenses, not conserve them for the partnership. They state at ¶3: "THIS IS SERIOUS AND UNFORTUNATELY REQUIRES THIS COURT'S IMMEDIATE TIME AND ATTENTION…SO THAT MOVANTS MIGHT REFINANCE AND SAVE THEIR BUSINESS." Even were this bankruptcy to result in a payment to the Movants, it would be after the Trustee's administration was complete and after payment of all allowed claims in full. The urgency the Movants claim is that they want to line their own pockets with the assets of the other Joint Venturer without regard to the proper distribution priorities pursuant to 11 U.S.C. § 726.

28.     If the Movants are correct in their theory that the stay applies to assets of the partners, then it is they who violated the automatic stay by initiating garnishment against HCCI without lifting the stay first. The only reason they did not succeed in that garnishment and make off with HCCI's property is because they were frustrated by a creditor with a superior and secured interest, Community Bank, which, triggered by the garnishment, foreclosed on HCCI's assets. The Movants have run back to this Court, having first fled it, and are now

engaging in "gaslighting" by trying to blame the Petitioning Parties for the Movants' own bad behavior.

**29.    Adding to the Movants' bad faith and inconsistent actions, the Movants recently, after having filed a Motion to Dismiss, answered the Involuntary Petition, admitted the allegations in the Petition and requested that an order for relief be entered.**

## B.  Collateral Estoppel

30.    The Movants herein requested and received remand of the adversary case.  They did not like the results in state court, and now they wish to relitigate the issues in this case.  In this, they are barred by collateral estoppel.

31.    "Collateral estoppel applies when the following elements are met: (1) the facts sought to be litigated in the second action were fully and fairly litigated in the prior action; (2) those facts were essential to the judgment in the first action; and (3) the parties were cast as adversaries in the first action. Schwager v. Fallas (In re Schwager), 121 F.3d 177, 181 (5th Cir.1997)." *In re Sims*, 479 B.R. 415, 420 (Bankr. S.D. Tex. 2012), subsequently aff'd, 548 F. App'x 247 (5th Cir. 2013)

32.    The Movants raise a number of issues which were fully and fairly litigated in state court after this court remanded the action to the state court and now wish to relitigate the actions in this court.  See for example ¶¶ 17 and 18 above, incorporated herein by reference.

33.    After the Movants requested and received remand, and after the state court confirmed the arbitration award, there was a contest related to the Petitioning Parties' appeal bond.  In paragraphs 12 through 19, the Movants

8

describe the course of hearings in the state court, which they lost.

## C. <u>Sanctions</u>

34.     The Movants seek sanctions against HCCI, Rentea, and James C. Hassell, in the form of attorneys' fees for the Movants seeking remand of the removed state court matter. Motion ¶ 28. The Movants cite no law whatsoever in support of this proposition so Petitioning Parties are left to guess the Movants' basis for this request. The most likely statutory predicate is 28 U.S.C. §1447(c), which gives the Court discretion to award attorneys' fees for wrongful removal. However pursuant to Fed.R.Civ.P. 54(d)(2)(B) there is a two-week deadline after remand to bring this request. *Mints v. Educ. Testing Serv.*, 99 F.3d 1253, 1259 (3d Cir. 1996). Additionally, the legal basis of the award must be specified, and an amount must be given. Given that these prerequisites have not been met, the Court should deny the request.

35.     The Movants also seek sanctions "incurred with the filing and prosecution of" the Supplemental Motion. No statutory or equitable basis is given for this request. The Petitioning Parties request that if they must defend themselves against this request, that they be given fair notice of the claims against them. As the Supplemental Motion was filed in violation of F.R.C.P 15(d) and set for hearing unilaterally by the Movants prior to the expiration of the 21-day negative notice with no request for emergency treatment and no order granting same, the Petitioning Parties request that if the Court is inclined to consider the Movants' request, it set the Motion for hearing.

36.     The Movants further seek sanctions under 11 U.S.C. § 303(i) should

the Court dismiss this bankruptcy case. Damages are in the discretion of the Court and may be found only where the involuntary case was filed in bad faith. *In re Clean Fuel Techs. II, LLC, 544 B.R. 591*, 606 (Bankr. W.D. Tex. 2016). The Movants have filed an answer **admitting** the allegations of the petition [Document 18], including that "the debtor is generally not paying its debts as they come due" and that they have examined the Petition and "have a reasonable belief that the information is true and correct." An admission in an answer "constitutes a binding judicial admission" and may no longer be controverted. *Crest Hill Land Dev., LLC v. City of Joliet*, 396 F.3d 801, 805 (7th Cir. 2005) (citing *Keller v. United States*, 58 F.3d 1194, 1198 n.8 (7th Cir. 2005)). Given that the Movants are no longer controverting the petition and have agreed with its allegations, it is not possible that they can also contend it was filed in bad faith. Additionally, sanctions under § 303(i) must be "calculable with a reasonable degree of certainty proximately caused by the improper filing," and "carefully tailored in light of other damages and fees awarded in the case" and "not unduly harsh." *In re John Richards Homes Bldg. Co., L.L.C.*, 291 B.R. 727, 736 (Bankr. E.D. Mich. 2003), aff'd, 312 B.R. 849 (E.D. Mich. 2004), aff'd, 439 F.3d 248 (6th Cir. 2006)." Additionally, there is a presumption of good faith in the filing of the case. *Id.* at 730. If the Court sets a hearing on Document 17 and permits the Movants to seek sanctions, the Court should hold them to the letter of the law and require that they prove up the bad faith of the filing and the amount of their damages and give the Petitioning Parties an opportunity to defend themselves.

37.     The undersigned counsel are filing their own separate response in opposition to the sanctions requests.

10

38.     Additionally, James C. Hassell individually is particularly hurt, disappointed, and offended that his son Royce Hassell suggests a criminal referral for him, after Mr. Hassell built the company, lent the younger Mr. Hassell money and saved him from bankruptcy, and now is just trying to salvage the good name and reputation of HCCI by not defaulting on notes and being foreclosed.

## III. ADMISSIONS AND DENIALS

39.     The Petitioning Parties deny paragraphs 1 through 3, except for the statements that HCCI is a partner of the Debtor, that James C. Hassell is the sole officer of HCCI and that Rentea and Satija represent them.

40.     The Petitioning Parties admit paragraphs 4 through 10, except for the misleading statement in paragraph 9, to the effect that the Court found that the removal was in bad faith, since the Order of remand, does not include such a finding.

41.     The Petitioning Parties admit paragraph 11 in part and deny paragraph 11 in part.  As discussed above, Community Bank had a superior and secured claim to the funds the Movants sought to garnish, thereby defeating the garnishment. The Movants did not challenge the Bank's action.

42.     The Petitioning Parties admit paragraph 12, but would point out that these issues have already been decided by the state court, and the Movants are collaterally estopped from raising the issues herein. More specifically, the state court denied the Movants' net worth contest, and their request for injunctive relief. Further, the state court denied the Movants' request to force James C. Hassell to sign releases for any of the deeds of trust.

43.    The Petitioning Parties admit paragraph 13 except the last sentence, but would point out that these issues have already been decided by the state court, and the Movants are collaterally estopped from raising the issues herein.

44.    The Petitioning Parties admit paragraphs 14 and 15, but would point out that these issues have already been decided by the state court, and the Movants are collaterally estopped from raising the issues herein.

45.    The Petitioning Parties deny paragraph 16, but would point out that these issues have already been decided by the state court, and the Movants are collaterally estopped from raising the issues herein.

46.    The Petitioning Parties admit paragraphs 17 and 18, but would point out that these issues have already been decided by the state court, and the Movants are collaterally estopped from raising the issues herein.

47.    The Petitioning Parties deny Paragraph 19, except for the statement that HCCI used its own assets to reduce its line of credit, but would point out that these issues have already been decided by the state court, and the Movants are collaterally estopped from raising the issues herein.

48.    The Petitioning Parties deny paragraphs 20 (except for the statement that this Court denied the Rule 60(b) motion) through 32..

## IV. RELIEF REQUESTED

WHEREFORE, the Petitioning Parties respectfully request that the Court deny the Motion for Sanctions and grant such other relief to which they may be justly entitled.

Respectfully submitted,

12

RENTEA & ASSOCIATES

/s/ Bogdan Rentea
Bogdan Rentea
State Bar No. 16781000
700 Lavaca, Suite 1400
Austin, Texas 78701
Tel: (512) 472-6291
Fax: (512) 472-6278
brentea@rentealaw.com


HAJJAR PETERS LLP

/s/ Ron Satija
Ron Satija
State Bar No. 24039158
Hajjar Peters LLP
3144 Bee Caves Rd
Austin, TX 78746
Tel: (512) 637-4956
Fax: (512) 637-4958
rsatija@legalstrategy.com

ATTORNEYS FOR PETITIONING PARTIES


<u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that the foregoing document was served without exhibits by CM/ECF on July 10, 2018, upon the below-named parties. Exhibits are available by contacting counsel at the above e-mail addresses.


/s/Ron Satija
Ron Satija

| Cypress-Fairbanks ISD | Harris County |
|---|---|
| Linebarger Goggan Blair & Sampson LLP | Linebarger Goggan Blair & Sampson LLP |
| C/O Tara L. Grundemeier | c/o Tara L. Grundemeier |
| P.O. Box 3064 | P.O. Box 3064 |
| Houston, TX 77253-3064 | Houston, TX 77235-3064 |

<u>Movants</u>
Leonard H. Simon
Pendergraft & Simon, LLP
The Riviana Building
2777 Allen Parkway, Suite 800
Houston, TX 77019

US Trustee
Office of the US Trustee
515 Rusk Ave
Ste 3516
Houston, TX 77002

# EXHIBIT B

## UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| SPRINGWOODS JOINT VENTURE, | § | Case No. 15-32751 |
| | § | |
| Debtor. | § | (Involuntary Chapter 7) |
| | § | |

---

### DECLARATION OF J. PHILLIP HASSELL

Pursuant to the provisions of 28 U.S.C. § 1746, I, J. Phillip Hassell, declare and state as follows:

1. My name is J. Phillip Hassell. I am over the age of eighteen and competent to make this declaration. I hereby declare under penalty of perjury that I have personal knowledge of the facts stated below, and that such facts are true and correct.

2. I make this declaration in support of Hassell Construction Company Inc.'s ("HCCI") Response to Petitioner's R. Hassell Holding Company Inc.'s ("RHHC") motion for summary judgement, and to controvert the facts stated in the Declaration of Royce Hassell ("RH"). On construction projects, HCCI has not dealt with RHHC, but only R. Hassell Builders, Inc. ("RHB") and/or R. Hassell & Company Inc. ("RHC"). I adopt the objection made by my attorneys in footnote number 2, in the Response to the motion for summary judgement.

3. I am the president of HCCI, and have been its president at all times during the construction project known as "Springwoods."

4. Attached hereto as Exhibits 1-29 are true and correct copies of the following documents:

    a. **Exhibit 1**, is an email dated 7/31/2008, from RH to me, in which he asks me to consider in which capacity HCCI is willing to proceed with construction jobs involving him or his companies, namely, as a "JV, Prime-sub, etc."

    b. **Neither I, personally, nor as an authorized representative of HCCI, have ever consented or agreed to proceed on any basis with RH and/or any of his companies, other than on a contractor-subcontractor basis.** During meetings with suppliers, subcontractors, and owners, which I attended, RH did not claim that RHHC was a joint venture or partnership with HCCI. Indeed, RHHC and HCCI maintained

separate credit arrangements, banking, employment and subcontracts for projects performed from 2008 forward. (I understand that this court has determined that a partnership existed between HCCI and RHHC, known as the "2012 JV", however, although I respect this court's decision, I never intended to enter into a partnership with RH and/or any of his companies.)

(HCCI, in one limited instance, did enter into a joint venture agreement for a specific Texas Department of Transportation ("TXDOT") construction project that fit well with HCCI and our joint venture's NBG Constructors, Inc. ("NBG") separate capabilities. The project was jointly bid, TXDOT issued a contract to the joint venture: HCCI and NBG. A Joint Venture Agreement ("JV") was executed, providing for among other provisions: contribution, banking and profit/loss sharing.  Further the JV was disclosed in HCCI's financial statements.  See **Exhibits 2, 3 & 4.)**

c. **Exhibit 5**, is an email dated 9/4/2008, from RH to me, regarding the Temple Pool bid, in which email RH confirms that HCCI will "subcontract 96% of the project to RHB".

This email confirms my position in item 4b above.

d. **Exhibit 6a**, is an email dated 12/1/2008, from RH to me, regarding the Wayne Gray Aquatic job, acknowledging that the relationship between HCCI and him, or his company, will be that of contractor-subcontractor. **Exhibit 6b** is the actual subcontract for the Wayne Gray Aquatic project, which lists RHB as the subcontractor.

The email and Subcontract confirms my position in item 4b above.

e. **Exhibit 7**, is R. Hassell Holding Companies, Inc.'s Reviewed Consolidated Financial Statements, September 30, 2009 and 2008, prepared by RH's CPA's Karlins & Ramey, LLC, dated December 16, 2009, which does not make disclosures, references or inclusions for any joint venture or partnership with HCCI. Indeed, the CPA firm states that there are no material modifications that should be made to the consolidated financial statements in order for them to be in conformity with GAAP.

This financial statement confirms my position in item 4b above.

f. **Exhibits 8a, 8b, 8c and 8d** are RHHC's Financial Statements for Fiscal Years ending 2010, 2011, 2012 and 2013, respectively. These statements do not contain any references to any economic interest in a joint venture or partnership with HCCI.

These financial statements confirm my position in item 4b above.

g. **Exhibit 9**, is an email dated 9/15/2010, from RH to me, wherein he acknowledges that no joint venture agreement existed at that time between HCCI and him and/or his companies and that he was contemplating looking into drafting one. No such agreement was ever presented to me.

This email confirms my position in 4b above.

    h. **Exhibit 10,** is a Subcontract between HCCI and RHC, dated May 2010, for the Research Forest Drive project.

The Subcontract confirms my position in item 4b above.

    i. **Exhibit 11**, is a document which I saw for the first time in litigation. It purports to be a joint venture bid on the MLK project and contains purported joint venture letterhead. I never authorized that RH make such representations to anyone. No joint venture existed between HCCI and RH and/or any of his companies, orally or in writing.

    j. **Exhibit 12** is a document which I saw for the first time in litigation. It purports to be a Contractor's Qualification Statement on the Hillhouse Satellite Service Center, on behalf of a purported joint venture between HCCI and an RH company. I never authorized RH to make such a representation, I did not authorize my signature to be placed on the AIA form, I did not appear before Cynthia L. Grooms, the notary, who is also an officer of RHC, and therefore did not attest that any statements were "true and sufficiently complete as to not be misleading." Simply put, my signature is a forgery.

    This was not an isolated event. **Exhibits 12a, 12b and 12c** are additional examples of AIA qualifications containing my forged signature. I never saw these exhibits until they were produced in the current litigation. I never authorized RH and/or Silvia Hassell ("SH") to make such Joint Venture representations to anyone. Notably, the submissions either contain my forged signature or omit a signature from an HCCI representative.

The fact that my signature was forged, on more than one occasion, confirms my position in item 4b above.

    k. **Exhibit 13**, is a request for payment from Thor Guard Inc., dated 2/15/2011. This document shows that others were left with the distinct impression that RHB was a subcontractor of HCCI.

The fact that outsiders considered RH and his companies as HCCI subcontractors confirms my position in item 4b above.

    l. **Exhibit 14**, is the Contractor's Statement of Qualifications dated 7/18/2011 and submitted by HCCI on the Springwoods project. The form, on the first page, asks for the legal status of the contractor, namely, whether the contractor is an individual, a partnership, a joint venture, a corporation, an LLC or other legal entity. An 'x' was placed in the box adjacent to "Corporation".  The Employer Identification Number printed on page one, 74-1876093, is that of HCCI. This form was submitted by RH and he chose to identify the contractor as a corporation and not a partnership or joint venture.

3

This confirms my position in item 4b above.

    m. **Exhibit 15**, is the Springwoods Project Agreement. It identifies HCCI as the contractor and there are no references to any joint venture with RH or any of his companies.

This confirms my position in item 4b above.

    n. **Exhibits 15a and 15b**, are examples of HCCI's pay applications made for the Springwoods project. These pay applications did not require proof of the existence of any releases or affidavits of bills paid on the project by HCCI from its project subcontractors.

    o. **Exhibit 16**, is an example of a pay application made by an HCCI subcontractor to HCCI on the Springwoods project. It shows the waiver and releases requested to be submitted by the subcontractor before HCCI would make payment.

    p. **Exhibits 16a, 16b, 16c and 16d**, are examples of Application and Certificate of Payments made by RHC/RHB, to HCCI on the Springwoods project. These applications contain waivers, releases and affidavits of bills paid, which identify RHC/RHB as a subcontractor. HCCI requested these waivers, releases and affidavits before payment, just like it did from any other subcontractor. RH never objected to providing these forms.

This confirms my position in item 4b above.

    q. **Exhibit 17**, consists of several letters written by HCCI to the owners of the Springwoods project, complaining of various delays. None of the letters were written on joint venture letterhead. Compare this with the joint letterhead used by RH, without permission, in **Exhibits 11 and 12**.

This confirms my position in item 4b above.

    r. **Exhibit 18**, is the original petition filed by HCCI related to the Springwoods project. There is no mention of a joint venture.

This confirms my position in item 4b above.

    s. **Exhibit 19,** is an audit letter from Zukowski, Bresanhan, Sinex and Petry, LLP ("ZBSP"), dated 3/25/2014, to HCCI's auditor Morris, Ligon & Rodriguez regarding pending litigation related to HCCI.  On page 2 of ZBSP's audit letter the attorneys note litigation undertaken by HCCI related to the Springwoods Project. Notably, there is no mention of any joint venture agreement. This letter was written when RH and SH were actively involved in the litigation. Neither RH nor SH objected to this audit letter not describing the project as a Joint Venture.

This confirms my position in item 4b above.

5. Exhibit 16 to RH's Declaration is not, as RH claims, a "Partnership Memorandum." First, this document is a mere unsigned draft which was not sent to RH and was only circulated internally for discussion purposes within HCCI. It was the beginning of a draft that was intended to set forth conditions under which HCCI would permit RH and his companies to perform any future work on projects in which HCCI was the contractor.

    The conditions set out in the draft were necessitated by RH's failure to pay his obligations on various jobs/projects that were bonded by HCCI for a fee. I did mention to the surety, conceptually, a potential scenario of a joint venture and/or partnership with RH entities. However, both Mr. James Hassell and the surety indicated their lack of support of any such a theoretical scenario.

6. The following is a description of how the working relationship between HCCI and RH started. In 2008, RH experienced serious difficulties in running his own construction company.

7. Due to these difficulties, RH was unable to bid additional work, because his own bonding company wouldn't extend his capacity.

8. RH approached HCCI with the following proposition: RH would prepare a bid on a certain project, the bid would be submitted by HCCI and bonded by HCCI's bonding company. However, RH would agree to perform most, if not all the work under a subcontractor relationship, be responsible for any and all losses on the project, and pay HCCI a fixed percentage, regardless of profits or losses on the project. The fixed-fee concept was borne out of RH's desire to not have to account for project costs to anyone at HCCI or Mr. James Hassell, for its role. (In addition to the fixed fee, RH agreed to pay for HCCI's costs incurred for insurance, bond premium, and any project-related backcharges.)

9. Projects bid performed under this arrangement were detailed by RHC's employees in the summary attached as **Exhibit 20**. This demonstrates that, internally, RHC regarded these projects as being performed under subcontract with HCCI.

10. RH continued to have financial difficulties and in October of 2010 borrowed $350,000 from HCCI, signing an unsecured promissory note, attached hereto as **Exhibit 21**.

11. RH also requested that the percentage HCCI was receiving on the projects bid in this fashion be reduced, to allow him to retain more money to deal with his financial difficulties.

12. The arrangement described in item 8 above, and amended as described in item 11, continued through July 2011, when the Springwoods project was bid.

13. Neither the loan described in item 10, nor the reduction described in item 11, seemed to help RH's financial difficulties. Therefore, in March of 2011, RH borrowed **$1,116,342** on HCCI's credit line. See **Exhibit 22**.

14. A receivable was set up on HCCI's books, and the line of credit ("LOC") was represented by RH to be necessary to fund ongoing projects and overhead.

15. SH took an active, hands-on approach to handling the LOC withdrawals, promising to oversee them and insure that there would be no funding request problems, as in the past. Unfortunately, RH and SH failed to use HCCI's LOC advances appropriately, misappropriating funds earmarked for project costs on items such as personal property taxes, personal house notes, boat payments, etc.

16. By June 2011, RH had withdrawn **$1,509,884.69** from the HCCI credit line. To secure the payment of the line, RH and SH agreed to pledge their real estate by allowing liens to be placed on various deeds. All paperwork necessary to create the liens and provide the security were done by either SH herself, an attorney, or attorneys hired and paid for by them. See **Exhibits 23a, 23b, 23c and 23d.**

17. Contrary to RH's declaration that RH and SH pledges were contributions to the JV, they were, in fact, security against unauthorized loans made to RH and SH that were initially misrepresented as project costs relating to projects performed for a fee as a subcontractor under HCCI's bond. See **Exhibit 24.** RH and SH repeatedly breached their promises to pay down the LOC. See **Exhibit 25**.

18. Repeatedly, RH and SH promised to pay down the debt owed to HCCI (reduce the credit line debt they were utilizing). As of July 27, 2011, RH's balance on HCCI's LOC was **$2,410,159.10** (See **Exhibit 26**).

19. The Springwoods project was entered into by HCCI with the understanding that RH would use his earnings to pay down the credit line. It was agreed and understood between HCCI and RH that all losses incurred by either HCCI and/or RH would be paid for by RH. RH confirmed that understanding when he testified to that fact at the hearing on March 25, 2015. See **Exhibit 27.**

20. Contrary to RH's sworn declaration that he took out a $500k loan in October 2011 to cover losses incurred in the Springwoods Project, RH was representing to HCCI that, as of Feb 23, 2012, the Springwoods Project was on track to maintain positive cashflow. (See **Exhibit 28**)

21. Attached as **Exhibit 29** is a true and correct copy of the IRS notice dated February 2, 2015, transmitting the FEIN number for the " Hassell 2012 JV."

6

Pursuant to the provisions of 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed in ___HARRIS___ County, Texas, on this __5__ day of February 2016.

J. Phillip Hassell

# EXHIBIT C

Case 19-03452   Document 1-30   Filed in TXSB on 05/03/19   Page 112 of 122

Filed 13 December 20 P2:21
Chris Daniel - District Clerk
Harris County
FAX15676834

CAUSE NO. 2013-61995

| | | |
|---|---|---|
| R. HASSELL & CO, INC.; | § | IN THE DISTRICT COURT |
| R. HASSELL BUILDERS, INC.; | § | |
| R. HASSELL HOLDING CO., INC; | § | |
| G.R. GROUP RESOURCES, LLP | § | |
| | § | |
| PLAINTIFFS, | § | |
| | § | |
| VS. | § | 125TH JUDICIAL DISTRICT |
| | § | |
| HASSELL CONSTRUCTION CO., INC.; | § | |
| HASSELL MANAGEMENT | § | |
| SERVICES, LLC | § | |
| | § | |
| DEFENDANTS | § | HARRIS COUNTY, TEXAS |

## DEFENDANTS' MOTION TO COMPEL ARBITRATION
## AND ABATEMENT PENDING ARBITRATION

TO THE HONORABLE JUDGE OF SAID COURT:

Defendants Hassell Construction Co., Inc. and Hassell Management Services, LLC ("Defendants") file this motion to compel arbitration and abatement pending arbitration against R. Hassell & Co, Inc., R. Hassell Builders, Inc., R. Hassell Holding Co., Inc., and G.R. Group Resources, LLP ("Plaintiffs") and would respectfully show as follows.

### A. INTRODUCTION

1.      In 2012, Plaintiffs and Defendants formed a joint venture and executed a Construction Joint Venture Agreement (the "JVA") dated July 1, 2012.  The JVA contains a broad arbitration provision that mandates the arbitration of all disputes that arise between the parties.

2.      Specifically, paragraph 25 of the JVA contains an express and detailed dispute resolution and arbitration clause (the "Arbitration Provision").  See, Exhibit "A."  The Arbitration Provision includes the following relevant language:

1

If a dispute arises that cannot be resolved through direct discussions, Joint Venturers shall participate in mediation before recourse to any form of binding dispute resolution . . . If the Joint Venturers are not able to resolve the dispute in Mediation, then such disputes ***shall be resolved through binding arbitration*** carried out in accordance with the rules and regulations of the American Arbitration Association. The decision of the arbitrator in any such proceeding shall be fully enforceable in any court of competent jurisdiction.

3.        Despite the existence of an express contractual obligation to arbitrate Plaintiffs' claims against Defendants, on October 15, 2013, Plaintiffs filed their Original Petition for Declaratory Judgment in this Court.

4.        In the petition, Plaintiffs admit that the parties to this lawsuit formed a joint venture and executed a JVA dated July 1, 2012. See Plaintiffs' Original Petition for Declaratory Judgment. Plaintiffs allege that Defendants breached the JVA by taking over assets of Plaintiffs and utilizing them to conduct work on projects that were not included in the joint venture. Plaintiffs allege that no accounting was made of the joint venture and non-joint venture projects in which Defendants utilized assets of Plaintiffs in violation of the JVA. Plaintiffs also maintain that Defendants have not reimbursed Plaintiffs for reasonable and necessary joint venture expenses and for the use of equipment by the joint venture in violation of the JVA.

5.        Plaintiffs' claims and dispute against Defendants arise directly out the JVA, and fit squarely within the scope of the arbitration provision contained in the JVA between Plaintiffs and Defendants. The parties entered into a valid arbitration agreement that is enforceable under both Texas and federal laws. Each of the Plaintiffs was a signatory to the JVA containing the Arbitration Provision; each of the Plaintiffs enjoyed the benefits of the JVA; each of the Plaintiffs filed this lawsuit based on disputes arising out of the JVA, and each of the Plaintiffs is bound by the Arbitration Provision of the JVA.

6.        Accordingly, Plaintiffs' claims are subject to binding arbitration.

2

## B. RELIEF REQUESTED

7.    By commencing this action, Plaintiffs have ignored their obligation to arbitrate the claims they assert in the Original Petition for Declaratory Judgment. Plaintiffs are therefore in breach of the Arbitration Provision contained in the JVA. Plaintiffs' attempt to avoid their contractual obligation to arbitrate their claims should not be countenanced. Accordingly, Defendants file this Motion to Compel Arbitration and Abatement Pending Arbitration and seek and order from this Court: (i) enforcing the parties' agreement and compelling Plaintiffs to arbitrate their claims; and (ii) staying this action pending completion of the arbitration. Based on the above discussion, and the arguments and authorities set forth below, Defendants request that the Court grant their motion.

## C. ARGUMENTS AND AUTHORITIES

8.    Arbitration of disputes is strongly favored under both federal and state law. *Prudential Securities, Inc. v. Marshall,* 909 S.W.2d 896, 898-99 (Tex. 1995); *Cantella & Co. v. Goodwin,* 924 S.W.2d 943, 944 (Tex. 1996) (orig. proceeding). When the factual allegations in the petition on their face establish that the asserted claims fall within the scope of an arbitration agreement, a trial court abuses its discretion by declining to compel arbitration of the claims and stay the trial court proceedings. *Id.*; *see also Menna v. Romero,* 48 S.W.3d 247, 250-51 (Tex. App.--San Antonio 2001, pet. dism'd); *Ellis v. Schlimmer,* 337 S.W.3d 860, 862 (Tex. 2011). "[C]ourts should resolve any doubts as to the agreement's scope, waiver, and other issues unrelated to its validity in favor of arbitration." *Id.*

### THE FAA AND TAA

9.    The arbitration provision in the JVA does not specify whether it is governed by the Federal Arbitration Act ("FAA") or the Texas Arbitration Act ("TAA"). If an arbitration

3

agreement does not specify whether it is governed by the FAA or the TAA, both the FAA and the TAA may apply, and the FAA preempts the TAA to the extent they conflict. *See In re D. Wilson Constr. Co.*, 196 S.W.3d 774, 778-79 (Tex. 2006); *In re Devon Energy Corp.*, 332 S.W.3d 543, 547 (Tex. App.—Houston [1st Dist.] 2009, orig. proceeding); *See In re L & L Kempwood Assocs.*, L.P., 9 S.W.3d 125, 127–28 (Tex.1999) (orig. proceeding).

10.      Where, as here, the parties have entered into a broad agreement to arbitrate, the issue of arbitrability is subject to a virtually identical analysis under both the FAA and the TAA. *ODL Servs., Inc. v. ConocoPhillips Co.*, 264 S.W.3d 399, 418 (Tex. App.--Houston [1st Dist.] 2009, no pet.) (applying same analysis of arbitrability under the FAA and the TAA).  The FAA requires that the Court compel arbitration unless it can be said with positive assurance that the arbitration clause does not cover the dispute at issue. *Dallas Cardiology Assoc., PA v. Mallick*, 978, S.W.2d 209, 214 (Tex. App. – Texarkana 1998, pet. den'd.); *Associated Air Freight, Inc. v. Meek*, 2001 WL 225516 (Tex. App. – Houston [1st Dist.] 2001); *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-83 (1960).  Texas law takes a similarly broad view with regards to the enforceability of arbitration agreements.  TEX. CIV. PRAC. & REM. § 171.001 *et. al.*  Like the FAA, the TAA requires that the parties be compelled to arbitration upon a showing that an agreement to arbitrate exists.  TEX. CIV. PRAC. & REM. § 171.021.  Both Texas and federal courts have expressly held that, where there is any doubt as to the applicability of an arbitration agreement, such doubts are to be resolved in favor of arbitration.  *Emerald Texas, Inc. v. Peel*, 920 S.W.2d 398, 402 (Tex. App. – Houston [1st Dist.] 1996, no writ); *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983).

11.      Under both the FAA and the TAA the legal query to be resolved when determining whether a claim or issue can be subject to an order to arbitration is (1) whether there

is a valid agreement to arbitrate, and (2) whether the claims raised fall within the scope of that agreement. *In re D. Wilson Constr. Co.*, 196 S.W.3d at 774, 781 (Tex. 2006); TEX. CIV. PRAC. & REM. CODE § 171.021(a); *see AT&T Technologies, Inc.. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649-50 (1986). A court has no discretion and must compel arbitration if the answer to both questions is affirmative. *In re Tenet Healthcare, Ltd.*, 84 S.W.3d 760, 765 (Tex. App.-- Houston [1st Dist.] 2002, orig. proceeding).

## A VALID, ENFORCEABLE ARBITRATION AGREEMENT EXISTS BETWEEN PLAINTIFFS AND DEFENDANTS.

12.    In evaluating a motion to compel arbitration, a court must first determine whether a valid arbitration agreement exists, and then whether the agreement encompasses the claims raised. *Am. Std. v. Brownsville Indep. Sch. Dist. (In re D. Wilson Constr. Co.)*, 196 S.W.3d 774, 781 (Tex. 2006); *see In re Dillard Dep't Stores, Inc.*, 186 S.W.3d 514, 515 (Tex. 2006) (*per curiam*). Whether a valid arbitration agreement exists is a question of law. *Id.* Although the Texas Supreme Court has repeatedly expressed a strong presumption favoring arbitration, the presumption arises only after the party seeking to compel arbitration proves that a valid arbitration agreement exists. *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227 (Tex. 2003) (emphasis added).

13.    In this case, the Arbitration Provision includes the following relevant language:

> If a dispute arises that cannot be resolved through direct discussions, Joint Venturers shall participate in mediation before recourse to any form of binding dispute resolution . . . If the Joint Venturers are not able to resolve the dispute in Mediation, then **such disputes shall be resolved through binding arbitration** carried out in accordance with the rules and regulations of the American Arbitration Association. The decision of the arbitrator in any such proceeding shall be fully enforceable in any court of competent jurisdiction.

14.     Here, the parties entered into a valid arbitration agreement. Each of the Plaintiffs was a signatory to the JVA, each of the Plaintiffs enjoyed the benefits of the JVA, each of the Plaintiffs filed this lawsuit based on disputes arising out of the JVA, and each of the Plaintiffs is thus bound by the Arbitration Provision of the JVA.

15.     In fact, Plaintiffs admitted in their petition that Plaintiffs and Defendants were parties to the JVA and executed the JVA dated July 1, 2012. Because the trial court is presented with a valid arbitration agreement, the burden shifts to the party opposing arbitration to raise an affirmative defense to enforcing arbitration. *Id.* Absent a defense to enforcing the arbitration agreement, the trial court has no discretion but to compel arbitration and stay its own proceedings. *In re J.D. Edwards World Solutions Co.,* 87 S.W.3d 546, 549 (Tex. 2002) (*per curiam*). Because a valid, enforceable arbitration agreement exists between Plaintiffs and Defendants, this Court has no discretion but to compel arbitration and stay this proceeding.

### PLAINTIFFS' CLAIMS FALLS WITHIN THE SCOPE OF THE PARTIES' ARBITRATION AGREEMENT.

16.     A broad arbitration clause, purporting to cover all claims, disputes, and other matters arising out of or relating to the contract, creates a presumption of arbitrability. *Am. Realty Trust, Inc. v. JDN Real Estate-McKinney, L.P.,* 74 S.W.3d 527, 531 (Tex. App.--Dallas 2002, pet. denied). Arbitration agreements are interpreted under traditional contract principles. *J.M. Davidson,* 128 S.W.3d at 227. Further, disputes regarding the interpretation of an arbitration agreement are analyzed under traditional principles of contract construction. *In re Hawthorne Townhomes, L.P.,* 282 S.W.3d 131, 138 (Tex. App.--Dallas 2009, orig. proceeding); *Jenkens & Gilchrist v. Riggs,* 87 S.W.3d 198, 201 (Tex. App.--Dallas 2002, no pet.). Thus, the language of an arbitration clause is examined in context and the language is given its plain grammatical meaning. *Jenkens & Gilchrist,* 87 S.W.3d at 201.

6

17.     An arbitration provision, such as the Arbitration Provision in the JVA, which is not limited to questions of contractual interpretation is considered to be "broad." *P&P Indus. v. Sutter Corp.*, 179 F.3d 861, 871 (10th Cir. 1999) (finding the tort-based claims alleged by the plaintiff arose out of or related to the agreement itself, and thus were subject to arbitration). When an arbitration clause is broad, the strong presumption of arbitrability "applies with even greater force." *Id.* (quoting *Shearson Lehman Hutton, Inc. v. Wagoner*, 944 F.2d 114, 121 (2d Cir. 1991). In determining whether claims are arbitrable, the Court is to focus on the factual allegations, not the legal causes pled. *P&P Indus.*, 179 F.3d at 871-72.

18.     Here, the Arbitration Provision in the JVA provides that "if a dispute arises . . . then such disputes shall be resolved through binding arbitration." This Arbitration Provision is unquestionably broad.

19.     Plaintiffs allege that Defendants breached the JVA by taking over assets of Plaintiffs and utilizing them to conduct work on projects that were not included in the joint venture. Plaintiffs allege that no accounting was made of the joint venture and non-joint venture projects in which Defendants utilized assets of Plaintiffs in violation of the JVA. Plaintiffs also maintain that Defendants have not reimbursed Plaintiffs for reasonable and necessary joint venture expenses and for the use of equipment by the joint venture in violation of the JVA. Plaintiffs' claims and disputes against Defendants all arise directly out the JVA, and fit squarely within the scope of the Arbitration Provision contained in the JVA between Plaintiffs and Defendants. *See ARW Exploration Corp.*, 45 F.3d at 1462 (claims are arbitrable absent "positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute."). Any doubt as to whether a plaintiff's claims fall within the scope of an arbitration agreement must be resolved in favor of arbitration. *Id.*; *see also In re Kellogg Brown & Root,*

7

166 S.W.3d at 737; *In re Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 195 S.W.3d 807, 813 (Tex. App.--Dallas 2006, orig. proceeding). Indeed, arbitration should not be denied unless it can be said with positive assurance that the arbitration clause cannot be interpreted so as to encompass the dispute in question. *In re Dillard Dep't Stores, Inc.*, 186 S.W.3d 514, 516 (Tex. 2006) (per curiam); *accord Graham-Rutledge & Co. v. Nadia Corp.*, 281 S.W.3d 683, 691 (Tex. App.--Dallas 2009, no pet.); *see also Hou-Scape, Inc. v. Lloyd*, 945 S.W.2d 202, 205 (Tex. App.--Houston [1st Dist.] 1997, no writ) (citing *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-83 (1960)). That is not the case here. Accordingly, the Court should grant this motion.

## D. CONCLUSION

20.     As set forth above, Plaintiffs and Defendants entered into a JVA and Arbitration Provision within the JVA. Plaintiffs' claims and dispute arise out of or relate to the parties' JVA. Plaintiffs' claims are subject to binding arbitration. Accordingly, Defendants are entitled to a stay of this action and an order compelling the arbitration of Plaintiffs' claims. Defendants request that the Court issue an Order staying this action and compelling Plaintiffs to resolve their claims in appropriate arbitration proceedings.

Respectfully submitted,

TYLER & DAS

By: _____
Micky N. Das
State Bar No: 05402300
2000 Bering Dr., Suite 401
Houston, Texas 77057
(713) 739-1900 Telephone
(713) 739-8347 Facsimile
**ATTORNEYS FOR DEFENDANTS
HASSELL CONSTRUCTION CO., INC. AND
HASSELL MANAGEMENT SERVICES, LLC**

8

## CERTIFICATE OF CONFERENCE

Defendants' counsel has attempted to work these matters without success with counsel for Plaintiffs. Since efforts have been unsuccessful, Court intervention is required. Defendants will continue with efforts to work out the matters up until the date and time of the hearing.

_____
MICKY M. DAS

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been forwarded to the following by facsimile on the _20th_ day of December 2013:

Robert J. Kruckemeyer
800 Commerce St.
Houston, TX 77002
*Attorney for Plaintiffs*
**Via Facsimile (713) 225-0827**

_____
MICKY N DAS

Unofficial Copy Office of Chris Daniel District Clerk

Filed 13 December 20 P2:22
Chris Daniel - District Clerk
Harris County
FAX15676834

CAUSE NO. 2013-61995

| | | |
|---|---|---|
| R. HASSELL & CO, INC.; | § | IN THE DISTRICT COURT |
| R. HASSELL BUILDERS, INC.; | § | |
| R. HASSELL HOLDING CO., INC; | § | |
| G.R. GROUP RESOURCES, LLP | § | |
| | § | |
| PLAINTIFFS, | § | |
| | § | |
| VS. | § | 125TH JUDICIAL DISTRICT |
| | § | |
| HASSELL CONSTRUCTION CO., INC.; | § | |
| HASSELL MANAGEMENT | § | |
| SERVICES, LLC | § | |
| | § | |
| DEFENDANTS | § | HARRIS COUNTY, TEXAS |

## VERIFICATION

STATE OF TEXAS          §
                        §
COUNTY OF HARRIS        §

BEFORE ME, a notary public, on this day personally appeared James Phillip Hassell of Hassell Construction Co., Inc., known to me to be the person whose name is subscribed below, and being by me first sworn, declared that he has read the above and foregoing Motion to Compel Arbitration and Abatement Pending Arbitration, that he has personal knowledge of the facts contained therein and that all factual statements are true and correct.

JAMES PHILLIP HASSELL

1

GIVEN UNDER MY HAND AND SEAL OF OFFICE on the 20th day of December 2013.

_Natali Silvas_
Notary Public, STATE OF TEXAS



NATALIE ELENA SILVAS
NOTARY PUBLIC
COMMISSION EXPIRES:
03-12-2017

My commission expires: 3-12-17

Unofficial Copy Office of Chris Daniel District Clerk

2